UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE VALEANT PHARMACEUTICALS
INTERNATIONAL, INC. SECURITIES LITIGATION

This Document Applies To:

All Actions.

No. 3:15-CV-07658-MAS-LHG

**ORAL ARGUMENT
REQUESTED**

**Motion Day: December 19, 2016**

## PRICEWATERHOUSECOOPERS LLP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

Dated:   September 13, 2016

KING & SPALDING LLP

James J. Capra, Jr. (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Kenneth Y. Turnbull (*pro hac vice* filed)
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

CHIESA SHAHINIAN & GIANTOMASI PC

A. Ross Pearlson
James Van Splinter
One Boland Drive
West Orange, NJ 07052
Telephone: (973) 530-2100
Facsimile: (973) 530-2300

*Attorneys for Defendant
PricewaterhouseCoopers LLP*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 3

        A.    PwC's Audit Opinions ................................................................. 3

        B.    Respective Roles of Valeant Management and PwC as Independent Auditor ........................................................... 4

        C.    Valeant's 2014 Financial Statements and Restatement ..................... 5

        D.    Plaintiff's Allegations Regarding PwC's Purportedly False Statements ......................................................................... 8

PLEADING STANDARD ............................................................................................... 10

ARGUMENT ................................................................................................................... 10

    I.    Plaintiff fails to plead that PwC's opinion statements were false ................ 10

        A.    Under *Omnicare*, an opinion statement is actionable under Section 11 only if the speaker did not sincerely believe the opinion at the time. ..................................................................... 11

        B.    PwC's opinions are subject to the *Omnicare* standard for Section 11 claims. ................................................................... 11

        C.    Courts have applied *Omnicare* to dismiss Section 11 claims against independent auditors when plaintiffs do not allege subjective disbelief. .............................................. 13

        D.    Plaintiff does not allege PwC's subjective disbelief. ..................... 15

    II.    Plaintiff lacks standing to bring a Section 11 claim relating to the March 2015 stock offering. ....................................................................... 16

CONCLUSION ................................................................................................................ 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................10

*In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*,
    2013 WL 1787567 (S.D.N.Y. Apr. 26, 2013)........................................15

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)......................................................................3

*In re IKON Office Solutions, Inc.*,
    277 F.3d 658 (3d Cir. 2002)......................................................................13

*In re Lehman Bros. Sec. & ERISA Litig.*,
    799 F. Supp. 2d 258 (S.D.N.Y. 2011)................................................12, 13

*In re Petrobras Sec. Litig.*,
    No. 14-cv-9662-JSR (S.D.N.Y. Feb. 19, 2016).....................................13

*In re Puda Coal Sec. Inc. Litig.*,
    30 F. Supp. 3d 230 (S.D.N.Y. 2014)........................................................14

*In re Velti PLC Sec. Litig.*,
    2015 WL 5736589 (N.D. Cal. Oct. 1, 2015).................................13, 14, 15

*Johnson v. CBD Energy Ltd.*,
    2016 WL 3654657 (S.D. Tex. July 6, 2016).......................................13, 14

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015).................................................................... *passim*

*Querub v. Moore Stephens Hong Kong*,
    _ F. App'x _, 2016 WL 2942415 (2d Cir. May 20, 2016) (Summary Order) ............ 12-13, 14

*Reiger v. Altris Software, Inc.*,
    1999 WL 540893 (S.D. Cal. Apr. 30, 1999)............................................12

*SEPTA v. Orrstown Fin. Servs., Inc.*,
    2015 WL 3833849 (M.D. Pa. June 22, 2015)......................................13, 14

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    645 F. App'x 72, 2016 WL 1392280 (2d Cir. Apr. 8, 2016) (Summary Order) ....................14

*United States v. Brassington*,
    2010 WL 3419430 (D.N.J. Aug. 26, 2010) ................................................................13

*Yang v. Tibet Pharm., Inc.*,
    2015 WL 730036 (D.N.J. Feb. 20, 2015) ................................................................13

**Statutes**

Section 11 of the 1933 Securities Act, 15 U.S.C. § 77k ....................................... *passim*

**Other Authorities**

17 C.F.R. § 210.2-01 ................................................................................................4

Fed. R. Civ. P. 8(a) ................................................................................................1

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1

**Auditing Standards**

PCAOB Audit Standard No. 5 (AS 5) ....................................................................4

PCAOB Audit Standard No. 15 (AS 15) ..................................................................4

PCAOB Interim Auditing Standard (AU) 110 ...............................................4, 5, 11

PCAOB Interim Auditing Standard (AU) 230 ..........................................................12

PCAOB Interim Auditing Standard (AU) 508 ...............................................4, 5, 11

PCAOB Interim Auditing Standard (AU) 625 ..........................................................12

PCAOB Rule 3200T ..............................................................................................3

