**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | ) ) ) ) | **Master File No. 3:15-cv-07658 (MAS) (LHG)** |
| This Document Relates To: | ) ) ) | **(ORAL ARGUMENT REQUESTED)** |
| ALL ACTIONS. | ) ) ) | **Return Date: January 3, 2017** |

---

### MEMORANDUM OF LAW IN SUPPORT OF TANYA CARRO'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

---

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone: (973) 848-8615
Facsimile:  (973) 297-6615

William J. Schwartz
Laura Grossfield Birger
COOLEY LLP
1114 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 479-6000
Facsimile:  (212) 479-6275
*Pro Hac Vice Admission Pending*

*Attorneys for Defendant Tanya Carro*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................1

THE COMPLAINT'S ALLEGATIONS REGARDING TANYA CARRO ...................................2

ARGUMENT ..................................................................................4

I.     Plaintiffs Fail To Allege That Ms. Carro Made Any False Statements ...........................4

II.    Plaintiffs Fail To Allege That Ms. Carro Acted With Scienter ..........................................8

      A.    None Of The Scienter Allegations Relate To The October 26 Statements............10

      B.    The Company's Claim That Ms. Carro's "Improper Conduct" Contributed To Accounting Errors Does Not Establish A Strong Inference Of Scienter.........11

      C.    Plaintiffs' "Additional Scienter Allegations" Rely On Impermissible Assumptions...............................................................13

III.    Ms. Carro's Allegedly False Statements Were Not Material ...........................................15

CONCLUSION..................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999)......................................................14

*In re Alpharma Secs. Litig.*,
372 F.3d 137 (3d Cir. 2004)...................................................12, 14

*In re Bio-Tech. Gen. Corp. Sec. Litig.*,
380 F. Supp. 2d 574 (D.N.J. 2005) ...................................11, 12, 13

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir.1997)......................................................4, 5

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014)......................................................4, 5

*In re Ferro Corp. Sec. Litig.*,
2007 WL 1691358 (N.D. Ohio June 11, 2007)............................7

*In re The Goodyear Tire & Rubber Co. Sec. Litig.*,
436 F.Supp.2d 873 (N.D. Ohio 2006)..........................................7

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004)......................................................11

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
277 F.3d 658 (3d Cir. 2002)........................................................8

*Inst'l Invs. Grp. v. Avaya*,
564 F.3d 242 (3d Cir. 2009)..............................................8, 10, 12

*In re Intelligroup Secs. Litig.*,
527 F. Supp. 2d 262 (D.N.J. 2007) .....................................12, 13

*In re Interpool, Inc. Sec. Litig.*,
2005 WL 2000237 (D.N.J. Aug. 17, 2005) ...............................13

*Kennilworth Partners L.P. v. Cendant Corp.*,
59 F. Supp. 2d 417 (D.N.J. 1999) .......................................12, 14

*Messner v. USA Techs., Inc.*,
2016 WL 1466543 (E.D. Pa. Apr. 13, 2016) .............................12

# TABLE OF AUTHORITIES
## CONTINUED

**Page(s)**

*In re Milestone Sci. Sec. Litig.*,
    103 F. Supp. 2d 425 (D.N.J. 2000) ...................................................................14

*Nappier v. PricewaterhouseCoopers LLP*,
    227 F.Supp.2d 263 (D.N.J. 2002) ....................................................................12

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010) ....................................................................8

*In re Nice Sys., Ltd. Sec. Litig.*,
    135 F. Supp. 2d 551 (D.N.J. 2001) ..................................................................5, 6

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2009) ...............................................................................4

*In re Party City Sec. Litig.*,
    147 F. Supp. 2d 282 (D.N.J. 2001) .....................................................................7

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ..............................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..............................................................................5, 9, 12

*In re Westinghouse Sec. Litig.*,
    90 F.3d 696 (3d Cir.1996) .................................................................................12

*In re Wilmington Trust Sec. Litig.*,
    852 F. Supp. 2d 477 (D. Del. 2012) ....................................................................7

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007) .....................................................................3, 4, 10

