# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | ) ) Honorable Michael A. Shipp, U.S.D.J. ) ) Master File No. 15 CV 7658 (MAS) ) (LHG) ) |
| This Document Relates To:  All Actions | ) ) **Electronically Filed** ) ) |
| | **Oral Argument Requested** |
| | **Return date:  To be set by the Court** |

## BRIEF IN SUPPORT OF DEFENDANT HOWARD B. SCHILLER'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

**OF COUNSEL**
Robert Y. Sperling
Joseph L. Motto
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600

Elizabeth P. Papez
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20006-3817
(202) 282-5000

WINSTON & STRAWN LLP
The Legal Center
One Riverfront Plaza, Suite 730
Newark, New Jersey  07102
(973) 848-7676
James S. Richter
Melissa Steedle Bogad

*Counsel for Defendant Howard B. Schiller*

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ............................................................................... 1

RELEVANT FACTUAL ALLEGATIONS ............................................................... 7

ARGUMENT .......................................................................................................... 10

I.      PLAINTIFFS DO NOT ADEQUATELY PLEAD THAT SCHILLER MADE
        ANY MATERIALLY FALSE STATEMENTS OR OMISSIONS ................................ 12

    A.  Plaintiffs Do Not Allege That Schiller's Congressional Testimony Was
        Materially False or Misleading ................................................................... 12

    B.  Plaintiffs Do Not Adequately Allege That Schiller's Earnings Call and
        Conference Quotes Were Materially False or Misleading............................ 13

    C.  Plaintiffs Do Not Adequately Allege That Schiller Made Any Other Statements
        That Were Materially False or Misleading ................................................... 15

II.     PLAINTIFFS DO NOT ADEQUATELY PLEAD SCHILLER'S SCIENTER............... 20

    A.  Many of Plaintiffs' Allegations as to Schiller's Scienter Are Conclusory,
        Nonspecific, or Made Through Impermissible Group Pleading.................... 20

    B.  Plaintiffs' Allegations Regarding Schiller's "Motives" to Engage in Fraud Also
        Do Not Adequately Plead Scienter ............................................................... 22

    C.  Plaintiffs Do Not Plead Facts Demonstrating Schiller's Knowledge or Reckless
        Disregard of Allegedly False Statements on Pricing Practices..................... 23

    D.  Plaintiffs Do Not Plead Facts Showing Schiller's Knowledge or Reckless
        Disregard of Factual Misrepresentations Regarding Philidor....................... 26

    E.  Plaintiffs Do Not Plead Particular Facts Showing Schiller's Knowledge or
        Reckless Disregard of False Statements Regarding Internal Controls ......................... 27

III.    COUNTS III, IV, V, VI, VII, AND VIII: PLAINTIFFS HAVE NOT
        SUFFICIENTLY ALLEGED THAT SCHILLER VIOLATED SECTIONS 11 OR
        12(A)(2) OF THE SECURITIES ACT............................................................... 29

IV.     COUNTS II AND IX: PLAINTIFFS HAVE NOT SUFFICIENTLY ALLEGED
        CONTROL PERSON CLAIMS AGAINST SCHILLER................................................ 30

CONCLUSION....................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995) ......................................................................................23

*In re Advanta Corp. Sec. Litig.*,
   180 F.3d 525 (3d Cir. 1999)........................................................................... *passim*

*In re Aetna Sec. Litig.*,
   617 F.3d 272 (3d Cir. 2010)...............................................................................2, 11

*In re Amarin Corp. PLC Sec. Litig.*,
   2016 WL 1644623 (D.N.J. Apr. 26, 2016) ...........................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................10, 11

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990) (en banc)...................................................................19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................10

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470 (3d Cir. 2013)..........................................................................3, 6, 30

*In re Bristol-Myers Squibb Sec. Litig.*,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004)...................................................................28

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1414 (3d Cir. 1997).......................................................................*passim*

*Cal. Pub. Emps.' Ret. Sys.* v. *Chubb Corp.*,
   2002 WL 33934282 (D.N.J. June 26, 2002)........................................5, 13, 15, 16

*Chen v. Valeant Pharms. Int'l, Inc.*,
   No. 15-cv-7679 (Oct. 23, 2015)...............................................................................8

*City of Edinburgh Council v. Pfizer, Inc.*,
   754 F.3d 159 (3d Cir. 2014)..............................................................................4, 11

*City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*,
   713 F. Supp. 2d 378 (D. Del. 2010) *aff'd*, 442 F. App'x 672 (3d Cir. 2011).........26

## TABLE OF AUTHORITIES
*(continued)*

*Page(s)*

*In re Cybershop.com Sec. Litig.*,
189 F. Supp. 2d 214 (D.N.J. 2002) ........................................................................30

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................................11

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ...................................................................................26

*Fein v. Valeant Pharms. Int'l Inc.*,
No. 15-cv-7809 (Oct. 30, 2015) ...............................................................................8

*In re Gentiva Sec. Litig.*,
932 F.Supp.2d 352 (E.D.N.Y. 2013) .....................................................................17

*Goldstein v. MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) ..................................................................................21

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004) ...............................................................................5, 23

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
2015 WL 4469143 (D.N.J. July 22, 2015) ....................................................3, 5, 28

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) .....................................................................23, 26, 27

*Horizon Asset Mgmt. Inc. v. H & R Block, Inc.*,
580 F.3d 755 (8th Cir. 2009) ..................................................................................27

*IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*,
783 F.3d 383 (2d Cir. 2015) ...................................................................................16

*In re IKON Office Solutions, Inc.*,
277 F.3d 658 (3d Cir. 2002) ...................................................................................28

*Institutional Inv'rs Grp.* v. *Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) .......................................................................... *passim*

*In re Intelligroup Sec. Litig.*,
527 F. Supp. 2d 262 (D.N.J. 2007) .........................................................................27

*Janbay v. Canadian Solar, Inc.*,
2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ........................................................17

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Janus Capital Group, Inc. v. First Derivative Traders,*
    564 U.S. 135 (2011) ........................................................................................3, 15

*Jones v. ABN Amro Mortgage Grp., Inc.,*
    606 F.3d 119 (3d Cir. 2010) .................................................................................8

*Klein v. Autek Corp.,*
    147 F. App'x 270 (3d Cir. 2005) .........................................................................21

*Leder v. Shinfeld,*
    2008 WL 2165097 (E.D. Pa. May 22, 2008) .......................................................28

*Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.,*
    652 F. Supp. 2d 576 (E.D. Pa. 2009) ..................................................................29

*Matrixx Initiatives, Inc. v. Siracusano,*
    563 U.S. 27 (2011) ........................................................................................15, 19

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.,*
    2011 WL 3444199 (D.N.J. Aug. 8, 2011) .........................................................5, 16

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,*
    540 F.3d 1049 (9th Cir. 2008) .........................................................................24, 26

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.,*
    720 F. Supp. 2d 517 (D.N.J. 2010) ....................................................................6, 23

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000) ...............................................................................22

*OFI Asset Mgmt. v. Cooper Tire & Rubber,*
    2016 WL 4434404 (3d Cir. Aug. 22, 2016) .........................................................18

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,*
    135 S. Ct. 1318 (2015) .......................................................................................13

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.,*
    142 F. Supp. 2d 589 (D.N.J. 2001) .....................................................................22

*In re Par Pharm. Sec. Litig.,*
    2008 WL 2559362 (D.N.J. June 24, 2008) .......................................................4, 20

*In re PetroChina Co. Ltd. Sec. Litig.,*
    120 F. Supp. 3d 340 (S.D.N.Y. 2015), *aff'd* (2d Cir. Mar. 21, 2016)...................17

# TABLE OF AUTHORITIES

*(continued)*

**Page(s)**

*Potter v. Valeant Pharms. Int'l Inc.*,
   No. 15-cv-7658 (Oct. 22, 2015) ........................................................................8

*Rahman v. Kid Brands, Inc.*,
   736 F.3d 237 (3d Cir. 2013) .............................................................................7

*In re Refco Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007) ............................................................29

*Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004) .......................................................................3, 25

*In re Rockefeller Ctr. Props. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002) ...........................................................................11

*S.E.C. v. Lucent Techs., Inc.*,
   610 F. Supp. 2d 342 (D.N.J. 2009) ................................................................27

*Sapir v. Averback*,
   2016 WL 554581 (D.N.J. Feb. 10, 2016) .......................................................22

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
   2015 WL 3833849 (M.D. Pa. June 22, 2015) ...........................................17, 29

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) .........................................................................6, 20

*In re Synchronoss Sec. Litig.*,
   705 F. Supp. 2d 367 (D.N.J. 2010) .............................................................25, 26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ....................................................................3, 11, 20, 28

*In re Tellium Inc. Sec. Litig.*,
   2005 WL 1677467 (D.N.J. June 30, 2005) .................................................12, 30

