# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Master No. 3:15-cv-7658-MAS-LHG |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Motion Day: January 3, 2017<br><br>*Oral Argument Requested*<br>(Document Electronically Filed) |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JORN'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

**SCHULTE ROTH & ZABEL LLP**
Barry A. Bohrer
Michael L. Yaeger
Cara David

919 Third Avenue
New York, New York 10022
Tel: (212) 756-2000

*Attorneys for Defendant Deborah Jorn*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND....................................................................................2

ARGUMENT ...........................................................................................................4

      I.      Plaintiffs' Allegations of Scienter Are Clearly Deficient as to Jorn........................4

      II.     Plaintiffs Fail To Allege an Actionable Misstatement or Omission by Jorn ...........9

            A.     Jorn Cannot Be Liable for Statements not Directly Attributed to Her ........9

            B.     Plaintiffs Do Not Adequately Allege that Jorn's May 28, 2014 Statements Are False or Misleading ............................................................9

            C.     Plaintiffs Fail To Plead Materiality and Loss Causation as a Matter of Law ...........................................................................................................11

CONCLUSION......................................................................................................11

i

# TABLE OF AUTHORITIES

**Cases**

*Bartesch v. Cook*,
941 F. Supp. 2d 501 (D. Del. 2013)..................................................................... 7

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) ............................................................................ 4, 8

*Gold v. Ford Motor Co.*,
577 F. App'x 120 (3d Cir. 2014) ...................................................................... 5, 8

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999) ........................................................................... 7, 10

*In re Alpharma Inc. Sec. Litig.*,
372 F.3d 137 (3d Cir. 2004) ................................................................................ 8

*In re Columbia Labs., Inc.*,
602 F. App'x 80 (3d Cir. 2015) ....................................................................... 4, 5

*In re Hertz Global Holdings, Inc. Sec. Litig.*,
2015 U.S. Dist. LEXIS 95569 (D.N.J. July 22, 2015)...................................... 8, 9

*In re Merck & Co., Sec., Derivative & ERISA Litig.*,
2011 U.S. Dist. LEXIS 87578 (D.N.J. Aug. 8, 2011) ...................................... 6, 10

*In re Par Pharm. Sec. Litig.*,
2008 U.S. Dist. LEXIS 49599 (D.N.J. June 24, 2008)...................................... 6, 7

*Janus Capital Group, Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)............................................................................................ 9

*Kolber v. Body Cent. Corp.*,
967 F. Supp. 2d 1061 (D. Del. 2013)................................................................... 8

*Messner v. United States Techs., Inc.*,
2016 U.S. Dist. LEXIS 50132 (E.D. Pa. Apr. 13, 2016) ..................................... 8

*Rahman v. Kid Brands, Inc.*,
736 F.3d 237 (3d Cir. 2013) ...................................................................... 4, 7, 8

*Rescue Mission of El Paso, Inc. v. K-Sea Transp. Partners L.P.*,
2013 U.S. Dist. LEXIS 84978 (D.N.J. June 14, 2013) ......................................... 9

*Sapir v. Verback*,
2016 U.S. Dist. LEXIS 15956 (D.N.J. Feb. 10, 2016) ......................................... 5

ii

*Schwartz v. Perseon Corp.*,
    2016 U.S. Dist. LEXIS 40936 (D. Del Mar. 29, 2016) ........................................................... 10

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007) ...................................................................................................... 6, 9

**Statutes**

Private Securities Litigation Reform Act of 1995
    15 U.S.C. § 78u-4 ...................................................................................................................... 1, 4

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 1

Fed. R. Civ. P. 9(b) .................................................................................................................... 1, 7

Securities Exchange Act of 1934
    Rule 10b-5, 17 C.F.R. § 240.10b-5 ................................................................................... passim

Defendant Deborah Jorn respectfully submits this memorandum in support of her motion to dismiss Plaintiffs' Consolidated Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4.  In addition, she joins in, adopts, and incorporates herein the arguments in the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint, dated September 13, 2016, filed by counsel for Valeant Pharmaceuticals International, Inc. ("Valeant" or the "Company"), *et al.* ("Valeant Memorandum").

