# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION<br>_____<br>This Document Relates To:<br>ALL ACTIONS. | Master File No. 3:15-cv-7658-MAS-LHG<br><br>**ORAL ARGUMENT REQUESTED** |

## BANK OFFERING DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

Mark A. Berman, Esq.
Robin D. Fineman, Esq.
**HARTMANN DOHERTY ROSA BERMAN & BULBULIA, LLC**
65 Route 4 East
River Edge, NJ 07661
Telephone: (201) 441-9056

Richard A. Rosen, Esq. (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

*Attorneys for the Bank Offering Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ............................................................................................................ 2

I. Section 12(a)(2) of the Securities Act Does Not Apply to the Note Offerings Because Plaintiffs Do Not Dispute that They Were Effected in Compliance with S.E.C. Rule 144A .......................................................... 2

    A. The Text and Purpose of Rule 144A Compel the Conclusion that Rule 144A Offerings Are, By Definition, Private Offerings To Which Section 12(a)(2) Does Not Apply ........................................ 3

    B. A Majority of Courts Have Held that Rule 144A Offerings Are, By Definition, Private Offerings .......................................................... 7

    C. Plaintiffs' Theory Would Undermine the Utility of Rule 144A .......... 8

    D. TIAA-CREF Is Estopped From Denying That the Note Offerings Were Rule 144A Private Placements ................................... 9

II. Plaintiffs Do Not Contest That They Will Need To Establish Standing As To Each Bank Offering Defendant And Provide No Reasoned Basis to Defer Consideration of That Issue ................................................. 11

III. Plaintiffs Have Failed To Adequately Plead That They Purchased Shares "In" the Common Stock Offering and Have Disclaimed Any Standing Based on Tracing ........................................................................ 13

CONCLUSION ....................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*6803 Boulevard E., LLC* v. *DIRECTV, LLC*,
   17 F. Supp. 3d 427 (D.N.J. 2014) ........................................................................ 12

*AAL High Yield Bond Fund* v. *Ruttenberg*,
   No. Civ. A. 00-C-1404-S, 2001 WL 34372980 (N.D. Ala. Sept. 30,
   2001) ...................................................................................................................... 8

*Am. High-Income Trust* v. *AlliedSignal*,
   329 F. Supp. 2d 534 (S.D.N.Y. 2004) .................................................................... 8

*Anegada Master Fund, Ltd.* v. *PXRE Grp. Ltd.*,
   680 F. Supp. 2d 616 (S.D.N.Y. 2010) .................................................................... 7

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 12

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 12, 15

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) ............................................................................. 15

*In re Enron Corp. Sec., Derivative & "ERISA" Litigation*,
   310 F. Supp. 2d 819 (S.D. Tex. 2004) ................................................................... 8

*In re Enron Corp. Sec., Derivative & "ERISA" Litigation*,
   761 F. Supp. 2d 504 (S.D. Tex. 2011) ................................................................... 8

*Finkelman* v. *NFL*,
   810 F.3d 187 (3d Cir. 2016) .......................................................................... 12, 13

*In re Fisker Auto. Holdings, Inc. S'holder Litig.*,
   128 F. Supp. 3d 814 (D. Del. 2015) ....................................................................... 8

*Gustafson* v. *Alloyd Co.*,
   513 U.S. 561 (1995) ............................................................................................... 5

*Hassan* v. *City of N.Y.*,
   804 F.3d 277 (3d Cir. 2015) ................................................................................ 12

*In re Hayes Lemmerz Int'l, Inc. Equity Sec. Litig.*,
 271 F. Supp. 2d 1007 (E.D. Mich. 2003) ..............................................................8

*Lawlor* v. *ESPN Scouts, LLC*,
 No. 2:10-cv-05886, 2011 WL 675215 (D.N.J. Feb. 16, 2011) .........................13

*Lewis* v. *Fresne*,
 252 F.3d 352 (5th Cir. 2001) ................................................................................8

