## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION<br><br>This Document Relates To: All Actions | ) ) Honorable Michael A. Shipp,<br>) U.S.D.J.<br>)<br>) Master File No. 15-7658 (MAS)<br>) (LHG)<br>)<br>)<br>) **Electronically Filed**<br>)<br>**Oral Argument Requested**<br><br>**Return date: January 3, 2017** |

# REPLY BRIEF IN SUPPORT OF DEFENDANT HOWARD B. SCHILLER'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

**OF COUNSEL**
Robert Y. Sperling
Joseph L. Motto
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

Elizabeth P. Papez
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5000

WINSTON & STRAWN LLP
The Legal Center
One Riverfront Plaza, Suite 730
Newark, New Jersey 07102
973) 848-7645
James S. Richter
Melissa Steedle Bogad

*Counsel for Defendant Howard B. Schiller*

**TABLE OF CONTENTS**

*Page*

I.     INTRODUCTION ................................................................................... 1

II.    PLAINTIFFS DO NOT ADEQUATELY PLEAD THAT SCHILLER
       VIOLATED SECTION 10(b) AND RULE 10b-5 ....................................... 2

       A.   Plaintiffs Do Not Adequately Plead That Schiller Made Any
            Materially False Statements or Omissions ................................. 2

       B.   Plaintiffs Also Fail Adequately To Plead Schiller's Scienter .... 6

III.   CONCLUSION ..................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*City of Edinburgh Council v. Pfizer, Inc.*,
  754 F.3d 159 (3d Cir. 2014) ................................................................................ 4

*Glenbrook Capital Ltd. P'ship v. Kuo*,
  2008 WL 929429 (N.D. Cal. Apr. 3, 2008) ...................................................... 12

*Goldstein v. MCI WorldCom*,
  340 F.3d 238 (5th Cir. 2003) .............................................................................. 9

*Higginbotham v. Baxter Int'l, Inc.*,
  495 F.3d 753 (7th Cir. 2007) .............................................................................. 7

*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999) ............................................................................... 9

*In re Amarin Corp. PLC.*,
  2015 WL 3954190 (D.N.J. June 29, 2015) .................................................. 7, 10

*In re Anadarko Petroleum Corp. Litig.*,
  957 F. Supp. 2d 806 (S.D. Tex. 2013) ............................................................... 9

*In re Bradley Pharms., Inc. Sec. Litig.*,
  421 F. Supp. 2d 822 (D.N.J. 2006) .................................................................. 10

*In re Fisker Auto. Holdings, Inc. S'holder Litig.*,
  2015 WL 6039690 (D. Del. Oct. 15, 2015) ....................................................... 3

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
  2015 WL 4469143 (D.N.J. July 22, 2015) ......................................................... 9

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) ................................................................ 4, 9

*In re Maxwell Techs. Sec. Litig.*,
  18 F. Supp. 3d 1023 (S.D. Cal. 2014) ................................................................ 8

*In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*,
  2011 WL 3444199 (D.N.J. Aug. 8, 2011) .......................................................... 3

*In re MicroStrategy Inc. Sec. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) ................................................................ 8

# TABLE OF AUTHORITIES
(*continued*)

*Page(s)*

*In re Par Pharm. Sec. Litig.*,
   2008 WL 2559362 (D.N.J. June 24, 2008) .................................................................... 1

*In re PDI Sec. Litig.*,
   2005 WL 2009892 (D.N.J. Aug. 17, 2005) .................................................................. 10

*Institutional Inv'rs Grp.* v. *Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009) .......................................................................................... 7

*Janus Capital Group v. First Derivative Traders.*
   564 U.S. 135 (2011) .................................................................................................. 2, 3

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004) ...................................................................................... 8

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   135 S. Ct. 1318 (2015) .................................................................................................. 4

*Rahman v. Kid Brands, Inc.*,
   736 F.3d 237 (3d Cir. 2013) ........................................................................................ 11

*Sapir v. Averback*,
   2016 WL 554581 (D.N.J. Feb. 10, 2016) ................................................................... 11

