# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | ) ) ) ) |
| | Master File No. 3:15-cv-07658 (MAS) (LHG) |
| This Document Relates To: | ) ) ) |
| | (ORAL ARGUMENT REQUESTED) |
| ALL ACTIONS | ) ) ) |
| | Motion Day: January 3, 2017 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF TANYA CARRO'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 848-8615
Facsimile: (973) 297-6615

William J. Schwartz
Laura Grossfield Birger
COOLEY LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

*Attorneys for Defendant Tanya Carro*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ....................................................................................................2

I.     PLAINTIFFS IMPERMISSIBLY ATTRIBUTE ALL STATEMENTS IN THE OCTOBER 19 AND 26 PRESENTATIONS AND RELEASES TO CARRO ..............................................................................2

     A.    The Complaint Did Not Attribute Any Statements Other Than the "October 26 Statements" to Carro ................................2

     B.    Plaintiffs Do Not Allege Facts Supporting Attribution To Carro of the October 19 and 26 Presentations And Releases........................4

II.    PLAINTIFFS FAIL TO ALLEGE THAT THE OCTOBER 26 STATEMENTS WERE FALSE...................................................................6

III.   PLAINTIFFS DO NOT ALLEGE THAT CARRO MADE FALSE STATEMENTS WITH SCIENTER............................................................8

     A.    The Allegedly "Improper Conduct" Described in the Company's Restatement Is Unrelated To the October 26 Statements ........................................................................8

     B.    The Purported "Improper Conduct" Is Not Sufficient To Allege Scienter ...............................................................................10

     C.    Group Pleading Allegations Are Insufficient To Establish Scienter ...............................................................................14

CONCLUSION ..............................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanta Corp. Sec. Litig.*,
   180 F.3d 525 (3d Cir.1999) ....................................................................3

*In re Baan Co. Sec. Litig.*,
   103 F. Supp. 2d 1 (D.D.C. 2000) ..........................................................11

*Bell* v. *Fore Sys., Inc.*,
   17 F. Supp. 2d 433 (W.D. Pa. 1998) .....................................................11

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004) ...................................................................3

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir.1984) .................................................................4

*City of Edinburgh Council v. Pfizer, Inc.*,
   754 F.3d 159 (3d Cir. 2014) ...................................................................2

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
   836 F.2d 173 (3d Cir. 1988) ...................................................................4

*DiLeo v. Ernst & Young*,
   901 F.2d 624 (7th Cir.1990) ...................................................................3

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ..................................................................5

*Home Care Indus. v. Murray*,
   2002 WL 32627452 (D.N.J. Nov. 27, 2002) ..........................................4

*Hughes v. United Parcel Serv., Inc.*,
   639 F. App'x 99 (3d Cir. 2016) ..............................................................4

*Inst'l Investors Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir.2009) ...............................................................2, 10

*In re Intelligroup Sec. Litig.*,
   527 F. Supp. 2d 262 (D.N.J. 2007)...................................................11, 13

ME1 23856158v.1

# TABLE OF AUTHORITIES
## Continued

**Page(s)**

*Janus Capital Group, Inc. v. First Derivative Traders*,
564 U.S. 135 (2011).......................................................................4, 5

*Klein v. Gen. Nutrition Companies, Inc.*,
186 F.3d 338 (3d Cir. 1999) ...............................................................3

*Lapham v. Accenture, LLP*,
2016 WL 6609177 (D.N.J. Nov. 8, 2016) ...........................................4

*In re Medicis Pharm. Corp. Sec. Litig.*,
2010 WL 3154863 (D. Ariz. Aug. 9, 2010) ..........................11, 12, 13

*In re Merck & Co., Inc.*,
2011 WL 3444199 (D.N.J. Aug. 8, 2011) ..................................5, 6, 14

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ...........................................................14

*In re Microstrategy, Inc. Sec. Litig.*,
115 F. Supp. 2d 620 (E.D. Va. 2000) ................................................12

*In re Par Pharm. Sec. Litig.*,
2008 WL 2559362 (D.N.J. June 24, 2008).........................................13

*Rahman v. Kid Brands, Inc.*,
736 F.3d 237 (3d Cir. 2013) ..............................................................14

*In re Ravisent Techs., Inc. Sec. Litig.*,
2004 WL 1563024 (E.D. Pa. July 13, 2004) ......................................11

