# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Master No. 3:15-cv-7658-MAS-LHG |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Motion Day: January 3, 2017<br><br>*Oral Argument Requested*<br>(Document Electronically Filed) |

## REPLY MEMORANDUM OF LAW IN
## FURTHER SUPPORT OF DEFENDANT JORN'S
## MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT

**SCHULTE ROTH & ZABEL LLP**
Barry A. Bohrer (admitted *pro hac vice*)
Michael L. Yaeger (admitted *pro hac vice*)
Cara David

919 Third Avenue
New York, New York 10022
Tel: (212) 756-2000

*Attorneys for Defendant*
*Deborah Jorn*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................1

ARGUMENT.................................................................................2

I.    Despite Reaching Outside Their Complaint,  Plaintiffs Cannot Adequately Allege Scienter as to Jorn.................................................2

    A.    Plaintiffs Improperly Reach Outside the Complaint for Arguments They Do Not and Cannot Allege.............................3

    B.    Alleging a Person's Position at a Company Does Not Satisfy Scienter, and Alleging Fraud Is Widespread at a Company Does Not Satisfy Particularity...................................6

    C.    Plaintiffs Cannot Escape the Pleading Requirements  by Lumping Jorn in with Everyone Else They Have Sued .............9

    D.    Plaintiffs' Other Attempts to Establish Jorn's Scienter Fail.....11

II.    Plaintiffs Fail to Allege an Actionable Misstatement by Jorn............13

III.    The Complaint Should Be Dismissed with Prejudice as to Jorn ........15

CONCLUSION .................................................................15

i

# TABLE OF AUTHORITIES

**Cases**

*Bartesch v. Cook*,
  941 F. Supp. 2d 501 (D. Del. 2013) .................................................................10

*Belmont v. MB Investment Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013) ...........................................................................15

*City of Roseville Employees' Retirement Sys. v. Horizon Lines, Inc.*,
  713 F. Supp. 2d 378 (D. Del. 2010) ............................................................9, 13

*Commonwealth of Pa. ex rel Zimmerman v. PepsiCo*,
  836 F.2d 173 (3d Cir. 1988) .............................................................................. 3

*Gold v. Ford Motor Co.*,
  577 F. App'x 120 (3d Cir. 2014) .....................................................................15

*In re Alpharma Inc. Sec. Litig.*,
  372 F.3d 137 (3d Cir. 2004) ...........................................................................15

*In re Bradley Pharms., Inc. Sec. Litig.*,
  421 F. Supp. 2d 822 (D.N.J. 2006) ................................................................... 8

*In re Campbell Soup Co. Sec. Litig.*,
  145 F. Supp. 2d 574 (D.N.J. 2001) ................................................................... 8

*In re Columbia Labs., Inc.*,
  602 F. App'x 80 (3d Cir. 2015) ........................................................................ 3

*In re Donald Trump Casino Sec. Litig.*,
  793 F. Supp. 543 (D.N.J. 1992) ........................................................................ 6

*In re Hertz Global Holdings, Inc. Sec. Litig.*,
  2015 U.S. Dist. LEXIS 95569 (D.N.J. July 22, 2015).....................................13

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) ................................................................... 6

*In re Merck & Co., Sec., Derivative & ERISA Litig.*,
  2011 U.S. Dist. LEXIS 87578 (D.N.J. Aug. 8, 2011) ...................................9, 12

*In re Merck & Co., Sec., Derivative & ERISA Litig.*,
   2012 U.S. Dist. LEXIS 123800 (D.N.J. Aug. 29, 2012) ...................................... 7

*In re Par Pharm. Sec. Litig.*,
   2008 U.S. Dist. LEXIS 49599 (D.N.J. June 24, 2008) ................................... 9, 10

*Institutional Investors Group v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009) ............................................................... 12

*Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) ........ 14

*Kolber v. Body Cent. Corp.*,
   967 F. Supp. 2d 1061 (D. Del. 2013) .................................................... 15

