**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | ) ) ) ) | **Master File No. 3:15-cv-07658 (MAS) (LHG)** |
| This Document Relates To: | ) ) ) | **(ORAL ARGUMENT REQUESTED)** |
| ALL ACTIONS. | ) ) ) | **Motion Day:  January 3, 2017** |

---

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**

---

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone:  (973) 848-8615
Facsimile:  (973) 297-6615

Paul C. Curnin (*pro hac vice* pending)
Jonathan K. Youngwood (*pro hac vice* pending)
Craig S. Waldman (*pro hac vice* pending)
Daniel J. Stujenske (*pro hac vice* pending)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Valeant Pharmaceuticals International, Inc., J. Michael Pearson,
Robert L. Rosiello, Ari S. Kellen, Ronald H. Farmer, Colleen Goggins, Robert A. Ingram,
Anders Lönner, Theo Melas-Kyriazi, Robert N. Power, Norma Provencio,
Katherine B. Stevenson and Jeffrey W. Ubben*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 2

I.   VALEANT DISCLOSED ALL MATERIAL ASPECTS OF ITS BUSINESS TO INVESTORS ................................................................................................... 2

    A.   The Court Should Reject Plaintiffs' Attempt To Avoid Scrutiny ............................ 3

    B.   Valeant's Disclosures Concerning Its Business Strategy Were Not Materially False Or Misleading ................................................................. 4

    C.   The Accounting And Internal Controls Disclosures Addressed In Valeant's Limited Financial Restatement Were Clearly Immaterial To Investors ................................................................................................... 6

    D.   The Opposition Does Nothing To Show That Valeant's Statements About Philidor And Its AF Program Were False Or Misleading ........................ 8

II.   THERE ARE NO FACTS SUPPORTING A "STRONG INFERENCE" THAT DEFENDANTS SOUGHT TO DEFRAUD INVESTORS .............................. 11

    A.   The Valeant Defendants Had No Motive to Defraud Investors .......................... 12

    B.   Valeant's Limited Restatement Provides No Inference of Scienter ..................... 14

    C.   There is No Basis To Infer Scienter Concerning Valeant's AF Strategy Or Philidor Disclosures ............................................................... 17

    D.   There Is No Basis To Infer Scienter Concerning Valeant's Drug Pricing, Patient Assistance Program, Or Business Strategy Disclosures ......................... 19

    E.   Plaintiffs' Remaining Theories Provide No Basis To Infer Scienter ................... 20

        1.   The "Core Operations" Doctrine ....................................................... 20

        2.   Allegations By Allergan, Citron, And Investigative Journalists ............... 21

        3.   Congressional Inquiry ....................................................................... 22

        4.   Departure Of Individual Defendants .................................................. 22

    F.   The Only Compelling Inference Is That Valeant Believed In Its Business Model And Never Defrauded Investors ................................................... 23

III.   PLAINTIFFS' AFTER-THOUGHT SECURITIES ACT CLAIMS FAIL ...................... 23

IV.   PLAINTIFFS' LOSS CAUSATION ALLEGATIONS FAIL TO CONNECT "CORRECTIVE DISCLOSURES" TO ANY ALLEGED FRAUDULENT MISSTATEMENTS ....................................................................................... 24

CONCLUSION ...................................................................................................... 25

REPLY APPENDIX A ............................................................................................ 27

i

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Aviva Partners LLC v. Exide Techs.*,
   2007 WL 789083 (D.N.J. Mar. 13, 2007) ................................................................. 4

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004) ................................................................................. 19

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
   540 F. Supp. 2d 464 (S.D.N.Y. 2008) ................................................................... 14

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
   713 F. Supp. 2d 378 (D. Del. 2010) ............................................................... 12, 18

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
   442 F. App'x 672 (3d Cir. 2011) ............................................................. 12, 18, 21

*Dow Corning Corp. v. BB&T Corp.*,
   2010 WL 4860354 (D.N.J. Nov. 23, 2010) ............................................................. 9

*EP Medsystems, Inc. v. EchoCath, Inc.*,
   235 F.3d 865 (3d Cir. 2000) ................................................................................. 14

*Frater v. Hemispherx Biopharma, Inc.*,
   996 F. Supp. 2d 335 (E.D. Pa. 2014) ................................................................... 12

*Glassman v. Computervision Corp.*,
   90 F.3d 617 (1st Cir. 1996) ................................................................................... 9

*GSC Partners CDO Fund v. Washington*,
   368 F.3d 228 (3d Cir. 2004) ........................................................................... 12, 13

*Hall v. Children's Place Retail Stores, Inc.*,
   580 F. Supp. 2d 212 (S.D.N.Y. 2008) ................................................................... 16

*In re Anadigics, Inc. Sec. Litig.*,
   2011 WL 4594845 (D.N.J. Sept. 30, 2011) ............................................................. 9

*In re Anadigics, Inc. Sec. Litig.*,
   484 F. App'x 742 (3d Cir. 2012) ........................................................................... 9

*In re AT&T Corp. Sec. Litig.*,
   2002 WL 31190863 (D.N.J. Jan. 30, 2002) ........................................................... 13

*In re Baan Co. Sec. Litig.*,
   103 F. Supp. 2d 1 (D.D.C. 2000) ......................................................................... 15

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
566 F. App'x 93 (2d Cir. 2014) .................................................................. 10

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013) ........................................................ 10

*In re Bio-Tech. Gen. Corp.*,
2006 WL 3068553 (D.N.J. Oct. 26, 2006) ................................................. 14

*In re Bradley Pharms., Inc. Sec. Litig.*,
421 F. Supp. 2d 822 (D.N.J. 2006) ...................................................... 18, 19

*In re Campbell Soup Co. Sec. Litig.*,
145 F. Supp. 2d 574 (D.N.J. 2001) ............................................................ 10

*In re Celestica Inc. Sec. Litig.*,
2010 WL 4159587 (S.D.N.Y. Oct. 14, 2010) .............................................. 7

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
355 F. Supp. 2d 1069 (N.D. Cal. 2005) ..................................................... 22

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ..................................................................... 6

*In re Downey Sec. Litig.*,
2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ............................................. 3

*In re Enzymotec Sec. Litig.*,
2015 WL 8784065 (D.N.J. Dec. 15, 2015) ............................................. 5, 8

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & ERISA Litig.*,
892 F. Supp. 2d 59 (D.D.C. 2012) ............................................................. 22

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
2015 WL 4469143 (D.N.J. July 22, 2015) ................................................. 10

*In re Ikon Office Solutions, Inc.*,
277 F.3d 658 (3d Cir. 2002) ....................................................................... 14

*In re Medicis Pharm. Corp. Sec. Litig.*,
2010 WL 3154863 (D. Ariz. Aug. 9, 2010) ............................................... 15

*In re Merck & Co. Sec. Litig.*,
432 F.3d 261 (3d Cir. 2005) ................................................................... 7, 25

*In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*,
2011 WL 3444199 (D.N.J. Aug. 8, 2011) .................................................... 5

*In re Merrill Lynch Auction Rate Sec. Litig.*,
  2012 WL 1994707 (S.D.N.Y. June 4, 2012) ................................................................. 23

*In re MicroStrategy, Inc. Sec. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) ......................................................................... 15

*In re NAHC, Inc. Sec. Litig.*,
  306 F.3d 1314 (3d Cir. 2002)................................................................................. 5, 9

*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010)..................................................................................... 25

*In re Par Pharm. Sec. Litig.*,
  2009 WL 3234273 (D.N.J. Sept. 30, 2009) ................................................................ 22

*In re Petrobras Sec. Litig.*,
  116 F. Supp. 3d 368 (S.D.N.Y. 2015)........................................................................ 16

*In re Ply Gem Holdings, Inc. Sec. Litig.*,
  2016 WL 5339541 (S.D.N.Y. Sept. 23, 2016) ............................................................. 7

