O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile:  (212) 326-2061

400 South Hope Street
Los Angeles, CA 10017
Telephone: (213) 430-2000
Facsimile:  (213) 430-6407

*Attorneys for Defendants Jeffrey W.
Ubben, ValueAct Capital Management,
L.P., VA Partners I, LLC, ValueAct
Holdings, L.P., ValueAct Capital Master
Fund, L.P., and ValueAct Co-Invest
Master Fund, L.P.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | ) ) ) ) | **Master File No. 3:15-cv-07658 (MAS) (LHG)** |
| This Document Relates To:<br><br>No. 3:15-CV-07658 MAS-LHG | ) ) ) ) ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF FACTS ...........................................................................5

    ValueAct Capital Employs a Long-Term Value-Oriented Approach to Investing. .........................................................................................5

    The ValueAct Funds Have Invested in Valeant for Twelve Years. ..............5

    During His Brief Tenure on the Valeant Board, Ubben Did Not Have Primary Responsibility for Valeant's Accounting Practices. .............6

    On June 10, 2015, the ValueAct Funds Sold a Portion of Their Valeant Stock. ...............................................................................7

    Plaintiff IBEW's Next-Day Stock Purchases. ...........................................10

    The ValueAct Funds' Continued Investment in Valeant. ...........................10

    The FAC's Scant Allegations Regarding Ubben..........................................11

ARGUMENT .............................................................................................13

    I.    IBEW Does Not Plead Particularized Facts that the VAC Defendants Possessed Material Nonpublic Information about Valeant. ...................................................................................15

        a.    The FAC Fails to Allege What Material Nonpublic Information Ubben Possessed in June 2015....................16

        b.    The Mere Potential for Ubben to Access Nonpublic Information Is Insufficient to Plead that the VAC Defendants Actually Possessed Such Information. ...................................................................19

    II.    The FAC Fails to Plead Particularized Facts Giving Rise to a Strong Inference of Scienter. ............................................21

        a.    The FAC Fails to Allege Any Suspicious Trading History or Patterns. .......................................................22

        b.    That the ValueAct Funds Continued To Hold Roughly 80% of Their Valeant Holdings Precludes a Strong Inference of Scienter. ......................................24

        c.    The Timing of the Sale Does Not Give Rise to a Strong Inference of Scienter..........................................25

## TABLE OF CONTENTS
### (continued)

**Page(s)**

d.   The Absence of Trading by Other Defendants or Directors Undermines Any Potential Strong Inference of Scienter.....................................................26

e.   The Allegations Admit an Innocent Inference for the Sale that Is Far More Compelling than Any Inference of Fraudulent Intent. ......................................27

III.   IBEW Fails to Plead It Purchased Valeant Stock Contemporaneously with the ValueAct Funds' Sale...............28

IV.   The Court Should Dismiss Count One Against Ubben. ..........32

a.   The Only Allegedly False and Misleading Statements Attributable to the Director Defendants Were Made Months After Ubben Resigned. .................32

b.   No Allegation Raises a Strong Inference of Ubben's Scienter..........................................................34

i.   Plaintiffs' Scienter Allegations Are Inapplicable to Ubben. ........................................35

ii.   There Are Other, More Compelling Opposing Inferences that Can Be Drawn from the Allegations Against Ubben..................38

CONCLUSION .........................................................................................39

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acito v. IMCERA Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995) ....................................................................27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................2, 13

*Barnard v. Verizon Comms., Inc.*,
  2011 WL 294027 (E.D. Pa. Jan. 31, 2011) ................................... 29, 30

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................2, 13

*Berger v. Ludwick*,
  Civ. No. 97-0728, 2000 WL 1262646 (N.D. Cal. Aug. 17, 2000)............... 18, 20

*Bright v. Westmoreland Cty.*,
  380 F.3d 729 (3d Cir. 2004) .................................................................30

*City of Edinburgh Council v. Pfizer*,
  754 F.3d 159 (3d Cir. 2014) ................................................. 13, 15, 21

*Copland v. Grumet*,
  88 F. Supp. 2d 326 (D.N.J. 1999)........................................................28

*Durant v. Horton*,
  Civ. No. 07-93, 2008 WL 2510661 (D.N.J. June 19, 2008) .................................30

*Foster v. Denenberg*,
  616 F. App'x 472 (3d Cir. 2015).........................................................30

*Gordon v. Sonar Capital Mgmt.*,
  962 F. Supp. 2d 525 (S.D.N.Y. 2013).................................................17

*In re 3Com Corp.*,
  Civ. No. 97-21083, 1999 WL 1039715 (N.D. Cal. July 8, 1999)................ 15, 17

*In re Able Labs.*,
  Civ. No. 05-2681, 2008 WL 1967509 (D.N.J. Mar. 24, 2008)...........................28

*In re Advanta Corp.*,
  180 F.3d 525 (3d Cir. 1999) ................................................................24

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Aetna Inc.*,
34 F. Supp. 2d 935 (3d Cir. 1999).................................................................37

*In re Alpharma*,
372 F.3d 137 (3d Cir. 2004) ........................................ 21, 22, 27, 36

*In re AST Research*,
887 F. Supp. 231 (C.D. Cal. 1995)..............................................................13

*In re Bausch & Lomb, Inc.*,
592 F. Supp. 2d 323 (W.D.N.Y. 2008) .......................................................26

*In re Bristol-Myers Squibb*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004)..........................................................23

*In re China North East Petroleum Holdings, Ltd.*,
Civ. No. 10-4577, 2014 WL 7236914 (S.D.N.Y. Dec. 11, 2014) .......................39

*In re Constar Intern.*,
585 F.3d 774 (3d Cir. 2009) .........................................................................33

*In re Enron Corp.*,
2016 WL 4095973 (S.D. Tex. Aug. 2, 2016)................................................ 16, 17

*In re Enron Corp.*,
258 F. Supp. 2d 576 (S.D. Tex. 2003) .........................................................38

*In re Gildan Activewear, Inc.*,
636 F. Supp. 2d 261 (S.D.N.Y. 2009)..........................................................24

*In re Hertz Global Holdings, Inc.*,
Civ. No. 13-7050, 2017 WL 1536223 (D.N.J. April 27, 2017) .................... 26, 36

*In re Keyspan Corp.*,
383 F. Supp. 2d 358 (E.D.N.Y. 2003)..........................................................24

*In re Livent, Inc.*,
78 F. Supp. 2d 194 (S.D.N.Y. 1999)............................................................39

*In re Merck & Co., Inc.*,
Civ. No. 05-1151, 2015 WL 2250472 (D.N.J. May 13, 2015)............................28

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Merck & Co., Inc.*,
   MDL No. 1658, 2011 WL 3444199 (D.N.J. Aug. 8, 2011)........................ 20, 21

*In re NAHC, Inc.*,
   306 F.3d 1314 (3d Cir. 2002) ...............................................................7

*In re Oak Technology Securities Litigation*,
   Civ. No. 96-20552, 1997 WL 448168 (N.D. Cal. Aug. 1, 1997).......................18

*In re Party City*,
   147 F. Supp. 2d 282 (D.N.J. 2001)............................................... 24, 26

*In re Suprema Specialties, Inc.*,
   438 F.3d 256 (3d Cir. 2006) .................................................... 36, 37

*In re Take-Two Interactive*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008).................................... 14, 16, 17

*Janus Capital Group, Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ..........................................................33

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002)................................................22

*Malin v. XL Capital Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd,* 312 F. App'x 400 (2d Cir. 2009) ..26

*McCabe v. Ernst & Young LLP*,
   494 F.3d 418 (3d Cir. 2007) ...................................................32

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006) ...........................................................14

*Motamed v. Chubb Corp.*,
   Civ. No. 15-7262, 2016 WL 4581409 (D.N.J. Sept. 1, 2016) ...............................4

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ....................................................14

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ..........................................................29

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*OFI Asset Mgmt.* v. *Cooper Tire & Rubber*,
834 F.3d 481 (3d Cir. 2016) ...............................................................................7

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000) .............................................................................31

*Palladin Partners v. Gaon*,
Civ. No. 05-3305, 2006 WL 2460650 (D.N.J. Aug. 22, 2006) ..........................35

*Petratos v. Genetech, Inc.*,
855 F.3d 481 (3d Cir. 2017) ...............................................................................4

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
694 F. Supp. 2d. 287 (S.D.N.Y. 2010) ...............................................................25

*SEC v. Espuelas*,
579 F. Supp. 2d 461 (S.D.N.Y. 2008) ...............................................................20

