UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Civil Action No. 15-7658 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**Shipp, District Judge**

This matter comes before the Court on Plaintiff Timber Hill LLC's ("Timber Hill") Motion for Relief from Consolidation Order. (ECF No. 322.) Lead Plaintiff Teachers Insurance and Annuity Association of America ("TIAA") and named Plaintiff Tucson Supplemental Retirement System ("Tucson") (collectively, "Lead Plaintiff") opposed. (ECF No. 323.) Defendants Valeant Pharmaceuticals International, Inc. ("Valeant"), Robert L. Rosiello, and Ari S. Kellen responded to the Motion, and Defendants J. Michael Pearson, Howard B. Schiller, Tanya Carro, and Deborah Jorn (collectively, "Defendants") joined in the response. (ECF No. 324.) Timber Hill replied (ECF No. 325), and Lead Plaintiff sought leave to file a Sur-Reply and filed the Sur-Reply (ECF No. 329). The Court has carefully considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated herein, the Court denies Timber Hill's Motion for Relief. The Court, accordingly, also denies Timber Hill's Motion for Appointment as Lead Plaintiff (ECF No. 334) and Lead Plaintiff's Motion to Strike (ECF No. 335) as moot.

**I.    Background**

On June 6, 2018, Timber Hill filed a two-count putative class action Complaint against Defendants alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"). (*Timber Hill LLC v. Valeant Pharm. Int'l., Inc.*, No. 18-10246 (D.N.J.), Compl.

¶¶ 449-462, ECF No. 1 ("Timber Hill Complaint").) Pursuant to Federal Rule of Civil Procedure 23, Timber Hill seeks to represent a class of "all persons or entities that purchased call options on Valeant common stock and/or sold put options on Valeant common stock during the Class Period, and were damaged thereby."[1] (*Id.* at ¶ 444.) Upon filing the complaint, Timber Hill joined 29 other actions filed in this Court against Defendants and other persons and entities, alleging similar violations of the 1934 Act, and other causes of action. (*See* Case Management Order No. 1, ECF No. 369 (noting that "30 individual suits have been filed in this Court involving similar issues of law and alleged facts.").)

On June 8, 2018, Lead Plaintiff notified the Court of the filing of Timber Hill's Complaint and requested that the Court consolidate the *Timber Hill* matter into this consolidated class action. (*See* June 8, 2018 Correspondence, ECF No. 317.) Lead Plaintiff's request was made pursuant to the Court's May 31, 2016 Order consolidating multiple actions into this action and appointing TIAA as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). (Order Consolidating the Related Actions, ECF No. 67.) The Court's Order directed that "[a]ll securities class actions subsequently filed in, or transferred to this District shall be consolidated into this action," and applied to "every such action, absent an order of the Court." (*Id.* at 1.) Pursuant to the Order, any party who objected "to such consolidation, or to any other provision of this Order, must file an application for relief from [the] Order within ten days after the date on which a copy of [the] Order is mailed to the party's counsel." (*Id.* at 1-2.)

On June 18, 2018, Timber Hill timely sought relief from the Consolidation Order. (Mot. for Relief, ECF No. 322.) Lead Plaintiff opposed on July 2, 2018. (Pls.' Opp'n, ECF No. 323.) Defendants filed a response on the same day. (Defs.' Response, ECF No. 324.) Timber Hill

---

[1] The Class Period is from January 4, 2013 through August 11, 2016. (Timber Hill Compl. at 1.)

2

replied on July 9, 2019. (Pl.'s Reply, ECF No. 325.) Lead Plaintiff sought leave to file a Sur-Reply and filed a Sur-Reply on July 13, 2018.[2] (ECF No. 329.)

