# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION** | Civil Action No. 15-7658 |
| | JUDGE MICHAEL A. SHIPP |
| | JUDGE LOIS H. GOODMAN |
| THIS DOCUMENT RELATES TO: | **(ORAL ARGUMENT REQUESTED)** |
| 18-cv-10246-MAS-LHG (Timber Hill LLC) | **Motion Day: February 19, 2019** |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT UNDER RULE 12(b)(6) AND STRIKE THE CLASS ALLEGATIONS UNDER RULES 12(f), 23(a)(1)(A) AND 23(d)(1)(D)

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 848-8615
Facsimile: (973) 297-6615

Paul C. Curnin (*pro hac vice*)
Craig S. Waldman (*pro hac vice*)
Daniel J. Stujenske (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendants Valeant Pharmaceuticals International, Inc., Robert L. Rosiello, and Ari S. Kellen*

(*Additional counsel listed on signature page*)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND ....................................................................................... 2

ARGUMENT .......................................................................................... 6

    I.     THIS COURT SHOULD STRIKE PLAINTIFF'S CLASS ACTION
           ALLEGATIONS ................................................................................6

           A.     Striking Plaintiff's Class Allegations At The Pleading Stage Is
                 Appropriate ....................................................................................6

           B.     Plaintiff Has Not Been Appointed As Lead Plaintiff Under The
                 PSLRA ..........................................................................................7

    II.    PLAINTIFF'S FEDERAL SECURITIES FRAUD CLAIMS ARE
           UNTIMELY ...................................................................................10

           A.     The Securities Fraud Claims Are Untimely Under The Applicable
                 Statute Of Limitations ..................................................................11

           B.     Plaintiff Forfeited *American Pipe* Tolling By Opting Out Of The
                 Putative Class Action Before A Class Certification Decision ..................14

           C.     Plaintiff's Section 10(b) Claim Is Barred By The Statute Of
                 Repose To The Extent It Rests On Statements Made Before June 6,
                 2013 ..............................................................................................17

           D.     The Section 20(a) Control Person Claims Fail Because Plaintiff
                 Has Not Stated Viable Violations Of Section 10(b) ..................19

    CONCLUSION ..........................................................................................19

# **TABLE OF AUTHORITIES**

## **Cases**

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974).................................................................................... 14, 16

*Bartesch v. Cook*,
    941 F. Supp. 2d 501 (D. Del. 2013)............................................................ 19

*Bd. of Educ. of Twp. High Sch. v. Climatemp, Inc.*,
    1981 WL 2033 (N.D. Ill. Feb. 20, 1981) .................................................. 6, 7

*Benak v. All. Capital Mgmt. L.P.*,
    435 F.3d 396 (3d Cir. 2006) ...................................................................... 11

*Brody v. Homestore, Inc.*,
    2003 WL 22127108 (C.D. Cal. Aug. 8, 2003)........................................... 9

*California Public Employees' Retirement System v. ANZ Securities, Inc.*,
    137 S. Ct. 2042 (2017)............................................................................... 18

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018).......................................................................... 16, 18

*Chinn v. Giant Food, Inc.*,
    100 F. Supp. 2d 331 (D. Md. 2000)........................................................... 15

*City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*,
    637 F.3d 169 (2d Cir. 2011) ...................................................................... 10

*Clark v. McDonald's Corp.*,
    213 F.R.D. 198 (D.N.J. 2003)...................................................................... 7

*Cohen v. Telsey*,
    2009 WL 3747059 (D.N.J. Nov. 2, 2009) ................................................ 18

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983).................................................................................. 16

*CTS Corp. v. Waldburger*,
    134 S. Ct. 2175 (2014)............................................................................... 18

*Discovery Glob. Citizens Master Fund, Ltd. v. Valeant Pharm. Int'l, Inc.*,
    2018 WL 406046 (D.N.J. Jan. 12, 2018)................................................... 13

*F.D.I.C. v. Countrywide Fin. Corp.*,
    2012 WL 5900973 (C.D. Cal. Nov. 21, 2012)........................................... 11

*Glater v. Eli Lilly & Co.*,
   712 F.2d 735 (1st Cir. 1983)....................................................................... 15, 16

*Hubbard v. Corr. Med. Servs., Inc.*,
   2008 WL 2945988 (D.N.J. July 30, 2008)..................................................... 14, 15

*In re Crayfish Co. Sec. Litig.*,
   2002 WL 1268013 (S.D.N.Y. June 6, 2002) ..................................................... 9

*In re Exxon Mobil Corp. Sec. Litig.*,
   500 F.3d 189 (3d Cir. 2007) ........................................................................ 10, 17

*In re Initial Pub. Offering Sec. Litig.*,
   214 F.R.D. 117 (S.D.N.Y. 2002) ...................................................................... 8

*In re Merck & Co. Sec., Derivative & ERISA Litig.*,
   2012 WL 6840532 (D.N.J. Dec. 20, 2012)....................................................... 18

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002) ......................................................................... 2

*In re Network Assocs., Inc., Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) .............................................................. 8

*In re Nice Sys. Sec. Litig.*,
   188 F.R.D. 206 (D.N.J. 1999).......................................................................... 8

*In re NYSE Specialists Sec. Litig.*,
   240 F.R.D. 128 (S.D.N.Y. 2007) ...................................................................... 9

*In re Paulsboro Derailment Cases*,
   2014 WL 1371712 (D.N.J. Apr. 8, 2014) ...................................................... 7, 8

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ............................................................................ 19

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
   2017 WL 1658822 (D.N.J. Apr. 28, 2017)...................................................... 2, 8

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
   2018 WL 5849466 (D.N.J. Nov. 7, 2018) ........................................................ 5

*In re WorldCom Sec. Litig.*,
   496 F.3d 245 (2d Cir. 2007) ........................................................................ 16, 17

*Kozlowski v. Sheahan*,
   2005 WL 3436394 (N.D. Ill. Dec. 12, 2005)..................................................... 15

