MICHAEL CRITCHLEY, SR.
mcritchley@critchleylaw.com
CHRISTOPHER W. KINUM
cwkinum@critchleylaw.com
CRITCHLEY, KINUM & DENOIA LLC
75 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 422-9200

ANDREW J. ENTWISTLE
aentwistle@entwistle-law.com
ROBERT N. CAPPUCCI
rcappucci@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
299 Park Avenue, 20th Floor
New York, NY 10171
Telephone: (212) 894-7200
Facsimile: (212) 894-7272

MARC M. SELTZER (admitted *Pro Hac Vice*)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Attorneys for Plaintiff Timber Hill LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Case No. 3:15-cv-07658<br><br>Judge Michael A. Shipp<br>Magistrate Judge Lois H. Goodman<br><br>Judge Dennis M. Cavanaugh, U.S.D.J. (ret.)<br>Special Master |
| This Document Relates To:<br><br>3:15-cv-07658-MAS-LHG | TIMBER HILL LLC'S OBJECTIONS TO SETTLEMENT AND PLAN OF ALLOCATION |

# Table of Contents

I.    BACKGROUND ...........................................................................................5

II.   LEGAL STANDARD ...................................................................................8

      A.   Certification of a Settlement Class...........................................................8

      B.   Whether the Proposed Settlement and Corresponding Plan of
           Allocation Are Fair, Reasonable and Adequate.................................10

III.  THE COURT SHOULD DENY FINAL APPROVAL .................................11

      A.   The Proposed Plan Of Allocation Is Not Fair, Reasonable Or
           Adequate.................................................................................................11

      B.   Lead Plaintiff Is Neither Adequate Nor Typical ................................18

IV.   PROPOSED RESOLUTION.......................................................................22

V.    CONCLUSION............................................................................................23

# Table of Authorities

## Cases

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................... 8, 20

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ..........................................................10

*Dau v. Cephalon, Inc.*,
No. 99-CV-2439, 2000 WL 1469347 (E.D. Pa. Sept. 25, 2000) ............. 2, 16

*Deutschman v. Beneficial Corp.*,
841 F.2d 502 (3d Cir. 1988) ..................................................... 13, 15

*Dewey v. Volkswagen Aktiengesellschaft*,
681 F.3d 170 (3d Cir. 2012) ...................................................... 9, 18

*Friedman v. Quest Energy Partners LP*,
261 F.R.D. 607 (W.D. Okla. 2009) ...................................................6

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ..........................................................10

*In re Allergan*, *Inc. Proxy Violation Securities Litig.*
No. SACV 14-2004-DOC (JCGx), 2015 WL 7352005, (C.D. Cal.
Nov. 9, 2015) ..............................................................................16

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..........................................................11

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005) .........................................................8, 9

*In re Computron Software, Inc. Sec. Litig.*,
6 F. Supp. 2d 313 (D.N.J. 1998)....................................................11

*In re Congoleum Corp.*,
426 F.3d 675 (3d Cir. 2005) ...........................................................9

*In re DVI Inc. Sec. Litig.*,
No. 2:03–CV–05336–LDD, (Ed. Pa. June 12, 2015)....................................20

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ........................................................... 9, 10, 12, 19

*In re Initial Pub. Offering Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005) ...................................................................23

*In re Nat'l Football League Players' Concussion Injury Litig.*,
  307 F.R.D. 351 (E.D. Pa. 2015),
  *aff'd*, 821 F.3d 410 (3d Cir. 2016) ................................................................9

*In re New Jersey Tax Sales Certificates Antitrust Litig*,
  No. 12-1893 (MAS) (TJB), 2016 WL 5844319 (D.N.J. Oct. 3, 2016) .........11

*In re OCA, Inc. Sec. & Derivative Litig.*,
  No. 05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009) ..............................14

*In re Pet Food Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010) ..........................................................................11

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ............................................................................9

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ............................................................23

*McDonough v. Toys "R" Us, Inc.*,
  80 F. Supp. 3d 626 (E.D. Pa. 2015) ....................................................... 14, 22

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ........................................................................................18

*Valley Drug Co. v. Geneva Pharm., Inc*.,
  350 F.3d 1181 (11th Cir. 2003) .....................................................................19

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005) ........................................................................10

*Walsh v. Great Alt. & Pac. Tea Co.*,
  726 F.2d 956 (3d Cir. 1983) ..........................................................................18

**Statutes**

15 U.S.C. § 78u ......................................................................................................22

**Rules**

Fed. R. Civ. P. 23 ............................................................................... 7, 8, 10

