MICHAEL CRITCHLEY, SR.
mcritchley@critchleylaw.com
CHRISTOPHER W. KINUM
cwkinum@critchleylaw.com
CRITCHLEY, KINUM & DENOIA LLC
75 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 422-9200

ANDREW J. ENTWISTLE
aentwistle@entwistle-law.com
ROBERT N. CAPPUCCI
rcappucci@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
299 Park Avenue, 20th Floor
New York, NY  10171
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272

MARC M. SELTZER (admitted *Pro Hac Vice*)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150

*Attorneys for Plaintiff Timber Hill LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Case No. 3:15-cv-07658<br><br>Judge Michael A. Shipp<br>Magistrate Judge Lois H. Goodman<br><br>Judge Dennis Cavanaugh, Ret.<br>Special Master |
| This Document Relates To:<br><br>3:15-cv-07658-MAS-LHG | PLAINTIFF TIMBER HILL LLC'S OBJECTION TO THE SPECIAL MASTER'S REPORT & RECOMMENDATION GRANTING FINAL APPROVAL OF SETTLEMENT AND OPPOSITION TO LEAD PLAINTIFF'S MOTION TO ADOPT THAT REPORT & RECOMMENDATION |

# **TABLE OF CONTENTS**

Page(s)

I.    PRELIMINARY STATEMENT ..................................................................1

II.   BACKGROUND ......................................................................................7

III.  LEGAL STANDARD ..............................................................................9

      A.    Standard of Review ..............................................................9

      B.    Certification of a Settlement Class......................................10

      C.    Whether the Proposed Settlement and Corresponding Plan of
            Allocation Are Fair, Reasonable and Adequate ..................12

IV.   THE SPECIAL MASTER'S REPORT AND RECOMMENDATION........12

V.    ARGUMENT.........................................................................................14

      A.    The Special Master Erred in Finding That the Plan Of
            Allocation Treats Options Investors Equitably ...................14

      B.    The Special Master Erred in Finding That Lead Plaintiff Is
            Adequate and Typical and in Certifying a Settlement Class .............19

      C.    Lead Plaintiff's *Post-Hoc* Rationalizations Should Be Rejected........23

VI.   PROPOSED RESOLUTION.......................................................................28

i

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................ passim

*Deutschman v. Beneficial Corp.*,
  841 F.2d 502 (3d Cir. 1988) ............................................................................16

*Dewey v. Volkswagen Aktiengesellschaft*,
  681 F.3d 170 (3d Cir. 2012) ............................................................... 3, 11, 20

*Dickerson v. Kane*,
  No. 92-cv-2528, 1995 WL 428647 (D.N.J. July 17, 1995)...........................10

*Friedman v. Quest Energy Partners LP*,
  261 F.R.D. 607 (W.D. Okla. 2009) ..................................................................8

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...........................................................................12

*In re Cmty. Bank of N. Va.*,
  418 F.3d 277 (3d Cir. 2005) ...........................................................................10

*In re Computron Software, Inc. Sec. Litig.*,
  6 F. Supp. 2d 313 (D.N.J. 1998)......................................................................12

*In re Congoleum Corp.*,
  426 F.3d 675 (3d Cir. 2005) ...........................................................................10

*In re DVI Inc. Sec. Litig.*,
  No. 2:03–CV–05336–LDD, (E.D. Pa. June 12, 2015)....................................21

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ................................................................. 10, 11, 20

*In re Initial Pub. Offering Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005).....................................................................28

*In re Johnson & Johnson Derivative Litig.*,
  No. 10-2033 (FLW), 2013 WL 6163858 (D.N.J. Nov. 25, 2013) ................10

*In re Nat'l Football League Players' Concussion Injury Litig.*,
　　307 F.R.D. 351 (E.D. Pa. 2015),
　　*aff'd*, 821 F.3d 410 (3d Cir. 2016) .................................................................11

*In re OCA, Inc. Sec. & Derivative Litig.*,
　　No. 05-2165, 2009 WL 512081 (E.D. La. Mar. 2, 2009).............................16

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
　　535 F. Supp. 2d 249 (D.N.H. 2007) .........................................................4, 15

*In re Veritas Software Corp. Sec. Litig.*,
　　No. C-03-0283, 2005 WL 3096079 (N.D. Cal. Nov. 15, 2005)...............4, 15

*In re Warfarin Sodium Antitrust Litig.*,
　　391 F.3d 516 (3d Cir. 2004) .......................................................................11

*In re WorldCom, Inc. Sec. Litig.*,
　　388 F. Supp. 2d 319 (S.D.N.Y. 2005) .........................................................28

*McDonough v. Toys "R" Us, Inc.*,
　　80 F. Supp. 3d 626 (E.D. Pa. 2015)...................................................... 16, 28

*Ortiz v. Fibreboard Corp.*,
　　527 U.S. 815 (1999)...............................................................................3, 19

*Valley Drug Co. v. Geneva Pharm., Inc.*,
　　350 F.3d 1181 (11th Cir. 2003) .................................................................21

*Walsh v. Great Alt. & Pac. Tea Co., Inc.*,
　　726 F.2d 956 (3d Cir. 1983) .......................................................................16

**Statutes**

15 U.S.C. § 78u................................................................................................23

U.S.C.A. Const. art. III ......................................................................................5

**Rules**

Fed. R. Civ. P. 23 ........................................................................................3, 12

Fed. R. Civ. P. 53 ..........................................................................................1, 9

**Other Authorities**

Manual for Complex Litigation § 21.61 (4th Ed. 2004)..........................................10

Newberg on Class Actions § 3:58 (5th ed.)............................................................11

Pursuant to Fed. R. Civ. P. 53(f)(1)-(4), Plaintiff and Settlement Class member Timber Hill LLC ("Timber Hill") respectfully objects to the Report & Recommendation of the Special Master to grant certification of a Settlement Class and final approval of the Settlement and Plan of Allocation pursuant to Fed. R. Civ. P. Rules 23(c) and 23(e)(2) (ECF 575, the "R&R"), and opposes Lead Plaintiff's motion to adopt the R&R (ECF 576).

