UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE: VALEANT PHARMACEUTICALS
INTERNATIONAL, INC. SECURITIES
LITIGATION

This Document Relates To:
3:15-cv-07658-MAS-LHG (City of Tucson)

REPORT AND RECOMMENDATION
OF THE SPECIAL MASTER

      This matter comes before the Special Master upon Plaintiff City of Tucson with and on behalf of the Tucson Supplemental Retirement System's ("Tucson") motion to amend its Complaint against Defendant PriceWaterhouseCoopers ("PwC"). PwC has opposed this motion and Tucson has replied. After considering the parties' submissions, as well as prevailing case law, it is the opinion of the Special Master that Tucson's motion is granted.

      In conjunction with this motion, Tucson has submitted a motion to file the Second Amended Complaint under seal in accordance with Local Rule 5-3(c) to insure compliance with the Stipulation and Confidentiality Order in this action. The proposed amended pleading and memorandum in support references materials that PwC has designated as "Confidential" and "Highly Confidential." The Special Master grants this motion as well.

## BACKGROUND

      As the parties know, The Court has previously summarized many of the factual allegations in this matter and the Special Master assumes the parties are completely familiar with those allegations. *See e.g., In re Valeant Pharm. Int'l, Inc. Sec. Litig. (In re Valeant),* No. 15-7658, 2017 WL 1658822 (D.N.J. Apr. 28, 2017), *reconsideration denied,* No. 15-7658, 2017 WL 3880657 (D.N.J. Sept. 5, 2017); *Catalyst Dynamic Alpha Fund v. Valeant Pharm. Int'l, Inc.,* No. 18-12673, 2019 WL 2331631 at *2 (D.N.J. May 31, 2019). Therefore, for the purpose of

rendering this Order and Opinion, the Special Master will only reference factual background and procedural history needed to decide this application.

The motion centers upon Plaintiff's purchase of 300 shares of Valeant stock in March 2015 at the time of the stock offering at issue. Prior to that offering, PwC certified and issued an Audit Report for Valeant's 2014 financial statements. [See ¶718-719 and ¶723-741 of the First Amended Consolidated Complaint].[1] This purchase and sale were part of a $1.45 billion public offering of approximately $7.3 million shares of common stock at a price of $199.00 per share. [See Amended Complaint, ¶703]. Valeant's Prospectus Supplement incorporated by reference the 2014 annual report on Form 10-K which Valeant had previously filed with the Securities and Exchange Commission ("SEC"). Valeant's 2014 Form10-K, in turn, included the Audit Report. [See Amended Complaint ¶707 and 718.]

Simply put, Plaintiff alleges that PwC, an accounting firm, made false and misleading statements in connection with the March 2015 offering. Plaintiff specifically asserts that the Audit Report misleadingly stated that Valeant's financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), that Valeant maintained effective internal controls over reporting and that the audit was conducted in accordance with the governing auditing standards. [See Amended Complaint ¶723-724, 737-739.] Plaintiff contends that the statements were false and that Valeant later admitted in a restatement that its 2014 financial statements failed to comply with GAAP and it did not, in fact, have effective internal controls. This led to the withdrawal by PwC of the audit report. [See Amended Complaint ¶311, 723, 725-736 and 740].

---

[1] From here on in, this pleading will simply be referred to as the Amended Complaint.

As a result, Plaintiff asserts it purchased shares of Valeant stocks at an inflated price on March 2015 but thereafter, when the market learned of the misleading statements, Valeant's stock price crashed from an offering price of $199.00 per share (and a class period high of over $262.00) to less than $25.00 per share on June 7, 2016, resulting in damages. [See Amended Complaint ¶25-26, 323, 709, 742-744.] Plaintiff had held and sold Valeant stock following the offering at prices ranging between $35.00 and $158.00, "well below the offering price." [See ECF No. 80-3 ("Certification") at 2-3.]

