# EXHIBIT 4

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION<br><br>This Document Applies To:<br><br>No. 3:15-CV-07658-MAS-LHG | Case No. 3:15-CV-07658-MAS-LHG<br><br>JUDGE MICHAEL A SHIPP<br>JUDGE LOIS H. GOODMAN<br><br>JUDGE DENNIS CAVANAUGH, RET.<br>SPECIAL MASTER |

**PRICEWATERHOUSECOOPERS LLP'S OPPOSITION TO NAMED
PLAINTIFF TUCSON'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Dated:  February 18, 2020

KING & SPALDING LLP

James J. Capra, Jr. (admitted *pro hac vice*)
James P. Cusick (admitted *pro hac vice*)
Christina M. Conroy (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Kenneth Y. Turnbull (admitted *pro hac vice*)
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

CHIESA SHAHINIAN & GIANTOMASI PC

A. Ross Pearlson
One Boland Drive
West Orange, NJ 07052
Telephone: (973) 530-2100
Facsimile: (973) 530-2300

*Attorneys for Defendant
PricewaterhouseCoopers LLP*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND......................................................................................2

   A. The Initial Complaint (October 2015) ........................................2

   B. The Consolidated Complaint (June 2016) ..................................3

   C. PwC's Production of Its Workpapers (July–August 2017)........4

   D. The Amendment Deadline (September 21, 2018) .......................4

   E. Tucson's Motion (December 17, 2019)......................................6

ARGUMENT ..............................................................................................................7

  I. The Court should deny the motion because Tucson cannot show the requisite good cause to amend under Federal Rule 16. ...........................................7

   A. The "good cause" standard of Federal Rule 16 applies to Tucson's request to further amend the complaint.......................................7

   B. Tucson cannot meet its burden to show good cause under Rule 16(b)(4) given its lack of diligence............................................9

   C. The Court should also deny the motion under Rule 15(a), as limited by the Reform Act, because of Tucson's unreasonable delay.....................................................................................11

   D. Tucson's case law is inapposite. .............................................11

  II. The Court should also deny the motion because allowing an amendment based on documents obtained in discovery on a different claim would contravene the policies of the Reform Act.......................12

  III. Tucson's proposed 10(b) claim is legally deficient. .............................14

CONCLUSION..........................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Assadourian v. Harb*,
   430 Fed. App'x 79 (3d Cir. 2011) (*per curiam*) ...................................................10

*Callas v. Callas*,
   2017 WL 3448107 (D.N.J. Aug. 11, 2017)...........................................................10

*Colonial Sur. Co. v. Alpha Software Corp.*,
   2019 WL 2137365 (D.N.J. May 16, 2019) ..........................................................12

*Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.*,
   148 Fed. App'x 82 (3d Cir. 2005)...................................................................7, 10

*Dow Corning Corp. v. BB & T Corp.*,
   2010 WL 4860354 (D.N.J. Nov. 23, 2010)...........................................................14

*Graham v. Progressive Direct Ins. Co.*,
   271 F.R.D. 112 (W.D. Pa. 2010) .......................................................................8

*High 5 Games, LLC v. Marks*,
   2018 WL 2134038 (D.N.J. May 9, 2018) .............................................................12

*Hound Partners Offshore Fund, LP v. Valeant Pharm. Int'l, Inc.*,
   No. MER-L-2185-18 (N.J. Sup. Ct. June 19, 2019) ...............................................16

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2004 WL 1810661 (S.D.N.Y. Aug. 12, 2004).......................................................14

*In re BISYS Sec. Litig.*,
   496 F. Supp. 2d 384 (S.D.N.Y. 2007) ...............................................................13

*In re Bristol-Myers Squibb Sec. Litig.*,
   228 F.R.D. 221 (D.N.J. 2005) ........................................................................11

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002)..........................................................................11

*In re Petrobras Sec. Litig.*,
   2016 WL 3144395 (S.D.N.Y. May 5, 2016) ......................................................2, 13

*Iowa Pub. Emp.'s Ret. Sys. v. Deloitte & Touche LLP*,
   919 F. Supp. 2d 321 (S.D.N.Y. 2013)................................................................18

*Lasermaster Int'l Inc. v. The Netherlands Ins. Co.*,
  2018 WL 6191901 (D.N.J. Nov. 28, 2018)....................................................8, 9, 10

*Lord Abbett Inv. Tr.-Lord Abbett Short Duration Income Fund v. Valeant Pharm.*
  *Int'l, Inc.*, 2018 WL 3637514 (D.N.J. July 31, 2018)....................................2, 15–16

*Lorenz v. CSX Corp.*,
  1 F.3d 1406 (3d Cir. 1993)..............................................................................11

*Lowry v. Eastman Kodak Co.*,
  14 Fed. App'x 27 (2d Cir. 2001)........................................................................7

*Lucia v. McClain & Co.*,
  2013 WL 4517976 (D.N.J. Aug. 23, 2013) ......................................................11

*Mullin v. Balicki*,
  875 F.3d 140 (3d Cir. 2017) ............................................................................12

*New York City Emps.' Ret. Sys. v. Valeant Pharm. Int'l, Inc.*,
  2018 WL 4620676 (D.N.J. Sept. 26, 2018) ......................................................15

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
  614 F.3d 57 (3d Cir. 2010) ............................................................................7, 9

*Stallings ex rel. Estate of Stallings v. IBM Corp.*,
  2009 WL 2905471 (D.N.J. Sept. 8, 2009) ......................................................10

