UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Case No. 3:15-CV-07658-MAS-LHG<br><br>JUDGE MICHAEL A SHIPP<br>JUDGE LOIS H. GOODMAN<br><br>JUDGE DENNIS CAVANAUGH, RET. SPECIAL MASTER |
| This Document Applies To:<br><br>No. 3:15-CV-07658-MAS-LHG | **Motion Day: September 8, 2020**<br>**Oral Argument Requested** |

**PRICEWATERHOUSECOOPERS LLP'S REPLY IN SUPPORT OF ITS OBJECTION
TO THE SPECIAL MASTER'S REPORT & RECOMMENDATION ON
TUCSON'S MOTION FOR LEAVE TO AMEND**

Dated:   September 1, 2020

CHIESA SHAHINIAN & GIANTOMASI PC

A. Ross Pearlson
One Boland Drive
West Orange, NJ 07052
Telephone: (973) 530-2100
Facsimile: (973) 530-2300

KING & SPALDING LLP

James P. Cusick (admitted *pro hac vice*)
Christina M. Conroy (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Kenneth Y. Turnbull (admitted *pro hac vice*)
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

*Attorneys for Defendant
PricewaterhouseCoopers LLP*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ............................................................................................................................2

   I.   Rule 16's good cause standard governs Tucson's motion for leave to amend. ...................2

   II.  Tucson failed to meet its burden under Rule 16. ................................................................6

   III. Tucson's motion also fails under Rule 15 and the Reform Act............................................9

CONCLUSION.........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Gould, Inc.*,
   739 F.2d 858 (3d Cir. 1984)................................................................7

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2004 WL 1810661 (S.D.N.Y. Aug. 12, 2004)........................................10

*In re BISYS Sec. Litig.*,
   496 F. Supp. 2d 384 (S.D.N.Y. 2007) ...........................................9–10

*Design Basics, LLC v. Kerstiens Home & Designs, Inc.*,
   2018 WL 1241994 (S.D. Ind. Mar. 9, 2018)........................4–5, 5–6

*Dole v. Arco Chem. Co.*,
   921 F.2d 484 (3d Cir. 1990)................................................................7

*Ford Motor Co. v. Edgewood Properties, Inc.*,
   2011 WL 1321605 (D.N.J. Apr. 4, 2011) ...........................................9

*Graham v. Progressive Direct Ins. Co.*,
   271 F.R.D. 112 (W.D. Pa. 2010) .......................................................3

*Grand River Enter. Six Nations Ltd. v. VMR Prod. LLC*,
   2014 WL 2434517 (W.D. Wis. May 29, 2014) ...................................5

*Harbor Laundry Sales, Inc. v. Mayflower Textile Servs. Co.*,
   2011 WL 6303258 (D.N.J. Dec. 16, 2011)......................................7, 9

*High 5 Games, LLC v. Marks* (*Marks I*),
   2017 WL 349375 (D.N.J. Jan. 24, 2017)............................................3

*High 5 Games, LLC v. Marks* (*Marks II*),
   2018 WL 2134038 (D.N.J. May 9, 2018) ...........................................9

*Hively v. Ivy Tech Cmty. Coll.*,
   2018 WL 3198888 (N.D. Ind. May 4, 2018) ......................................5

*Korrow v. Aaron's, Inc.*,
   300 F.R.D. 215 (D.N.J. 2014)............................................................9

*Lasermaster Int'l Inc. v. The Netherlands Ins. Co.*,
   2018 WL 6191901 (D.N.J. Nov. 28, 2018) ...............................6, 7, 8

*Lucia v. McClain & Co.*,
    2013 WL 4517976 (D.N.J. Aug. 23, 2013) ................................................................9

*Moore v. Publicis Groupe SA*,
    2012 WL 2574742 (S.D.N.Y. June 29, 2012) ..........................................................5

*Net2Phone, Inc. v. Ebay, Inc.*,
    2008 WL 8183817 (D.N.J. June 26, 2008) ...............................................................2

*In re Petrobras Sec. Litig.*,
    2016 WL 3144395 (S.D.N.Y. May 5, 2016) ..........................................................10

*Teton Homes Europe v. Forks RV*,
    2010 WL 3980254 (N.D. Ind. Oct. 8, 2010) ...........................................................5

*Trustees of the Local 464A United Food & Commercial Workers Union Pen.*
    *Fund v. Wachovia Bank, N.A.*, 2011 WL 677461 (D.N.J. Feb. 15, 2011) ........6, 7, 8