## TABLE OF DEFINED TERMS

| | |
|---|---|
| 2014 Form 10-K | Valeant's Annual Report on Form 10-K for the year ended December 31, 2014, which Valeant filed with the SEC on February 25, 2015 |
| 2015 Form 10-K | Valeant's Annual Report on Form 10-K for the year ended December 31, 2015, which Valeant filed with the SEC on April 29, 2016, and which included Valeant's restated financial statements for the year ended December 31, 2014 |
| AICPA | American Institute of Certified Public Accountants |
| AU | PCAOB interim auditing standards, which consist of the auditing standards previously developed by the AICPA, which the PCAOB has adopted on an interim basis |
| AS | PCAOB auditing standards |
| Carro | Tanya Carro, Valeant's former Corporate Controller |
| Company | Valeant Pharmaceuticals International, Inc. |
| Complaint | Consolidated Complaint filed on June 24, 2016 [ECF 80] |
| GAAP | Generally Accepted Accounting Principles |
| GAAS | Generally Accepted Auditing Standards |
| ICFR | Internal Control over Financial Reporting |
| March 2015 stock offering | As referred to in paragraph 559 of the Complaint |
| PCAOB | The Public Company Accounting Oversight Board, which regulates accounting firms that perform audits of public companies and establishes standards for the conduct of those audits |
| Philidor | Philidor Rx Services, LLC |
| Plaintiff | The City of Tucson together with and on behalf of the Tucson Supplemental Retirement System, the sole plaintiff that has asserted a claim against PwC |
| Pre-agreement sales | Valeant's sales of its pharmaceutical products to Philidor in the time period immediately prior to the execution of the Purchase Option Agreement on December 15, 2014 |

| | |
|---|---|
| Prospectus Supplement | Valeant's March 18, 2015 prospectus supplement referred to in paragraph 559 of the Complaint. |
| Purchase Option Agreement | December 15, 2014 agreement by which Valeant acquired an option to purchase Philidor, referred to in paragraph 99 of the Complaint |
| PwC | PricewaterhouseCoopers LLP |
| Restatement | Valeant's restatement of its financial statements for the year ended December 31, 2014.  Valeant's restated 2014 financial statements were included in its 2015 Form 10-K. |
| SEC | The Securities and Exchange Commission |
| Section 11 | Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k |
| Unaudited | Valeant statements that are not audited by PwC, as to which PwC expressed no opinion, including (i) portions of Valeant's Annual Reports on Form 10-K other than the audited financial statements, (ii) Valeant's quarterly financial statements in its Quarterly Reports on Form 10-Q, (iii) other Valeant SEC filings, and (iv) Valeant press releases |
| Valeant | Valeant Pharmaceuticals International, Inc. |

Defendant PricewaterhouseCoopers LLP ("PwC"), in accordance with Federal Rules of Civil Procedure 12(b)(6) and 8(a), moves to dismiss Count VII of the Consolidated Complaint ("Complaint" or "Compl.") [ECF 80], the sole claim against PwC in this action.

## PRELIMINARY STATEMENT

PwC is Valeant's independent registered public accounting firm.  Plaintiffs devote most of the 282-page Complaint to their allegations concerning Valeant's alleged business practices over a three-year putative class period.  Although Plaintiffs assert nine claims against 23 defendants, only one plaintiff, the City of Tucson ("Plaintiff"), asserts one claim against PwC based on one offering.  That claim relates to a single PwC audit report, dated February 25, 2015, which was incorporated by reference in Valeant's prospectus supplement for its March 2015 stock offering.  Compl. ¶ 563.  PwC provided three *opinions* in that report.  *Id.* ¶ 692.  Plaintiff asserts that PwC's opinions were "false statements" under Section 11 of the 1933 Securities Act. *Id.* ¶ 704.  By its terms, however, that statute relates to misstatements or omissions of "*fact*" in offering statements.  15 U.S.C. § 77k(a).  Plaintiff's claim fails under the United States Supreme Court's recent *Omnicare* decision, which sets forth strict requirements for pleading that an opinion statement is false under Section 11.  Plaintiff does not and cannot meet them.

More specifically, PwC *opined* that: (i) Valeant's financial statements for the period ended December 31, 2014 were fairly presented in all material respects; (ii) Valeant maintained effective internal control over financial reporting for that same period; and (iii) PwC had conducted its audits in accordance with applicable auditing standards.  Compl. ¶ 692.  Relying entirely on hindsight, Plaintiff claims that these *opinions* were false statements of *fact* because, a year later—after a substantial investigation by an independent committee of its Board—Valeant identified a financial statement error and control weaknesses, and it restated its 2014 financial statements.  *Id.* ¶ 691.  In its restatement, Valeant explained that certain Valeant officers had

provided "incorrect information" to PwC, which "contributed to the misstatement" of financial results.  *Id.* ¶¶ 41, 380.