**Statutes & Rules**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ......................8, 10

17 C.F.R. § 229.101(c)(1)(vii) ...............................................................................6

## PRELIMINARY STATEMENT

In the 282 pages of the Consolidated Amended Complaint (the "Complaint"), plaintiffs refer to Tanya Carro, the former corporate controller for Valeant Pharmaceuticals International, Inc. (the "Company" or "Valeant"), only a handful of times.  And although the Complaint identifies scores of allegedly false statements made by various defendants, only two statements, both made during an October 26, 2015 conference call, are attributed to Ms. Carro.  In these two statements, Ms. Carro described the Company's historical view about whether to separately disclose its relationship with Philidor in its financial statements.

Nowhere do plaintiffs dispute the accuracy of Ms. Carro's after-the-fact summary of the Company's disclosure analysis concerning Philidor.  Put simply, nothing in the Complaint provides any basis for plaintiffs' claim that Ms. Carro made misstatements to investors.  Further, the Complaint fails to allege scienter.  Plaintiffs repeatedly focus on Valeant's March 21, 2016 8-K, which claimed that Ms. Carro's "improper conduct" contributed to accounting errors that led to a restatement of revenues (the "Restatement").  No matter how many times plaintiffs repeat the phrase "improper conduct," it falls far short of supporting a strong inference that Ms. Carro acted with fraudulent intent when she made the statements alleged in the Complaint.  None of the facts alleged in the Complaint establish that Ms. Carro believed her statements were false or misleading when made or that she was deliberately ignorant of obvious wrongdoing.

Ms. Carro joins in the arguments in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Complaint filed by Valeant (the "Company Brief" or "CMOL").  In addition, the Complaint should be dismissed as to Ms. Carro for several independent reasons.

*First*, it fails to plead with particularity that Ms. Carro made any material false statements to investors.

1

*Second*, Ms. Carro's "improper conduct" that purportedly contributed to the Restatement is entirely unrelated to her alleged misstatements.  Plaintiffs cannot infer scienter from conduct having nothing to do with the particular false statements that are alleged.

*Third*, the fact that the Company labeled Ms. Carro's conduct "improper" does not establish scienter.  "Improper" has several possible meanings, and plaintiffs allege no facts demonstrating why their interpretation – that Ms. Carro intended to deceive investors – is the most plausible.

*Fourth*, the scienter allegations attributed to all "Individual Defendants" impermissibly rely on conclusory assumptions about Ms. Carro's position in the Company, assert without factual basis that she must have known about the fraud, and do not meet the particularized pleading standard the law requires.

## THE COMPLAINT'S ALLEGATIONS REGARDING TANYA CARRO

Until the spring of 2016, Tanya Carro was Valeant's Corporate Controller.  Compl. ¶ 41. The Complaint alleges that Ms. Carro made two false statements, both during an October 26, 2015 conference call with investors and analysts (hereinafter, the "October 26 Statements"). Compl. ¶ 221.  During that call, Ms. Carro was asked to address why Valeant had not specifically disclosed Philidor in its prior financial statements.  The Complaint alleges:

- "Carro claimed that, as of year-end 2014, '***Philidor is not considered to be material to Valeant's business for reporting purposes***' at the end of 2014 because the 'GAAP requirement for disclosing sales to large customers is 10% of revenue' and in December 2014 Philidor's year-to-date net sales were $111 million; and

- Carro claimed that for the first two quarters of 2015 '***Philidor was not specifically mentioned in our disclosures because it had not been material to the consolidated financial statements,***' because '[i]t represented 1% or less of total assets and 7% or less of consolidated net revenues since the fourth quarter 2014.'"

Compl. ¶ 221(a-b).  *See also* Exhibit 38 to the Declaration of Robert J. Giuffra, Jr., submitted

with the Company Brief (Oct. 26, 2015 Call Transcript) at 9-10.[1]  Plaintiffs allege that the

highlighted portions of the excerpts above "were false and misleading when made."  Compl. ¶

228.  They then allege a series of "true facts," relating generally to Valeant's business strategy,

business risks, financial performance, guidance, and accounting practices or controls.  *Id.*  They

allege that these "true facts" demonstrate the falsity of numerous statements by various

individuals alleged in earlier paragraphs of the Complaint, including the two isolated statements

attributed to Ms. Carro.  *Id.*  None of the "true facts" refer or relate specifically to the October 26

Statements.