*U.S. v. Gray*,
   780 F.3d 458 (1st Cir. 2015) ...........................................................................28

*In re Westinghouse Sec. Litig.*,
   90 F.3d 696 (3d Cir. 1996) ................................................................................4

*In re Wilmington Tr. Sec. Litig.*,
   852 F. Supp. 2d 477 (D. Del. 2012) ................................................................11

## TABLE OF AUTHORITIES
*(continued)*

*Page(s)*

*Wilson v. Bernstock*,
   195 F. Supp. 2d 619 (D.N.J. 2002) ........................................................22

*Winer Family Tr. v. Queen*,
   503 F.3d 319 (3d Cir. 2007)...........................................................3, 15, 19, 21

*Witriol v. Conexant Sys., Inc.*,
   2006 WL 3511155 (D.N.J. Dec. 4, 2006) ...............................................21

*Yang v. Valeant Pharms. Int'l, Inc.*,
   No. 15-cv-7746 (Oct. 27, 2015) ..............................................................8

**Statutes**

15 U.S.C. § 78u–4(b)(2)(A) .........................................................................20

15 U.S.C. § 78u–5(c)(1)(B) ..........................................................................18

15 U.S.C. § 78u-4(b)(1) ...............................................................................11

**Other Authorities**

Black's Law Dictionary (10th ed. 2014).......................................................28

*Oxford English Dictionary, available at* http://www.oed.com/....................28

Defendant Howard B. Schiller respectfully submits this Brief in Support of his Motion to Dismiss Plaintiffs' Consolidated Complaint.

## PRELIMINARY STATEMENT

In late 2015, a confluence of events and negative publicity surrounding Valeant Pharmaceuticals International, Inc. ("Valeant" or the "Company") preceded a dramatic decline in the Company's stock price.  (Compl. ¶¶ 18-26.)[1]  The stock drop triggered shareholder suits against Valeant and a number of its present and former officers, executives, and directors, including Schiller, who served as Valeant's CFO and Executive Vice President from December 2011 until June 30, 2015, was a member of Valeant's Board of Directors from September 2012 until June 2016, and served as the Company's interim CEO from January to February 2016 while then-CEO J. Michael Pearson was on medical leave.  (Compl. ¶ 37.)  These suits culminated in Lead Plaintiff TIAA-Cref and Plaintiff City of Tucson's ("Plaintiffs") Complaint, which casts the negative news surrounding Valeant's stock drop as evidence of a multi-year fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5 ("Exchange Act Claims"), and Sections 11 and 12(a)(2) of the Securities Act of 1933 ("Securities Act Claims").  (*E.g.*, Compl. ¶¶ 3-6.)

Plaintiffs' allegations against Schiller exemplify the pleading defects the Company and other Defendants detail in their Rule 12 motions,[2] and that support dismissal of the Complaint

---

[1] Plaintiffs' Consolidated Complaint for Violations of the Federal Securities Laws, Dkt. Entry No. 80 (June 24, 2016), is referenced herein as "Complaint" and cited as "Compl."

[2] Schiller hereby incorporates by reference the arguments made in the briefs in support of the motions to dismiss filed by Valeant, J. Michael Pearson, Robert L. Rosiello, Ari S. Kellen, Robert A. Ingram, Ronald H. Farmer, Colleen Goggins, Anders Lönner, Theo Melas-Kyriazi, Robert N. Power, Norma Provencio, Katherine B. Stevenson, and Jeffrey W. Ubben ("Valeant's brief"), by Barclays Capital, Inc., BMO Capital Markets Corp., CIBC World Markets Corp.,

under controlling federal rules and the Private Securities Litigation Reform Act ("PSLRA").  The factual allegations and documents they cite chronicle the realization of appropriately disclosed business risks, public criticism of Valeant's business model and affiliation with certain third parties, and accounting errors concerning the proper time for reporting a trivial amount of Company revenue.  None of these allegations supports a private claim for securities fraud, and Plaintiffs' addition of legal conclusions and inflammatory rhetoric cannot cure their failure to plead their claims against Schiller with the particularity Rule 9(b) and the PSLRA require.

The alleged misstatements Plaintiffs quote as directly attributable to Schiller consist of just three statements cited in three of the Complaint's 734 paragraphs.  (Compl. ¶¶ 16, 138, 183.)  To the extent these statements go beyond protected forward-looking projections, opinions, or puffery, *see*, *e.g.*, *In re Aetna Sec. Litig.*, 617 F.3d 272, 278-79 (3d Cir. 2010) (citing 15 U.S.C. § 78u–5(i)(1)), Plaintiffs do not plead how they were materially false or misleading, much less that Schiller knew or should have known they were false when made.  The statements the Complaint cherry-picks from Schiller's February 2016 congressional testimony (Compl. ¶¶ 422-25) likewise fail to provide a basis for Plaintiffs' claims.  These statements are not even alleged to be false or misleading.  As discussed below, Plaintiffs blatantly mischaracterize Schiller's testimony as "admitting" alleged legal violations in an improper attempt to excuse their failure adequately to plead them.  (*See id.*; Part II(C) *infra*.)  As the attached record of Schiller's testimony makes clear, Schiller merely candidly observed that in hindsight, some of Valeant's

---

Citigroup Global Markets Inc., DBS Bank Ltd., Deutsche Bank Securities Inc., DNB Markets Inc.; Goldman, Sachs & Co., HSBC Securities (USA) Inc., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Mitsubishi UFJ Securities (USA), Inc. (which, as of July 1, 2016, changed its legal name to MUFG Securities America Inc.), Morgan Stanley & Co. LLC, RBC Capital Markets LLC, SMBC Nikko Securities America, Inc., SunTrust Robinson Humphrey, Inc., and TD Securities (USA) LLC ("Bank Offering Defendants' brief"), and by the other individual defendants.

"aggressive" price increases and acquisitions were "mistakes." (Schiller Ex. A (Feb. 4, 2016 Hearing Transcript) at 9, 21; Schiller Ex. B (Feb. 4, 2016 Written Testimony) at 10-11.) Such observations "are insufficient to establish even recklessness." *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2015 WL 4469143, at *17 (D.N.J. July 22, 2015); *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 158 (3d Cir. 2004).

Plaintiffs' remaining allegations against Schiller derive from purported misstatements by Valeant or other Defendants about the Company's drug pricing practices and relationship with third-party pharmacy Philidor. (Compl. ¶¶ 132-230.) Plaintiffs attribute these statements to Schiller based on his position with the Company and mandatory certification of certain financial reports. (Compl. ¶¶ 392, 400-05.) But Plaintiffs cannot satisfy their pleading burden by lumping Schiller in with other Defendants who allegedly made material misstatements because this Circuit does not permit group pleading of fraud claims. *See, e.g.*, *Winer Family Tr. v. Queen*, 503 F.3d 319, 337 & n.6 (3d Cir. 2007). Plaintiffs fail to cure this defect by pleading facts showing that Schiller controlled other Defendants' statements to the degree required for liability. *See, e.g.*, *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). And their claims even with respect to statements Schiller could be deemed to have "made" for 10b-5 purposes, *id.*, fail for at least two reasons. First, they fail adequately to plead that any of the alleged statements was materially false or misleading. Second, they fail adequately to allege that Schiller made any, much less all, of the alleged misstatements with the requisite scienter; *i.e.*, Plaintiffs fail to "state with particularity" facts showing that Schiller made specific statements with the "intention to deceive, manipulate, or defraud," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (quotation omitted), or as a result of "conscious misbehavior or recklessness," *Institutional Inv'rs Grp.* v. *Avaya, Inc.*, 564 F.3d 242, 267 (3d Cir. 2009), that goes beyond "simple, or even inexcusable negligence, [to] an extreme departure from the standards of ordinary care," *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 493 (3d Cir. 2013).

***No Material Misstatements or Omissions***.  Plaintiffs' colorful narrative of the events surrounding Valeant's stock drop does not identify any material misstatements or omissions by Schiller.  The only inaccurate information the Complaint identifies in statements Schiller signed or certified during the putative class period is an overstatement of financial results based on mistimed revenue recognition in late 2014.  (*E.g.*, Compl. ¶ 378.)  Plaintiffs' assertion that this overstatement was "material" under accounting rules (*id.*) is a red herring.  It is undisputed that the amount of the overstatement was trivial (approximately 0.7% of reported revenue for 2014), and thus immaterial and not actionable as the basis for a securities fraud claim.  *See, e.g.*, *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 713-15 (3d Cir. 1996).  The remaining statements Plaintiffs attribute to Schiller are protected by the PSLRA's safe harbor for forward-looking statements or opinions, factually accurate in context, or concern details regarding Valeant's pricing practices and affiliate relationships that Schiller had no duty to disclose in order to render any of his alleged statements truthful or accurate.  *See, e.g.*, *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 174 (3d Cir. 2014).  The Plaintiff funds are managed by sophisticated investors who were advised of the risks associated with Valeant's non-traditional business model in the very statements they cite in the Complaint, (*see, e.g.*, Valeant MTD Ex. 3 (VRX 10-K FY 2013), at 17, 19), and who could have discovered Valeant's reported list price increases and relationship with Philidor through simple diligence.  And to the extent their claims go beyond such information, Plaintiffs do not adequately plead that Schiller knew or should have known of any facts warranting disclosure.