### PRELIMINARY STATEMENT

Plaintiffs' 282-page Complaint asserts a Section 10(b) claim against Deborah Jorn for a few statements on a single conference call, and it mentions Jorn in only eight of its 734 paragraphs.  None of those paragraphs makes a meaningful attempt to explain how Jorn acted with intent to defraud investors.  Instead, Plaintiffs improperly attempt to allege scienter through "group pleading."  They lump Jorn together with other people who have been sued, brand the group as the "Individual Defendants," and then accuse them of collective knowledge of a fraud.  But group pleading is not allowed in the Third Circuit.  Thus, Plaintiffs do not plead any facts that would permit an inference of scienter as against Jorn.

The Complaint also does not adequately explain how Jorn's statements were materially false or misleading.  Rather than make such particularized allegations, Plaintiffs alternate between conceding the truth of her statements and contradicting their own assumptions as to why her statements were false.

In sum, the threadbare allegations against Jorn do not come close to meeting the heightened pleading standards applicable to Plaintiffs' Section 10(b) claim.  The Complaint should be dismissed as against Jorn with prejudice.

## FACTUAL BACKGROUND

The facts, as alleged in the Complaint with respect to Jorn specifically, and accepted as true solely for the purposes of this motion, are as follows.[1]  The Complaint defines the "Class Period" as January 4, 2013 through March 15, 2016.  (Compl. ¶ 1.)  Jorn joined Valeant after the start of the Class Period, in August 2013, when her then-employer, Bausch & Lomb, was acquired by Valeant.  (Compl. ¶ 39.)  For a portion of the Class Period she was general manager of Valeant's U.S. dermatology business.  (Compl. ¶ 39.)  She was also Valeant Executive Vice President and Company Group Chairman.  (Compl. ¶ 39.)  She left the Company on March 2, 2016.  (Compl. ¶¶ 39; 443.)  The Company announced at the time that her departure was due to "personal reasons" and was not the result of any action taken by the Board of Directors.  (*See* Ex. 44 to the Valeant Memorandum.)

The Complaint contains just six allegedly false and misleading statements (some of which are snippets of sentences) attributed to Jorn.  (*See* Compl. ¶ 162.[2])  All of those statements were made during a single investor meeting and conference call on May 28, 2014.  Two of the statements related to patient access programs, and the four other statements related to market share, either generally or with regard to specific products:

*Patient access programs*:

1.  Valeant launched "***additional access programs so that patients can get the medicines that their physician prescribes for them***[.]"  (Compl. ¶ 162(b).)

2.  "We have new managed care capabilities, ***we have launched additional access programs so that patients can get the medicines that their physician prescribes for them***."  (Compl. ¶ 162(c).)

---

[1]  The alleged facts in general are set forth in the Valeant Memorandum.

[2]  The Complaint states that "emphasis has been added to the particular statements alleged to have been false and misleading."  (Compl. n.3.)  Therefore, only the bolded and italicized portions of the listed statements are alleged by Plaintiffs to be false and misleading.

*Market share*:

3.   "*[I]n 2014 we have returned the business to growth*[.]"  (Compl. ¶ 162(c).)

4.   "*We have returned many of our core promoted brands to growth*."  (Compl. ¶ 162(c).)

5.   "*It is important that we recognize that we have been able in 2014 to turn around our largest brand, Solodyn*.  We entered the year with 49% share, branded share of the dermatology space.  We are now up at 51% and as you can see, our competitors have issues."  (Compl. ¶ 162(c).)

6.   "Further, *we continue to maintain greater than 80% share of the branded Clindamycin/BPO market with our brand, Acanya*."  (Compl. ¶ 162(c).)