*Maiden Creek Assocs.* v. *U.S. Dep't of Transp.*,
 823 F.3d 184 (3d Cir. 2016) ...............................................................................12

*In re Merrill Lynch Auction Rate Sec. Litig.*,
 No. 09 MD 2030 Civ. 124, 2012 WL 1994707 (S.D.N.Y. June 4,
 2012), *aff'd sub nom. Iconix Brand Grp.* v. *Merrill Lynch, Pierce,
 Fenner & Smith Inc.*, 505 F. App'x 14 (2d Cir. 2012) ...................................7, 11

*United States* v. *O'Hagan*,
 521 U.S. 642 (1997)..............................................................................................4

*SEC* v. *Ralston Purina Co.*,
 346 U.S. 119 (1953)..........................................................................................2, 5

*In re Refco, Inc. Sec. Litig.*,
 503 F. Supp. 2d 611 (S.D.N.Y. 2007) ..............................................................5, 7

*In re Safety-Kleen Bondholders Litig.*,
 No. 3:00-1145-17, 2002 WL 32795741 (D.S.C. June 14, 2002) .........................8

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp.*,
 941 F. Supp. 1369 (S.D.N.Y. 1996) .....................................................................8

*In re Westinghouse Sec. Litig.*,
 90 F.3d 696 (3d Cir. 1996) .................................................................................11

*Winer Family Trust* v. *Queen*,
 503 F.3d 319 (3d Cir. 2007) ...............................................................................12

*In re WorldCom, Inc. Sec. Litig.*,
 294 F. Supp. 2d 431 (S.D.N.Y. 2003), *vacated and remanded on
 other grounds*, 496 F.3d 245 (2d Cir. 2007).......................................................11

*Yung* v. *Lee*,
 432 F.3d 142 (2d Cir. 2005) ...............................................................................11

**STATUTES AND REGULATIONS**

S.E.C. Rule 144A, 17 C.F.R. § 230.144A ...................................................... *passim*

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k ............................. *passim*

Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(a)(2) ............. *passim*

**OTHER AUTHORITIES**

Securities Act Release No. 33-6806,
    53 Fed. Reg. 44,016 (Nov. 1, 1988) ................................................................. 3, 6

Securities Act Release No. 33-6862,
    55 Fed. Reg. 17,933 (Apr. 30, 1990) ............................................................... 3, 5

Securities Act Release No. 33-9415,
    78 Fed. Reg. 44,771 (July 24, 2013) ..................................................................... 9

TIAA, *Discover TIAA*, https://www.tiaa.org/public/about-
    tiaa/discover-tiaa (last visited Dec. 12, 2016) .................................................... 10

U.S. Securities and Exchange Commission, Division of Corporate
    Finance, *Securities Act Rules: Qfuestions and Answers of General
    Applicability*,
    https://www.sec.gov/divisions/corpfin/guidance/securitiesactrules-
    interps.htm (last updated Dec. 8, 2016) ............................................................... 3

The Bank Offering Defendants respectfully submit this Reply Brief in Further Support of their Motion to Dismiss the Consolidated Complaint (the "Complaint").[1]

## PRELIMINARY STATEMENT

Plaintiffs concede that section 12(a)(2) of the Securities Act does not apply to private offerings. As demonstrated in the Bank Offering Defendants' opening brief ("Br."), the S.E.C. has determined that section 12(a)(2) is, *by definition*, inapplicable to offerings conducted in compliance with the requirements of Rule 144A because sophisticated investors, like TIAA-CREF, do not need the protections afforded by that section to retail investors. Nevertheless, Plaintiffs argue that securities offerings that were admittedly conducted in compliance with S.E.C. Rule 144A, governing certain private placements to sophisticated buyers, can sometimes be found, through fact discovery, to be "public offerings" subject to section 12(a)(2). The vast majority of courts to have considered the question have found that no fact discovery is needed to conclude that a properly conducted private placement of securities under Rule 144A is not a public offering and that dismissal of section 12(a)(2) claims at the pleading stage is therefore entirely appropriate.