*Shapiro v. UJB Financial Corp.*,
   964 F.2d 272, 282 (3d Cir. 1992) .................................................................................. 4

*Steiner v. MedQuist Inc.*,
   2006 WL 2827740 (D.N.J. Sept. 29, 2006) .................................................................. 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .................................................................................................. 2, 6

*United States* v. *Tanner*,
   16-mj-7338 (S.D.N.Y.) ............................................................................................... 12

*Winer Family Tr. v. Queen*,
   503 F.3d 319 (3d Cir. 2007) .......................................................................................... 6

## STATUTES

15 U.S.C. § 78u-4(b)(1) ........................................................................................................ 4

## TABLE OF AUTHORITIES
(*continued*)

*Page(s)*

### OTHER AUTHORITIES

Federal Rule of Civil Procedure 9(b) ......................................................................................... 4, 9

I.      INTRODUCTION

Plaintiffs' opposition brief confirms the pleading defects that warrant dismissal of their claims that Howard Schiller misled Valeant shareholders or otherwise violated the securities laws.

***Impermissible Group Pleading:***  The bulk of Plaintiffs' omnibus opposition is devoted to the same impermissible "group pleading" that defines their Complaint. (*See* Br. at 15-16, 20-22.)[1] The brief attempts to substantiate Plaintiffs' inadequate allegations against Schiller—both as to falsity and scienter—largely by lumping him together with Valeant and every other individual Defendant (*see, e.g.*, Opp. at 80-102), without addressing his "individual[] participation and scienter … separately and with particularity." *In re Par Pharm. Sec. Litig.*, 2008 WL 2559362, at *10 (D.N.J. June 24, 2008).

***Lack of Particularized Facts:*** To the extent the brief specifically addresses Schiller, it cites no particularized facts showing that statements he made were contradicted by information he possessed. (*E.g.*, Opp. 51-52.) The brief simply joins the Complaint in accusing Schiller of fraud based on strained interpretations of innocuous statements (*e.g.*, *id.*), dressing benign facts with inflammatory labels (*e.g., id*. at 80 (labeling Schiller the "architect" of Valeant's "deceptive tactics," citing only a single call reporting undisputed financial results)), and impermissibly treating Schiller's executive position as a proxy for personal knowledge of alleged low-level prescription practices at Philidor.

***Fabrication of "Admissions":*** Attempting to distract from the foregoing pleading failures, Plaintiffs' brief doubles down on the Complaint's unseemly tactic of manufacturing "admissions" from Schiller's Congressional testimony. (*See* Opp. at 24-26.) The brief repeats the discredited claim that Schiller "admitted" concealing risks associated with drug pricing (Opp. at 106), and

---

[1] Schiller's opening brief in support of dismissal, D.E. 168-1, is cited herein as "Br." Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss, D.E. 178, is cited as "Opp."

misrepresents that Schiller testified "as an authority on the subject[] of Philidor" (*id*. at 105) at a hearing where Philidor was not even mentioned. (*See* Bogad Decl. Ex. A (D.E. 168-3).)

***Failure to Engage Non-Culpable Inferences:*** Last but not least, Plaintiffs' brief disregards non-culpable inferences from the conduct it cites—notably, that Valeant's premature recognition of an inconsequential amount of revenue unrelated to any alleged sales target or subsequent clawback was the product of mistake, rather than fraud. (*See, e.g.*, Br. at 29.) Such inferences are at least as compelling as the accusation that Schiller consciously or recklessly misled the public. Yet, Plaintiffs' only response is to dodge those inferences by arguing that they raise "factual disputes that are inappropriate for a motion to dismiss." (*E.g.*, Opp. at 105, 107.) This argument violates the PSLRA, which requires Plaintiffs to plead facts from which the inference of scienter is "strong in light of other explanations," and thus invites precisely the consideration of non-culpable inferences Plaintiffs improperly try to avoid. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Particularly in light of their failure to address those non-culpable inferences, Plaintiffs have not adequately pled Schiller's scienter.