*In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*,
311 F.3d 198 (3d Cir. 2002) ................................................................3

*In re Synchross Sec. Litig.*,
705 F. Supp. 2d 367 (D.N.J. 2010)....................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...............................................................2, 10, 13

## TABLE OF AUTHORITIES
### Continued

**Page(s)**

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
 2015 U.S. Dist. LEXIS 77495 (E.D. Pa. June 16, 2015)....................................13

*Wilson v. Bernstock*,
 195 F. Supp. 2d 619 (D.N.J. 2002).....................................................................15

*Winer Family Trust v. Queen*,
 503 F.3d 319 (3d Cir. 2007) ................................................................2, 5, 6, 14

ME1 23856158v.1

## PRELIMINARY STATEMENT

Plaintiffs attempt to overcome the deficiencies in their Consolidated Amended Complaint ("Complaint") by altering and supplementing its allegations in their Opposition Brief, attributing new allegedly false statements to Defendant Tanya Carro, and advancing new factual theories of liability that are not supported by the allegations of the Complaint.

Plaintiffs fail to surmount two central defects in their Complaint. First, none of the facts it alleges establish that Carro's October 26 Statements,[1] which described the Company's historic accounting treatment of Philidor, were false. Second, the lynchpin of the Complaint's scienter allegations concerning Carro is the statement in the Company's March 21 8-K that "improper conduct" by Carro and the CFO had contributed to a restatement of revenues. There is no connection, however, between the purported "improper conduct"/Restatement and the October 26 Statements. Plaintiffs make a convoluted attempt to link the two unrelated matters, but never confront these simple facts: the Restatement concerned the timing of recognition of certain revenue, and the October 26 Statements concerned the Company's historical analysis as to whether Philidor should have been separately identified in the Company's filings.

---

[1]  Defined terms identified in Carro's Motion to Dismiss have the same meaning in this brief.

1

For the reasons described in this brief and our moving brief, the claims against Tanya Carro should be dismissed.

## ARGUMENT

I. **PLAINTIFFS IMPERMISSIBLY ATTRIBUTE ALL STATEMENTS IN THE OCTOBER 19 AND 26 PRESENTATIONS AND RELEASES TO CARRO**

    A. **The Complaint Did Not Attribute Any Statements Other Than the "October 26 Statements" to Carro**

Plaintiffs now assert for the first time that Carro is liable for all the allegedly false statements "made in presentations and releases on October 19, 2015 (¶ 206) and October 26, 2015 (¶¶ 215-217)." *See* Plaintiffs' Opposition Brief ("Opp.") at 27. The Complaint does not attribute any allegedly false statements to Carro other than two specific statements that *she* made on October 26 (defined in Carro's Motion to Dismiss as the "October 26 Statements). *See* Compl. ¶ 221. For this reason alone, Plaintiffs' attempt to hold Carro liable for any other statements is meritless.

The PSLRA has "exacting pleading requirements" for falsity. *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 168 (3d Cir. 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *Inst'l Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 263 (3d Cir.2009)). *See also Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007) (plaintiffs must "specify each allegedly misleading statement"). Plaintiffs must "set forth the details of allegedly fraudulent statements or omissions, including *who* was involved, . . . and why any

2

statements were misleading." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (emphasis added). "[A]t a minimum, . . . the plaintiff [is required to] identify the speaker of allegedly fraudulent statements." *Id.* at 218 (citing *Klein v. Gen. Nutrition Companies, Inc.*, 186 F.3d 338 (3d Cir. 1999)). *See also California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir.1999) and *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)) (holding that "plaintiffs asserting securities fraud claims must specify 'the who, what, when, where, and how'" for each allegedly false statement).

The Complaint does not allege that Carro made any false statements during the October 19 presentation or in the October 19 and 26 press releases. In fact, the Complaint does not allege that Carro even attended the October 19 presentation or that she was even involved in either release. *See* Compl. ¶ 206 (listing only Pearson, Rosiello, and Kellen as attendees at the October 19 conference). With respect to the October 26 presentation, the Complaint identifies two statements made by Carro, Compl. ¶ 221, but never alleges that she was also responsible for statements made by others. Merely alleging her attendance at a presentation is insufficient to identify Carro as the speaker of any particular false statements under the PSLRA. *See Klein*, 186 F.3d at 345 (affirming dismissal of complaint for "fail[ing] to attribute the [false] statement to any specific member of GNC

3

management"); *Home Care Indus. v. Murray*, 2002 WL 32627452, at *6 (D.N.J. Nov. 27, 2002) (dismissing counterclaim because it "fail[ed] to identify the speakers of the allegedly fraudulent statements," although the defendant "attribute[d] these statements" to plaintiff's employee "in his brief").