*Li v. Aeterna Zantaris, Inc.*,
   2016 U.S. Dist. LEXIS 92552 (D.N.J. June 30, 2016) .................................. 13

*Lindelow v. Hill*,
   2001 U.S. Dist. LEXIS 10301 (N.D. Ill. July 20, 2001) ................................... 8

*Rahman v. Kid Brands, Inc.*,
   736 F.3d 237 (3d Cir. 2013) ............................................................... 15

*Sapir v. Verback*,
   2016 U.S. Dist. LEXIS 15956 (D.N.J. 2016) ........................................... 12

*Taylor v. Lincare, Inc.*,
   2016 U.S. Dist. LEXIS 91924 (D.N.J. 2016) ............................................. 3

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
   2015 U.S. Dist. LEXIS 77495 (E.D. Pa. June 16, 2015) ................................ 13

**Statutes**

Private Securities Litigation Reform Act of 1995
   15 U.S.C. § 78u-4 .................................................................... 1, 3

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................. 1

Fed. R. Civ. P. 9(b) ..................................................................... 1

Securities Exchange Act of 1934
   Rule 10b-5, 17 C.F.R. § 240.10b-5 ................................................................1, 14

Defendant Deborah Jorn ("Jorn") respectfully submits this reply memorandum in further support of her motion to dismiss Plaintiffs' Consolidated Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, and her Memorandum of Law ("Jorn's Memorandum" or "Memo"), and in response to Plaintiffs' Opposition ("Opposition" or "Opp.").  She joins in, adopts, and incorporates herein the applicable arguments in the Reply Memorandum in Support of Defendants' Motion to Dismiss the Consolidated Complaint, which will be filed by counsel for Valeant Pharmaceuticals International, Inc. ("Valeant" or the "Company"), if consistent with those herein.

## PRELIMINARY STATEMENT

Just one-and-a-half pages of Plaintiffs' Opposition directly responds to Jorn's Memorandum, yet in that small space Plaintiffs mischaracterize and improperly seek to supplement their own pleadings.  It is a telling choice.  The Complaint does not—because it cannot—adequately allege that Jorn knew about, or recklessly disregarded, the alleged Section 10(b) fraud.  Plaintiffs' argument that Jorn intended to defraud investors rests on nothing more than the allegations that Jorn led the dermatology division, that Philidor sold dermatology drugs, and that Kellen and Jorn had one meeting in which Philidor was discussed.  Those allegations do not support a strong inference of scienter.

Likewise, Plaintiffs' attempts to avoid the particularity requirement are not only improper, but also desperate. They know that re-pleading will not cure the Complaint's ills. They cannot plead fraud against Jorn with the requisite particularity merely by claiming that fraud is widespread at the Company, nor by lumping Jorn in with everyone else they have sued. The law forbids this sort of group pleading. Even if an alleged fraud relates to a Company's "core operations," it is not enough to plead that executives "must have known" about that fraud.

In sum, despite the volume of Plaintiffs' Complaint and Opposition, they have very little to say about Jorn: just six statements made on a single conference call. And nothing in the Opposition defeats the arguments for dismissal made in Jorn's Memorandum. Plaintiffs have not—and cannot—plead a Section 10(b) claim as to Jorn with respect to any of her six statements. The Complaint should therefore be dismissed as against Jorn with prejudice.