*In re PMA Capital Corp. Sec. Litig.*,
  2005 WL 1806503 (E.D. Pa. July 27, 2005)................................................................. 8

*In re Ravisent Techs., Inc. Sec. Litig.*,
  2004 WL 1563024 (E.D. Pa. July 13, 2004)............................................................... 15

*In re Savient Pharm., Inc. Sec. Litig.*,
  283 F. App'x 887 (3d Cir. 2008) .............................................................................. 14

*In re Sipex Corp. Sec. Litig.*,
  2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) ............................................................. 7

*In re Tellium, Inc. Sec. Litig.*,
  2005 WL 2090254 (D.N.J. Aug. 26, 2005) ................................................................ 24

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016)....................................................................................... 5

*In re Westinghouse Sec. Litig.*,
  90 F.3d 696 (3d Cir. 1996)...................................................................................... 14

*Inst'l Investors Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009).................................................................................... 21

*Klein v. Autek Corp.*,
  147 F. App'x 270 (3d Cir. 2005) .............................................................................. 14

*Li v. Aeterna Zentaris, Inc.*,
    2016 WL 3583821 (D.N.J. June 30, 2016) ........................................................... 22

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ................................................................................ 9

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ...................................................................... 17, 18

*Monk v. Johnson & Johnson*,
    2011 WL 6339824 (D.N.J. Dec. 19, 2011) .......................................................... 14

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan v. MDC Partners, Inc.*,
    2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016) ..................................................... 22

*Nat'l Junior Baseball League v. PharmaNet Dev. Grp.*,
    720 F. Supp. 2d 517 (D.N.J. 2010) ............................................................... 14, 24

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
    455 F. App'x 10 (2d Cir. 2011) ........................................................................... 7

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
    834 F.3d 481 (3d Cir. 2016) ..................................................................... *passim*

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000) ............................................................................. 10

*Rahman v. Kid Brands, Inc.*,
    2012 WL 762311 (D.N.J. Mar. 8, 2012) ............................................................. 21

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013) ........................................................................ 17, 18

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
    2015 WL 3833849 (M.D. Pa. June 22, 2015) ....................................................... 8

*SEC v. Kelly*,
    663 F. Supp. 2d 276 (S.D.N.Y. 2009) ................................................................. 7

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) .............................................................................. 19

*Steiner v. MedQuist Inc.*,
    2006 WL 2827740 (D.N.J. Sept. 29, 2006) ..................................................... 5, 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................ 11, 13, 23

*Total Equity Capital, LLC v. Flurry, Inc.*,
    2016 WL 3093993 (S.D.N.Y. June 1, 2016) ........................................................... 21

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
    2015 WL 3755218 (E.D. Pa. June 16, 2015) ......................................................... 22

*Wilson v. Bernstock*,
    195 F. Supp. 2d 619 (D.N.J. 2002) ..................................................................... 13

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007) ............................................................................ 4, 5

*Yates v. Mun. Mortg. & Equity, LLC*,
    744 F.3d 874 (4th Cir. 2014) ......................................................................... 15, 16

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .............................................................................. 16

**Statutes**

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ............................................. *passim*

**Rules**

17 C.F.R. § 229.303 ................................................................................................ 10, 11

17 C.F.R. § 229.503 .................................................................................................... 10

17 C.F.R. § 230.144A ............................................................................................... 2, 23

Federal Rule of Civil Procedure 9(b) ........................................................................... 3, 11

## PRELIMINARY STATEMENT

The Opposition confirms that Valeant's business strategy was both publicly disclosed and legal. The Opposition denigrates the strategy as controversial and risky, but those critiques do not constitute securities fraud. Nor does the Opposition or Complaint show that Valeant ever sought to hide its business practices in order to defraud investors. And that is the only issue here. Valeant made clear that it was breaking the traditional pharmaceutical industry mold by acquiring undervalued drugs rather than focusing on expensive research and development. Investors flocked to Valeant **because of**—not in ignorance of—this strategy.

The Opposition also:

- Cannot overcome the simple fact that senior management did not sell their Valeant stock—a fact that undermines the core theory of Plaintiffs' case: that Defendants supposedly knew the Valeant model was "unsustainable."

- Acknowledges that Plaintiffs need discovery to demonstrate scienter, even though federal law requires Plaintiffs to plead facts showing scienter **before** being entitled to discovery.

- Cannot address the irrefutable evidence that stock prices across the entire pharmaceutical industry fell nearly **40%** in the relevant period—which means Plaintiffs will not be able to demonstrate loss causation in this case.

The Opposition does not dispute numerous other key facts as well, including that Valeant's nascent alternative fulfillment distribution channel, which used specialty pharmacies controlled by Philidor, accounted for **only 1%** of revenue prior to 2015 and peaked at 7% in the third quarter of 2015, when all relevant facts were disclosed. The Opposition also does not dispute that Valeant repeatedly warned investors of the very risks that ultimately materialized, including that the Company might not be able to set its drug prices freely, that the Company had limited or no control of its distributors, and that non-compliance with sales practice regulations could negatively impact results. Against these determinative concessions, Plaintiffs' Opposition relies on two tactics: inflammatory rhetoric about "price gouging" and "Enron," and blatantly

plucking statements and even fragments of statements out of the context that gives them meaning.  These tactics fail to save the Complaint from dismissal for at least four reasons.

*First*, for the reasons stated above, the Opposition fails to demonstrate that there are any actionable misstatements pleaded in the Complaint.  *Second*, Plaintiffs cannot show that the Valeant Defendants had any motive to defraud investors.  Plaintiffs have no answer to the question why, if the Defendants knew their business model was "unsustainable," did senior management not sell their Valeant stock?  Instead, the Opposition recites a catalogue of scienter theories already rejected by other courts.

*Third*, Plaintiffs' Securities Act claims must fail since Valeant's debt offerings were private placements conducted in compliance with Rule 144A and Plaintiffs' stock purchases were not in, or traceable to, the offerings.

*Finally*, Plaintiffs' loss causation allegations fail to connect the purported corrective disclosures to any misstatements or omissions, particularly after October 2015, when Valeant announced that it was terminating its relationship with Philidor.

Stripping away the Opposition's rhetoric and references to alleged misconduct by salespeople from a different company, Plaintiffs' case rests on an immaterial accounting error (voluntarily corrected) and Valeant's purported misjudgment as to the sustainability of its business model.  None of these assertions supports a securities fraud claim.[1]

## **ARGUMENT**

## I.    **VALEANT DISCLOSED ALL MATERIAL ASPECTS OF ITS BUSINESS TO INVESTORS**

Defendants' opening memorandum catalogues the ways in which all of the omissions and

---

[1] Throughout this brief, all emphases in quotations are added and all internal citations, quotations and subsequent history notations are omitted unless otherwise stated.

misstatements alleged in the Complaint were fully disclosed or immaterial.  (*See* MTD at 47-61.)
Defendants address several of these purported misstatements below, to illustrate why Plaintiffs
cannot turn accurate disclosures into misstatements by casting aspersions on Valeant's historic
business strategy.

### A.  The Court Should Reject Plaintiffs' Attempt To Avoid Scrutiny

Plaintiffs' primary argument is that the Court need not bother engaging with Valeant's
motion to dismiss because Defendants have not addressed each and every allegation in the 734-
paragraph complaint.  (Opp. at 24-25; 79.)  This is not only untrue but also a transparent effort to
attempt to overwhelm the Court with an "unwieldy" volume of misstatements.  *See OFI Asset
Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 491-92 (3d Cir. 2016) (critiquing as "unwieldy"
a securities fraud complaint nearly 200 pages **shorter** than Plaintiffs' Complaint); *see also In re
Downey Sec. Litig.*, 2009 WL 2767670, at *3-4 (C.D. Cal. Aug. 21, 2009) (dismissing "puzzle-
style" pleading in securities complaint that "place[s] the burden on the reader to sort out the
statements and match them with the corresponding adverse facts").  Plaintiffs try to sow further
confusion by using ellipses and emphasis to twist Defendants' statements into something
Plaintiffs find easier to attack.