*Shah v. Zimmer Biomet Holdings, Inc.*,
Civ. No. 16- 815, 2018 WL 4637247 (N.D. Ind. Sept. 26, 2018) ......................21

*Steamfitters Local 449 Pension Fund v. Alter*,
2011 WL 4528385 (E.D. Pa. Sept. 30, 2011) ......................................... 22, 29, 38

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ................................................................................. passim

*United States v. Teicher*,
987 F.2d 112 (2d Cir. 1993) ...............................................................................16

*Winer Family Trust v. Queen*,
503 F.3d 319 (3d Cir. 2007) .............................................................................34

*Wojtunik v. Kealy*,
394 F. Supp. 2d 1149 (D. Ariz. 2005) ...............................................................37

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .............................................................................35

**Statutes**

15 U.S.C. § 78t-1(a) ...........................................................................................28

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Other Authorities**

H.R. Conf. Rep. No. 104-369, 37, reprinted in 1995 U.S.C.C.A.N. 730 ...............16

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................14

**Regulations**

17 C.F.R. 240.13d-1 ...............................................................................9

Defendants ValueAct Capital Management L.P., VA Partners I, LLC, ValueAct Holdings, L.P. (collectively, "ValueAct Capital"), ValueAct Capital Master Fund, L.P., ValueAct Co-Invest Master Fund, L.P. (collectively, "the ValueAct Funds" or "the Funds") and Jeffrey W. Ubben ("Ubben") (together with ValueAct Capital and the ValueAct Funds, the "VAC Defendants") respectfully submit this memorandum of law in support of their motion to dismiss: (i) Counts Three and Four of the First Amended Complaint ("FAC") against the VAC Defendants; and (ii) Count One of the FAC against Ubben.

## PRELIMINARY STATEMENT

For more than twelve years, the ValueAct Funds—investment funds that are managed by ValueAct Capital—have been significant stockholders in Valeant Pharmaceuticals, Inc. ("Valeant").  Their commitment to Valeant lasted not only throughout the Class Period, but continues to this day, as the ValueAct Funds collectively are Valeant's second largest stockholder.  Disregarding that clearly demonstrated long-term commitment, Plaintiff IBEW Local Union 481 ("IBEW") levels the serious accusation that the VAC Defendants violated the prohibition on insider trading in Section 20A of the Securities Exchange Act of 1934 (the "Exchange Act") when the ValueAct Funds sold a portion of their Valeant position on June 10, 2015, while keeping more than 78% of that position (which ultimately suffered heavy losses).  IBEW's allegations do not come close to overcoming the hurdles established by the Private Securities Litigation Reform Act ("PSLRA") and

Rule 9(b), and the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), for pleading an actionable securities fraud claim. Its claim has no basis in fact, law, or common sense.

The fundamental problem with IBEW's insider trading claims is that the FAC fails to allege with the required particularity that the VAC Defendants actually possessed material nonpublic information. Potential access—all that is alleged here—has never been an adequate substitute for actual possession of material nonpublic information. Nor can IBEW identify precisely what material nonpublic information was allegedly misused.

Equally important is that IBEW has failed to plead a "strong inference" of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent," as required in *Tellabs*. No strong inference of scienter can be inferred in light of the confluence of the three key innocent circumstances:

- the ValueAct Funds had *purchased* Valeant stock in November and December 2014, increasing their position in Valeant to approximately 19 million shares;

- in the six months following that purchase, Valeant's stock price increased dramatically, resulting in an undue concentration of Valeant stock in the ValueAct Funds (as the FAC itself *acknowledges*); and

- the ValueAct Funds *retained roughly 80%* of their Valeant position following the June 10, 2015 sale.

Thus, the FAC and documents subject to judicial notice provide a far more compelling innocent reason for why the ValueAct Funds made the June 10, 2015

-2-

sale. Like any responsible investment adviser, ValueAct Capital monitors the ValueAct Funds to make sure that they are not unduly weighted in any particular investment. From December 2014 through June 2015, Valeant's stock price increased 65%. Such a dramatic upswing unbalanced the ValueAct Funds' holdings, and on June 10, 2015, the ValueAct Funds reduced their position by 22% while retaining approximately 15 million Valeant shares worth more than $3.28 billion.

The ValueAct Funds sold not one share from June 2015 through the end of the Class Period. As a result, the 15 million shares that the ValueAct Funds retained plummeted in value by approximately *$2.785 billion* from the June 10, 2015 trading price. That is the antithesis of insider trading. IBEW's untenable claim boils down to the premise that the ValueAct Funds' June 10, 2015 stock sale amounted to insider trading designed to avoid precisely the losses that the ValueAct Funds wound up suffering. And while advancing that irrational theory, IBEW does not negate the rational innocent inference obvious on the face of the FAC: that the ValueAct Funds sold a portion of stock to rebalance their portfolio, and not to profit from material nonpublic information.

The Section 20A claim also fails because IBEW cannot plead that it traded contemporaneously with the June 10, 2015 sale. IBEW cannot allege that it purchased Valeant stock on the same day as the ValueAct Funds' sale and, thus, that it falls within the narrow class of stockholders who are considered "contemporaneous" traders with the alleged insiders.

And because Count Three fails to state a claim, Count Four, which seeks to impose control-person liability on ValueAct Capital and Ubben for the same alleged violation of Section 20A, also fails to state a claim and should likewise be dismissed with prejudice.

Separately, we ask the Court's indulgence in revisiting whether Plaintiffs state a viable Section 10(b) claim in Count One against Ubben.  We respectfully submit that the allegations in Count One against Ubben—considered separately from those against other individual defendants—fail to state a claim that he made materially false statements or omissions in Valeant's 2014 Form 10-K or that he acted with scienter.  Although the Court previously declined to dismiss Count One against Ubben when it decided the dismissal motions of the many defendants in this case, there is no bar to the Court revisiting that decision now that Plaintiffs have chosen to amend the complaint.[1]  Plaintiffs in their opposition papers and the Court in its April 2017 opinion focused entirely on alleged misstatements and scienter-related allegations that postdate Ubben's August 2015 departure from Valeant.  A fresh view of the FAC's scant allegations specific to Ubben will lead the Court to the conclusion that Count One should be dismissed as to Ubben.

---

[1]   *See United States ex rel. Petratos v. Genetech, Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) (citations and internal quotations omitted) (noting that "the law of the case doctrine . . . does not limit the power of trial judges to reconsider . . . prior decisions"); *Motamed v. Chubb Corp.*, Civ. No. 15-7262, 2016 WL 4581409, at *3 (D.N.J. Sept. 1, 2016) (concluding that law-of-the-case doctrine did not preclude court from considering arguments made and rejected pre-amendment).

## STATEMENT OF FACTS

**ValueAct Capital Employs a Long-Term Value-Oriented Approach to Investing.**

ValueAct Capital is an investment adviser formed in 2000. It manages several investment funds, totaling more than $13 billion, for the benefit of large institutional investors. *See* Portnoi Decl. Exs. 13 & 14. These investors include public and private pension plans, sovereign wealth funds, and endowments.

ValueAct Capital's strategy is to take a long-term, value-oriented approach to investing, primarily in publicly traded companies. In carrying out this approach, the individual partners of ValueAct Capital sometimes join the boards of companies in which the ValueAct Funds hold an interest. Ubben, a ValueAct Capital founder, serves as one of nine principals who have collectively served on the boards of more than forty public companies in the last eighteen years. *See id.* Ex. 14.

**The ValueAct Funds Have Invested in Valeant for Twelve Years.**

The ValueAct Funds first invested in Valeant more than twelve years ago, and more than six years before the Class Period began. FAC ¶ 568. By the start of the Class Period, the Funds held more than 17.5 million Valeant shares, and still held approximately 15 million shares by the end of the Class Period. Portnoi Decl. Exs. 1 & 8 (May 29, 2013 Form 4; May 9, 2016 Form 4). The Funds continue to hold a significant ownership stake in Valeant, and together are Valeant's second-largest stockholder to this day.

**During His Brief Tenure on the Valeant Board, Ubben Did Not Have Primary Responsibility for Valeant's Accounting Practices.**

Ubben served on Valeant's board from October 2014 through August 19, 2015, for roughly ten of the Class Period's thirty-eight months.  FAC ¶ 51.  Ubben was a member of the board's Finance & Transactions and Talent & Compensation Committees.  *Id.*  IBEW does not allege that either committee reviewed the accounting-related aspects of Valeant's transactions or public filings.  The Talent & Compensation Committee was responsible for, among other things, reviewing the compensation of Valeant's CEO and officers.  *See* Portnoi Decl. Ex. 9 at 24 (Apr. 22, 2014 Schedule 14a).  The Finance & Transaction Committee assisted the board by providing oversight and advice regarding significant transactional and financing activities, and by monitoring its overall financial condition.  *Id.* at 27.