## II. **Legal Standard**

Federal Rule of Civil Procedure 42 provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42. The Private Securities Litigation Reform Act ("PSLRA") requires district courts to consider any motions to consolidate for pretrial purposes or for trial, prior to appointing a "lead plaintiff" where "more than one action on behalf of a class asserting substantially the same claim or claims arising under" the 1934 Act. 15 U.S.C. §78u-4(a)(3)(b)(ii). Consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 298 n.12 (3d Cir. 2005) (citations and internal quotations marks omitted). The purpose of consolidation is "to provide for judicial efficiency by streamlining pretrial proceedings, minimize duplication of effort, and avoid conflicting outcomes in cases involving similar legal and factual issues." *Hasher v. Corzine*, No. 07-1212, 2008 WL 11338671, at *2 (D.N.J. June 4, 2008) (citation omitted). The district court has broad powers, pursuant to Rule 42, if in the court's discretion "consolidation would facilitate the administration of justice." *Liberty Lincoln Mercury, Inc. v.*

---

[2] The Court hereby grants Lead Plaintiff's request for leave to file a Sur-Reply and will consider the arguments made therein.

3

*Ford Mktg.*, 149 F.R.D. 65, 80 (D.N.J. 1993) (quoting *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991)).

When deciding whether to consolidate actions under Rule 42, the court must balance the "risks of prejudice and possible confusion" with "the risk of inconsistent adjudications of common factual and legal issues, the burden on [the] parties [and] witnesses[,] . . . the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned [for] the single trial [and] multiple trial alternatives." *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 444 (D.N.J. 1998) (citations omitted). When considering whether to grant relief from a previous consolidation order, the court considers the same issues it would consider if presented with a motion to consolidate. *See In re Lucent Techs. Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 480-82 (D.N.J. 2001). The court's inquiry into the facts and circumstances of the case and the decision on consolidation is "highly contextual." *In re Cent. European Distrib. Corp. Secs. Litig.*, No. 11-6247, 2012 WL 5465799, at *7 (D.N.J. Nov. 8, 2012) (quoting Wright & Miller, Consolidation–Discretion of Court, 9A Fed. Prac. & Proc. Civ. § 2383 (3d ed.)).

### III. The Parties' Positions

Timber Hill objects to consolidation of its action with this matter because "plaintiffs in [this action] have not sought to represent and protect the interests of investors who" Timber Hill would like to represent. (Pl.'s Moving Br. 1, ECF No. 322-1.) Timber Hill seeks to represent "persons and entities that purchased call options on [Valeant] common stock and/or sold put options on Valeant common stock during the period January 4, 2013 through August 11, 2016 [("derivatives traders")]. . . ." (Timber Hill Compl. at 1.) Timber Hill asserts that Lead Plaintiff and its counsel will "not protect the interests of derivatives traders due to potentially conflicting positions regarding, among other things, the allocation of any recovery." (Pl.'s Moving Br. at 3.)

4

As an example of the potentially conflicting positions, Timber Hill argues that calculation of the derivatives traders' damages "will likely require different experts using different methodologies than those employed by the" Lead Plaintiffs. (*Id.*) Timber Hill also asserts that the derivatives traders will seek to recover from "the common set of defendants as the purchasers of Valeant equity securities and senior notes, and 'a single lead plaintiff will be unable to have undivided loyalties to vigorously pursue recovery on behalf of both classes due to the inherent conflict that is caused by the competition for the same limited funds for recovery." (*Id.* at 4 (citing *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 611 (W.D. Okla. 2009)).)

Instead of consolidation, Timber Hill argues that coordination is proper. (*Id.* at 5.) Timber Hill cites to the proceedings in *Basile v. Pershing Square*, No. 14-02004 (C.D. Cal.) ("*Basile*") in support of this proposition. (*Id.* at 4.) Timber Hill notes that the *Basile* defendants "opposed plaintiffs' motion for class certification on the ground that common stock plaintiffs had failed to join necessary parties, namely, derivatives traders." (*Id.*) Timber Hill also highlights that the *Basile* court ordered a hearing on the issue of consolidation, ultimately decided to maintain two separate trial dates—one trial for the common stock plaintiffs and one trial for the derivatives traders—and ordered that the parties coordinate discovery, but did not consolidate the cases. (*Id.*)