*Kuwait Inv. Office v. Am. Int'l Grp., Inc.*,
   128 F. Supp. 3d 792 (S.D.N.Y. 2015) ............................................................... 17

*McMillian v. AMC Mortg. Servs., Inc.*,
  560 F. Supp. 2d 1210 (S.D. Ala. 2008) ................................................................. 15

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010) ................................................................................. 10, 13

*Merino v. Wells Fargo & Co.*,
  2017 WL 3908670 (D.N.J. Sept. 6, 2017) .............................................................. 8

*Mladenov v. Wegmans Food Mkts., Inc.*,
  124 F. Supp. 3d 360 (D.N.J. 2015) ..................................................................... 7

*N. Sound Capital LLC v. Merck & Co.*,
  2015 WL 5055769 (D.N.J. Aug. 26, 2015) ............................................................ 18

*N. Sound Capital LLC v. Merck & Co.*,
  702 F. App'x 75 (3d Cir. 2017) ...................................................................... 18

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Sec. Transactions, Inc.*,
  730 F.3d 263 (3d Cir. 2013) ..................................................................... 10, 11

*Read v. Input/Output, Inc.*,
  2005 WL 2086179 (S.D. Tex. Aug. 26, 2005) .......................................................... 9

*River Rd. Dev. Corp. v. Carlson Corp.*,
  1990 WL 69085 (E.D. Pa. May 23, 1990) ............................................................... 6

*Robinson v. Johnson*,
  313 F.3d 128 (3d Cir. 2002) ........................................................................ 10

*Sidney-Vinstein v. A.H. Robins Co.*,
  697 F.2d 880 (9th Cir. 1983) ........................................................................ 9

*Smart-El v. Corr. Med. Servs.*,
  2008 U.S. Dist. LEXIS 44376 (D.N.J. June 5, 2008) ................................................. 14

*SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos.*,
  829 F.3d 173 (2d Cir. 2016) ........................................................................ 18

*Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*,
  821 F.3d 780 (6th Cir. 2016) ....................................................................... 15

*Stephens v. Clash*,
  796 F.3d 281 (3d Cir. 2015) ........................................................................ 10

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
  802 F. Supp. 2d 1125 (C.D. Cal. 2011) ........................................................... 13, 14

*T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.*,
  2018 WL 395730 (D.N.J. Jan. 12, 2018) ............................................................. 13

*Thomas v. Corr. Med. Servs., Inc.*,
  2009 WL 737105 (D.N.J. Mar. 17, 2009)................................................................... 14

*Tietsworth v. Sears, Roebuck & Co.*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..................................................................... 6

*Tonka Corp. v. Rose Art Indus., Inc.*,
  836 F. Supp. 200 (D.N.J. 1993) ................................................................................ 6

*Wallach v. Eaton Corp.*,
  837 F.3d 356 (3d Cir. 2016) ..................................................................................... 16

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
  413 F.3d 553 (6th Cir. 2005) ......................................................................... 14, 15, 16

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
  80 F. Supp. 3d 610 (E.D. Pa. 2015) .......................................................................... 8

*Zazzali v. Alexander Partners, LLC*,
  2013 WL 5416871 (D. Del. Sept. 25, 2013) ............................................................. 17

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................................................................ 8

15 U.S.C. § 78u-4(a)(3)(B)(ii) ....................................................................................... 8

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa)–(cc) ................................................................... 8

28 U.S.C. § 1658(b) ..................................................................................................... 10

28 U.S.C. § 1658(b)(1) ................................................................................................ 10

## Rules

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 1

Federal Rule of Civil Procedure 12(f) ........................................................................ 1, 6

Federal Rule of Civil Procedure 23(a)(1)(A) ................................................................. 1

Federal Rule of Civil Procedure 23(c)(1)(A) ................................................................. 6

Federal Rule of Civil Procedure 23(d)(1)(D) .............................................................. 1, 6

Defendants Valeant Pharmaceuticals International, Inc. ("Valeant"), J. Michael Pearson, Howard B. Schiller, Robert L. Rosiello, Deborah Jorn, Ari S. Kellen and Tanya Carro (collectively "Defendants") respectfully submit this memorandum of law in support of their motion to strike Plaintiff's class action allegations pursuant to Federal Rules of Civil Procedure 12(f), 23(a)(1)(A), and 23(d)(1)(D) and dismiss the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Defendants file this motion in order to address two simple issues.

*First*, this action cannot proceed as a class action because Plaintiff's motion for appointment as lead plaintiff under the Private Securities Litigation Reform Act ("PSLRA") has already been denied by this Court. Plaintiff's class allegations therefore should be stricken from the Complaint.

*Second*, Plaintiff's securities fraud claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") are untimely under the applicable two-year statute of limitations. The statute of limitations runs from the time when a reasonably diligent plaintiff would have been aware of its claims. Plaintiff waited to bring this action until nearly three years after the first investors sued Valeant asserting the same claims. Plaintiff is not entitled to *American Pipe* tolling in order to save its claims because, as multiple courts in this District have held, such tolling is unavailable to plaintiffs who bring individual actions before class certification is decided. Section 10(b)'s five-year statute of repose also bars Plaintiff's claims based on alleged misstatements made before June 6, 2013—five years before this Complaint was filed.

# **BACKGROUND**[1]

The underlying factual allegations have been set forth in the Court's prior decisions. *See, e.g.*, *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822 (D.N.J. Apr. 28, 2017) (the "Consolidated Class Action"). Because Plaintiff's allegations repeat the allegations in the Consolidated Class Action, Defendants incorporate by reference the background section of the Consolidated Class Action Motion to Dismiss. *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658, Dkt. No. 167. The following facts are pertinent to the distinct arguments Defendants present here.