**Other Authorities**

Manual for Complex Litigation § 21.61 (4th Ed. 2004) ...........................................8

Newberg on Class Actions § 3:58 (5th ed.)) ............................................................9

Pursuant to Federal Rule of Civil Procedure 23(e)(5)(A), and the order granting preliminary approval of the class action settlement entered by the Special Master and adopted by Magistrate Judge Lois Goodman (Doc. Nos. 510, 515), Plaintiff and absent Class member Timber Hill respectfully objects to the proposed Settlement and Plan of Allocation in the above-captioned litigation and hereby gives notice of its intent to appear at the final approval hearing. As discussed below, the proposed Plan of Allocation suffers from two core deficiencies that render it unfair, unreasonable and inadequate.

First, the proposed Plan of Allocation gives preferential treatment to Valeant Common Stock and specified Valeant Debt Investors at the expense of Valeant Options Investors by allowing Valeant Common Stock and Valeant Debt Investors to share in the Net Settlement Fund on a *pro rata* basis based on their allowed claim amounts while the recovery of Valeant Options Investors is limited to a separate, arbitrarily-allocated and capped fund. Under the proposed Plan of Allocation: "(a) at least 95% of the Net Settlement Fund will be allocated collectively to Valeant common stock and the specified Valeant debt securities; and (b) no more than 5% of the Net Settlement Fund will be allocated to options on Valeant common stock." Doc. No. 539-5 at 101. Lead Plaintiff offers no justification for not allowing Valeant Options Investors to share in the recovery on a *pro rata* basis with all other investors, just as it offers no support for the wholly arbitrary 5% allocation itself — an

allocation that is only about half of the Valeant Options Investors' *pro rata* share of the overall recovery. To make matters worse, the putative allocation has a "cap" with a clawback feature such that any portion of the 5% allocation that is not paid out initially to Valeant Options Investors is added back into the *pro rata* pool shared by Valeant Common Stock and Debt Investors.

Second, unlike other Class members, the Plan of Allocation prevents Valeant Options Investors from sharing in the Net Settlement Fund based on their insider-trading claims pursuant to Section 20A of the Securities Exchange Act of 1934 (meritorious claims that are nevertheless released by the Settlement) in order to allow similarly situated Common Stock Investors to reap all of the recovery on those same claims.[1]

The inequities in the Plan of Allocation demonstrate that Lead Plaintiff failed to adequately represent the interests of Valeant Options Investors during the

---

[1] The law is clear that options investors have standing to recover insider-trading damages under Section 20A against defendants that trade contemporaneously in a company's common stock as is the case here. *Dau v. Cephalon, Inc.*, No. 99-CV-2439, 2000 WL 1469347, at *5 (E.D. Pa. Sept. 25, 2000) (contemporaneous purchasers of stock have standing to bring § 20A claim against insider purchase of options). Moreover, options investors in other Section 20A cases have been allocated significant amounts on par with their class-wide provable damages. *See In re Allergan, Inc. Proxy Violation Securities Litig.* ("*In re Allergan*"), Case No. 8:14-cv-04004 (DOC) (KESx), Doc. Nos. 558, 560, 562, 563, 564, 570, 571 (options investors, who were permitted to prosecute their own claims (including Section 20A claims) because of conflicts similar to those at issue here, recovered $40m — approximately 13.7% of the total settlement consideration paid to all investors of $290 million).

negotiation of the Settlement and preparation of the Plan of Allocation — despite this Court's prior warning to Lead Plaintiff that Timber Hill's motion in opposition to consolidation had placed Lead Plaintiff on notice of the potential conflicts that now taint the proposed Plan of Allocation.  Doc. No. 392 at 11 ("Given that Timber Hill has raised this issue now, Timber Hill's motion has the salutary effect of putting the Lead Plaintiff and the Court on notice that this issue may arise in the future."). The class certification requirements of Fed. R. Civ. P. 23(a)(4) – which require heightened scrutiny in the settlement-only context – have thus not been met and, accordingly, Timber Hill respectfully requests that the Court deny final approval of the Settlement.  In the event the Court grants final approval, Timber Hill respectfully requests that the Court disapprove the Plan of Allocation unless it is modified by:

    (i)     Permitting Valeant Common Stock Investors, Investors in Certain Specified Debt Securities and Valeant Options Investors to share *pro rata* in the Net Settlement Fund (thereby eliminating the arbitrary allocation and cap on the recovery by Valeant Options Investors under the proposed Plan of Allocation and assuring that all investors share the recovery on a *pro rata* basis);

    (ii)    Allowing Valeant Options Investors that traded contemporaneously opposite the insider trading defendants to

3

receive the same Section 20A enhancement as Valeant Common Stock Investors; and

(iii)   Making those additional changes reflected on the redlined version of the proposed Plan of Allocation, attached hereto.