## I.     PRELIMINARY STATEMENT

Lead Plaintiff, having obtained a Settlement in excess of $1.2 billion, believed to be at or near the maximum that the settling defendants are able to pay, designed a Plan of Allocation that arbitrarily and unfairly capped one group of Class members—the Options Investors—at 5% of the Settlement proceeds (in the aggregate) without capping recovery by other Class members—the Common Stock and Debt Investors. This was despite the fact that Options Investors suffered in aggregate 9.49% of the total Class-wide losses under Lead Plaintiff's Plan of Allocation according to undisputed expert analysis. Far from alerting the Class and the Court and providing the required empirical support for this "reduction" and the disparate treatment it created, Lead Plaintiff attempted an end-run around the statutory and due process protections afforded absent Class members. Indeed, Lead Plaintiff misstated in the Settlement, the Notice and its moving papers that the Settlement proceeds would be distributed *pro rata*. Only after Timber Hill

demonstrated the unjustified disparity in treatment through expert analysis and objected on this basis did Lead Plaintiff offer its contradictory and unsupported rationalizations for the reduction of Options Investors' recovery.

Timber Hill objected at both preliminary and final approval (ECF 517, 557) because—despite the fact that Lead Plaintiff was put on notice of the potential for intra-Class conflicts between Options Investors and Common Stock and Debt Investors early on in these proceedings[1]—Lead Plaintiff nevertheless devised a Plan of Allocation that arbitrarily reduces the recovery of Options Investors for the benefit of Common Stock and Debt Investors.  Specifically, the Plan of Allocation ("POA") arbitrarily caps options investors' recovery at "*no more than 5%*" of the Net Settlement Fund (ECF 510 at 32)—despite the fact that under the POA itself Valeant Options Investors experienced 9.49% of the total Class-wide recoverable damages.

Lead Plaintiff was highly incentivized to devise a POA that artificially reduces the recovery of Options Investors because the vast majority of its claimed losses were incurred on Valeant Common Stock and Debt investments.  In this regard, the presence of an arbitrary options cap reflects a fundamental conflict concerning the allocation of Settlement proceeds and demonstrates that Options Investors were

---

[1] *See* this Court's Order on the Motion to Consolidate the *Timber Hill* action, ECF 392 at 11-12 ("a failure to protect the rights of derivatives traders will likely impact this litigation at later stages . . . Given that Timber Hill has raised this issue now, Timber Hill's motion has the salutary effect of putting the Lead Plaintiff and the Court on notice that this issue may arise in the future.").

inadequately represented and that no Settlement Class is certifiable.  *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012) ("A conflict concerning the allocation of remedies amongst class members with competing interests can be fundamental and can thus render a representative plaintiff inadequate."); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999); ("class settlements must provide structural assurance of fair and adequate representation for the diverse groups and individuals affected") (citation omitted); *Amchem Prods. v. Windsor*, 521 U.S. 591, 626–27 (1997)  ("The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected."); Fed. R. Civ. P. 23 (a)(4).

In certifying a Settlement Class and granting final approval, the Special Master's R&R failed to come to grips with the substance of Timber Hill's argument and made the following clear legal errors:

- First, the Special Master erred in holding that Lead Plaintiff and Named Plaintiffs adequately represented Common Stock, Debt and Options Investors (R&R at 7-8) in light of the fact that the Settlement and POA facially discriminate against Options Investors, are bereft of structural assurances of adequate representation and otherwise fail to satisfy the holdings in *Amchem* and its progeny (R&R at 23-24). The Special Master also erred in concluding that notice to the Class was sufficient even though the notice did not provide total options-related damages, a per share calculation of damages suffered by Options Investors, a statement of options-related costs and fees on a per  option/share basis and did not state that the Plan of Allocation applied a 50% discount to Options losses.  The Special Master's recommendation that the Court certify a Settlement Class is therefore infirm because it is based on this erroneous holding.

- Second, the Special Master erred in accepting Lead Plaintiff's argument that because there are other cases that applied caps, a cap should be applied in this case—ignoring that none of those cases set any kind of legal or precedential standard but to the contrary were decided in all but two instances without judicial analysis of the cap and, even then, on the specific facts of those two cases.[2]

- Third, the Special Master erred in approving and options cap without any empirical basis to do so, ignoring contrary and uncontroverted empirical data and analysis from Timber Hill's expert submitted in connection with its objection.  Relatedly, the Special Master failed to consider Timber Hill's loss analysis proving that the calculation of 9.49% of the Class-wide damages for Options Investors itself already accounts for so-called "inflation loss" and the 5% cap is therefore grossly unfair.  ECF 568 at 2.

- Fourth, the Special Master mistakenly concluded there are differentiating factors affecting options damages which justify a 5% cap on recovery for Options Investors (R&R at 23).  In concluding there were differentiating factors justifying the cap, the Special Master ignored empirical data pertaining to Valeant options volume that would justify a higher allocation and ignored the *Allergan* case in which options investors received a significantly higher recovery on provable damages than in the decades-old cases relied on by Lead Plaintiff.[3]

---

[2] R&R, ECF 575 at 23; ECF 559-2 (Lead Plaintiff's Appendix B on reply, listing cases); *In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283, 2005 WL 3096079 at *9 (N.D. Cal. Nov. 15, 2005); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 264 (D.N.H. 2007).  The faulty premise that these cases establish that the cap in question here was fair and reasonable, without reference to the facts and circumstances of this litigation, is the sole basis on which the Special Master explicitly responded  to and overruled Timber Hill's objection.