Tucson now seeks court approval to file an amended complaint alleging that PwC has violated the Securities and Exchange Act of 1934, specifically § 10(b) and Rule 10b-5, promulgated under the Act. Tucson's prior claims against PwC were based strictly on Section 11 claims. Therefore, Tucson now seeks to amend in order to assert fraud based allegations against PwC.

## PLAINTIFF'S ARGUMENT

Tucson contends that information obtained during discovery now establishes that PwC "knew or recklessly disregarded…material information it later acknowledged [showed]…Valeant's financial statements were not prepared in accordance with generally accepted accounting practices [GAAP]." Plaintiff says this information came to light as a result of a series of document productions beginning on July 25, 2017, and continuing through November 26, 2019, consisting of millions of pages obtained from Defendant and third parties.

Tucson emphasizes that during this time frame, the litigation was subject to several stays delaying the discovery process. Discovery is ongoing and Plaintiff says it has also served another series of discovery demands directed at the issues in this case. Plaintiff notes that the current discovery deadline is February 18, 2021.

3

Citing FRCP 15, Tucson stresses that there is no limit on the timing of amendments to pleadings and the Court "should freely give leave [to amend] when justice so requires." FRCP 15(a)(2). Tucson urges that under these circumstances, its motion should be granted.

Tucson's claims against PwC arose out of actions taken by the auditor when compiling its 2014 report as to Valeant filed as part of Valeant's 2014-K on February 25, 2015. Beginning in September of that year, a series of disclosures revealed "Valeant's true business operations and prospects," essentially a series of deceptive practices designed to portray Valeant in a positive light and artificially enhance the value of its stock to the detriment of investors.

In support, Tucson makes the following points:

- PwC's workpapers reveal adequate evidence to allege a § 10(b) claim by demonstrating a "strong inference of scienter against PwC." This discovery-based information shows that PwC acted "knowingly or with recklessness in making false and misleading statements." Tucson contends that these statements are not new and are effectively the same as those alleged in support of the § 11 claims.

- PwC knew it was at risk of a § 10(b) claim when it signed the audit and certainly on notice when the class action was filed.

- PwC agreed upon a lengthy discovery schedule and hence there is ample opportunity to exchange discovery defending § 10(b) claims. Additionally, Plaintiff notes, the parties have exchanged extensive discovery under circumstances where the elements of the new claim overlap with the existing one.

- While these new allegations present slightly different theories, Tucson says, they are generated from the same facts and involve the same parties and issues.

- Given the massive and still ongoing discovery exchange and due to the stays, Tucson asserts that PwC cannot claim undue delay.

- Tucson states that PwC has known for months of its intention to bring this claim and had entered a tolling agreement permitting Plaintiff to do so.

- Plaintiff asserts that its new allegations are not "futile," meaning likely to fail, since Judge Shipp has already addressed the § 11 claim (allowing Plaintiff to move forward on that), so the only new issue is scienter.

To summarize, Tucson argues that as a result of the exchange of massive discovery, it now has a basis for amending its complaint and charging the PwC knowingly or at least recklessly, authored an audit report which failed to represent Valeant's true financial status, i.e., that PwC "failed to exercise professional skepticism and instead turned a blind eye" to improper Valeant business practices.

Count III of the proposed Amended Complaint contains explicit details of Tucson's charge that PwC violated § 10(b) of the Exchange Act and Rule 10b-5. [See, ¶561-648.] That portion of the pleading is replete with examples of misconduct on behalf of PwC. Briefly put, Tucson alleges facts demonstrating multiple "red flags" which Plaintiff contends were deliberately ignored by the auditors. Those red flags included evidence that Valeant falsely boosted earnings during the end of quarters; altered terms to encourage sales at inappropriate times; induced customers to increase inventory past accepted limits; engaged in "channel stuffing"; increased sales to distributors not matched by prescription spikes; extended payment or delayed payment to Philidor (a related party); employed personnel or were overseen by individuals who had been associated with fraudulent and/or criminal activities with other employers; inexplicably modified its internal accounting policies to camouflage its ownership of Philidor; and engaged in other financial improprieties. A substantial charge is that the auditors helped to conceal Valeant's acquisition of Philidor, a concealment which continued through the fall of 2015 even after Valeant publicly denied its relationship. Tucson further argues that PwC's workpapers provide a basis lacking in the § 10(b) fraud charges against PwC in the opt out action from *Lord Abbett Inv. Tr.-Lord Abbett Short Duration Income Fund v. Valeant Pharm. Intl., Inc.*, 2018 WL 3637514, (D.N.J. July 31, 2018). This was Judge Shipp's decision in several opt out actions which dismissed all scienter based claims against PwC.