*Williams v. Globus Med., Inc.*,
  869 F.3d 235 (3d Cir. 2017) ............................................................................14

*Winer Family Trust v. Queen*,
  503 F.3d 319 (3d Cir. 2007) ............................................................................14

**Statutes and Rules**

Federal Rule of Civil Procedure 15 ......................................................................11

Federal Rule of Civil Procedure 16 ...................................................................7–11

Private Securities Litigation Reform Act,
  15 U.S.C. § 78u–4 ..............................................................................2, 11, 13–14

**Other Authorities**

S. Rep. 104-98 (1995), 1995 U.S.C.C.A.N. 679....................................................13

PricewaterhouseCoopers LLP ("PwC") opposes the motion to file a second amended complaint by named plaintiff, the City of Tucson, together with and on behalf of the Tucson Supplemental Retirement System ("Tucson").

## PRELIMINARY STATEMENT

This motion is a flawed attempt to expand this class action just as it should be ending.

Tucson has a single claim against PwC, under Section 11 of the Securities Act.   On December 10, 2019, PwC moved for Rule 12(c) judgment because Tucson has no Section 11 damages and no standing to assert this claim.   On December 16, Lead Plaintiff TIAA-CREF ("TIAA") and Tucson announced that they had settled all claims against all other defendants, leaving the Section 11 claim against PwC as the only remaining claim.   The next day, December 17, Tucson asked for leave to initiate a new claim against PwC for fraud under Section 10(b) of the Exchange Act.   The Court should deny Tucson's motion for three reasons.

*First*, it is too late.   Tucson erroneously casts its application as a Rule 15 motion that should be "freely granted."   Brief ("Br.") at 8.   That is the wrong standard.   Although Tucson fails to acknowledge it, the deadline to amend pleadings without leave of court was September 21, 2018.   The parties jointly proposed this deadline, and it is reflected in the Court's October 10, 2018 Order accepting the filing *nunc pro tunc* of the First Amended Complaint and in the later so-ordered Joint Discovery Plan.   When a party seeks leave after the amendment deadline, Rule 16 applies.   Thus, Tucson must show that it has "good cause" to amend—that it has acted diligently and could not have brought the claim earlier.   The opposite is true.   Tucson claims that PwC's workpapers are the "smoking gun" that "provide the support" for its proposed new claim. Br. at 15, 17.   PwC produced its workpapers by August 2017, 13 months before the amendment deadline.   Despite references to "ongoing discovery" and a "recent document production" (*id.* at 2, 5, 6–7), the fact is that Tucson could have brought this claim two years ago, but did not do so.

*Second*, the amendment would contravene the policies animating the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4 (the "Reform Act" or "PSLRA"). The Reform Act imposes strict pleading requirements and stays discovery until a court determines that a legally sufficient fraud claim has been pleaded. *Id.* § 78u–4(b)(1)–(2) & (b)(3)(B). Based on these provisions, courts have denied amendments to add 10(b) claims where, as here, they are based on information obtained in discovery, because Congress "effectively shifted the burden to plaintiffs to acquire particularized knowledge of a party's scienter *prior* to obtaining discovery." *In re Petrobras Sec. Litig.*, 2016 WL 3144395, at *3 (S.D.N.Y. May 5, 2016) (emphasis added).

*Finally*, while PwC reserves all merits arguments, the proposed claim is deficient as a matter of law. The Court previously dismissed all similar 10(b) and other fraud-based claims against PwC in individual cases because those claims sounded in negligence and did not meet the "particularly demanding" standard for pleading an auditor's scienter. *See Lord Abbett Inv. Tr.- Lord Abbett Short Duration Income Fund v. Valeant Pharm. Int'l, Inc.*, 2018 WL 3637514, at *3 (D.N.J. July 31, 2018). Tucson's allegations, although based on PwC's workpapers, are no different in kind. They sound in negligence, not fraud, and would not meet the high bar for pleading PwC's scienter. The Court should deny the motion.

## FACTUAL BACKGROUND

### A.    The Initial Complaint (October 2015)

In October 2015, short sellers alleged improprieties in the relationship between Valeant Pharmaceuticals International, Inc. ("Valeant") and one of its distributors, Philidor Rx Services, LLC ("Philidor"). Shortly thereafter, on October 22, 2015, plaintiff Potter, represented by Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), filed the first putative class action in this Court. *See Potter v. Valeant Pharms. Int'l, Inc.*, No. 15-cv-07658-MAS-LHG (D.N.J. Oct. 22, 2015) (ECF 1). Potter alleged that Valeant's 2014 10-K was false and misleading because

Valeant did not disclose its relationship with Philidor.  *Id.* ¶ 64.  Potter named as defendants Valeant and certain of its officers, but not PwC.

**B.     The Consolidated Complaint (June 2016)**

On June 24, 2016, following the Court's appointment of TIAA as Lead Plaintiff, with Robbins Geller as lead counsel, Plaintiffs filed a Consolidated Complaint (ECF 80).  Like the *Potter* complaint, the Consolidated Complaint did not include a 10(b) fraud claim against PwC. It did assert a "non-fraud" Section 11 claim against PwC and other defendants by named plaintiff Tucson in connection with Valeant's March 2015 secondary offering of common stock.  Consol. Compl. ¶¶ 551, 557, 563, 568.