*Wei Ngai by Enid Tran v. Old Navy*,
    2008 WL 11383768 (D.N.J. Sept. 26, 2008) ...........................................................5

**Statutes and Rules**

Federal Rule of Civil Procedure 15 ....................................................................... *passim*

Federal Rule of Civil Procedure 16 ....................................................................... *passim*

Federal Rule of Civil Procedure 53 ..............................................................................2

Private Securities Litigation Reform Act,
    15 U.S.C. § 78u-4 ...............................................................................................9–10

## PRELIMINARY STATEMENT

Tucson admits that it obtained the alleged "smoking gun proving that PwC acted with scienter" when PwC produced its workpapers in July and August 2017.   Tucson had 13 months thereafter to review those workpapers and prepare and assert its proposed fraud claim against PwC before the September 21, 2018 amendment deadline (the "2018 Deadline").   It did not do so. Indeed, Tucson waited an additional 15 months beyond the 2018 Deadline to file its motion for leave to amend.   That almost two-and-a-half-year delay defeats Tucson's ability to show good cause under Rule 16.   As PwC showed ("PwC Br.") (ECF 609), the Special Master erred both by applying the wrong Rule and by failing to hold Tucson to its burden to demonstrate due diligence, instead focusing on PwC's failure to show prejudice, which is irrelevant under Rule 16.

Tucson's 34-page Opposition ("Opp.") (ECF 613) provides no basis to grant it leave to amend.  First, Tucson advances the same argument the Special Master erroneously accepted—that the 2018 Deadline applied only to motions to amend "without leave of court," and therefore no deadline governs Tucson's current motion to amend "with leave of court."   Tucson is forced to contend that the numerous, capable law firms representing the various parties in the Valeant litigation (including its own counsel) and the Court all missed that the Valeant "scheduling order . . . did not include [the] deadline for amendment" required by Rule 16(b)(3)(A).  (Opp. at 21.)  As PwC demonstrated, courts have rejected Tucson's argument because it would eliminate a deadline that Rule 16 "require[s]" and theoretically permit parties to amend under Rule 15's "freely give leave" standard at any time and as often as they want.   Tucson does not meaningfully address these cases or deny the untenable consequences of its argument.    Perhaps recognizing those consequences, Tucson suggests the Court may impose a good cause standard "near or after the end of discovery."  (*Id.* at 20.)  But that makeshift argument is unsupported by Rule 16 and would transform that Rule's required deadline into a mere discretionary consideration.

Second, Tucson strives to distract from its obvious lack of good cause under Rule 16. It cites inapposite cases under Rule 15 and focuses on a purported lack of prejudice to PwC to divert attention from the requirements of Rule 16. (Opp. at 25–27.) Tucson also attempts to distinguish Rule 16 cases denying leave to amend as having been decided later in the litigation (*id.* at 26 & n.9), ignoring that those decisions all properly hinge on the movant's lack of due diligence, not the stage of the litigation. Tucson repeatedly asserts that PwC's workpapers constitute less than a quarter of PwC's total production (*id.* at 10, 15, 28) and that PwC, other parties, and non-parties produced documents in 2018 and 2019 (*id.* at 9, 15, 16 n.5, 25, 28), none of which matters given that Tucson admits it had the alleged "smoking gun" by August 2017. Finally, Tucson constructs a strawman, claiming that PwC contends that Tucson was required to amend "immediately" after PwC produced its workpapers. (*Id.* at 10, 12, 15, 28.) PwC's argument, of course, is not that Tucson was required to amend immediately, but that it was required to diligently investigate and assert any amended claim. Despite receiving PwC's workpapers by August 2017, Tucson failed to move to add a fraud claim thirteen months later at the 2018 Deadline and for another fifteen months after that. The Court should deny Tucson's motion.

## **ARGUMENT**[1]

### I.     **Rule 16's good cause standard governs Tucson's motion for leave to amend.**

Tucson first contends that the 2018 Deadline was merely the parties' proposal. (Opp. at 18–19.) The Special Master properly rejected that portion of Tucson's argument. *See* R&R (ECF

---

[1] The Court reviews R&Rs *de novo*. *See* ECF 484, at 4 ¶ 10; Fed. R. Civ. P. 53(f)(4); PwC Br. at 8. Tucson mentions the "abuse of discretion" standard in a footnote (Opp. at 14 n.4) but does not argue that that standard applies. Even under the abuse of discretion standard, objections to a special master's legal conclusions, like PwC's objections here, are subject to *de novo* review. *See Net2Phone, Inc. v. Ebay, Inc.*, 2008 WL 8183817, at *3 (D.N.J. June 26, 2008) (applying *de novo* review to special master's privilege rulings because they involved questions of law).