Significantly, Plaintiff disclaims any notion that PwC was part of any "fraud," and asserts instead that its claim sounds in "negligence."  Compl. ¶ 551.  Plaintiff specifically "exclude[s] allegations that could be construed as alleging fraud or intentional misconduct."  *Id.* ¶ 669.  Plaintiff also sues PwC within the separate Securities Act portion of the Complaint, which is reserved for "*non*-fraud based" claims.  *Id.* ¶ 551 (emphasis added).  In other words, Plaintiff alleges that PwC "fail[ed] to identify" the error in Valeant's financial statements (*id.* ¶ 697)—***not*** that PwC knew about the error at the time and that PwC disbelieved its opinions.  Nor could Plaintiff do so in light of the acknowledgement in Valeant's restatement that certain of its officers had provided PwC with "incorrect information."  *Id.* ¶ 41.

Plaintiff's failure and inability to allege that PwC disbelieved its audit opinions dooms its claim under the Supreme Court's *Omnicare* decision.  The Court held that a statement of opinion may be considered a false statement of fact under Section 11 only when the speaker disbelieves it at the time, also known as "subjective disbelief."  Courts applying *Omnicare* have dismissed Section 11 claims against independent auditors when, as here, a plaintiff alleges only negligence, but no facts to suggest that the auditor subjectively disbelieved its opinions at the time they were made.  Following that precedent, this Court should do likewise.

Additionally, and as an independent basis for dismissal, PwC incorporates by reference the argument in Part III(A) of the Bank Offering Defendants' Memorandum of Law, filed September 13, 2016, as if fully set forth herein.  Plaintiff does not plausibly allege that it purchased shares in or traceable to the March 2015 stock offering.  Because that argument goes to Plaintiff's lack of standing, it applies equally to all defendants.

## FACTUAL BACKGROUND

The following background—drawn from Plaintiff's allegations and the documents referenced in the Complaint—is relevant to the Section 11 claim against PwC.[1]

### A.    PwC's Audit Opinions

Plaintiff's sole claim against PwC relates only to the March 2015 stock offering by Valeant Pharmaceuticals International, Inc. ("Valeant" or "Company").  Compl. ¶ 557.  For that offering, Valeant filed a March 18, 2015 Prospectus Supplement with the Securities and Exchange Commission ("SEC").  *Id.* ¶ 559.  Valeant's prospectus incorporated by reference its 2014 Annual Report on Form 10-K, which Valeant had previously filed with the SEC on February 25, 2015.  *Id.*  Valeant's 2014 Form 10-K, in turn, included PwC's audit report.  In that report, PwC opined that Valeant's financial statements for the year ended December 31, 2014 were fairly presented in all material respects in accordance with Generally Accepted Accounting Principles ("GAAP"), that its internal control over financial reporting ("ICFR") was effective as of December 31, 2014, and that PwC had conducted its audits in accordance with PCAOB auditing standards.  *Id.* ¶¶ 563, 692.[2]  PwC's audit opinions addressed *only* the Company's financial statements and ICFR.  PwC's report did not cover other, unaudited parts of Valeant's 2014 Form 10-K, such as the Management, Discussion and Analysis (*id.* ¶ 385).

---

[1]  The Court may consider these referenced materials on this motion.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (court may consider documents "*integral to or explicitly relied* upon in the complaint" on Rule 12 motion) (internal quotation marks and citation omitted).  These materials are attached to the accompanying Declaration of James J. Capra, Jr. and referred to as "Capra Ex. _".

[2]  The Public Company Accounting Oversight Board ("PCAOB") regulates certain audit firms and promulgates auditing standards.  The PCAOB has adopted the AICPA's Generally Accepted Auditing Standards ("GAAS") as interim auditing standards (referred to as "AU") and has issued its own Audit Standards (referred to as "AS").  *See* Compl. ¶ 688 n.89; PCAOB Rule 3200T.  The Court may consider PCAOB auditing standards because they are integral to the Complaint and Plaintiff refers to them.  *See also id.* ¶¶ 338, 689, 693, 697, 699-701, 703.

**B.    Respective Roles of Valeant Management and PwC as Independent Auditor**

*Company management*:    Valeant's management was responsible for running the Company's business, *e.g.*, pricing its products and negotiating contracts.  Valeant's management was also responsible for its financial statements and for maintaining effective internal control over financial reporting, *i.e.*, controls intended to prevent or detect material misstatements in Valeant's financial statements.  *See* AU 110.03 ("The financial statements are management's responsibility.") (Capra Ex. A); AS 5.85(b) (same as to ICFR) (Capra Ex. B); *supra* note 2.

*Independent auditor*:    As independent auditor, PwC was just that—independent of Valeant and its management.  *See* 17 C.F.R. § 210.2-01.  PwC did not make decisions about how Valeant should conduct its business or account for its transactions (and Plaintiff does not allege otherwise).  Instead, PwC performed audits.  Compl. ¶ 686.