Separately, plaintiffs refer several times to the Company's March 21, 2016 8-K (the

"March 21 8-K"), in which the Company disclosed that $58 million in revenue from sales to

Philidor, and the "earnings impact" of the revenue, "should have been recognized at a later date

than when originally recognized."  Exhibit 37 (Mar. 21, 2016 8-K).  *See also* Compl. ¶¶ 302,

315-319.  This revenue recognition error had a limited impact on the Company's revenues,

profits and assets for 2014 and 2015; the Restatement, which corrected the error, actually had the

effect of increasing net income in the first quarter of 2015 by 32%.  *See* CMOL, Allegations of

Complaint § O.  The Complaint does not allege that Ms. Carro made any false statements in

connection with the Restatement.

As their only specific evidence of scienter for Ms. Carro, plaintiffs refer repeatedly to the

Company's statement in the 8-K that the unspecified "improper conduct of the Company's

---

[1]  Exhibits 1 (VRX 10-K FY 2015), 3 (VRX 10-K FY 2013), 37 (VRX 8-K (Mar. 21, 2016)), and 38 (Oct. 26, 2015 Call Transcript) to the Declaration of Robert J. Giuffra, Jr., submitted with the Company Brief, and referred to in this Memorandum of Law, are incorporated into the Complaint by reference and therefore can be properly considered by the Court in deciding this motion to dismiss.  *See* CMOL, Allegations of the Complaint § A, n.4; *Winer Family Trust v. Queen*, 503 F.3d 319, 328-29 (3d Cir. 2007) (District court "properly probed documents attached to defendants' motion to dismiss . . . because these documents were integral to and/or explicitly relied upon by the amended complaint.").

former Chief Financial Officer and former Corporate Controller, which resulted in the provision

of incorrect information to the [Audit] Committee and the Company's auditors, contributed to

the misstatement of results . . . . ." [2]  Ex. 37.  *See also* Compl. ¶¶ 41, 444.  The Complaint also

refers to the Company's statement in the March 21 8-K that Ms. Carro was placed on

"administrative leave," and alleges that, a couple of months after the Restatement, Ms. Carro was

replaced as Corporate Controller.  Compl. ¶¶ 41, 444.

## ARGUMENT

I.    **PLAINTIFFS FAIL TO ALLEGE THAT MS. CARRO MADE ANY FALSE STATEMENTS**

"To state a valid securities fraud claim under Rule 10b–5, a plaintiff must first establish

that [a] defendant, in connection with the purchase or sale of a security, made 'a materially false

or misleading statement or omitted to state a material fact necessary to make a statement not

misleading.'"  *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2009) (quoting *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1417 (3d Cir.1997)).  The Private Securities Litigation

Reform Act (the "PSLRA") requires plaintiffs to "specify each allegedly misleading statement,

why the statement was misleading, and, if an allegation is made on information and belief, all

facts supporting that belief with particularity."  *Winer Family Trust v. Queen*, 503 F.3d 319, 326

(3d Cir. 2007).  That is, for each alleged false statement, the complaint must contain specific,

particularized allegations showing why the statement is false.  *See City of Edinburgh Council v.*

*Pfizer, Inc.*, 754 F.3d 159, 168 (3d Cir. 2014) (affirming dismissal of complaint where plaintiffs'

"allegations are insufficient to maintain a plausible claim of falsity . . . under the 'exacting

pleading requirements' of the PSLRA," and where plaintiffs had "failed 'to specify . . . the

---

[2] The Complaint mischaracterizes the Company's statement as a claim that Ms. Carro's "improper conduct" resulted in the provision of incorrect information to the Ad Hoc Committee, but the March 21 8-K makes clear that the reference was to Valeant's Audit and Risk Committee.  *See* Compl. ¶ 41, 444; Ex. 37.

reason or reasons why the statement is misleading'") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 322 (2007)).