***No Scienter***.  Although the defects above alone preclude Plaintiffs' claims against Schiller, they independently fail because Schiller's "individual" participation in the alleged fraud is not "pled separately and with particularity."  *In re Par Pharm. Sec. Litig.*, 2008 WL 2559362, at *10 (D.N.J. June 24, 2008).  The generic claims that "the Defendants" knew or should have known facts that rendered certain statements false or misleading, (*e.g.*, Compl. ¶¶ 386, 397-99),

do not satisfy this burden.  And Plaintiffs' assertion that Schiller was motivated by compensation and performance metrics to defraud investors (e.g., Compl. ¶ 467) likewise fails to plead that he was "individually associated with the alleged fraud, other than by virtue of [his] position within" the company, *e.g., In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2011 WL 3444199, at *25-26 (D.N.J. Aug. 8, 2011), or for reasons beyond those applicable to any officer or director of a public company, *e.g.*, *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237-38, 245 (3d Cir. 2004).  Indeed, the Complaint's elaboration of Schiller's alleged scienter undermines Plaintiffs' claims.

The Complaint does not allege that Schiller sold stock or otherwise capitalized on allegedly material non-public information to the detriment of other investors.  (Compl. ¶¶ 37, 470-72.)  It concedes that Schiller was not subject to clawback or other extraordinary requests when he left the Company.  (*Id.* ¶ 414.)  And Plaintiffs' assertion that "Valeant has specifically attributed its fictitious accounting to the 'improper conduct' of Defendant Schiller," among others (Compl. ¶¶ 14, 411) provides no support for this suit.  Even accepting this statement concerning supposed "improper conduct" (which Schiller contests) as true for pleading purposes, it is unaccompanied by any factual allegations that it relates to specific, much less fraudulent, misstatements Schiller should have recognized as such based on specific "reports or statements" revealing the "contrary facts."  *See*, *e.g.*, *Cal. Pub. Emps.' Ret. Sys.* v. *Chubb Corp.*, 2002 WL 33934282, at *23 (D.N.J. June 26, 2002).  That is not surprising, because Valeant denies any admissions of fraud in its papers, and the accounting issue associated with the accusation of "improper conduct" is not material under the securities laws in any event.  *See supra*.  Further, even unencumbered by all of these fatal defects, the Complaint's references to allegations of unspecified "improper conduct" against Schiller do not support fraud claims under settled precedents holding that allegations of "corporate mismanagement are insufficient to establish even recklessness."  *Hertz*, 2015 WL 4469143, at *17.

-5-

For all of the foregoing reasons, Plaintiffs' Exchange Act Claims against Schiller are inadequately pled and warrant dismissal. Their Securities Act Claims likewise fail because they depend on the same alleged Valeant misrepresentations as the Exchange Act Claims, but Plaintiffs have not alleged any facts showing that these supposed misrepresentations are actionable as referenced in the underlying debt and stock offerings documents they cite. Both the Exchange Act Claims and Securities Act Claims also fail adequately to plead loss causation between their claimed damages and any actionable misrepresentations by Schiller. *See, e.g.*, *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 558-59 (D.N.J. 2010) ("plaintiff is required to plead that the decline in the stock price was caused by the market's discovery of defendant's fraud.") (citation omitted). And their "control person" claims against Schiller similarly fail because the Complaint does not adequately allege any primary violations of the Exchange or Securities Acts, much less that Schiller was a "culpable participant" in any such violations. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 & n.16 (3d Cir. 2006).

\* \* \* \* \*

At bottom, the facts Plaintiffs allege, like the documents they cite, refer to corporate decision-making that proved regrettable in hindsight, notably: (i) aggressively raising certain drug prices to a point that drew public ire; (ii) transacting business with a third party (Philidor) whose alleged misconduct had nothing to do with Schiller; and (iii) prematurely recognizing certain revenue immaterial to the company's earnings. Plaintiffs' efforts to impugn or mischaracterize Schiller's distinguished career as an investment banker (Compl. ¶ 37), the circumstances surrounding his departure from Valeant (*id*. ¶¶ 23, 37, 391), and his voluntary cooperation with congressional inquiries (*id*. ¶¶ 422-25), are unseemly and incapable of transforming their legally insufficient allegations into actionable securities fraud claims. Accordingly, the Court should dismiss the claims against Schiller with prejudice. *See, e.g.*,

*Belmont*, 708 F.3d at 493 (affirming dismissal of a complaint against an individual defendant when "[i]nvestors provided no evidence of scienter" against that individual defendant); *Rahman v. Kid Brands, Inc*., 736 F.3d 237, 243 (3d Cir. 2013) (similar).

## RELEVANT FACTUAL ALLEGATIONS

*Schiller's Tenure With Valeant.* Valeant is an international pharmaceutical and medical device company. (Compl. ¶¶ 2, 35.) Schiller served as Valeant's CFO from December 2011 to June 30, 2015. (*Id*. ¶ 37.) He was also a member of Valeant's Board of Directors from 2012 through June 14, 2016 (*id*.), and served as the Company's interim CEO in January and February of 2016 when then-CEO Pearson was on medical leave. (*Id*.) Plaintiffs do not attribute any alleged material misrepresentations in Company filings to Schiller after he stepped down as Valeant's CFO in June 2015.

*Primary Events Precipitating This Suit Against Schiller and Other Defendants.* Valeant's stock first came under pressure in approximately September 2015, when members of Congress and the press began vocalizing disapproval of price hikes in the prescription drug industry. (Compl. ¶¶ 232-36.) These critiques were accompanied by regulatory inquiries into Valeant's drug pricing (*see id.*) and patient assistance programs (*id*. ¶ 237), which gained momentum when a blogger with an apparent short interest in Valeant stock began publishing fantastic accusations comparing Valeant to Enron, based on inflammatory allegations concerning the operations and reimbursement practices of a third-party pharmacy—Philidor Rx Services, LLC—with which Valeant had a business relationship. (*Id*. ¶ 213.) In response to these accusations, Valeant announced that its Board of Directors had formed an ad hoc committee to review the Company's relationship with Philidor (*id*. ¶ 252), severed ties with the pharmacy (*id*. ¶¶ 252, 259), and in the process identified a small amount of Philidor sales revenue Valeant prematurely recognized in the second half of 2014. (*Id*. ¶¶ 289-90, 302-05, 308.)

These and other incidents alleged in the Complaint preceded significant downward

movement in Valeant's stock price (Compl. ¶ 26), which in turn provoked a proverbial rush to the courthouse, with Plaintiffs' counsel and others filing four separate lawsuits between October 22 and 30, 2015, which were eventually consolidated into this action.[3]  On March 21, 2016, Valeant filed with the SEC a Form 8-K describing that it was initiating a search for a CEO to replace Pearson; that Pershing Square, a major Valeant investor, would be taking two positions on the Valeant board; and that certain of the Company's historical financial statements would need to be restated due to premature revenue recognition on certain sales to Philidor during the third and fourth quarters of 2014.  (Compl. ¶¶ 36, 302; Valeant MTD Ex. 37 (VRX 8-K (Mar. 21, 2016)) at 2.)[4]  The Company determined that this premature revenue recognition caused Valeant's financial statements for 2014 to overstate revenue by approximately $58 million—or 0.7% of the $8.264 billion in reported revenue for the year, the adjustment of which would also impact reported results for the first quarter of 2015.  (*Id*.)

The 8-K further stated, with respect to the untimely revenue recognition for 2014: "The improper conduct of the Company's former Chief Financial Officer [*i.e.*, Schiller] and former Corporate Controller, which resulted in the provision of incorrect information to the Committee and the Company's auditors, contributed to the misstatement of results described above."

---

[3] *See Potter v. Valeant Pharms. Int'l Inc.*, No. 15-cv-7658 (Oct. 22, 2015); *Chen v. Valeant Pharms. Int'l, Inc.*, No. 15-cv-7679 (Oct. 23, 2015); *Yang v. Valeant Pharms. Int'l, Inc.*, No. 15-cv-7746 (Oct. 27, 2015); *Fein v. Valeant Pharms. Int'l Inc.*, No. 15-cv-7809 (Oct. 30, 2015).