Moreover, Jorn's name is mentioned in just eight of the Complaint's 734 paragraphs.  (Compl. ¶¶ 23, 39, 40, 52, 162, 227, 407, 443.)  The paragraph already detailed above (¶ 162) is the only one of those paragraphs to state any alleged misstatements Jorn made.  Five others merely define who she is or mention the fact that she left the Company.  (Compl. ¶¶ 23, 39, 40, 52, 443.)  Another paragraph simply states that she "participated" in a call in which Plaintiffs do not allege she made any statements whatsoever.  (Compl. ¶ 227.)  And one additional paragraph mentions Jorn while alleging an example of Michael Pearson's alleged practice of "personally monitoring Philidor's practices[.]"  In that regard, the Complaint cites an email that Ari Kellen sent Pearson, stating that Kellen "Met with Deb [Jorn]" and "[s]uggested we get all the DMs [District Managers] in for a day…*goal to go over the practices in each district where Philidor is working well* and identify next [approximately] 10 practices where we should push harder to build it out. that [sic] will help fuel growth."  (Compl. ¶ 407 (emphasis in original).)

Finally, Jorn is branded as one of the "Individual Defendants" and "Exchange Act Defendants."  (Compl. ¶¶ 52, 53).  However, the overwhelming majority of the allegedly false and misleading statements that Plaintiffs claim were "disseminated or approved" by the

"Exchange Act Defendants" are not alleged to have been "disseminated or approved" by Jorn. (Compl. ¶ 539.)  Further, although the section of the Complaint titled "Additional Scienter Allegations" levels a host of allegations about what the "Individual Defendants" and "Exchange Act Defendants" knew or should have known, none of those allegations directly relates to Jorn's position at Valeant.  (Compl. ¶¶ 386-408.)

## ARGUMENT

### I.     Plaintiffs' Allegations of Scienter Are Clearly Deficient as to Jorn

When alleging a cause of action for securities fraud, Plaintiffs must "satisfy the heightened scienter pleading standard required by the Private Securities Litigation Reform Act." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 240 (3d Cir. 2013).  To state a cause of action under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder (collectively "Section 10(b)"), Plaintiffs must, among other things, plead with particularity that Jorn "made a misstatement or an omission of a material fact with scienter." *Id.* at 242 (citation and quotation omitted).  "To sufficiently plead scienter, the complaint must state with particularity the facts constituting the alleged violation and giving rise to a 'strong inference' that the defendants. . . intended to deceive, manipulate, or defraud." *In re Columbia Labs., Inc.*, 602 F. App'x 80, 82 (3d Cir. 2015); 15 U.S.C. § 78u-4(b)(2)(A).  At a minimum, a plaintiff must plead that a defendant acted recklessly, which is marked not by "simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 493 (3d Cir. 2013).  Plaintiffs have failed to meet their burden.

Nowhere in the Complaint do Plaintiffs allege that Jorn had any knowledge of any fraudulent conduct.  Specifically, they do not allege that she had any knowledge of fraud

associated with the subjects she mentioned during the May 28, 2014 conference call:  patient access programs or market share.[3]

Apart from the paragraph reciting her statements on the May 28, 2014 conference call (¶ 162), Jorn is mentioned individually in only one substantive background paragraph (¶ 407), and that background paragraph does not allege that Jorn had any knowledge of a fraud.  In fact, Paragraph 407 has almost nothing to do with Jorn and is instead devoted to demonstrating that Pearson "personally monitor[ed] Philidor's practices."  It mentions Jorn only because it quotes an email, sent by Kellen to Pearson, in which Kellen stated that he "Met with Deb [Jorn]" and proposed that they have a meeting with the District Managers to discuss Philidor.  (Compl. ¶ 407.)  But nothing in that email or Paragraph 407 suggests that Ms. Jorn or any other participant in that email was aware of any improper, let alone purportedly fraudulent, practices at Valeant or Philidor.

Moreover, Jorn's allegedly actionable statements during the May 28, 2014 conference call were made approximately 17 months *before* Plaintiffs allege that "questions about Philidor arose."  (Compl. ¶¶ 162; 409.)  Thus, the Complaint not only fails to allege that Jorn had knowledge, it is in tension with a claim that she had knowledge.  *Cf. In re Columbia Labs*, 602 F. App'x at 84 ("competing inferences rationally drawn from the facts alleged" show it is more likely than not that defendants "did not act with an intent to deceive, manipulate, or defraud investors").