Significantly, the principal line of cases on which Plaintiffs rely, stemming from the Supreme Court's 1953 decision in *Ralston Purina*, do not involve

---

[1] The Bank Offering Defendants reserve the right to adopt Valeant's Reply Brief when it is filed.

Rule 144A offerings. Indeed the Rule was not even adopted until 1990—thirty-seven years after *Ralston Purina*.

Plaintiffs also studiously ignore the undisputed fact that TIAA-CREF, the only named plaintiff asserting claims under section 12(a)(2), is a highly sophisticated investor that represented to the Bank Offering Defendants on multiple occasions that it met the requirements under Rule 144A for investing in a private offering. The law is clear that TIAA-CREF is estopped from repudiating these representations, on which the Bank Offering Defendants were entitled to rely.

## ARGUMENT

### I. Section 12(a)(2) of the Securities Act Does Not Apply to the Note Offerings Because Plaintiffs Do Not Dispute that They Were Effected in Compliance with S.E.C. Rule 144A

The parties agree that the Note Offerings are not subject to section 12(a)(2) of the Securities Act unless the sales constituted "public offerings" to which a prospectus delivery requirement applies. (*See* Pls.' Opp'n at 145-46.) There is also no dispute that the Note Offerings conformed to S.E.C. Rule 144A. (*See id.* at 150.) The parties' only disagreement regarding the section 12(a)(2) claims concerns whether Rule 144A offerings are, by definition, private. Because the text and purpose of the rule indicate that they are—and because the efficient functioning of the private placement market depends on that certainty—the Court should dismiss Counts III through VI of the Complaint.

### A. The Text and Purpose of Rule 144A Compel the Conclusion that Rule 144A Offerings Are, By Definition, Private Offerings To Which Section 12(a)(2) Does Not Apply

To see that Rule 144A offerings are, by definition, private offerings, the Court need look no further than the text of the rule itself: Securities sold pursuant to the rule "shall be deemed not to have been offered to the public." 17 C.F.R. § 230.144A(c).[2] Both the S.E.C.'s proposing and adopting releases explain that "[t]he transactions covered by the [Rule 144A] safe harbor are [] *private transactions*."[3] In a Compliance and Disclosure Interpretation published in 2009, the S.E.C.'s Division of Corporate Finance stated: "By definition, sales effected under Rule 144A are *not* made to the public market."[4] The S.E.C. has never said that a Rule 144A transaction could nevertheless sometimes be a public offering, depending on surrounding facts.

To comply with Rule 144A, an offering must meet four requirements: the

---

[2] The rule further provides that any person, other than the issuer or a dealer, who offers or sells securities in compliance with the rule "shall be deemed not to be engaged in a distribution." 17 C.F.R. § 230.144A(c). The S.E.C. made clear in its proposing release that it understood the term "distribution" to be "substantially equivalent to 'public offering.'" Securities Act Release No. 33-6806, 53 Fed. Reg. 44,016, 44,024-25 (Nov. 1, 1988) (internal quotation marks omitted).

[3] Securities Act Release No. 33-6862, 55 Fed. Reg. 17,933, 17,934 (Apr. 30, 1990) (emphasis added); 53 Fed. Reg. at 44,026 (Nov. 1, 1988) (emphasis added).

[4] U.S. Securities and Exchange Commission, Division of Corporate Finance, *Securities Act Rules: Questions and Answers of General Applicability*, https://www.sec.gov/divisions/corpfin/guidance/securitiesactrules-interps.htm (last updated Dec. 8, 2016).

3

securities must be sold only to "qualified institutional buyers" ("QIBs"); the seller must "take[] reasonable steps to ensure that the purchaser is aware that the seller may rely on [Rule 144A];" the securities offered must have certain defined characteristics; and in some instances prospective purchasers must be able to obtain, upon request, certain reasonably current information about the issuer. 17 C.F.R. § 230.144A(d)(1)-(4).