For these and the other reasons in Defendants' filings, Plaintiffs have not adequately pled a § 10(b)/Rule 10b-5 violation against Schiller, and their claims against him should be dismissed.[2]

## II. PLAINTIFFS DO NOT ADEQUATELY PLEAD THAT SCHILLER VIOLATED SECTION 10(b) AND RULE 10b-5

### A. Plaintiffs Do Not Adequately Plead That Schiller Made Any Materially False Statements or Omissions

As a threshold matter, Plaintiffs fail to connect to Schiller most of the false statements they allege. Only a few of the dozens of supposed misrepresentations alleged in the Complaint were "made" by Schiller (Br. at 3, 15-16) in the sense required by *Janus Capital Group v. First*

---

[2] Schiller incorporates by reference, as applicable to him, the arguments made by the Valeant Defendants in their forthcoming reply brief in support of their motion to dismiss.

*Derivative Traders*, 564 U.S. 135, 144 (2011). In an effort to cure this inadequacy, Plaintiffs strain to involve Schiller in additional alleged misstatements, claiming, for example, that he is responsible for statements made by others during an October 25, 2016 conference call (Compl. ¶¶ 217-21) simply because he attended the call. (Opp. at 27-28, 34, 37.)[3] But "participation in a conference call, without speaking, cannot confer liability under Rule 10b-5 for the misstatements or omissions of the speaker." *In re Fisker Auto. Holdings, Inc. S'holder Litig.*, 2015 WL 6039690, at *16 (D. Del. Oct. 15, 2015). The Complaint does not allege that Schiller controlled the allegedly false statements made, and thus he cannot be held liable for them. *Janus*, 564 U.S. at 144. As to another call on October 19, 2015, Plaintiffs claim that Schiller is liable for alleged false statements concerning Philidor made during that call. (Opp. at 46 & n.23, 52.) But Schiller was not even an attendee of that call, and he is not alleged to have contributed to the statements that were made. (Compl. ¶¶ 205-12.) *See also Janus*, 564 U.S. at 144; *In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*, 2011 WL 3444199, at *25-26 (D.N.J. Aug. 8, 2011).

As to the handful of statements that are attributable to Schiller, Plaintiffs' brief confirms that the Complaint does not sufficiently plead that any were materially misleading.

***Statements Concerning Alternative Fulfillment:*** Plaintiffs argue that Schiller's June 2013 discussion of alternative fulfillment "claim[ed] that the whole industry was using specialty pharmacies in a similar manner [to Valeant]," and made various other assertions that misrepresented Valeant's relationship with Philidor. (Opp. at 51-52; *see* Compl. ¶ 138.) But

---

[3] The Complaint identifies only one statement attributable to Schiller from the call—namely, his statements that he had no "concerns about Valeant or Mike," and that he supported Pearson. (Compl. ¶ 222.) Plaintiffs do not emphasize these statements in the Complaint or plead that they were false. (*See* Compl. ¶ 14 n.3.) In any event, the statements are puffery, and Plaintiffs have not alleged facts showing that Schiller actually did have "concerns" or did not support Pearson, so the statements are not sufficiently alleged to be misleading.

Schiller made none of the claims Plaintiffs read into his statements, and the Court is under no obligation to credit Plaintiffs' implausible and "self-serving interpretations." *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 278-79 (D.N.J. 2007). Plaintiffs' reliance on *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 282 (3d Cir. 1992) (*see* Opp. at 53), is inapt, as the defendant in that case spoke directly to its allegedly misleading lending practices while omitting facts "contradicting" those statements. Here, Schiller simply described his opinion that alternative fulfillment is about "profitability" and part of a trend toward "focus[ing] on profitable scripts." (Compl. ¶ 138.) The Complaint alleges no facts contradicting that statement or suggesting that Schiller did not hold that view. Nor could the statements be read to contain an embedded disclaimer that a particular, then-fledging pharmacy, Philidor, had engaged in untoward practices or that Schiller had specifically inquired into that subject when formulating his opinions. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015).