Even apart from the high pleading standards under the PSLRA, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)). *See also Lapham v. Accenture, LLP*, 2016 WL 6609177, at *3 (D.N.J. Nov. 8, 2016). The new allegations in Plaintiffs' brief are not properly before the Court.[2]

### B. Plaintiffs Do Not Allege Facts Supporting Attribution To Carro of the October 19 and 26 Presentations And Releases

Even if the Complaint had actually attributed all of the statements in the presentations and releases to Carro, Plaintiffs' claim would fail. Under *Janus Capital Group, Inc. v. First Derivative Traders*, upon which Plaintiffs ostensibly rely, "[o]ne 'makes' a statement by stating it," and "[f]or purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the

---

[2] Plaintiffs' assertion that Carro "waived" her right to challenge these statements is absurd. Not surprisingly, Carro's moving brief addressed only the two statements the Complaint actually attributes to her, not the statements Plaintiffs now seek to ascribe to her in their response. *See Hughes v. United Parcel Serv.*, *Inc.*, 639 F. App'x 99, 104 (3d Cir. 2016) (declining to consider theories based on allegations "not properly pled" in the complaint).

4

statement, including its content and whether and how to communicate it." 564

U.S. 135, 142 (2011).  The Complaint does not allege that Carro had any control

over the October 19 and 26 presentations and releases, much less "ultimate

authority."  As noted above, it does not even allege that Carro attended the October

19 presentation.

The only bases Plaintiffs cite for attributing these statements to Carro are the

generic declarations of company support made by other executives—as when

Pearson stated, "we stand by our accounting treatment"—and the fact that Carro

attended the October 26 Presentation.  Opp. at 27-28 (citing ¶¶ 218(a), 219,

220(d)), 93, 108.  Even if true, these allegations utterly fail to establish that Carro

had ultimate authority over the October 19 and 26 releases and presentations.  *See*

*Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 427 (7th Cir. 2015)

(holding that the CEO was not liable for statements in company releases unless he

"*actually exercised control* over the content of the press releases and whether and

how they were communicated") (emphasis added) (cited in Opp. at 27).

Moreover, Plaintiffs' effort to pin entire presentations and releases on Carro

and several other Individual Defendants is exactly the type of "patently insufficient

'group pleading'" that is routinely rejected.  *See In re Merck & Co., Inc.*, 2011 WL

3444199, at *19 (D.N.J. Aug. 8, 2011) (citing *Winer*, 503 F.3d at 337).  It is

improper for Plaintiffs to attribute statements in "group-published documents" to

"officers and directors"[3] simply because they "have day-to-day control or involvement in regular company operations." *In re Merck & Co.* at *19 (citing *Winer*, 503 F.3d at 335).[4]

## II.   PLAINTIFFS FAIL TO ALLEGE THAT THE OCTOBER 26 STATEMENTS WERE FALSE

In the October 26 Statements (the two statements the Complaint actually identifies as Carro's, *see* Compl. ¶ 221), Carro addressed "Valeant's financial control approach to Philidor and disclosure considerations relating to Philidor." Ex. 38 to the Guiffra Decl. at 9.[5]  Specifically, Carro described how the Company had treated Philidor historically and why Philidor had not been specifically mentioned in the Company's disclosures prior to October 2015.  *Id.* at 9-10.  In doing so, she identified the thresholds that the Company had used to determine whether specific disclosure was required and the Philidor revenue and net sales metrics that fell short of those thresholds.  *Id.*

As set forth in our initial brief, Plaintiffs do not allege that Carro's description of the Company's historic accounting treatment was inaccurate, nor do

---

[3]  This applies even more strongly to Carro, who is not an officer or a director.

[4]  In any event, Plaintiffs have not pled with sufficient particularity that any of the statements made in the October 19 and 26 presentations and releases, most of which concerned Philidor, were materially false or misleading.  *See* Company Mot. to Dismiss at 47-61; Appendix B at 5, 10, 11, 13, 20, 22-24.