## ARGUMENT

### I.   Despite Reaching Outside Their Complaint, Plaintiffs Cannot Adequately Allege Scienter as to Jorn

In an effort to cover up the deficiencies of their Complaint, Plaintiffs mischaracterize their own allegations. Indeed, in the page-and-a-half of their Opposition that addresses Jorn's Memorandum, Plaintiffs make arguments regarding what Jorn knew or did that are so far removed from their pleading that

2

they amount to an attempt to impermissibly amend the Complaint.  *See, e.g.,*
*Commonwealth of Pa. ex rel Zimmerman v. PepsiCo Inc.*, 836 F.2d 173, 181 (3d
Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in
opposition to a dismiss."); *Taylor v. Lincare, Inc.*, 2016 U.S. Dist. LEXIS 91924,
*8 (D.N.J. 2016) (stating same).  Plaintiffs do not, and cannot, "state with
particularity the facts constituting the alleged violation and giving rise to a 'strong
inference' that. . . [Jorn] intended to deceive, manipulate, or defraud."  *In re*
*Columbia Labs., Inc.*, 602 F. App'x 80, 82 (3d Cir. 2015); 15 U.S.C. § 78u-
4(b)(2)(A).  Even as improperly amended, the Complaint does not adequately
allege scienter as to Jorn.

### A.  Plaintiffs Improperly Reach Outside the Complaint for Arguments They Do Not and Cannot Allege

In their Opposition, Plaintiffs for the first time argue that Jorn "knew that the
network of Philidor related pharmacies were misleadingly referred to as 'specialty
pharmacies.'" (Opp. 109).  Plaintiffs do not plead this in the Complaint.  The
paragraph from the Complaint they cite in their Opposition has nothing to do with
"specialty pharmacies," and the following paragraph never mentions Jorn; it
simply alleges that Philidor's pharmacy did not operate in the "typical" way
"specialty pharmacies" did.  (*See* Compl. ¶¶92, 93).  The Complaint never
addresses what Jorn knew or did not know about specialty pharmacies.

In addition to reaching outside the Complaint to argue Jorn's knowledge, Plaintiffs improperly try to amend it to include new allegations about her actions. Specifically, Plaintiffs argue that Jorn was "directly involved in the copay practices used by Valeant," citing to Paragraph 162(b) of the Complaint. (Opp. 109.) But Paragraph 162(b) is not about "direct involve[ment]" in the copay practices. That paragraph merely recites a statement made on a conference call: "Jorn emphasized the launch of '***additional access programs so that patients can get the medicines that their physician prescribes for them[.]***'" (emphasis in Complaint). In fact, what Plaintiffs now call Jorn's "direct involvement" in copay practices is not alleged in Paragraph 162(b) or anywhere else in the Complaint. And it is no answer to argue, as Plaintiffs do, that Jorn was "directly involved" because she was "the head of the dermatology practice at Valeant, which accounted for most of Philidor's sales." (Opp. 109.) That is akin to arguing that because Valeant's dermatology products were shipped to distributors, Jorn's position in the dermatology division necessarily made her "directly involved" in shipping. Jorn obviously knew products were shipped, but asserting that she was "directly involved" with shipping would be ridiculous. Likewise, it is absurd to argue that Jorn's position in dermatology made her "directly involved" with Philidor's copay practices.

The rest of Plaintiffs' argument that Jorn had a direct role in Philidor and

4

knowledge of its alleged fraud turns on a single paragraph quoting a single email Jorn did not write or receive.  (Opp. 109–110.)  Paragraph 407 of the Complaint states: "As further example that Pearson was personally monitoring Philidor's practices, on March 9, 2015, Kellen sent an email to Pearson updating him on their earlier conversation stating 'Met with Deb [Jorn]….Suggested we get all the DMs [District Managers] in for a day…*goal to go over the practices in each district where Philidor is working well* and identify next [approximately] 10 practices where we should push harder to build it out. that [sic] will help fuel growth.'" (emphasis, ellipses in Compl.).  In the Opposition, citing Paragraph 407, Plaintiffs for the first time argue that *Jorn* "monitored" Philidor's "practices." (Opp. 109.)