As an initial matter, the Valeant Defendants expressly argued that "**[n]one** of Plaintiffs'
alleged misstatements or omissions satisfies [the PSLRA and Rule 9(b)'s] pleading standard[s]"
(MTD at 48) and offered multiple arguments about why Plaintiffs' Complaint is wholly flawed
for each **category** of purported misstatement.  Defendants do not need to provide a sentence-by-
sentence analysis of the Complaint to preserve this argument.[2]

---

[2] Plaintiffs hunt and peck to try to find a single statement from their 734-paragraph complaint
that Defendants allegedly failed to challenge.  But to no avail.  Plaintiffs' assertion that the
statements in Compl. ¶¶ 192(e), 218(b) are admitted to be false because they are "absent from

*(footnote continued . . . )*

Plaintiffs also argue—inconsistently—that "it is unnecessary [for this Court] to rule upon each and every statement at this stage of the case." (Opp. at 25.) This is a misstatement of the law. Plaintiffs are required to plead with particularity every alleged fraudulent misstatement and facts giving rise to a strong inference of **each defendant's** scienter as to each such misstatement. *See, e.g.*, *Winer Family Trust v. Queen*, 503 F.3d 319, 335-37 (3d Cir. 2007) (group pleading insufficient under PSLRA); *Aviva Partners LLC v. Exide Techs.*, 2007 WL 789083, at *11 (D.N.J. Mar. 13, 2007). Effective case management principles counsel that the Court should evaluate the sustainability of the Complaint as a whole, or eliminate those portions of the Complaint that are not supported by facts.

### B.  Valeant's Disclosures Concerning Its Business Strategy Were Not Materially False Or Misleading

The Opposition contains many **arguments** for why statements regarding Valeant's business strategy **must have been** false or misleading, but never offers any well-pled facts demonstrating that anything was misstated.

There is no dispute, for example, that Valeant disclosed its acquisition-focused business model. (*See, e.g.*, MTD at 15.) Highlighting these **disclosures** is not a "truth on the market defense," as Plaintiffs contend (Opp. at 4); rather, it shows that Plaintiffs have not alleged actual omissions.

Plaintiffs contend that Valeant's statements put "in play" its sources of growth and the

_____

[Appendix B]" (Opp. at 25-26), for example, is belied by the Opposition's subsequent admission that those statements **are** listed in Appendix B (Opp. at 26 n.8) as general statements about compliance that are inactionable. The Compl. ¶ 216(b) statement, as another example, is listed in part on Appendix B (App'x B at 5) and, regardless, is nearly identical to the Compl. ¶ 218(b) statement made on the same day and listed in Appendix B. Appendix B also addresses the October 2015 press conference from which the Compl. ¶ 213 statement is drawn (App'x B at 21), and Defendants were under no obligation to reprint **all** statements from that conference in order to argue they are inactionable.

sustainability of its business strategy (Opp. at 36-43, 60, 128, 131-32), thereby obligating Valeant to say even more about pricing strategies and their contribution to revenues and profitability (Opp. at 42, 54).  But the only specific thing that Valeant supposedly did not do, according to Plaintiffs, is denigrate its own business as "unsustainable" (*e.g.*, Opp. at 54)— something Valeant was absolutely not required to do.  *See Cooper Tire*, 834 F.3d at 504 ("[Defendant] was under no obligation to use any adjective, let alone a pejorative one, to describe the state of [its business].").  Plaintiffs rely on cases with a critical distinction: they feature specific factual allegations showing defendants **knew** material information that contradicted their public disclosures.[3]  The Complaint here contains no such factual allegations, or even allegations that Defendants shared skeptics' views about the sustainability of Valeant's growth.  Instead of fact-based pleadings, the Opposition relies on the vague conclusion that "Valeant's growth in 2014 and 2015 was driven by its deceptive practices and price gouging" (Opp. at 43) given the later deterioration in Valeant's stock price in **2016**.  (Compl. ¶ 311.)  But to create liability, "a statement or omission must have been misleading **at the time it was made**."  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002).  Plaintiffs' pleading is nothing more than impermissible "fraud by hindsight."  *Winer Family Trust*, 503 F.3d at 332; *see*

_____

[3] *See, e.g.*, *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 235 (2d Cir. 2016) (defendants reassured investors about sufficiency of company's cash flows and liquidity even while management expressed internal concerns that the company was "running out of cash" and "nearing bankruptcy"); *Steiner v. MedQuist Inc.*, 2006 WL 2827740, at *3, *16 (D.N.J. Sept. 29, 2006) (executives attributed "revenues to legitimate business factors such as increased sales to existing customers, sales to new customers and additional revenue from acquisitions," when they knew about customer overbilling); *In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, 2011 WL 3444199, at *9 (D.N.J. Aug. 8, 2011) (statements about safety "not truthful in light of undisclosed, negative information **in Merck's possession**"); *In re Enzymotec Sec. Litig.*, 2015 WL 8784065, at *3, *15 (D.N.J. Dec. 15, 2015) (duty to disclose regulation impacting product "that had fueled [company's] increasing financial results leading up to the IPO" where defendants were "**well-aware**" of new regulations).

*also* MTD at 57-59 (optimistic opinions and forward-looking statements are inactionable absent allegations that opinions were not genuinely held at the time).

Plaintiffs also fail to plead facts showing why Valeant's statements suggesting that pricing was constrained by contracts and industry norms were not true.  For example, Mr. Pearson's May 2014 statement during a conference call that price increases for one customer group (managed care) across a single business line (dermatology) were, "I think" limited to "9%" (Opp. at 36), could not reasonably imply that a 9% cap applied to **all** drug price increases across **all** customer groups and **all** business lines.  To suggest otherwise (Opp. at 18, 32), Plaintiffs strip the statement from its context to pretend Defendants said something they did not say.  Plaintiffs also focus on Mr. Pearson's statement that Valeant "ha[d] a lot of constraints, **just like other pharma companies do**, in terms of pricing." (Opp. at 36-37.)  But Plaintiffs never show that this statement was false—*i.e.*, that other pharmaceutical companies had pricing constraints that Valeant did not.

### C.     The Accounting And Internal Controls Disclosures Addressed In Valeant's Limited Financial Restatement Were Clearly Immaterial To Investors

Valeant's restatement of its 2014 annual financials had minimal impact on the Company and was both quantitatively and qualitatively immaterial under established precedent.  (MTD at 48-50.)  Rather than dispute this, Plaintiffs argue that **any** restatement is *de facto* material under the securities laws, regardless of financial impact.  (Opp. at 29.)  This is simply not the law: "although overstatement of revenues in violation of GAAP **may** support a plaintiff's claim of fraud, the plaintiff must show with particularity how the adjustments affected the company's financial statements and whether they were material in light of the company's overall financial position."  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1018-19 (9th Cir. 2005) (surveying Second, Fifth and Seventh Circuit decisions).

Valeant's restatement corrected accounting errors that were limited in time and scope and did not alter Valeant's treatment of Philidor as a variable interest entity or Philidor's limited contribution to Valeant's finances.  This case is therefore nothing like the "particularly egregious" circumstances in the few cases relied upon by Plaintiffs.[4]  In addition, the stock price reaction for Valeant's stock after the restatement further confirms its immateriality: Valeant's stock price **increased** by 7.41% after the restatement was issued.  *See In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 269 (3d Cir. 2005) (accounting errors immaterial where no immediate negative effect on stock).