In contrast, Valeant's filings with the Securities and Exchange Commission ("SEC") and the FAC state that the Audit & Risk Committee was responsible for reviewing Valeant's financial statements, management's discussions and analysis of the results of operations and financial condition, and compliance with legal and regulatory requirements, including with respect to financial disclosures.  *Id.* at 23-24; *see also* FAC ¶ 229(d) (noting that the Audit & Risk Committee would review the accounting treatment as determined by management and that the board carries out its oversight of management's responsibility for financial reporting principally

through that committee); *id.* ¶ 140 (same).[2]  Ubben is not alleged to have served on the Audit & Risk Committee.

During his board tenure, Ubben signed only one of the public documents that Plaintiffs allege contained material falsehoods:  Valeant's 2014 Form 10-K, an annual report that covered a year in which Ubben had served for only three months as a Valeant director.  FAC ¶¶ 51, 193.  The FAC pleads no facts demonstrating that Ubben knew of any material misstatement in that 2014 10-K.

**On June 10, 2015, the ValueAct Funds Sold a Portion of Their Valeant Stock.**

The ValueAct Funds held approximately 18.92 million Valeant shares, trading at approximately $131.67, when Ubben joined the Valeant board in October 2014. *See* Portnoi Decl. Exs. 3 & 11 (Oct. 10, 2014 Form 3; Oct. 2014 stock prices).[3]  In

---

[2]    The VAC Defendants point to the role of the Audit & Risk Committee not to suggest that any member of that committee acted improperly, but solely to distinguish the role of that committee from those of the two board committees on which Ubben served, as part of the VAC Defendants' showing that Plaintiffs have not satisfied their pleading burden.

[3]    Under the PSLRA, the Court "must consider the [C]omplaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the [C]omplaint by reference, and matters of which a court may take judicial notice." *OFI Asset Mgmt.* v. *Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (quoting *Tellabs*, 551 U.S. at 322).  The Court may consider "(1) documents relied upon in the Complaint ([including a] Company['s] . . . press releases); (2) documents filed with the SEC . . . ; and (3) stock price data compiled by [a reliable financial] news service." *In re NAHC, Inc.*, 306 F.3d 1314, 1331 (3d Cir. 2002).  Thus, the Court may consider on this motion, in addition to the FAC's allegations: (i) ValueAct Capital's Form 3, Form 4, and Schedule 13D filings with the SEC; (ii) ValueAct Capital's June 11, 2015 press release announcing the sale of some of the ValueAct Funds' Valeant holdings, which is explicitly referenced in the FAC; (iii) excerpts of annual proxy

November and December 2014, the Funds *purchased* 460,000 Valeant shares, bringing their Valeant holdings to 19.38 million shares. *Id.* Exs. 4 & 5 (Nov. 26, 2014 Form 4; Dec. 11, 2014 Form 4). Those shares were purchased at prices ranging from $139.29 to $142.25. *Id.* Over the next six months, Valeant's stock price rose by nearly 65% and the value of the Funds' position in Valeant experienced a corresponding growth. *See id*. Ex. 5 (December 2014 stock price of approximately $140); *id.* Ex. 6 (Form 4 showing June 10, 2015 sales at $219 and $230.60).

Like any investment adviser, ValueAct Capital monitored the Funds' portfolio for outsized investments that might need to be managed down to avoid over-concentration. FAC ¶¶ 565-66. Because Valeant's stock rose 65% in six months, the value of the Funds' investment in Valeant swelled to $4.2 billion. On June 10, 2015, the Funds sold 22% of those holdings, while still retaining approximately 15 million Valeant shares valued at $3.28 billion. Portnoi Decl. Ex. 6 (June 12, 2015 Form 4). This sale marked the Funds' first sale of Valeant stock in more than four years, FAC ¶ 568, and the $3.28 billion in retained holdings still qualified them as one of the largest Valeant shareholders during the Class Period.

The FAC tries to obscure the actual date that the ValueAct Funds sold the Valeant shares.[4] But the documents on which IBEW relies in the FAC, and other

---

statements filed by Valeant with the SEC; and (iv) information regarding Valeant's stock price.

[4]     *Compare* FAC ¶¶ 64 n.10, 451 (alleging the ValueAct Funds sold on June 10, 2015); *with id.* ¶¶ 62, 561, 568, 570 (alleging the ValueAct Funds sold "on or around

documents subject to judicial notice, make clear that the ValueAct Funds sold *on* June 10, 2015. This undisputable fact is reflected in two of the VAC Defendants' SEC filings.[5] Portnoi Decl. Exs. 6 & 7. IBEW cites to and relies on the Form 4 to establish the sale, but falsely alleges in the same paragraph that the ValueAct Funds traded "on or around June 10, 2015." FAC ¶ 62. The phrase "on or around" appears nowhere in the Form 4; rather it reports four Valeant stock sales *on* June 10, 2015, and no sales on any other day. Portnoi Decl. Ex. 6. The amended Schedule 13D also discloses four sales on June 10, 2015 and no sales on any other day.[6] *Id.* Ex. 7.

The June 10 stock-sale date is further confirmed by ValueAct Capital's press release announcing the sale. *Before* the NYSE opened on June 11, 2015, ValueAct Capital announced that the Funds "ha[d] sold [past tense] 4.2 million" Valeant shares. *Id.* Ex. 10. Yet IBEW cites this press release in alleging sales after June 10. FAC ¶ 570. It hinges its claim for "contemporaneous" trading on the notion that the

---

June 10"); *and id.* ¶¶ 572-73 (alleging the ValueAct Funds sold "on or around June 10, 2015 and June 11, 2015"). But IBEW got it right in footnote 10 and paragraph 451: documents that are both judicially noticeable and incorporated by reference in the FAC make clear that the Funds sold on June 10, 2015.

[5]    The VAC Defendants were required to file the Form 4 because Ubben, a ValueAct Capital principal, served on Valeant's board. *See* 15 U.S.C. § 78p(a). A Form 4 in this instance was required to be filed within two trading days of the sale. *Id*. In connection with the June 10 sale of stock, the Form 4 was filed on June 12, 2015. Portnoi Decl. Ex. 6.

[6]    ValueAct Capital and the ValueAct Funds were required to file an amended Schedule 13D because the ValueAct Funds were the beneficial owners before the sale of more than 5% of Valeant's shares. *See* 17 C.F.R. 240.13d-1.

press release shows the Funds selling "through brokers," but the press release actually states that the sales were made "in brokers' transactions." *Compare id. with* Portnoi Decl. Ex. 10.

**Plaintiff IBEW's Next-Day Stock Purchases.**

IBEW alleges that it purchased 850 shares of Valeant stock on June 11, 2015, the day after the ValueAct Funds' sale. FAC ¶ 33 & Schedule A. IBEW is a defined-contribution plan, not a broker. *Id.* ¶ 33. Lead Plaintiff TIAA and Plaintiff Tucson make no attempt to allege that they purchased any stock contemporaneously with the Funds' sale. *Id.* ¶¶ 31-32.

**The ValueAct Funds' Continued Investment in Valeant.**

After June 10, 2015, Valeant's stock price continued to rise for nearly three months (until August 31, 2015), ranging between approximately $220 and $260 per share. Portnoi Decl. Ex. 12. But the Funds sold no more shares. Rather, they maintained a 15-million-share position through the end of the Class Period. *Compare id*. Ex. 6 (post-June 2015 sale holdings of 14,994,261 shares), *with id.* Ex. 8 (May 2016 Form 4 showing holdings of 14,994,261 shares). The consequences of the VAC Defendants' continued belief in Valeant have been severe. The nearly $925 million profit that the Funds allegedly made from the June 10, 2015 sale (FAC ¶ 568) is dwarfed by the *$2.785 billion loss* they sustained through the end of the Class Period.