TIAA advances four arguments in opposition to Timber Hill's motion: (i) consolidation is proper because Timber Hill's claims are "nearly identical to TIAA and Tuscon's, raising the same issues of fact and law," (ii) the current putative class "includes purchasers of all 'Valeant equity securities'" and includes the derivatives traders Timber Hill seeks to represent, (iii) Timber Hill is inappropriately seeking to avoid the consequences of missing the deadline for being appointed to lead the class, and (iv) TIAA adequately represents the entire class which includes the class Timber Hill seeks to represent. (*See generally* TIAA's Opp'n, ECF No. 323.) On the first point, TIAA

argues that Timber Hill has acknowledged that "the issues presented in the two actions overlap," and that Timber Hill's complaint "largely reproduce[es]" TIAA and Tuscon's Consolidated Complaint with Timber Hill's complaint copying "approximately 170 paragraphs of the Consolidated Complaint almost verbatim."[3] (*Id.* at 5-6.)

Next, TIAA asserts that the current class of "purchasers of all 'Valeant equity securities'" includes the putative class of derivatives traders. (*Id.* at 9.) TIAA cites to the definition of a "security" in the 1934 Act which states that a security is defined as "any note, stock, treasury stock, security future, security-based swap, bond, debenture, . . . [and] *any put, call, straddle, option,* or privilege . . . ." (*Id.* (quoting 15 U.S.C. §78c(a)(10)).) TIAA also asserts that courts routinely reject attempts to multiply litigation or carve out separate classes for "niche plaintiffs." (*See id.* at 10-14.) Per TIAA, moreover, the overlap between the class periods reflects the duplicative natures of the actions and supports maintaining consolidation. (*Id.* at 16.)

TIAA's third argument is that Timber Hill is inappropriately attempting to avoid the PSLRA's lead plaintiff notice requirements by carving out a subclass. TIAA's position is that the proper notice was issued two years ago, received a considerable response, and that Timber Hill cannot avoid the consequences of missing the deadline by "seeking to represent a portion of the class." (*Id.* at 18-19.) Notably, to TIAA, one of the firms that responded, "specifically sought to represent derivatives traders, but subsequently withdrew in light of TIAA's larger losses." (*Id.*) TIAA further argues that TIAA's losses of $90 million, including $1 million in losses from options investments, is larger than Timber Hill's asserted losses. (*Id.* at 19.) Accordingly, even if Timber

---

[3] On June 24, 2016, Lead Plaintiff filed a Consolidated Complaint. (*See* Consolidated Compl., ECF No. 80.) On September 20, 2018, Lead Plaintiff filed an Amended Complaint. (First Am. Compl., ECF No. 352 ("FAC").) The putative class definition is the same in both. (*Compare* Consol. Compl. ¶ 1 *with* FAC ¶ 1.)

6

Hill had moved during the lead plaintiff notice period, Timber Hill would not have been appointed as lead plaintiff because the PSLRA creates a rebuttable presumption that the plaintiff with the "largest financial interests in the relief sought by the class" is "the most adequate plaintiff." (*Id* at 19-20.) TIAA also argues that Timber Hill's Complaint shows "an apparent gain of $2,896,037." (*Id.* at 19.)

TIAA's final argument is that TIAA is adequate to represent the entire class which includes the class Timber Hill seeks to represent. (*Id.* at 20.) TIAA argues that TIAA's interests are aligned with the derivatives traders because TIAA suffered losses of approximately $1 million related to derivative trading. (*Id.* at 21.) TIAA rejects the notion of an interclass conflict and argues that "[d]ifferences in the class period do not represent a class conflict when the complaints' allegations, as here, involve the same facts and law." (*Id.* at 23-24.) Finally, TIAA argues that any differences in damages between the derivatives traders and the class the Lead Plaintiff represents, "do not undermine consolidation because they are not a barrier to class certification." (*Id.* at 24.)