Plaintiff is a sophisticated investment fund that purchased call options and sold put options on Valeant common stock between January 4, 2013 and August 11, 2016. Compl. at 1. On June 6, 2018, Plaintiff filed the instant suit, bringing it as a putative class action on behalf of "itself and all other persons or entities that purchased call options on Valeant common stock and/or sold put options on Valeant common stock during the Class Period, and were damaged thereby." *Id.* ¶ 444. Plaintiff alleges that Defendants "caused the prices of Valeant common stock and call options to be artificially inflated[] and caused the prices of Valeant put options to be artificially deflated" by using "a clandestine pharmacy network, deceptive drug pricing and reimbursement practices, and fictitious accounting." *Id.* ¶¶ 1, 121. Plaintiff asserts that Defendants carried out this scheme by misrepresenting (1) the extent to which volume contributed to Valeant's revenue growth; (2) Valeant's relationship with the specialty pharmacy Philidor Rx Services, LLC ("Philidor"); (3) Valeant's financials and compliance with Generally Accepted Accounting Principles ("GAAP") and (4) the adequacy of Valeant's internal controls.

---

[1] This background is drawn from the allegations in the Complaint, which are accepted as true for purposes of this motion to dismiss only, and from other documents properly considered on a motion to dismiss. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1322–23, 1331 (3d Cir. 2002).

*Id.* ¶¶ 6, 8, 126, 178, 181, 187-88, 198, 206.  The first three alleged misstatements were

supposedly made on January 4, 2013 and February 28, 2013.  *Id.* ¶¶ 122-25.

The first class action complaint against Valeant was brought by a putative class of

investors on October 22, 2015, based on the same core facts alleged here.  *See Potter v. Valeant*

*Pharm. Int'l, Inc.*, No. 15-cv-7658, Dkt. No. 1 at ¶¶ 6, 16, 23 ("*Potter*") Ex. 1.[2]  Three more class

action complaints quickly followed, repeating the same allegations.[3]  Valeant disclosed these

lawsuits in its quarterly filings.[4]  The *Potter*, *Chen*, *Yang*, and *Fein* complaints each asserted

identical causes of action under Sections 10(b) and 20(a) of the Exchange Act.  *See Potter* ¶¶ 75-

82; *Chen* ¶¶ 68-87; *Yang* ¶¶ 75-82; and *Fein* ¶¶ 92-97.  Those are the same causes of action

Plaintiff's Complaint now belatedly asserts.  *See* Compl. ¶¶ 449-62.

On May 31, 2016, this Court consolidated the *Potter*, *Chen*, *Yang*, and *Fein* actions,

appointed Teachers Insurance and Annuity Association of America and related entities ("TIAA")

as lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B), and approved TIAA's selection of

Robbins Geller Rudman & Dowd LLP as lead counsel.  *In re Valeant Pharm. Int'l, Inc. Sec.*

*Litig.*, No. 15-cv-7658, Dkt. No. 67 (the "Consolidated Class Action").  A consolidated class

action complaint, incorporating the allegations made across the *Potter*, *Chen*, *Yang*, and *Fein*

complaints (the "Consolidated Class Complaint"), was filed on June 24, 2016, alleging that

Valeant and other defendants made misstatements to investors which artificially inflated the

---

[2] References to Ex. __ refer to Exhibits to the Declaration of Richard Hernandez, dated January 14, 2019.

[3] *See Chen v. Valeant Pharm. Int'l, Inc.*, No. 15-cv-7679, Dkt. No. 1 at ¶¶ 49, 56 (Oct. 23, 2015) ("*Chen*") (Ex. 2); *Yang v. Valeant Pharm. Int'l, Inc.*, No. 15-cv-7746, Dkt. No. 1 at ¶¶ 16-17, 22-23 (Oct. 27, 2015) ("*Yang*") (Ex. 3); *Fein v. Valeant Pharm. Int'l, Inc.*, No. 15-cv-7809, Dkt. No. 1 at ¶¶ 10-11, 21 (Oct. 30, 2015) ("*Fein*") (Ex. 4).

[4] *See* Ex. 5 (Valeant 3Q 2015 10-Q) at 33; Ex. 6 (Valeant 2015 10-K) at F-79.

price of Valeant securities from January 4, 2013, through March 15, 2016.  Ex. 7, Consolidated

Class Complaint, *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658, Dkt. No. 80 at

¶¶ 1-12.  Like the pre-consolidation complaints, the allegations in the Consolidated Class

Complaint are based on purported misrepresentations regarding Valeant's reliance on

acquisitions (as opposed to research and development) to maintain its growth, Valeant's use of

price increases and patient assistance programs, and Valeant's alleged use of a concealed

network of "captive" pharmacies related to Philidor.  *See id.* ¶¶ 1-12, 25.  The Consolidated

Class Action asserts claims under Sections 10(b) and 20(a) of the Exchange Act and other related

claims.  *Id.* ¶¶ 538-728.

Between the time that the Consolidated Class Complaint was filed and Plaintiff

eventually brought this action, twenty-eight sets of investors filed related securities opt-out

actions, alleging the same underlying conduct as the pre-consolidation class actions and

Consolidated Class Action.  *See In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658, Dkt.

No. 369 (Case Management Order).

On June 6, 2018—nearly three years after the *Potter*, *Chen*, *Yang*, and *Fein* complaints

were brought—Plaintiff filed the instant suit, styling it a putative class action on behalf of a class

of options traders.  Compl. ¶ 444.  Plaintiff's claims echo those asserted in the pre-consolidation

class actions.  *Compare, e.g.*, *Potter* ¶¶ 16-17, *Chen* ¶ 49, *Yang* ¶¶ 16-17, *and Fein* ¶¶ 10-11,

*with* Compl. ¶¶ 231-32 (referencing an October 19, 2015 Valeant earnings conference call where

Valeant discussed its relationship with Philidor); *compare Potter* ¶ 22-23, *Yang* ¶ 23, *and Fein* ¶

22, *with* Compl. ¶ 279 (discussing Citron Research's report alleging that Valeant used a network

of pharmacies to "prop up" Valeant's sales of its drugs and "keep patients and their insurance

companies from switching to less costly generics").