The District Court recently noted that Timber Hill has standing to object pursuant to Federal Rule of Civil Procedure 23(e)(5)(A) as an absent Class member, in connection with ruling on Timber Hill's objection to the Special Master's Order and the Preliminary Approval Order (Doc. No. 544), also submitted as Ex. 2 to Declaration of Andrew J. Entwistle in Support of Timber Hill LLC's Objections to Settlement and Plan of Allocation ("Entwistle Decl."). *See also*, *Timber Hill LLC v. Valeant Pharm. Int'l, Inc.*, No. 18-cv-10246 (D.N.J.), Doc. No. 1 (and the certification annexed thereto — all demonstrating Timber Hill's membership in the Settlement Class).[2]   Timber Hill notes that its objection applies to and is made on behalf of all Valeant Options Investors.  At the hearing on final approval, Timber Hill may call Michael A. Marek, CFA and introduce the materials attached to the Declaration of Andrew J. Entwistle (including the Declaration of Michael A. Marek, CFA), filed concurrently herewith, and reserves its right to present additional evidence in response to Lead Plaintiff's further submissions.

---

[2] *See also* Entwistle Decl., Ex. 5, which demonstrates Timber Hill's membership in the Settlement Class.

## I.      BACKGROUND

Timber Hill filed a class action complaint (the "*Timber Hill* action") on June 6, 2018, on behalf of Valeant Pharmaceuticals International, Inc. Options Investors, which collectively suffered billions of dollars in losses as a result of violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by Valeant and certain of its senior executives.  *Timber Hill LLC v. Valeant Pharm. Int'l, Inc.*, No. 18-cv-10246 (D.N.J.).   Timber Hill sought to represent a class composed of "all persons or entities that purchased call options on Valeant common stock and/or sold put options on Valeant common stock during the class period and were damaged thereby" because such Valeant Options Investors were not expressly included in the Valeant Common Stock and Debt action.  *See* No. 18-10246, Doc. No. 1 at ¶ 444. To protect and advance the interests of Valeant Options Investors, Timber Hill spent months investigating potential recovery strategies which included extensive consultation with options damages experts, the development of a discrete damages model for Valeant options and examination of market efficiency as it relates to options. The *Timber Hill* action was automatically consolidated with the above-captioned action.  Doc Nos. 317, 318.

Timber Hill timely sought relief from the Consolidation Order on the ground that Lead Plaintiff and its counsel were unlikely to adequately "protect the interests of derivatives traders due to potentially conflicting positions regarding, among other

things, the allocation of any recovery." Doc. No. 322-1 at 3. In its motion, Timber Hill specifically noted that should the matter proceed to summary judgment and trial, calculation of the options investors' damages would "likely require different experts using different methodologies than those employed by" Lead Plaintiff. *Id.* Timber Hill also explained that options investors would seek to recover from "the common set of defendants as the purchasers of Valeant equity securities and senior notes, and 'a single lead plaintiff will be unable to have undivided loyalties to vigorously pursue recovery on behalf of both classes due to the inherent conflict that is caused by the competition for the same limited funds for recovery.'" *Id.* at 4 (citing *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 610 (W.D. Okla. 2009)).

In its opposition to the motion for relief from the consolidation order, Lead Plaintiff maintained that it would represent the interests of Valeant Options Investors and assured the Court that it was "more than adequate to represent all purchasers of Valeant securities, including those who traded in options." Doc. No. 323 at 22; Doc. No. 329-1 at 1.

The Court acknowledged that "a failure to protect the rights of derivatives traders will likely impact this litigation at later stages." Entwistle Decl., Ex. 1 (Doc. No. 392) at 11-12.[3]   The Court then observed: "Given that Timber Hill has raised

---

[3] Valeant Options Investors were referred to as "derivatives traders" in the consolidation proceedings.

6

this issue now, Timber Hill's motion has the salutary effect of putting the Lead Plaintiff and the Court on notice that this issue may arise in the future." *Id.* at 11.