[3] In *Allergan*, the issue of allocation of damages was extensively briefed by the common stock lead plaintiffs, the options lead plaintiff and the defendants.  *See In re Allergan, Inc. Proxy Violation Securities Litig.*, Case No. 8:14-cv-04004 (DOC) (KESx) (C.D. Cal.), Doc. Nos. 558, 560, 562, 563, 564, 570, 571; *In re Allergan, Inc. Proxy Violation Derivatives Litig.*, Case No. 2:17-cv-04776 (DOC) (KESx) (C.D. Cal.)  Doc. Nos. 66-71, 77.

- Fifth, the Special Master erred by shifting the burden to Timber Hill to prove that the Plan of Allocation was unfair to Options Investors, rather than requiring Lead Plaintiff to prove that it was fair (R&R at 23-24). The Special Master simply accepted Dr. Feinstein's conclusory assertion—unsupported by empirical analysis—that an Options cap is justified because Options Investors are entitled to receive the entirety of their "investment loss" as their Recognized Loss under the POA while Common Stock and Debt Investors receive the purportedly more conservative "inflation loss" as their Recognized Loss. (R&R at 23-24). Yet the Special Master failed to consider evidence submitted by Timber Hill and left uncontested by Lead Plaintiff demonstrating that Options Investors suffered 9.49% of the total Class-wide damages under Lead Plaintiff's POA, yet were capped at 5% of the recovery.[4]

- Finally, the Report & Recommendation is improper in that it purports to grant final approval of the Settlement rather than recommend that the Court grant final approval, and thus, if adopted in its current form, would constitute an impermissible delegation of authority. U.S.C.A. Const. art. III, § 1.

Contrary to the Special Master's findings, the full record demonstrates that Lead Plaintiff wholly failed to meet its burden to demonstrate that the POA was fair and reasonable with respect to Options Investors and offered no evidence or empirical analysis supporting a 5% cap (or any cap) on recovery by Options Investors.

---

[4] Relatedly, the Special Master incorrectly applied analysis supplied by Timber Hill's expert in an unrelated and factually distinct case in support of his conclusion that option values naturally diminish over time and there are complex option pricing dynamics making it difficult to differentiate between fraud and non-fraud factors (R&R at 23-24).

To this end, Timber Hill requests that the Court reject the R&R and deny approval of the Settlement and Plan of Allocation.  In the alternative, Timber Hill requests that the Court modify the R&R to implement Timber Hill's proposed amendments to the POA (Ex. 1),[5] thereby ensuring that options investors are treated like every other Class member and satisfying the requirement of the structural protections discussed in *Amchem*.  Specifically, Timber Hill's proposed amendments to the POA would:

- Eliminate the 5% cap on options recovery; and

- Clarify that investors who acquired common stock through option exercises or assignments are not entitled to double recovery.[6]

Alternatively, Timber Hill proposes providing Options Investors, collectively, with an allocation of 9.49% (not capped) of the Net Settlement Fund, an allocation equal to their uncontested portion of total Class-wide damages.

---

[5] "Ex. __" herein refers to the exhibits to the Declaration of Andrew J. Entwistle, submitted herewith.

[6] Timber Hill's proposed modifications also make explicit that Valeant Options Investors are entitled to participate in the recovery related to their insider-trading claims to the same extent as Common Stock Investors, a result that Lead Plaintiff assured the Special Master is already implied in its Plan of Allocation and is therefore moot.  The R&R (at 24) apparently agrees that the Plan of Allocation dictates that Options Investors are already entitled to participate in the insider-trading recovery under the Plan of Allocation and Timber Hill therefore objects to this aspect of the R&R only to request that the result (which all agree should obtain), be made explicit for administrative purposes.

## II.     BACKGROUND

Timber Hill filed a class action complaint (the "*Timber Hill* action") on June 6, 2018, on behalf of Valeant Options Investors, who collectively suffered billions of dollars in losses as a result of violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by Valeant and certain of its senior executives. *Timber Hill LLC v. Valeant Pharm. Int'l, Inc.*, No. 18-cv-10246 (D.N.J.).   Timber Hill sought to represent a class composed of "all persons or entities that purchased call options on Valeant common stock and/or sold put options on Valeant common stock during the class period and were damaged thereby" because such Valeant Options Investors were not expressly included in the Valeant Common Stock and Debt action.   *See* No. 18-10246, Doc. No. 1 at ¶ 444.   To protect and advance the interests of Valeant Options Investors, Timber Hill spent months investigating potential recovery strategies which included extensive consultation with options damages experts, the development of a discrete damages model for Valeant options and examination of market efficiency as it relates to options.   The *Timber Hill* action was automatically consolidated with the above-captioned action.   ECF 317, 318.

Timber Hill timely sought relief from the Consolidation Order on the ground that Lead Plaintiff and its counsel were unlikely to adequately "protect the interests of derivatives traders due to potentially conflicting positions regarding, among other things, the allocation of any recovery."   ECF 322-1 at 3.   Timber Hill also explained

7

that Options Investors would seek to recover from "the common set of defendants as the purchasers of Valeant equity securities and senior Debt, and 'a single lead plaintiff will be unable to have undivided loyalties to vigorously pursue recovery on behalf of both classes due to the inherent conflict that is caused by the competition for the same limited funds for recovery.'" *Id.* at 4 (citing *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 610 (W.D. Okla. 2009)).

In its opposition to the motion for relief from the consolidation order, Lead Plaintiff maintained that it would represent the interests of Valeant Options Investors and assured the Court that it was "more than adequate to represent all purchasers of Valeant securities, including those who traded in options." ECF 323 at 22; ECF 329-1 at 1.