In short, Tucson alleges that discovery-based information demonstrates it now has a factual basis to add a § 10(b) claim against PwC, that PwC will experience no prejudice as a result of the filing, that there has been no undue delay in seeking the amendment, and filing the Amended Complaint will not be futile.

### PwC'S OPPOSITION

PwC takes a dramatically different position asserting that Plaintiff has relied upon the wrong rule and wrong standard to amend its complaint. That is, according to PwC, Tucson's reliance on FRCP 15's "freely given" standard is wrong and the appropriate Rule is FRCP 16, specifically FRCP 16(b)(4) and its "good cause" standard. To support its position, PwC references facts in this litigation's procedural history as follows:

1. On July 25, 2017, PwC produced its 2014 workpapers responding to an initial discovery demand.

2. On August 18, 2017, PwC produced a second set of responses – workpapers used to produce its 2015 financial statement.

3. A Joint Discovery Plan had previously been entered setting a deadline to amend without leave of September 21, 2018.

4. On September 20, 2018, one day before the amendment deadline, Plaintiff filed its First Amended Complaint – repeating its preexisting § 11 claims but not asserting the fraud based claims.

5. On October 22, 2019, the Special Master docketed the existing plan with no new deadline to amend.

6. At no point prior to filing this motion, did Plaintiff indicate an intention to amend to include fraud based allegations.

In short, PwC states that the discovery upon which Plaintiff bases its fraud based claims was provided in the summer of 2017 but Tucson inexplicitly failed to file a motion to amend until December 2019, doing so after an Order set a deadline to amend of September 21, 2018.

PwC insists that this is a flawed attempted to expand the Class Action "just as it should be ending." PwC insists that Federal Rule of Civil Procedure 16 guides motions to amend post conference. That is, the Rule provides that a scheduling order must be issued and its required contents may include a limit to amend the pleadings. FRCP 16(b)(3)(A). That order, in turn, "may be modified only for good cause shown and with the judge's consent." FRCP 16(b)(4).

PwC goes on to say that Tucson cannot meet the good cause standard because:

- Tucson admits it had sufficient information to amend before the deadline, i.e., Plaintiff in its motion argues that the fraud based claims were based upon the workpapers provided in 2017, 13 months before the date, under the Case Management Order, to file motions to amend (without leave). Yet, one day before that deadline, Tucson amended its Complaint but failed to include allegations of securities fraud.

- Plaintiff's "procrastination" in failing to file a motion to amend until December 2019 forms another basis to deny, i.e., Plaintiff continued to do nothing after the deadline expired allowing another year to pass before acting.

- PwC argues that Plaintiff mistakenly relies on cases which only address FRCP 15 or involved motions in which the plaintiff obtained pertinent information *after* the deadline to amend or involved cases where there was no operative scheduling order.

- Under the Private Securities Litigation Reform Act ("PSLRA"), there is a "heightened requirement" for pleading securities fraud and courts have denied leave to amend to add fraud based claims against auditors based on documents obtained during discovery.

- PwC also relies heavily upon Judge Shipp's decision in a related matter, *Lord Abbett Inv. Trust-Lord Abbett Short Duration Income Fund v. Valeant Pharms. Int'l., Inc.*, another opt out action with similar allegations that resulted in a dismissal of PwC on the same grounds. Similarly, PwC points to another Judge Shipp decision in support, *New York City Emps.-Ret. Sys. v. Valeant Pharms. Int'l., Inc.*, 2018 WL 462076 (D.N.J. September 26, 2018).