Tucson based its Section 11 claim against PwC on the opinions in PwC's February 25, 2015 audit report ("PwC's 2014 Audit Report").  In that report, PwC opined that Valeant's 2014 financial statements were fairly presented in material respects and that Valeant maintained effective internal control over financial reporting as of December 31, 2014.  PwC's 2014 Audit Report was included in Valeant's 2014 Form 10-K filed with the SEC on February 25, 2015 ("2014 10-K"), and it was incorporated by reference in offering materials for Valeant's March 2015 secondary common stock offering.  Consol. Compl. ¶¶ 563, 692.

Tucson alleged that these offering materials were misstated based largely on Valeant's subsequent determination to restate its 2014 financial statements.  Specifically, in October 2015, Valeant's Board established an ad hoc committee led by outside counsel to investigate the short seller allegations regarding Philidor.  Consol. Compl. ¶ 252.  After a four-month investigation, Valeant announced that it would restate its 2014 financial statements, which Valeant then included in its 2015 Form 10-K filed with the SEC on April 29, 2016 ("2015 10-K").  *Id.* ¶¶ 289, 308.  The ad hoc committee found that certain sales to Philidor in 2014 had been outside the normal course of business, such that revenue on those sales should have been recognized in a

later period.  *Id.* ¶¶ 289, 315–17.  While the amount was small—less than 1% of Valeant's revenue that year—the Company restated its 2014 financial statements based on the committee's finding that certain Valeant officers had engaged in "improper conduct."  *Id.* ¶¶ 41, 444, 694–95. That improper conduct included providing "incorrect information" to PwC regarding the nature and intent of these sales to Philidor, which "contributed to the misstatements."  *Id.* ¶¶ 41, 380. Based on the committee's finding and Valeant's restatement, Tucson claimed that PwC's 2014 Audit Report was untrue, *id.* ¶¶ 691, 693–94, but "disclaim[ed] any allegations of fraud, scienter, or recklessness" in connection with its Section 11 claim, *id.* ¶¶ 551, 557.

**C.    PwC's Production of Its Workpapers (July–August 2017)**

On April 28, 2017, the Court decided motions to dismiss the Consolidated Complaint and the PSLRA discovery stay expired.  *See* ECF 216.  On July 25, 2017, PwC produced its workpapers for its audit of Valeant's 2014 financial statements in response to Plaintiffs' first request for documents.  On August 18, 2017, PwC produced its workpapers for its audit of Valeant's 2015 financial statements.  Copies of counsel's production letters are attached as Exhibits 1 and 2 to the accompanying Declaration of Kenneth Y. Turnbull ("Turnbull Decl.").

**D.    The Amendment Deadline (September 21, 2018)**

The parties submitted a Joint Discovery Plan to the Court on July 3, 2018 and then again on September 7, 2018 following the Court's scheduling of a conference (Turnbull Decl. Exs. 3 and 4).  Both Plans reflected the parties' agreed proposal that the deadline to amend pleadings without leave of court was September 21, 2018.  One day before that cutoff, on September 20, 2018, Plaintiffs filed their First Amended Complaint, which added an insider trading claim against a new defendant, ValueAct.  Tucson repeated verbatim its Section 11 claim against PwC in the First Amended Complaint.  *See* First Am. Compl. (ECF 352) ¶¶ 701–44.  Plaintiffs did not

include any new claim against PwC despite the fact that they had received PwC's workpapers 13 months prior.

The scheduling conference was held in person before Judge Goodman on September 26, 2018. The Court asked if Plaintiffs had obtained leave to file the First Amended Complaint. Plaintiffs stated that they had not, but that the amendment should be allowed because they had filed it before the agreed September 21, 2018 deadline. Even so, Judge Goodman directed Plaintiffs to seek an Order permitting this amendment. Turnbull Decl. ¶ 5. Based on their previous agreement, the parties submitted a proposed order reflecting that Defendants had "consented to Class Plaintiffs amending without leave of Court on or before September 21, 2018," and the Court entered the Order, which accepted the First Amended Complaint for filing "*nunc pro tunc*." Oct. 10, 2018 Order (ECF 366) (Turnbull Decl. Ex. 5).

Pursuant to the PSLRA, the case was stayed while the newly-added defendant, ValueAct, moved to dismiss. On August 5, 2019, after the stay expired, the parties submitted a revised Joint Discovery Plan (ECF 477). Two months later, the parties re-submitted the same Plan to newly-appointed Special Master Cavanaugh (ECF 487), who "so ordered" it, and it was docketed on October 22, 2019 (ECF 492) (Turnbull Decl. Ex. 6). The so-ordered Plan referenced the amendment deadline and Plaintiffs' filing of their First Amended Complaint "consistent with [that] deadline." *See* ECF 492, at 5 (Turnbull Decl. Ex. 6). The Plan did not set forth a new deadline to amend pleadings because the deadline had passed a year earlier.

At no time between the filing of the First Amended Complaint on September 20, 2018 and the filing of this motion on December 17, 2019 did Tucson advise the Court of any intention to amend further, despite at least three opportunities: (1) at the September 26, 2018 conference, when discussing the amendment of the Consolidated Complaint to add its new claim against

ValueAct; (2) at the end of a March 27, 2019 telephonic conference with Judge Shipp concerning the appointment of a special master (which was not transcribed), when the Court asked if the parties had anything else to raise; and (3) in the proposed schedules submitted to the Court on August 5, 2019 and September 30, 2019, when Plaintiffs did not ask to include an additional time period for amendment of the pleadings.