602), at 10–11 ("This was, after all, a Joint Discovery Plan consented to by the parties – and approved by the Court . . . ."). The parties proposed the 2018 Deadline in two Discovery Plans (ECF 610-5, Exs. 3, 4), and Plaintiff acknowledged this deadline by filing its First Amended Complaint (ECF 352) the day before. The Special Master entered the Scheduling Order, which refers to and recognizes this expired deadline (ECF 492). Under these circumstances, courts properly treat the expired date referenced in the order as the court-ordered deadline. *See Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 116 & n.2, 119 (W.D. Pa. 2010) (PwC Br. at 10).

Tucson does not address *Graham* on this point, and instead cites *High 5 Games, LLC v. Marks* ("*Marks I*"), 2017 WL 349375 (D.N.J. Jan. 24, 2017) (Opp. at 19). That case is wholly inapposite. The proposed scheduling order in *Marks I* "was never entered due to ongoing discovery and scheduling issues," and at the time of the amendment "the parties had different proposed provisions for another amended scheduling order, including the deadline for amending pleadings." 2017 WL 349375, at *2, 3. Here, the Court entered a Scheduling Order that refers to the expired date (ECF 492, at 5), and Tucson never proposed a different amendment date despite having two opportunities to do so—when submitting revised Joint Discovery Plans to the Court in August (ECF 477) and September 2019 (ECF 487). The Court should follow the Special Master and *Graham* and treat the 2018 Deadline as the Court-ordered deadline it was.

Tucson next contends that the 2018 Deadline applies only to amendments without leave of court, not to amendments with leave of court. Therefore, Tucson argues, its motion (seeking leave) does not implicate the 2018 Deadline or the good cause requirement of Rule 16, so that only Rule 15 applies. (Opp. at 19-20.) The Special Master erroneously accepted Tucson's reasoning (R&R at 11) without considering its consequences. In particular, Tucson's argument presupposes that all the parties proposed, and the Court entered, a Scheduling Order that did not include the required

3

Rule 16 deadline, as Tucson itself admits.  Opp. at 21 (The "Court entered the scheduling order agreed to by the parties and it did not include a deadline for amendment.").  But it defies common sense that almost three dozen law firms and the Court failed to notice the "absence of a [required] deadline" to amend in the Scheduling Order.  (*Id.* at 20, 21, 22, 24.)  Instead, the Court can and should read the Scheduling Order to comply with Rule 16.

Tucson argues that PwC's interpretation of the 2018 Deadline would render the words "without leave" meaningless.  (Opp. at 20.)  But PwC's reading of the Scheduling Order gives effect to both Rule 15 and Rule 16.  By referring to amendments "without leave of court," the Joint Discovery Plans memorialized the parties' consent to amendments at any time up to the 2018 Deadline.  Because the Joint Discovery Plans reflected the parties' consent, the Plans did not need to set forth a deadline for amendments with leave of Court.  *See* Fed. R. Civ. P. 15(a)(2) (permitting amendment with the opposing party's consent *or* the court's leave).  After the 2018 Deadline, however, Tucson was required to obtain leave to amend under Rule 16's good cause standard.

By contrast, Tucson's reading of the Scheduling Order would nullify the amendment deadline required by Rule 16.[2]  Precisely for that reason, courts that have thoroughly considered Tucson's argument have rejected it.  *See Design Basics, LLC v. Kerstiens Home & Designs, Inc.*, 2018 WL 1241994, at *1 (S.D. Ind. Mar. 9, 2018) (interpreting the deadline "to restrict all amended complaints, rather than just those filed without leave of court, in order to be consistent with Rule 16(b)(3)").  Tucson relegates *Design Basics* and similar decisions that PwC discussed to a footnote, claiming that these cases are not applicable because they "involved amendments that would

---

[2] Remarkably, Tucson suggests that PwC "acknowledges" that the Scheduling Order violates Rule 16.  (Opp. at 20.)  It is Tucson that claims the Scheduling Order does not comply with Rule 16. As explained above, PwC contends that the Court can and should read the Scheduling Order and the 2018 Deadline to give full effect to Rule 16.