*Audits of financial statements and ICFR*:    The auditor is responsible for conducting an audit of a company's financial statements in accordance with the relevant professional standards. AU 110.01-.02 (Capra Ex. A).  Under those standards, an audit consists of an examination, on a test basis, of evidence supporting the amounts and disclosures in the company's financial statements.  AU 508.08 (Capra Ex. C).  That examination is necessarily on a test basis because, practically, an auditor cannot obtain evidence to support the accounting for every one of a company's millions of transactions.  Instead, the auditor obtains "sufficient appropriate audit evidence" by designing tests to address risks of *material* misstatements.  AS 15.4-.5 (Capra Ex. D).  An auditor also performs tests to obtain sufficient evidence concerning whether a company maintains effective ICFR or, instead, has material weaknesses, which are defined as a "reasonable possibility" that internal controls will not timely prevent or detect a material misstatement in the financial statements.  AS 5.3 & App'x A7 (Capra Ex. B).  Significantly, an

auditor opines only about internal control *over financial reporting*, not other kinds of controls, such as those relating to operations or regulatory compliance.[3]

*Audit opinions*:  The auditing standards prescribe that the objective of an audit is "the expression of an opinion."  AU 110.01 (Capra Ex. A).  At the conclusion of the audit, the auditor gives its opinion in one of the standard reports required by professional standards.  AU 508 (Capra Ex. C).  Given materiality considerations and other inherent limitations, an audit provides "reasonable, but not absolute, assurance" on whether financial statements are fairly presented in material respects and whether a company's ICFR is effective.  AU 110.02 (Capra Ex. A).

###   C.   Valeant's 2014 Financial Statements and Restatement

Plaintiff alleges that Valeant's 2014 financial statements were misstated, and its internal control over financial reporting ineffective, based on Valeant's subsequent restatement.  Compl. ¶¶ 687, 691, 693-95.

Specifically, Plaintiff focuses on Valeant's accounting for its relationship with Philidor Rx Services, LLC ("Philidor"), a specialty pharmacy to which it distributed pharmaceutical products.  Compl. ¶ 54.  As relevant to the 2014 financial statements, Valeant entered into a December 15, 2014 agreement for the option to acquire Philidor (the "Purchase Option Agreement").  *Id.* ¶ 99.  Based on the benefits conferred by this agreement, Valeant concluded that the agreement caused it to be the primary beneficiary of Philidor (as a variable interest entity) and, therefore, that Valeant should consolidate Philidor's results within its own year-end financial statements.  *Id.* ¶ 327.  Plaintiff does not dispute that Valeant's consolidation of Philidor's results in its 2014 financial statements was appropriate under GAAP.

---

[3] *See* Committee of Sponsoring Organizations of the Treadway Commission, Internal Control – Integrated Framework, Executive Summary (May 2013) at 3 (different types of controls relate, respectively, to "operations, reporting, and compliance") (available at www.coso.org); Compl. ¶ 333 (referring to COSO).

In the third quarter of 2015—months after Valeant had filed its 2014 Form 10-K in February 2015—a short-seller made allegations concerning Valeant's relationship to Philidor. Compl. ¶ 213.  Valeant formed a committee of independent directors of the Board to investigate those allegations, with assistance from an outside law firm.  *Id.* ¶ 252; 2015 Form 10-K at Explanatory Note (Capra Ex. E).  After incurring "substantial . . . expenses and costs," and based on the information the investigation unearthed, Valeant decided to restate its 2014 financial statements.  Compl. ¶ 308; 2015 Form 10-K at Item 1A (Capra Ex. E).

Specifically, Valeant determined that it had incorrectly recognized revenue on certain sales to Philidor in the period immediately prior to the Purchase Option Agreement's execution on December 15, 2014 ("pre-agreement sales").  Compl. ¶ 315.  That date, when Valeant appropriately consolidated Philidor's results, is significant with respect to revenue recognition.  In the period leading up to the agreement's execution, Valeant could presumptively recognize revenue on sales to Philidor (and did so) on a sell-*in* basis, *i.e.*, when it delivered products to Philidor, because Philidor was still an unconsolidated entity—a customer.  *Id.* ¶¶ 694-95.  But, for items still held by Philidor at the Purchase Option Agreement date, Valeant could only recognize revenue on those sales if they were made in the normal course of business.  *Id.*[4]

Based on its subsequent investigation, Valeant "'determined that certain sales transactions for deliveries to Philidor in the second half of 2014 leading up to the execution of the purchase option agreement were not executed in the normal course of business.'"  Compl. ¶ 694 (quoting Valeant 2015 Form 10-K [Capra Ex. E]).  Thus, with the benefit of hindsight, it

---

[4] After the date of the Purchase Option Agreement, Valeant had to recognize revenue on sales to Philidor (and did so) on a sell-*through* basis, *i.e.*, when Philidor later sold the products to its customers.  Compl. ¶ 316.  The reason is essentially that, after the accounting consolidation, Valeant could not, in effect, sell products to itself.  Plaintiff does not challenge Valeant's revenue recognition on post-agreement sales.