Plaintiffs identify two allegedly misleading statements, namely, that prior to December 2014, "Philidor [was] not considered to be material to Valeant's business for reporting purposes," and that "Philidor was not specifically mentioned in our disclosures [until October 2015] because it had not been material to the consolidated financial statements."  Compl. ¶ 221.  But nowhere does the Complaint actually allege that these statements are false or misleading.  In fact, both statements are accurate recitations of Valeant's historical disclosure analysis concerning Philidor.

In speaking to investors during the October 26, 2015 conference call, Ms. Carro was asked to articulate the Company's "disclosure considerations relating to Philidor" – why, prior to October 2015, the Company had not considered Philidor material for accounting purposes and had not specifically disclosed it in the Company's financial statements.  Ex. 38 at 9-10.[3]  Ms. Carro first stated that, at the time of the purchase of the option to acquire Philidor, sales to Philidor represented a small fraction of the Company's overall business – just $111 million.[4]  *Id.* at 9.  She explained that the "GAAP requirement for disclosing sales to large customers is 10%

---

[3] Courts are encouraged to view allegedly false statements in context, especially where doing so prevents plaintiffs from maintaining baseless fraud claims by "extracting an isolated statement from a document" whose "full context" makes it "clear that the statement was not fraudulent."  *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 565–66 (D.N.J. 2001) (quoting *In re Burlington*, 114 F.3d at 1426).  *See also City of Edinburgh Council*, 754 F.3d 159, 168–69 (finding that complaint was properly dismissed after reading the full press release incorporated by reference which provided three bases for the allegedly misleading statement).

[4] Philidor contributed "less than 1%" of Valeant's total consolidated net revenue prior to mid-December 2014.  CMOL, Alleg. § B(1) (citing Ex. 1 (VRX 10-K FY 2015) at 41).

of revenue," so Philidor was not considered material "for reporting purposes" or specifically identified in the Company's financial statements.[5]  *Id.* at 9.

Next, Ms. Carro recounted that the purchase of the option was not specifically disclosed because that transaction did not meet Valeant's "pre-established internal threshold for specifically disclosing transactions in the business combination footnotes to its quarterly and annual financial statements . . . ."  Ex. 38 at 9.  For this reason, and because Philidor "represented 1% or less of total assets and 7% or less of consolidated net revenues since the fourth quarter of 2014," Ms. Carro stated that Philidor was not "material to the consolidated financial statements." *Id.* at 10.[6]

Plaintiffs plead no facts that refute Ms. Carro's description of the Company's prior reasoning concerning Philidor.  The October 26 Statements were made after Valeant's relationship with Philidor was disclosed to the public, *see* CMOL, Alleg. § I, and concerned only the Company's *prior* disclosure considerations.  Plaintiffs do not allege that Ms. Carro inaccurately represented the Company's view, prior to October 2015, about whether Philidor was material or should be separately disclosed.  Nor do plaintiffs allege that Ms. Carro's description of the Company's financials was incorrect or misleading.  Nowhere do plaintiffs allege that sales to Philidor were actually greater than 10% of Valeant's total revenues in 2014, or that the option transaction did exceed the internal Valeant threshold for disclosure.  In short, plaintiffs do not actually allege that what Ms. Carro said to investors on October 26, 2015 was false.  *See In re Nice Sys.*, 135 F. Supp. 2d 551, 575 (D.N.J. 2001) (dismissing complaint where plaintiffs failed

---

[5]  This materiality threshold was previously disclosed in Valeant's financial statements, *see* CMOL, Alleg. § B(1) (citing Ex. 3 (VRX 10-K FY 2013) at F-14), and was also consistent with SEC disclosure guidance.  *Id.*, n.6 (citing Item 101(c)(1)(vii) of Regulation S-K, 17 C.F.R. § 229.101(c)(1)(vii)).