[4] Occasional reference is made in this brief to certain of public disclosures, statements, or SEC filings that are cited, quoted, or relied upon in the Complaint.  *See Jones v. ABN Amro Mortgage Grp., Inc.*, 606 F.3d 119, 125 n.2 (3d Cir. 2010).  For the sake of clarity and to avoid redundant filing of identical materials, this brief cites two exhibits accompanying Valeant's motion to dismiss—specifically, Exhibits 3 and 37 contained in the September 13, 2016 Declaration of Robert J. Giuffra, Jr.  Those two exhibits are cited herein as "Valeant MTD Ex."  The two exhibits attached to the Declaration of Melissa Steedle Bogad in Support of Defendant Howard B. Schiller's Motion to Dismiss, which accompanies this brief, are cited as "Schiller Ex."

(Valeant MTD Ex. 37 (VRX 8-K (Mar. 21, 2016)) at 3.)  The 8-K also reported that "one or more material weaknesses exist in the Company's internal control over financial reporting and that, as a result, internal control over financial reporting and disclosure controls and procedures were not effective" as of December 31, 2014, and March 31, 2015, and would not be effective as of December 31, 2015.  (Compl. ¶ 304-05; Valeant MTD Ex. 37 (VRX 8-K (Mar. 21, 2016)) at 3.)  In addition, the Company "determined that the tone at the top of the organization and the performance-based environment at the Company, where challenging targets were set and achieving those targets was a key performance expectation, may have been contributing factors resulting in the Company's improper revenue recognition and the conduct described above." (*Id*.)  On April 29, 2016, Valeant filed a 10-K that included restated financial results for 2014 and 2015, due to the premature revenue recognition described in the earlier 8-K.  (Compl. ¶ 308.)

*Claims Against Schiller in Plaintiffs' Consolidated Complaint*.  On May 31, 2016, the Court consolidated the complaints that had been filed in late October 2015, and appointed Plaintiff TIAA as lead plaintiff.  On June 24, 2016, TIAA, together with Plaintiff City of Tucson, filed the operative Complaint (Dkt. No. 80), alleging hundreds of material misstatements and omissions that supposedly caused Valeant's stock drop and Plaintiffs' associated losses.  (Compl. ¶¶ 3-6.)  According to Plaintiffs, Valeant's stock price was inflated over a three-year period (from January 4, 2013, through March 15, 2016), by alleged misrepresentations or omissions regarding the Company's: (i) reliance on allegedly unsustainable prescription drug price hikes (*e.g*., Compl. ¶¶ 12, 139(c), 148(b), 148(e), 190(f), 202(e), 228(b), 230, 375); (ii) undisclosed ties to the Philidor pharmacy accused of improper practices such as altering prescriptions to ensure they were filled with Valeant's excessively priced prescription drugs rather than available generics (*e.g., id*. ¶¶ 139(a), 202(a), 228(a), 228(b)); and (iii) alleged control failures (*id*. ¶¶ 139(g), 181(h), 228(n)), that resulted in the premature recognition of a small amount of Philidor sale revenue that cause the Company to restate its financial results, (*e.g., id*. ¶¶ 181(j)-(k),

202(o)-(p), 228(i)).

These allegations serve as the basis for:  (i) Plaintiffs' claims against Schiller and various other Defendants[5] for  primary violations of Section 10(b) of the Exchange Act and Rule 10b-5, (Compl. ¶¶ 538-43 (Count I)); (ii) claims against Pearson, Schiller, and Schiller's successor as CFO, Robert Rosiello for alleged violations of Section 10(b) and Rule 10b-5 under a "control person" theory pursuant to Section 20(a) of the Exchange Act (*id*. ¶¶ 544-50 (Count II)); and (iii) claims against Schiller and various Defendants for alleged violations of Section 12(a)(2) of the Securities Act (Counts III-VI, and VIII), Section 11 of the Securities Act (Count VII), and Section 15 of the Securities Act (Count IX), on direct and control person theories.  (*See id*. ¶¶ 581-85, 603-08, 625-34, 651-61, 674-85, 716.)  In support of these sweeping claims, (*id*. ¶¶ 133-230), Plaintiffs allege only two categories of alleged misstatements against Schiller:  (i) three discrete statements identified in three paragraphs of the Complaint (*id*. ¶¶ 16, 138, 183); and (ii) statements by the Company or other Defendants that the Complaint attributes to Schiller by virtue of his position with the Company or his approval of certain mandatory certifications.

## ARGUMENT

To survive a motion to dismiss, a complaint must contain sufficient allegations of fact, accepted as true, to state a claim to relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To satisfy this standard, a complaint must contain factual allegations that are sufficient "to raise a right to

---

[5] Other individual defendants include Pearson, former CFO Robert Rosiello, former Vice President and Company Group Chairman Deborah Jorn, former Corporate Controller Tanya Carro, current Executive Vice President and Company Group Chairman Dr. Ari S. Kellen, current directors Robert Ingram and Robert Power, and former directors Ronald Farmer, Theo Melas-Kyriazi, Norma Provencio, Katherine Stevenson, Colleen Goggins, Anders Lönner, and Jeffrey Ubben.  Compl. ¶¶ 36-51.

relief above the speculative level." *Twombly*, 550 U.S. at 555.  It is not enough to allege a mere "possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In addition, securities fraud claims are subject to the heightened requirements of Rule 9(b) and the PSLRA, which Congress designed to curb abusive securities litigation that might otherwise "impose substantial costs on companies and individuals whose conduct conforms to the law." *Tellabs*, 551 U.S. at 313.  To state a claim under Section 10(b) and Rule 10b–5, Plaintiffs must allege, *inter alia*, (1) a materially false statement or omission, (2) that was made with scienter; and (3) a causal link between the alleged fraud and Plaintiffs' alleged loss.  *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 341-42, (2005).  Because such claims sound in fraud, they must be pled with factual "particularity" in satisfaction of Rule 9(b).  FED. R. CIV. P. 9(b); *In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  Also, the PSLRA imposes distinct, heightened requirements for pleading both falsity and scienter in private securities fraud actions.  *Avaya*, 564 F.3d at 252.

To satisfy Rule 9(b) and the PSLRA, Plaintiffs must "specify each statement alleged to have been misleading," and plead particularized facts describing "the reason or reasons why" the maker of the statement knew or should have known the statement was false or misleading at the time it was made.  15 U.S.C. § 78u-4(b)(1); *City of Edinburgh Council*, 754 F.3d at 166.  The alleged misleading statement must also be material, meaning it "significantly altered the 'total mix' of information made available" to the market.  *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 283 (3d Cir. 2010) (citations omitted).  To meet these requirements, the Complaint must identify specific alleged misrepresentations attributable to Schiller, and then plead particularized facts demonstrating that the statements were both false and material when made, and that Schiller

made them with knowledge or reckless disregard of their falsity.  *See In re Wilmington Tr. Sec. Litig.*, 852 F. Supp. 2d 477, 490 (D. Del. 2012).[6]  Plaintiffs' claims against Schiller do not satisfy these standards and should therefore be dismissed.

I.   **PLAINTIFFS DO NOT ADEQUATELY PLEAD THAT SCHILLER MADE ANY MATERIALLY FALSE STATEMENTS OR OMISSIONS**

Many of the alleged misstatements asserted in the Complaint are specifically attributed to Defendants other than Schiller.   The statements the Complaint alleges Schiller "made" for securities law purposes fall into two categories:  (i) a handful of direct quotes from an earnings call and analyst conference (Compl. ¶¶ 16, 138, 183), and cherry-picked excerpts of his February 2016 congressional testimony (*id*. ¶¶ 422-26); and (ii) a host of statements by the Company and other Defendants that the Complaint attempts to attribute to Schiller through group pleading or references to his position with the Company, including his execution of various legal certifications.  (*See, e.g*., Compl. ¶¶ 133-38 (citing dozens of alleged misstatements concerning a variety of different subjects).)   Plaintiffs' claims against Schiller warrant dismissal, first and foremost, because the Complaint does not adequately plead facts that would establish any of these statements as materially false and misleading under the federal securities laws.

A.   **Plaintiffs Do Not Allege That Schiller's Congressional Testimony Was Materially False or Misleading**

As noted, Plaintiffs do not even allege that the cherry-picked quotes they cite from Schiller's February 2016 testimony before the House Oversight Committee were materially false or misleading under the securities laws.  (Compl. ¶¶ 422-26.)  Plaintiffs cite the testimony solely

---

[6] *See also In re Tellium Inc. Sec. Litig.*, 2005 WL 1677467, at *15 n.19 (D.N.J. June 30, 2005) (lamenting plaintiffs' "puzzle pleading," whereby the complaint "place[d] the burden on the reader to sort out the [alleged false] statements and match them with the corresponding adverse facts to solve the 'puzzle' of interpreting Plaintiffs' claims").

to argue that Schiller "admitted" certain legal violations they fail adequately to plead.  (*See id*.)