Rather than address Jorn directly, Plaintiffs attempt to carry their burden by first including Jorn in a group of Company officers that it labels the "Individual Defendants" and then

---

[3]    While pleading "motive and opportunity" is no longer sufficient to plead scienter in the Third Circuit, such allegations can provide circumstantial evidence of scienter.  *See Gold v. Ford Motor Co.*, 577 F. App'x 120, 123 (3d Cir. 2014); *Sapir v. Verback*, 2016 U.S. Dist. LEXIS 15956, *15-16  (D.N.J. Feb. 10, 2016); Valeant Memorandum at 31-33.  However, Plaintiffs have alleged absolutely no specific "motive and opportunity" facts as to Jorn.

making general allegations about the group.  (*See, e.g.*, Compl. ¶ 408 ("the Individual

Defendants [were] closely monitoring the relationship with Philidor" and "the network of

pharmacies through which Philidor operated")).  In fact, whenever Plaintiffs describe what the

"Individual Defendants" supposedly knew, did, or said, the specific examples they use to

illustrate their overbroad claims never involve Jorn.  (*See, e.g.*, ¶¶ 392, 397, 408.)  In this way

the section of the Complaint titled "Additional Scienter Allegations" attempts to plead scienter

against more than a dozen people without addressing each person's actual conduct.  (Compl.

¶¶ 386-408.)  Indeed, allegations regarding what the "Individual Defendants" knew at Philidor's

inception relate to matters that occurred before Jorn even joined the Company.  For example,

Paragraph 401 alleges that the "Individual Defendants were personally aware of Valeant's use of

Philidor and its network of pharmacies, from Philidor's inception" in January 2013 even though

Jorn came to Valeant only in August 2013—well after Philidor was created.  By pleading

collective liability, Plaintiffs have essentially backdated Jorn's employment.

Such blatant group pleading of scienter does not suffice in the Third Circuit.  *See, e.g.*,

*Winer Family Trust v. Queen*, 503 F.3d 319, 337 n.6 (3d Cir. 2007) (group pleading cannot be

used to infer scienter);  *In re Merck & Co., Sec., Derivative & "ERISA" Litig.*, 2011 U.S. Dist.

LEXIS 87578, * 84-85, 111 (D.N.J. Aug. 8, 2011) (plaintiffs must specifically plead that the

named defendant is "individually associated with the alleged fraud, other than by virtue of their

position within" the company, and complaint fails to plead scienter insofar as it relies on

allegations "that 'Defendants' as a general group engaged in [] inappropriate activities"); *In re

Par Pharm. Sec. Litig.*, 2008 U.S. Dist. LEXIS 49599, *38 and *41 (D.N.J. June 24, 2008)

("Each individual's participation and scienter must be pled separately and with particularity" and

a separate section of the brief labeled "Additional Scienter Allegations" just gave "more

examples of group pleading and inadequate broad brush statements"); *Rahman*, 736 F.3d at 245 (it is not enough to "offer[] little more than generalized allegations with few specifics and even less concrete support"); *Bartesch v. Cook*, 941 F. Supp. 2d 501, 510-511 (D. Del. 2013) (it is insufficient when "the allegations generally refer to 'defendants' or 'company executives.'  The Third Circuit has explicitly rejected such 'group pleading' as incompatible with the PSLRA's requirement[.]").