Nothing in Rule 144A suggests that private placements must be limited to transactions under a certain size, or to deals that are made available only to any specific number of investors or in a geographically limited region. The S.E.C.'s determination that Rule 144A offerings are by definition non-public—embodied in the text of the rule—is entitled to "more than mere deference or weight"; courts must give the S.E.C.'s assessment "controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to" the Securities Act. *United States v. O'Hagan*, 521 U.S. 642, 673 (1997) (internal quotation marks omitted). Yet Plaintiffs ask the Court to take the unprecedented step of ruling that—based on criteria furnished by Plaintiffs that are ***not*** found in the rule itself—a Rule 144A offering may nevertheless be held to be "public."

To reach that conclusion, Plaintiffs argue that the term "public offering" means completely different—and incompatible—things depending on which section of the Securities Act you are looking at. They hang their hat on the portion of

Rule 144A that says that offerings under the rule are not public "within the meaning of section 4(3)(A) of the [Securities] Act." (Pls.' Opp'n at 151 (quoting 17 C.F.R. § 230.144A(c)).) It follows, they say, that Rule 144A offerings are **non-public** for purposes of section 4 of the Securities Act but can somehow also be **public** for purposes of section 12(a)(2) of the very same statute. (Pls.' Opp'n at 151.) But this precise argument was rejected in *In re Refco, Inc. Securities Litigation*, 503 F. Supp. 2d 611, 625 n.9 (S.D.N.Y. 2007), and for good reason: the Supreme Court's decision in *Gustafson* v. *Alloyd Co.* teaches that "the [Securities] Act is to be interpreted as a symmetrical and coherent regulatory scheme, one in which the operative words have a consistent meaning throughout." 513 U.S. 561, 569 (1995). If an offering is not "public" under section 4, neither is it "public" for purposes of section 12(a)(2).

Plaintiffs argue that, even when an offering complies with Rule 144A, a court must still apply the fact-specific, multi-factor test established in *SEC* v. *Ralston Purina Co.*, 346 U.S. 119 (1953), to determine whether that offering is public or private. (Pls.' Opp'n at 150-52.) As the S.E.C. made clear, however, the purpose of Rule 144A is to render such a "facts-and-circumstances analysis" unnecessary. *See* 55 Fed. Reg. at 17,934 ("[T]ransactions covered by the safe harbor are private transactions that, on the basis of a few objective standards, can be defined as outside the purview of section 5 ***without the necessity of undertaking the more usual [facts-and-circumstances] analysis*** ...." (emphasis added)); 53 Fed. Reg. at 44,026 (same).

Indeed, the S.E.C. discussed *Ralston Purina* and its progeny at some length in its proposing release for Rule 144A, highlighting *Ralston Purina*'s directive that, in determining whether an offering is public, courts should "'focus ... on the need of the offerees for the protections afforded by registration.'" *See* 53 Fed. Reg. at 44,024 (quoting *Ralston Purina*, 346 U.S. at 127). Rule 144A represents the S.E.C.'s conclusion, informed by this case law, "that certain institutions can fend for themselves and that, therefore, offers and sales to such institutions do not involve a public offering." *Id.* at 44,026. The rule's definition of QIB "identif[ies] a class of investors that can be conclusively assumed to be sophisticated and in little need of the protection afforded by the Securities Act's registration provisions." *Id.* at 44,028.