***Statements Concerning Dermatology Results:*** Plaintiffs' brief abandons their claim of falsity as to most of Schiller's statements from a February 23, 2015 call concerning dermatology product results (Compl. ¶ 183) and attacks only Schiller's statement applauding "[t]he outstanding work of our sales teams, implementation of innovative marketing approaches, great leadership, a portfolio of great products, and our new launch products," and his comment that those factors "contributed to the turnaround and the outstanding results in our dermatology business in Q4 and 2014." (Opp. at 41.) Plaintiffs ignore Schiller's argument that the challenged statements are inactionable puffery (Br. at 15), and fail to plead that the factors Schiller noted did not contribute to dermatology results, as required to show falsity under Rule 9(b) and the PSLRA. 15 U.S.C. § 78u-4(b)(1); *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 166 (3d Cir. 2014).

Plaintiffs' only response—that Schiller's statements were misleading because they did not mention the extent to which sales were supposedly driven by "deceptive tactics" or price rather

than volume (Opp. at 42-43)—is unavailing. In the very same remarks, Schiller specifically identified Jublia prescription volume, describing "20,000 weekly scripts for the last reported weekly sales report," which "yields an annualized run rate of greater than $250 million for the product." (Compl. ¶ 183.) Plaintiffs do not challenge the accuracy of those figures. As to the other products mentioned, the Complaint says nothing about whether the supposed "deceptive tactics" or price increases had driven revenue, and Schiller made no representation as to whether revenues grew by way of price, volume, or both. Accordingly, this case is clearly distinguishable from *Steiner v. MedQuist Inc.*, 2006 WL 2827740 (D.N.J. Sept. 29, 2006) (*see* Opp. at 43), which involved detailed allegations of reports based on specific undisclosed, fraudulent billing practices.

*Certifications in Financial Statements***:** Plaintiffs contend that the Company's March 2016 statement regarding deficiencies in 2014 and 2015 internal controls (Opp. at 30) proves the falsity of Schiller's certifications in certain Company filings, which stated that he had "evaluated the effectiveness of our disclosure controls and procedures" and "concluded that our disclosure controls and procedures were effective as of" the close of the prior financial periods. (*Id.*) But Plaintiffs compare apples to oranges. Valeant's after-the-fact reflection on past internal controls does not show that Schiller failed honestly to assess those controls, or that Schiller believed them to be ineffective at that time he certified otherwise. Plaintiffs do not meaningfully engage with the cases cited in Schiller's brief recognizing this distinction and rejecting Plaintiffs' fallacious argument to the contrary. (*See* Br. at 17) (citing *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 358-60 (S.D.N.Y. 2015) *aff'd* (2d Cir. Mar. 21, 2016); *Se. Pa. Transp. Auth.* v. *Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *46 (M.D. Pa. June 22, 2015)).

*Other Company Statements in Filings Signed by Schiller:* Plaintiffs' brief fails to remedy the pleading defects that preclude Plaintiffs from relying on the various supposed false statements for which Schiller is allegedly liable as a Company signatory. (*See, e.g.*, Compl. ¶ 137 (Company

-5-

risk disclosure that "certain of our products . . . are distributed by third parties, over which we have no or limited control"); *id.* ¶ 152 (Company statement that "[t]he growth of our business is further augmented through our lower risk research and development model").) Plaintiffs do not allege facts showing those statements were materially false, nor could they because many of the statements were true according to the Complaint itself. (Br. at 17-20; *see also, e.g.*, Compl. ¶¶ 8, 56 (describing Valeant's lower-risk R&D model).) Plaintiffs' brief attempts to justify the Complaint's reliance on such statements only by misleadingly modifying them. For example, as to the statement concerning distribution of products by third parties, Plaintiffs' brief deletes the word "certain," so as to give the misimpression that the Company asserted that all of its products were distributed by unaffiliated third parties (e.g., Opp. at 34, 128), rather than just some of them.

For these and the reasons already briefed and set forth in Valeant's forthcoming reply, Plaintiffs do not sufficiently plead that Schiller made any materially false statements.