[5]  All exhibits cited herein are exhibits to the Declaration of Robert J. Guiffra, submitted with the Company Motion to Dismiss, which were incorporated into the Complaint by reference.  *See* Carro Mot. to Dismiss at 3, n.1.

they allege that the Philidor statistics Carro provided to investors were wrong. Carro Motion to Dismiss ("Carro Mot.") at 6-7.  This should be the end of the matter.

Instead, Plaintiffs claim that Philidor was at the center of an "accounting fraud," Opp. at 16-17, that Philidor was "clearly material to Valeant's operations," Opp. at 45, 62-63, and that the Company's accounting treatment of Philidor was not done correctly.  Opp. at 48-49.  But these allegations, even taken as true, do not make Carro's October 26 Statements false.  In the context of explaining the prior "disclosure considerations," Carro accurately described the thresholds that had been used to make the disclosure determinations and how Philidor stacked up against those thresholds; since Philidor was "not considered to be material to Valeant for reporting purposes [under those thresholds], it was not specifically mentioned prior to October 2015."  Ex. 38 at 9-10.  Plaintiffs may disagree with the Company's determination not to specifically disclose Philidor, but that does not mean that Carro made false statements to investors on October 26, when she explained what the Company had done.

Plaintiffs' often-repeated theme that Philidor should have been disclosed prior to October 2015 underscores this point: on October 26, *the only time Carro spoke to investors*, Philidor had already been disclosed.  Whether or not the previous disclosure determination had been correct, no investor was misled on

7

October 26 by her accurate descriptions of the Company's prior disclosure

considerations.

## III. PLAINTIFFS DO NOT ALLEGE THAT CARRO MADE FALSE STATEMENTS WITH SCIENTER

### A. The Allegedly "Improper Conduct" Described in the Company's Restatement Is Unrelated To the October 26 Statements

As set forth in Carro's initial brief, Plaintiffs impermissibly mix apples and

oranges when they rely on the reference to "improper conduct" in the March 21 8-

K to establish scienter.  Carro Mot. at 10.  That 8-K disclosure concerned only the

premature recognition of a small amount of revenue in the last quarter of 2014.[6]

*See* Ex. 37.  Neither the purported "improper conduct" nor the Restatement had

anything to do with the disclosure or non-disclosure of Philidor.

Plaintiffs concede that the "improper conduct" and the Restatement relate to

a different subject than the October 26 Statements.  To get around this fundamental

defect, they make a convoluted argument that Carro did not disclose Philidor in the

2014 and early 2015 financial statements, and that disclosing Philidor as material

at that time would have raised the same questions as were raised subsequently in

the third quarter of 2015, which led to the uncovering of her "fraud" and the

---

[6]  The Restatement reaffirmed the Company's accounting treatment of Philidor, including Valeant's previous decision not to specifically identify Philidor in its financial statements.  *See* Company Mot. to Dismiss at 26-27; Ex. 1 at F-91.

Restatement.  Opp. at 108-9.  From this, Plaintiffs conclude that Carro's October 26 Statements "served to conceal" a different fraud.  This makes no sense.

First, Plaintiffs' argument is based on facts that are not alleged anywhere in the Complaint, much less alleged with particularity.  Plaintiffs do not allege that Carro committed some unidentified accounting fraud; they do not allege that *she* made false statements to investors in the Company's 2014 or 2015 financial statements; and they do not allege she misled investors on October 26 to conceal some unpleaded prior fraud.[7]

Moreover, Plaintiffs' newly-minted theory defies logic.  Plaintiffs struggle to make any connection between specific false statements Carro supposedly made to investors with any particularized basis for scienter.  They offer no explanation for how Carro's October 26 Statements about the earlier disclosure determinations—made after Philidor had already been disclosed—served to conceal any prior revenue recognition error (which was the subject of the Restatement).  Plaintiffs' rhetorical acrobatics notwithstanding, the two matters are simply unrelated.

---

[7]  The Opposition cites paragraphs in the Complaint that do not support Plaintiffs' argument.  Paragraph 380 alleges that Valeant admitted that a "tone at the top" and "improper conduct" of the Controller and CFO contributed to the Restatement (in other words, it describes the March 21 8-K).  Paragraph 411 alleges that Carro defended the Company's accounting on October 26.  Paragraph 221 merely sets forth the October 26 Statements, and Paragraph 441 describes Kornwasser's departure from the Company and is entirely unrelated.  *See* Opp. at 108-9.