Plaintiffs then try to squeeze their whole case against Jorn into Paragraph 407, arguing that the word "practices" means "improper copay and pricing practices."  (Opp. 110.)  But the plain meaning of Kellen's email cited in Paragraph 407 is contrary to Plaintiffs' tortured interpretation.  The meaning of "practices" is plainly *medical practices*—doctors' offices—in each district, not "copay and pricing practices."  That is obvious because the sentence does not make sense when the word "pricing" is inserted into it: "Suggested we get all the DMs [District Managers] in for a day…goal to go over the **[pricing]** practices in each district where Philidor is working well and identify next [approximately] 10 **[pricing]** practices where we should push harder to build it out."

5

The sentence is no clearer if the words "copay" or "sales" are substituted for "pricing."  Kellen was obviously not talking about identifying 10 new copay practices, much less 10 new deceptive copay practices.  Plaintiffs cannot claim a strong inference of scienter against Jorn by distorting the plain meaning of an email she did not even write.  *Cf. In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 334–35 (D.N.J. 2007) (stating that plaintiffs must "focus on the plain meaning" of a disclosure and not "baldly interpret[]" it to serve their "legal goal"); *In re Donald Trump Casino Sec. Litig.*, 793 F. Supp. 543, 568 (D.N.J. 1992) ("[P]laintiffs should not be permitted to distort the plain meaning of the prospectus in order to state a claim.").  Moreover, even if sales or copay practices (as opposed to medical practices) *were* the topic of the alleged conversation, it still would not support an inference of scienter because not all of Philidor's sales or copay practices are alleged to have been fraudulent.  Thus, even with Plaintiffs' implausible reading of Paragraph 407 and the email it contains, they still have not alleged enough to establish a strong inference of scienter as to Jorn.

### B. Alleging a Person's Position at a Company Does Not Satisfy Scienter, and Alleging Fraud Is Widespread at a Company Does Not Satisfy Particularity

Plaintiffs also argue that Jorn, because of her position at the Company, was reckless in not knowing about the fraud.  (Opp. 110.)  But the Complaint does not allege that Jorn was reckless.  And even if it did, in the Third Circuit recklessness

6

cannot be established through a person's title.  (Memo 7.)

For example, in *In re Merck and Co., Inc. Securities, Derivative & "ERISA" Litig.*, 2012 U.S. Dist. LEXIS 123800 (D.N.J. Aug. 29, 2012), the plaintiffs alleged that Merck covered up the side effects of one of its most profitable drugs.  Yet the case against the head of Merck's research laboratories—the very department in charge of monitoring drug side effects—was dismissed.  The court stated:

> [T]here is no allegation in the Class Action Complaint that [research laboratories head] Kim was in fact aware of the adverse CV data during his time as the president of the research laboratories, or that suggests that he was reckless in failing to discover it.  Instead, Plaintiffs make the conclusory assertion that given [Kim's] position and expertise, Kim was reckless in failing to discover the fraud.

*Id.* at *11.  If a position is not enough to establish scienter even when the position is atop the very division implicated in a cover-up, then Plaintiffs here certainly cannot allege scienter against Jorn, who led a division on the periphery of this case.

In an effort to dodge the PSLRA's pleading requirements, Plaintiffs argue that a so-called "core operations doctrine" supports scienter as to each defendant. (Opp. 88–89.)  If Plaintiffs are to be believed, simply pleading that a fraud is widespread in a company eradicates the PSLRA's particularity requirements.

However, the main case Plaintiffs cite for this proposition says no such thing, and in fact specifically discusses how the plaintiffs in that case pleaded that the individual defendants were at meetings where the possible impropriety of the

alleged fraudulent practices was discussed.  *See In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001); *see also In re Bradley Pharms., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 830 (D.N.J. 2006) (denying a motion to dismiss when the plaintiffs "specifically alleged that each of the Individual Defendants were directly involved in preparing, drafting and issuing Bradley's financial statements" and "each of the Individual Defendants knew facts and had access to specific information suggesting that their public statements . . . were not accurate.").  Plaintiffs here have no similar allegations with regard to Jorn.