The Opposition also fails to explain how the restatement's finding that "one or more material weaknesses exist in the company's internal control over financial reporting" rendered three years of prior certifications by Messrs. Pearson, Schiller or Rosiello that the Company "maintained effective internal controls" materially false or misleading **when they were made**. (Opp. at 30, 129; Compl. ¶ 304.)  Those certifications were not guarantees and the fact that they may have turned out to be inaccurate does not mean they were fraudulent.  The Complaint contains no facts showing that the signers "knew the internal controls were ineffective a[t] the time of" the certifications.  *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2015 WL

---

[4] *See In re Ply Gem Holdings, Inc., Sec. Litig.* 2016 WL 5339541, at *3-4 (S.D.N.Y. Sept. 23, 2016) (restatement impacted more than 5% of key business segment, turning previously reported profit into a loss); *In re Celestica Inc. Sec. Litig.*, 2010 WL 4159587, at *2 (S.D.N.Y. Oct. 14, 2010) (restated inventory caused earnings to miss analysts' expectations and understate restructuring costs by 68%), *rev'd sub nom. New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10 (2d Cir. 2011); *In re Sipex Corp. Sec. Litig.*, 2005 WL 3096178, at *1-2 (N.D. Cal. Nov. 17, 2005) (officers "personally orchestrated a sham 'sale,'" which "alone made the sham transaction material").  Plaintiffs' lone support for their argument that GAAP restatements are *de facto* material under the securities laws is *SEC v. Kelly*, 663 F. Supp. 2d 276, 285 (S.D.N.Y. 2009), which no court in this Circuit (or any Court of Appeals) has adopted.

3833849, at *46 (M.D. Pa. June 22, 2015).[5]  The certifications also included meaningful caveats

that they were "based on [the signer's] knowledge" and an "evaluation" of the Company's

"disclosure controls and procedures."  (*E.g.*, Compl. ¶¶ 135-36.)

> ### D.    The Opposition Does Nothing To Show That Valeant's Statements About Philidor And Its AF Program Were False Or Misleading

Plaintiffs have not pled adequately that any challenged statement concerning Philidor, the

"independence" of Valeant's specialty pharmacies, or the Company's AF strategy was materially

false or misleading.  *First*, prior to October 2015 Valeant had no duty to disclose additional

details of its relationship with Philidor and the AF strategy.  Both were plainly immaterial to

Valeant until that time.  In addition to acknowledging that there was nothing unlawful about

Valeant's relationship with Philidor (Opp. at 13), Plaintiffs further tacitly concede that Valeant

disclosed: (1) the existence and legitimate benefits of its AF program (Opp. at 9); (2) that the AF

program had "bugs" (Compl. ¶ 147); (3) that Valeant had "no or limited control" over

distributors or marketers (Opp. at 128); (4) that "significant sanctions" could result from

violations of sales regulations (MTD at 14-15; Opp. at 78); and (5) that certain confidential

details about its AF program were withheld for competitive reasons.  (MTD at 13 (unrebutted).)

Plaintiffs fail to explain why such disclosures were fraudulent at the time.  *See Cooper Tire*, 834

F.3d at 486, 503-04 (company not obligated to identify a putative acquiror even though that firm

had a financial interest in the company's subsidiary responsible for 25% of revenue and profits).

*Second*, Plaintiffs have no response to the fact that the Complaint fails to sufficiently

---

[5] Plaintiffs rely on *In re PMA Capital Corp. Sec. Litig.*, which held that "fail[ing] to disclose the true facts regarding the adequacy of . . . internal controls" violates federal securities laws.  2005 WL 1806503, at *10 n.8 (E.D. Pa. July 27, 2005).  But *PMA* involved facts showing that defendants **knew** of inadequate loss reserves while certifying otherwise.  *Id.* at *15.  Here, no factual allegations address management's "evaluation" of controls.  *Cf. Enzymotec*, 2015 WL 8784065, at *16 (defendants "had no reasonable basis" for certifications).

allege that any Defendant knew of Philidor's "deceptive" practices prior to October 2015 (MTD at 52-53) except to say that such arguments go only to scienter.  (Opp. at 65.)  This misstates the law.  Defendants cannot be liable for omitting a fact unless it was known to them.  *See NAHC*, 306 F.3d at 1330; *see also In re Anadigics, Inc. Sec. Litig.*, 2011 WL 4594845, at *2, *20 (D.N.J. Sept. 30, 2011) (statements "touting the growth in demand from [defendant's] customers" were not materially misleading because plaintiffs had not shown if and when defendants were aware of increased returns and cancelled orders), *aff'd*, 484 F. App'x 742 (3d Cir. 2012).  Contrary to Plaintiffs' assertion (Opp. at 40), courts routinely dismiss omissions-based claims where, as here, "Plaintiffs have alleged no particularized facts . . . to support an inference that a duty to disclose existed," *Anadigics*, 2011 WL 4594845, at *20, or alleged facts showing Defendants in fact knew the "omitted" facts.[6]

*Third*, Plaintiffs fail to explain how any details about Philidor known to Valeant could be material prior to the third quarter of 2015.  The Complaint demonstrates that Philidor sales were a nominal share of Valeant's total net revenue during most of the putative Class Period—**less than 1%** in 2014 (Ex. 1 at 44; Compl. ¶ 215(a)), and reached 7% of revenues only in the third quarter of 2015, when Valeant disclosed details of the relationship.  Plaintiffs cannot dispute that courts have found immaterial as a matter of law omissions impacting a similarly small portion of revenue.  *See, e.g.*, *Glassman v. Computervision Corp.*, 90 F.3d 617, 633 n.26 (1st Cir. 1996) (omission of changes in levels of backlog orders of 3% to 9% of revenue immaterial).  Plaintiffs'

---

[6] Plaintiffs' own cases confirm that a "duty to speak" (Opp. at 61) arises only with respect to facts known to management.  *See Dow Corning Corp. v. BB&T Corp.*, 2010 WL 4860354, at *12 (D.N.J. Nov. 23, 2010) (duty to disclose "allegedly *known* and serious liquidity risk . . . when offering positive commentary about the ARS market in general"); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 248 (5th Cir. 2009) ("[O]mission of a **known risk** . . . [is] usually material to any disclosure discussing the prospective result from a future course of action.").

reliance on Valeant's reduced 2016 earnings guidance announced after ceasing business with Philidor (Opp. at 63-64), is tacit confirmation that they plead no facts establishing that Philidor was material in 2013, 2014 or 2015.[7]

*Fourth and finally*, Plaintiffs cannot rely on accounting rules set forth in ASC 810 (Opp. at 49), or disclosure rules of SEC Items 303 or 503 (Opp. at 49-50, 130-31), to contend Valeant had some independent duty to disclose details about its relationship with Philidor prior to the third quarter of 2015 regardless of materiality.  *See In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 584-85 (S.D.N.Y. 2013) (no duty to disclose under Item 303 where plaintiff failed to allege "material" effect), *aff'd*, 566 F. App'x 93 (2d Cir. 2014).[8]  For this reason, courts routinely reject reliance on accounting rules or SEC disclosure rules as sufficient to plead actionable omissions.  *See*, *e.g.*, *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2015 WL 4469143, at *22 n.21 (D.N.J. July 22, 2015) ("Because Plaintiff fails to adequately plead either scienter **or** any actionable misrepresentations, Plaintiff's claims concerning the . . . alleged failure to comply with Item 303 . . .  fail."); *Oran v. Stafford*, 226 F.3d 275, 288 (3d Cir. 2000) ("[V]iolation of

---

[7] This leaves only the drop in Valeant's stock prior to the final restatement in March 21, 2016 (on which date Valeant's stock price **increased**), which alone is insufficient to establish materiality. *Cf. Truk Int'l Fund LP v. Wehlmann*, 737 F. Supp. 2d 611, 624-25 (N.D. Tex. 2009) (stock drop did not suggest materiality given other factors, including "the vicissitudes of the stock market"); *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 988 F. Supp. 2d 406, 424 (S.D.N.Y. 2013) ("Where a disclosure contains many revelations, there is insufficient cause and effect to establish that any one revelation is material.").