-10-

The following chart summarizes the ValueAct Funds' Class-Period purchases and sales of Valeant stock:

| THE VALUEACT FUNDS' CLASS-PERIOD PURCHASES AND SALES OF VALEANT STOCK | | | | | |
|---|---|---|---|---|---|
| Transaction Date | Buy/ Sell | Quantity | Transaction Price | Total Post-Transaction Valeant Holdings | Value of Post-Transaction Holdings[7] |
| June 19, 2013 | Buy | 1,352,941 | $85 | 18,912,243 shares | $1.6 billion |
| November 24, 2014 | Buy | 210,000 | $142.25 | 19,133,877 shares | $2.72 billion |
| December 9, 2014 | Buy | 200,000 | $140.25 | 19,333,877 shares | $2.71 billion |
| December 10, 2014 | Buy | 50,000 | $139.29 | 19,383,877 shares | $2.7 billion |
| June 10, 2015 | Sell | 4,200,000 | $219 - $230.60 | 14,994,261 shares | $3.28 billion ($4.2 billion pre-sale)[8] |
| March 15, 2016 | End of Class Period | 0 | $33 | 14,994,261 shares | $494.8 million |

**The FAC's Scant Allegations Regarding Ubben.**

The next time after the stock sale that Ubben's name appears in the FAC is when he resigned from Valeant's board on August 19, 2015.  FAC ¶ 451.  Seven

---

[7]    Value calculated based on share price of last transaction.

[8]    Both values calculated using $219 as the share price.

-11-

months later, in March 2016, Valeant restated its 2014 Form 10-K.  FAC ¶ 311.  The

following chart summarizes the FAC's sparse allegations against Ubben:

| DATE | EVENT |
|---|---|
| October 2014 | Ubben joins Valeant's board of directors (FAC ¶ 51) |
| December 2014 | Valeant executes option agreement giving Valeant the right to purchase Philidor (*Id.* ¶¶ 108, 139, 229) |
| February 2015 | Ubben signs Valeant's 2014 Form 10-K, covering a year in which he was director for three months (*Id.* ¶ 193) |
| June 2015 | The ValueAct Funds sell approximately 22% of its Valeant holdings (*Id.* ¶ 451) |
| August 2015 | Ubben resigns from Valeant's board (*Id.*) |

Elsewhere in the FAC, Plaintiffs include Ubben with other non-VAC

Defendants under the umbrella terms "Director Defendants," "Individual

Defendants," and "Exchange Act Defendants," but virtually all of those allegations

postdate Ubben's departure from Valeant's board.  *See, e.g.*, FAC ¶¶ 163, 168-71.

Ubben is a defendant in only four of the FAC's eleven counts:

| COUNT NO. | CLAIM |
|---|---|
| One | Exchange Act Section 10(b) (for Plaintiffs' Class-Period losses, based on Ubben's signing of Valeant's 2014 Form 10-K) |
| Three | Exchange Act Section 20A (based on the ValueAct Funds' June 10, 2015 stock sale) |
| Four | Exchange Act Section 20(a) (based on the ValueAct Funds' June 10, 2015 stock sale) |
| Nine | Securities Act Section 11 (for alleged misstatements in the March 2015 stock-offering materials, which incorporated the 2014 Form 10-K) |

## ARGUMENT

The FAC contains nothing more than conclusory and speculative allegations that the VAC Defendants committed insider trading in violation of the Exchange Act. IBEW's allegations fall far short of stating a Section 20A claim for insider trading.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must dismiss the FAC if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Speculation is not enough. *Id*. The Court need not accept conclusory assertions as factual allegations, and "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see also Iqbal*, 556 U.S. at 678 (plaintiff must plead more than "unadorned, the-defendant-unlawfully-harmed-me accusation").

IBEW must meet a much more stringent set of pleading standards, under the PSLRA and Rule 9(b) of the Federal Rules of Civil Procedure. *See City of Edinburgh Council v. Pfizer*, 754 F.3d 159, 176 (3d Cir. 2014) (dismissing Section 20A claims where plaintiff's insider-trading allegations not "sufficient to meet the heightened pleading standards for scienter under the PSLRA"); *In re AST Research*, 887 F. Supp. 231, 235 (C.D. Cal. 1995) (dismissing Section 20A claims for failure to meet Rule 9(b)'s pleading requirements).

The PSLRA additionally requires plaintiffs to plead with particularity any alleged misstatements or omissions, and facts creating a strong inference that the

defendant acted with the requisite state of mind. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006) (quoting 15 U.S.C. § 78u-4(b)(1)-(2)) (The PSLRA "insists that securities fraud complaints . . . 'state with particularity facts giving rise to a strong inference that the defendant acted with'" scienter.). To qualify as "strong," an inference of scienter "must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling . . . and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. The Court must therefore "consider plausible, nonculpable explanations for the defendant's conduct." *Id.* Rule 9(b) likewise demands particularity when pleading fraud. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993) ("[C]ontemporaneous trading must be pleaded with particularity under Rule 9(b)."). IBEW must also plead a predicate Section 10(b) violation that must itself be for insider trading. *In re Take-Two Interactive*, 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008) (citing cases).

As set forth below, the FAC's allegations fall well short of stating a Section 20A claim. IBEW fails to plead any particularized facts that the June 10, 2015 sale was made while the VAC Defendants possessed any material nonpublic information about Valeant. Instead, IBEW makes only conclusory allegations that the VAC Defendants had *access* to material nonpublic information—which IBEW nowhere identifies—by virtue of their board representation; a mere status that does not come

-14-

close to alleging that they *actually* had and used material nonpublic information to trade.  And IBEW's Section 20A claim fails for the independent reason that IBEW cannot plead that it purchased any shares of Valeant stock contemporaneously with a sale by the ValueAct Funds.

Liability under Section 20(a) is similarly derivative of an Exchange Act violation.  *See City of Edinburgh*, 754 F.3d at 177 (dismissing Section 20(a) claim for failure to plead predicate Exchange Act violation).  IBEW premises its Count-Four Section 20(a) claim on their Count-Three allegations that the VAC Defendants violated Section 20A.  FAC ¶ 580.  IBEW's failure to state a Section 20A claim thus necessitates dismissal of Count Four as well.

## I.     IBEW Does Not Plead Particularized Facts that the VAC Defendants Possessed Material Nonpublic Information about Valeant.

The FAC nowhere identifies—with any specificity—what material nonpublic information the VAC Defendants possessed when the ValueAct Funds sold.  *See In re 3Com Corp.*, Civ. No. 97-21083, 1999 WL 1039715, at *8 (N.D. Cal. July 8, 1999) (dismissing Section 20A claim where "complaint allege[d] only that the individual defendants had the 'material adverse non-public information . . . complained of herein when they sold their shares of stock'" as "too conclusory" because plaintiffs "ha[d] not sufficiently pled with particularity non-public material information that the individual defendants possessed at the time they made their sales").  Absent from the FAC are any allegations describing what information the

VAC Defendants possessed or when they possessed it. This failure mandates dismissal of the Section 20A claim. *See, e.g.*, *In re Take-Two Interactive*, 551 F. Supp. 2d at 311 (dismissing Section 20A claims against trading insiders for failure to plead knowing possession where only non-conclusory allegations related to other defendants); *In re Enron Corp.*, 2016 WL 4095973, at *29 (S.D. Tex. Aug. 2, 2016) ("Moreover Plaintiffs fail to allege fact[s] as to when and what [defendants] allegedly 'knew'; thus it is impossible to determine whether any information remained nonpublic or material[.]").

> a. *The FAC Fails to Allege What Material Nonpublic Information Ubben Possessed in June 2015.*

It is axiomatic that to state an insider-trading claim, IBEW must plead that the VAC Defendants traded while in possession of material nonpublic information. *See United States v. Teicher*, 987 F.2d 112, 120 (2d Cir. 1993). A plaintiff cannot plead an insider-trading claim without identifying the information the insider possessed. That is true under any standard, but is especially so under the PSLRA's and Rule 9(b)'s heightened pleading standards. No plaintiff should be able to unlock the doors of discovery on a complaint that gives no fair notice of even the insider information the defendant allegedly possessed. *Cf.* H.R. Conf. Rep. No. 104-369, 37, reprinted in 1995 U.S.C.C.A.N. 730, 736 (observing, before passing the PSLRA, that "[t]he cost of discovery often forces innocent parties to settle frivolous securities class actions"). Yet that is precisely what IBEW attempts here.