Timber Hill responds to TIAA's arguments by asserting that TIAA's position stands and falls on the premise that Timber Hill's proposed class of derivatives traders is encompassed by the class definition in TIAA's Consolidated Complaint. Timber Hill argues that TIAA has ignored an operative term—"equity"—in the class definition and TIAA's citation to the 1934 Act's definition of security is misplaced. (Timber Hill's Reply 4, ECF No. 325.) Timber Hill asserts that the 1934 Act and Third Circuit case law use the term "equity securities" and "derivative securities" to differentiate from "securities." (*Id.* (citing *Morrison v. Madison Dearborn Cap. Partners III, L.P.*, 463 F.3d 312, 314-15 (3d Cir. 2006).) Timber Hill points out that TIAA's sworn certification to the Consolidated Complaint does not include any transaction in derivative securities. (*Id.* at 5.) Moreover, Defendants have asserted that they did not understand TIAA to "represent traders in

7

options."[4] (*Id.*) Timber Hill also cites to TIAA's PSLRA Notice that announced a class action on behalf of "purchasers of Valeant Pharmaceuticals International." (*Id.* at 6.) Finally, Timber Hill asserts that TIAA purports to represent only "a class of purchasers, while Timber Hill's class definition includes sellers of put options." (*Id.* (emphasis omitted).) This leads to the conclusions that (i) Lead Plaintiff does not, and never did, represent the sellers Timber Hill seeks to represent or (ii) Lead Plaintiff "has elected not to pursue claims on behalf of put option sellers." (*Id.*)

Timber Hill argues that the remainder of TIAA's arguments fail because of the faulty premise regarding the class definition. (*Id.* at 7-9.) Timber Hill's final argument is that failure to provide relief would result in prejudice to the putative class of derivatives traders and "would have the purpose and effect of depriving these derivatives class members of their due process rights." (*Id.* at 9.) Citing to the numerous opt-out actions and ongoing government actions, Timber Hill argues that there will "be no great burden on the parties should the actions maintain separate identities." (*Id.*)

TIAA's Sur-Reply addresses (1) Timber Hill's argument that TIAA will not represent the entire class, and (2) Timber Hill's assertion that the "term equity security" does not include put and call options. On the first point, TIAA argues that TIAA has indicated that it will "prosecute all claims on behalf of options traders." (Pl.'s Sur-Reply 1, ECF No. 329-1.) TIAA also argues that any criticism of the proposed class definition is premature because "at class certification, TIAA can expressly define the class to include the very investors Timber Hill" seeks to represent. (*Id.* at 2.) On the second point, TIAA points to the 1934 Act's definition of an "equity security,"

---

[4] Defendants' response to Timber Hill's Motion states that Lead Plaintiff's proposed class "does not encompass" the proposed class of derivative traders. (Defendant's Resp. 1, ECF No. 324.) Defendants, however, do not view this as an obstacle to consolidation of the Timber Hill matter. (*Id.*)

which includes "'any other security' the [Securities Exchange Commission ("SEC")] deems by 'rules and regulations . . . to treat as an equity security.'" (*Id.* at 3 (quoting 15 U.S.C. § 78c(11).) SEC regulations define an equity security as, among other things, "any put, call, straddle, or other option or privilege of buying such a security from or selling such a security to another without being bound to do so." (*Id.* at 2-3 (quoting 17 C.F.R. 240.3a11-1).)

## IV. Analysis

Timber Hill has not sufficiently established that the prejudice, if any, that would result from consolidation is not outweighed by the efficiencies and cost savings of consolidation. Indeed, much of the prejudice Timber Hill alleges are future ills that may be resolved as this litigation progresses. Ultimately, there may be some merit to Timber Hill's concerns, but, as discussed below, they are not properly before the Court at this time.

The Court's analysis begins with an appraisal of the context of Timber Hill's Motion. In late 2015, Lead Plaintiff and Lead Counsel worked with other plaintiffs and counsel to be appointed as such pursuant to the PSLRA's requirements. Multiple motions to dismiss have been briefed and decided. In addition to this class-action, there are currently twenty-nine individual opt-out actions. (*See* Case Management Order 1, ECF No. 369.) Most recently, Magistrate Judge Lois H. Goodman entered a Case Management Order confirming the consolidation of these matters "for pretrial purposes." (*Id.*) This will include a lengthy period of fact and expert discovery, and then motion practice for class certification and summary judgment. Once this pretrial period is concluded, if necessary, the Court and the parties will consider how best to proceed to trial. In short, the parties are currently on the precipice of what will surely be a lengthy and resource intensive period of actively litigating this matter.