In addition to parroting the assertions made in the pre-consolidation class actions, Plaintiff's claims closely mirror the Consolidated Class Complaint's Section 10(b) and 20(a) claims—often verbatim. *Compare* Consolidated Class Compl. ¶¶ 3-4, 12, 159-64, 213-25, 539-41, 545-48, *with* Compl. ¶¶ 3-4, 6, 213-21, 238-49, 451-53, 458-61 (bringing nearly identical allegations about Valeant's alleged misrepresentations).

On June 11, 2018, this Court consolidated Plaintiff's action with the Consolidated Class Action, pursuant to this Court's May 31, 2016 Consolidation Order, which directs that "all" subsequently filed securities class actions filed in this District "shall be consolidated" into the Consolidated Class Action. *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658, Dkt. Nos. 67, 318. That same day, the Clerk docketed a text-only entry stating, "[c]ivil case terminated." *Timber Hill LLC v. Valeant Pharm. Int'l, Inc.*, No. 18-cv-10246, Dkt. No. 3. Shortly thereafter, Plaintiff moved for relief from consolidation and separately moved for appointment as lead plaintiff. *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658, Dkt. Nos. 322, 334. TIAA opposed and moved to strike Plaintiff's motion for appointment as lead plaintiff, arguing that Plaintiff's putative class members are already included in the Consolidated Class Action. *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658, Dkt. No. 335.

On November 7, 2018, this Court denied Plaintiff's motions for relief from consolidation and appointment as lead plaintiff, finding that TIAA's putative class definition—"purchasers of Valeant equity securities and senior notes between January 4, 2013 and March 15, 2016"—encompassed a portion of Plaintiff's putative class. *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2018 WL 5849466, at *1, *5 (D.N.J. Nov. 7, 2018). This Court further concluded that the case does not require separate lead plaintiffs representing separate, competing classes. *Id.* at *7.

## ARGUMENT

### I.   THIS COURT SHOULD STRIKE PLAINTIFF'S CLASS ACTION ALLEGATIONS

The Court should strike Plaintiff's class allegations pursuant to Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D).  Since the Court already denied Plaintiff's motion for appointment as lead plaintiff, Plaintiff's claims—to the extent they are viable—should only proceed as an individual action.  Striking Plaintiff's class allegations ensures that this case can be efficiently coordinated with the Consolidated Class Action and other opt-out actions.

#### A.   Striking Plaintiff's Class Allegations At The Pleading Stage Is Appropriate

Courts have authority to strike class allegations at the pleading stage.  *See* Fed. R. Civ. P. 23(d)(1)(D) (authorizing a court to issue an order "requir[ing] that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly"); *id.* 23(c)(1)(A) (directing courts to make a class certification decision at "an early practicable time").  Rule 12(f) expressly authorizes courts to "strike from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter," acting either on its own or on a motion advanced by a party.  Fed. R. Civ. P. 12(f).  Courts have "considerable discretion" in deciding a Rule 12(f) motion.  *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993) (quoting *River Rd. Dev. Corp. v. Carlson Corp.*, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)).  Thus, a motion to strike class allegations, made pursuant to these provisions in the Federal Rules, is an appropriate device to determine whether the case will proceed as a class action.  *See Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010) ("Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), [district courts have the] authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained."); *see also Bd. of Educ. of Twp. High Sch. v.*

*Climatemp, Inc.*, 1981 WL 2033, at *2 (N.D. Ill. Feb. 20, 1981)  ("[M]otions to strike are . . .
useful in bringing into focus issues the resolution of which governs the broader question of
whether a class action is maintainable . . . .").

Striking class action allegations is proper where, as here, "the inappropriateness of class
treatment is evident from the face of the complaint and from incontrovertible facts."  *In re
Paulsboro Derailment Cases*, 2014 WL 1371712, at *3 (D.N.J. Apr. 8, 2014); *see also
Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 368, 381 (D.N.J. 2015) (striking
class allegations at the pleading stage on defendants' motions pursuant to Rule 12(f)).  While
disputes about the appropriateness of class action treatment are often resolved on a motion to
certify a class, this case presents the unusual circumstance that Plaintiff is attempting to proceed
with a class action without being appointed as a lead plaintiff as the PSLRA requires.  *See, e.g.*,
*Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003) ("A defendant may move to
strike class action allegations prior to discovery in those rare cases where the complaint itself
demonstrates that the requirements for maintaining a class action cannot be met.").  Given
Plaintiff's failure to obtain the statutory authority to proceed with a securities class action, this
case is uniquely qualified for a pre-certification decision striking Plaintiff's class allegations.[5]

### B.    Plaintiff Has Not Been Appointed As Lead Plaintiff Under The PSLRA

The PSLRA governs the appointment of lead plaintiffs in class actions involving alleged
violations of the federal securities laws.  The PSLRA provides that the court "shall appoint as
lead plaintiff the member . . . of the purported plaintiff class that the court determines to be the

---

[5] This motion does not address TIAA's class action allegations, which will be resolved on
TIAA's motion to certify a class.  This motion only relates to Plaintiff's complaint, which is also
styled as a class action, in contradiction of the Court's ruling that TIAA—and not Plaintiff—is
the lead plaintiff representing a class of investors who bought Valeant securities.

most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i); *see also In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 215 (D.N.J. 1999) ("[T]he PSLRA provides a method for identifying the plaintiff or plaintiffs who are the most strongly aligned with the class of shareholders . . . ."). "Where consolidation of multiple cases has occurred, the same provision requires the court to 'appoint the most adequate plaintiff as lead plaintiff for the consolidated actions.'" *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1024 (N.D. Cal. 1999) (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)). The "'most adequate,' or lead, plaintiff is presumptively the plaintiff who: (1) filed an initial complaint or timely moved for appointment as lead plaintiff; (2) has the largest financial interest in the case; and (3) otherwise satisfies the requirements of Rule 23, describing the requirements for class actions generally." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002) (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa)–(cc)).