Even though Lead Plaintiff was expressly put on notice by Timber Hill and the Court of the potential for inadequate representation of the interests of derivative securities investors, Lead Plaintiff nevertheless devised an unfair Plan of Allocation that arbitrarily discriminates against Valeant Options Investors by unjustly imposing a cap limiting their recovery while all other investors share in the Net Settlement Fund proceeds *pro rata*. This differential treatment is exactly the type of harm the Court anticipated might occur and warned Lead Plaintiff to avoid. Lead Plaintiff did not inadvertently overlook the interests of Valeant Options Investors. It was well aware of the potential for conflict, and instead of developing a Plan of Allocation that treated Valeant Options Investors fairly and on the same terms as other Valeant Investors, Lead Plaintiff crafted a Plan of Allocation that unfairly favors Valeant Common Stock and Debt Investors to the detriment of Valeant Options Investors. This differential treatment is all the more egregious when one considers it is easily cured by simply allowing Valeant Options Investors to share in the recovery on a *pro rata* basis with all Class members — the same treatment afforded all other investors under the proposed Plan of Allocation.

## II.   LEGAL STANDARD

In order to give approval to a pre-certification class action settlement, the Court must find:  (1) the proposed settlement meets the requirements for class certification pursuant to Fed. R. Civ. P. 23(a); and (2) the settlement is fair, reasonable and adequate pursuant to Fed. R. Civ. P. 23(e)(2).  Where, as here, the settlement was negotiated prior to class certification, exceptional judicial scrutiny is warranted.

### A.   Certification of a Settlement Class

Class action settlements reached prior to certification present "special problems" that implicate significant due process rights of absent class members.  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005).  Rule 23(a)'s provisions should therefore be given "heightened" scrutiny in the settlement class context. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  "[T]he judge must adopt the role of a skeptical client and critically examine the class certification elements, the proposed settlement terms, and procedures for implementation."  Manual for Complex Litigation § 21.61 (4th ed. 2004).  Where, as here, the requirements of class certification were never litigated in an adversarial context, the Court must carefully scrutinize the negotiation processes driving pre-certification settlements to ensure adequacy of representation.  *See Cmty. Bank of N. Va.*, 418 F.3d at 307-08; *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*Gen. Motors*"),

55 F.3d 768, 796-97 (3d Cir. 1995); *see also*, *In re Congoleum Corp.*, 426 F.3d 675, 693 (3d Cir. 2005) (quoting *Cmty. Bank of N. Va.*, 418 F.3d at 318).

With regard to certification of a settlement class under Rule 23, the adequacy prong of Rule 23(a)(4) requires two steps. "First, the adequacy inquiry 'tests the qualifications of the counsel to represent the class.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004). The second component of the adequacy inquiry seeks "to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* "Not every distinction between a class member and a class representative renders the representative inadequate." *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 376 (E.D. Pa. 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016). However, "[a] fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class." *Id.* (citing *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012) (alteration in original) (internal quotation marks omitted). This occurs when, "by maximizing their own interests, the putative representatives would necessarily undercut the interests of another portion of the class." *Id.* (citing Newberg on Class Actions § 3:58 (5th ed.)). Benefits awarded to some class members, but not others, without adequate justification may indicate that other class members were inadequately represented. *Id.* (*citing Gen. Motors,* 55 F.3d at 797).

**B.** **Whether the Proposed Settlement and Corresponding Plan of Allocation Are Fair, Reasonable and Adequate**

Under Federal Rule of Civil Procedure 23(e)(2), a Court may approve the settlement of a class action "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The factors that are relevant to the determination of whether a settlement is "fair, reasonable, and adequate" include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possibly recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)). "This nine-factor test requires this Court to conduct both 'a substantive inquiry into the terms of the settlement relative to the likely rewards of litigation' and 'a procedural inquiry into the negotiating process.'" *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 235 (D.N.J. 2005), citing *Gen. Motors*, 55 F.3d at 796. "The settling parties bear the burden of proving that the *Girsh* factors weigh in favor of approval of the settlement." *In re New Jersey Tax Sales Certificates Antitrust Litig*, No. 12-1893 (MAS) (TJB), 2016 WL

5844319, at *6 (D.N.J. Oct. 3, 2016) (quoting *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010)).

The proposed Plan of Allocation of Settlement proceeds among Class members must also be approved as part of the Settlement.  The same standards that apply to approval of the Settlement as a whole also apply to the Plan of Allocation — *i.e.* the proposed Plan of Allocation must be fair, reasonable and adequate.  *In re Cendant Corp. Litig.,* 264 F.3d 201, 248 (3d Cir. 2001); *see also, In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998) (citations omitted) (approving plan of allocation where all class members were treated "in an identical matter").