The Court acknowledged that "a failure to protect the rights of derivatives traders will likely impact this litigation at later stages." ECF 392 at 11-12.[7] The Court then observed: "Given that Timber Hill has raised this issue now, Timber Hill's motion has the salutary effect of putting the Lead Plaintiff and the Court on notice that this issue may arise in the future." *Id.* at 11.

Even though Lead Plaintiff was expressly put on notice by Timber Hill and the Court of the potential for inadequate representation of the interests of Options

_____

[7] Valeant Options Investors were referred to as "derivatives traders" in the consolidation proceedings.

Investors, Lead Plaintiff nevertheless devised an unfair POA that arbitrarily discriminates against Valeant Options Investors by unjustly imposing a cap limiting their recovery while all other investors share in the Settlement proceeds *pro rata*. This differential treatment is exactly the type of harm the Court anticipated might occur and warned Lead Plaintiff to avoid.  Lead Plaintiff did not inadvertently overlook the interests of Options Investors.  It was well aware of the potential for conflict, and instead of developing a POA that treated Options Investors fairly and on the same terms as other Valeant Investors, Lead Plaintiff crafted a POA that unfairly favors Common Stock and Debt Investors to the detriment of Options Investors.  This disparate treatment is all the more egregious when one considers it is easily cured by simply allowing Valeant Options Investors to share in the recovery on a *pro rata* basis with all Class members—the same treatment afforded all other investors under the Plan of Allocation.

## III.   LEGAL STANDARD

### A.     Standard of Review

Objections to findings of fact or conclusions of law made or recommended by a Special Master are decided *de novo*.  *See* Fed. R. Civ. P. 53(b)(3)-(4); ECF 484 (order appointing the Special Master) at 4.  In addition to specific findings of fact and conclusions of law, "[t]he appropriateness of the legal standard applied by the special master is reviewed *de novo* by the district court."  *Dickerson v. Kane*, No.

92-cv-2528, 1995 WL 428647, at * 4 (D.N.J. July 17, 1995).  The Court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions."  *In re Johnson & Johnson Derivative Litig.*, No. 10-2033 (FLW), 2013 WL 6163858, at *3 (D.N.J. Nov. 25, 2013).

### B.     Certification of a Settlement Class

Class action settlements reached prior to certification present "special problems" that implicate significant due process rights of absent class members.  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005).  Rule 23(a)'s provisions should therefore be given "heightened" scrutiny in the settlement class context. *Amchem*, 521 U.S. at 620.  "[T]he judge must adopt the role of a skeptical client and critically examine the class certification elements, the proposed settlement terms, and procedures for implementation."  Manual for Complex Litigation § 21.61 (4th ed. 2004).  Where, as here, the requirements of class certification were never litigated in an adversarial context, the Court must carefully scrutinize the negotiation processes driving pre-certification settlements to ensure adequacy of representation. *See Cmty. Bank of N. Va.*, 418 F.3d at 307-08; *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*Gen. Motors*"), 55 F.3d 768, 796-97 (3d Cir. 1995); *see also*, *In re Congoleum Corp.*, 426 F.3d 675, 693 (3d Cir. 2005) (quoting *Cmty. Bank of N. Va.*, 418 F.3d at 318).

With regard to certification of a settlement class under Rule 23, the adequacy prong of Rule 23(a)(4) requires two steps. "First, the adequacy inquiry 'tests the qualifications of the counsel to represent the class.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004). The second component of the adequacy inquiry seeks "to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* "Not every distinction between a class member and a class representative renders the representative inadequate." *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 376 (E.D. Pa. 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016). However, "[a] fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class." *Id.* (citing *Dewey*, 681 F.3d at 183 (alteration in original) (internal quotation marks omitted). This occurs when, "by maximizing their own interests, the putative representatives would necessarily undercut the interests of another portion of the class." *Id.* (citing Newberg on Class Actions § 3:58 (5th ed.)). Benefits awarded to some class members, but not others, without adequate justification may indicate that other class members were inadequately represented. *Id.* (*citing Gen. Motors,* 55 F.3d at 797).

C. **Whether the Proposed Settlement and Corresponding Plan of Allocation Are Fair, Reasonable and Adequate**

Under Federal Rule of Civil Procedure 23(e)(2), a Court may approve the settlement of a class action "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(2).

The Plan of Allocation of Settlement proceeds among Class members must also be approved as part of the Settlement. The same standards that apply to approval of the Settlement as a whole also apply to the Plan of Allocation—*i.e.* the Plan of Allocation must be fair, reasonable and adequate. *In re Cendant Corp. Litig.,* 264 F.3d 201, 248 (3d Cir. 2001); *see also, In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998) (citations omitted) (approving plan of allocation where all class members were treated "in an identical matter").

## IV.    THE SPECIAL MASTER'S REPORT AND RECOMMENDATION

On June 15, 2020, (ECF 575), the Special Master erroneously recommended that the Court grant:  (1) Final Approval of Class Action Settlement and Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs.

- First, regarding adequacy of representation, Judge Cavanaugh found "Lead Plaintiff and Named Plaintiffs are large institutional investors that, like Class members, purchased Valeant Securities at artificially inflated prices" and that they "have demonstrated their competency and ability to serve as class representatives by overseeing the litigation through the pleadings, motions to dismiss, discovery, and settlement phases, and participating in discussions with Lead Counsel concerning

12

case developments, strategies, significant filings, and settlement." R&R at 7-8.  In this regard the Special Master erroneously ignored the mandate of *Amchem*, 521 U.S. at 620, and its progeny requiring heightened scrutiny and  structural assurances of fairness.

• Second, regarding Timber Hill's Objection (ECF 557), the Special Master erroneously concluded that "treatment of options in the Plan of Allocation is a generally accepted and widely used methodology for equitably allocating a settlement fund in light of the purported differentiating factors affecting options damages" (R&R at 23), erroneously rejecting Timber Hill's uncontested expert analysis that Options Investors' damages are readily ascertainable.