- Relying on these decisions, PwC maintains that Plaintiff's fraud based amendment is futile. That is, in the *Lord Abbett* and *NYCERS* cases, the Court concluded that the charge that PwC committed fraud to collect a fee was an insufficient motive failing to support recklessness; that the allegation that Valeant's former senior partners had engaged in improper conduct by providing the auditor with incorrect information concerning Philidor mitigated against the claim of fraud; that the allegation of egregious accounting violations and

7

- knowledge of key information were insufficient for stating a § 10(b) claim; and that Valeant's failure to disclose acquisition of Philidor in its 2014-K did not violate SEC rules which allow an auditor to use judgment as to whether an acquisition was material such that an auditor could find that it was acceptable for a corporation to include immaterial business combinations within an aggregate disclosure.

- In summary then, PwC asserts that (1) FRCP 16, not FRCP 15, applies; (2) under FRCP 16 there is what amounts to a higher "good cause" standard for permitting an amendment; (3) good cause is lacking here, largely because Tucson failed to diligently move to amend; and (4) in related cases involving substantially similar issues, this Court concluded there was an insufficient basis to allege fraud – as opposed to negligence – against the auditor.

**PLAINTIFF'S REPLY**

Tucson's principal argument in reply – directly contradicting that of PwC – is that FRCP 15(a)(2) applies, not FRCP 16.

Tucson argues that the Scheduling Order set a deadline to amend but only for amendments without leave and, since Tucson does not seek to modify the pretrial schedule, FRCP 15(2) applies.

Additionally, even under a "good cause" standard, Tucson is entitled to amend. That is, its motion was filed a year prior to discovery's close and Plaintiff emphasizes that our courts have generally triggered deadlines for motions to amend at or near the <u>close</u> of discovery. Hence, PwC would not be prejudiced by the amendment. Further, while Tucson acknowledges that it did receive workpapers beginning in July 2017, these documents were voluminous and required careful consideration. Tucson also urges that it was not required to base its amendment solely on the workpapers but could rely upon emails not produced until August of the following year. Moreover, there were discovery stays as well as a tolling agreement and just one day after expiration, Tucson filed its motion to amend (December 19, 2019). Tucson contends it <u>had</u> informed PwC of a specific basis for the amendment in July 2019.

Finally, Tucson argues that the PSLRA – neither its text nor the cases interpreting it – prohibits using discovery as a basis to amend. Plaintiff asserts that PwC, in its opposition, cited cases where parties sought leave well after discovery had been conducted or on the eve of trial and that the overwhelming authority favors allowing amendments based on discovery.

In summary, in reply, Tucson argues that FRCP 15's liberal standard governs; even if a good cause standard is applicable, Tucson has met it; there was no delay, let alone an undue delay in moving to amend; PwC has suffered no prejudice given there exists ample time to complete discovery; and there is no recognized policy under the PSLRA prohibiting using discovery to amend.

## **LEGAL STANDARD**

As noted above, Plaintiff City of Tucson and Defendant PwC, urge this Court to employ two different Rules and standards contained within those Rules in deciding whether or not leave should be granted to file the proposed Amended Complaint. Those Rules are FRCP 15 (which Tucson urges should be employed) and FRCP 16 (which PwC urges).

FRCP 15, entitled "Amended and Supplemental Pleadings" reads, in pertinent part:

(a) Amendments Before Trial.

    (1) *Amending as a matter of course*. A party may amend its pleadings once as a matter of course within;

        (A) 21 days after serving it, or

        (B) If the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b),(e), or (f), whichever is earlier.

    (2) *Other amendments*. In all other cases a party may amend its pleading only with the opposing party's written consent or the court's leave. **The court should freely give leave when justice so requires.** (Emphasis added.)

On the other hand, Rule 16, entitled "Pretrial Conferences; Scheduling; Management," generally lays out procedures with respect to pretrial conferences. This includes a provision for the creation of scheduling orders including (with very limited exceptions) a provision which requires the district judge or, when appropriate, a magistrate judge, to issue a scheduling order. The Rule goes on to state (FRCP 16(b)(3)(A)):

> *Required contents*. The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.