### E.   Tucson's Motion (December 17, 2019)

Tucson now seeks leave to assert a claim against PwC for securities fraud pursuant to Section 10(b) based on alleged false statements in PwC's 2014 Audit Report, as set out in its proposed Second Amended Complaint ("Proposed SAC") (¶¶ 563–64; *see also* ¶ 55).  Tucson claims that leave should be granted because PwC's audit workpapers provide sufficient information to support its proposed 10(b) claim—that they are "the smoking gun proving that PwC acted with scienter." Br. at 17.  In a similar vein, Tucson represents that:

- "[T]he SAC's allegations are based on a detailed analysis of PwC's workpapers, which show PwC was aware of the same material facts at the time PwC issued its false and misleading audit report as it was when PwC agreed that the financials needed to be restated." *Id.* at 14;

- "The PwC workpapers provide the support that was lacking in the Section 10(b) fraud claim against PwC in the *Lord Abbett* opt-out action[,]" referring to a ruling in several opt-out actions in which Judge Shipp dismissed all scienter-based claims against PwC.  *Id.* at 15; and

- "The facts supporting scienter come not from hearsay or innuendo, but from PwC's own workpapers . . . ." *Id.*

Tucson's proposed pleading refers to PwC's workpapers throughout the new Section 10(b) claim.

*See* Proposed SAC ¶¶ 562, 566, 590, 601, 603, 605, 607–08, 611, 614, 627, 629, 635, 637.[1]

---

[1] Under professional auditing standards, audit workpapers constitute "the written record of the basis for the auditor's conclusions that provides the support for the auditor's representations . . . in the auditor's report."  *See* PCAOB Auditing Standard 3 ¶ 2, at: https://pcaobus.org/.  This explains why Tucson claims to have performed a "detailed analysis of PwC's workpapers" and features them as the "support" for its proposed 10(b) claim.  Br. at 14, 15.

PwC produced its 2014 workpapers on July 25, 2017 and its 2015 workpapers on August 18, 2017.  Turnbull Decl. ¶¶ 2, 3.  At that point Tucson had what it now calls the "smoking gun" evidence in support of a fraud claim against PwC.  Br. at 17.  And yet it did nothing to amend its pleading in the 13 months leading up to the September 21, 2018 deadline, instead waiting almost two years to seek leave to sue PwC for a violation of Section 10(b).[2]

## ARGUMENT

I.   **The Court should deny the motion because Tucson cannot show the requisite good cause to amend under Federal Rule 16.**

A.   **The "good cause" standard of Federal Rule 16 applies to Tucson's request to further amend the complaint.**

Tucson misstates the applicable standard, claiming that its motion should be "freely granted" under the "liberal standard" of Federal Rule 15.  Br. at 7–8.  This is not the standard because the deadline for amendment without leave of court expired in September 2018.  Consistent with the text of Federal Rule 16(b)(4) and other Courts of Appeals, the Third Circuit has adopted a "good cause" standard for motions to amend pleadings filed after the amendment deadline.  *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010) (affirming district court's application of "the 'good cause' standard of Rule 16(b)); *Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.*, 148 Fed. App'x 82, 85 (3d Cir. 2005) (noting Third Circuit's "approv[al]" of "Rule 16(b)'s 'good cause' requirement") (citing *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000)); *see also Lowry v. Eastman Kodak Co.*, 14 Fed. App'x 27, 30 (2d Cir. 2001) (Second Circuit approval of "good cause" standard).

---

[2] Despite Tucson's suggestion otherwise (Br. at 6, 12), the parties' tolling agreement does not excuse Tucson's delay.  First, it was not executed until July 19, 2019, ten months after the amendment deadline had passed.  Second, the agreement was in place for only about five months of the twenty-eight months that elapsed between the time Tucson received PwC's workpapers and the filing of this motion.  *See* Turnbull Decl. ¶ 7.

Specifically, Rule 16 provides that the court "must issue a scheduling order" and that, among other "required contents," the order "must limit the time to . . . amend the pleadings." Fed. R. Civ. P. 16(b)(1), (3).  In turn, part (b)(4) provides that a scheduling order "may be modified only for *good cause* and with the judge's consent."  Fed. R. Civ. P. 16(b)(4) (emphasis added).  Thus, when "a party seeks to amend after the deadline for doing so set by the Court, the movant must satisfy the [good cause standard] of Rule 16 before the Court will turn to Rule 15." *Lasermaster Int'l Inc. v. The Netherlands Ins. Co.*, 2018 WL 6191901, at *2 (D.N.J. Nov. 28, 2018) (internal quotes omitted; citing *Dimensional Commc'ns*, 148 Fed. App'x at 85).

Here, Rule 16's good cause standard applies because Tucson served its motion long after the September 21, 2018 deadline to amend without leave of court.  As shown above:

- The parties agreed that September 21, 2018 was the last day for pleading amendments and twice proposed that deadline in advance of the scheduling conference held on September 26, 2018;

- Plaintiffs acknowledged that deadline by filing their First Amended Complaint the day before the cutoff;

- Plaintiffs represented to Judge Goodman at the conference that they had abided the September 21, 2018 deadline when filing their First Amended Complaint;

- The parties submitted an order reflecting Defendants' consent to the filing "without leave of Court on or before September 21, 2018," and the Court accepted the filing of the First Amended Complaint *nunc pro tunc* (ECF 366); and

- The Court's October 22, 2019 scheduling order, proposed by all parties, referenced the filing of the First Amended Complaint "consistent with the [amendment] deadline" and did not include a new deadline to amend because it had passed a year earlier (ECF 492).