4

prejudice the defendants because they were sought near or after the close of discovery." (Opp. at 23 & n.8.) That is wrong. Prejudice is not a Rule 16 consideration, and those decisions turned on the need to give full effect to Rule 16, not the stage of the litigation. *E.g.*, *Design Basics*, 2018 WL 1241994, at *2 (rejecting same argument because "no such [Rule 16] limitation on joining parties or amending the pleadings would exist"); *Moore v. Publicis Groupe SA*, 2012 WL 2574742, at *2 (S.D.N.Y. June 29, 2012) ("Any other interpretation of the scheduling order would contravene Rule 16(b)(3)(A) . . . ."). And courts in this District will enforce Rule 16 even where the scheduling order sets an amendment deadline "well in advance of the fact discovery deadline." *Wei Ngai by Enid Tran v. Old Navy*, 2008 WL 11383768, at *2 (D.N.J. Sept. 26, 2008).

Tucson cites a few cases, such as *Hively v. Ivy Tech Cmty. Coll.*, 2018 WL 3198888 (N.D. Ind. May 4, 2018), that treat a "without leave" deadline as Tucson advocates. (Opp. at 23.) But *Hively* failed to recognize that not "putting any time limit on when a party could seek leave of Court to amend a pleading," *id.* at *3, runs afoul of Rule 16(b)(3)(A). And Tucson's other decisions are equally cursory and inconsistent with Rule 16. *See Teton Homes Europe v. Forks RV*, 2010 WL 3980254, at *3 (N.D. Ind. Oct. 8, 2010) (single paragraph without addressing the Rule 16(b)(3)(A) requirement); *Grand River Enter. Six Nations Ltd. v. VMR Prod. LLC*, 2014 WL 2434517, at *1 n.2 (W.D. Wis. May 29, 2014) (same, in one footnote).

If accepted, Tucson's argument could produce absurd results. Under its reading of the Scheduling Order, Tucson theoretically could have moved for leave to amend under the "freely give leave" standard of Rule 15 at *any* time—when it did, a month from now, even a year or more from now. Indeed, under Tucson's theory, it could move to amend *again* in the future, and the lenient Rule 15 standard would still apply. As the *Design Basics* court observed, plaintiff "would theoretically be permitted to move for leave to amend its complaint at any point before trial without

restriction." 2018 WL 1241994 at \*2. Perhaps recognizing that its argument could lead to such a ludicrous result, Tucson tries to soften things by claiming that courts could apply Rule 16's good cause standard "near or after the close of discovery" if "a final date for amendment is not . . . included" in the scheduling order. (Opp. at 21, 24.) But Tucson's "near or after the close of discovery" exception is a contrivance that finds no support in Rule 16, which requires a fixed point after which a party must show good cause to amend. *See* Fed. R. Civ. P. 16(b)(3)(A); *id.*, Advisory Committee Notes (1983 Amendment).[3] Moreover, here the Scheduling Order contains an amendment deadline, and the Court should enforce it. Tucson must meet Rule 16's good cause standard to amend its complaint.

## II.    Tucson failed to meet its burden under Rule 16.

Under Rule 16, the test is whether Tucson can "show that despite its diligence, it could not reasonably have met the scheduling order deadline." *Trustees of the Local 464A United Food & Commercial Workers Union Pen. Fund v. Wachovia Bank, N.A.*, 2011 WL 677461, at \*4 (D.N.J. Feb. 15, 2011) (PwC Br. at 21). Under this standard, courts will deny leave to amend if the movant possessed the knowledge necessary to amend before the deadline. *Lasermaster Int'l Inc. v. The Netherlands Ins. Co.*, 2018 WL 6191901, at \*3 (D.N.J. Nov. 28, 2018) (PwC Br. at 14–15).

The Special Master erred in his alternative conclusion that Tucson had good cause under this standard. Tucson admits that it possessed the knowledge necessary to amend more than a year before the 2018 Deadline. PwC produced the workpapers that Tucson calls the "smoking gun" in support of its fraud claim in July and August 2017. But Tucson did not amend by the 2018

---

[3] The cases Tucson cites in this context are inapposite. For example, in *Smith v. Honeywell Int'l, Inc.* (Opp. at 22, 24), the court held that plaintiffs timely filed their motion "after obtaining permission from the Court to have several additional days to file." 2014 WL 301031, at \*5 n.11 (D.N.J. Jan. 27, 2014). The court's alternative good cause analysis based on the status of ongoing discovery was dicta.