6

became apparent that Valeant had recorded revenue on certain pre-agreement sales too soon—on a sell-in basis (when it sold product to Philidor) rather than on a sell-through basis (when Philidor later sold that product to customers).   On April 29, 2016, Valeant filed its 2015 Form 10-K, which included 2014 restated financial statements.   Compl. ¶ 308.   In its restatement, Valeant identified material weaknesses in its ICFR as of year-end 2014 and adjusted its revenue by $57.5 million.  *See* Valeant 2015 Form 10-K at F-14 (Capra Ex. E).   That adjustment is less than one percent (0.7%) of Valeant's total 2014 revenues of $8.2 *billion*.  *Id.*

Although Valeant recognized this small amount of revenue prematurely at year-end 2014, there is no allegation that the underlying sales had not occurred.   For example, there are no allegations that orders for the products were not actually received, that the products were not actually shipped and paid for, or that they were not ultimately dispensed to patients.   Rather, the sales were not in the normal course—such that revenue could not be recognized on a sell-in basis—because, for example, certain company officers had placed an "emphasis on delivering product prior to the execution of the purchase option agreement."   2015 Form 10-K at F-11 (Capra Ex. E).   Importantly, there is no allegation that, based on the audit evidence it obtained, PwC was aware of this "emphasis," which only came to light in 2016 during the committee's investigation.   On the contrary, Plaintiff relies on Valeant's restatement, which includes the committee's finding that:

> The improper conduct of the Company's former Chief Financial Officer and former Corporate Controller, which resulted in the ***provision of incorrect information to*** the [Audit and Risk Committee] and the Company's ***independent registered public accounting firm*** [*i.e.*, PwC], contributed to the misstatement of financial results.

*Id.* at Explanatory Note (Capra Ex. E) (emphasis added).

### D.    Plaintiff's Allegations Regarding PwC's Purportedly False Statements

As Plaintiff acknowledges, PwC provided *opinions* on Valeant's financial statements and

ICFR for the year ending December 31, 2014.  Compl. ¶ 692.  PwC opined, in pertinent part:

> In *our opinion*, the accompanying consolidated balance sheets and the related consolidated statements of income (loss), comprehensive income (loss), shareholders' equity, and cash flows present fairly, in all material respects, the financial position of Valeant Pharmaceuticals International, Inc. and its subsidiaries (the "Company") at December 31, 2014 and December 31, 2013, and the results of their operations and their cash flows for each of the three years in the period ended December 31, 2014 in conformity with accounting principles generally accepted in the United States of America. . . .  Also in *our opinion*, the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2014 . . . .  The Company's management is responsible for these financial statements and financial statement schedule, for maintaining effective internal control over financial reporting and for its assessment of the effectiveness of internal control over financial reporting, included in the accompanying Report of Management on Internal Control over Financial Reporting.  Our responsibility is to express *opinions* on these financial statements . . . and on the Company's internal control over financial reporting based on our integrated audits.  We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). . . .  We believe that our audits provide a reasonable basis for our *opinions*.

2014 Form 10-K at F-3 (Capra Ex. F) (emphasis added); *see also* Compl. ¶ 692.

There are three PwC opinions here, that: (i) Valeant's 2014 financial statements were

fairly presented; (ii) Valeant maintained effective ICFR as of year-end 2014; and (iii) PwC had

performed its audits in accordance with PCAOB standards.  Plaintiff asserts that these opinions

were "false statements" (Compl. ¶ 704), *i.e.*, misstatements.[5]  Plaintiff does not allege that PwC

provided these opinions fraudulently or recklessly or that PwC disbelieved them at the time.  *See*

*id.* ¶ 669 ("exclud[ing] allegations . . . [of] fraud or intentional misconduct").

---

[5] Plaintiff does not plead any PwC omission.  Although Plaintiff makes a perfunctory reference to the statutory language of Section 11, by referring to misstatements "*and/or*" omissions (Compl. ¶ 693), Plaintiff identifies PwC's opinions as alleged "false statements" (*id.* ¶ 704), not omissions.

Instead, Plaintiff alleges that PwC's opinions on the Company's 2014 financial statements and ICFR were false statements because, a year later, with the benefit of hindsight and a substantial investigation, the Company determined that it had prematurely recognized a small amount of revenue—$57.5 million out of $8.2 billion in sales—and had not maintained effective ICFR as of year-end 2014. Compl. ¶¶ 693-94.