[6]  Ms. Carro also clarified for investors that, while Philidor was not specifically identified prior to October 2015, "the consolidation of variable interest entities, which includes Philidor" was described in footnotes in Valeant's 2014 10-K.  Ex. 38 at 10.

to allege any false statements); *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 300 (D.N.J. 2001) (dismissing complaint because "[s]imply referring to a series of public statements and then alleging, in a general and conclusory manner, that those disclosures were false or misleading is insufficient").

Instead of pleading falsity with particularity, plaintiffs cite to a series of so-called "true facts," often repeated verbatim and applied indiscriminately to dozens of alleged misstatements throughout the Complaint. *See, e.g.*, Compl. ¶¶ 139, 148, 165, 181, 190, 202, 228.  These "true facts" describe purported problems with Valeant's business strategy, business risks, financial performance, or unrelated accounting practices.  But none has any bearing on the accuracy of the October 26 Statements.

"[R]epeatedly refer[ring] to a list of alleged improprieties that may or may not have anything to do with the statements" and "requiring the Court to try to match the allegedly fraudulent statements to the allegations of wrongdoing scattered throughout the [lengthy] Complaint" is not sufficient to plead falsity.  *In re The Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F.Supp.2d 873, 904 (N.D. Ohio 2006).  *See also In re Ferro Corp. Sec. Litig.*, 2007 WL 1691358, at *19 (N.D. Ohio June 11, 2007) (Where plaintiffs "merely repeat[] (almost verbatim) the same list of reasons after each separate series of purportedly false statements," and "leave[] it up to the Court to match the allegedly false statement(s) with the reason(s) why the statement is false," they have not adequately pleaded falsity.).  It is simply "not sufficient" for plaintiffs to "direct[] the court to a laundry list of reasons why a statement could be untrue" and never "address [why] each individual statement is false or misleading."  *In re Wilmington Trust Sec. Litig.*, 852 F. Supp. 2d 477, 490 (D. Del. 2012).  None of the factual allegations in the Complaint

– including the undifferentiated "true facts" – establish that Ms. Carro made any misstatement to investors.

## II.    PLAINTIFFS FAIL TO ALLEGE THAT MS. CARRO ACTED WITH SCIENTER

The PSLRA requires that plaintiffs "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind" as to each alleged misstatement.  15 U.S.C. § 78u–4(b)(2)(a) (emphasis added).  That required scienter is "a mental state embracing intent to deceive, manipulate or defraud, or, at a minimum, highly unreasonable (conduct), involving not merely simple, or even excusable negligence, but an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 277 F.3d 658, 667 (3d Cir. 2002) (citations omitted).

Pieces of the scienter puzzle can be pled by establishing motive and opportunity to commit fraud, which cannot by themselves "serve as an independent route to scienter," *Inst'l Invs. Grp. v. Avaya*, 564 F.3d 242, 277 (3d Cir. 2009), and by setting forth circumstantial evidence of either conscious or reckless behavior.  *Id.* at 267-69.  To demonstrate motive, plaintiffs must show, for example, that the defendant "benefitted in a concrete and personal way from the purported fraud" or "engaged in deliberately illegal behavior."  *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 549 (D.N.J. 2010) (citations omitted). *See also* CMOL, Argument § I(A).  If plaintiffs allege only circumstantial evidence of intent or recklessness, without any evidence of motive and opportunity, "the strength of the circumstantial allegations must be even greater."  *Nat'l Junior Baseball League* at 552 (citations omitted).  *See also* CMOL, Arg. § I(B).  In evaluating a complaint, courts must consider "plausible nonculpable explanations for the defendant's conduct" against "inferences favoring the plaintiff."  *Tellabs*,

551 U.S. at 324.  To be "strong," an inference of scienter must be "at least as compelling as any opposing inference of nonfraudulent intent."  *Id.* at 314.

Plaintiffs do not come close to alleging that Ms. Carro made any misstatements to investors with scienter.  The October 26 Statements concerned the Company's historical view of disclosure considerations relating to Philidor.  The Restatement (and the "improper conduct" that purportedly contributed to it) concerned an entirely separate issue – the timing of revenue recognition for certain Philidor sales.  Ms. Carro's alleged "improper conduct" related to the Restatement only and has no nexus whatsoever to the October 26 Statements.  It therefore cannot provide a basis for scienter.