As the attached records of the improperly excerpted testimony makes clear, Schiller made no

such admissions.  (Schiller Ex. A (Feb. 4, 2016 Hearing Transcript); Schiller Ex. B (Feb. 4, 2016

Written Testimony); *infra* at Part II(C).)

### B.     Plaintiffs Do Not Adequately Allege That Schiller's Earnings Call and Conference Quotes Were Materially False or Misleading

The statements Schiller made during a June 11, 2013 Healthcare Conference regarding

Alternative Fulfillment ("AF") strategies (Compl. ¶ 138) do not contain any representations the

Complaint adequately pleads were materially false or misleading when made.  (*Id*. ¶¶ 138-39.)

In response to a question from an analyst about AF strategies, Schiller responded, as quoted in

part by the Complaint:

> Alternative fulfillment, I think a couple things.  One is, to me, the alternative fulfillments was an example of what the whole pharmaceutical industry – certainly what Mike and I believe is the trend, and that is the focus on the profitable scripts.  There was a day when you could call on anybody, and almost any script was profitable.  Those days are gone. So segmenting your customer base and really focusing on profitability has got to be the future.  And that's – alternative fulfillment was the beginning of that journey, but not the endpoint.
>
> So I probably think under Medicis, alternative fulfillment was held out a little bit too much as the holy grail.  I really think it's – it's actually the starting points, and in some ways, it was quite a clumsy starting point.  It wasn't that different, but it's a process where we have generation two and generation three.  But it's all trying to focus on profitable scripts, and stay away from those scripts that are unprofitable, and more judicious use of co-pay cards and the rest, and making sure when a customer, a patient is covered, you get reimbursed for it. . . . Yes, I think – I'm hoping – we've got generation two and generation three, which I'm hoping sort of turn it into a pure defense, into more of an offensive tool to allow us to grow profits.  And that's really the focus, is growing profits.

(*Id*. ¶ 138.)

Plaintiffs' effort to paint these statements as actionable securities fraud fails for several

reasons.  First, the statements were properly qualified ("I think," "I believe," "So I probably

think," "I'm hoping") as inactionable forward looking statements or opinions.  *See Omnicare,*

*Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015). Second, even if these statements could be viewed as factual, the Complaint does not identify any "contrary facts" that would have rendered them false or misleading when made. *Chubb Corp.,* 2002 WL 33934282, at *23; *In re Amarin Corp. PLC Sec. Litig.*, 2016 WL 1644623, at *15 (D.N.J. Apr. 26, 2016) (dismissing claims as to opinion statement and rejecting plaintiffs' argument that positive statements on a subject necessarily implied a denial of risks or negative information).  Plaintiffs' laundry list of alleged points that supposedly render the statements "misleading" (Compl. ¶ 139) do not identify any facts "contrary" to Schiller's descriptions and opinions at the conference, but instead assert legal conclusions and details regarding Valeant's relationship with Philidor (i) that do not themselves contradict the points in Schiller's statements; (ii) that Plaintiffs do not tie to any duty to disclose; and (iii) that Plaintiffs do not, and as discussed below cannot, plead were known to Schiller when he made the statements in 2013.

The statements Schiller allegedly made during a February 23, 2015 earnings call are likewise unaccompanied by sufficient factual allegations that the statements were false or misleading when made.  In the statements in question, Schiller observed that:  (i) "[r]evenues for our dermatology business were very strong and increased 70% year-over-year"; (ii) "[t]he outstanding work of our sales teams, implementation of innovative marketing approaches, great leadership, a portfolio of great products, and our four new launch products have contributed to the turnaround and the outstanding results in our dermatology business in Q4 and 2014; and (iii) "[c]ore products such as Zyclara, Elidel, and the RAM franchise continued their strong growth; Solodyn grew in Q4 and grew 5% for all of 2014, after a tough year in 2013; [and] Jublia continues its rapid growth trajectory and reported more than 20,000 weekly scripts for the last reported weekly sales report."  (Compl. ¶ 183.)  The Complaint does not plead facts establishing that any of these statements was false when made or even proved inaccurate in hindsight.

-14-

Several of the statements amount to "vague and general statements of optimism" and thus "constitute no more than puffery" and cannot form the basis of a federal securities claim. *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 538 (3d Cir. 1999). With respect to the financial metrics mentioned by Schiller, Plaintiffs do not plead any specific facts, with citations to specific "reports or documents," demonstrating any "contrary facts" regarding those stated aspects of Valeant's results or growth. *E.g., Chubb Corp.*, 2002 WL 33934282, at *23. And Plaintiffs' suggestion that the statements were misleading because they did not disclose additional details about the pricing practices or third-party relationships underlying the described growth (Compl. ¶ 190(b)) run aground on cases holding that a company does not have an unqualified duty to reveal all information allegedly in its possession, but rather only such information as "necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (quoting 17 C.F.R. § 240.10b–5(b)); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1414, 1432 (3d Cir. 1997) ("[P]ossession of material nonpublic information alone does not create a duty to disclose it."); *Winer Family Tr.,* 503 F.3d at 330 (liability may exist for misleading or untrue statements, but not for statements that are simply allegedly incomplete) (citation omitted). Plaintiffs do not allege particularized facts describing why any of the foregoing statements were misleading under these settled precedents.

### C. Plaintiffs Do Not Adequately Allege That Schiller Made Any Other Statements That Were Materially False or Misleading

*Impermissible Group Pleading and Lack of Particularity on Falsity and Materiality.* Plaintiffs' claim that Schiller made other alleged misrepresentations through Company filings fails for several independent reasons. First, the PSLRA and circuit law do not permit "group pleading" of fraud, *e.g., Winer Family Tr.*, 503 F.3d at 337, and only the "maker" of an alleged misrepresentation—*i.e.,* the person or entity who exercised "ultimate control" over the content of

the statement—can be held liable.  *Janus*, 564 U.S. at 144.  For these reasons alone, Plaintiffs cannot base their claims against Schiller on statements the Complaint generically attributes to "the Defendants" as an undifferentiated group, or to Pearson or other Defendants it does not allege Schiller controlled within the meaning of the Exchange Act.  *See id.*; *In re Merck*, 2011 WL 3444199, at *25-26.  Second, Plaintiffs cannot base their claims on statements that the Complaint does not specifically tie to "contrary facts" known to Schiller at the time he made the challenged statements.  *Chubb Corp.,* 2002 WL 33934282, at *23; Compl. ¶ 139 (alleging seven reasons Schiller's statements at a conference were "false," but failing to tie any of the supposed "contrary facts" to factual representations in the challenged statements).

*Statements Regarding Valeant's Financial Controls and Restatements.*  Plaintiffs cite as misleading several Company filings Schiller signed through March 15, 2015, that reported revenue and related figures based on Valeant's premature recognition of approximately $58 million in Philidor sales revenue.  (Compl. ¶¶ 177, 184, 187.)[7]  As described more fully in Valeant's brief, however, the restated amounts at issue were fractional (*e.g.*, the 2014 overstatement amounted only to 0.7% of Valeant's reported revenues for the year) and strictly temporal, and thus immaterial under the controlling legal standards here.  *See In re Burlington*, 114 F.3d at 1427; *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 390 (2d Cir. 2015).

Plaintiffs also claim that the Company's March 21, 2016 8-K statement that the Company

---

[7] Plaintiffs also contend that the Company misstated its "revenues, earnings per share . . ., and profitability as well as its future business prospects" for the earlier periods in the putative class period, prior to the second half of 2014.  (Compl. ¶¶ 139(f), 148(d), 165(f), 181(d).)  But Plaintiffs have not cited any particular figures or projections reported in the May, August, or November 2013 10-Qs, February 2014 10-K, or May or August 2014 10-Qs that were untrue at the time or that even turned out to be inaccurate in hindsight.

had an "improper tone at the top" and lacked effective internal controls in 2014 and 2015 (Compl. ¶¶ 181(h), 190(i)) is proof that Schiller committed fraud when he signed 2014 and 2015 Company statements and certifications that Company management had "evaluated the effectiveness of our disclosure controls and procedures" and "concluded that our disclosure controls and procedures were effective as of" the certified dates.  (Compl. ¶¶ 179, 184(f), 187(c); *see also id.* ¶¶ 179, 184(h), 187(c) (citing Schiller's Sarbanes-Oxley ("SOX") certifications that, "[b]ased on my knowledge, the report does not contain an untrue statement of material fact or o[mission]")).