Further, no inference of knowledge of any conduct at Philidor can be drawn from Ms. Jorn's corporate position alone.  *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) ('[A]llegations that a securities-fraud defendant, because of his position within the company, "must have known" a statement was false or misleading are precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny." (citation and quotation omitted).)  Even if an inference based on a person's title or position at a company were sufficient, and it plainly is not, the Complaint does not state what someone in Jorn's position at the Company might know.  Jorn had no title or position at Philidor, only at Valeant.  Also, as noted above, the *only* allegation related to her work at Valeant (apart from her statements on the May 2014 conference call) is that another executive suggested to her that there might be a meeting in which Philidor would be discussed. (Compl. ¶ 407.)  That does not suffice.  The Third Circuit has already held that a "CEO visit[ing] a subsidiary's premises to meet with its president will not establish that the CEO had knowledge of illegal activities at the subsidiary."  *Rahman*, 736 F.3d at 245.  Accordingly, a discussion of a future meeting that may or may not have happened will not establish any knowledge or extreme departure from the standards of ordinary care on the part of Jorn.  *Cf. id.*

7

Plaintiffs' repeated references to Jorn's departure from Valeant are also insufficient to ground their claim.  (Compl. ¶¶ 23, 39, 443.)  First, Plaintiffs conveniently omit the fact that Valeant publicly stated her departure was due to "personal reasons."  (*See* Ex. 44 to Valeant's Memorandum.)  Second, the Complaint does not attempt to allege facts connecting her departure directly to any alleged wrongdoing, but merely implies a connection when it includes her departure in its recitation of supposed "Additional Scienter Allegations."  (Compl. ¶ 443.)  Under clear Third Circuit precedent, a mere statement of a defendant's departure is not enough to serve as evidence of scienter.  *See Messner v. United States Techs., Inc.*, 2016 U.S. Dist. LEXIS 50132, *31-32 (E.D. Pa. Apr. 13, 2016); *In re Hertz Global Holdings, Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 95569, *64-65 (D.N.J. July 22, 2015); *see also* Valeant Memorandum at 44-45.

In sum, Plaintiffs have plainly failed to plead the essential element of scienter as to their Section 10(b) claim against Jorn, and by itself this is reason enough to dismiss the Complaint as against Jorn.  Courts in the Third Circuit frequently dismiss Section 10(b) cases **with prejudice** when allegations regarding a defendant's scienter are insufficient, as they are here.  *See, e.g., Belmont*, 708 F.3d at 493 (affirming dismissal of a complaint against an individual defendant when "[i]nvestors provided no evidence of scienter" against that individual defendant); *Rahman*, 736 F.3d at 243-244, 247; *Gold v. Ford Motor Co.*, 577 F. App'x 120, 122-23 (3d Cir. 2014); *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 149-154 (3d Cir. 2004); *Kolber v. Body Cent. Corp.*, 967 F. Supp. 2d 1061, 1071-1072 (D. Del. 2013).  Accordingly, dismissal here should be with prejudice as to Jorn.

8

## II.     Plaintiffs Fail To Allege an Actionable Misstatement or Omission by Jorn

Plaintiffs' claim also fails to satisfy another requirement: the defendant herself has to

have made a misstatement, and Plaintiffs have not adequately alleged how Jorn's statements

were false.

### A.     Jorn Cannot Be Liable for Statements not Directly Attributed to Her

The statements that Jorn is alleged to have actually spoken are the only statements in the

Complaint that can possibly support Plaintiffs' Section 10(b) claim.  "One 'makes' a statement

by stating it . . . .  For purposes of Rule 10b-5, the maker of a statement is the person or entity

with ultimate authority over the statement, including its content and whether and how to

communicate it.  Without control, a person or entity can merely suggest what to say, not 'make'

a statement in its own right."  *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S.

135, 142 (2011).[4]  Accordingly, Plaintiffs' case against Jorn will stand or fall on the statements

she allegedly made on May 28, 2014.  There are no other statements that the Complaint alleges

she made or had the ultimate authority over.

### B.     Plaintiffs Do Not Adequately Allege that Jorn's May 28, 2014 Statements Are False or Misleading

Despite claiming generally that Jorn's May 28, 2014 statements were "false and

misleading," Plaintiffs do not actually plead anything that would lead to an inference of falsity

with regard to any of Jorn's specific statements.  *See In re Hertz*, 2015 U.S. Dist. LEXIS 95569

at *29 (noting plaintiffs' failure to allege "objective falsity").  In Paragraph 162 they list certain

statements and dutifully emphasize the words they claim are false, but they skip the part in

Paragraph 165 where they are supposed to explain how the statements are false.