Moreover, Plaintiffs' strained reading makes no sense. Their brief suggests no coherent explanation of why the S.E.C. would exempt offerings from the registration requirements of section 5 of the statute—and thus exempt them from the prospectus delivery requirement—and yet simultaneously contemplate that the issuer and the banks that are the initial purchasers of these securities could nevertheless be liable for false statements ***in a prospectus*** under section 12(a)(2).[5]

---

[5] Plaintiffs observe that Rule 144A "relates solely to the application of section 5 of the Act and not to antifraud or other provisions of the federal securities laws." (Pls.' Opp'n at 150-51.) This is irrelevant. Rule 144A does not eliminate fraud liability, and Plaintiffs are in fact suing the Valeant Defendants under section 10(b) of the

### B. A Majority of Courts Have Held that Rule 144A Offerings Are, By Definition, Private Offerings

Plaintiffs do not engage with the line of cases in which courts have held that Rule 144A offerings cannot give rise to section 12(a)(2) liability because they are non-public by definition, except to toss aside those reasoned decisions as "a few district courts" that "got it wrong." (Pls.' Opp'n at 150.) But six judges in three Circuits have held that Rule 144A offerings are, by definition, non-public.[6]

Plaintiffs cite only two cases, neither from the Third Circuit, in which courts have said that Rule 144A offerings may be subjected to a fact-specific inquiry to

---

Securities Exchange Act of 1934 for fraud in connection with the Note Offerings. But they expressly disclaim suing the Bank Offering Defendants on that theory.

Plaintiffs also note that Rule 144A does not "affect the availability of section 4(a)(2)." (Pls.' Opp'n at 151.) Stripped of its ghost ellipses, the full provision Plaintiffs cite reads: "The fact that purchasers of securities from the issuer thereof may purchase such securities with a view to reselling such securities pursuant to this section will not affect the availability *to such issuer* of *an exemption under* section 4(a)(2) of the Act, or Regulation D under the Act, from the registration requirements of the Act." 17 C.F.R. § 230.144A prelim. n.7 (emphases added). The provision merely clarifies that, notwithstanding any resellers' use of Rule 144A, issuers may still avail themselves of *other* exemptions from registration under the Securities Act.

[6] *See In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030, 10 Civ. 124, 2012 WL 1994707, at *5 (S.D.N.Y. June 4, 2012) (Preska, J.), *aff'd sub nom. Iconix Brand Grp.* v. *Merrill Lynch, Pierce, Fenner & Smith Inc.*, 505 F. App'x 14 (2d Cir. 2012); *Anegada Master Fund, Ltd.* v. *PXRE Grp. Ltd.*, 680 F. Supp. 2d 616, 621 (S.D.N.Y. 2010) (Sullivan, J.); *In re Refco*, 503 F. Supp. 2d at 625–26 (Lynch, J.); *Am. High-Income Trust* v. *AlliedSignal*, 329 F. Supp. 2d 534, 543 (S.D.N.Y. 2004) (Swain, J.); *In re Hayes Lemmerz Int'l, Inc. Equity Sec. Litig.*, 271 F. Supp. 2d 1007, 1028–29 (E.D. Mich. 2003) (Tarnow, J.); *In re Safety-Kleen Bondholders Litig.*, No. 3:00-1145-17, 2002 WL 32795741, at *3 (D.S.C. June 14, 2002) (Anderson, J.).

determine whether they are public or private.[7] But the court in *In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 310 F. Supp. 2d 819 (S.D. Tex. 2004), ultimately *granted* Deutsche Bank's motion to dismiss the section 12(a)(2) claims, holding unequivocally that:

> Transactions under Rule 144A . . . are ***private*** transactions with [QIBs] that are not subject to the 1933 Act's registration requirements. Because no prospectus is required, such offerings ***cannot*** give rise to Section 12(a)(2) liability.

761 F. Supp. 2d 504, 531–33 (S.D. Tex. 2011) (emphases added) (citations omitted). As for *AAL High Yield Bond Fund* v. *Ruttenberg*, No. Civ. A. 00-C-1404-S, 2001 WL 34372980 (N.D. Ala. Sept. 30, 2001), the decision contains virtually no reasoning and does not discuss any of the specific features of Rule 144A or the S.E.C.'s proposing or adopting releases.