### B. Plaintiffs Also Fail Adequately To Plead Schiller's Scienter

Plaintiffs' defense of the defects in their scienter allegations against Schiller rests on a misreading of *Tellabs*. The Supreme Court's directive in that case—that courts analyze scienter "holistically," *Tellabs*, 551 U.S. at 326—does not permit Plaintiffs to lump Schiller together with all other Defendants so as to "group-plead" scienter. *See Winer Family Tr. v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007). Plaintiffs' brief disregards this principle by lumping Schiller into undifferentiated groups—such as the "Exchange Act Defendants" or the "Individual Defendants"—and making sweeping claims as to the group's supposed participation in deceptive conduct, often based on allegations that do not concern Schiller. (Opp. at 80-102.) Examples include broad-stroke claims that the "Individual Defendants" purportedly "designed a PR strategy and copay waiver practices to minimize complaints and increase automatic refills" (Opp. at 83 (citing Compl. ¶¶ 68-81)); "had a role in designing or concealing the system of raising prices, then

routing patients into Valeant's captive network of pharmacies" (Opp. at 83-84 (citing Compl. ¶¶ 74-75)); and "designed false and misleading answers to anticipated questions about price increases." (Opp. at 84 (citing Compl. ¶¶ 77-81, 387).) None of the foregoing allegations mention Schiller.[4] And the few assertions actually directed at him (Opp. at 105-08) fall woefully short of pleading scienter for the reasons set forth in Schiller's brief (Br. at 22-29), which Plaintiffs do not refute. Instead, their brief reiterates the same misdirection and distortion of Schiller's public statements and Congressional testimony (Opp. 105-08) that fails to establish the requisite strong inference of scienter. *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 267 (3d Cir. 2009).

*Lack of Motive:* Plaintiffs insist that Valeant's compensation model motivated Schiller to mislead investors by making inaccurate statements that inflated Valeant's stock price. (Opp. at 99-100, 105, 107). But such financial incentives simply aligned Schiller's personal interests with the economic interests of other Valeant shareholders. That fact, considered alongside the fact that Schiller never sold any of the stock he was awarded, argues powerfully against, rather than in favor of, inferring scienter. *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759 (7th Cir. 2007); *In re Amarin Corp. PLC.*, 2015 WL 3954190, at *11 (D.N.J. June 29, 2015).

*Accounting Restatement:* Plaintiffs' inadequate allegations of motive sharply undermine their claim that Schiller prematurely recognized small amounts of revenue on late 2014 sales to Philidor with an intent to mislead shareholders. Plaintiffs plead no facts, such as a sales goal or earnings target, that would have driven Schiller to commit such an alleged fraud, nor do they plead any facts that corroborate his alleged knowledge of improperly timed earnings recognition. *Cf. Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1234 (9th Cir. 2004)

---

[4] Plaintiffs' brief also mischaracterizes the Complaint in an effort to conflate Schiller with others— *e.g.*, identifying him as a former McKinsey consultant brought in to "run[] Valeant like a hedge fund," (Opp. at 83), even though the Complaint makes no such allegations as to Schiller.

-7-

(inferring that executives were aware of improper revenue recognition only because company would have otherwise missed earnings projection).

Plaintiffs' argument that Schiller must have known of the accounting error because it was obvious (Opp. at 94, 105) assumes that the CFO of an international company with billions of dollars in annual sales personally determines revenue recognition on each individual sale. The Complaint alleges no facts to support that assumption, and courts confronted with similar circumstances have rejected it. *See e.g.*, *In re Maxwell Techs. Sec. Litig.*, 18 F. Supp. 3d 1023, 1042 (S.D. Cal. 2014) (declining to infer scienter as to CFO concerning improper revenue recognition on certain sales to specific distributors). Further, given the small amount of the overstatement, this case is nothing like *In re MicroStrategy Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000) (*see* Opp. at 94), where the revenue overstatement dramatically altered the company's financial outlook, giving the appearance of profitability when in fact the company was operating at a loss. *Id.* at 636-37.