9

### B.   The Purported "Improper Conduct" Is Not Sufficient To Allege Scienter

Even if it were related to the October 26 Statements, Carro's alleged "improper conduct" is not sufficient to establish scienter.  Plaintiffs concede that "improper" has a variety of meanings, and argue that some of these meanings "are consistent" with scienter.  Opp. at 95.  Plaintiffs miss the point.  Even if "improper" could be consistent with scienter, it does not necessarily equate to scienter.  And as Plaintiffs concede, "[a]mbiguities count against inferring scienter."  *Inst'l Inv's Grp. v. Avaya*, 564 F.3d at 268 (citing *Tellabs*, 551 U.S. at 326).  To sustain a claim, Plaintiffs must demonstrate that their preferred interpretation of "improper conduct"—that Carro committed fraud—is "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs* at 324.  Nothing in the Complaint supports such an inference.  Carro Mot. at 11-12.

Plaintiffs try to imbue "improper" with meaning supportive of scienter by misstating the findings of the Company's internal investigation.  Contrary to Plaintiffs' Opposition, the Company did not conclude that Carro provided inaccurate information to the Audit Committee or that she "initiated the unlawful accounting treatment."  Opp. at 17.  The March 21 8-K actually stated that unspecified "improper conduct of the Company's former Chief Financial Officer and former Corporate Controller, *which resulted in* the provision of incorrect

10

information to the [Audit] Committee and the Company's auditors, *contributed to the misstatement of results . . . .*" Ex. 37 (emphasis added).  The Company's full statement, recited accurately, makes it more probable that Carro made a mistake than that she was engaged in a fraud.

It is well established that GAAP errors alone "do not create the requisite strong inference of scienter," *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 287 (D.N.J. 2007), and there is nothing in particular about the GAAP error at issue in the Restatement that suggests any fraudulent intent.  The Restatement concerned the premature recognition of $58 million in revenue in 2014—revenue which constituted less than 1% of the Company's revenue for the year.  *See* Company Mot. to Dismiss at 26-27.  As the cases cited by Plaintiffs make clear, the magnitude of the error, or lack thereof, is a significant factor in determining whether a GAAP violation is indicative of scienter.[8]  *See also In re Synchross Sec. Litig.*, 705 F. Supp. 2d 367, 410 (D.N.J. 2010) (holding that a "3% difference between the projected quarterly result and that actually achieved cannot be read as evidencing scienter").

---

[8]  *See, e.g.*, *In re Medicis Pharmaceutical Corp. Sec. Litig.*, 2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010) (accounting errors with "significant impact on core business operations . . . sometimes give rise to a compelling inference of scienter"); *In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 21 (D.D.C. 2000) (the "magnitude of the error" helps determine whether there is an inference of scienter); *In re Ravisent Techs., Inc. Sec. Litig.*, 2004 WL 1563024, at *9 (E.D. Pa. July 13, 2004) (premature revenue recognition "grossly overstate[d]" company's financial statements); *Bell* v. *Fore Sys., Inc.*, 17 F. Supp. 2d 433, 437-38 (W.D. Pa. 1998) (alleged GAAP breaches "caused the Company's reported earnings and income to be materially overstated").

For example, in *In re Microstrategy, Inc. Sec. Litig.*, cited by Plaintiffs, the court noted the following facts in finding that the GAAP violation was indicative of scienter: a single violation had turned a $0.30 loss per share into a $0.09 profit per share; the violations were "pervasive[] and repetitive[]" and covered up tens of millions of dollars in losses; and the violations involved "three of the most important contracts in the corporate life." 115 F. Supp. 2d 620, 626, 636, 639 (E.D. Va. 2000). The court found the "magnitude of these misstatements . . . 'breathtaking.'" *Id.* at 636. In contrast, in this case the premature recognition of a tiny fraction of the Company's revenues occurred once, within a narrow period of time, and its correction resulted in an increase in net income in the following quarter (and had no impact on net cash flow). Carro Mot. at 9.