The last argument in the page-and-a-half directed to Jorn's motion is that if Jorn did not know about the alleged copay practices, then she was reckless.  To make this point, Plaintiffs reach to the District Court of Illinois to find an easily distinguishable (and unpublished) opinion that only superficially supports their argument for recklessness.  (Opp. 110.)  In *Lindelow v. Hill*, 2001 U.S. Dist. LEXIS 10301 (N.D. Ill. July 20, 2001), the defendants promoted a website launch which was allegedly not feasible.  The plaintiffs pleaded recklessness by specifically alleging what the defendants had been told regarding the feasibility of the launch.  However, in the instant case, Plaintiffs do not allege specifically how Jorn would have known about the alleged fraud at the Company.

"While 'knowledge of the core activities of a business may be imputed to its highest officials in some circumstances,' such imputation is done 'cautiously' and

only where plaintiffs have pleaded 'particularized allegations showing that defendants had ample reason to know of the falsity of their statements.'"  *City of Roseville Emps' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 400 (D. Del. 2010) (citations omitted).  Here, as in *Horizon Lines*, Plaintiffs have "failed to establish that defendants had 'ample reason' to know of the conspiracy."  *Id.*

### C.   Plaintiffs Cannot Escape the Pleading Requirements by Lumping Jorn in with Everyone Else They Have Sued

Plaintiffs' argument that Jorn and other defendants should have knowledge imputed to them because of their positions as officers highlights an inherent flaw in their Complaint:  its impermissible group pleading.  The Complaint is replete with references to what "Individual Defendants" or "Exchange Act Defendants" allegedly did.  Such blatant group pleading of scienter does not suffice in the Third Circuit.  (Memo 6–7.)  *See also In re Merck & Co., Inc. Sec.,* 2011 U.S. Dist. LEXIS 87578, *85, *111 (D.N.J Aug. 8, 2011) (plaintiffs must specifically plead that each defendant is "individually associated with the alleged fraud, other than by virtue of [his] position within" the company, and complaint fails to plead scienter insofar as it relies on allegations "that 'Defendants' as a general group engaged in [] inappropriate activities"); *In re Par Pharm. Sec. Litig.*, 2008 U.S. Dist. LEXIS 49599, *38, *41 (D.N.J. June 24, 2008) ("Each individual's participation and scienter must be pled separately and with particularity" and separate section of the

brief labeled "Additional Scienter Allegations" just gave "more examples of group pleading and inadequate broad brush statements").  However, despite the fact that "allegations generally refer[ing] to 'defendants' or 'company executives'" are insufficient to meet a plaintiff's pleading burden, Plaintiffs have doubled down on their misguided strategy in the Opposition.  *See Bartesch v. Cook*, 941 F. Supp. 2d 501, 510–11 (D. Del. 2013) (it is insufficient when "the allegations generally refer to 'defendants' or 'company executives.'  The Third Circuit has explicitly rejected such 'group pleading' as incompatible with the PSLRA's requirement . . .").

Plaintiffs include Jorn among the "Defendants," "Exchange Act Defendants" and "Individual Defendants," and consistently state that these groups did something or had knowledge of something, but the underlying allegation is completely removed from Jorn.  For example, Plaintiffs state:  "The Exchange Act Defendants later admitted to this accounting scheme and were forced to withdraw . . . Valeant's financial statements."  (Opp. 16.)  But Plaintiffs never pleaded Jorn had involvement in accounting or the withdrawal of financial statements.  Likewise, Plaintiffs argue:  "[T]he Exchange Act Defendants' statements that Philidor was independent and did not limit distribution to Valeant products were false and misleading."  (Opp. 21–22.)  Yet the Complaint never alleges that Jorn made statements about Philidor's independence or distribution.

Plaintiffs cannot carelessly lump Jorn in with everyone else to escape their

10

pleading obligations.  The Third Circuit prohibits group pleading of scienter

precisely to avoid the board-brush mode of pleading that Plaintiffs use here.