[8] Plaintiffs' reliance on *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 593 (D.N.J. 2001), is misplaced.  The issue there was not whether the company's accounting practice was consistent with a particular GAAP rule, like here, but whether an allegedly violated accounting principle was considered part of GAAP.  *Id.*

SK-303's [*i.e.*, Item 303's] reporting requirements does not automatically give rise to a material omission . . . .").[9]

## II.   THERE ARE NO FACTS SUPPORTING A "STRONG INFERENCE" THAT DEFENDANTS SOUGHT TO DEFRAUD INVESTORS

Amazingly, Plaintiffs seek to excuse their failure to meet the PSLRA and 9(b) requirement to plead facts giving rise to a strong inference of scienter by complaining that they have not had discovery.  (Opp. at 81.)  But that is the point:  Plaintiffs have to plead facts to be entitled to discovery.  To ask for discovery first puts the cart before the horse and would render the PSLRA's pleading standard meaningless.

Plaintiffs' central theory of the case—that the Individual Defendants knew, but failed to disclose, that Valeant's business strategy was unsustainable—is economically and logically implausible.  If the Individual Defendants, some allegedly owning Valeant stock worth tens or hundreds of millions of dollars (*e.g.*, Compl. ¶¶ 462, 466-67), knew their strategy was doomed, it is illogical that they would hold onto inflated stock.  The far more compelling inference from Plaintiffs' allegations is of "nonculpable explanations for the [Defendants' alleged] conduct," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007)—that the Valeant Defendants pursued a strategy with great success for a period of time, reported on the Company's financial condition and prospects as they understood them, and provided good-faith warnings of known risks that could cause its strategy to fail but simply failed to anticipate the setbacks that engulfed Valeant beginning in the fall of 2015.

It is remarkable that in 280 pages of allegations (rehashed in 157 pages of argument in

---

[9] Again the Opposition falsely resorts to claiming that Valeant has waived an argument. (Opp. at 49-50.)  But Plaintiffs' Item 303 allegations simply rehash the rest of the Complaint's allegations about, *inter alia*, "price gouging" and Philidor (Compl. ¶ 230), all of which are refuted.

Opposition), Plaintiffs identify no "confidential informants" or internal documents suggesting Defendants **knew** about Philidor's alleged "deceptive tactics" or accounting errors, or believed that any part of Valeant's business was "unsustainable."  They offer only speculation.

### A.    The Valeant Defendants Had No Motive to Defraud Investors

No Individual Defendant engaged in the type of "unusual" or "suspicious" trading in Valeant stock that courts normally require to plead a "motive or opportunity" supporting an inference of scienter (MTD at 31-32 & n.33)—a point conceded by the Opposition's silence.  As a result, Plaintiffs are left to argue that the Valeant Defendants **generally** had a "motive to misrepresent the true state of Valeant's affairs due to their unusually lavish compensation system . . . and the Company's dependence on acquisitions funded by the debt and equity offerings." (Opp. at 98-99.)  Neither argument establishes a legally cognizable motive and neither is logically consistent with Plaintiffs' theory of the case.

As recognized by courts in the Third Circuit, stock-based compensation is "ubiquitous in corporate America, [and] can hardly form the basis for a strong inference of scienter."  *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 396 (D. Del. 2010), *aff'd*, 442 F. App'x 672 (3d Cir. 2011).  A "corporation and its officers have a desire to complete [every] transaction, and officers will usually reap financial benefits from a successful transaction."  *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004).[10]

---

[10] *GSC*'s outcome was not based on the fact that plaintiffs "only speculated that the defendant would likely have received stock options as a result of an acquisition" (Opp. at 102).  *See* 368 F.3d at 237-38.  Regardless, speculation is all Plaintiffs offer as to the benefit of higher stock price in facilitating Valeant acquisitions, **only one of which involved stock**.  (*See* Compl. ¶¶ 9, 17, 140 n.121).  Moreover, the Third Circuit cases Plaintiffs cite do not support their "motive" theory.  *See Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 343, 350 (E.D. Pa. 2014) ("ample motive" where, unlike here, defendants concretely benefitted from stock sales that "depart[ed] from executives' typical compensation incentives" and "triggered a change-of-control provision" for them to "receive[] a bonus"); *In re AT&T Corp. Sec. Litig.*, 2002 WL

(*footnote continued . . .* )

Indeed, the restricted stock awards "directly tied to increasing Valeant's stock price" received by Messrs. Pearson and Schiller (Opp. at 99) were precisely the "very common" type of "[i]ncentive compensation in the form of stock options and performance-based bonuses" that fail to create a "heightened, unusual motive necessary to support a strong inference of scienter." *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 636-37 (D.N.J. 2002). Incentive-based compensation systems **align** the interests of corporate officers and shareholders and do not support an inference of fraud, especially where there are no allegations of stock sales by Defendants. Nowhere is that better illustrated than in the case of Mr. Pearson, who, rather than capitalizing on some imagined fraudulent scheme, actually "lost $1.5 billion in the value of Valeant stock." (Opp. at 103.) This fact alone renders Plaintiffs' core allegation—that Valeant knew its business model was "unsustainable" (Opp. at 4, 50, 54, 57-58, 62, 130, 131)—entirely implausible. And, as the Supreme Court has held, economically illogical allegations cannot survive a motion to dismiss. *Tellabs*, 551 U.S. at 324 ("A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.").

Accordingly, because Plaintiffs fail to plead a cognizable motive, "the strength of the circumstantial allegations must be even greater" to establish a strong inference that someone whose intent could be imputed to the corporation made alleged misstatements intentionally or

---

31190863, at *24 (D.N.J. Jan. 30, 2002) ("[A]n executive's desire to make their stock options more profitable . . . fail[s] to establish fraudulent intent as a matter of law."). The *AT&T* court's finding that a desire to inflate stock price to complete a stock-for-stock acquisition might support motive, *id.* at *26, was rejected by the Third Circuit in *GSC*. 368 F.3d at 237.

with extreme recklessness.  *Monk v. Johnson & Johnson*, 2011 WL 6339824, at *8 (D.N.J. Dec.

19, 2011).[11]  As set forth below, Plaintiffs' allegations do not clear this bar.

### B.   Valeant's Limited Restatement Provides No Inference of Scienter

Courts have uniformly held that allegations of scienter based on GAAP violations do not

create the requisite strong inference absent "egregious" circumstances suggesting an intent to

defraud.  *Nat'l Junior Baseball League v. PharmaNet Dev. Grp.*, 720 F. Supp. 2d 517, 557

(D.N.J. 2010) (citing *In re Westinghouse Sec. Litig.*, 90 F.3d 696 (3d Cir. 1996)); *see also In re*

*Ikon Office Solutions, Inc.*, 277 F.3d 658, 673 (3d Cir. 2002) ("[T]he mere publication of

inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish

scienter."); *In re Bio-Tech. Gen. Corp.*, 2006 WL 3068553, at *10 (D.N.J. Oct. 26, 2006)

(Plaintiffs must plead facts concerning several factors, including the "simplicity of accounting

guidelines" violated, the "magnitude of the misstated financials and the repetitiveness of the

GAAP violations" in order to plead scienter based on GAAP violations.), *aff'd*, 283 F. App'x

887 (3d Cir. 2008).  Nor do courts credit arguments, like those made by Plaintiffs, that individual

defendants must have known about the accounting errors on the theory that "executives like

[them] were 'closely involved' in [the] business."  *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,

540 F. Supp. 2d 464, 473 (S.D.N.Y. 2008).

The accounting errors identified in Valeant's restatement were not "simple and obvious"

(Opp. at 94): they involved individual decisions as to when and how to record specific Philidor

---

[11] Neither *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865 (3d Cir. 2000), nor *Monk*, 2011 WL 6339824, applied a weakened scienter pleading standard.  (Opp. at 81-82.)  *EP Medsystems* was primarily a contractual dispute involving a "narrow exception to the PSLRA" not applicable here.  *Klein v. Autek Corp.*, 147 F. App'x 270, 274 (3d Cir. 2005) (addressing *EP Medsystems*).  And *Monk* held that scienter requires allegations of "defendants' knowledge of facts or access to information contradicting their public statements" and a reckless disregard of those known facts or information.  2011 WL 6339824, at *8.