The FAC makes only the generalized allegation that "ValueAct, through Ubben, had access to and knowledge of Valeant's material, nonpublic information concerning the undisclosed improper business and accounting practices which gave rise to the Restatement, closing of Philidor, cessation of such improper business practices, and resulting corrective disclosures." *Id.* ¶ 567.  But nowhere does IBEW identify with the requisite particularity *what that information was*.  *See Gordon v. Sonar Capital Mgmt.*, 962 F. Supp. 2d 525, 529-30 (S.D.N.Y. 2013) (citing § 78u-4(b)(1)) (dismissing insider-trading claim where complaint "provide[d] insufficient particulars to give rise to an inference, sufficiently specific under the PSLRA, that the substance of those conversations entailed the passing of material, non-public information that caused specific trades").  This type of generalized allegation is plainly inadequate under the PSLRA.  *See In re 3Com Corp.*, 1999 WL 1039715, at *8  (dismissing Section 20A claim because plaintiffs "ha[d] not sufficiently pled with particularity non-public material information that the individual defendants possessed at the time they made their sales"); *In re Take-Two Interactive*, 551 F. Supp. 2d at 311 (dismissing Section 20A claims against trading insiders for failure to plead knowing possession where only non-conclusory allegations related to other defendants); *In re Enron Corp.*, 2016 WL 4095973, at *29 ("Moreover Plaintiffs fail to allege fact[s] as to when and what [defendants] allegedly 'knew'; thus it is impossible to determine whether any information remained nonpublic or material[.]").

A review of the 300-page FAC sheds little light on what "undisclosed improper business and accounting practices" IBEW alleges to have been knowable at the time of the June 10, 2015 trade. The FAC avers generally in undated allegations that the "Individual Defendants" had access to information about Valeant's operations by virtue of their positions (*e.g.*, FAC ¶¶ 395-96, 407-08, 562-63), but none identifies with particularity (i) *what* the information was and (ii) *when* it was knowable.

Courts dismiss insider-trading claims resting on similarly bare pleadings. In *Berger v. Ludwick*, for example, the Section 20A claims alleged that the defendants "had unlimited access to material non-public information" about a company "because of their positions," and thus "knew the adverse, non-public information about [the company's] business, finances, products, markets and present and future business prospects." Civ. No. 97-0728, 2000 WL 1262646, at *10 (N.D. Cal. Aug. 17, 2000). The court dismissed the claims because the plaintiffs had failed to "allege what inside information was known to individual defendants." *Id.* at *11. Likewise, in *In re Oak Technology Securities Litigation*, the plaintiffs identified numerous allegedly undisclosed "adverse material facts" that the plaintiffs claimed led to a stock drop. Civ. No. 96-20552, 1997 WL 448168, at *4 (N.D. Cal. Aug. 1, 1997). The court dismissed the complaint because it was "devoid of specific allegations of contemporaneous facts or information showing when the adverse facts arose." *Id.* By "fail[ing] to specify what material information [the defendants] possessed" when

they traded, the complaint fell short of Rule 9(b)'s and the PSLRA's requirements. *Id.* at \*12.

Here, too, there are no "specific allegations of contemporaneous facts or information showing" that the adverse facts to which IBEW alludes arose and were knowable *before* the ValueAct Funds' sale. The Court's April 2017 Opinion recognized as much. The Court rested its decision not to dismiss Count One on alleged misstatements that occurred *more than four months after* the Funds' trade. *See* Dkt. 216 at 23-24 (citing alleged misstatements between October 19 and October 26, 2015). The FAC merely recites facts that came to light *months after* the June 10, 2015 trade, and never alleges facts showing that those issues were knowable at the time of the trade (a hurdle rendered all the more difficult by the ValueAct Funds' *purchases* only six months prior). This pleading failure requires that Counts Three and Four be dismissed.

> b. *The Mere Potential for Ubben to Access Nonpublic Information Is Insufficient to Plead that the VAC Defendants Actually Possessed Such Information.*

Not only does IBEW fail to allege that any information existed and was knowable on June 10, 2015, IBEW does not allege that any of the VAC Defendants actually knew or possessed that information. Rather, IBEW seems satisfied to allege merely that Ubben had *access* to material nonpublic information (whatever it was) by virtue of his position on the Valeant board and its committees. *See* FAC ¶¶ 139, 140, 229(d), 564, 567. But IBEW cannot rely merely on Ubben's position to infer

that he possessed material nonpublic information.  *See, e.g.*, *Berger*, 2000 WL 1262646, at *10-11 (dismissing Section 20A claim alleging that defendants "had unlimited access to material non-public information because of their positions").

Nor can IBEW rely on Ubben's presence on the Finance & Transactions or Talent & Compensation Committees to show he knew of accounting issues with Philidor, because those committees were not responsible for either accounting or financial disclosures.  While the FAC implies that Ubben may have had some ability to inquire into facts regarding Philidor and its operations, IBEW fails to plead any facts showing that Ubben *learned that anything was improper* by June 2015.  *See In re Merck & Co., Inc.*, MDL No. 1658, 2011 WL 3444199, at *37 (D.N.J. Aug. 8, 2011) (emphasis added) (dismissing claims because "Section 20A expressly requires that the insider have traded the stock 'while in possession of material, nonpublic information'" and plaintiffs "rel[ied] heavily on *supposition* to assert that Defendants knew" material nonpublic information); *see also SEC v. Espuelas*, 579 F. Supp. 2d 461, 480-83 (S.D.N.Y. 2008) (emphasis added) (dismissing insider trading count for pleading only that president "knew the details" of relevant transactions and failing to plead knowledge of accounting improprieties where president was not an accounting professional and not expected to know that transactions violated GAAP).

IBEW's allegations based on Ubben's board position establish nothing more than that the VAC Defendants might have had access to material nonpublic

information (although the FAC does not identify what that information was and when Ubben learned of that information, *supra* at 18-19). Having access to material nonpublic information is very different from actually possessing it. The former is not enough to plead an insider-trading claim under Section 20A. *See Shah v. Zimmer Biomet Holdings, Inc.*, Civ. No. 16- 815, 2018 WL 4637247, at *21 (N.D. Ind. Sept. 26, 2018) ("In order to qualify as unlawful insider trading, a plaintiff must allege (and ultimately prove) that a defendant who trades in the securities at issue actually possessed material non-public information.").

Because the FAC fails to allege facts showing that any of the VAC Defendants actually possessed and knew of material nonpublic information when the ValueAct Funds sold Valeant stock, Count Three should be dismissed.

## II. The FAC Fails to Plead Particularized Facts Giving Rise to a Strong Inference of Scienter.

To state an insider-trading claim, IBEW must plead that the VAC Defendants knowingly possessed material nonpublic information when they traded, *see Teicher*, 987 F.2d at 120, and "[s]cienter [is] a necessary element" of the predicate Section 10(b) violation that Plaintiffs allege, *In re Merck & Co.*, 2011 WL 3444199, at *18. It is well established that "[t]he mere fact that [defendants] sold stock is insufficient to establish scienter." *City of Edinburgh*, 754 F.3d at 176. To create a strong "inference of scienter," IBEW must plead that the "sales are unusual in scope or timing." *In re Alpharma*, 372 F.3d 137, 152 (3d Cir. 2004) (citations omitted),

*abrogated on other grounds by Tellabs*, 551 U.S. 308.  IBEW's scienter allegations lack the particularity that Rule 9(b) and the PSLRA require.  *See* FAC ¶ 573 (alleging that Defendants "knowingly and recklessly traded Valeant stock on the basis, and while in possession, of the material, nonpublic information concerning Valeant's improper business and accounting practices").

In determining whether a trade is unusual or suspicious, courts generally consider:  the percentage of holdings sold; how the trades related to the defendant's trading history; and whether other company insiders were trading in the same timeframe.  *E.g.*, *Steamfitters Local 449 Pension Fund v. Alter*, 2011 WL 4528385, at *7-8 (E.D. Pa. Sept. 30, 2011); *see also In re Alpharma*, 372 F.3d at 152 (rejecting plaintiff's scienter argument in Section 10(b) misstatement case); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1037 (9th Cir. 2002) (rejecting inference of scienter where insider's sales "were only a small part of his total holdings," no other insiders sold during the class period, and sales were not close in time to market-moving announcements).  An examination of all those factors leads ineluctably to the conclusion that the FAC fails to plead facts giving rise to a strong inference that the VAC Defendants acted with scienter.

### a.  The FAC Fails to Allege Any Suspicious Trading History or Patterns.

Far from supporting the required strong inference of scienter, the trading history of the ValueAct Funds strongly compels the opposite inference:  the VAC Defendants did *not* trade on adverse material nonpublic information in June 2015.

Six months before they sold only a portion of their shares, the ValueAct Funds actually *purchased* 460,000 shares of Valeant stock in November and December 2014. *Supra* at 7-8. Thereafter, Valeant's stock price climbed 65%. *Supra* at 8. The value of the ValueAct Funds' position in Valeant also increased, causing that position to exceed 20% of the value of the Funds' total holdings. FAC ¶ 566. The ValueAct Funds responded by selling a portion of their holdings, retaining close to 80% of their total position in Valeant. This trading activity is far from suspicious or unusual. It is far more consistent with an inference that a multi-billion dollar investment fund rebalanced its positions. Such plausible, nonculpable inferences are precisely what the Supreme Court has taught that district courts should review on a motion to dismiss. *See supra* at 13-14.