**A.     *The Putative Class Definition***

The Court next addresses the primary point of disagreement between the parties.[5] The Court's view, at this juncture, is that the Lead Plaintiff's putative class definition—"purchasers of Valeant equity securities and senior notes between January 4, 2013 and March 15, 2016"— encompasses a portion of the class Timber Hill seeks to represent. (FAC at 1.) The 1934 Act's definition of an "equity security" is broad enough to encompass the derivatives at issue here because the definition includes "any other security which the Commission shall deem to be of similar nature and consider necessary or appropriate, by such rules and regulations as it may prescribe in the public interest or for the protection of investors, to treat as an equity security." 15 U.S.C. § 78c(a)(11).  By regulation, the SEC has further expanded the definition of an "equity security" to include "any put, call, straddle, or other option or privilege of buying such a security from or selling such a security to another without being bound to do so." 17 C.F.R. 240.3a11-1.

Timber Hill's blanket citations to (i) unspecified sections of the 1934 Act and (ii) *Morrison v. Madison*, 463 F.3d 312 (3d. Cir. 2006) are unpersuasive. *Morrison* discusses a definition of a "derivative security" that is limited to Section 16 of the 1934 Act as opposed to the broadly applicable definition of an "equity security" to which Lead Plaintiff cites. 463 F.3d at 316. Given the statutory language, and Timber Hill's own definition of an equity security,[6] Timber Hill has

---

[5] There is no legitimate dispute as to whether the Timber Hill matter and this matter include common questions of law or fact. Timber Hill appears to concede this point when it "recognizes that the issues presented in the two actions overlap." (Pl.'s Moving Br. at 5.) Indeed, as Lead Plaintiff points out, many sections of Timber Hill's complaint appear to be taken nearly verbatim from the Consolidated Complaint. Given the common questions of law and fact, the Timber Hill matter is ripe for consolidation. *See* Fed. R. Civ. P. 42.

[6] Timber Hill defines a call option as "a contract between a seller . . . and a purchaser . . . , under which the option purchaser has the right, but not the obligation, to exercise the option, and thereby purchase the underlying security at an agreed-upon price . . . from the seller by a pre-set expiration date," and a put option as "a contract between a seller . . . and a purchaser . . . , under which the put option purchaser has the right, but not the obligation, to exercise the option, and thereby sell

not sufficiently demonstrated that the current putative class definition excludes the derivatives traders who were purchasers of options.

The Court's view, at this juncture, is that the Lead Plaintiff's putative class definition is limited to "purchasers of Valeant equities securities." This modifier, on its face, excludes the portion of Timber Hill's proposed class that encompasses sellers of Valeant derivatives.[7] This fact, however, does not require the Court to grant Timber Hill relief from consolidation because the Lead Plaintiff's putative class definition is, at this juncture, exactly as described—putative. As Timber Hill correctly points out, TIAA's operative class definition has changed from its PSLRA Notice to the current definition. (*Compare* Pl.'s Reply Decl. of Samuel H. Rudman, Ex. A., ECF No. 22-3 (incorporating TIAA's PSLRA Lead Plaintiff notice in which TIAA seeks to represent "all purchasers of Valeant Stock during the Class period") *with* FAC at 1 (identifying a class of "purchasers of Valeant equity securities and senior notes").) What Timber Hill fails to acknowledge is that the class definition has, in fact, expanded and may expand again. Such an expansion could cure the prejudice Timber Hill currently alleges.

Timber Hill may be correct, and Defendants may oppose class certification on grounds that relate to the class excluding certain derivatives traders. Given that Timber Hill has raised this issue now, Timber Hill's motion has the salutary effect of putting the Lead Plaintiff and the Court on notice that this issue may arise in the future. The Lead Plaintiff is empowered to make decisions

---

the underlying security at an agreed-upon price." (*See* Timber Hill Compl. ¶¶ 16-17.) These definitions align with the SEC's definition of an equity security. *See* 17 C.F.R. 240.3a11-1.