The Court denied Plaintiff's motion for appointment as lead plaintiff for the class of options traders identified in the Complaint. *In re Valeant*, 2018 WL 5849466, at *6. Since Plaintiff was not appointed lead plaintiff as required by the PSLRA, it is clear "from the face of [its] complaint that the requirements for maintaining a class action cannot be met." *Merino v. Wells Fargo & Co.*, 2017 WL 3908670, at *4 (D.N.J. Sept. 6, 2017); *see also Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015). Therefore, Plaintiff's allegations "brought on behalf of Plaintiff and other similarly situated persons and entities that purchased call options," Compl. at 1, should be stricken. *See In re Paulsboro*, 2014 WL 1371712, at *3 (finding dismissal of class action allegations proper where "the inappropriateness of class treatment is evident . . . from incontrovertible facts"); *Merino*, 2017 WL 3908670, at *4. Such an order will satisfy the purpose of Rule 12(f)—that is, "to avoid the

8

expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  Courts in analogous circumstances have done the same.  *See Read v. Input/Output, Inc.*, 2005 WL 2086179, at *3 (S.D. Tex. Aug. 26, 2005) (striking class allegations brought under sections 10(b) and 20(a) of the Exchange Act because "no plaintiff in th[e] case appear[ed] willing to serve as lead plaintiff"); *see also Brody v. Homestore, Inc.*, 2003 WL 22127108, at *3 (C.D. Cal. Aug. 8, 2003) (striking plaintiff's class action claims under the Securities Act of 1933 after finding that plaintiff had not complied with the requirements set out in the PSLRA and thus concluding plaintiff "may not maintain [its] action as a class action").  The same result should apply here.

Even if Plaintiff had viable individual claims (as discussed below, it does not), Plaintiff cannot represent absent class members without being appointed a lead plaintiff under the PSLRA, especially in light of the Court's finding that TIAA, not Plaintiff, is the most adequate lead plaintiff.[6]  Because Plaintiff continues to pursue a putative class action, the class allegations in Plaintiff's Complaint should be stricken.

---

[6] Nothing in this motion is intended to affect Defendants' ability to challenge TIAA as an appropriate class representative under Rule 23 at the class certification stage.  This is because "[t]he qualifications for court appointment as lead plaintiff and class representative differ. . . . [C]ourts have concluded that although lead plaintiffs must meet the requirements of Rule 23, the Rule 23 analysis for purposes of appointing a lead plaintiff is significantly less detailed than the Rule otherwise requires . . . one need only make a preliminary showing that the Rule's typicality and adequacy requirements have been satisfied."  *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 135 n.9 (S.D.N.Y. 2007) (quotation marks and citations omitted); *see also In re Crayfish Co. Sec. Litig.*, 2002 WL 1268013, at *4 (S.D.N.Y. June 6, 2002) ("Any preliminary class certification findings of adequacy and typicality made at this time, do not preclude any party from contesting the ultimate class certification.").

## II.  PLAINTIFF'S FEDERAL SECURITIES FRAUD CLAIMS ARE UNTIMELY

Dismissal of untimely claims on a 12(b)(6) motion is proper where, as here, "'the face of the complaint' demonstrates that the plaintiff's claims are untimely." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)); *see also Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Sec. Transactions, Inc.*, 730 F.3d 263, 280 (3d Cir. 2013) (affirming dismissal of untimely securities claims on 12(b)(6) motion). Section 10(b) claims must be brought within "2 years after the discovery of the facts constituting the violation" and "5 years after such violation." 28 U.S.C. § 1658(b). The two-year limitations period is a statute of limitations and the five-year period a statute of repose. *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 199 (3d Cir. 2007).

The statute of limitations period is governed by a discovery standard and "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discovered the facts constituting the violation'—whichever comes first." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (quoting 28 U.S.C. § 1658(b)(1)). A fact is deemed "discovered" when "a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *Pension Tr. Fund*, 730 F.3d at 275 (quoting *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011)).

The statute of repose runs from "the date of the alleged misrepresentation." *Exxon*, 500 F.3d at 200.

This Complaint was filed more than two years after a reasonably diligent plaintiff would have discovered—and other plaintiffs had actually discovered and publicly announced—the alleged basis for such claims.

10

A.      **The Securities Fraud Claims Are Untimely Under The Applicable Statute Of Limitations**

The filing of the initial class actions and the information publicized prior to and at the time of those filings demonstrate that reasonably diligent plaintiffs had sufficient information in October 2015 to file suit.  Yet Plaintiff waited until June 6, 2018, more than a year after the two-year statute of limitations expired, to bring this case alleging the same facts.

As a matter of law, reasonably diligent plaintiffs are aware of the filing of a class action bringing substantially similar claims to those they might bring, and will "undertake an investigation based on 'the filing of related lawsuits,' 'news articles and analyst's [sic] reports,' and 'prospectuses, quarterly reports, and other information related to their investments'" to determine whether they have viable causes of action.  *Pension Tr. Fund*, 730 F.3d at 277 (quoting *Benak v. All. Capital Mgmt. L.P.*, 435 F.3d 396, 400, 403 n.20 (3d Cir. 2006)).  Thus, no later than October 22, 2015 when the first securities fraud class action complaint was filed against Valeant, Plaintiff was on notice of its claims.  *See id.* at 276–77.  The next step of the discovery rule analysis considers "whether a reasonably diligent plaintiff who began investigating in [October 2015] would have discovered the untrue statements or the omissions . . . before [June 6, 2016]." *Id.* at 278.  Here again, there is no need to speculate—the activity in the pre-consolidation class actions provides the answer: The *Potter* complaint was filed on October 22, 2015.  *See F.D.I.C. v. Countrywide Fin. Corp.*, 2012 WL 5900973, at *4–8 (C.D. Cal. Nov. 21, 2012) (dismissing securities claims as untimely under the *Merck* discovery standard where complaints bringing similar claims were filed before the applicable statute of limitations cutoff and had survived 12(b)(6) motions).