## III.    THE COURT SHOULD DENY FINAL APPROVAL

### A.    The Proposed Plan Of Allocation Is Not Fair, Reasonable Or Adequate

The Proposed Plan of Allocation is unfair to Valeant Options Investors in two fundamental ways.  First, the proposed Plan of Allocation gives preferential treatment to Valeant Common Stock Investors and specified Valeant Debt Investors at the expense of Valeant Options Investors by allowing Valeant Common Stock Investors and Valeant Debt Investors to share in the Net Settlement proceeds on a *pro-rata* basis while the recovery of Valeant Options Investors is limited to a separate, arbitrarily-capped fund.  Under the proposed Plan of Allocation:  "(a) at least 95% of the Net Settlement Fund will be allocated collectively to Valeant

common stock and the specified Valeant debt securities; and (b) no more than 5% of the Net Settlement Fund will be allocated to options on Valeant common stock." Doc. No. 539-5 at 101. Lead Plaintiff offers no justification for not allowing Valeant Options Investors to share in the recovery on a *pro rata* basis with all other investors, just as it offers no support for the wholly arbitrary 5% allocation itself — an allocation that is only about half of the Valeant Options Investors' *pro rata* share of the recovery.  To make matters worse, the putative "cap" has a clawback feature such that any portion of the 5% allocation that is not paid out initially to Valeant Options Investors is added back into the *pro rata* pool shared by Valeant Common Stock and Debt Investors.

Second, the proposed Plan of Allocation inexplicably extinguishes, for no consideration and without reason or cause, the valid Section 20A insider-trading claims of Valeant Options Investors that transacted contemporaneously opposite the insider trading defendants all while providing that similarly situated Valeant Common Stock Investors share in the insider-trading enhancement.  Lead Plaintiff has, therefore, proposed an unfair Settlement that offers considerably more value to the Valeant Common Stock and Debt Investors than to Valeant Options Investors — thereby effectively "trading the claims of the latter group away in order to enrich the former group." *Gen. Motors*, 55 F.3d at 797.  This result is directly contrary to the due process considerations underlying Rule 23 and simply may not stand.

12

Lead Plaintiff provides no expert or other support for: excluding Valeant Options Investors from sharing *pro rata* with all other investors in the Net Settlement Fund; excluding Valeant Options Investors from sharing in the Section 20A recovery; creating a separate arbitrary allocation for Valeant Options Investors; arbitrarily setting the allocation at 5%; or creating a cap on such allocation with a clawback feature to return undistributed funds to the *pro rata* pool being shared by Valeant Common Stock and Debt Investors. Simply stated, the Motion for Final Approval is bereft of any factual, legal or expert support for why it is fair and reasonable to treat the claims of Valeant Options Investors differently from Common Stock and Debt Investors who share *pro ratably* in all of the Settlement proceeds.[4]

As to the imposition of an arbitrary allocation and cap, courts in this Circuit and elsewhere have long recognized that options investors stand on equal footing with common stock investors with respect to Exchange Act claims and, accordingly, should be treated alike and share in the Net Settlement Fund on a *pro rata* basis. *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 507 (3d Cir. 1988) ("We are not persuaded that the difference between trading in the two types of securities should

---

[4] Ironically, the expert affidavit submitted in support of Lead Plaintiff's Class Certification motion actually argues against the disparate treatment of Valeant Options Investors insofar as it concludes the Valeant Options Investors traded in an efficient market, traded securities with a readily determinable value which was derivable from the price of Valeant Common Stock and Debt and that those investors had the same types of claims as Valeant Common Stock and Debt Investors. Doc. No. 539-12 (Feinstein Decl. at 19-21, 29-30, 33-34, 67-70).

lead to different treatment."). Where there is "no evidentiary justification in the record" for disparate recoveries among class members, funds should be distributed on a *pro rata* basis. *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 648 (E.D. Pa. 2015) (revising plan of allocation to distribute settlement funds on a *pro rata* basis because there was "no evidentiary justification in the record" for disparate recoveries among subclasses). *See also In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *6 (E.D. La. Mar. 2, 2009) (approving a plan of allocation that specified: "[t]o the extent that class members' claims exceed the Net Settlement Fund, each claimant will be compensated on a *pro rata* basis according to the claimants' calculated loss under the allocation plan.").