• Third, the Special Master found—without any empirical basis—that "Options Investors have larger computed Recognized Losses relative to Valeant common stock and note investors." (R&R at 23).  In so finding, the Special Master erroneously accepted Dr. Feinstein's belated, conclusory justification—submitted on reply without any empirical analysis or basis and not published during the notice period—for an options cap representing an approximately 50% reduction in Options Losses.

• Fourth, the Special Master held that "the basis for the allocation and cap" was that "option values naturally diminish overtime [sic] and the complex option price dynamics makes it difficult to differentiate between fraud- and non-fraud-based factors."  To support this conclusion, the Special Master cited Timber Hill's experts' testimony from an old, unrelated case in support of a plan of allocation.  In so doing, the Special Master erroneously ignored that—unlike Lead Plaintiff's expert in this case—Timber Hill's expert actually did a full empirical analysis in that case to value the options and stock at issue and arrived at  an options cap of 10%.  R&R at 23-24.

• Fifth, the Special Master rejected Timber Hill's argument that insider-trading losses are not covered under the POA, summarily concluding Timber Hill "cited no case law or binding authority to support this claim" and finding its objection "unpersuasive" and ignoring the fact that this factual argument was based on the language of the POA and Timber Hill's expert's empirical analysis.  R&R at 24.

The Special Master therefore overruled Timber Hill's objection and recommended that the Court grant final approval of the Settlement and Plan of Allocation.[8]

## V.   ARGUMENT

### A.   The Special Master Erred in Finding That the Plan Of Allocation Treats Options Investors Equitably

The Special Master erred in concluding that "the treatment of options in the Plan of Allocation is a generally accepted and widely used methodology for equitably allocating a settlement fund in light of the differentiating factors affecting options damages."  R&R at 23.  But the fact that options caps have often been employed does not mean that they are generally accepted by courts that have considered them in an adversarial context.  The options caps in almost all of the cases cited by Lead Plaintiff were not challenged, and were therefore not subjected to judicial scrutiny, and in the two out-of-circuit district court opinions that do address a cap, the cap was supported by empirical analysis and decided on the case-

---

[8] The R&R purports to "grant" Lead Plaintiff's motion, an action that exceeds the authority of the Special Master and violates the bedrock principle that [t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.  U.S.C.A Const. art. III, § 1.  Timber Hill submits that the Court should construe the R&R as recommending that the Court grant the motion and, at the very least, modify the R&R to reflect the same.

specific facts.[9]   Building off his conclusion that options caps are "generally accepted," the Special Master then entirely sidestepped Timber Hill's well-founded objection that the POA facially discriminates against Options Investors.

The POA is unfair to Valeant Options Investors because it gives preferential treatment to Common Stock Investors and specified Debt Investors at the expense of Options Investors by allowing Common Stock Investors and Debt Investors to share in the Net Settlement proceeds on a *pro-rata* basis while the recovery of Valeant Options Investors is limited to a separate, arbitrarily-capped fund.  Under the POA: "(a) at least 95% of the Net Settlement Fund will be allocated collectively to Valeant common stock and the specified Valeant debt securities; and (b) no more than 5% of the Net Settlement Fund will be allocated to options on Valeant common stock."  ECF 539-5 at 101.[10]   Lead Plaintiff initially offered no justification for not allowing Options Investors to share in the recovery on a *pro rata* basis with all other investors, just as it offered no support for the wholly arbitrary 5% allocation itself—an allocation that is only about half of the Options Investors' *pro rata* share of the recovery.

---

[9] ECF 559-2 (Lead Plaintiff's Appendix B on reply, listing cases); *Veritas*, 2005 WL 3096079 at *9; *Tyco*, 535 F. Supp. 2d at 264.

[10] As noted in Timber Hill's Objection before the Special Master, the putative "cap" also has a clawback feature such that any portion of the 5% allocation that is not paid out initially to Valeant Options Investors is added back into the *pro rata* pool shared by Valeant Common Stock and Debt Investors.

The Special Master's R&R did not cite or consider the decisions of courts in this Circuit and elsewhere that have long recognized that options investors stand on equal footing with common stock investors with respect to Exchange Act claims and, accordingly, should be treated alike and share in the Net Settlement Fund on a *pro rata* basis. *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 507 (3d Cir. 1988) ("We are not persuaded that the difference between trading in the two types of securities should lead to different treatment."). Where there is "no *evidentiary* justification in the record" for disparate recoveries among class members, funds should be distributed on a *pro rata* basis. *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 648 (E.D. Pa. 2015) (revising plan of allocation to distribute settlement funds on a *pro rata* basis) (emphasis added). *See also In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2009 WL 512081, at *6 (E.D. La. Mar. 2, 2009) (approving a plan of allocation that specified: "[t]o the extent that class members' claims exceed the Net Settlement Fund, each claimant will be compensated on a *pro rata* basis according to the claimants' calculated loss under the allocation plan."); *see also Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983) ("The Court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.").

The Special Master also ignored that Lead Plaintiff's description of the POA in the final approval papers contemplated that a *pro rata* distribution was appropriate

for all Class members, while omitting any discussion of the cap on recovery for Valeant Options Investors: "The Plan of Allocation treats the Class equitably by providing that each Class Member that properly submits a valid Proof of Claim and Release form will receive a *pro rata* share of the monetary relief. It too is fair, reasonable, and adequate, and should be approved." ECF 539-1 at 3-4. In fact, Lead Plaintiff makes only a passing reference to the cap in a declaration submitted in support of final approval, noting that the cap is "consistent with options caps used in other securities class action settlements." ECF 539-3 at 10.