Then, pertinent to this issue, the Rule provides:

> (4) *Modifying a schedule*. A schedule may be modified **only for good cause and with the judge's consent**. (Emphasis added.)

It is the standard or basis for leave to amend where the party's respective arguments diverge most. Plaintiff maintains that it is Rule 15's "freely give leave" standard which is applicable while PwC maintains that it is Rule 16's – arguably higher – "good cause" standard which applies.

The Special Master is persuaded that the correct governing standard here can be found in FRCP 15(a)(2). That is, the Court under these circumstances when considering a motion to amend "should freely give leave when justice so requires." More importantly, however, even if the arguably stricter "good cause" standard of Rule 16 were to be applicable, The Special Master finds that good cause exists for the City of Tucson to amend its pleadings to include the scienter-based allegations of securities fraud contained in the proposed amended pleading.

First, the Special Master believes it is important to review the Order upon which PwC grounds its contention that there was, in effect, a strict deadline for amendment of pleadings. This was, after all, a Joint Discovery Plan consented to by the parties – and approved by the Court – creating deadlines by which the parties could move forward and exchange discovery in

what by any measure is a complex action.  It also contained an agreed upon deadline to amend pleadings – but a deadline that permitted amendments <u>without</u> leave of Court.  Nothing in that Order or plan limited Plaintiff from seeking leave of Court to amend its pleadings which, of course, is what Tucson seeks to do here.  Nor is there any indication that the deadline (of September 21, 2018) constituted some "trigger" that would begin to toll a time frame by which Plaintiff was required to file an amended pleading derived from information revealed during the ongoing discovery process.  To urge, as PwC does, that "although Tucson fails to acknowledge it, the deadline to amend pleadings without leave of Court was September 21, 2018" does indeed miss the point.  The Plaintiff acknowledges this deadline but is not seeking to amend without leave of Court and does not seek to alter or amend any discovery-related deadline.

Defendant has failed to cite a case which clearly supports the notion that a party is prohibited from seeking the court's permission to amend a Complaint or requires a court to employ the "good cause" standard of FRCP 16(b)(4) after the litigants prepared a Joint Discovery Plan setting an amendment deadline – *which does not require leave of court*.  Those cases cited by Defendant for the proposition that a "good cause" standard applies are inapposite and arise out of circumstances where a court set a deadline for substantive amendments well into the discovery process not, such as here, where the Court approved a provision allowing the parties at an earlier stage of litigation to amend without the necessity of a formal motion.

For example, *in Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57 (3rd Cir. 2010), the Third Circuit concluded that the District Court did not abuse its discretion by denying the plaintiff's motion to amend.  However, as the court pointed out, the plaintiff had previously moved three times for an amendment (all of which were granted) and its fourth application to amend pleadings (described as a "last-minute attempt") included an entirely new

legal theory. Therefore, while the Third Circuit analyzed the decision under the "good cause" standard of FRCP 16(b)(4), the circumstances were entirely different. Similarly, *In Re: Bristol-Myers Squibb Sec. Lit.*, 228 F.R.D. 221 (D.N.J. 2005), another case cited by Defendant, the motion to amend arrived "after *more than four and one-half years* of exhausted discovery and complex motion practice…[and] nearly a year after the close of fact discovery…" *Id*. at 228. (Emphasis in original.) Describing this as an "eleventh hour" amendment, the court concluded that the plaintiff had ample opportunity to amend the complaint prior to the expiration of deadlines to amend pleadings and to conduct discovery but failed to do so. *Id*. at 230. Another cited case, *In Re: NAHC, Inc. Sec. Litig.*, 306 F.3d 1314 (3rd Cir. 2002) is, as Plaintiff's point out, inapposite, centering on a Rule 12(b)(6) motion – again well into the litigation – constituting claims barred by the statute of limitations and "[m]any claims asserted by appellants [which] would obviously be futile to amend." *Id*. at 1332. In short, the Special Master finds that FRCP 15 is the applicable Rule under these circumstances.