*See Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 116 & n.2, 119 (W.D. Pa. 2010) (applying Rule 16 when the scheduling order marked the amendment deadline "n/a" because the agreed-upon date proposed to the court had already passed).

**B.     Tucson cannot meet its burden to show good cause under Rule 16(b)(4) given its lack of diligence.**

The Third Circuit has explained that the good cause standard of Rule 16(b)(4) "focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc.*, 614 F.3d at 84.  As one magistrate judge applying Rule 16 put it, "courts typically ascertain whether the movant possessed, or through the exercise of reasonable care should have possessed, the knowledge necessary to file the motion to amend before the deadline expired."  *Lasermaster Int'l*, 2018 WL 6191901, at *3 (denying motion to amend) (citing cases).

Here, Tucson cannot show good cause because it admits that it had sufficient information to prepare its amended pleading long before the deadline.  PwC produced its 2014 and 2015 workpapers on July 25 and August 18, 2017.  According to Tucson, it performed a "detailed analysis" of these workpapers and they "provide the support that was lacking in the Section 10(b) fraud claim against PwC in the *Lord Abbett* opt-out action."  Br. at 14, 15.  Tucson had this information for 13 months before the amendment deadline, when Plaintiffs filed their First Amended Complaint.  Tucson had every incentive to bring all new claims then, because it knew that the amendment deadline expired the next day and that adding new claims would trigger another stay under the Reform Act, as its new claim against ValueAct did.  Moreover, the fact that discovery remained "ongoing" after the amendment deadline and that Tucson continued to obtain "new" information (Br. at 2, 5, 6–7) is a red herring.  The Rule 16 good cause analysis focuses on whether the movant had "the knowledge necessary to file the motion to amend before the deadline expired," *Lasermaster Int'l*, 2018 WL 6191901, at *3, not on whether additional information became available thereafter, as happens in every case.

When a party could have included, but failed to include, an additional claim at a crucial juncture—in a previous amendment or before the amendment deadline—the Third Circuit has

held that such lack of diligence warrants denial of leave to amend. *See Assadourian v. Harb*, 430 Fed. App'x 79, 81 (3d Cir. 2011) (*per curiam*) (affirming denial of leave to amend where the new claim "was based on documents that [plaintiff] possessed even before he [previously] amended his complaint"); *Dimensional Commc'ns*, 148 Fed. App'x at 85 (defendant "was in possession of the facts underling its proposed counterclaim well before the amendment deadline"). District courts have similarly denied leave to amend pleadings under these circumstances.[3] These authorities preclude a showing of good cause because, by its own admission, Tucson had the information necessary to bring a Section 10(b) claim 13 months before the amendment deadline, but did not move until long after the deadline had passed.

That should be the end of the good cause inquiry because Tucson ignored the amendment deadline. Yet Tucson's procrastination *after* the amendment deadline provides another basis for the Court to deny the motion. In cases where, unlike here, a party obtains information after the amendment deadline and then seeks to amend, courts consider whether the party acted promptly. In *Lasermaster*, for example, the defendant sought to amend its answer after the deadline, contending that a "supplemental production" constituted good cause. 2018 WL 6191901, at *3. But the defendant waited five months after that production to move, and the court denied the motion. *Id.* at *4. Here, Tucson received PwC's workpapers 13 months *before* the September 21, 2018 deadline, did nothing, and then continued to do nothing after that deadline expired, allowing another year to pass before filing its motion. Tucson's additional delay after the amendment deadline further precludes any showing of good cause.

---

[3] *See, e.g.*, *Callas v. Callas*, 2017 WL 3448107, at *5 (D.N.J. Aug. 11, 2017) (leave denied because "Defendants possessed the knowledge necessary to move for the present amendment long before the expiration of the . . . deadline"); *Stallings ex rel. Estate of Stallings v. IBM Corp.*, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (Plaintiffs "had all of the relevant documents necessary to state the proposed state law claims before the amendment deadline had run.").

**C.     The Court should also deny the motion under Rule 15(a), as limited by the Reform Act, because of Tucson's unreasonable delay.**

Because the amendment deadline has passed, Tucson's "application must satisfy the requirements of *both* Rule 15(a) and Rule 16(b)(4)." *Lucia v. McClain & Co.*, 2013 WL 4517976, at \*5 (D.N.J. Aug. 23, 2013) (emphasis in original). Here, Rule 15(a) provides yet another basis to deny the motion because Tucson has unreasonably delayed. *See id.* at \*11 (finding "undue delay" under Rule 15(a) "[f]or the [same] reasons articulated above with regard to the court's 'good cause' analysis"); *see generally Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (motion for leave properly denied under Rule 15 based on "unreasonable delay").

Tucson's delay is especially pronounced in the context of a securities case. The Reform Act "limits the application of [Rule 15's liberal standard] in securities fraud cases." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (citing district court's reasoning and affirming its ruling). The Reform Act reflects "the objective of Congress to provide a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis," and this "objective would be thwarted if . . . plaintiffs were liberally permitted leave to amend again." *Id.* at 1333 (quoting district court decision; internal quotes and citation omitted).[4] Condoning Tucson's unreasonable delay would undermine Congress's intent to filter securities suits at the pleadings stage, before fact discovery.