Deadline, and it waited almost two-and-a-half-years to seek leave to amend.  Under these circumstances, Tucson cannot show good cause.  *Wachovia*, 2011 WL 677461, at *4 (denying leave when "the information that forms the basis of the amended complaint was certainly available to and in [plaintiffs'] possession").

Tucson does not challenge the Rule 16 legal standard.  Instead, Tucson tries to distract from its straightforward application.  Incredibly, the cases Tucson cites in support of its good cause argument were decided under Rule 15's "freely give leave" standard, not Rule 16's "good cause" standard.  *See* Opp. at 26–27, citing *Avatar Bus. Connection, Inc. v. Uni-Marts, Inc.*, 2006 WL 1843136, at *2 (D.N.J. June 30, 2006); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488–89 (3d Cir. 1990); *Adams v. Gould, Inc.*, 739 F.2d 858, 869 (3d Cir. 1984).  As for Rule 16 cases, Tucson fails to address *Wachovia*.  And in a footnote, Tucson purports to distinguish *Lasermaster* because the motion in that case was filed near the end of discovery.  (Opp. at 26 n.9.)  But the *Lasermaster* court did not base its decision on the timing of the discovery cutoff, as that is not a relevant consideration under Rule 16.  *See* 2018 WL 6191901, at *1–4.[4]  Moreover, courts have not hesitated to deny leave to amend under Rule 16 early in the litigation if the movant is unable "to demonstrate that despite acting diligently, it could not reasonably meet the deadlines set forth in the scheduling order."  *Harbor Laundry Sales, Inc. v. Mayflower Textile Servs. Co.*, 2011 WL 6303258, at *5 (D.N.J. Dec. 16, 2011) (denying motion for leave to amend filed less than ten months into the litigation and less than three months after initial discovery requests were required to be filed); *id.* No. 1:09-cv-06259, ECF 11, at 1.

---

[4] The same is true of other cases that Tucson purports to distinguish on this basis.  See Opp. at 30–31 (citing *Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82 (3d Cir. 2005); *Callas v. Callas*, 2017 WL 3448107 (D.N.J. Aug. 11, 2017)).

Tucson also misrepresents PwC's argument, claiming that PwC argues that Rule 16 required Tucson to move to amend "immediately" after PwC produced its workpapers in the summer of 2017.  (Opp. at 10, 12, 28.)  Tucson notes that PwC's workpapers constitute less than a quarter of PwC's total production (*id*. at 10, 15, 28) and that PwC, other parties, and non-parties produced documents in 2018 and 2019 (*id.* at 3, 9, 15, 16 n.5, 25, 28).  Tucson also claims that some of PwC's later-produced documents corroborate the "smoking gun" workpapers produced in July and August 2017.  (*Id*. at 28.)

None of these arguments is availing.  First, PwC does not argue that Rule 16 required Tucson to move to amend immediately after receiving PwC's workpapers.  But Rule 16 did require Tucson to investigate and assert any amended claim in a diligent fashion.  Instead, Tucson waited almost two-and-a-half-years after receiving PwC's workpapers to move for leave to amend.  (PwC Br. at 16–17.)  Second, the key inquiry is when Tucson had the information it needed to move for leave to amend, not whether it received additional information (corroborative or otherwise) later, as happens in every case.  *Lasermaster*, 2018 WL 6191901, at *3; *Wachovia Bank*, 2011 WL 677461, at *3–4.  Tucson claims PwC's workpapers are the "smoking gun" supporting its new fraud claim, and Tucson has had *those* documents since August 2017.  Finally, while Tucson refers to the two stays of discovery and the parties' tolling agreement throughout its brief, none of those things prevented Tucson from reviewing PwC's workpapers and asserting a new claim diligently.  In fact, the stays should have accelerated, rather than delayed, Tucson's review of the workpapers by eliminating the distraction of ongoing fact discovery.  (*See* PwC Br. at 19–21.)