Plaintiff also asserts that PwC's opinion that it had performed its audit in accordance with PCAOB auditing standards was false because PwC failed to do so, *i.e.*, PwC was negligent. Compl. ¶¶ 693(c), 697-703. As discussed below, negligence allegations do not suffice to plead that a statement of *opinion* was a misstatement of *fact* under Section 11. In any event, these allegations are entirely conclusory and therefore entitled to no weight. After describing various auditing and accounting standards (*id.* ¶¶ 688-90, 699, 701-02) and Valeant's restatement (*id.* ¶¶ 687, 691, 694-95), Plaintiff asserts that PwC's audit did not comply with professional standards because PwC "fail[ed] to identify the accounting for the Philidor Sales Transactions as non-compliant with GAAP" (*id.* ¶ 697) and "failed to identify" the material weaknesses in ICFR that later came to light (*id.* ¶ 703). Plaintiff does not, however, plausibly allege any audit procedures PwC should have but did not perform, or explain how those procedures would have identified that certain pre-agreement sales to Philidor were outside the normal course.

Indeed, Plaintiff's only factual allegation is that PwC provided its opinions "even after discussing and reviewing the facts of the Philidor Sales Transactions with Carro," Valeant's former controller. Compl. ¶ 697. But Plaintiff does not plead any facts about the content of that discussion, much less what information Carro provided that should have led PwC to reach a different opinion. On the contrary, Plaintiff relies on Valeant's restatement, which includes the after-the-fact finding that Carro had provided "incorrect information" to PwC. *Id.* ¶ 41.

9

## PLEADING STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Whether a claim is plausible depends on the *factual* allegations because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Thus, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

**I.      Plaintiff fails to plead that PwC's opinion statements were false.**

Section 11 relates to registration statements that:

> contained an untrue statement of a material ***fact*** or omitted to state a material ***fact*** required to be stated therein or necessary to make the statements therein not misleading.

15 U.S.C. § 77k(a) (emphasis added).

The PwC statements that Plaintiff challenges as "false statements" (Compl. ¶ 704), however, are explicitly presented as ***opinions*** (*id.* ¶ 692). The United States Supreme Court has held that an opinion statement is not actionable under Section 11 merely because it later turns out to be incorrect. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1325-27 (2015). Rather, a statement of opinion is actionable as a factual misstatement only if the speaker did not sincerely believe the opinion at the time. *Id.* at 1326. Plaintiff's claim fails because Plaintiff has not alleged that PwC disbelieved its opinions at the time.

**A.     Under *Omnicare*, an opinion statement is actionable under Section 11 only if the speaker did not sincerely believe the opinion at the time.**

In *Omnicare*, the Supreme Court explained that every opinion statement "explicitly affirms one fact: that the speaker actually holds the stated belief." 135 S. Ct. at 1326. Thus, the speaker may be liable only if the speaker does not actually hold the stated belief, *i.e.*, if the speaker disbelieves her opinion. *Id.* But the speaker is not liable merely because a plaintiff alleges that her "belief turned out to be wrong." *Id.* at 1327. As the Court explained:

> [Such an] allegation alone will not give rise to liability under § 11's first clause [regarding misstatements] because, as we have shown, a sincere statement of pure opinion is not an "untrue statement of material fact," regardless whether an investor can ultimately prove the belief wrong. That clause, limited as it is to factual statements, does not allow investors to second-guess inherently subjective and uncertain assessments.

*Id.*

The Court gave as a hypothetical example a CEO's statement, "I believe our marketing practices are lawful." 135 S. Ct. at 1326. As the Court explained, if the CEO "actually did think that, she could not be liable for a false statement of fact—even if she afterward discovered a longtime violation of law. Once again, the statement would have been true, because all she expressed was a view, not a certainty, about legal compliance." *Id.* In short, a statement of "pure opinion" is not actionable as a misstatement under Section 11 unless the speaker did not actually hold it. *Id.* at 1327.

**B.     PwC's opinions are subject to the *Omnicare* standard for Section 11 claims.**

The very objective of an audit is the "expression of an opinion" in one of several standardized reports prescribed by auditing standards. AU 110.01; AU 508 (Capra Exs. A, C). In those prescribed reports, the auditor's statement is an opinion. Consistent with that requirement, PwC stated that it was providing its "*opinion*" on Valeant's 2014 financial statements and its "*opinion*" on whether Valeant maintained effective internal control over

financial reporting.  *See* 2014 Form 10-K at F-3 (Capra Ex. F).  That alone qualifies PwC's statements as opinions.  *See Omnicare*, 135 S. Ct. at 1328 (distinguishing opinion statements by the form of words used in those statements).

Ignoring both the nature of an audit and what PwC actually said in its audit report, Plaintiff tries to characterize an audit as an "objective evaluation" of "underlying facts" in a company's financial statements.  Compl. ¶¶ 690, 691.  That conclusory statement is undercut by the auditing standards on which Plaintiff relies and by courts that have considered them.  The auditing standards generally make clear that there are "differing interpretations" in applying accounting principles and that auditing requires "judgment regarding both the areas to be tested and the nature, timing, and extent of the tests to be performed."  AU 625.01, AU 230.11 (Capra Exs. G, H).  Courts likewise recognize that the "decision how and when to apply the provisions of GAAP or GAAS requires an accountant or auditor to exercise its own judgment and consider the specific circumstances of its client's economic activities."  *Reiger v. Altris Software, Inc.*, 1999 WL 540893, at *6 (S.D. Cal. Apr. 30, 1999).  Accordingly, the auditor's statement that it has complied with applicable auditing standards is also "inherently . . . one of opinion."  *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 302 (S.D.N.Y. 2011).