In any event, neither the accounting errors that led to the Restatement nor the purportedly "improper conduct" that "contributed to" them suggests fraud.  The Restatement acknowledged that a tiny fraction of Valeant's 2014 revenues – $58 million out of $8.2 billion – were recognized prematurely.  CMOL, Arg. § I(B)(1); Ex. 37.  The restatement of those revenues actually resulted in an *increase* in net income in 2015, and had no impact on the Company's net cash flows.  CMOL, Arg. § I(B)(1).  That is, the premature revenue recognition, supposedly evidence of fraud, had the effect of *understating* Valeant's net income in 2015.  CMOL, Arg. § I(C).  Nothing in the Complaint provides any basis to infer that Ms. Carro or others at Valeant acted with any particular fraudulent purpose in connection with that premature revenue recognition.  Plaintiffs do not allege that Ms. Carro used inappropriate accounting practices to obtain a "concrete and personal benefit" from the alleged fraud, that she engaged in deliberately deceitful behavior, or that she turned a blind eye to obvious wrong doing.  That is, there is no evidence of any intent to defraud investors.  *See* CMOL, Arg. §§ I(B)(1), I(C).

### A.     None Of The Scienter Allegations Relate To The October 26 Statements

The PSLRA requires that plaintiffs establish a "strong inference that the defendant acted with the required state of mind" for "*each act or omission* alleged to violate this chapter."  15 U.S.C. § 78u–4(b)(2)(a) (emphasis added).  Simply put, the scienter allegation must correspond to the misstatement.  *See Winer Family Trust*, 503 F.3d at 335 ("[S]cienter must be pleaded in regards to 'each act or omission' sufficient to support a strong inference that 'the defendant' acted with the required state of mind.") (quoting 15 U.S.C. § 78u-4(b)(2)); *Inst'l Invs. Grp. v. Avaya*, 564 F.3d at 253 (same).

The Complaint fails to satisfy this basic requirement by mixing apples and oranges.  The Restatement (and the "improper conduct" that purportedly contributed to it) related to premature recognition of "approximately $58 million in net revenues relating to sales to Philidor" in late 2014.  Ex. 37.  The October 26 Statements had nothing to do with that matter.  They were, instead, historical descriptions of why Valeant determined that Philidor did not need to be specifically disclosed in its financial statements.  *See* Section I, *supra*.  Nothing in the March 21 8-K (which referred to Ms. Carro's purportedly "improper conduct") remotely suggests that Ms. Carro provided incorrect information to investors at any time, including in the October 26 Statements, or that her allegedly "improper conduct" in any way related to the disclosure of Philidor.

Stated simply, the "improper conduct" and the Restatement concern the timing of revenue recognition, not whether Valeant should have specifically disclosed Philidor in its financial statements, which was the subject of the October 26 Statements.  Ms. Carro's conduct (improper or not) with respect to the timing of revenue recognition has no bearing on whether she knowingly or recklessly misled investors in the October 26 Statements.  Because plaintiffs' evidence of scienter "bears no apparent connection" to the alleged misrepresentation, the

Complaint should be dismissed. *In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 595 (D.N.J. 2005). *See also GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004) (upholding dismissal of complaint where the scienter allegations "cannot be connected directly to any misleading statement").

### B.      The Company's Claim That Ms. Carro's "Improper Conduct" Contributed To Accounting Errors Does Not Establish A Strong Inference Of Scienter

Plaintiffs repeatedly refer to the Company's statement that the unspecified "improper conduct of the Company's former Chief Financial Officer and former Corporate Controller, which resulted in the provision of incorrect information to the [Audit] Committee and the Company's auditors, contributed to the misstatement of results . . . ." Ex. 37.  Even if the Restatement related to the October 26 Statements, the Complaint's characterization of Ms. Carro's conduct as "improper" – even when quoting the Company's own statement – without citing any other evidence supporting an inference of scienter, is not sufficient for plaintiffs to meet the pleading burden imposed by the PSLRA.  *See In re Bio-Tech.* at 588 ("Simply asserting that Defendants *improperly* capitalized certain . . . costs in financial statements . . . does not establish a strong inference of scienter, even when those financial statements are later restated to expense the formerly capitalized costs.") (emphasis added).