However, Valeant's post-hoc reflections on its internal controls do not establish that Schiller falsely represented his impression of those controls "based on [his] knowledge" at the time the statements were made.  *See In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 358-60 (S.D.N.Y. 2015) (dismissing claim alleging false certification of effective internal controls because complaint "d[id] not claim that PetroChina failed to evaluate its internal controls" as indicated in the certification), *aff'd* (2d Cir. Mar. 21, 2016); *Se. Pa. Transp. Auth.* v. *Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *46 (M.D. Pa. June 22, 2015) (subsequent recognition of ineffective internal controls did not establish that control certifications were false when made).[8]

***Statements Regarding Valeant's Drug Pricing Policies and Relationship with Philidor***.

Plaintiffs take issue with the statement in Valeant's various 10-Qs and 10-Ks that "pricing and

---

[8] Plaintiffs also claim the Company's 10-Qs from May, August, and November 2013, 10-K filed in February 2014, and 10-Qs filed in May and August 2014 falsely asserted the same internal controls and SOX certifications.  (Compl. ¶¶ 135-36, 143, 145, 151(c), 157(b), 170.)  But Plaintiffs cite no evidence that those statements were misleading at the time they were made or even proved inaccurate after the fact.  *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *9 (S.D.N.Y. Mar. 30, 2012); *In re Gentiva Sec. Litig.,* 932 F. Supp. 2d 352, 370 (E.D.N.Y. 2013).

sales volume of certain of our products . . . are distributed by third parties, over which we have no or limited control."   (*E.g.*, Compl. ¶¶ 137, 143.)   Plaintiffs suggest this statement was misleading because it allegedly "conceal[ed] that Valeant controlled and had significant influence over Philidor."   (*See id*.)   Plaintiffs take this statement out of context and omit preceding language.   The statement reads, in its entirety, as follows: "Important factors that could cause actual results to differ materially from these [*i.e.*, the Company's projected] expectations include, among other things, the following: . . . declines in the pricing and sales volume of certain of our products that are distributed by third parties, over which we have no or limited control."   (*See, e.g.,* Valeant MTD Ex. 3 (VRX 10-K FY 2013) at iv.)   Thus, the statement Plaintiffs allege as false is actually a forward-looking risk disclosure that acknowledges Valeant's limited control over third-party distributors of "certain" products, and thus is not false or misleading on its face or in light of subsequent revelations regarding the Company's relationship with Philidor.   Moreover, the statement is forward-looking and immune from liability under the PSLRA's "safe harbor" because Plaintiffs do not—and cannot—demonstrate that it was made with the requisite scienter.   15 U.S.C. § 78u–5(c)(1)(B); *OFI Asset Mgmt.* v. *Cooper Tire & Rubber*, 2016 WL 4434404, at *5 (3d Cir. Aug. 22, 2016).

Plaintiffs similarly assert falsity as to other statements made in SEC filings Schiller signed that have nothing to do with Philidor or the Company's drug price increases, such as a statement that "[t]o successfully compete for business with managed care and pharmacy benefits management organizations, we must often demonstrate that our products offer not only medical benefits but also cost advantages as compared with other forms of care."   (Compl. ¶¶ 151(a), 184(c)).   Likewise, Plaintiffs claim it was false for Valeant filings to state that: "The growth of our business is further augmented through our lower risk research and development model.   This model allows us to advance certain development programs to drive future commercial growth, while minimizing our research and development expense."   (*E.g., id.* ¶¶ 152, 157(a), 170, 177.)

Plaintiffs apparently claim these statements were misleading, despite being true on their face—indeed, for example, Plaintiffs concede that Valeant made use of a lower-risk R&D model, (Compl. ¶¶ 8, 56)—because the Company did not provide additional detail it had no obligation to disclose.

A company's duty to not make misleading statements "does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, market-wise, but means only such others, if any, that are needed so that what was revealed would not be so 'incomplete as to mislead.'" *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (en banc). "Disclosure is required . . . only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx Initiatives*, 563 U.S. at 44 (quoting 17 C.F.R. § 240.10b–5(b)); *In re Burlington*, 114 F.3d at 1432 ("[P]ossession of material nonpublic information alone does not create a duty to disclose it."); *Winer Family Tr.,* 503 F.3d at 330 (liability may exist for misleading or untrue statements, but not for statements that are simply allegedly incomplete). Plaintiffs do not allege particularized facts describing why any of the foregoing statements were misleading in context, and in the absence of an unmitigated duty to disclose all allegedly negative information.

Plaintiffs similarly assert—again with insufficient factual corroboration—that Schiller knowingly endorsed false or misleading company financial statements because the statements did not specifically identify Philidor as a "Variable Interest Entity" before October 2015 (Compl. ¶¶ 323-31) or detail the impact of Philidor's prescription practices on Valeant's drug-related sales revenues. (*Id.* ¶¶ 346-75.) As described more fully in Valeant's brief, the Company had no duty to identify Philidor any earlier than October 2015 because, *inter alia*, sales to Philidor were immaterial prior to (and even as of) that point in time; Valeant specifically advised investors that the Company would not identify by name third-party contractors or distributors whose activities accounted for less than 10% of Company revenues, which was always true of Philidor; and

Valeant regularly disclosed information concerning the contribution of price increases to its revenue growth and otherwise had no duty to provide further pricing details (Compl. ¶ 346); *Winer Family Tr.,* 503 F.3d at 329-30, which were discoverable by diligent investors in any event.  For the foregoing reasons alone, dismissal is warranted.

## II.      PLAINTIFFS DO NOT ADEQUATELY PLEAD SCHILLER'S SCIENTER

Plaintiffs' claims against Schiller also and independently merit dismissal because to state a claim for securities fraud, "[e]ach individual's participation and scienter must be pled separately and with particularity."  *In re Par Pharm. Sec. Litig.*, 2008 WL 2559362, at *10 (D.N.J. June 24, 2008).  The Complaint fails to do so.  Specifically, it fails to "state with particularity" the facts "evidencing scienter"; here, Schiller's "intention to deceive, manipulate, or defraud," *Tellabs*, 551 U.S. at 313 (quotation omitted), or involvement in "conscious misbehavior or recklessness."  *Avaya,* 564 F.3d at 267.  Recklessness here refers to an "extreme departure from the standard of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  *In re Suprema*, 438 F.3d at 276 (quotation and citations omitted).  It is not sufficient "to allege facts from which an inference of scienter *could* be drawn."  *Tellabs*, 551 U.S. at 329 (emphasis in original).  Rather, under the PSLRA, the allegations must give rise to an inference of scienter that is "strong," 15 U.S.C. § 78u–4(b)(2)(A), and at least as "cogent and compelling" as any non-culpable inference.  *Tellabs*, 551 U.S. at 324.  Plaintiffs do not plead allegations as to Schiller that satisfy these standards.  Plaintiffs instead plead precisely the kind of allegations this Court and others have routinely rejected as insufficient to plead an actionable securities fraud claim.

### A.      Many of Plaintiffs' Allegations as to Schiller's Scienter Are Conclusory, Nonspecific, or Made Through Impermissible Group Pleading

At paragraphs 386 to 472 of the Complaint, Plaintiffs purport to set forth various

allegations as to the Defendants' scienter, certain of which allegedly apply to Schiller. These allegations fail sufficiently to plead Schiller's scienter, as an initial matter, because many of the allegations impermissibly group all of the individual Defendants together. (*See, e.g.*, Compl. ¶ 386) ("The Individual Defendants were personally aware of, designed, and implemented the deceptive practices detailed herein.").[9] Such group pleading is inconsistent with the particularity requirements of the PSLRA, *Winer Family Tr.*, 503 F.3d at 337, and cannot be used to establish a strong inference of scienter with respect to any particular individual defendant. *Witriol v. Conexant Sys., Inc.*, 2006 WL 3511155, at *3 (D.N.J. Dec. 4, 2006) (dismissing § 10(b) claim where complaint "d[id] not speak to what a particular Defendant knew, or when").

The same allegations are deficient for the related reason that they are conclusory and devoid of particularized factual content and, thus, legally insufficient. *See Klein v. Autek Corp.*, 147 F. App'x 270, 277 (3d Cir. 2005) (allegations insufficient to raise an inference of scienter where complaint "ma[de] no more than blanket assertions" that defendants "'knew' that the representations were untrue, without any corroborating factual support explaining how and why the [d]efendants knew the statements to be false").

Relatedly, a number of Plaintiffs' allegations broadly claim that Schiller and the other Defendants possessed information contradicting Valeant's public statements by virtue of their positions with the Company or active or involved leadership style. (*See, e.g.*, Compl. ¶¶ 386, 395, 398-400.) But "[g]eneralized imputations of knowledge do not suffice" to give rise to an inference of scienter, "regardless of the defendants' positions within the company." *Advanta*,

---

[9] Other purported scienter allegations that are made impermissibly through group pleading are at Complaint paragraphs 397-99, 401, 404, 408, and 470-71.