---

[4]     It is not enough to allege that members of a group had "control and authority" over a statement.  *See Rescue Mission of El Paso, Inc. v. K-Sea Transp. Partners L.P.*, 2013 U.S. Dist. LEXIS 84978, *73-74 (D.N.J. June 14, 2013).  Plaintiffs must "specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions."  *Winer Family Trust v. Queen*, 503 F.3d 319, 335-337 (3d Cir. 2007).

For example, Plaintiffs repeatedly allege that Valeant's business strategy led to business success for a time.  (*See, e.g.,* Compl. ¶¶ 10, 11, 65.)  They claim that this success was caused by improper tactics.  However, they do not deny that market share increased.  This concession is fatal to their claim against Jorn because her statements about market share do not discuss the reasons for the increase, just its existence.  (*See* Compl. ¶ 162(c) ("***It is important that we recognize that we have been able in 2014 to turn around our largest brand, Solodyn.*** We entered the year with 49% share, branded share of the dermatology space. We are now up at 51% and as you can see, our competitors have issues. . . . ***Further, we continue to maintain greater than 80% share of the branded Clindamycin/BPO market with our brand, Acanya.***").)  *See Schwartz v. Perseon Corp.*, 2016 U.S. Dist. LEXIS 40936, *13 (D. Del Mar. 29, 2016) (dismissing statements as not misleading because, *inter alia*, positive statements about revenue and sales do not imply anything else regarding the health of the company); *In re Merck*, 2011 Dist. LEXIS at *97-98 ("under governing Third Circuit jurisprudence, statements that merely recite statistics concerning [a pharmaceutical company's] financial performance and/or facts regarding [a drug's] then-present market performance do not constitute material misrepresentations") (citing *In re Advanta*, 180 F.3d at 538-39).

In other words, the Complaint tacitly admits that Jorn asserted true facts when she stated that Valeant had increased or maintained branded market share for certain products.  And factual recitations that are accurate "do not create liability under Section 10(b)."  *In re Advanta*, 180 F.3d at 538.

In only one instance do Plaintiffs specifically suggest how something Jorn allegedly stated is "false and misleading," and that allegation contradicts other allegations in the Complaint and is obviously insufficient.  Plaintiffs highlight Jorn's alleged statement that the Company

launched "additional access programs so that patients can get the medicines that their physician prescribes for them[.]"  (Compl. ¶ 162(b).)  The Complaint alleges that statement is false and misleading because those access programs "were neither designed to make prices more affordable nor to get patients the medicines their doctors prescribed. . . ."  (Compl. ¶ 165(j).)  But while Plaintiffs' allegation of falsity assumes that the access programs were not designed to lower prices for drugs that doctors prescribed, this assumption is contradicted by the Complaint itself.  The Complaint not only concedes that access programs helped qualified patients receive medications they might not have been able to pay for without the programs, it actually relies on that point as part of its theory.  (*See, e.g.*, Compl. ¶ 116 ("Waiving Copays:  This tactic involved waiving copays through patient assistance programs.").)

### C. Plaintiffs Fail To Plead Materiality and Loss Causation as a Matter of Law

For reasons more fully set forth in the Valeant Memorandum at 48-55 and 61-62, Plaintiffs have also failed to plead that Jorn's statements were material or that there was some causal nexus between Jorn's conduct and any economic harm suffered by Plaintiffs.

### CONCLUSION

For all of the foregoing reasons, as well as those set forth in the Valeant Memorandum, the Complaint should be dismissed in its entirety, with prejudice, as to Deborah Jorn.

Dated: New York, New York
          September 13, 2016

                                        SCHULTE ROTH & ZABEL LLP

                                        By: /s/ Cara David
                                             Barry A. Bohrer
                                             Michael L. Yaeger
                                             Cara David

                                        919 Third Avenue
                                        New York, NY  10022
                                        (212) 756-2000

                                        *Attorneys for Defendant Deborah Jorn*