### C. **Plaintiffs' Theory Would Undermine the Utility of Rule 144A**

Rule 144A is widely used by both U.S. and non-U.S. issuers to raise capital

---

[7] None of the other cases cited by Plaintiffs involved Rule 144A transactions. The only other case cited by Plaintiffs that even mentions Rule 144A is *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp.*, but the transactions at issue there were public offerings effected pursuant to Regulation S. *See* 941 F. Supp. 1369, 1376 & n.11 (S.D.N.Y. 1996).

Plaintiffs also argue that two cases cited by the Bank Offering Defendants—*In re Fisker Automotive Holdings, Inc. Shareholder Litigation*, 128 F. Supp. 3d 814 (D. Del. 2015), and *Lewis* v. *Fresne*, 252 F.3d 352 (5th Cir. 2001)—undermine the argument that Rule 144A transactions are private by definition because those courts cited certain facts in determining that the offerings at issue were private. (Pls' Opp'n at 149-50.) But neither case involved a Rule 144A offering.

and serves as a crucially important exemption for issuers seeking access to the U.S. capital markets, as the S.E.C. has recognized.  *See* Securities Act Release No. 33-9415, 78 Fed. Reg. 44,771, 44,773 (July 24, 2013).  Rule 144A was intended to "mak[e] the private offering market in the [U.S.] more attractive to non-U.S. issuers," *id.* at 44,773 n.31, and the numbers suggest it has successfully done so.  In 2015 alone, Rule 144A was used to issue $909.915 billion in private placements, and non-U.S. issuers accounted for $368.944 billion of that amount.[8]

Yet, if adopted by the Court, Plaintiffs' theory that some Rule 144A offerings are really public offerings—and that a court can never determine whether an offering is public or private without extensive factual development—would mean that issuers and initial purchasers could never be certain that an offering that meets all the requirements of Rule 144A could not nevertheless be held, after expensive discovery, to have been "public."  Such uncertainty would undermine the utility of Rule 144A and would seriously interfere with the efficient functioning of the private placement market and chill participation in that market.

### D. TIAA-CREF Is Estopped From Denying That the Note Offerings Were Rule 144A Private Placements

The only named plaintiff asserting claims arising out of the Note Offerings, TIAA-CREF, made multiple written representations to the Bank Offering

---

[8] (Sept. 12, 2016 Rosen Decl. Ex. 8 (Thomson Reuters, 2015 US Private Placement Review) at 4.)

9

Defendants documenting that it was a QIB. (Br. at 12 & n.14.) As a purchaser of notes, TIAA-CREF also acknowledged that it would be "deemed to have represented and agreed" (i) "that it [wa]s purchasing the notes [as principal] for its own account or an account with respect to which it exercises sole investment discretion and that it and any such account is . . . a QIB, and [wa]s aware that the sale to it [wa]s being made in reliance on Rule 144A"; (ii) that it understood it was purchasing the notes subject to Rule 144A's resale restrictions; and (iii) that it "acknowledge[d] that the Issuer, the Initial Purchasers and others will rely upon the truth and accuracy of the foregoing acknowledgements, representations and agreements."[9] None of the cases cited by Plaintiffs involve a plaintiff that represented it was a QIB.

In light of these repeated representations, TIAA-CREF—which has nearly one trillion dollars under management[10]—may not argue that it is not a QIB or that the Note Offerings were public offerings. *See Yung* v. *Lee*, 432 F.3d 142, 149 (2d Cir. 2005) (holding that plaintiffs could not disavow "the express terms of the subscription and letter agreements" in which they "agreed that the [relevant]

---

[9] (Sept. 12, 2016 Rosen Decl. Exs. 1 (July 2013 Memorandum) at 117-19; 2 (December 2013 Memorandum) at 84-86; 3 (January 2015 Memorandum) at 85-87; and 4 (March 2015 Memorandum) at 153-56.)

[10] According to its website, TIAA had $889 billion under management, with investments in more than 50 countries, as of June 30, 2016. *See* https://www.tiaa.org/public/about-tiaa/discover-tiaa (last visited Dec. 12, 2016).