Plaintiffs respond that the Company's March 2016 8-K "found" that Schiller "deliberately" overstated revenue and "tried to conceal it." (Opp. at 105.) But the Company said nothing of the sort. (*See* Giuffra Decl. Supp. Valeant MTD Ex. 37 (D.E. 167-9) at 3.) The Company's characterization of the accounting error is facially consistent with Schiller's conduct being merely "mistaken." (Br. at 28.) Plaintiffs' brief, like their Complaint, cites no facts that establish a strong inference of fraud. The fact that Schiller was asked to resign from the board (Opp. at 95) is a commonplace occurrence during a business downturn. And, as Plaintiffs concede (and vainly attempt to spin in their favor (Opp. at 92)), Valeant never sought a clawback from Schiller, even under new management, further underscoring that the allegations against Schiller concern, at most, "corporate mismanagement" that is "insufficient to establish even recklessness." *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2015 WL 4469143, at *17 (D.N.J. July 22, 2015).

***Role within the Company:*** Like their allegations on falsity, Plaintiffs' allegations on

-8-

scienter ultimately and improperly rely on Schiller's role as CFO as a proxy for pleading that he knowingly concealed risks associated with pricing, accounting mistakes, or allegedly improper business activity at Philidor. (Opp. at 88, 105.) But "allegations that a securities-fraud defendant, because of his position within the company, must have known a statement was false or misleading are precisely the types of inferences which courts, on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999).[5] Indeed, for the most part, Valeant is alleged to have concealed information that a senior-level executive would be presumed *not* to know, such as whether personnel at a particular pharmacy were modifying prescriptions. (Compl. ¶ 116.) *Cf. In re Anadarko Petroleum Corp. Litig.*, 957 F. Supp. 2d 806, 825 (S.D. Tex. 2013) ("[i]t cannot be presumed that . . . top executives knew the most granular details regarding operations within" particular business segments).

Citing only allegations that Schiller and others attended meetings about drug pricing and acquisitions and publicly defended certain business lines, Plaintiffs' brief insists that Schiller was "pivotal in devising the deceptive scheme to operate Valeant in a non-traditional manner." (Opp. at 106 (citing Compl. ¶¶ 392-96).) That Plaintiffs must resort to distorting their own allegations speaks poorly of their claims, and their "mere usage of catchwords [and] bold assertions," *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d at 281, cannot substitute for their failure to assert particularized facts showing that Schiller made materially false statements with scienter.

***"Specific" Statements:*** Plaintiffs contend that the Complaint pleads "specific statements" and "denials" as to the allegedly concealed information from which Schiller's scienter should be inferred. (Opp. at 89-91, 106.) But this claim fails because (i) Schiller *did not make* any statements

---

[5] Likewise, courts routinely reject as insufficient to infer an executive's knowledge of particular misconduct claims such as Plaintiffs' allegation (Opp. at 106) that in early 2016, Schiller was named interim CEO due to his "intimate familiarity" with the business. *E.g.*, *Goldstein v. MCI WorldCom*, 340 F.3d 238, 251 (5th Cir. 2003).

or denials specific to the information allegedly concealed—he merely made general statements concerning financial results and alternative fulfillment; and (ii) even if he did, courts will not infer scienter based on such allegations "absent particularized allegations showing th[e] defendant[] [executive] had ample reason to know of the falsity of their statements." *In re Amarin Corp. PLC.*, 2015 WL 3954190, at *12.

Plaintiffs' brief does not identify any allegations that meet this test with respect to Schiller. The Complaint does not contain any particularized facts describing Schiller's awareness of the information supposedly concealed by Valeant—*e.g.*, that certain price increases would provoke a public backlash.  This case is nothing like *In re Bradley Pharms., Inc. Sec. Litig.*, 421 F. Supp. 2d 822 (D.N.J. 2006) (*see* Opp. at 88), in which the defendants prepared financial statements while having simultaneous "access to specific information" suggesting that the statements were false. *Id*. at 830.  The contrary assertions in Plaintiffs' brief (*e.g.*, Opp. at 86 (addressing the use of alias email accounts at Philidor)), are not grounded in the Complaint.