Nor was this mistake "simple and obvious" as Plaintiffs claim (Opp. at 94); it involved complex decisions on specific orders entered into just as the Company was finalizing its option agreement with Philidor. *See* Ex. 1 at F-91. "[A] plaintiff . . . cannot merely point at a GAAP principle and contend that a correct interpretation was simple or obvious." *In re Medicis Pharm. Corp. Sec. Litig.*, 2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010) (cited by Plaintiffs). Plaintiffs must plead particularized allegations showing that the defendant knew of the relevant GAAP principle and how it was being interpreted, and that his "incorrect interpretation was so unreasonable or obviously wrong that it should give rise to an

12

inference of deliberate wrongdoing." *Id.  See also In re Par Pharm. Sec. Litig.*, 2008 WL 2559362, at *13 (D.N.J. June 24, 2008).  No matter what rhetoric Plaintiffs use in their Opposition, no factual allegation in the Complaint supports an inference that Carro engaged in deliberate wrongdoing.

Finally, the fact that Carro was suspended after the Restatement does not solve Plaintiff's scienter shortfall.  Allegations of GAAP violations coupled with terminations are not enough to establish scienter unless they are accompanied by other indicia demonstrating that the defendant was engaged in a fraud.  *See In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 347 (D.N.J. 2007); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2015 U.S. Dist. LEXIS 77495, at *47 (E.D. Pa. June 16, 2015) (cited in Opp. at 96) ("Generally, the resignation of key officers is insufficient to show scienter to commit the alleged fraud.").  In other words, the alleged facts must plausibly suggest that the termination occurred as a result of intentional wrongdoing.  There are no indicia of fraud with respect to Carro.  Taking all of the facts alleged in the Complaint as true, it is more plausible that Carro was suspended for negligently contributing to an accounting error than for having engaged in a deliberate fraud.  *See Tellabs* at 324 (holding that plaintiffs must show that an inference of scienter is "at least as compelling as any opposing inference one could draw from the facts alleged.").

13

### C.      Group Pleading Allegations Are Insufficient To Establish Scienter

Unable to muster scienter allegations particular to Carro, Plaintiffs rely on impermissible "group pleading." *In re Merck & Co. Inc. Sec., Derivative & ERISA Litig.*, 2011 WL 3444199, at *19 (D.N.J. Aug. 8, 2011).  Although Plaintiffs claim that the Complaint contains "particular examples of each Individual Defendant's role in and knowledge of the deceptive practices," Opp. at 82, that is not true for Carro.

Plaintiffs' "particular examples" consist of adding Carro's name at the end of a long list of executives who are alleged to have participated in various routine corporate activities.  Carro allegedly attended regular "meetings" with other executives, "signed agreements," and had "access to its internal documents and control over its operations . . . ."  Opp. at 83, 85, 88.  Carro is also alleged to have "reviewed the financials" of Philidor on a "regular basis."  Opp. at 85.  On these facts, Plaintiffs assert that Carro and all of the Individual Defendants "could only have been aware of or recklessly disregarded the falsity of their statements."  Opp. at 82-83.  But "[b]lanket assertions of Defendants' actual knowledge . . . [and] allegations charging collective involvement . . . do not suffice to state a claim under PSLRA."  *In re Merck* at *19 (citing *Winer*).  *See also Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cir. 2013) (quoting *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008) ("awareness of

14

day-to-day workings of the company's business does not establish scienter"). None of the specific activity in which Carro is alleged to have participated— routine accounting matters—warrants a strong inference of fraud.

Plaintiffs also argue that the executives had compensation packages that were tied to the Company's stock price, giving them a motive to inflate the stock. Opp. at 99. Although Plaintiffs' Opposition addresses the compensation of several individuals, it conspicuously omits any mention of Carro. *See* Opp. at 99-103. Nothing in the Opposition or the Complaint suggests that Carro was financially motivated to commit fraud. In any event, Plaintiffs' argument about compensation generally lacks merit. *See Wilson v. Bernstock*, 195 F. Supp. 2d 619, 636 (D.N.J. 2002) ("[C]ourts have uniformly held that incentive compensation alone cannot provide a sufficient basis" for establishing a strong inference of scienter.).

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Carro's Motion to Dismiss and the Company's Motion to Dismiss, the claim against Tanya Carro should be dismissed.[9]

---

[9] Carro reserves the right to join the arguments in Valeant's Reply Brief after it is filed on January 13, 2017.

Dated:      December 14, 2016

By:   _s/Richard Hernandez_____
         Richard Hernandez

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 848-8615
Facsimile: (973) 297-6615

William J. Schwartz
Laura Grossfield Birger
COOLEY LLP
1114 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 479-6000
Facsimile:  (212) 479-6275

*Attorneys for Defendant Tanya Carro*

16