### D.   Plaintiffs' Other Attempts to Establish Jorn's Scienter Fail

While allegations of scienter must be considered holistically, a plaintiff

cannot just throw together insufficient allegations and then claim the Complaint

sufficiently establishes scienter.  Plaintiffs' only allegations specific to Jorn

involve her compensation and departure, and those allegations have been contorted

in an attempt to imply sinister motivations where there are none.

Plaintiffs' allegations regarding Jorn's compensation are intentionally

misleading.  The very document Plaintiffs undoubtedly take their figures from, the

Company's 2016 Proxy Statement, states that Jorn did *not* receive $5.6 million in

2015.  (Ex. 1 [Valeant Sched. 14A], 56.[1])  Plaintiffs state that her total

compensation for 2014 and 2015 was "$2.3 million, and $5.6 million, respectively"

and argue this "raise of nearly 250%" must be proof of something.  (Compl. ¶39;

Opp. 109.)  But Plaintiffs' figures include a stock grant of more than $5 million,

which she relinquished when she resigned, as stated in the 14A.  (*See* Ex. 1; *see

also infra* 12–13.)  In fact, her base salary increased just 39% in those years.  (*Id.*)

---

[1]   Unless otherwise specified, the exhibits cited by "Ex." are exhibits to the
Declaration of Cara David, dated December 14, 2016.  The Court may consider
these documents in its analysis. *See* Memorandum of Law in Support of
Defendants' Motion to Dismiss Plaintiffs' Consolidated Complaint, dated
September 13, 2016, filed by counsel for Valeant ("Valeant Memorandum") 9 n4.

Regardless, scienter cannot be established through a salary increase, even if that increase is tied to company performance.  *See Inst. Inv'rs Grp. v. Avaya, Inc*., 564 F.3d 242, 279 (3d Cir. 2009) ("Corporate officers always have an incentive to improve the lot of their companies."); *In re Merck & Co., Sec.*, 2011 U.S. Dist. LEXIS 87578, *105–06 (D.N.J. 2011) ("*Avaya* stresses the insufficiency of motives 'generally possessed by most corporate directors and officers,' such as improving company's performance, even when that individual's compensation is tied to the success of a transaction or an increase in sales."); *Sapir v. Verback*, 2016 U.S. Dist. LEXIS 15956, *27–44 (D.N.J. 2016).

Plaintiffs' arguments about Jorn's departure also go beyond what is in the Complaint and are unavailing.  In their Opposition, Plaintiffs argue that Jorn was one of several employees who were "forced out" (Opp. 2, 95),  but their Complaint simply states that Jorn "departed" Valeant.  In contrast, allegations made against other defendants related to how allegedly improper conduct led to their exits. (Compl. ¶23.)  To be sure, Plaintiffs note that  "Jorn argues that she coincidentally left at the same time as all the others, but only for 'personal reasons.'"  (Opp. 98.) But they omit that "personal reasons" was the explanation given at the time of her departure both by press release and reiteration to the press.  (*See* Ex. 44 to Valeant Memorandum [Press Release (Mar. 3, 2016)] and Ex. 2 [Reuters Article (Mar. 3, 2016)].)  That simultaneous explanation separates Jorn's departure from the

12

allegations about other departures. Plaintiffs cannot cure this defect.

Under Third Circuit precedent, the mere fact of an executive's departure is not enough to establish scienter. (Memo 8.) The cases that Plaintiffs cite show nothing different. (Opp. 96–98.) The courts in both *Li v. Aeterna Zantaris, Inc.*, 2016 U.S. Dist. LEXIS 92552, at *6 (D.N.J. June 30, 2016), and *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2015 U.S. Dist. LEXIS 77495, *46–47 (E.D. Pa. June 16, 2015), found that departures bolstered scienter, but only *after* stating that plaintiffs had already pleaded sufficiently that the relevant defendants were aware of the alleged fraud. Here Plaintiffs have not met their initial burden.