orders—together representing less than 1% of Valeant's annual revenue—during a short window "leading up to the purchase option agreement" in the fourth quarter of 2014. (Ex. 37, Item 4.02.)[12] These decisions depended in part on individual assessments of whether "collectability was reasonably assured" for a given order. (Ex. 1 at F-11.) Given the "difficult and complex accounting" involved, it is no wonder courts have rejected scienter allegations premised upon a variable interest entity restatement. *See Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 881, 887 (4th Cir. 2014). The cases on which Plaintiffs rely involved accounting misstatements with far greater impact and duration, not the type of isolated short term errors identified in Valeant's restatement. *See, e.g.*, *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 636-37 (E.D. Va. 2000) ("breathtaking" GAAP violation misstated $18.9 million net loss as $36 million net income—a 290% overstatement); *In re Medicis Pharm. Corp. Sec. Litig.*, 2010 WL 3154863, at *2 (D. Ariz. Aug. 9, 2010) (GAAP violations over at least six years understated net revenue by up to 12.5%); *In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 6 (D.D.C. 2000) (improper recognition of consignment sales revenue overstated earnings over two years by as much as 24%) (*see also Baan* Compl. ¶ 2, 2008 WL 3888319); *In re Ravisent Techs., Inc. Sec. Litig.*, 2004 WL 1563024, at *9 (E.D. Pa. July 13, 2004) (by "recogniz[ing] revenue from licensing agreements that had not shipped," company overstated revenues by 51%, gross profit by 30%, and understated net losses by 364%) (*see also Ravisent* Compl. ¶ 39, 2000 WL 35782236).

Moreover, Valeant's prompt internal review and voluntary restatement undermine any

---

[12] Plaintiffs' repeated reference to "double counting" of revenues (Opp. at 17, 21, 94) is misleading—the restatement said that "Philidor recognized revenue on that inventory when it dispensed products to patients, and that revenue was consolidated into [Valeant]'s results." And contrary to Plaintiffs' suggestion (Opp. at 16-17, 93), the restatement confirmed generally that Valeant's "historical accounting [for Philidor] . . . was in accordance with [GAAP]." (Ex. 37, Item 4.02).

inference of fraud.  *See Yates*, 774 F.3d at 888 ("[M]anagement's subsequent disclosures tend to negate an inference of fraudulent purpose.").  And because the internal Board review did not conclude that anyone engaged in securities fraud, Plaintiffs are left to speculate about (1) unspecified "improper conduct" by Mr. Schiller or Ms. Carro "resulted in the provision of incorrect information to the [Audit] Committee and the [C]ompany's auditors," and (2) a "tone at the top of the organization and the performance-based environment . . . **may have** been contributing factors resulting in the company's improper revenue recognition."  (Ex. 37, Item 4.02; Compl. ¶¶ 305, 342, 380; Opp. at 95.)  But Plaintiffs fail to bridge the gap between the unspecified "improper conduct" by Schiller and Carro and the type of extreme recklessness that must be alleged to plead scienter.  Similarly, the internal Board review did not find that the "tone at the top" of Valeant was extremely reckless; it found only that setting "challenging targets" and a "performance-based environment"—common management techniques—may have factored into the restatement of revenues.[13]  Lastly, the fact that "Pearson, Schiller, and Rosiello signed [Sarbanes-Oxley] certifications certifying the effectiveness of Valeant's financial internal controls" (Opp. at 95) "add[s] nothing . . . to the scienter calculus" because "allowing Sarbanes-Oxley certifications to create an inference of scienter in every case where there was an accounting error or auditing mistake made by a publicly traded company would eviscerate the pleading requirements for scienter set forth in the PSLRA."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1004 (9th Cir. 2009).

---

[13] Plaintiffs' own authority indicates that an improper "tone at the top" only supports scienter in extreme cases.  *See In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 374, 376 (S.D.N.Y. 2015) (Brazilian oil company engaged in "rampant fraud and corruption . . . which led to the arrest of high-level Petrobras executives," and resulted in as much as a $30 billion overstatement in assets); *Hall v. Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 223 (S.D.N.Y. 2008) (executives allegedly engaged in backdating stock options and other unusual stock transactions).

### C. There is No Basis To Infer Scienter Concerning Valeant's AF Strategy Or Philidor Disclosures

Eager to highlight scandalous allegations against **Philidor**—*e.g.*, "physically altering physician prescriptions to require Valeant products" (Opp. at 2)—Plaintiffs make the conclusory claim that "Philidor's deceptive business practices" must have been known to Valeant because those practices began from "the very formation of Philidor." (Opp. at 65.) This is precisely "the kind of inferential leap the PSLRA's heightened pleading standard is meant to prevent." *Cooper Tire*, 834 F.3d at 496.

Plaintiffs also argue that the Valeant Defendants **should** have known about Philidor's "deceptive tactics" prior to October 2015 because certain individuals allegedly were "directly involved with Philidor" or the AF program (Opp. at 9), or because certain individuals visited Philidor, had intermittent contacts with Valeant personnel responsible for Philidor (Opp. at 84-86),[14] or had positions at "Valeant with access to its internal documents" (*e.g.*, Opp. at 88). But allegations of generalized dealings with, or "access" to, Philidor do not imply that Valeant's management knew about any alleged deceptive sales tactics at Philidor since even "[c]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to fraud." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246 (3d Cir. 2013) (quoting *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008)).[15] Such additional allegations are precisely what is missing here.[16]

---

[14] As discussed in pages 5-6 of Mr. Jorn's Reply Brief (Dkt. 191), Plaintiffs do not establish that there were any "meetings" in which supposedly "deceptive tactics" were discussed.

[15] Plaintiffs cannot distinguish *Metzler* by erroneously claiming that the "allegations of defendants' knowledge were limited to the fact that management had access to an information monitoring system" concerning performance at the defendant for-profit college (Opp. at 89 n.44)

(*footnote continued . . .* )

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.* is instructive.  713 F. Supp. 2d

378 (D. Del. 2010), *aff'd*, 442 F. App'x 672 (3d Cir. 2011).  The *Horizon* plaintiffs alleged that

individual executives of a corporate parent must have known about a massive illegal price-fixing

scheme at a subsidiary because they had a managerial role and "access to internal documents."

*Id.* at 397.  The district court held that the plaintiffs failed to allege the required strong inference

of scienter in part because their "nonspecific references to 'documents' . . . allegedly prepared by

[the defendant's] personnel fall far short of the PSLRA's particularity requirement."  *Id.* at 397-

98.[17]  Likewise, in *Rahman*, the Third Circuit rejected arguments that a parent company's CEO

and CFO must have been aware of illegal conduct at a subsidiary based on allegations (similar to

Plaintiffs' here) that "the [parent's] CEO and CFO toured [the subsidiary] and met with the

management team bimonthly."  736 F.3d at 245.[18]

---

because in that case, unlike here, "[s]everal confidential witnesses corroborated the fact that
Corinthian management closely monitored performance at each campus," 540 F.3d at 1058, and
the CFO gave an "instruct[ion] to" employees to engage in alleged misconduct, *id.* at 1068-69.

[16] Recognizing that "the targets" of Philidor's alleged "deception were payors not investors"
(Opp. at 85 n.41), Plaintiffs make no effort to distinguish the cases supporting dismissal on that
ground.  (MTD at 39 n.38.)  *Steiner v. MedQuist, Inc.*, fails to rebut this argument because
*Steiner*'s scienter inquiry focused on "particularized" allegations that high-ranking individual
defendants "had direct knowledge of the fraudulent billing scheme" implemented for the express
purpose of "increas[ing] revenues and profit margins." 2006 WL 2827740, at *18 (D.N.J. Sept.
29, 2006).  Any comparison to the attenuated allegations here—conclusory assertions that
Defendants knew about **Philidor's** overbilling—is inapposite.