The ValueAct Funds' December 2014 purchases occurred just days before Valeant allegedly purchased an option to acquire Philidor. FAC ¶ 108. According to IBEW's chronology, then, the Funds purchased Valeant stock knowing that Valeant was purchasing a house of cards. That theory makes no sense and cannot support the required cogent and compelling inference of scienter. *See In re Bristol-Myers Squibb,* 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (citing increase in holdings as "fact wholly inconsistent with fraudulent intent"). The FAC thus fails to allege with particularity any suspicious trading activity.

      *b. That the ValueAct Funds Continued To Hold Roughly 80% of Their Valeant Holdings Precludes a Strong Inference of Scienter.*

The ValueAct Funds' retention of nearly 80% of their Valeant holdings strongly negates an inference of scienter. *See supra* at 8; *In re Advanta*, 180 F.3d at 540-41 (no inference of scienter where insider "continued to hold a sizeable percentage of [company's] outstanding stock" after sale, "suggest[ing] [he] had every incentive to keep [company] profitable"). Courts routinely hold that a defendant's retention of substantial holdings in a company's stock—like the ValueAct Funds' roughly 80% retention here—rebuts an inference of scienter from stock sales. *See, e.g.*, *In re Party City*, 147 F. Supp. 2d 282, 313 (D.N.J. 2001) (granting motion to dismiss and finding that "[l]ow aggregate sales and large retained aggregate holdings rebut an inference of motive, even where some defendants have sold significant holdings").[9]

IBEW also does not even attempt to explain how the VAC Defendants could have been plotting to profit through insider trading, when the ValueAct Funds' *15 million-share* retained holdings declined by approximately *$2.785 billion* from the

---

[9]    *See also In re Advanta*, 180 F.3d at 541 (affirming dismissal and noting that retention of significant holdings was "[f]ar from supporting a 'strong inference' that defendants had a motive to capitalize on artificially inflated stock prices"); *In re Gildan Activewear, Inc.*, 636 F. Supp. 2d 261, 271 n.5 (S.D.N.Y. 2009) (granting motion to dismiss and finding no strong inference of scienter where defendant sold 22.5% of holdings); *In re Keyspan Corp.*, 383 F. Supp. 2d 358, 382-83 (E.D.N.Y. 2003) (granting motion to dismiss and finding sale of less than 20% of holdings insufficient to infer scienter).

trading price on June 10, 2015.  *See Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d. 287, 299 (S.D.N.Y. 2010) ("It is nonsensical to impute dishonest motives" to an individual defendant who "suffered significant losses in [his] stock holdings.").  These retained holdings negate any inference of scienter.

        c.  *The Timing of the Sale Does Not Give Rise to a Strong Inference of Scienter.*

IBEW hopes to allege that the ValueAct Funds' June 10, 2015 sale "was suspicious because they purchased the shares at an average cost of $11, held the shares for nine years, had not previously sold Valeant stock in more than four years, and timed the sale to maximize profit from Valeant's then artificially inflated stock price, which was trading near all-time highs . . . ."  FAC ¶ 568.  But this allegation says nothing about why the Funds sold in June 2015, and the low purchase price (mostly in years before the Class Period) and high sale price gives rise to no improper inference.  IBEW fails to allege anything suspicious about the timing of the Funds' June 10, 2015 sale.

The ValueAct Funds' June 2015 trade was at once too late and too early to give rise to a strong improper inference.  It was too late because IBEW apparently alleges that the VAC Defendants knew in December 2014 that Philidor and Valeant were a house of cards (FAC ¶ 108), but held the stock for *six more months*, risking massive losses.  And it was too early because the FAC acknowledges that the first

negative disclosure by Valeant occurred *nearly four months* after the ValueAct Funds sold. *See* FAC ¶¶ 484 (alleging post-trade stock-drop after "[t]he truth began to emerge on September 28, 2015"). Courts routinely reject a compelling inference of scienter where, as here, plaintiffs seek to ascribe improper motive to a trade occurring *months* before negative public disclosures. *See In re Hertz Global Holdings, Inc.*, Civ. No. 13-7050, 2017 WL 1536223, at *22 (D.N.J. April 27, 2017) (concluding stock sales four months before negative disclosure insufficient to raise inference of scienter); *see also In re Bausch & Lomb, Inc.*, 592 F. Supp. 2d 323, 345 (W.D.N.Y. 2008) ("[S]tock sales are not indicative of scienter when they are more than two months before the announcement in question.") (quoting *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 154 n.24 (D. Conn. 2007), *aff'd,* 312 F. App'x 400 (2d Cir. 2009)); *In re Party City*, 147 F. Supp. 2d at 313 (finding stock sales three, four, and twelve months before negative disclosure insufficient to raise inference of scienter).

> d.  *The Absence of Trading by Other Defendants or Directors Undermines Any Potential Strong Inference of Scienter.*

Further precluding any inference of scienter is IBEW's failure to plead that any other individual defendant or director with access to the same allegedly material nonpublic information traded on that information. The FAC lumps together numerous individual defendants in alleging that they all had access to the same information indicating that Valeant's public statements were untrue. *See, e.g.*, FAC

¶¶ 407-08.  The FAC, however, does not allege that any other director or individual

defendant sold stock.  The absence of such sales further reflects IBEW's failure to

plead scienter.  *See In re Alpharma*, 372 F.3d at 152 (declining to infer scienter

where "some key insiders sold no stock during the class period"); *see Acito v.

IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) ("[t]he fact that the other

defendants did not sell their shares . . . undermines … claim" of scienter).

> e.  *The Allegations Admit an Innocent Inference for the Sale that Is Far
> More Compelling than Any Inference of Fraudulent Intent.*

Whether read individually or in its entirety, the allegations acknowledge the

far more cogent and compelling non-fraudulent explanation for the June 10, 2015

sale: to "limit[] concentration in any particular investment" in the ValueAct Funds.

¶ 565; *see Tellabs*, 551 U.S. at 323-24 (requiring plaintiffs to plead facts raising

"cogent and compelling" inference of scienter "at least as compelling as any

opposing inference one could draw from the facts alleged").

Valeant's stock price had skyrocketed 65% by June 2015 from the ValueAct

Funds' last Valeant purchase in December 2014, leaving the Funds with an outsized

*$4.2 billion* position in Valeant alone.  It stands to reason that ValueAct Capital, like

any prudent investment adviser, would look to "manage down" (FAC ¶ 565) that

enormous stake.  And while IBEW quibbles with whether the ValueAct Funds had

consistently followed a strict 20% limit for any individual investment, FAC ¶ 566,

they cannot deny that there has to be *some concentration level* beyond which any

responsible investment fund must consider selling off.  The June 10, 2015 sale reduced the ValueAct Funds' $4.2 billion position to $3.28 billion, a dollar amount that is still greater than the ValueAct Funds' December 2014 holdings.  *Supra* at 8. The sale, therefore, (i) is not inconsistent with the ValueAct Funds' history or previous trading patterns, and (ii) is fully consistent with prudent portfolio management.

For the foregoing reasons, the FAC fails to plead particularized facts giving rise to a strong inference of scienter that is as compelling as any contrary, innocent inferences.  Count Three should therefore be dismissed.

## III. IBEW Fails to Plead It Purchased Valeant Stock Contemporaneously with the ValueAct Funds' Sale.

IBEW's Section 20A claim, and consequently the derivative Section 20(a) claim, also fails for failure to plead a "contemporaneous" purchase.  In enacting Section 20A, Congress limited recovery to those who purchased "contemporaneously" with an insider's sale.  *See* 15 U.S.C. § 78t-1(a).  Courts in this Circuit have uniformly interpreted that term to "requir[e] trading to occur within a day."  *See In re Able Labs.*, Civ. No. 05-2681, 2008 WL 1967509, at *26 (D.N.J. Mar. 24, 2008) (Greenaway, J.); *see also, e.g.*, *Copland v. Grumet*, 88 F. Supp. 2d 326, 338 (D.N.J. 1999) (holding that "to satisfy the 'contemporaneous' requirement . . . a plaintiff must at [the pleading stage] plead that he or she bought stock on the same dates on which the defendant's sales took place"); *In re Merck & Co.*, Civ. No.