[7] Lead Plaintiff's putative class definition, of course, also excludes those derivative traders, both buyers and sellers, who traded the day after the end date of the Lead Plaintiff's class period through the end date of Timber Hill's putative class period—March 16, 2016 through August 11, 2016. Like the class definition, Lead Plaintiff may, or may not, adjust the class period to encompass these dates.

that may impact the rights of derivatives traders in the class. The class certification process, however, ensures that those rights are protected. Moreover, a failure to protect the rights of derivatives traders will likely impact this litigation at later stages. The Court will be able to better evaluate the impact of the putative class definition on derivatives traders when the Lead Plaintiff moves for class certification.

**B.**  *Consolidation for Discovery*

Timber Hill has not sufficiently established how consolidation for pretrial purposes will prejudice it as the factual record is developed throughout the upcoming discovery period.[8] Given the common facts at issue in the matters, and in the absence of Timber Hill arguing that unique discovery is required for its proposed class, the Court concludes that there are significant efficiencies and cost savings for the parties if Timber Hill remains consolidated. Moreover, given the broad scope of discovery allowable under Rule 26, there is no reason for the Court to conclude that discovery will not and cannot encompass discovery relative to the derivatives traders. Given the Lead Plaintiff's representations about the putative class definition and the alignment with the interests of certain derivatives traders, discussed more fully below, the Court's view is that the derivatives traders' interests will be protected during the pretrial period.

**C.**  *Pursuit of the Derivatives Traders' Claims*

Timber Hill asserts TIAA will extinguish some of the derivatives traders' claims. Given the evolving nature of the class definition, this potential prejudice is speculative at this point in the litigation. Moreover, TIAA has identified that TIAA has suffered "approximately $1 million from its transactions in options securities." (Lead Pl.'s Moving Br. at 21.) It is counterintuitive to

---

[8] The Court acknowledges that perhaps the record unclear as to whether this matter was consolidated for all purposes, including trial, or a more limited purpose. The recent Case Management Order (ECF No. 369) clarifies that consolidation, currently, is for pretrial purposes.

assume that TIAA will not pursue relief for those alleged damages, especially when the current putative class definition encompasses the damages suffered by purchasers of options. *See In re Cendant Corp. Litig.*, 182 F.R.D. 144, 148 (D.N.J. 1998) ("It is unrealistic to assume that [Lead Plaintiffs] would not travel every avenue that could potentially enhance their potential recovery."). Moreover, if those damages are as significant as Timber Hill represents, there is a great incentive for TIAA to pursue those damages and the self-interest of the Lead Plaintiffs will ensure the derivatives traders are adequately represented. *Id.* ("[S]elf-interest of the presumptive lead plaintiffs will ensure adequacy of representation for all the class.").

TIAA states it will "prosecute all claims on behalf of options traders." (Lead Pl.'s Sur-Reply 1, ECF No. 329-1.) Timber Hill's citations to *In re New Oriental Education & Technical Group Securities Litigation* ("*In re New Oriental*") to rebut TIAA's representation is not persuasive because the actions of the parties in that case are materially different from this matter. *See In re New Oriental Educ. & Tech. Grp. Secs. Litig,.* 293 F.R.D. 483, 487-88 (S.D.N.Y. 2013). In that case, the lead plaintiff indicated it would not "prosecute the claims of the options class," and the lead plaintiff's "ambiguous litigation position" that "it may at some point in the future amend the consolidated class action complaint," was untenable given the lead plaintiff's previous reversal regarding the inclusion of options traders in the putative class definition. *Id.* Specifically, the party seeking severance of the options class, Tardio, alleged that he agreed to a stipulation of consolidation with the understanding that the class definition would encompass purchasers and sellers of options. *Id.* at 485. The lead plaintiff changed course and represented to the court that lead plaintiff would not prosecute claims on behalf of the option traders. *Id.* at 486. Tardio also participated in the litigation from the very beginning. *Id.* at 484.