It is indisputable that the allegations made in the Complaint are substantively identical to those alleged in the *Potter*, *Chen*, *Yang*, and *Fein* complaints.  For example:

11

- *Compare Potter* ¶¶ 7-8, 9, *Chen* ¶ 43, *and Yang* ¶ 6, 9, *with* Compl. ¶¶ 256-57, 259 (alleging that the House Oversight Committee was concerned with Valeant's increased prices and that Valeant was in the "crosshairs of [the] U.S. Congress");

- *Compare Potter* ¶ 12-13, *Chen* ¶ 46, *Yang* ¶ 12, *and Fein* ¶ 7, *with* Compl. ¶¶ 266-67 (referencing a Valeant press release which disclosed it received subpoenas from the U.S. Attorneys' Offices for the District of Massachusetts and the Southern District of New York, seeking information about its patient assistance programs);

- *Compare Potter* ¶ 21, *Chen* ¶ 54, *Yang* ¶ 21, *and Fein* ¶ 19, *with* Compl. ¶ 276 (allegedly describing an October 19, 2015, *New York Times* article reporting how Valeant used Philidor "to keep the health system paying for high-priced drugs");

- *Compare Po*tter ¶¶ 22-23, *Yang* ¶ 23, *and Fein* ¶ 22, *with* Compl. ¶¶ 279-80 (citing a Citron Research report, which alleged Valeant used a network of pharmacies to "prop up" Valeant's sales of its drugs and "keep patients and their insurance companies from switching to less costly generics");

- *Compare Potter* ¶ 27, *Yang* ¶ 27, *and Fein* ¶ 28, *with* Compl. ¶ 284 (alleging BMO Capital Markets downgraded Valeant shares, stating Valeant's relationship with Philidor was "not just aggressive, but questionable").

In addition to the filing of the class action complaints, Plaintiff's own Complaint reveals that its allegations are based on information known to Plaintiff by October 2015. Plaintiff alleges that Valeant "concealed from investors the extent to which Valeant's profitability and purported growth were contingent upon massive price increases." Compl. ¶ 6. Plaintiff concedes, however, that an October 4, 2015 *New York Times* article "called into doubt" whether "Valeant was well-positioned for growth even without price increases" and described "Valeant's dependency on price gouging." *Id.* ¶ 263; Ex. 8 (Andrew Pollack & Sabrina Tavernise, *Valeant's Drug Price Strategy Enriches It, but Infuriates Patients and Lawmakers*, N.Y. Times, Oct. 4, 2015). The summary of Valeant's business practices in that article was not the result of a deep investigation into Valeant—it was simply based on a review of Valeant's regulatory filings and public statements. For example, the article relies on Valeant's "regulatory filing for the second quarter [in which] Valeant said that its growth in the United States and other developed

markets 'was driven primarily by price' not by increased volume."  Pollack & Tavernise, *Valeant's Drug Price Strategy*, at 6.  This was not a new disclosure; rather, it was a disclosure that Valeant had made to investors every quarter between April 2013 and June 2015.  In other words, the *New York Times* understood Valeant's disclosures, which were made as early as Valeant's 2013 10-K, as unambiguously informing investors of the sources of Valeant's growth.

Moreover, although Plaintiff alleges that Defendants "conceal[ed] Valeant's relationship with Philidor," Compl. ¶ 138, the Complaint makes clear that this information was announced no later than October 19, 2015.  *Id.* ¶¶ 270-71.  In fact, Plaintiff asserts that this information—disclosed in October 2015—revealed the "truth" regarding Defendants' previous representations to investors.  *Id.* ¶¶ 278, 282.[7]

At a minimum, Plaintiff's Complaint makes clear that the statute of limitations began to run no later than April 29, 2016.  By that point, Valeant had (i) issued an 8-K filed on March 21, 2016, which announced "the restatement of its prior financial statements," Compl. ¶ 347, and (ii) filed a 10-K "which confirmed the financial restatement and the Company's material weaknesses."  *Id.* ¶ 352.[8]  Accordingly, the two-year statute of limitations period expired prior to June 6, 2018 when Plaintiff filed this action, and Plaintiff's claims should be dismissed.

---

[7] When considering loss causation and fraud-on-the-market, the Court declined to limit other plaintiffs' claims in related actions to purchases that occurred prior to October 30, 2015 at this stage of the litigation.  *See T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.*, 2018 WL 395730, at *4 (D.N.J. Jan. 12, 2018); *Discovery Glob. Citizens Master Fund, Ltd. v. Valeant Pharm. Int'l, Inc.*, 2018 WL 406046, at *7 (D.N.J. Jan. 12, 2018).  For statute of limitations purposes, however, it is appropriate to rely on October 2015 as the time in which Plaintiff's claims began to accrue as the standard for this inquiry is when "plaintiff did discover or a reasonably diligent plaintiff would have 'discovered the facts constituting the violation.'"  *Merck*, 559 U.S. at 653 (citation omitted).