In fact, Lead Plaintiff's description of the Plan of Allocation in the final approval papers appears to acknowledge that a *pro rata* distribution is appropriate, while omitting any discussion of the cap on recovery for Valeant Options Investors: "The Plan of Allocation treats the Class equitably by providing that each Class Member that properly submits a valid Proof of Claim and Release form will receive a *pro rata* share of the monetary relief. It too is fair, reasonable, and adequate, and should be approved." Doc. No. 539-1 at 3-4. In fact, Lead Plaintiff makes only a passing reference to the cap in a declaration submitted in support of final approval,

noting that the cap is "consistent with options caps used in other securities class action settlements." Doc. No. 539-3 at 10.[5]

In this regard, the Plan of Allocation is wholly at odds with the terms of the Stipulation of Settlement itself which, in the words of Lead Counsel provides "that each Class member that properly submits a valid Proof of Claim and Release form will receive a *pro rata* share of the monetary relief based on the terms of the Plan of Allocation." *See*, Doc. No. 539-1 at 35. Nowhere does the Stipulation of Settlement provide that all Settlement Class members will share in the Settlement proceeds on a *pro rata* basis **except** Valeant Options Investors. Plainly stated, the differential treatment of Valeant Options Investors is a construct of Lead Plaintiff and Lead Counsel that was never bargained for by Valeant Options Investors, that is without support in law, fact or equity and that is wholly contrary to the requirements of Rule 23 and applicable Third Circuit law.

With respect to the Section 20A insider-trading claims of Valeant Options Investors, the law is quite clear that Valeant Options Investors have the same insider-trading claims against defendants that trade contemporaneously in common stock as the Valeant Common Stock Investors. *Deutschman* 841 F.2d at 504 ("holders of option contracts are susceptible to two separate types of deceptive practices: insider

---

[5] The single case cited in support by Lead Plaintiff in that context is wholly unavailing insofar as no interested party objected to the plan of allocation and the court's order does not indicate that it gave the issue any special scrutiny.

trading and affirmative misrepresentation."); *Dau*, 2000 WL 1469347, at *5 (contemporaneous purchasers of stock have standing to bring § 20A claim against insider purchase of options); *In re Allergan*, *Inc. Proxy Violation Securities Litig.* No. SACV 14-2004-DOC (JCGx), 2015 WL 7352005, at *9 (C.D. Cal. Nov. 9, 2015) (same). Of course, in *In re Allergan*, the Court allowed the claims of options investors to proceed separately from the claims of common stock investors because of obvious conflicts between the groups of investors in that case, ultimately approving settlement of Section 20A and Section 10(b) claims by options holders in a separate settlement of those claims that represented more than 13.7% of the total recoveries by all investors in the related litigations. *See In re Allergan, Inc. Proxy Violation Securities Litig.*, Case No. 8:14-cv-02004 (DOC) (KESx), Doc. Nos. 558, 560, 562, 563, 564, 570, 571. In this regard, Lead Plaintiff offers no basis on which to deprive Valeant Options Investors from sharing in the Section 20A enhancement *pro rata* with similarly situated Valeant Common Stock Investors, much less any basis to completely extinguish the Section 20A claims of Valeant Options Investors under the proposed Plan of Allocation.[6]

---

[6] Lead Plaintiff purports to give Defendants releases of the Valeant Options Investors' Section 20A claims despite the fact that the proposed Plan of Allocation deprives Valeant Options Investors of any consideration for those releases. Doc. No. 539-5 at 115-16.

Leaving aside that the only wholly equitable solution is for all investors to share on a *pro rata* basis, it is also worth noting that the putative allocation appears to be wholly arbitrary as it bears no relationship to the damages at issue here. Timber Hill's calculation of aggregate Class-wide damages for Common Stock, Debt and Options Investors based on Lead Plaintiff's own Plan of Allocation submitted in connection with its Objection to Preliminary Approval (and uncontested by Lead Plaintiff), demonstrates total options damages of $3,765,590,117; (ii) total debt damages of $3,857,171,767; and (iii) total common stock damages of $32,064,194,203, for total aggregate Class-wide damages under the Plan of Allocation or all three groups of investors of $39,686,956,087. *See* Doc No. 517; Entwistle Declaration Ex. 4, Marek Decl. at ¶¶ 11-19. Thus, if Lead Plaintiff had based the allocation on the Valeant Options Investors' actual share of aggregate Class-wide damages Valeant Options Investors the cap would have been 9.49% not 5%.[7]

---

[7] Even changing the allocation to 9.49% does not solve the problem of course because it is almost always the case that the claims rate in securities cases is less than 100% under even the most robust notice and claims programs. As a result, claimants sharing on a *pro rata* basis often have a greater recovery per share or unit than is reflected on the Notice of Settlement. However, under a cap such as that here, claimants are limited in their recovery with any unclaimed funds being clawed back to increase the uncapped *pro rata* pool for Common Stock and Debt Investors rather than to Options claimants in the pool. If the allocation was increased to 9.49%, the clawback feature was eliminated and Valeant Options Investors with Section 20A claims receive the same Section 20A enhancement to their recovery as Valeant

"The Court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Walsh v. Great Alt. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983). Here, nothing justifies the disparate treatment of the Valeant Options Investors. Because the Plan of Allocation does not satisfy the requirements of Rule 23, the Court should deny Lead Plaintiff's motion for final approval and should not approve the Plan of Allocation.