In this regard, the Special Master also ignored that the POA is wholly at odds with the terms of the Stipulation of Settlement itself which, in the words of Lead Counsel provides "that each Class member that properly submits a valid Proof of Claim and Release form will receive a *pro rata* share of the monetary relief based on the terms of the Plan of Allocation." *See,* ECF 539-1 at 35. Nowhere does the Stipulation of Settlement provide that all Settlement Class members will share in the Settlement proceeds on a *pro rata* basis **except** Valeant Options Investors. Plainly stated, the differential treatment of Valeant Options Investors is a construct of Lead Plaintiff and Lead Counsel that was never bargained for by Valeant Options

Investors, that is without support in law, fact or equity and that is wholly contrary to the requirements of Rule 23 and applicable Third Circuit law.[11]

Critically, the Special Master failed to address Timber Hill's uncontested calculation of Class-wide damages under the POA in relation to the arbitrary cap on Options Investors' recovery. Specifically, Timber Hill's expert calculated total options damages of $3,765,590,117; (ii) total debt damages of $3,857,171,767; and (iii) total common stock damages of $32,064,194,203, with total aggregate Class-wide damages under the Plan of Allocation for all three groups of investors summing to $39,686,956,087. *See* Declaration of Michael A. Marek, Ex. 2 hereto.[12] Significantly, and ignored by the Special Master, these figures were calculated using a universally accepted inflation-based model for calculation damages in securities cases and the disclosure dates listed in the common stock portion of the POA. ECF 557 at 17-18. On this empirical analysis Timber Hill's expert concluded that if Lead Plaintiff had based the allocation on the Valeant Options Investors' actual share of

---

[11] The Special Master erred in even acknowledging Lead Plaintiff's spurious references to conversations between counsel as they tried to resolve allocation issues before preliminary approval and before Timber Hill and it's expert did any analysis of options-related losses under the Plan of Allocation. Leaving aside those conversations were made in the context of FRE Section 408, they are otherwise of no probative weight here because they were not based on Timber Hill's expert's analysis of the inflation-based losses of options investors which was not (and could not have been) done until after Timber Hill received the operative plan of allocation.

[12] Mr. Marek's Declaration was submitted to the Special Master at ECF 517.

aggregate Class-wide damages for Options Investors the cap would have been 9.49%, not 5%.[13]

**B.    The Special Master Erred in Finding That Lead Plaintiff Is Adequate and Typical and in Certifying a Settlement Class**

The Special Master also erred in holding that Lead Plaintiff and Named Plaintiffs adequately represented Common Stock, Debt and Options Investors (R&R 7-8) under Rule 23(a)(4) and in certifying a Settlement Class.

As argued in Timber Hill's Objection before the Special Master, the inequity of the POA precludes the Court from certifying a settlement class that includes both Common Stock and Debt Investors and Options Investors under Lead Plaintiff's sole leadership.   The disparate treatment of Options Investors demonstrates that Lead Plaintiff has not adequately represented the interests of Options Investors and is not inclined to do so.  *Ortiz*, 527 U.S. at 856 ("class settlements must provide structural assurance of fair and adequate representation for the diverse groups and individuals

---

[13] Even changing the allocation to 9.49% does not completely solve the problem of course because it is almost always the case that the claims rate in securities cases is less than 100% under even the most robust notice and claims programs.  As a result, claimants sharing on a *pro rata* basis often have a greater recovery per share or unit than is reflected on the Notice of Settlement.  However, under a cap such as that here, claimants are limited in their recovery with any unclaimed funds being clawed back to increase the uncapped *pro rata* pool for Common Stock and Debt Investors rather than to Options claimants in the pool. If the allocation was increased to 9.49%, the clawback feature was eliminated, then Valeant Options Investors would be equitably treated here.  While Timber Hill believes it is far simpler to simply treat everyone on a *pro rata* basis, it has no objection if the Court determines to increase the allocation to 9.49%, and eliminate the clawback.

affected") (citations omitted); *Dewey*, 681 F.3d at 184 ("A conflict concerning the allocation of remedies amongst class members with competing interests can be fundamental and can thus render a representative plaintiff inadequate.") (citation omitted).

Lead Plaintiff's failure to devise a POA that would treat Valeant Options Investors fairly is particularly concerning in light of the briefing on Timber Hill's motion for relief from the consolidation order. Lead Plaintiff was made aware of the potential for conflict by both the briefing and this Court's specific statement that Timber Hill's motion had placed Lead Plaintiff on notice of the potential conflicts. Lead Plaintiff disregarded the Court's clear warning by devising a Plan of Allocation that differentially treated Valeant Options Investors to the clear benefit of Valeant Common Stock and Debt Investors. While Lead Plaintiff could have easily proposed a plan of allocation that distributed the Net Settlement Fund to all Valeant investors on a *pro rata* basis, the Plan of Allocation creates antagonism within the Class, directly impacting the question of adequate representation. *See Gen. Motors*, 55 F.3d at 800 (remanding order granting final approval because, *inter alia*, the settlement agreement created antagonism within the class). Because the conflict relates to the distribution of Settlement funds, the intra-class conflict is fundamental and prevents Lead Plaintiff from adequately representing the Class, which should bar certification of a Settlement Class. *See Valley Drug Co. v. Geneva Pharm., Inc.*,

350 F.3d 1181, 1190, 1194 (11th Cir. 2003) (finding that failure to address whether wholesalers had fundamental conflict with the remainder of the class was an abuse of discretion).[14]

The Special Master did not address the issue of intra-Class conflicts in the R&R (despite the fact it was also raised in Timber Hill's Objection to Preliminary Approval (ECF 517 at 10-12)).    The Special Master also wholly ignored the substantive import of the holding in *Amchem* (which he cited once in relation to the basic requirements for class certification), in which the Supreme Court affirmed the Third Circuit's determination that certification of a settlement class was improper on grounds of inadequate representation where the settlement itself showed intra-class disparities, noting the need for "structural assurance of fair and adequate representation" when groups of claimants have competing interests.  *Amchem*, 521 U.S. at 610, 627-28 (observing that the settlement at issue made "important judgments on how recovery is to be allocated among different kinds of plaintiffs, decisions that necessarily favor some claimants over others.").