With this said, and as stated previously, even if a "good cause" standard was the basis upon which the Court must analyze Tucson's application to amend, that standard has been met.

PwC principally argues that Plaintiff has failed to establish "good cause", as a result of a seeming delay in filing this motion to amend in which it now seeks to make claims of securities fraud (as opposed to strict liability) on behalf of the auditor. Effectively, PwC argues that by the late summer of 2017, as a result of two document productions consisting of the auditor's workpapers representing the analysis of two fiscal years, Tucson knew or should have known whether it had – or did not – have a basis to allege scienter. Plaintiff, in response, asserts that in order to properly have established a basis for a claim of what amounts to deliberate misconduct by PwC, it had to wade through (metaphorically) mountains of documents, not only from PwC

but also from third parties whose information was obtained through a series of subpoenas. Furthermore, Tucson states that the documents supporting these allegations were not supplied at one discrete time, the summer of 2017, but were received serially (from Defendant and other sources) up to and through November 2019, including PwC's emails produced in August 2018. Furthermore, this litigation has been subject to discovery stays and a tolling agreement.

Under the circumstances, while the Special Master cannot discern some bright shining moment when Plaintiff was or should have been alerted to the basis for a legitimate fraud based securities claim against PwC, the Special Master accepts the notion that this is a complex matter, involving millions of documents – not just the auditor's workpapers – requiring appropriate and relatively time consuming analysis, including expert review and analysis, to determine the factual basis and support for a scienter based claim. Had this motion been filed at or near the conclusion of discovery, it might be argued that the delay in seeking to amend was unreasonable or untimely and that PwC could be prejudiced in putting together a cogent defense to deflect a claim that it knowingly assisted Valeant in a securities fraud. But this is not the case here. As Tucson points out, we are still in the middle of the discovery process which does not conclude until next year. Moreover, given the allegations asserted against Valeant and those against PwC arising out of its audit, it is reasonable to conclude that Defendant was effectively on notice from the inception that a litigant might assert fraud based claims arising out of the same facts and circumstances forming the basis for the § 11 allegations. The Special Master agrees with Plaintiff that in essence these claims overlap and would generally require a same or similar level of discovery for which there is adequate time to complete.

Significantly, Defendant does not argue that Tucson's "procrastination" in its failure to file a motion to amend before December 2019, actually resulted in any demonstrable prejudice.

Instead, Defendant merely asserts that Plaintiff, armed with what the auditor believes was adequate information to allege a scienter-based claim, took an inexplicably long time to seek this Court's permission to add the additional claim but does not assert this delay caused demonstrable harm.

Finally, as to the notion that Tucson's claims are "futile," and that this futility now forms a basis to deny a pleadings amendment, the Special Master finds that the detailed allegations pleaded in the proposed complaint present, at least in theory, a factual basis to support a securities fraud (scienter) claim which, of course, will need to be fully established as this matter goes forward. While the PSLRA enhances the burden of a plaintiff to bring forth evidence of a securities fraud, largely for the purpose of weeding out frivolous suits, as Defendant concedes (PwC's Opposition at page 14), this Circuit has not established a prohibition against discovery based amendments charging fraud. Additionally, Defendant's reliance on the *Lord Abbett* decision is misplaced. The motion implicated there was a Rule 12(b)(6) application filed in response to an existing complaint only vaguely charging a Section 10(b) claim (along with Section 11 claims) under circumstances where Judge Shipp found (agreeing with the defendant) that the plaintiff had not even pleaded an inference of scienter or motive to commit fraud. Here, the detailed allegations set forth in Count III of the proposed amended complaint (and summarized on page 5 of this Report and Recommendation), which appear to be supported in part by internal emails and other documents exchanged during discovery, at least facially establish a basis for a scienter claim and are sufficient to permit an amendment.

## **CONCLUSION**

For the reasons set forth in this Report and Recommendation, Plaintiff's motion to amend the complaint is granted.

Date: July 17, 2020

DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)