**D.     Tucson's case law is inapposite.**

Because Tucson seeks to sidestep Rule 16's good cause requirement, its discussion of case law is largely irrelevant to the standard that governs its motion. A number of its cases

---

[4] While *NAHC* addressed leave to amend after a complaint's dismissal, the same restriction on Rule 15 applies here. *See In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221, 229 (D.N.J. 2005) (after denying motion to dismiss complaint, court denied motion for leave to amend, because "if leave to amend complaints alleging securities fraud is liberally granted, then the PSLRA has no vitality") (quotation marks omitted and alterations adopted) (citing *In re NAHC*).

address *only* Rule 15, such as *Mullin v. Balicki*, 875 F.3d 140 (3d Cir. 2017) (Br. at 7–8, 11, 17).

Even as to Rule 15, *Mullin* is inapposite.  First, it is not a securities case subject to the Reform

Act.  Second, the Third Circuit reversed the denial of leave to amend based on an extraordinary

circumstance—a "clerical error" that had prevented plaintiff's counsel from timely reviewing a

"document with the potential to reshape the case."  *Id.* at 145.  No such extraordinary

circumstance is present here.

Other cases address both Rules, but Tucson ignores their discussion of Rule 16, and the

facts of these cases are not analogous.  For example, in *Colonial Sur. Co. v. Alpha Software

Corp.*, 2019 WL 2137365 (D.N.J. May 16, 2019) (Br. at 9), plaintiff obtained the relevant

information at a deposition *after* the amendment deadline—not, as here, 13 months before—and

plaintiff then moved for leave two months after obtaining the information—not, as here, nearly

two years later.  *Id.* at *3.  *High 5 Games, LLC v. Marks*, 2018 WL 2134038 (D.N.J. May 9,

2018), cited throughout, is also inapposite.  The court focused on Rule 15, relegating Rule 16 to

a footnote because, unlike here, there was "no operative scheduling order in the case."  *Id.* at *3.

And the *High 5* plaintiff diligently sought leave to amend in November 2017 "relatively quickly"

after issues came to light at a September 2017 hearing in a related case and based on "discovery

provided in mid-to-late 2017."  *Id.* at *2, 4.  Tucson has shown no such dispatch.

## II.    The Court should also deny the motion because allowing an amendment based on documents obtained in discovery on a different claim would contravene the policies of the Reform Act.

This is a securities case governed by the Reform Act.  But apart from a reference to what

"defendants in securities cases always do" (Br. at 14), one would hardly know this from the

motion, which Tucson presents as a run-of-the-mill request.  It is not.  Instead, the proposed

amendment would be inappropriate under the Reform Act because it is based on documents

Tucson obtained in discovery on a different claim.

The Reform Act imposes heightened requirements for pleading securities fraud, 15 U.S.C. § 78u-4(b)(1-2), and provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss," *id.* § 78u-4(b)(3)(B). These provisions reflect Congress's intent, given the seriousness of a fraud charge and concerns about discovery abuse, that "discovery should be permitted in securities class actions only *after* the court has sustained the legal sufficiency of the complaint." S. Rep. 104-98, at 14 (1995), 1995 U.S.C.C.A.N. 679, 693 (emphasis added). Based on this policy, courts have denied plaintiffs leave to amend to add securities fraud claims against independent auditors based on documents obtained in discovery.

In *In re BISYS Sec. Litig.*, 496 F. Supp. 2d 384 (S.D.N.Y. 2007), plaintiffs sought to add a Section 10(b) claim against a previously-dismissed auditor defendant after obtaining documents from that defendant in response to a subpoena. The court rejected that request, because "the PSLRA effectively shifted the burden to plaintiffs to acquire particularized knowledge of a party's scienter *prior to* obtaining discovery." *Id.* at 387 (emphasis added).

Similarly, in *In re Petrobras Sec. Litig.*, 2016 WL 3144395 (S.D.N.Y. May 5, 2016), the court dismissed a Section 10(b) claim against the auditor but allowed a Section 11 claim against that party to proceed. Later, after obtaining documents in discovery, plaintiffs sought leave to amend to add back their 10(b) claim. The court denied this "end run around the PSLRA," because "Plaintiffs would receive the benefits of discovery without adequately pleading scienter before discovery began," which the "PSLRA does not allow." *Id.* at *3.

While some district courts have been more lenient, the Third Circuit has not decided whether a securities plaintiff may amend based on documents obtained through discovery.[5]  A strict prohibition is needed to give effect to the Reform Act's policies and prevent every subpoena or Section 11 claim from serving as a stalking horse for a securities fraud suit.  *See generally In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2004 WL 1810661, at *2 (S.D.N.Y. Aug. 12, 2004) (ordering dismissal of claim with prejudice because "[i]f the Court were to permit [a party] to discover its way into a viable securities claim, the PSLRA stay provision would become meaningless and the Congressional intent of the statute vitiated").  Here, Tucson obtained PwC's documents after pleading a "non-fraud" Section 11 claim and "disclaim[ing] any allegations of fraud" as to PwC.  Consol. Compl. ¶ 551 (ECF 80).  It should not now be permitted to use that discovery to attempt to plead a fraud claim against PwC.