In short, Tucson has done nothing to rebut PwC's showing that the Special Master erred.  Instead of holding Tucson to its burden to show due diligence, the Special Master erroneously placed the burden on PwC to demonstrate the absence of prejudice.  But the "absence of prejudice

to the non-moving party does not constitute 'good cause' under Rule 16." *Korrow v. Aaron's, Inc.*, 300 F.R.D. 215, 220 (D.N.J. 2014) (PwC Br. at 15–16); *Harbor Laundry*, 2011 WL 6303258, at *5 (same).   Tucson cannot show that it exercised due diligence in waiting almost two-and-a-half-years after receiving PwC's "smoking gun" workpapers to seek leave to amend.   Applying the correct standard, the Court should deny Tucson's motion for lack of good cause.

## III.   Tucson's motion also fails under Rule 15 and the Reform Act.

The Court also should deny Tucson's motion for the separate and independent reason that Tucson fails Rule 15's standard for amendments.   Tucson's primary response to this point is that "delay alone is an insufficient ground to deny an amendment, unless the delay unduly prejudices the non-moving party."   (Opp. at 15 (alteration and omission adopted), citing *High 5 Games, LLC v. Marks* ("*Marks II*"), 2018 WL 2134038, at *3 (D.N.J. May 9, 2018).)   But this argument fails because Tucson conflates mere delay and "*undue* delay."   While mere delay requires prejudice before a court will deny leave under Rule 15, prejudice is not required if there is undue delay.   *See Ford Motor Co. v. Edgewood Properties, Inc.*, 2011 WL 1321605, at *4 (D.N.J. Apr. 4, 2011) ("Since the Court has already upheld Judge Salas' finding of undue delay above, there is no need to address her finding of prejudice, as a finding of undue delay alone is sufficient to deny a motion to amend pleadings.").   And "[d]elay may become undue when," as here, "'there has been previous opportunity to amend the complaint."   *Lucia v. McClain & Co.*, 2013 WL 4517976, at *7 (D.N.J. Aug. 23, 2013) (PwC Br. at 22).[5]

Moreover, allowing Tucson to amend its complaint to add a securities fraud claim based on documents obtained in discovery would contravene the Reform Act.   *See In re BISYS Sec. Litig.*,

---

[5] Plaintiff's reliance on *Coventry v. U.S. Steel Corp.* is misplaced, as the court there made no finding that any delay would have resulted from the amendment.   856 F.2d 514, 520 (3d Cir. 1988).

496 F. Supp. 2d 384 (S.D.N.Y. 2007) (PwC Br. at 22–24); *In re Petrobras Sec. Litig.*, 2016 WL 3144395 (S.D.N.Y. May 5, 2016) (same); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2004 WL 1810661 (S.D.N.Y. Aug. 12, 2004) (same).  Tucson contends that the Court should discount these cases because two of them were decided by the same judge after prior motions to dismiss. (Opp. at 33.)  But the fact that Judge Rakoff decided two of the cases after prior dismissals does not undermine his legal reasoning, which did not turn on the prior dismissals but on the Reform Act's provisions and policies, which are equally applicable here.

* * * *

Finally, Tucson claims that PwC's decision not to argue futility under Rule 15 is a concession by PwC that Tucson's proposed fraud claim has merit.  (Opp. at 33–34.)  Far from it. Tucson's allegations still sound in negligence, not fraud.  (PwC Br. at 3, 24–26.)  In any event, Tucson itself acknowledges that the Court should only address the merits of Tucson's claims, if ever, on a "motion to dismiss where the issue can be fully briefed."  (*See* ECF 610-1, at 14.)  The Court need not get to such a motion, which would trigger another stay of discovery under the Reform Act (15 U.S.C. § 78u-4(b)(3)(B)), because Tucson does not have good cause to amend.

<strong><u>CONCLUSION</u></strong>

The Court should sustain PwC's Objection to the Special Master's recommendation and deny Tucson's motion for leave to amend.

Dated: September 1, 2020                    CHIESA SHAHINIAN & GIANTOMASI PC

                                                           By:   /s/ A. Ross Pearlson
                                                                   A. Ross Pearlson
                                                                   One Boland Drive
                                                                   West Orange, NJ 07052
                                                                   Telephone: (973) 530-2100
                                                                   Facsimile: (973) 530-2300

10

KING & SPALDING LLP
James P. Cusick (admitted *pro hac vice*)
Christina M. Conroy (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

KING & SPALDING LLP
Kenneth Y. Turnbull (admitted *pro hac vice*)
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

*Attorneys for Defendant*
*PricewaterhouseCoopers LLP*

11