Based on these considerations, courts addressing Section 11 claims against auditors have held that the auditor's statements, expressed in the same words as PwC's, are opinions subject to the *Omnicare* standard.  For example, the Court of Appeals for the Second Circuit has recently confirmed that "[a]udit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of opinion subject to the *Omnicare* standard for Section 11 claims."  *Querub v. Moore Stephens Hong Kong*, _ F. App'x _, 2016 WL 2942415, at *3 (2d Cir. May 20,

2016) (Summary Order).[6]  District courts, including one in this Circuit, have likewise held that an auditor's statements are "*pure* statement[s] of opinion" under *Omnicare*.  *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *10 (S.D. Tex. July 6, 2016) (emphasis added) (citing *Lehman*); *see also In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *17-18 (N.D. Cal. Oct. 1, 2015) (applying *Omnicare* standard to audit opinions); *SEPTA v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *33-34 (M.D. Pa. June 22, 2015) (same).[7]  Accordingly, PwC's opinions are subject to the *Omnicare* standard for Section 11 claims.

### C.   Courts have applied *Omnicare* to dismiss Section 11 claims against independent auditors when plaintiffs do not allege subjective disbelief.

Because *Omnicare* applies to audit opinions, it is insufficient to allege that those opinions turned out to be wrong in light of a material misstatement in a company's financial statements or a material weakness in its ICFR.  Instead, a plaintiff must plead facts showing that the auditor did not sincerely believe its opinions at the time they were made.  *Omnicare*, 135 S. Ct. at 1326.

In the absence of allegations of subjective disbelief, courts applying *Omnicare* have dismissed Section 11 claims against independent auditors.  For example, in this Circuit, in *SEPTA*, *supra*, the plaintiff alleged that an auditor's opinion was a false statement under Section

---

[6] This court may "look[] to relevant authority in other Circuits" because, to PwC's knowledge, the Third Circuit has not yet applied *Omnicare* to a claim against an auditor.  *United States v. Brassington*, 2010 WL 3419430, at *1 (D.N.J. Aug. 26, 2010).  Previous Third Circuit case law is consistent with the concept that an auditor provides an opinion.  *See In re IKON Office Solutions, Inc.*, 277 F.3d 658, 673 (3d Cir. 2002) ("An audit does not guarantee that a client's accounts and financial statements are correct any more than a sanguine medical diagnosis guarantees well-being.").

[7] One district court in the Second Circuit has asserted that audit opinions contain "embedded statements of fact."  *In re Petrobras Sec. Litig.*, No. 14-cv-9662-JSR, slip op. at 9 (S.D.N.Y. Feb. 19, 2016).  But, as another district court has observed, the Second Circuit's subsequent "holding in [*Querub*] directly contradicts" that proposition.  *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *11 (S.D. Tex. July 6, 2016).  One court in this district has rejected the subjective disbelief pleading requirement, but the case was decided before *Omnicare*.  *See Yang v. Tibet Pharm., Inc.*, 2015 WL 730036, at *3 & n.7 (D.N.J. Feb. 20, 2015).

11 because the auditor "failed to adhere to the PCAOB standards when conducting its audit"—in other words, that the auditor was negligent. 2015 WL 3833849, at *33. The District Court for the Middle District of Pennsylvania dismissed the claim because plaintiff "failed to point to a factual basis supporting its allegation that [the auditor] did not believe its opinion." *Id.* at *34.

Similarly, in *Johnson*, *supra*, the company determined that its previously issued audited financial statements should no longer be relied upon because they did not account for a director's self-dealing transactions. 2016 WL 3654657, at *2. Plaintiffs alleged that the auditor's opinion on those financial statements was false because the auditor did not conduct its audits in accordance with PCAOB standards—again, that the auditor was negligent. *Id.* at *9. The district court dismissed the claim because "Plaintiffs do not allege that [the auditor] did not subjectively believe any of the opinions it provided in its report, and [the auditor's] opinions do not contain any embedded statements of fact that are untrue." *Id.* at *12. *See also In re Velti*, 2015 WL 5736589, at *17-24 (similar); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 645 F. App'x 72, 2016 WL 1392280, at *3 (2d Cir. Apr. 8, 2016) (Summary Order) (affirming dismissal of Section 18 claim (15 U.S.C. § 78r) under *Omnicare* because plaintiffs did not allege that the auditor "lacked a subjective belief in its opinions").[8]

The take-away from these cases is that a plaintiff can only plead a factual misstatement under Section 11 by alleging that the auditor did not sincerely hold its opinions, *i.e.*, subjective disbelief. An allegation of negligence of the kind asserted here—that the auditor did not comply with PCAOB standards—does not suffice.