"Improper" has a number of definitions, several of which could be applicable here. Merriam-Webster defines "improper" as, *inter alia*, "not correct," "not following rules of acceptable behavior," "legally or morally wrong," "not suitable for the situation," or "not appropriate."[7]  Most of these definitions have nothing to do with fraud, but are instead consistent

---

[7]  Additional definitions include: "not in accord with fact, truth, or right procedure," "not regularly or normally formed or not properly so called," "not suited to the circumstances, design, or end," or "not in accord with propriety, modesty, good manners, or good taste."  Merriam-Webster, Definition of Improper, at http://www.merriam-webster.com/dictionary/improper.  *See also* Dictionary.com, Definition of Improper, at http://www.dictionary.com/browse/improper (defining improper as "not proper; not strictly belonging, applicable,

with an innocent mistake or negligence.  While some definitions could potentially be consistent with fraudulent intent, plaintiffs allege no facts—no evidence of deliberate deception, intentional wrongdoing, or extreme recklessness—that support their reliance on that term to infer a fraudulent intent.  "[A]mbiguities 'count against inferring scienter.'"  *Inst'l Inv's Grp. v. Avaya*, 564 F.3d at 268 (citing *Tellabs*, 551 U.S. at 326).  With nothing besides this indeterminate label for Ms. Carro's conduct, plaintiffs have not met their burden of demonstrating an inference of scienter that is "at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs* at 324.

In any event, even if Ms. Carro's alleged contribution to an accounting error related to the October 26 Statements (which it does not), it does not establish scienter.  "[C]ourts have uniformly held that . . . GAAP violations do not create the requisite strong inference of scienter unless plaintiffs' complaint alleges 'more.'"  *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 287 (D.N.J. 2007).  *See also In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 279–80 (3d Cir. 2006); *In re Alpharma Sec. Litig.*, 372 F.3d 137, 149-150 (3d Cir. 2004); *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 712-13 (3d Cir.1996); *In re Bio-Tech.*, 380 F. Supp. 2d 574, 588 (D.N.J. 2005); *Nappier v. PricewaterhouseCoopers LLP*, 227 F.Supp.2d 263, 276 (D.N.J. 2002)); *Messner v. USA Techs., Inc.*, 2016 WL 1466543, at *6 (E.D. Pa. Apr. 13, 2016).  Specifically, "allegations of violations of GAAP must be accompanied by factual allegations of corresponding fraudulent intent."  *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 429 (D.N.J. 1999) (citations omitted).

"[F]actual allegations of corresponding fraudulent intent" are wholly absent from this Complaint.  The Complaint alleges no facts showing that Ms. Carro knew the accounting

---

correct, etc.; erroneous; not in accordance with propriety of behavior, manners, etc.; unsuitable or inappropriate, as for the purpose or occasion; abnormal or irregular").

treatment was wrong, no facts indicating she intentionally declined to follow GAAP rules, and no facts demonstrating that she was severely reckless in providing information to the Company's auditors. *See In re Bio-Tech.*, 380 F. Supp. 2d at 588-89 (holding that "particularized facts," beyond GAAP errors, demonstrating severe recklessness, such as evidence defendants acted "in spite of" their knowledge of proper accounting treatment, or declined to follow "simple" guidelines, were required to establish scienter). Nothing about the Restatement—a minor revenue adjustment with no negative consequence to the Company's finances—suggests fraud. *See* CMOL, Arg. § I(B)(1); *In re Interpool, Inc. Sec. Litig.*, 2005 WL 2000237, at *15 (D.N.J. Aug. 17, 2005) (holding that "Defendants' alleged GAAP violations and lack of understanding may provide evidence of corporate mismanagement" but not a cognizable securities fraud claim) (citations omitted).