180 F.3d at 539; *see also Goldstein v. MCI WorldCom*, 340 F.3d 238, 251 (5th Cir. 2003) (allegations that defendant was a "hands-on" CEO not sufficient to establish he must have been aware of particular accounting situation).

Rather, to satisfy the PSLRA by pleading Schiller's supposed possession of contradictory information, Plaintiffs must identify and describe that alleged information with particularity. *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000); *see also P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 142 F. Supp. 2d 589, 617-18 (D.N.J. 2001) (contrasting general allegations of position within company and access to internal information with allegations describing specific documents evidencing fraud). That Plaintiffs are unable to marshal such allegations and fail to cite a single alleged contradictory fact is especially noteworthy here, where Plaintiffs have had the unusual benefit of access to a trove of Valeant documents that were collected and made public by Congress. Such an omission "count[s] against inferring scienter under the PSLRA's particularity requirements." *Avaya*, 564 F.3d at 263 (quoting *Tellabs*, 551 U.S. at 326); *see also Sapir v. Averback*, 2016 WL 554581, at *10 (D.N.J. Feb. 10, 2016) (dismissing § 10(b) claim where plaintiff failed to "cite a single document or witness that corroborate[d] allegations of scienter").

### B. Plaintiffs' Allegations Regarding Schiller's "Motives" to Engage in Fraud Also Do Not Adequately Plead Scienter

Third Circuit courts have traditionally viewed scienter allegations as taking two forms: (1) those relating to motive and opportunity to commit fraud; and (2) those pleading circumstantial evidence of "recklessness or conscious misbehavior." *Advanta*, 180 F.3d at 534-35; *In re Burlington*, 114 F.3d at 1418. Motive and opportunity alone, however, are not sufficient to establish scienter with respect to any particular alleged misrepresentation, but rather must be paired with additional circumstantial allegations of scienter. *Avaya*, 564 F.3d at 277. Legitimate allegations of motive are those that show "that the individual corporate defendant[]

-22-

stood to gain in a concrete and personal way" from the alleged fraud.  *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 633 (D.N.J. 2002).  It is not legitimate for a plaintiff to allege motive merely by citing motivations "generally possessed by most corporate directors and officers."  *Avaya*, 564 F.3d at 278.  Yet, that is precisely what Plaintiffs attempt to do.

Plaintiffs allege that "Schiller . . . had millions of dollars of his executive compensation tied to meeting challenging share price increases" (Compl. ¶ 467), and that "the Individual Defendants were motivated to conceal the negative facts described herein in order to artificially inflate Valeant's stock price to more cheaply acquire other companies and further its acquisition strategy."  (*Id*. ¶ 470.)  But these are precisely the type of incentives that apply almost universally to corporate management, irrespective of any particular alleged fraud, and are thus not legitimate allegations of motive against individual defendants.  *See Avaya*, 564 F.3d at 279; *GSC*, 368 F.3d at 237-38; *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995).

Plaintiffs' reference to Schiller's stock awards from Valeant (*see* Compl. ¶ 37) actually undermines, rather than supports, an inference of scienter, as Plaintiffs have not alleged that Schiller sold any stock before the negative news came to light.  *See Advanta*, 180 F.3d at 540 (stating that allegations of motive to inflate stock are doubtful if defendant did not sell); *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 550 (D.N.J. 2010) ("[T]he Court finds that because the Individual Defendants did not sell their stock during the Class Period, there is no strong inference of scienter."); *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759 (7th Cir. 2007) (lack of stock sales by those "who would have been in the know . . . implies that nothing was thought to be out of the ordinary").

### C.   Plaintiffs Do Not Plead Facts Demonstrating Schiller's Knowledge or Reckless Disregard of Allegedly False Statements on Pricing Practices

The Complaint likewise does not contain a single particularized allegation describing Schiller's awareness of facts contradicting any statements he made regarding Valeant's pricing

practices.  Plaintiffs merely allege that Schiller was knowledgeable as to Valeant's drug pricing practices generally.  (*See* Compl. ¶ 392) (alleging Schiller participated in a meeting during which Valeant management discussed pricing for Nitropress and Isuprel).  That is not enough to state a fraud claim.  Knowing what Valeant charged for certain drugs does not establish Schiller's awareness that the Company's pricing risked the public backlash and other negative consequences that allegedly caused the decline in stock price underlying Plaintiffs' claims.  *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) (general awareness of the day-to-day workings of the company's business does not establish scienter, absent some additional allegation of "specific information conveyed to management and related to the fraud").  Rather, these allegations are simply additional impermissible attempts toward "[g]eneralized imputations of knowledge" based on Schiller's position as a senior-level executive who was naturally exposed to the Company's business activities. *Advanta*, 180 F.3d at 539.

Unable to allege any facts corroborating their accusation that Schiller had contemporaneous knowledge of allegedly concealed risks associated with pricing, Plaintiffs resort to distorting Schiller's Congressional testimony.  Plaintiffs remarkably claim that Schiller "admitted" during "live testimony" on February 2016, before the House Oversight Committee that "the previously concealed risks of the Company's price-gouging practices included: 'increased pressure for rebates from the payers, decreased sales volumes from hospitals, increased substitution of alternative products, and heightened competition from new generic or branded drugs.'"  (Compl. ¶ 423.)  As noted, the attached transcript of Schiller's testimony reveals that Schiller did *not* give the quoted "admission" or anything like it.  (*See* Schiller Ex. A (Feb. 4, 2016 Hearing Transcript).)  Schiller's prepared remarks submitted in advance of the hearing referenced "increased pressure for rebates from the payers, decreased sales volumes

from hospitals, increased substitution of alternative products, and heightened competition from new generic or branded drugs," but within the context of listing "market-based responses," a company would see *if* it "were to price a drug above its true value to healthcare providers and patients." (*See* Schiller Ex. B (Feb. 4, 2016 Written Testimony) at 7.) Accordingly, far from conceding that the Company had concealed known risks associated with price increases, Schiller explained why those increases should ***not*** be viewed as improper. Indeed, in the very next sentence, Schiller reiterated that Valeant did not foresee the fallout from the price increases on Nitropress and Isuprel, and noted that their "sales volumes have fallen by a greater degree— about 30% for each drug—than was anticipated at the time of the price increase." (*Id.*)

Plaintiffs additionally fabricate the allegation that "Schiller admitted that 'patient assistance' Valeant provided to lower co-pays for patients with private insurance was not permitted by federal anti-kickback laws." (Compl. ¶ 422.) Schiller "admitted" no such thing. His testimony simply observed that the law prohibits "co-pay assistance to individuals on government programs." (Schiller Ex. B (Feb. 4, 2016 Written Testimony) at 8-9.)

Plaintiffs contend "Schiller also effectively acknowledged . . . that Valeant's business strategy was neither sustainable nor more profitable," simply by stating that "we made a lot of mistakes" and would not pursue such "aggressive" price increases in the future. (Compl. ¶ 424; *see* Schiller Ex. A (Feb. 4, 2016 Hearing Transcript) at 90.) The quoted statements do not "admit" that Valeant's business strategy was unsustainable in contravention of any public statements. Schiller simply acknowledged that the Company had determined to change course in light of negative experiences in the months preceding the hearing. (*See* Schiller Ex. A (Feb. 4, 2016 Hearing Transcript) at 90) ("We made a lot of mistakes. In the past, we have looked for situations where the older drugs, where there wasn't generic competition, where we can increase revenue by increasing price. You should not expect that those are opportunities that we would

be looking for in the future. We've taken aggressive steps in terms of our partnership with Walgreens where we're reducing our prices by 10 percent on average in two of our largest franchises, dermatology and ophthalmology prescription drugs."). The "failure to predict" criticism or failure of a particular business strategy is not actionable fraud under Section 10(b), *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 407 (D.N.J. 2010), and Plaintiffs cannot plead scienter by hindsight. *Chubb Corp.*, 394 F.3d at 156 (rejecting fraud claim because defendants' public statements "d[id] not, in fact, contradict the purportedly false and misleading statements made throughout the Class Period").