10

securities at issue 'were not offered ... by means of publicly disseminated advertisements or sales literature'" (quoting subscription agreement)).[11]

## II. Plaintiffs Do Not Contest That They Will Need To Establish Standing As To Each Bank Offering Defendant And Provide No Reasoned Basis to Defer Consideration of That Issue

Plaintiffs do not dispute that Lead Plaintiffs will be required to demonstrate standing as to each Bank Offering Defendant, but ask the Court to accept the boilerplate allegation that the Lead Plaintiffs "and the other members of the Class" bought shares and notes "from" the Bank Offering Defendants, and to defer any inquiry into their standing until class certification. (*See* Pls.' Opp'n at 125-26.) This request is premised entirely on a single footnote in a twenty-year-old case—*In re Westinghouse Securities Litigation*, 90 F.3d 696 (3d Cir. 1996)—which does not bear the immense weight placed on it. Plaintiffs' request that the Court permit them to proceed on the basis of entirely conclusory allegations of standing ignores precedent since *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007), and *Ashcroft*

---

[11] *See also In re Merrill Lynch*, No. 09 MD 2030, 10 Civ. 124, 2012 WL 1994707, at *5-6 (rejecting plaintiff's attempt to rebut defendant's reasonable belief that plaintiff was a QIB where plaintiff had made multiple representations that it was a QIB, including in QIB certificates of the type TIAA-CREF has signed here); *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 431, 454-56 (S.D.N.Y. 2003) (rejecting plaintiffs' allegation that offering was public because that allegation contradicted the offering memorandum, which made "clear from its face" that the offering was a private placement where, as here, the memorandum indicated the notes were unregistered and were being sold only to QIBs under Rule 144A), *vacated and remanded on other grounds*, 496 F.3d 245 (2d Cir. 2007).

v. *Iqbal*, 556 U.S. 662 (2009), requiring that "to survive a motion to dismiss for lack of standing, a plaintiff must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Finkelman* v. *NFL*, 810 F.3d 187, 194 (3d Cir. 2016) (internal quotation marks omitted); *see also Hassan* v. *City of N.Y.*, 804 F.3d 277, 289 (3d Cir. 2015).[12]

The Complaint's threadbare allegation that the Lead Plaintiffs "and the other members of the Class" purchased shares and notes from the Bank Offering Defendants does not meet this standard. The Third Circuit has made clear that a lead plaintiff cannot maintain a class action against a defendant based on the standing of absent class members. *See Winer Family Trust* v. *Queen*, 503 F.3d 319, 326 (3d Cir. 2007) ("The initial inquiry . . . is whether the lead plaintiff individually has standing, not whether or not other class members have standing."); *see also 6803 Boulevard E., LLC* v. *DIRECTV, LLC*, 17 F. Supp. 3d 427, 431 (D.N.J. 2014) (entering summary judgment for a single defendant in a putative class action because "'where no nominal plaintiff has standing on any issue against one of multiple defendants, a

---

[12] This is so regardless of whether the defect in the Complaint concerns Plaintiffs' Article III standing or their so-called "statutory standing." *See, e.g.*, *Finkelman*, 810 F.3d at 193-94 (imposing plausibility requirement on Article III standing); *Maiden Creek Assocs.* v. *U.S. Dep't of Transp.*, 823 F.3d 184, 189 n.1 (3d Cir. 2016) (stating that dismissal for lack of statutory standing "must [be] analyze[d] [ … ] under [the] Rule 12(b)(6)" standard of plausibility).

suit for damages may not be maintained as a class action against that defendant.'" (quoting *Haas* v. *Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1095 (3d Cir. 1975))).

Plaintiffs have also offered no principled reason to defer the standing question. This is especially true where, as here, Plaintiffs' sole theory of standing is that they bought shares and notes ***directly*** from the Bank Offering Defendants. Each Lead Plaintiff must already know ***today*** which of the Bank Offering Defendants it does, and does not, have standing to sue.