***Misrepresentation of Schiller's Testimony:*** Plaintiffs' brief shamelessly repeats the fabrication set forth in the Complaint, which has already been refuted by the public materials cited in Schiller's brief (Br. at 24-26), that during testimony before the House Oversight Committee, Schiller "admitted he was aware of the risks of increased pressure for rebates, substitution of products, and decreased sales." (Opp. at 106.)  Plaintiffs accuse Schiller of "attempt[ing] to spin his testimony" (*id*.), but Schiller simply exposed the misstatements in the Complaint by citing the hearing transcripts.  "When allegations contained in a complaint are contradicted by the document it cites, the document controls," *In re PDI Sec. Litig.*, 2005 WL 2009892, at *21 (D.N.J. Aug. 17, 2005), and "for purposes of the comparative scienter inquiry, the Court takes into consideration *all* of the facts alleged, taken collectively—including whether allegations are contradicted by other documents."  *Sapir v. Averback*, 2016 WL 554581, at *10 (D.N.J. Feb. 10, 2016) (internal quotation marks omitted).

Plaintiffs' brief similarly distorts Schiller's testimony in arguing that "Schiller claims that he was unaware of Philidor [and] the pricing practices … But this is contrary to his testimony to Congress wherein he spoke as an authority on the subjects of Philidor and Valeant's pricing practices." (Opp. at 105-06.) Schiller's brief did not claim he was "unaware of Philidor" or that Valeant had increased prices, but rather observed that that there is a material difference between knowledge of drug pricing or a distributor and awareness that the pricing risked a Congressional rebuke or that the distributor's personnel were engaged in misconduct. (Br. at 24-26.) During his testimony, Schiller acknowledged that some of Valeant's price increases were "mistakes" in hindsight (Bogad Decl Ex. A at 9, 21), but neither he nor anyone else at the hearing mentioned Philidor.

Finally, that Congressman Chaffetz used a politically charged hearing to accuse Schiller and representatives of another company of "lying" about being profit-driven (Opp. at 91; *see also* Bogad Decl. Ex. A at 101) has no bearing on whether the Complaint adequately pleads Schiller's scienter concerning Valeant's supposed concealment of the risks associated with price increases and Philidor's alleged improper conduct.

***Involvement with Philidor Option Purchase:*** Finally, Plaintiffs refer to the fact that Schiller and many other Valeant executives and directors visited Philidor and were signatories to agreements with Philidor. (Opp. at 106.) But "corporate management's general awareness of the day-to-day workings of the company's business," including the signing of agreements or visits to facilities, "does not establish scienter … absent some additional allegations of specific information conveyed to management and related to fraud." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246-47 (3d Cir. 2013) (quoting *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008)); *Glenbrook Capital Ltd. P'ship v. Kuo*, 2008 WL 929429, at *13 (N.D. Cal. Apr. 3, 2008) (no strong inference of scienter as to former CFO based on allegation that he signed

allegedly deceptive agreement).[6]

### III. CONCLUSION

For all the foregoing reasons, those Schiller previously briefed, and those set forth in Valeant's reply brief as applicable to Schiller, Plaintiffs fail adequately to plead securities fraud or their other claims against Schiller, and their Complaint against him should therefore be dismissed.

        WINSTON & STRAWN LLP
        *Counsel for Defendant Howard B. Schiller*

        By: s/ Melissa Steedle Bogad
           James S. Richter
           jrichter@winston.com
           Melissa Steedle Bogad
           mbogad@winston.com

Dated: December 14, 2016

**OF COUNSEL:**
Robert Y. Sperling
Joseph L. Motto
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

Elizabeth P. Papez
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5000

---

[6] Plaintiffs' suggestion that Philidor allegedly doctored prescriptions or engaged in other misconduct in full view of Valeant's management and board during facility tours is implausible for many reasons, not least of which is the government's recent filing of criminal charges against a former Valeant/Philidor employee and a Philidor executive for allegedly conspiring to mislead Valeant.  *See* Compl., *United States* v. *Tanner*, 16-mj-7338 (S.D.N.Y.).

## **CERTIFICATION OF SERVICE**

I certify that on this 14th day of December, 2016, the foregoing Reply Brief was electronically filed and served upon counsel for Plaintiffs by notice of electronic filing.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*s/ Melissa Steedle Bogad*
Melissa Steedle Bogad
mbogad@winston.com

Dated: December 14, 2016