There is also not "some reason to believe that the resignation was actually connected with the alleged fraud." *Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 398. Plaintiffs' Complaint is devoid of such assertions.

## II.     Plaintiffs Fail to Allege an Actionable Misstatement by Jorn

Plaintiffs' blatant group pleading cannot obscure one basic point: their claim against Jorn rests on one neutral email and six statements made on a single conference call, and those allegations are not compelling. As Plaintiffs point out, Jorn disputes the falsity of each of her statements. (Opp. 24–25.) That is because Plaintiffs do not plead anything that supports an inference of falsity with regard to any of Jorn's statements. *See In re Hertz Global Holdings, Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 95569 at *29 (D.N.J. July 22, 2015) (noting plaintiffs' failure to

13

allege "objective falsity").  (Memo 9–11.)   The Opposition's small section on Jorn's motion, does not even argue about those statements.  (Opp. 109–110.)

Plaintiffs ignore Supreme Court precedent by arguing that defendants might be liable for statements they did not make.  (Opp. 27.)  "One 'makes' a statement by stating it . . . .  For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement[.]"  *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).  Jorn only made six allegedly false or misleading statements on a single phone call.

Two of the statements related to patient access programs and the fact that they existed, and the four other statements related to then-existing market share, either generally or with regard to specific products.  (Compl. ¶162; Memo 2–3.)  But Jorn made those statements approximately 17 months *before* Plaintiffs allege that "questions about Philidor arose." (Compl. ¶¶162, 409; Memo 5.)  And almost two years before the restatement.  (Compl. ¶302.)

Plaintiffs have done nothing to contradict the fact that Jorn's statements as pleaded cannot form the basis of liability.  Plaintiffs spend time arguing the false and misleading nature of "strongly worded denials" that defendants allegedly made when accused of possible improprieties.  (Opp. 5, 17, 18.)  But that is not true of Jorn.  Jorn made statements regarding the creation of access programs and certain products returning to "growth."  (Compl. ¶162.)  That is it.  Jorn's Memorandum

14

explains why these are not actionable misstatements.  (Memo 9–11.)

### III.    The Complaint Should Be Dismissed with Prejudice as to Jorn

The Opposition shows why the Complaint should be dismissed with prejudice as to Jorn.  Even Plaintiffs' generous reading of their original allegations leads to insufficient arguments.  "[P]laintiffs (1) failed to satisfy the stringent pleading requirements of the PSLRA, and thus failed to state a claim under federal securities law, and (2) failed to propose an amendment that would satisfy these requirements."  *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 154 (3d Cir. 2004). Instead, they make tendentious arguments that essentially amend the Complaint but still fail to cure its defects.  Further amendment would therefore be futile.  *See id.*; *see also Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 493 (3d Cir. 2013) (affirming dismissal of complaint against an individual defendant when "[i]nvestors have provided no evidence of scienter" against that individual defendant); *Rahman v. Kid Brands, Inc.*, 736 F.3d 237 at 243–44, 247 (3d Cir. 2013); *Gold v. Ford Motor Co.*, 577 F. App'x 120, 122–23 (3d Cir. 2014); *Kolber v. Body Cent. Corp.*, 967 F. Supp. 2d 1061, 1071–72 (D. Del. 2013).

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the Valeant Reply Memorandum, the Complaint should be dismissed in its entirety, with prejudice, as to Deborah Jorn.

Dated:     New York, New York          SCHULTE ROTH & ZABEL LLP
           December 14, 2016

                                        By: /s/ Cara David
                                            Barry A. Bohrer
                                            Michael L. Yaeger
                                            Cara David

                                        919 Third Avenue
                                        New York, NY  10022
                                        (212) 756-2000

                                        *Attorneys for Defendant Deborah Jorn*

16