[17] Plaintiffs' attempt to distinguish *Horizon* on the ground that the illegal price-fixing scheme
was "covert" (Opp. at 88 n.43) is doubly unavailing.  First, the *Horizon* plaintiffs alleged that one
of the subsidiary's executives had "direct communications with a number of other senior
executives" at the parent defendant company—hardly "covert." 713 F. Supp. 2d at 397.  Second,
Plaintiffs allege that Philidor's "deceptive tactics" **were** concealed.  And a United States
Attorney recently announced criminal charges against a former Valeant employee and a Philidor
executive based on information that they allegedly **concealed from Valeant management**.  *See*
Compl., *United States v. Tanner*, 16-mj-7338 (S.D.N.Y.).

[18] *In re Bradley Pharms., Inc. Sec. Litig.*, 421 F. Supp. 2d 822 (D.N.J. 2006), is inapposite.
Unlike here, plaintiffs "d[id] not merely allege that [defendants] . . . acted with scienter 'by

*(footnote continued . . . )*

Plaintiffs' remaining allegations concerning Philidor are also insufficient. First, Mr. Pearson's statement that Valeant was "working with outside counsel and . . . ha[d] found no evidence of illegal activity whatsoever at Philidor" (Opp. at 5, 21, 46; Compl. ¶ 218(f)) does not support an inference of scienter because, among other things, it was an interim progress report that has never been shown to be false. Second, Plaintiffs do not even attempt to explain how the alleged use of aliases by some Valeant employees in dealings with Philidor could support an inference of scienter by the Individual Defendants, nor how it indicates an attempt to mislead Valeant investors by any of the Individual Defendants.

### D.  There Is No Basis To Infer Scienter Concerning Valeant's Drug Pricing, Patient Assistance Program, Or Business Strategy Disclosures

To the extent Plaintiffs argue that the Individual Defendants knew about or were involved in drug-pricing decisions, Valeant's co-pay assistance program, or the Company's "non-traditional business practices" (Opp. at 83-84), Plaintiffs fail to allege facts showing "that the company's disclosures were inconsistent with current data," let alone that anyone intended to commit fraud. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994). Of course, "fraud cannot be inferred merely because at one time the firm bathes itself in a favorable light' but later the firm discloses that things are less than rosy." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 158 (3d Cir. 2004).

Plaintiffs' repeated invocation of the term "price gouging" (*e.g.*, Opp. at 89) is simply a pejorative characterization of admittedly legal business practices that were fully disclosed (MTD at 15-16), and is irrelevant to any scienter analysis. Further, Plaintiffs cannot plead a strong inference of scienter (or even a material misstatement) by taking out of context one off-the-cuff

---

virtue of their positions,'" and the court held that defendants "knew facts and had access to specific information suggesting that their public statements . . . were not accurate." *Id.* at 830.

comment made by Mr. Pearson during the Q&A portion of a lengthy April 29, 2015 conference call.  (Opp. at 91.)  After presenting slides showing that volume growth for the first quarter of 2015 was greater than price growth for Valeant's top 20 products—which Plaintiffs do not dispute was true—Mr. Pearson answered a question by stating in part that "[i]n terms of price volume, actually, volume was greater than price in terms of our growth." (Ex. 22 at 14.)  The very next day, Valeant filed its Form 10-Q, disclosing (like previous quarters) that "growth in the Developed Markets was **driven primarily by price**."  (Ex. 16 at 34.)  To argue Pearson's April 29, 2015 response to a question was false, Plaintiffs must ignore (1) the statement's context, (2) Valeant's accurate and contemporaneous SEC filing, and (3) "other 'plausible opposing inferences,' including that the statement was simply imprecise or received little attention due to the context in which it was made."  *Cooper Tire*, 834 F.3d at 499.  In short, Mr. Pearson's statement cannot bear the substantial weight Plaintiffs place on it.  (Opp. at 41, 91; Compl. ¶¶ 16, 186(b), 349, 418.)

### E.     Plaintiffs' Remaining Theories Provide No Basis To Infer Scienter

Plaintiffs offer a host of additional theories to try to support their scienter allegations, each of which has been repeatedly rejected by courts.

#### 1.     The "Core Operations" Doctrine

 Plaintiffs offer the conclusory assertion that "deceptive practices (*e.g.*, price gouging, copay waivers, Philidor network) were the most profitable components of Valeant's operations and comprised the 'non-traditional' approach that the Individual Defendants used to run Valeant's business."  (Opp. at 90.)  As a threshold matter, "[i]t is far from clear . . . that the core operations doctrine remains valid in light of the PSLRA. . . .  Those Courts of Appeals that have addressed the question have found that it is no longer viable in most situations."  *Total Equity*

*Capital, LLC v. Flurry, Inc.*, 2016 WL 3093993, at \*5 (S.D.N.Y. June 1, 2016).[19]  Nor have Plaintiffs identified any alleged misstatement concerning Valeant's drug pricing, co-pay assistance, AF channel or financial prospects that was "so dramatic" that a court could infer it "would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false."  *Horizon Lines*, 442 F. App'x at 676.  Indeed, Plaintiffs' "core operations" arguments (Opp. at 88-90) simply rehash their insufficient attempts to plead scienter based on the Individual Defendants' corporate roles.  (MTD at 39-43.)

### 2.    Allegations By Allergan, Citron, And Investigative Journalists

Plaintiffs' contention that all Valeant Defendants "repeatedly denied the allegations by Allergan, Citron, and investigative journalists and attacked the accusers" (Opp. at 90) does not support an inference of scienter because it misses a crucial step: pleading facts showing that the allegations were true, or that anyone who "denied" them knew them to be true.  *Cf. Inst'l Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 270 (3d Cir. 2009) (scienter pled where CFO was "specifically asked, directly and repeatedly, whether the company's pricing ha[d] held steady" but denied any issues when company was in fact "engaged in massive discounting on an unusually large scale").  The Citron "report," for example, included speculation about "stuff[ing] the channel" and "phantom sales," (Ex. 34 at 5), but the Complaint does not even contend these allegations are true.  (Compl. ¶¶ 214-223, 246-47.)  Denying a self-interested short-seller's false accusations cannot support an inference of scienter.[20]

---

[19] To the extent such claims are viable, core operation doctrine pleadings still cannot infer scienter unless combined with "other indicia of scienter in a totality-of-circumstances test." *Rahman v. Kid Brands, Inc.*, 2012 WL 762311, \*22 (D.N.J. Mar. 8, 2012).

[20] Plaintiffs somehow seek to hold Ubben liable for responses to Citron's allegations (Opp. 79) despite the fact that he had "resigned from the board" two months prior (Compl. ¶¶ 217-18, 442).

### 3.    Congressional Inquiry

The fact that certain members of Congress "complained" about some of Valeant's responses to their inquiries, or made accusations against Mr. Schiller (Opp. at 91), are "after-the-fact conclusion[s]" that "do not provide any evidence of [any Individual Defendant's] scienter **at the time they allegedly made misrepresentations**." *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & ERISA Litig.*, 892 F. Supp. 2d 59, 74 (D.D.C. 2012).

### 4.    Departure Of Individual Defendants

"[M]ajor stock losses are often accompanied by management departures, and it would be unwise for courts to penalize directors for these decisions" by inferring management acted with scienter. *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1093 (N.D. Cal. 2005); *see also N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan v. MDC Partners, Inc.*, 2016 WL 5794774, at *21 (S.D.N.Y. Sept. 30, 2016) (dismissing complaint lacking "allegations supporting an inference of fraud that is at least as compelling as an inference of mismanagement or one of the myriad other reasons an executive might resign.").[21]  The Opposition's assertion that "11 of 15 [of] the Individual Defendants were **forced out**" of Valeant (Opp. at 97) is also contradicted by the Complaint itself, which admits that many left

---

[21] Plaintiffs' cases are distinguishable because, unlike here, they involved defendants' departures coupled with particularized allegations of specific involvement in fraud.  *See W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2015 WL 3755218, at *15, *17 (E.D. Pa. June 16, 2015) (President and COO "responsible for implementing new regulations" being violated); *Li v. Aeterna Zentaris, Inc.*, 2016 WL 3583821, at *2 (D.N.J. June 30, 2016) ("[A]llegations . . . show[ed] that either [defendant] was at [relevant] meeting, or that he was at least informed about what occurred."); *In re Par Pharm. Sec. Litig.*, 2009 WL 3234273, at *7-9 (D.N.J. Sept. 30, 2009) (president and CEO knew about overstated accounts receivable and inventory).