05-1151, 2015 WL 2250472, at *26-27 (D.N.J. May 13, 2015) (citing *Able*'s definition of "contemporaneously" approvingly); *Alter*, 2011 WL 4528385, at *12 (agreeing with same-day rule in *Able* and *Copland*).

The court's decision in *Alter* is instructive.  There, the plaintiff purchased stock on three separate days, each of which was the day after a defendant-insider's sales.  2011 WL 4528385, at *13.  Recognizing that these sales were close in time to the plaintiff's purchases, the court nevertheless dismissed the Section 20A claims because the purchases and sales "did not occur on the same day." *Id.*

Here, June 10, 2015 is the only trading date that appears in the documents on which IBEW relies to plead its Section 20A claim, and in judicially noticeable SEC filings.  *See supra* at 8-10.  IBEW does not allege it purchased Valeant stock on that day.  It alleges it purchased on June 11, 2015.[10]  Because IBEW did not purchase contemporaneously with the ValueAct Funds' sale, Counts Three and Four must be dismissed.  *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

---

[10]     TIAA and Tucson do not attempt to allege a June 10, 2015 purchase date.  *See Barnard v. Verizon Comms., Inc.*, 2011 WL 294027, at *7 (E.D. Pa. Jan. 31, 2011) (dismissing Section 20A claim for failure to plead "trade dates").

IBEW tries to manufacture a qualifying purchase by asking the Court to speculate that ValueAct *might* have sold on June 11, 2015 (or on some unspecified day thereafter).  This conjured claim is based on two premises:  (1) IBEW's false characterization of ValueAct Capital's press release as saying that the stock sale "was executed through 'brokers' transactions on the NYSE,' meaning the shares were sold into the open market through brokers"; and (2) its allegation that the volume of open-market Valeant-stock NYSE trading on June 10 and June 11, 2015, was 2.8 million shares each day.  FAC ¶ 570.  But IBEW cannot rely on unsupported inferences and speculative assertions.  *See Bright v. Westmoreland Cty.*, 380 F.3d 729, 735 (3d Cir. 2004) (courts "should reject 'legal conclusions,' 'unsupported conclusions,' 'unwarranted references,' [and] '*unwarranted deductions*'") (emphasis added); *Foster v. Denenberg*, 616 F. App'x 472, 475 (3d Cir. 2015) (finding "speculative" assertions "insufficient to survive a Rule 12(b)(6) motion"). It must instead make concrete, non-conjectural allegations regarding the dates on which the ValueAct Funds traded.  *See Barnard*, 2011 WL 294027, at *7 (dismissing Section 20A claim for absence of "trade dates or prices or volumes").

Moreover, the inferences IBEW asks the Court to draw are flatly contradicted by documents the FAC incorporates by reference and other judicially noticeable documents.  *See Durant v. Horton*, Civ. No. 07-93, 2008 WL 2510661, at *2 (D.N.J. June 19, 2008) (Greenaway, J.) (citation omitted) ("However, if facts that are alleged to be true in a complaint are contradicted by facts that can be judicially noticed, the

-30-

contradicted facts in the complaint are not to be deemed as true upon consideration of the motion to dismiss.").  The VAC Defendants' SEC Form 4 and Schedule 13D establish that the ValueAct Funds sold on June 10, 2015.  *See supra* at 8-10; *see also Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (taking judicial notice of and considering, on motion to dismiss, defendants' trading activities as reflected in SEC Form 4).

The June 11, 2015 press release on which IBEW hinges its contemporaneity allegation also demonstrates that the sales occurred on June 10, 2015.  But IBEW fails to appreciate the timing of the press release, then it blatantly misquotes the release, and then it reaches conclusions that contradict that release.  The release cannot support trading on June 11, 2015 or later, because it was issued at 9:28 ET, *before* the NYSE market opening for trading, and stated that the ValueAct Funds "*ha[ve] sold* 4.2 million shares" (emphasis added).  Portnoi Decl. Ex. 10.  IBEW then misquotes the press release to state that the ValueAct Funds sold "through brokers' transactions on the NYSE," suggesting that the sales were placed in the open market through brokers.  But the press release states that the Funds sold "in brokers' transactions."  *Id.*  And because the sales were made privately to brokers, the trading volume on which IBEW relies is also irrelevant.

Because IBEW did not purchase contemporaneously with the ValueAct Funds sales, Count Threes and Four must be dismissed.

**IV.    The Court Should Dismiss Count One Against Ubben.**

The Court should also dismiss Count One against Ubben, the Exchange Act Section 10(b) claim, because the FAC does not contain sufficient particularized allegations (i) that Ubben made any false or misleading statements or (ii) providing a strong inference of his scienter. *See McCabe v. Ernst & Young LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (Section 10(b) claim requires pleading, among other things, "a material misrepresentation (or omission)" and "scienter, *i.e.*, a wrongful state of mind"). Although the Court declined to dismiss this Count against the "Director Defendants" and "Exchange Act Defendants," the Court does not appear to have separately or squarely addressed Ubben (Dkt. 216), and is not precluded from doing so now. *See supra* n.1. The Court's reasoning related to events occurring after Ubben's August 2015 resignation from Valeant's board. Dkt. 216 at 19-24. And the only relevant allegation properly attributable to Ubben is that he signed the 2014 Form 10-K, which alone is insufficient to attribute to him either an actionable misstatement or a strong inference of scienter. By asserting new insider-trading claims via last-minute amendment, Plaintiffs have opened the door to the Court to revisit its ruling.

> a. *The Only Allegedly False and Misleading Statements Attributable to the Director Defendants Were Made Months After Ubben Resigned.*

In its April 2017 Opinion, the Court ruled that Plaintiffs had sufficiently attributed actionable misstatements to "the Director Defendants," without discussing Ubben individually. Dkt. 216 at 23. The FAC's defined term "Director Defendants"

includes Ubben, but is used imprecisely to describe conduct allegedly occurring long after his August 2015 resignation from the board. *E.g.*, FAC ¶ 228. And the alleged misstatements the Court discussed and attributed to the "Director Defendants" relate to presentations and releases in October 2015—*months after* Ubben left the board. Dkt. 216 at 23. Relying on *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), the Court concluded that allegations regarding the October 2015 releases and presentations were sufficient to show that the Director Defendants had adopted the alleged financial misstatements. Dkt. 216 at 23-24. There two documents— an October 19, 2015 presentation explicitly attributed to the "full Board" and an October 26, 2015 Valeant press release reviewed by the "Audit and Risk Committee and the full Board of Directors"—allegedly made misstatements about and defended accounting practices. *Id.* But *Janus* does not support using these presentations to attribute actionable misstatements to Ubben, because he simply wasn't there. Thus, he could not have had "ultimate authority over" Valeant's defense of the Philidor accounting, "including its content and whether and how to communicate it," as required for attribution under *Janus*, 564 U.S. at 142.

The only allegation against Ubben is that he signed the 2014 Form 10-K. FAC ¶ 51. But even assuming there is a material misstatement in that Form, which the Court has not found to be pleaded, Ubben's signature would not be sufficient to plead an Exchange Act claim. *See In re Constar Intern.*, 585 F.3d 774, 782 (3d Cir. 2009) (citations omitted) ("The error in this reasoning is that plaintiffs' case is

brought under § 11 of the Securities Act, rather than § 10(b) of the Exchange Act. A prima facie case under § 11 is straightforward, requiring only a showing of a material misrepresentation or omission from a defendant's registration statement."). Third Circuit precedent holds that it is impermissible "group pleading" to hold signatories to SEC filings liable under the Exchange Act based only on a general notion that signatories as a group have authority to control the filing's content. *Winer Family Trust v. Queen*, 503 F.3d 319, 335-36 (3d Cir. 2007) ("PSLRA requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions."). Plaintiffs are required to plead particularized facts showing that specific misstatements in the 2014 Form 10-K should be attributed to Ubben. *Id.* They understandably cannot, because Ubben was only a Valeant director for three of the twelve months (October-December 2014) that the 2014 Form 10-K addresses.

### b. *No Allegation Raises a Strong Inference of Ubben's Scienter.*

As with the misstatement allegations, the scienter allegations largely postdate Ubben's tenure on the board. Even relying on a "holistic review," Dkt. 216 at 19-21, there are no allegations to support a strong inference of scienter.