In the instant matter, consolidation will not foreclose claims that Timber Hill sought to bring prior to the entry of the consolidation order because Timber Hill filed their Complaint over two years after the entry of the Consolidation Order. Moreover, unlike the lead plaintiff *In re New Oriental*, Lead Plaintiff's representations and actions regarding the derivatives traders have not alternated between inclusion and exclusion of the derivatives traders in the class.

### D. *Competing Classes*

Contrary to Timber Hill's assertion, this is not a case that requires separate lead plaintiffs because of competing classes attempting to recover from a common set of defendants. Timber Hill cites to *Friedman v. Quest Energy Partners LP* to argue otherwise. In *Friedman*, one class represented purchasers of stock in a parent corporation and the other class represented purchasers of "partnership units" ("PUs") of a subsidiary. *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 609 (W.D. Okla. 2009). The class representing the purchasers of the PUs sought to recover from the subsidiary, the subsidiary's general partner, the parent corporation, and individual defendants. The class representing the purchaser of stock in the corporation only sought to recover from the parent corporation and individual defendants. *Id.* at 610. Critically, the *Friedman* court's decision to appoint two lead plaintiffs was not solely based on the fact that the classes were competing for recovery from overlapping defendants. The court found that the "nature of the claims asserted by the two classes [were] materially different." *Id.* at 611. The court also found that the relief sought by one class, rescission, would "significantly diminish[]" the recovery available to one class while rescission would also maximize recovery for the other class. *Id.*

In the instant matter, the putative class of derivate traders and the Lead Plaintiff's putative class have stated similar claims and any recovery available to one group does not necessarily diminish the recovery available to the other. In *Friedman*, recovery by the class seeking recession

would have necessarily decreased the size of the proverbial "pie" available to the other class. Here, the classes would be competing for the same pie.

### E. *Risks Presented at Trial*

The Court is aware that if these matters go to trial there is a risk of inconsistent adjudications and additional expense and burden on the parties. If the parties' arguments and the court's views in *Basile* are instructive, multiple trials, or at least bifurcated trials, may be required no matter how the Court decides the instant motion. More to the point, if Timber Hill and a class of certain derivatives traders are inevitably going to find themselves at odds with the current putative class and will do so no matter how discovery proceeds, then consolidation for pretrial purposes is more efficient for all involved. Looking to the future, if this matter goes to trial and it becomes clear that multiple or bifurcated trials are necessary, the plaintiffs will get multiple bites at the apple and Defendants will face potential prejudice, hardship, and expense. These issues, however, are not squarely before the Court because consolidation, at this point, is for pretrial purposes only. The Court will resolve the issues surrounding multiple trials if and when it becomes necessary to do so.

### F. *Conflicting Experts*

Finally, Timber Hill asserts that calculation of the damages of the derivatives traders will require different experts than those experts relied upon by TIAA. Timber Hill, however, offers no direct support for this assertion. Even without support, this assertion pales in contrast to the outright conflict presented in *Basile* where the common stock plaintiff's counsel stated that he expected his damages expert to testify that the derivatives traders did not "have any cognizable damages." (Pl.'s Moving Br., Decl. of Andrew J. Entwistle, Ex. A at 78, ECF No. 322-3.) TIAA has stated that, in its view, Timber Hill's submission to the Court reveals that Timber Hill had a

gain of $2,896,037 on a "$36 million total contract price for options." (TIAA's Opp'n at 19.) Through the course of discovery, TIAA may find that the evidence suggests something different and the derivatives traders who are part of the class may have damages. Even if this is not the case, if at a later stage of the litigation, Timber Hill's assertion of the need for different damages experts evolves into an obvious intra-class conflict, the Court will entertain a renewed motion for relief from consolidation.

V. **Conclusion**

For the reasons stated above, the Court denies Timber Hill's Motion for Relief from Consolidation. The Court will enter an Order consistent with this Memorandum Opinion.

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**