[8] The post-June 6, 2016 events Plaintiff appends to the Complaint in a transparent effort to circumvent the statute of limitations, Compl. ¶¶ 354-62, do not change the result.  *See Stichting*

**B.    Plaintiff Forfeited *American Pipe* Tolling By Opting Out Of The Putative Class Action Before A Class Certification Decision**

By electing to opt out of the Consolidated Class Action before a decision on class certification, Plaintiff has forfeited tolling that might otherwise be available under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).  Courts in this district have "held that a plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the *American Pipe* tolling doctrine." *Thomas v. Corr. Med. Servs., Inc.*, 2009 WL 737105, at *4 (D.N.J. Mar. 17, 2009) (Hillman, J.) (quoting *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 568 (6th Cir. 2005)) (dismissing opt-out action filed after the statute of limitations had run).  Adopting the holding in *Wyser-Pratte*, Judge Hillman found that "the purposes of *American Pipe* tolling"—avoiding the unnecessary burden of additional lawsuits filed while class certification is pending—"are not furthered when plaintiffs file independent actions before a decision on the issue of class certification." *Id.* at *4; *see also Smart-El v. Corr. Med. Servs., Inc.*, 2008 U.S. Dist. LEXIS 44376, at *9 (D.N.J. June 5, 2008) (Hillman, J.) (same).  In *Hubbard v. Correctional Medical Services, Inc.*, Judge Wigenton also followed *Wyser-Pratte* and dismissed an opt-out action as untimely, holding that "[a] plaintiff who files an independent lawsuit without waiting for a determination on class

*Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1137–39 (C.D. Cal. 2011) (holding that the statute of limitations begins to run even if plaintiff does not possess "every conceivable fact that it will ultimately use to prove its case" because "[o]ther plaintiffs recognized that such facts were available" at the time the first lawsuit against defendant bringing 10(b) claims was filed, and those complaints adequately pleaded all elements of the claims).

certification does not get the benefit of class action tolling."  2008 WL 2945988, at *7 (D.N.J.

July 30, 2008).

These decisions are in accord with the rule in other circuits.  The Sixth Circuit recently

reaffirmed its holding in *Wyser-Pratte* that the judicial economy encouraged by *American Pipe*

would not be served by allowing parties who opt out before a class certification decision to

benefit from that tolling, affirming the dismissal of such claims as untimely.  *Stein v. Regions*

*Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 789 (6th Cir. 2016).  In *Wyser-*

*Pratte*, that court had held that "[t]he purposes of *American Pipe* tolling are not furthered when

plaintiffs file independent actions before decision on the issue of class certification, but are when

plaintiffs delay until the certification issue has been decided."  413 F.3d at 569; *see also Glater v.*

*Eli Lilly & Co.*, 712 F.2d 735, 739 (1st Cir. 1983) ("The policies behind Rule 23 and *American*

*Pipe* . . . would be disserved[] by guaranteeing a separate suit at the same time that a class action

is ongoing."); *McMillian v. AMC Mortg. Servs., Inc.*, 560 F. Supp. 2d 1210, 1214–15 (S.D. Ala.

2008) (declining to find *American Pipe* tolling where class certification had not been decided

because such a rule would allow plaintiffs to rely on a putative class action "opportunistically

and only to the extent necessary to validate otherwise time-barred claims"); *Kozlowski v.*

*Sheahan*, 2005 WL 3436394, at *3 (N.D. Ill. Dec. 12, 2005) (citing *Wyser-Pratte* and *Glater*)

("The weight of authorities militates against applying the tolling doctrine to the present case

because class certification . . . is pending."); *Chinn v. Giant Food, Inc.*, 100 F. Supp. 2d 331,

334–35 (D. Md. 2000) (holding that the *American Pipe* "rule does not apply to protect the

individual plaintiff who files an independent action after the statute of limitations has expired but

before a certification decision has been rendered in a timely class complaint which supposedly includes the plaintiff") (quotation marks and citation omitted).[9]

The Supreme Court's recent decision in *China Agritech, Inc. v. Resh*, which rejected an expansion of *American Pipe* tolling, further bolstered the rationale for these decisions. 138 S. Ct. 1800 (2018). The Court noted that "[t]he watchwords of *American Pipe* are efficiency and economy of litigation," *id.* at 1811, and declined to expand the tolling doctrine beyond the contexts from which *American Pipe* and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) arose. 138 S. Ct. at 1806 ("*American Pipe* and *Crown, Cork* addressed only putative class members who wish to sue individually *after a class-certification denial*.") (emphasis added). The Court held that a plaintiff could not rely on *American Pipe* tolling to bring a successive class action after a class-certification denial because "[t]he 'efficiency and economy of litigation' that support tolling individual claims" filed after a class-certification denial would not support such a rule. *Id.* (quoting *American Pipe*, 414 U.S. at 553). This is because "*American Pipe* tolls the limitation period for individual claims because economy of litigation favors delaying those claims *until after a class-certification denial*." *Id.* (emphasis added). "If certification is denied, only then would it be necessary to pursue claims individually." *Id.* at 1807. *China Agritech* demonstrates that courts in this District and elsewhere have been correct to decline to apply

---

[9] There is a circuit split as to whether opt-out plaintiffs can benefit from *American Pipe* tolling before a class certification decision. *Compare Wyser-Pratte*, 413 F.3d at 568–69, *and Glater*, 712 F.2d at 739, *with In re WorldCom Sec. Litig.*, 496 F.3d 245, 256 (2d Cir. 2007). Courts in this District have unanimously rejected the overbroad reading of *American Pipe* allowing tolling for pre-class certification opt-out actions. And while the Third Circuit held that intervenors in a class action may benefit from *American Pipe* in *Wallach v. Eaton Corp.*, 837 F.3d 356, 373–74 (3d Cir. 2016), it has never expanded *American Pipe* to individual actions filed before a decision on class certification.

*American Pipe* tolling to claims brought before class certification is decided, as permitting

tolling in such circumstances would reduce, rather than enhance, judicial economy.[10]

### C.   Plaintiff's Section 10(b) Claim Is Barred By The Statute Of Repose To The Extent It Rests On Statements Made Before June 6, 2013

Plaintiff's claims based on statements made in January and February 2013 are also

independently untimely under Section 10(b)'s five-year statute of repose.  *See* Compl. ¶¶ 122-25.

The Third Circuit has unambiguously held that the "repose period applicable to § 10(b) claims as

set out in . . . 1658(b)(2) begins to run on the date of the alleged misrepresentation."  *Exxon*, 500

F.3d at 200.  As such, claims arising from statements made before June 6, 2013 are untimely.