## B.  Lead Plaintiff Is Neither Adequate Nor Typical

The inequity of the Plan of Allocation should also preclude the Court from certifying a settlement class that includes both Valeant Common Stock and Debt Investors and Valeant Options Investors under Lead Plaintiff's sole leadership. The disparate treatment of Valeant Options Investors demonstrates that Lead Plaintiff has not adequately represented the interests of Valeant Options Investors and is not inclined to do so. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) ("class settlements must provide structural assurance of fair and adequate representation for the diverse groups and individuals affected") (citations omitted); *Dewey*, 681 F.3d at 184 ("A conflict concerning the allocation of remedies amongst class members

---

Common Stock Investors, then Valeant Options Investors would be equitably treated here. While Timber Hill believes it is far simpler to simply treat everyone on a *pro rata* basis, it has no objection if the Court determines to increase the allocation to 9.49%, eliminate the clawback and give Valeant Options Investors the 20A enhancment.

with competing interests can be fundamental and can thus render a representative plaintiff inadequate.") (citation omitted).

Lead Plaintiff's failure to devise a Plan of Allocation that would treat Valeant Options Investors fairly is particularly concerning in light of the parties' briefing on the motion for relief from the consolidation order. Lead Plaintiff was aware of the potential for conflict by both the briefing and this Court's specific statement that Timber Hill's motion had placed Lead Plaintiff on notice of the potential conflicts. Lead Plaintiff disregarded the Court's clear warning by devising a Plan of Allocation that differentially treated Valeant Options Investors to the clear benefit of Valeant Common Stock and Debt Investors. While Lead Plaintiff could have easily proposed a plan of allocation that distributed the Net Settlement Fund to all Valeant investors on a *pro rata* basis, the proposed Plan of Allocation creates antagonism within the Class, directly impacting the question of adequate representation. *See Gen. Motors*, 55 F.3d at 800 (remanding order granting final approval because, *inter alia*, the settlement agreement created antagonism within the class). Because the conflict relates to the distribution of Settlement funds, the intra-class conflict is fundamental and prevents Lead Plaintiff from adequately representing the Class, which should bar certification of a Settlement Class. *See Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190, 1194 (11th Cir. 2003) (finding that failure to address whether

wholesalers had fundamental conflict with the remainder of the class was an abuse of discretion).

Lead Plaintiff did not address this intra-class conflict in its Motion for Final Approval (despite the fact it was also raised in Timber Hill's Objection to Preliminary Approval. Doc. No. 517 at 10-12). The cases Lead Plaintiff cites to demonstrate adequacy are both unavailing and actually support Timber Hill's position. In both cases, the courts certified a class of investors of different types of securities ***and*** approved plans of allocation that distributed the net settlement fund on a ***pro rata basis.*** *See* Entwistle Decl., Ex. 6, *In re DVI Inc. Sec. Litig*., No. 2:03–CV–05336–LDD, Doc. No. 1003-4 (Ed. Pa. June 12, 2015) (approving a plan of allocation that distributed the funds on a *pro rata* basis, with no arbitrary cap).

In *Amchem*, the Supreme Court affirmed the Third Circuit's determination that certification of a settlement class was improper on grounds of inadequate representation where the settlement itself showed intra-class disparities, noting the need for "structural assurance of fair and adequate representation" when groups of claimants have competing interests. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 610, 627-28 (1997) (observing that the settlement at issue made "important judgments on how recovery is to be allocated among different kinds of plaintiffs, decisions that necessarily favor some claimants over others."). Here, too, the disparate treatment of Class members should bar certification of a Settlement Class

that includes both Common Stock and Debt Investors and Valeant Options Investors under Lead Plaintiff's sole leadership.