---

[14] As previously discussed by Timber Hill before the Special Master, the cases Lead Plaintiff relied on to demonstrate adequacy are both unavailing and actually support Timber Hill's position.  In both cases, the courts certified a class of investors of different types of securities **and** approved plans of allocation that distributed the net settlement fund on a **pro rata basis.**  *See In re DVI Inc. Sec. Litig.*, No. 2:03–CV–05336–LDD, Doc. No. 1003-4 (E.D. Pa. June 12, 2015) (approving a plan of allocation that distributed the funds on a *pro rata* basis, with no arbitrary cap).

*Amchem* is the seminal cases addressing the adequacy of representation and the appropriateness of certifying a settlement class where, as here, intra-Class conflicts persist over the appropriateness of allocation of damages under the POA. The Special Master's certification of a Settlement Class with fundamental intra-Class conflicts and no structural assurances of fair and adequate representations without considering, much less applying, *Amchem* and its progeny to the facts of this case was clear error. *Id.*; R&R at 7-8.

The Special Master's finding that the "content of the notice and its distribution to the Class satisfied Rule 23 and due process" was in error. There are references in the Notice to the expected recovery and average costs and fees for Common Stock Investors, but no mention of expected recovery, average damages, or average cost of costs and fees for Valeant Options Investors. ECF 539-5 at 93. The Notice also failed to state that Options Investors' losses are being discounted by 50% and it fails to  provide any empirical basis for this discount or the differential treatment.  To make matters worse, as noted above, the Notice and the Settlement Agreement both actually indicate that the Settlement proceeds will be distributed on a *pro rata* basis to all investors—statements directly contradicted by the Plan of Allocation.  ECF 539-1 at 3-4, 10, 35.

For these reasons the Notice violates the settlement notice requirements dictated by the PSLRA.  Under the PSLRA, every settlement notice must include a

statement explaining a class members' recovery: "The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average *per share* basis." 15 U.S.C. § 78u–4(a)(7)(A).  The notice must also include a statement of "the average amount of damages *per share* that would be recoverable if the plaintiff prevailed on each claim alleged." 15 U.S.C. § 78u–4(a)(7)(B) (emphasis added).  The Notice here only specified damages on a "per common share" basis and leaves out the expected recovery for Valeant Options Investors, damages to Options Investors, the fact of the 50% discount to the recognized loss for Options Investors and the allocable costs and fees to Options Investors.  The Special Master did not address these deficiencies anywhere in the R&R.

## C.    Lead Plaintiff's *Post-Hoc* Rationalizations Should Be Rejected

In response to Timber Hill's Objection before the Special Master, Lead Plaintiff concocted a series of *post hoc* justifications and raised them for the first time in its reply.  These were both at odds with its prior positions in this case and unsupported by any competent evidentiary submission or analytical framework beyond conclusory generalizations in an expert declaration.  ECF 559 at 24-25; 559-3.  The Special Master's acceptance of Lead Plaintiff's arguments was clear error.

First, the Special Master accepted Dr. Feinstein's conclusory assertion—on reply and without performing an analysis—that because Options Investors'

Recognized Loss is based on market losses and (some) Common Stock Investors' Recognized Loss is inflation adjusted, that Options Investors should be subject to a 50% reduction in recovery, implemented by a cap that is approximately half the Options Investors' allocable *pro rata* share of the settlement fund.  Feinstein Decl. ¶¶ 13-20.  Not a shred of empirical evidence or analysis is offered by Dr. Feinstein to support this position.  *Id.*  It was clear error for the Special Master to accept these conclusory statements in the absence of such evidence, particularly where, as here, Timber Hill's expert provided just such empirical evidence and analysis in support of his opinion that Options Investors suffered 9.49%, *not* 5%, of the Class-wise inflation-adjusted loss.  ECF 557 at 17.

Lead Plaintiff argued in error that Timber Hill's calculation of options losses was overstated because it represented market losses, not inflation-adjusted losses. ECF 559-3 ¶¶ 25, 29.  Contrary to Lead Plaintiff's argument, Timber Hill's expert's calculation is quite clearly based on inflation-adjusted losses for options and common stock and bonds, and all of the empirical data and analysis supporting that approach is made part of those submissions.  ECF 557 at 17-18.  In other words, an apples-to-apples comparison shows that Options Investors suffered approximately 9.49% of the Class-wide, inflation-adjusted losses—*not* the 5% reflected by the

cap.[15]  Lead Plaintiff did not inform Options Investors during the notice period that their claims were being reduced by approximately 50%, but rather repeatedly assured the Class and the Court that Class members would share in the recovery *pro rata*.[16]

Dr. Feinstein's second justification for the cap is also not supported by empirical analysis or other competent evidence.  Rather than provide any empirical analysis on which to base the 5% cap, Dr. Feinstein instead conclusorily opined that "[o]ption price dynamics are complex" and changes in option pricing variables "may cause both call option and put options to decay even when there is no stock price movement." ECF 559-3 ¶ 15.  Dr. Feinstein then summarily concluded that due to options pricing decay and an "array of impactful variables," "computing inflation

---

[15] It should be noted that Lead Plaintiff's expert did not provide either an analysis of *pro rata* Class-wide losses or an analysis of *pro rata* Class-wide market losses. Thus, Lead Plaintiff's expert cannot and did not do an apples to apples comparison of Class-wide damages on either basis.