## III.   Tucson's proposed 10(b) claim is legally deficient.

The Court need not reach the merits of the proposed claim because Tucson has not shown good cause.  If the Court were to permit amendment, which it should not, PwC would set forth a complete presentation of its merits arguments on a motion to dismiss, as Tucson recognizes.  Br. at 14.  In that event, the Court would consider the sufficiency of the claim in light of the Reform Act's "heightened pleading requirements," *Williams v. Globus Med., Inc.*, 869 F.3d 235, 240 (3d Cir. 2017), and the "'particularly demanding'" standard for pleading an independent auditor's scienter that Judge Shipp previously applied to dismiss Section 10(b) and other scienter-based

---

[5] In *Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007), the court affirmed the denial of a motion to amend based on the rejection of the group pleading doctrine in securities cases, while noting that a plaintiff may seek leave to amend to assert claims against individuals if "discovery reveals individual culpability."  This was *dicta*, however, because no such request to amend was presented in the case or discussed in the parties' briefing.  Similar *dicta* may be found in a footnote in *Dow Corning Corp. v. BB & T Corp.*, 2010 WL 4860354, at *9 n.5 (D.N.J. Nov. 23, 2010).

14

claims against PwC.  *See Lord Abbett Inv. Tr.-Lord Abbett Short Duration Income Fund v. Valeant Pharm. Int'l, Inc.*, 2018 WL 3637514, at *3 (D.N.J. July 31, 2018) (quoting *Athale v. SinoTech Energy Ltd.*, 2014 WL 687218, at *5 (S.D.N.Y. Feb. 21, 2014)).

In its motion, Tucson invites the Court to evaluate the merits of the claim now, under the "lower bar" that it contends applies to the Rule 15 futility analysis.  Br. at 14.  That analysis is beside the point because the Court should deny the motion under Rule 16 and the Reform Act.  Nonetheless, Tucson has told the Court that the putative claim is not futile because PwC's workpapers—the ones produced years ago—"provide the support that was lacking in the Section 10(b) fraud claim against PwC in the *Lord Abbett* opt-out action."  Br. at 15.  While reserving all merits arguments, PwC briefly responds to this assertion.   Far  from  advancing  anything materially different, the proposed allegations are similar to those that Judge Shipp previously dismissed in *Lord Abbett* and in another opt-out action for failure to plead PwC's scienter.  *See New York City Emps.' Ret. Sys. v. Valeant Pharm. Int'l, Inc.*, 2018 WL 4620676, at *3 (D.N.J. Sept. 26, 2018) ("*NYCERS*").

In those cases, Judge Shipp addressed both means by which a plaintiff may attempt to plead a strong inference of scienter, "'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud[;] or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  *Lord Abbett*, 2018 WL 3637514, at *3 (quoting *Klein v. Autek Corp.*, 147 F. App'x 270, 277 (3d Cir. 2005)).  He quickly dispensed with motive, holding that the Lord Abbett plaintiffs' allegation that PwC was motivated to commit fraud to collect its "fees for completion of the audit" was "clearly insufficient to establish a Section 10(b) claim."  *Id.* (citing *Klein*, 147 F. App'x at 277).  Tucson makes the same clearly insufficient fee allegation.  *Compare Lord Abbett*, No. 3:17-cv-06365,

ECF 1 (Aug. 23, 2017) ("LA Compl.") ¶ 244 *with* Proposed SAC ¶ 574 (each alleging payment of the same publicly disclosed fees). Judge Shipp went on to hold that the Lord Abbett plaintiffs had failed to allege PwC's recklessness for two reasons, both of which also apply to Tucson.

First, Judge Shipp focused on the Lord Abbett plaintiffs' allegation that Valeant's former senior officers had engaged in "improper conduct" by providing PwC with "incorrect information" concerning the nature of certain sales to Philidor. *Lord Abbett*, 2018 WL 3637514, at *3 ("The Complaints themselves indicate that other Defendants provided PwC with incorrect information."). Judge Innes, of the New Jersey state court, also focused on this allegation in dismissing fraud claims against PwC in the related *Hound Partners* case.[6] Here, Tucson makes the same allegation that Valeant officers provided incorrect information to PwC. *See* Proposed SAC ¶¶ 42, 561. As in *Lord Abbett* and *Hound Partners*, that allegation undermines any inference, much less the required strong inference, that PwC participated in a fraud.

Second, Judge Shipp held that the Lord Abbett plaintiffs' allegations "sound[ed] in negligence, not fraud—and certainly do not support the strong inference of scienter required for a Section 10(b) claim." *Lord Abbett*, 2018 WL 3637514, at *3. He properly deemed even "allegations of egregious accounting violations and [PwC's] knowledge of key information" insufficient to state a 10(b) claim. *Id.* Tucson's proposed allegations as to what "discovery shows that PwC knew" (Br. at 3) are similar in kind to the allegations in *Lord Abbett* that Judge Shipp rejected.

As in that case, Tucson focuses primarily on the sales to Philidor that the ad hoc committee determined had been outside the normal course of business. Tucson alleges that PwC

---

[6] *See Hound Partners Offshore Fund, LP v. Valeant Pharm. Int'l, Inc.*, No. MER-L-2185-18, Hr'g Tr. 64 (N.J. Sup. Ct. June 19, 2019) (the ad hoc committee's finding is "evidence that PwC was deceived by Valeant just as the plaintiffs were, not that [PwC] knowingly and intentionally aided Valeant's enterprise") (Turnbull Decl. Ex. 7).

recklessly disregarded indications that these sales were "clearly outside the normal course of business." Proposed SAC ¶ 604; *see also id.* ¶¶ 596–613. Tucson's allegations are similar to the Lord Abbett plaintiffs' allegations that PwC disregarded "several clear indicators" of non-normal course sales. LA Compl. ¶ 145.[7] Tucson supplements its allegations with citations to PwC's workpapers, which purportedly show PwC's awareness of indications that these sales were outside the normal course, but these citations do not warrant a departure from the result Judge Shipp reached. As required on a Rule 12 motion, Judge Shipp assumed the truth of the allegation that PwC was aware of these indications, and he nonetheless properly dismissed the 10(b) claim. *Lord Abbett*, 2018 WL 3637514, at *2, 3, 7 ("accept[ing] as true all . . . well-pleaded factual allegations" and dismissing 10(b) and New Jersey RICO claims against PwC).