---

[8] *See generally In re Puda Coal Sec. Inc. Litig.*, 30 F. Supp. 3d 230, 259-60 (S.D.N.Y. 2014) (granting summary judgment in favor of auditors based on lack of "subjective falsity" because there was no evidence that they knew of the misstatement, only that they had "failed to figure this fundamental fact out"), *aff'd sub nom. Querub v. Moore Stephens Hong Kong*, _ F. App'x _, 2016 WL 2942415, at *3 (2d Cir. May 20, 2016) (Summary Order).

**D.     Plaintiff does not allege PwC's subjective disbelief.**

Plaintiff does not allege that PwC knew its opinion statements were false at the time it made them.  For example, Plaintiff does not allege that PwC knew that Valeant had erroneously recognized revenue on certain pre-agreement sales to Philidor, but that PwC nonetheless issued its opinion stating that Valeant's 2014 financial statements were fairly presented.   On the contrary, Plaintiff alleges that PwC "fail[ed] to identify the accounting for the Philidor Sales Transactions as non-compliant with GAAP" and "failed to identify" material weaknesses in the Company's ICFR.  Compl. ¶¶ 697, 703.  These are (conclusory) allegations of negligence, not subjective disbelief.  Nor would it be plausible for Plaintiff to allege that PwC disbelieved its own opinions when Valeant's restatement indicates that PwC was provided with "incorrect information."  *Id.* ¶ 41.

Finally, Plaintiff's own pleading forecloses any allegation of PwC's subjective disbelief. Plaintiff "exclude[s] allegations that could be construed as alleging fraud or intentional misconduct" from its Section 11 claim against PwC.  Compl. ¶ 669.  In *Omnicare*, the Supreme Court noted that the "complaint explicitly 'exclude[s] and disclaim[s]' any allegation sounding in fraud or deception," and therefore plaintiffs "do not contest that Omnicare's opinion was honestly held."  135 S. Ct. 1327 (alterations in original).  Here, too, Plaintiff's disclaimer of any fraud allegations likewise precludes any assertion that PwC did not honestly hold its audit opinions.  *See In re Velti*, 2015 WL 5736589, at *18 (plaintiffs "effectively pleaded themselves out of stating a claim under Section 11's false-statements clause" by disclaiming any fraud allegations); *In re Am. Int'l Grp., Inc., 2008 Sec. Litig.*, 2013 WL 1787567, at *4-5 (S.D.N.Y. Apr. 26, 2013) (similar disclaimer incompatible with subjective disbelief).

Based on the absence of any allegations that PwC did not sincerely believe its opinions, and based on Plaintiff's reliance on Valeant's restatement, which acknowledges that PwC was

provided with incorrect information, Plaintiff has not pleaded and cannot plead that PwC disbelieved the opinions expressed in its audit report.  Under these circumstances, the Court should dismiss the Section 11 claim against PwC with prejudice.

**II.**     **Plaintiff lacks standing to bring a Section 11 claim relating to the March 2015 stock offering.**

Plaintiff's claim against PwC is based on the March 18, 2015 Prospectus Supplement for the March 2015 stock offering, which incorporated by reference PwC's audit report.  Compl. ¶¶ 559, 670.   For the reasons set forth in Part III(A) of the Bank Offering Defendants' Memorandum of Law, filed September 13, 2016, which PwC incorporates by reference herein, Plaintiff does not plausibly allege that it purchased shares in or traceable to the March 2015 stock offering.   Accordingly, the Court should also dismiss the claim against PwC because Plaintiff lacks standing to assert it.

<u>**CONCLUSION**</u>

For all the foregoing reasons, the Court should dismiss Count VII of the Complaint as to PwC with prejudice.

Dated: September 13, 2016

Respectfully submitted,

CHIESA SHAHINIAN & GIANTOMASI PC

By:  /s/A. Ross Pearlson
       A. Ross Pearlson
       James Van Splinter
       One Boland Drive
       West Orange, NJ 07052
       Telephone: (973) 530-2100
       Facsimile: (973) 530-2300

KING & SPALDING LLP

       James J. Capra, Jr. (admitted *pro hac vice*)
       1185 Avenue of the Americas
       New York, NY 10036-4003
       Telephone:  (212) 556-2100
       Facsimile:  (212) 556-2222

       Kenneth Y. Turnbull (*pro hac vice* filed)
       1700 Pennsylvania Avenue, NW
       Washington, DC 20006-4707
       Telephone:  (202) 737-0500
       Facsimile:  (202) 626-3737

       *Attorneys for Defendant*
       *PricewaterhouseCoopers LLP*

17