The Complaint also alleges that Ms. Carro was placed on "administrative leave" and eventually replaced. Compl. ¶ 41. But the termination of an executive, even when closely preceded by accounting errors and accompanied by "extraordinary corporate punishment," (something not alleged here) constitutes, at most, a "piece to the scienter puzzle." *In re Intelligroup*, 527 F. Supp. 2d 262, 347 (citations omitted). Absent specific allegations of fraudulent intent like deliberate accounting transgressions or "intentional ignorance of 'red flags,'" accounting errors and termination do not establish scienter. *Id.* at 346-347. *See also* CMOL, Arg. § I(B)(7).

### C.   Plaintiffs' "Additional Scienter Allegations" Rely On Impermissible Assumptions

The only other scienter allegations pertinent to Ms. Carro are contained in the "Additional Scienter Allegations" section of the Complaint. In this lengthy section, plaintiffs claim, *inter alia*, that each of the Individual Defendants was "personally aware of, designed, and

implemented the deceptive practices," Compl. ¶ 386, and that all fifteen must have known about "Valeant's materially misleading misstatements." Compl. ¶¶ 398. *See also* Compl. ¶¶ 397-399; CMOL, Arg. § I (summarizing plaintiffs' group scienter allegations).

These unspecific allegations fail to establish scienter for Ms. Carro. First, none relate specifically to the October 26 Statements. *See* Section II(A), *supra*. Second, given the Complaint's utter failure to set forth particular facts relating to what she actually knew or recklessly avoided knowing, the only possible basis plaintiffs have for inferring that Ms. Carro must have known anything is that she was the corporate controller. That is "precisely the type[] of inference[] which courts, on numerous occasions, have determined to be inadequate . . . ." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) (citations omitted). *See also* CMOL, Arg. §§ I(A), I(B)(5).

In case after case, courts in this District have warned litigants that "allegations that a securities-fraud defendant, because of his position within the company, must have known a statement was false or misleading are inadequate to meet the PSLRA pleading standard." *In re Milestone Sci. Sec. Litig.*, 103 F. Supp. 2d 425, 470 (D.N.J. 2000). *See also Alpharma*, 372 F.3d at 149 ("[A]llegations [that] rest primarily upon the premise that the individual defendants are liable simply by virtue of the positions they hold within the company . . . do not satisfy the scienter requirement.") (quotations omitted); *Kennilworth Partners*, 59 F. Supp. 2d at 428 ("[P]laintiffs ask the Court to infer scienter based on the defendants' positions as directors or officers . . . . This general base has been rejected by numerous courts. . . . [Such allegations] pass[] muster only when taken together with . . . more specific allegations linking their positions to their knowledge.") (quotations omitted). The "Additional Scienter Allegations" are all

premised on this impermissible assumption, and therefore add nothing to the otherwise insufficient scienter allegations.

### III.   MS. CARRO'S ALLEGEDLY FALSE STATEMENTS WERE NOT MATERIAL

As described in the Company Brief, Philidor represented less than 1% of Valeant net revenues until mid-December 2014, CMOL, Alleg. § B(1), and peaked at 7% of revenues in the third quarter of 2015.  CMOL, Arg. § II(B).  Therefore, Valeant's relationship with Philidor was not material until at least October 2015, and Valeant had no preexisting duty to disclose its name or other specifics.  *Id*.  Ms. Carro's October 26 Statements – which solely concern the reasons for not disclosing Philidor prior to October 2015 – are therefore immaterial.

### <u>CONCLUSION</u>

For the foregoing reasons and those set forth in the Company Brief, the Complaint as to Tanya Carro should be dismissed.

Dated:  September 13, 2016

By:  <u>*s/ Richard Hernandez*</u>
Richard Hernandez

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone: (973) 848-8615
Facsimile:  (973) 297-6615

William J. Schwartz
Laura Grossfield Birger
COOLEY LLP
1114 Avenue of the Americas
New York, New York  10036
Phone:  (212) 479-6000
Facsimile: (212) 479-6275
*Pro Hac Vice Admission Pending*

*Attorneys for Defendant Tanya Carro*