### D.   Plaintiffs Do Not Plead Facts Showing Schiller's Knowledge or Reckless Disregard of Factual Misrepresentations Regarding Philidor

Plaintiffs also fail adequately to allege Schiller's scienter with respect to alleged misstatements concerning Valeant's relationship with Philidor. Plaintiffs contend that Schiller was familiar with Valeant's relationship with Philidor (Compl. ¶ 401), executed agreements with Philidor (*id.* ¶ 403), and engaged in "due diligence" of Philidor relating to an option agreement. (*Id.* ¶ 405.) But none of these allegations supports an inference, much less a conclusion, that Schiller was aware of facts "related to the [alleged] fraud," *Corinthian Colls.*, 540 F.3d at 1068—*i.e.*, facts that Philidor was indeed engaged in the misconduct alleged by a short-seller and some media. *Cf. Higginbotham*, 495 F.3d at 758 ("business executives are not charged with 'knowing' the truth of whatever" anyone may publicly assert). Plaintiffs cannot simply "hint" that Schiller must have known something was wrong by vaguely connecting him to Philidor. *Synchronoss*, 705 F. Supp. 2d at 423 (citations omitted); *City of Roseville Emps. Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 401 (D. Del. 2010) (plaintiffs' allegations merely suggesting "possible ways in which . . . defendants could have discovered" the improper conduct did not establish actual awareness or recklessness) *aff'd*, 442 F. App'x 672 (3d Cir. 2011).

Further, and with respect to the Company's decision not to identify Philidor by name

prior to October 2015 or disclose Philidor as a VIE, Plaintiffs fail to allege any facts showing Schiller's fraudulent intent with respect to that accounting judgment.  For example, they allege no facts suggesting that he knew Philidor was contributing materially to Valeant's financial results (which it clearly was not), or that Valeant had a duty to identify Philidor in Valeant's SEC filings.  *See ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 200 (2d Cir. 2009) (alleged accounting violation is insufficient to establish scienter absent sufficient allegations establishing fraudulent intent).  Indeed, Plaintiffs acknowledge that Valeant's outside auditor, PwC, certified Valeant's SEC filings during the putative class period (Compl. ¶ 563), and Valeant's board of directors approved of the Company's accounting treatment of Philidor.  (*Id.* ¶ 405.)  These concessions alone "seriously undermine the suggestion that" Schiller "knowingly aided and abetted a scheme to misstate [the company's] financials." *S.E.C. v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 367 (D.N.J. 2009).

Finally, Valeant's decision to conduct an internal review of the Company's relationship with Philidor in response to the negative allegations that were being made about Philidor's reimbursement practices (Compl. ¶ 252) "demonstrate[ed] a pursuit of truth rather than reckless indifference to the truth" that thus further undercuts any inference of scienter.  *Higginbotham*, 495 F.3d at 758.

### E.  Plaintiffs Do Not Plead Particular Facts Showing Schiller's Knowledge or Reckless Disregard of False Statements Regarding Internal Controls

Concerning the Company's premature recognition of revenue on a small amount of sales to Philidor in the second half of 2014 and the Company's controls over financial reports for 2014 and 2015, Plaintiffs assert that Schiller (and Pearson and Rosiello) executed SOX certifications that accompanied the Company's SEC filings stating that, *inter alia*: "Based on my knowledge, the report does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such

-27-

statements were made, not misleading with respect to the period covered by this report." (*E.g.*, Compl. ¶¶ 136, 143, 400.)  But a SOX certification is probative of scienter only if accompanied by "facts indicating that, at the time of certification, defendants knew or consciously avoided any meaningful exposure to the information that was rendering their SOX certification erroneous." *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 289-90 (D.N.J. 2007); *Horizon Asset Mgmt. Inc. v. H & R Block, Inc.*, 580 F.3d 755, 765–66 (8th Cir. 2009) (allowing courts to infer scienter from mandatory SOX certifications would allow Plaintiffs to plead scienter in every case involving an accounting mistake by public company, "thereby eviscerating the pleading requirements for scienter") (quotation omitted).  Plaintiffs assert no such facts.

That the Company recognized its accounting errors is likewise irrelevant absent particularized allegations of Schiller's fraudulent intent to misstate revenue in 2014, which are lacking from the Complaint.  *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 565 (S.D.N.Y. 2004).  Plaintiffs "must show that [Schiller's] judgment—at the moment exercised— was sufficiently egregious such that a reasonable [person] reviewing the facts and figures should have concluded that [these facts or figures] were misstated and that . . . the public was likely to be misled." *In re IKON Office Solutions, Inc.*, 277 F.3d 658, 673 (3d Cir. 2002).

Plaintiffs cite the Company's assertion in March 2016 that Schiller and the Company's former corporate controller Tanya Carro engaged in unspecified "improper conduct" relating to the mistimed revenue recognition (Compl. ¶ 411), but the term "improper" is merely an adjective, not a particularized description of fact, that can mean as little as "incorrect." *See* "Improper," Black's Law Dictionary (10th ed. 2014); "Improper," *Oxford English Dictionary, available at* http://www.oed.com/view/Entry/92817; *U.S. v. Gray*, 780 F.3d 458, 468 n.12 (1st Cir. 2015).  The Company did not and has never accused Schiller of engaging in fraudulent or intentional misconduct.  "[A]llegations that merely suggest corporate mismanagement are

-28-

insufficient to establish even recklessness." *Hertz*, 2015 WL 4469143, at *17. Because Plaintiffs make no cognizable allegations as to why Schiller would deliberately overstate a trivial amount of revenue, *see Leder v. Shinfeld*, 2008 WL 2165097, at *6 (E.D. Pa. May 22, 2008) ("fraud without motive makes little economic sense"), the stand-alone reference to Schiller's alleged "improper conduct" does not support an inference of his scienter that is at least as "cogent and compelling," *Tellabs*, 551 U.S. at 324, as the non-culpable inference that Schiller and Carro simply failed to perceive a particular accounting issue in 2014.[10]

### III.    COUNTS III-VIII: PLAINTIFFS HAVE NOT SUFFICIENTLY ALLEGED THAT SCHILLER VIOLATED SECTIONS 11 OR 12(A)(2) OF THE SECURITIES ACT

As stated more fully in the Bank Offering Defendants' brief, Valeant's debt offerings are not actionable under Section 12(a)(2) of the Securities Act, as alleged against Schiller, because they were non-public private placements made under Rule 144A. *See In re Refco Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 625 (S.D.N.Y. 2007); *Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 598 (E.D. Pa. 2009). In addition, Plaintiff City of Tucson is the only named Plaintiff to assert claims arising from Valeant's stock offering, but the Complaint does not plausibly plead that City of Tucson purchased shares directly in or traceable to that offering, and thus, City of Tucson does not have standing to assert claims under Sections 11 or 12(a)(2) of the Securities Act.

In addition, because Plaintiffs' Securities Act claims are predicated on the same alleged

---

[10] *See also In re Burlington*, 114 F.3d at 1418 ("Large volumes of disclosure make for a high likelihood of at least a few negligent errors. To allow plaintiffs and their attorneys to subject companies to wasteful litigation based on the detection of a few negligently made errors found subsequent to a drop in stock price would be contrary to the goals of Rule 9(b), which include the deterrence of frivolous litigation based on accusations that could hurt the reputations of those being attacked.").

misrepresentations as their Exchange Act claims, and because Plaintiffs fail to plead sufficient facts showing a material misrepresentation in support of their Exchange Act claims, Plaintiffs' Securities Act claims are also insufficiently pled. *Se. Pa. Transp. Auth.*, 2015 WL 3833849, at *32.

## IV.   COUNTS II AND IX: PLAINTIFFS HAVE NOT SUFFICIENTLY ALLEGED CONTROL PERSON CLAIMS AGAINST SCHILLER

Plaintiffs' control person claims against Schiller under Section 20(a) of the Exchange Act and Section 15 of the Securities Act necessarily fail because they derive from Plaintiffs' underlying claims under Section 10(b) of the Exchange Act and Sections 11 and 12(a)(2) of the Securities Act, respectively, which are inadequately pled.   Thus, Plaintiffs' control person liability claims must also be dismissed. *See Avaya*, 564 F.3d at 252; *Advanta*, 180 F.3d at 541; *In re Cybershop.com Sec. Litig.*, 189 F. Supp. 2d 214, 233 (D.N.J. 2002).

Furthermore, control person liability requires "culpable participa[tion] in the act or acts constituting the violation or cause of action," meaning Plaintiffs must demonstrate that Schiller had "knowledge" of the underlying fraud or material misrepresentation *Belmont*, 708 F.3d at 485; *In re Tellium Inc.*, 2005 WL 1677467, at *23.   For the reasons stated *supra*, Plaintiffs have not pled that Schiller knew of any material misrepresentations.   Consequently, they have not adequately alleged the "culpable participation" necessary to hold him liable as a control person.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' claims against Schiller should be dismissed in their entirety.

WINSTON & STRAWN LLP
*Counsel for Defendant Howard B. Schiller*


By:   *s/* Melissa Steedle Bogad
      James S. Richter
      jrichter@winston.com
      Melissa Steedle Bogad
      mbogad@winston.com

Dated: September 13, 2016

**OF COUNSEL:**
Robert Y. Sperling
Joseph L. Motto
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600

Elizabeth P. Papez
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20006-3817
(202) 282-5000