Because the Complaint does not "affirmatively and plausibly suggest that [the Lead Plaintiffs] ha[ve] standing to sue" any one of the Bank Offering Defendants, *Finkelman*, 810 F.3d at 194, Counts III through VIII should be dismissed.

### III. Plaintiffs Have Failed To Adequately Plead That They Purchased Shares "In" the Common Stock Offering and Have Disclaimed Any Standing Based on Tracing

Plaintiffs contend they have adequately pled that they purchased "in" the March 27, 2015 Stock Offering and have abandoned any theory of standing based on the purchase of shares that are merely "traceable" to the Stock Offering.[13] This allegation of standing, Plaintiffs claim, is borne out by City of Tucson's certification

---

[13] (*See* Pls.' Opp'n at 124 n.60 (dismissing the Bank Offering Defendants' arguments concerning tracing as "irrelevant" and failing to respond to those arguments because Plaintiffs' theory of standing is premised on the claim that they bought directly "in" the Stock Offering)); *see also, e.g.*, *Lawlor* v. *ESPN Scouts, LLC*, No. 2:10-cv-05886, 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant.").

13

reflecting a purchase of 300 Valeant shares at the $199.00 offering price on March 17, 2015.  (Pls.' Opp'n at 123–24.)

But the Complaint fails to plausibly plead that City of Tucson's March 17, 2015 purchase was "in" the Stock Offering.  As the Bank Offering Defendants demonstrated in their opening brief (Br. at 19–20) and Plaintiffs do not contest, the shares in the Stock Offering did not issue until March 27, 2015—ten days *after* City of Tucson claims to have bought them.  Moreover, on March 17, 2015, over 115,000 Valeant common shares already in the market changed hands at prices between $198.89 and $199.29.[14]  Thus, the 300 shares of Valeant stock that City of Tucson purchased on March 17, 2015 at $199 could easily have come from the secondary market, not from the Stock Offering.  Significantly, if City of Tucson—which has control over its own transaction records, including confirmations of its purchases— had purchased in the Stock Offering, it could have easily responded to the Bank Offering Defendants' motion to dismiss by putting those records before the Court; its failure to do so speaks volumes.

The "obvious alternative explanation" for the provenance of the 300 shares purchased on March 17, 2015—that they came from the secondary market— undermines the plausibility of any allegation that City of Tucson purchased shares "in" the Stock Offering.  *Twombly*, 550 U.S. at 567; *see also In re Century Aluminum*

---

[14] (Dec. 12, 2016 Rosen Decl. Ex. 1 at 4-5.)

*Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (affirming dismissal of Securities Act claim for lack of standing where plaintiff's allegations "do not tend to exclude the possibility that [its] shares came from the pool of previously issued shares"). Because City of Tucson has failed adequately to plead that it purchased any shares "in" the Stock Offering, and has abandoned any claim that it purchased shares merely "traceable to" the Stock Offering, Counts VII and VIII should be dismissed.

## CONCLUSION

For the reasons set forth above and in their opening brief, the Bank Offering Defendants respectfully submit that the Court should dismiss Counts III through VIII of the Complaint.

Respectfully submitted,

_____

| | |
|---|---|
| Richard A. Rosen, Esq. (*pro hac vice*) | Mark. A. Berman, Esq. |
| **PAUL, WEISS, RIFKIND,** | Robin D. Fineman, Esq. |
| **WHARTON & GARRISON LLP** | **HARTMANN DOHERTY ROSA** |
| 1285 Avenue of the Americas | **BERMAN & BULBULIA, LLC** |
| New York, NY 10019 | 65 Route 4 East |
| (212) 373-3305 | River Edge, NJ 07661 |
| | (201) 441-9056 |
| | *Attorneys for the Bank Offering* |
| Dated: December 14, 2016 | *Defendants* |