**voluntarily**.[22]  Other departures were entirely consistent with Valeant's highly publicized

decision to alter its business model.

> ### F.     The Only Compelling Inference Is That Valeant Believed In Its Business Model And Never Defrauded Investors

Plaintiffs' Opposition does not rebut, as it must, the compelling "nonculpable

explanations for the [Valeant Defendants'] conduct."  *Tellabs*, 551 U.S. at 324.  That is,

throughout the putative Class Period, the Valeant Defendants believed in the Company's

publicly disclosed strategy, reported on Valeant's financial condition and prospects as they knew

them, and had no reason to anticipate the unforeseen circumstances that enveloped the Company

beginning in the fall of 2015, including increasing government scrutiny of drug pricing,  the

baseless accusations by a short-seller, and the sudden collapse of a seemingly promising and

legitimate alternative sales channel—Philidor.  (*See* MTD at 31.)

## III.   PLAINTIFFS' AFTER-THOUGHT SECURITIES ACT CLAIMS FAIL

Perhaps recognizing their inability to meet the heightened pleading standards required to

plead fraud, Plaintiffs tack on Securities Act claims under § 12(a)(2) and § 11 that, for reasons

detailed by the Bank Offering Defendants (Dkt. 185) and *amicus curiae* SIFMA (Dkt. 190-3),

cannot go forward.  Valeant's debt offerings were private placements conducted in compliance

with Rule 144A, 17 C.F.R. § 230.144A.  The SEC and the Supreme Court have determined that

sophisticated investors like TIAA-CREF can "fend for themselves" without the protections of the

Securities Act in connection with such offerings.  *See In re Merrill Lynch Auction Rate Sec.*

*Litig.*, 2012 WL 1994707, at *5, *7 (S.D.N.Y. June 4, 2012), *aff'd*, 505 F. App'x 14 (2d Cir.

2012).  Likewise, the Opposition's claim that the March 17, 2015 purchase of Valeant stock by

---

[22] *See* Compl. ¶ 45 (Lönner "left"); ¶ 49 (Stevenson "resigned"); ¶ 440 (Schiller "stepp[ed] down"); ¶ 442 (Ubben "resigned from the board"); Compl. ¶ 446 (directors "would not be standing for re-election"); *see also* MTD at 28 n.31 (Jorn left for "personal reasons").

the City of Tucson—the only Plaintiff asserting a § 11 claim—was actually "in" the March 27,

2015 stock offering which occurred **ten days later** (Opp. at 123-24) is obviously unsupportable.

The Opposition abandons as well any theory of standing based on "traceability" to the offering.

(Opp. at 124 n.60.)

## IV.   PLAINTIFFS' LOSS CAUSATION ALLEGATIONS FAIL TO CONNECT "CORRECTIVE DISCLOSURES" TO ANY ALLEGED FRAUDULENT MISSTATEMENTS

Loss causation "is not pled upon allegations of drops in stock price following an

announcement of bad news that does not disclose the fraud." *In re Tellium, Inc. Sec. Litig.*, 2005

WL 2090254, at *4 (D.N.J. Aug. 26, 2005).  Yet that is all Plaintiffs offer here: financial results

and other "bad news" months after the relevant information was disclosed to the market.

Moreover, when this case began, Plaintiffs acknowledged that any alleged misstatements

and omissions were fully corrected by October 2015.[23]  The operative Complaint confirms that

by October 30, 2015, "Philidor's improper practices were publicly revealed." (Compl. ¶ 409.)

Nevertheless, in an attempt to elongate the class period, the Opposition now cites eight events

purportedly disclosing "new information" to investors after October 2015 (Opp. at 119-120).

Arguments raised in a brief do not equate to well pled facts in a complaint.  In addition, three of

these "disclosures"—an "update" concerning the previously disclosed decision to cut ties with

Philidor (Compl. ¶ 498), adjusted financial projections (*id.* ¶¶ 518-521) and Valeant's first

quarter results in 2016 (*id.* ¶ 524)—are precisely the type of post-disclosure events that fail to

establish a "causal link" with the fraud.  *PharmaNet*, 720 F. Supp. 2d at 558-59, 561 (dismissing

a securities complaint for failure to plead loss causation where "Plaintiff improperly relie[d] on

negative financial results after each of the quarterly public disclosures [without] allegations . . .

---

[23] Compl. ¶¶ 1, 65, *Potter v. Valeant Pharm. Int'l, Inc.*, 3:15-cv-07658 (D.N.J.), Dkt. 1.

that the cause of the decline in stock price was substantially caused by the alleged fraud."). The remaining four "disclosures" are merely "negative characterization[s] of already-public information" that "do[] not constitute a corrective disclosure of anything but the journalists' [or analysts'] opinions." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) (citing *Merck*, 432 F.3d at 269-70) (holding that the *Wall Street Journal*'s analysis of a past disclosure did not constitute a corrective disclosure)).[24] Accordingly, even if the court is not prepared to rule on loss causation with respect to the entirety of the Complaint, all of the allegations after October 2015 clearly can and should be dismissed.

And it remains an overwhelming and insurmountable problem for Plaintiffs that the stock price performance of pharmaceutical industry as a whole from the date of Valeant's peak stock price (August 5, 2015) until the end of the class period (March 15, 2016) reveals that the same political, societal and economic pressures impacting the price of Valeant stock affected the entire pharmaceutical industry, as reflected in a nearly 40% decline in stock price across the industry.[25] Thus, Plaintiffs' loss causation arguments are untenable.

## <u>CONCLUSION</u>

Defendants respectfully submit that Plaintiffs' claims must be dismissed with prejudice. Those Individual Defendants who have filed separate motions to dismiss incorporate this brief by reference. The Bank Offering Defendants also join in Parts I and III of this brief.

---

[24] Plaintiffs' assertion that tying those disclosures to their alleged misstatements is necessarily "fact-intensive" or requires "expert" discovery (Opp. at 113) is simply untrue. No experts are needed to realize, for example, that reports of a single analyst cutting Valeant's rating because that analyst did not understand Valeant's new relationship with Walgreens (Opp. at 119) are completely untethered from Plaintiffs' allegations.

[25] *Compare* (Compl. ¶ 26 (charting Valeant's class period stock price)) *with* Reply App'x A (charting the 38.55% decline in the XPH—a fund tracking performance of pharmaceutical stocks—from Aug. 5, 2015 to Mar. 15, 2016).

/s/  *Richard Hernandez*
Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey  07102
Telephone:  (973) 848-8615
Facsimile:  (973) 297-6615

Paul C. Curnin (*pro hac vice* pending)
Jonathan K. Youngwood (*pro hac vice* pending)
Craig S. Waldman (*pro hac vice* pending)
Daniel J. Stujenske (*pro hac vice* pending)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Valeant Pharmaceuticals International, Inc., J. Michael Pearson,*
*Robert L. Rosiello, Ari S. Kellen, Ronald H. Farmer, Colleen Goggins, Robert A. Ingram, Anders*
*Lönner, Theo Melas-Kyriazi, Robert N. Power, Norma Provencio, Katherine B. Stevenson and*
*Jeffrey W. Ubben*

Dated: January 13, 2017

**REPLY APPENDIX A**

XPH value from 08/05/2015 to 03/15/ 2016



Source: Bloomberg