*First*, the only fact going to Ubben's scienter is that the 2014 Form 10-K he signed was restated after his tenure. This is insufficient as a matter of law, especially since Ubben was only a Valeant director for three of the twelve months that the 2014 Form 10-K covered. *Second*, there are numerous innocent explanations for why

-34-

Ubben signed the 2014 Form 10-K, including that he relied on auditors and management. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009) ("A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference.").

i.   *Plaintiffs' Scienter Allegations Are Inapplicable to Ubben.*

None of the allegations that may support scienter as to other defendants applies to Ubben.  In defending the Section 10(b) claims against the Individual Defendants, Plaintiffs cited six types of scienter allegations:  (1) the Exchange Act Defendants' direct roles in deceptive practices; (2) the Exchange Act Defendants' senior roles, the specificity of their statements, and the Core Operations Doctrine (which cannot apply to an outside director like Ubben, uninvolved in the company's day-to-day operations, *Palladin Partners v. Gaon*, Civ. No. 05-3305, 2006 WL 2460650, at *12-13 (D.N.J. Aug. 22, 2006)); (3) the Exchange Act Defendants' pattern of denials and subsequent admissions; (4) the Exchange Act Defendants' failure to pursue remedies; (5) Valeant's restatement and material weaknesses in internal controls; and (6) the volume of executive and director departures, the Individual Defendants' compensation, and Valeant's dependence on acquisitions. Dkt. 216 at 20.  None of these bases applies to Ubben.

**Direct role in deceptive practices, pattern of denials/admissions, failure to pursue remedies**.  Plaintiffs have not specifically alleged that Ubben played any "direct role[ ] in deceptive practices."  *See* Dkt. 216 at 20.  Indeed, the Court cited only one paragraph that even mentions Ubben—and the Court did so in its summary of the Complaint, not in its legal analysis.  *See* Dkt. 216 at 16.  That paragraph merely notes Ubben's resignation as a Valeant director and that the ValueAct Funds had sold some Valeant stock two months earlier.  FAC ¶ 451.[11]

Also unavailing are the FAC's blanket assertions that all defendants "were personally aware of, designed, and implemented the deceptive practices" "or were severely reckless in disregarding, the improper and deceptive tactics employed by Philidor by virtue of their frequent meetings, effective control over, and contractual right to review and approve Philidor's records and policies."  *See, e.g.*, FAC ¶ 395.  While these blanket assertions are inadequate, *see In re Suprema Specialties, Inc.*, 438 F.3d 256, 281-82 (3d Cir. 2006) (dismissing claims against outside directors where "[r]ecklessness [was] pled against [them] as a group, based on their position, without any attempt to link specific individuals to specific instances of reckless conduct"), they largely concern alleged events and conduct that occurred before or

---

[11]     Just as the ValueAct Funds' stock sale does not give rise to a strong inference of scienter sufficient to support a Section 20A claim (*supra* at 21-28), it likewise does not move the needle in Plaintiffs' Section 10(b) claim against Ubben.  *See In re Alpharma*, 372 F.3d at 152-53 (dismissing Section 10(b) claim against insiders where plaintiffs failed to allege that insiders' stock sales were unusual in timing or scope); *In re Hertz Global Holdings*, 2017 WL 1536223, at *22 (same).

after Ubben's board tenure.  For example, to demonstrate a "pattern of denials and subsequent admissions," Plaintiffs point to Valeant's responses to (i) Allergan between April 22, 2014, and October 20, 2014 (FAC ¶¶ 163, 168-71, 173, 175, 181-82, 185), (ii) Citron on October 21, 2015 (*id.* ¶¶ 222, 226-27, 234, 255-95), and (iii) various investigative journalists beginning in October 2015 (*id.* ¶¶ 255-95). Only the October 20, 2014 presentation occurred while Ubben was on the board— *for a mere 19 days*.  Plaintiffs do not allege that Ubben (or even the board) played any role in preparing that document or its statements.  *Id.* ¶ 185.  And although Ubben was on the board during the December 2014 Philidor transaction, the FAC does not plead that he reviewed or approved of the accounting; rather, it alleges that the accounting was reviewed by a committee on which he did not serve.  *Id.* ¶¶ 51, 229(d);  *supra* at 6-7.

**Signing Valeant's 2014 Form 10-K**.  Just as the allegation that Ubben signed a Valeant Form 10-K that was later restated is insufficient to plead a misstatement, *see supra* at 34-35, it is likewise insufficient to plead scienter.  "[A]llegation[s] that the Outside Directors . . . had access to unspecified business records and a duty to review them does not give rise to a strong inference that the Outside Directors individually knew of or recklessly disregarded particular wrongful recognitions of revenue."  *In re Suprema*, 438 F.3d at 282.[12]  Moreover, the FAC demonstrates that

---

[12]     *See also In re Aetna Inc.*, 34 F. Supp. 2d 935, 953-54, 956 & n.15 (3d Cir. 1999) (dismissing 10(b) claim against outside director that alleged accounting fraud

the timing and circumstances of Ubben's resignation were unrelated to Plaintiffs'
fraud allegations.  He resigned more than a month before public scrutiny of Valeant
even began in late September 2015.  *Compare* FAC ¶¶ 51, 451 (Ubben resigned on
August 19, 2015) *with* FAC ¶ 240 ("In September 2015, the truth began to emerge
regarding Valeant's true business, operations and prospects through a series of
partial disclosures").  These circumstances belie any suggestion that Ubben left the
board because he knew that something was wrong with the financial statement he
had signed.

> ### ii. There Are Other, More Compelling Opposing Inferences that Can Be Drawn from the Allegations Against Ubben.

The most logical inference from the few facts specifically alleged against
Ubben is not that he intentionally or recklessly ignored GAAP requirements in
signing Valeant's 2014 Form 10-K, but rather that Valeant's later-restated GAAP
interpretations—especially those related to transactions that Valeant's accounting

---

and GAAP violations and rejecting attempt to "consistently lump all of the
individual Defendants together for the purpose of pleading scienter"); *Alter*, 2011
WL 4528385, at *10 ("[T]he Court cannot infer that Outside Director Defendants
had knowledge that the SEC filings they signed were false or misleading, or that
these Defendants were reckless as to the truth of the filings."); *Wojtunik v. Kealy*,
394 F. Supp. 2d 1149, 1168-69 (D. Ariz. 2005) (outside director's signature on filing
containing alleged GAAP violations insufficient to raise inference absent "factual
allegations setting forth what information was presented to the outside directors . . .
that put them on actual or constructive notice of fraudulent activity."); *In re Enron
Corp.*, 258 F. Supp. 2d 576, 625 n.55 (S.D. Tex. 2003) (requiring that plaintiff
"establish scienter by more than the fact that a significant restatement has been
made").

team had deemed non-material (FAC ¶¶ 193, 224, 688)—were never specifically discussed with Ubben.  *See, e.g.*, *In re China North East Petroleum Holdings, Ltd.*, Civ. No. 10-4577, 2014 WL 7236914, at *3 (S.D.N.Y. Dec. 11, 2014) (allegation that outside director signed a later-restated SEC filing does not create the requisite scienter inference; rather the "most logical inference" from such facts is that the outside director was "acting in good faith"); *In re Livent, Inc.*, 78 F. Supp. 2d 194, 219-20 (S.D.N.Y. 1999) (allegation that outside director failed to discover accounting fraud did not raise requisite scienter inference because it was plausible that he merely "relied on [external auditor] to perform the audit and on the representations of management").  This far more compelling, non-culpable inference requires that the Court dismiss Count One against Ubben.  *Tellabs*, 551 U.S. at 323-24.

## CONCLUSION

ValueAct Capital and the ValueAct Funds do not belong in this case, and Ubben's involvement should be limited to Count Nine.  Counts Three and Four must be dismissed because: (i) the FAC is silent as to what material, nonpublic information the VAC Defendants possessed when they traded; (ii) IBEW fails to plead with particularity that the VAC Defendants sold Valeant stock with the requisite scienter; and (iii) IBEW fails Section 20A's contemporaneous-trading requirement.  Count One should be dismissed as to Ubben because the paltry allegations specifically directed at him—which are now in proper focus—do not

allege facts sufficient to show that Ubben made any misstatements or acted with scienter in connection with any Valeant statements.

Dated:  October 31, 2018

/s/  Allen Burton
Allen Burton (N.J. Bar No. 020742001)
Jonathan Rosenberg (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile:  (212) 326-2061

Margaret L. Carter (admitted *pro hac vice*)
Dimitri Portnoi (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 10017
Telephone: (213) 430-2000
Facsimile:  (213) 430-6407

*Attorneys for Jeffrey W. Ubben, ValueAct Capital Management L.P., VA Partners I, LLC, ValueAct Holdings, L.P., ValueAct Capital Master Fund, L.P., and ValueAct Co-Invest Master Fund, L.P.*

-40-