*See id.* at 202 (affirming dismissal of Section 10(b) and 20(a) claims based on alleged

misrepresentations made more than five years before action was brought); *Zazzali v. Alexander*

*Partners, LLC*, 2013 WL 5416871, at *10–11 (D. Del. Sept. 25, 2013) (dismissing any Section

10(b) claims based on misrepresentations made more than five years before complaint was filed);

*Kuwait Inv. Office v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 807 (S.D.N.Y. 2015) ("[B]ecause

the statute of repose runs from the date of each relevant misstatement or omission, the Exchange

---

[10] In emphasizing that the purpose of *American Pipe* is to maximize judicial economy by reducing the number of lawsuits filed before class certification, *China Agritech* rejected the reasoning of those courts holding that opt-out plaintiffs can benefit from *American Pipe* before a decision on class certification.  *See, e.g.*, *WorldCom*, 496 F.3d at 256 (erroneously asserting that the primary purpose of *American Pipe* tolling is to protect class members from being forced to file individual suits).

Act claims . . . must be dismissed to the extent the claims are based on misstatements or omissions made more than five years before the respective filing dates.").[11]

*American Pipe* tolling never applies to a statute of repose. *ANZ*, 137 S. Ct. at 2055; *see also China Agritech*, 138 S. Ct. at 1809 (noting that the time to file claims governed by Section 1658(b)(2)'s five-year statute of repose "has a finite end"); *N. Sound Capital LLC v. Merck & Co.*, 702 F. App'x 75, 81 (3d Cir. 2017) (reversing denial of motion to dismiss Section 10(b) and 20(a) claims because "*ANZ* made clear that *American Pipe* recognized a form of equitable tolling that does not apply to the federal securities laws' statutes of repose"). This is because, "[b]y establishing a fixed limit, a statute of repose implements a 'legislative decision that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability.'" *ANZ*, 137 S. Ct. at 2051 (quoting *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014)). This objective, "to grant complete peace to defendants, supersedes" the application of the equity-based *American Pipe* tolling rule. *Id.* at 2052. Plaintiff's Section 10(b) claims arising from statements made in January and February 2013 therefore must be dismissed. *See Cohen v. Telsey*, 2009 WL 3747059, at *9, *11 (D.N.J. Nov. 2, 2009) (holding that "tolling principles do not apply" to Section 1658(b)'s statute of repose and dismissing Section 10(b) and 20(a) claims brought more than five years after alleged misrepresentation); *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos.*, 829 F.3d 173, 177 (2d Cir. 2016) (holding that "*American*

---

[11] Before *California Public Employees' Retirement System v. ANZ Securities, Inc*., 137 S. Ct. 2042 (2017), some district courts stated in *dicta* that the statute of repose runs from the date of the last alleged misstatement. *See, e.g.*, *N. Sound Capital LLC v. Merck & Co.*, 2015 WL 5055769, at *4 (D.N.J. Aug. 26, 2015); *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 2012 WL 6840532, at *2 (D.N.J. Dec. 20, 2012). In each of those cases, *all* of the misstatements were more than five years old so there was no reason for the Court to address each misstatement separately. *N. Sound Capital*, 2015 WL 5055769, at *1; *In re Merck*, 2012 WL 6840532, at *2.

*Pipe* tolling does not apply to § 1658(b)(2)'s five-year statute of repose" and dismissing Section 10(b) and 20(a) claims based on misrepresentations made more than five years before complaint was filed).

### D.     The Section 20(a) Control Person Claims Fail Because Plaintiff Has Not Stated Viable Violations Of Section 10(b)

Plaintiff also alleges control person liability against Valeant and Messrs. Pearson, Schiller, and Rosiello.  Compl. ¶¶ 456-62.  To sustain these claims, Plaintiff first "must prove . . . a primary violation of the securities laws."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006).  Because Plaintiff's Section 10(b) claims are barred by the statute of limitations, Plaintiff's control person claims fail as a matter of law.  *Bartesch v. Cook*, 941 F. Supp. 2d 501, 513 (D. Del. 2013).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court strike all purported class allegations from the Complaint with prejudice and dismiss Plaintiff's Complaint with prejudice.

January 14, 2019

**DEBEVOISE & PLIMPTON LLP**

/s/ *Holly S. Wintermute*
Holly S. Wintermute
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Fax: (212) 909-6836

Jonathan R. Tuttle (*pro hac vice*)
Ada. F. Johnson (*pro hac vice*)
801 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 383-8000
Fax: (202) 383-8118

*Counsel for J. Michael Pearson*

**WINSTON & STRAWN LLP**

/s/ *James S. Richter*
James S. Richter
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Fax: (212) 294-4700

*Counsel for Howard B. Schiller*

**SCHULTE ROTH & ZABEL LLP**

/s/ *Cara David*
Cara David
Barry A. Bohrer (*pro hac vice*)
919 Third Avenue
New York, NY 10022
Telephone: (212) 756-2000
Fax: (212) 593-5955

*Counsel for Deborah Jorn*

**McCARTER & ENGLISH, LLP**

/s/ *Richard Hernandez*
Richard Hernandez
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 848-8615
Fax: (973) 297-6615

*Local counsel for Valeant Pharmaceuticals International, Inc., Robert L. Rosiello, Ari S. Kellen, and Tanya Carro*

**SIMPSON THACHER & BARTLETT LLP**

Paul C. Curnin (*pro hac vice*)
Craig S. Waldman (*pro hac vice*)
Daniel J. Stujenske (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Fax: (212) 455-2502

*Counsel for Valeant Pharmaceuticals International, Inc., Robert L. Rosiello, and Ari S. Kellen*

**COOLEY LLP**

William J. Schwartz (*pro hac vice*)
Sarah Lightdale (*pro hac vice* pending)
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 479-6000
Fax: (212) 479-6275

*Counsel for Tanya Carro*