The Notice distributed to Class members is also defective and further demonstrates how Counsel for Lead Plaintiff is favoring the interests of Valeant Common Stock and Debt Investors over Valeant Options Investors.  There are references in the Notice to the expected recovery for Common Stock Investors, but no mention of expected recovery for Valeant Options Investors.  The Notice provides: "Based on Lead Plaintiff's estimate of the number of Valeant Securities eligible to recover, the average distribution under the Plan of Allocation is roughly $2.13 per common share, before deduction of any taxes on the income earned on the Settlement Fund, Notice and Administration Expenses, and attorneys' fees and expenses (including any awards to Plaintiffs) as determined by the Court."  Doc. No. 539-5 at 93.  It also details that "[t]he requested attorneys' fees, charges and expenses amount to an average cost of approximately $0.28 per common share."  Doc. No. 539-5 at 94-95.[8]

Not only does the failure to provide an estimated recovery for Options Investors demonstrate Lead Plaintiff's disparate treatment of Options Investors, it

---

[8] The lack of any reference to attorneys' fees and costs allocated to options recoveries suggests Lead Counsel does not intend to take a fee on such amounts.  In any event, in the absence of notice to the Class, no such allocation would be appropriate.

violates the settlement notice requirements dictated by the PSLRA. Under the PSLRA, every settlement notice must include a statement explaining a plaintiff's recovery: "The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average *per share* basis." 15 U.S.C. § 78u–4(a)(7)(A). The notice must also include a statement of "the average amount of damages *per share* that would be recoverable if the plaintiff prevailed on each claim alleged." 15 U.S.C. § 78u–4(a)(7)(B) (emphasis added). The Notice here only specifies damages on a "per common share" basis and leaves out the expected recovery for Valeant Options Investors. As with the Plan of Allocation, Lead Plaintiff provides no reason why it provided this estimate only for Common Stock Investors.

## IV.    PROPOSED RESOLUTION

While Timber Hill respectfully submits that the Court should deny final approval on grounds of disparate treatment and inadequacy of representation, in the alternative, Timber Hill respectfully asks the Court to disapprove the Plan of Allocation unless it is modified to (1) permit all Class members to share *pro rata* in the Net Settlement Fund; (2) allow the Valeant Options Investors to recover their insider-trading losses pursuant to Exchange Act Section 20A; and (3) make the other procedural and administrative changes reflected in pages 11-12, 14, 25-28 of the attached redlined Plan of allocation. *See McDonough*, 80 F. Supp. 3d at 649

(revising plan of allocation to distribute settlement funds on a *pro rata* basis because there was "no evidentiary justification in the record" for disparate recoveries among subclasses); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 201 (S.D.N.Y. 2005) (conditioning approval of class action settlement on modification of bar order); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 322, 344-46, 349 (S.D.N.Y. 2005) (granting final approval of settlement following modifications to proposed plan of allocation).   A proposed order approving the Settlement with an appropriately modified plan of allocation is submitted herewith.

## V.   CONCLUSION

Applying the heightened scrutiny required at this stage of final settlement review, the Court should deny final approval and settlement class certification pending substantive amendments to the Plan of Allocation to treat Valeant Options Investors equitably.

Dated:  May 6, 2020

Respectfully submitted,

*/s/ Andrew J. Entwistle*

MICHAEL CRITCHLEY, SR.
mcritchley@critchleylaw.com
CHRISTOPHER W. KINUM
cwkinum@critchleylaw.com
**CRITCHLEY, KINUM &
DENOIA LLC**
75 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 422-9200

ANDREW J. ENTWISTLE
aentwistle@entwistle-law.com
ROBERT N. CAPPUCCI
rcappucci@entwistle-law.com
**ENTWISTLE & CAPPUCCI LLP**
299 Park Avenue, 20th Floor
New York, NY 10171
Telephone: (212) 894-7200
Facsimile: (212) 894-7272
MARC M. SELTZER (admitted *Pro Hac Vice*)

mseltzer@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150

*Attorneys for Plaintiff Timber Hill LLC*

## Certificate of Service

The undersigned certifies that today he filed the foregoing objection and associated declaration on ECF which will send electronic notification to all attorneys registered for ECF-filing. The undersigned further certifies he caused to be served via USPS First Class Mail, postage prepaid, a copy of this Objection and associated declaration upon the following:

Hon. Michael A. Shipp,
U.S.District Court, District of New Jersey
Clarkson S. Fisher Building
and U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Hon. Dennis M. Cavanaugh, U.S.D.J. (ret.)
Special Master
McElroy, Deutsch, Mulvaney & Carpenter LLP
1300 Mount Kemble Ave
Morristown, NJ 07962

Theodore J. Pintar
Robbins Geller Rudman &   Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

Craig S. Waldman
Simpson Thacher & Bartlett LLP
425 Lexington Ave
New York, NY 10017

Dated:  May 6, 2020                          */s/ Andrew J. Entwistle*
          New York, New York              Andrew J. Entwistle