[16] Lead Counsel even argued before the Special Master that other Options Investors had not objected to the Plan of Allocation.  ECF 559 at 29. This argument is incredible because it implies that the other Options Investors had performed an economic analysis of Class-wide losses like Timber Hill did.  Given Lead Plaintiff's assurances in both the Notice and Settlement Agreement that all investors were sharing on a *pro rata* basis, it is no wonder that Options Investors other than Timber Hill—which filed the only options-related claims in this case—would have taken Lead Plaintiff at its word rather than dig into the fine print and conduct an expert analysis to discover the truth.

loss for every option investor" is "too burdensome and time consuming." *Id*. ¶ 16.[17]

However, options decay is irrelevant to an inflation based calculation and has no

impact on calculation of inflation based losses for options investors as demonstrated

by Timber Hill's expert's actual calculation of inflation based losses for options

investors.  ECF 568 at 21-22 ¶ 14-15.  Indeed, Dr. Feinstein failed to provide any

empirical analysis regarding materiality and uniformity of the "decay" effect of

Valeant stock options pricing, and Dr. Feinstein's argument was demonstrably

contradicted by his own prior opinions offered during briefing on class certification

in this case.  As shown in Exhibits 11-a and 11-b of Dr. Feinstein's expert declaration

at class certification (ECF 539-12) aptly titled "Valeant Options Event Study

Results," non-fraud related factors  account for practically none of the residual for a

hypothetical synthetic option (i.e., net of market and peer company) returns on the

disclosure events presented.  Supplemental Declaration of Michael A. Marek, Ex. 3

hereto at ¶ 15.[18] As but one example, on October 19, 2015, Dr. Feinstein found  that

---

[17] Ironically, the expert affidavit submitted in support of Lead Plaintiff's Class Certification motion actually argues against the disparate treatment of Valeant Options Investors insofar as it concludes the Valeant Options Investors traded in an efficient market, traded securities with a readily determinable value that was derivable from the price of Valeant Common Stock and Debt and that those investors had the same types of claims as Valeant Common Stock and Debt Investors. ECF 539-12 (Feinstein Decl. at 19-21, 29-30, 33-34, 67-70).

[18] Mr. Marek's Supplemental Declaration was submitted to the Special Master at ECF 563.

non-fraud factors should have caused a Valeant Synthetic Option to rise by 0.20% in price, as opposed to its actual 8.14% decrease. *Id*. Overall, the seven dates presented establish overwhelming empirical evidence that the disclosures themselves, not any outside factors, caused all price declines recoverable as damages, mooting for practical purposes the distinction between investment losses and inflation-adjusted losses suffered by Options Investors. *Id*.

Simply stated, the Special Master ignored both the empirical evidence demonstrating that Timber Hill's expert's calculations *did* in fact account for inflation (meaning the 5% cap is entirely unsupportable), and the empirical evidence demonstrating that Options Investors suffered 9.49% of the Class-wide damages—instead adopting Dr. Feinstein's wholly unsupported conclusions that "Options Investors have larger computed Recognized Losses relative to Valeant Common Stock and Note [sic] investors." R&R at 23. The Special Master also erroneously adopted the unsupported argument advanced by Dr. Feinstein that "option values naturally diminish overtime and the complex option price dynamics makes it difficult to differentiate between fraud- and non-fraud-based factors" when neither contention is relevant to the inflation-based analysis done by Timber Hill's expert and thus provides no basis for the allocation and cap on the Valeant Option Investors' recovery under the Plan of Allocation.

## VI.   PROPOSED RESOLUTION

While Timber Hill respectfully submits that the Court should wholly reject the Report & Recommendation and deny final approval on grounds of disparate treatment and inadequacy of representation, in the alternative, Timber Hill respectfully asks the Court to modify the Report & Recommendation to: (1) permit all Class members to share *pro rata* in the Net Settlement Fund or alternatively increase the cap to 9.49% and drop the claw back feature of the Plan; and (2) make the other procedural and administrative changes reflected in pages 11-12, 14, and 25-28 of the attached redlined plan of allocation.  *See McDonough*, 80 F. Supp. 3d at 649 (revising plan of allocation to distribute settlement funds on a *pro rata* basis because there was "no evidentiary justification in the record" for disparate recoveries among subclasses); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 201 (S.D.N.Y. 2005) (conditioning approval of class action settlement on modification of bar order); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 322, 344-46, 349 (S.D.N.Y. 2005) (granting final approval of settlement following modifications to proposed plan of allocation).

A proposed order modifying the Plan of Allocation and otherwise adopting the R&R is submitted herewith.

Dated:  June 29, 2020

Respectfully Submitted,

*/s/ Andrew J. Entwistle*

MICHAEL CRITCHLEY, SR.
mcritchley@critchleylaw.com
CHRISTOPHER W. KINUM
cwkinum@critchleylaw.com
**CRITCHLEY, KINUM**
  **& DENOIA LLC**
75 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 422-9200

ANDREW J. ENTWISTLE
aentwistle@entwistle-law.com
ROBERT N. CAPPUCCI
rcappucci@entwistle-law.com
**ENTWISTLE & CAPPUCCI LLP**
299 Park Avenue, 20th Floor
New York, NY 10171
Telephone: (212) 894-7200
Facsimile: (212) 894-7272

MARC M. SELTZER (admitted *Pro Hac Vice*)
mseltzer@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067-6029
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150

*Attorneys For Objector/Absent Class Member
Timber Hill*

29

## <u>Certificate of Service</u>

The undersigned certifies that today he filed the foregoing document and exhibits on ECF which will send electronic notification to all attorneys registered for ECF-filing.

Dated:  June 29, 2020                          */s/ Andrew J. Entwistle*
       New York, New York                 Andrew J. Entwistle