Tucson also alleges that PwC recklessly disregarded that "Valeant failed to disclose its acquisition of Philidor in its 2014 10-K" for "improper purposes." Proposed SAC ¶¶ 566, 614. Tucson is referring to Valeant's December 15, 2014 purchase of an option to acquire Philidor (the "Philidor Option Agreement"), which Valeant accounted for as a business combination. Tucson does not fault that accounting but claims that Valeant should have disclosed Philidor by name in its 2014 financial statements (*id.* ¶¶ 614–31), rather than simply make an aggregate disclosure of immaterial business combinations, as Valeant did (2014 10-K, at F-16). Like the Lord Abbett plaintiffs (LA Compl. ¶¶ 143, 147), Tucson claims that this aggregate disclosure was insufficient because the Philidor Option Agreement was material. *See* Proposed SAC ¶¶ 614–31. As PwC previously pointed out (*Lord Abbett*, No. 17-cv-06365, ECF 59-1, at 12 (Dec. 6, 2017)),

---

[7] *Compare* LA Compl. ¶ 145 ("unusually large sales volumes") *with* Proposed SAC ¶ 591 ("increased sales"); LA Compl. ¶ 145 ("artificially inflated sales prices") *with* Proposed SAC ¶ 604 ("rais[ed] prices"); LA Compl. ¶ 145 ("payment terms that delayed Philidor's payment obligations") *with* Proposed SAC ¶ 604 ("extended payment terms"); LA Compl. ¶ 145 ("non-standard sales terms") *with* Proposed SAC ¶ 603 ("unusual sales terms").

such allegations fall far short of the particularly demanding standard for pleading an auditor's scienter because, under the SEC's rules, assessing materiality involves "judgments," and companies are allowed to include immaterial business combinations within an aggregate disclosure of multiple items, rather than separately disclose them by name.[8]  Nor does the allegation of Valeant's "improper purpose" in its Philidor disclosure decisions add anything, as Judge Shipp previously dismissed a Section 10(b) claim against PwC that alleged that "Valeant and PwC 'deliberately concealed from regulators the ownership and control of [Valeant-controlled pharmacy] Philidor.'"  *See NYCERS*, 2018 WL 4620676, at *1, 3.

Tucson's core allegations concern the same subjects—Valeant's accounting and disclosure relating to Philidor—and are as legally deficient as the allegations in the complaints by Lord Abbett and New York City Employees' Retirement System.  That Judge Shipp held that such allegations are insufficient to plead fraud against PwC is unsurprising under the law because the "PSLRA limits the extent to which outside auditors—only indirectly involved with any [alleged company] wrongdoing—may be held accountable for investors' losses."  *Iowa Pub. Emp.'s Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 326 (S.D.N.Y. 2013).  The decisions by Judge Shipp are also unsurprising under the facts because a four-month independent investigation did not uncover any wrongdoing by PwC, but found just the opposite—that certain Valeant officers had provided PwC with incorrect information, which contributed to the misstatement of Valeant's financial results.

---

[8] *See* SEC Staff Accounting Bulletin 99, 64 Fed. Reg. 45,150, at 45151 (Aug. 12, 1999); 17 C.F.R. § 210.4-02.

## <u>CONCLUSION</u>

Tucson cannot meet its burden to show good cause.  It received the PwC workpapers that it says provide the support for its proposed Section 10(b) claim 13 months before the deadline to amend pleadings.  It did not add a 10(b) claim against PwC in its First Amended Complaint.  It waited almost two years after receiving the information to move to amend.  And it never brought any issue to the Court's attention until December 2019.  Moreover, Tucson's appeal to "'equitable consideration[s]'" and its assertion that an amendment would "promote judicial economy" fall flat.  Br. at 15.  Equity aids the vigilant, not those who slumber on their rights.  And an amendment would simply result in more delay.  As noted, PwC would move to dismiss the putative 10(b) claim, and the case would be stayed by the Reform Act through the full briefing and resolution of that motion.  All for a meritless claim that, under the Reform Act, Tucson should have brought, if at all, in advance of discovery and could have brought long before the amendment deadline.  The Court should deny the motion.

Dated: February 18, 2020                 CHIESA SHAHINIAN & GIANTOMASI PC

By:   /s/ A. Ross Pearlson
      A. Ross Pearlson
      One Boland Drive
      West Orange, NJ 07052
      Telephone: (973) 530-2100
      Facsimile: (973) 530-2300

      KING & SPALDING LLP
      James J. Capra, Jr. (admitted *pro hac vice*)
      James P. Cusick (admitted *pro hac vice*)
      Christina M. Conroy (admitted *pro hac vice*)
      1185 Avenue of the Americas
      New York, NY 10036-4003
      Telephone: (212) 556-2100
      Facsimile: (212) 556-2222

Kenneth Y. Turnbull (admitted *pro hac vice*)
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

*Attorneys for Defendant*
*PricewaterhouseCoopers LLP*