**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Master No. 3:15-cv-07658-MAS-LHG |
| THIS DOCUMENT RELATES TO:<br><br>16-cv-07321 (MAS) (LHG)<br>16-cv-07324 (MAS) (LHG)<br>16-cv-07494 (MAS) (LHG)<br>16-cv-07496 (MAS) (LHG)<br>16-cv-07497 (MAS) (LHG)<br>17-cv-06513 (MAS) (LHG)<br>17-cv-07636 (MAS) (LHG)<br>17-cv-12088 (MAS) (LHG)<br>18-cv-00089 (MAS) (LHG)<br>18-cv-00343 (MAS) (LHG)<br>18-cv-00383 (MAS) (LHG)<br>18-cv-00846 (MAS) (LHG)<br>18-cv-00893 (MAS) (LHG)<br>18-cv-01223 (MAS) (LHG)<br>18-cv-08595 (MAS) (LHG)<br>18-cv-08705 (MAS) (LHG)<br>18-cv-15286 (MAS) (LHG)<br>20-cv-07460 (MAS) (LHG)<br>20-cv-07462 (MAS) (LHG) | **MEMORANDUM OF LAW** |

**DIRECT ACTION PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION REGARDING THE SUFFICIENCY OF CERTAIN DEFENDANTS' RESPONSES AND OBJECTIONS TO DIRECT ACTION PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION**

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ....................................................................................................3

     A.     Defendants' Securities Fraud Scheme Causes Billions In Investor Losses ............3

     B.     Class Litigation And Previous Findings Against Defendants.................................4

     C.     Direct Action Plaintiffs' Requests For Admission ................................................5

ARGUMENT ..........................................................................................................8

I.     Defendants Improperly Evade The Requests..................................................10

     A.     Valeant ................................................................................................................11

     B.     Pearson ...............................................................................................................13

II.     Mr. Pearson Improperly Provided Extraneous Information ............................14

III.     Defendants Improperly Objected To Requests Concerning Valeant's Reliance On Price Appreciation Credits To Report Misleading Growth Figures ...............................17

CONCLUSION......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

### <u>Cases</u>

*Anthony v. Cabot Corp.*,
    2008 WL 2645152 (E.D. Pa. July 3, 2008) ............................................................................ 10

*Caruso v. Coleman Co.*,
    1995 WL 347003 (E.D. Pa. June 7, 1995) ............................................................................ 14

*City of Rialto v. U.S. Dep't of Def.*,
    492 F. Supp. 2d 1193 (C.D. Cal. 2007) ............................................................................... 22

*Diederich v. Dep't of the Army*,
    132 F.R.D. 614 (S.D.N.Y. 1990) .......................................................................................... 24

*Guinan v. A.I. duPont Hosp. for Children*,
    2008 WL 938874 (E.D. Pa. Apr. 7, 2008) ............................................................ 10, 12, 14

*IBEW v. Star-Lo Elec.*,
    2010 WL 11530624 (D.N.J. Mar. 1, 2010) .......................................................................... 21

*Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*,
    2017 WL 11558094 (D. Del. Oct. 3, 2017) ......................................................................... 12

*Jones v. Derosa*,
    238 F.R.D. 157 (D.N.J. 2006) .............................................................................................. 21

*Kendrick v. Sullivan*,
    1992 WL 119125 (D.D.C. May 15, 1992) ........................................................................... 25

*Langer v. Monarch Life Ins. Co.*,
    966 F.2d 786 (3d Cir. 1992) .......................................................................................... 11, 23

*Miller v. Holzmann*,
    240 F.R.D. 1 (D.D.C. 2006) ................................................................................................. 24

*Munich Reinsurance Am., Inc. v. Am. Nat'l Ins. Co.*,
    2011 WL 1466369 (D.N.J. Apr. 18, 2011) .......................................................................... 21

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) .............................................................................................................. 22

*Paramount Fin. Commc'ns, Inc. v. Broadridge Inv'r Commc'n Sols., Inc.*,
    2017 WL 495784 (E.D. Pa. Feb. 7, 2017) ............................................................. 10, 11, 13

*Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*,
  1992 WL 394425 (E.D. Pa. Dec. 28, 1992) ...................................................... 21, 22

*State Farm Mut. Auto. Ins. Co. v. Cordua*,
  2010 WL 1223588 (E.D. Pa. Mar. 29, 2010) .......................................................... 10

*Swarthmore Radiation Oncology, Inc. v. Lapes*,
  1993 WL 475507 (E.D. Pa. Nov. 9, 1993) ....................................................... 15, 17

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*,
  242 F.R.D. 1 (D.D.C. 2007) ............................................................................. 10, 11, 12

*Thalheim v. Eberheim*,
  124 F.R.D. 34 (D. Conn. 1988) .......................................................................... 9, 10, 15

*United Coal Cos. v. Powell Construction Co.*,
  839 F.2d 958 (3d Cir. 1988) .................................................................................. 9, 13

*United States ex rel. Shamesh v. CA, Inc.*,
  314 F.R.D. 1 (D.D.C. 2016) ........................................................................................... 22

*United States v. Lorenzo*,
  1990 WL 83388 (E.D. Pa. June 14, 1990) ........................................................... 9, 10

*United States v. Nicolet, Inc.*,
  1989 WL 51734 (E.D. Pa. May 12, 1989) ................................................................... 8

*Whole Woman's Health All. v. Hill*,
  2020 WL 1028040 (S.D. Ind. Mar. 2, 2020) ................................................ 16, 17, 24

*Williamson v. Corr. Med. Servs.*,
  2009 WL 1364350 (D. Del. May 14, 2009) ................................................................ 9

## Rules

Fed. R. Civ. P. 36 ................................................................................................. *passim*

Fed. R. Civ. P. 37 ......................................................................................................... 10

Pursuant to Federal Rule of Civil Procedure 36(a)(6), the plaintiffs in the above-captioned actions ("Direct Action Plaintiffs")[1] respectfully submit this Memorandum of Law in support of their motion for a judicial determination of the sufficiency of the responses and objections to Direct Action Plaintiffs first set of Requests for Admission (the "Requests") on Defendants Valeant Pharmaceuticals International, Inc. ("Valeant") and J. Michael Pearson, Valeant's former Chief Executive Officer.

## PRELIMINARY STATEMENT

Direct Action Plaintiffs served targeted and straightforward Requests for Admission on Defendants in order to narrow the triable issues in this litigation arising out of one of the largest securities frauds in recent history. From approximately January 2013 through the spring of 2016, Valeant engaged in deceptive practices and made numerous material misrepresentations about its purportedly innovative business, representing to investors that, among other things, its business was sustained by organic growth. These misrepresentations led to massive inflation of Valeant's stock price, which, in turn, led to the personal enrichment of Valeant's management. But when the truth came out – that Valeant's growth was fueled largely by unsustainable price gouging and the use of a captive specialty pharmacy Philidor – Valeant's stock price crashed and shareholders lost tens of billions of dollars. Valeant's misconduct led to Securities and Exchange Commission investigations and settlements, and significant civil litigation, both ongoing and settled.

Given the expansive scope of Defendants' misconduct – borne out in discovery – Direct Action Plaintiffs served the Requests on Valeant, its former CEO, Mr. Pearson, and its former

---

[1]   Direct Action Plaintiffs are the investment funds who have opted out of the Class Action, *In re Valeant Pharmaceuticals International, Inc. Securities Litigation*, No 15-cv-07658, to prosecute direct claims in Nos. 16-cv-07321, 16-cv-07324, 16-cv-07494, 16-cv-07496, 16-cv-07497, 17-cv-06513, 17-cv-07636, 17-cv-12088, 18-cv-00089, 18-cv-00343, 18-cv-00383, 18-cv-00846, 18-cv-00893, 18-cv-01223, 18-cv-08595, 18-cv-08705, 18-cv-15286, 20-cv-07460, and 20-cv-07462.

Chief Financial Officer, Mr. Howard B. Schiller, to narrow the points of contention at trial to those issues on which disagreement actually exists.  This will save both time and effort at trial.  *See* Declaration of Kathryn Bonacorsi ("Bonacorsi Decl."), Ex. A (Transcript from January 27, 2021 Conference) at 55 ("I have always looked at admissions … as really … saving time and effort at trial.  And the rule is pretty clear as to … the manner in which admissions are to be responded to.").  Not only do the responses provided by Valeant and Mr. Pearson frustrate this purpose, but their responses also fail under the Federal Rules.

With limited exceptions, Rule 36 requires a party to either "admit" or "deny" a Request for Admission.  *See also id.*  ("[T]here's a denial, an admission, or saying you don't understand it for some reason, but that should be it.").  The responses provided by Valeant and Mr. Pearson fail under this Rule for the following reasons:

*First*, Defendants Valeant and Mr. Pearson mischaracterize the Requests and improperly qualify their responses to obfuscate the substance of the admissions sought.  In response to a straightforward request asking Valeant to acknowledge the truth of statements contained in its own filings with the Securities and Exchange Commission, for example, Valeant ███████████ ███████████████████████████████████████████████████████████████████████████ This hair-splitting is inappropriate under the Federal Rules.  This Court should either deem admitted the Requests that Valeant and Mr. Pearson have evaded or, in the alternative, compel direct responses.

*Second*, Mr. Pearson utilized certain Requests to provide extraneous narrative in an attempt to bolster his defenses and theories of the case.  In response to a straightforward request asking whether he signed and certified certain filings, for example, Mr. Pearson interjects nonresponsive narrative about Valeant's purported "robust internal processes and controls."  Such bolstering is

2

improper under the Federal Rules.  Rule 36 permits qualification only where absolutely necessary to clarify the scope of admission.  Mr. Pearson fails to comply, admitting in substance the entirety of certain requests before interjecting paragraphs of non-responsive and irrelevant information.  Here, too, this Court should either deem as admissions the responses deficient for this reason, or compel Mr. Pearson to amend his responses to remove extraneous information.

*Finally*, Valeant and Mr. Pearson objected to the relevance of Requests regarding Valeant's reliance on price appreciation credits ("PACs") to report misleading growth figures.  This objection is absurd: these Requests go directly to Valeant's reliance on massive  price increases to record unsustainable revenue growth, including through PACs resulting from the price increases.  Valeant further dodged certain Requests by, for example, ██████████████████████ ████████████████████████████████████████████without responding to the substance of the Requests.  Incredibly, Mr. Pearson claimed to lack knowledge in response to a Request regarding his own awareness of PACs, despite ████████████████████████████████ ████████████████████████████████  These responses are not proper under Rule 36.  Defendants Valeant and Mr. Pearson should be ordered to respond fully to the Requests concerning the use of such PACs, or the Court should deem the Requests admitted.

Defendants' last-minute attempt to cure some of these deficiencies is wholly insufficient, and thus does nothing to change the relief sought in this Motion.

## BACKGROUND

### A.    <u>Defendants' Securities Fraud Scheme Causes Billions In Investor Losses</u>

Between January 2013 and the Spring of 2016, Valeant and its executives engaged in a series of deceptive practices and made numerous material misrepresentations and omissions regarding those practices.  *See, e.g., Hound Partners Offshore Fund LP, et al. v. Valeant Pharm. Int'l Inc., et al.*, No. 18-cv-8705, Doc. 1 ("Compl.") ¶¶ 1, 3-15 (D.N.J. Jan. 4, 2018).  For years,

Valeant represented that it was sustaining significant "organic" revenue and earnings growth that was driven by Valeant's purportedly "low-risk" strategy of buying established pharmaceutical companies and increasing the market exposure and volume sales of those companies' existing drug portfolios.  Compl. ¶¶ 3-4.  As Valeant and its executives were aware, volume growth was viewed as less risky than "price growth," and investors rewarded Valeant for this growth.  By August 5, 2015, Valeant's stock was trading at over $262 per share.  Compl. ¶ 396.

Hidden from investors, however, was the fact that Valeant's "organic growth" was fueled almost entirely by unsustainable price gouging and channel stuffing propped up by Valeant's use of a network of captive pharmacies, also undisclosed.  Compl. ¶¶ 6-8.  When this came to light, Valeant's scheme and stock price unraveled.  Compl. ¶¶ 10-15.  By June 2016, Valeant's stock had fallen to less than $25 per share from its peak of $262 per share in the summer of 2015, causing tens of billions of dollars in investor losses.  Compl. ¶ 397.

### B.      Class Litigation And Previous Findings Against Defendants

As Valeant's scheme was unraveling, securities class actions were filed against Valeant, its executives, accountants, and underwriters to hold them accountable for the numerous misrepresentations and omissions that caused investor losses.  On June 24, 2016, the Valeant Class Action Consolidated Complaint was filed, bringing claims under the Securities Act of 1933 and the Securities Exchange Act of 1934.  *See In re Valeant Pharmaceuticals International, Inc. Securities Litigation*, No 15-cv-07658, Doc. 80 (Complaint) (D.N.J. June 24, 2016).  Direct Action Plaintiffs filed their respective opt-out actions simultaneously or shortly thereafter, many of which are still being prosecuted.  The Class Action recently received final approval of a settlement on February 5, 2021, *see* No. 3:15-cv-07658, Doc. 664 (Order and Final Judgment) (D.N.J. Feb. 5, 2021).

The SEC also investigated Valeant's "improper revenue recognition and misleading disclosures in SEC filings and earning presentations." *See* United States Securities and Exchange Commission, Press Release 2020-169 (July 31, 2020), *available at*: https://www.sec.gov/news/press-release/2020-169. The SEC investigation resulted in Valeant's agreement to pay a $45 million penalty to settle the charges against it. *Id.* Three former Valeant executives (Mr. Pearson, Mr. Schiller, and Ms. Tanya Carro, each a Defendant) paid penalties of, cumulatively, $425,000 to settle the charges against them. At the conclusion of the investigation, Valeant consented to entry of an order finding it violated antifraud provisions of Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933. *See* Bonacorsi Decl., Ex. B (Cease-And-Desist Order ("Valeant Consent Order"), Administrative Proceeding No. 3-19899). Mr. Pearson also consented to entry of an order finding that he violated the same antifraud provisions of the Securities Act of 1933. *See* Bonacorsi Decl., Ex. C (Cease-And-Desist Order ("Pearson Consent Order"), Administrative Proceeding No. 3-19900). Mr. Schiller and Ms. Carro, Valeant's former controller, entered into similar consent orders. *See* Bonacorsi Decl., Ex. D (Cease-And-Desist Order ("Schiller Consent Order"), Administrative Proceeding No. 3-19901); Ex. E (Cease-And-Desist Order ("Carro Consent Order"), Administrative Proceeding No. 3-19902). Among other things, these Consent Orders found that when Valeant increased the price of a single drug (Glumetza) by 500% to accrue over a hundred million dollars in revenue through PACs, it improperly attributed that revenue to other products so as to hide from investors the outsized effect of that price increase on Valeant's growth. *See*, *e.g.*, Valeant Consent Order ¶¶ 3, 21, 23-25.

## C. **Direct Action Plaintiffs' Requests For Admission**

Almost a year into fact discovery, Direct Action Plaintiffs have harnessed evidence to substantiate their allegations of the wide-ranging misconduct at Valeant. Plaintiffs have uncovered documents and elicited testimony demonstrating that, among other things, Valeant's "organic

growth" over the years in question was largely driven by unsustainable price increases and much of the so-called "volume" increase was only achieved through the secretive use of Philidor.

To narrow the issues in dispute in this litigation for trial, Direct Action Plaintiffs served the Requests on Defendants Valeant, Mr. Pearson, and Mr. Schiller on October 29, 2020. *See* Bonacorsi Decl., Ex. F (First Set of Requests for Admission to Defendant Valeant); Ex. G (First Set of Requests for Admission to Defendant Pearson); Ex. H (First Set of Requests for Admission to Defendant Schiller). Those Defendants requested, and Direct Action Plaintiffs granted, a two-week extension of time to provide responses and objections to the Requests. Defendants then served their responses on December 14, 2020. *See* Bonacorsi Decl., Ex. I (Valeant Responses and Objections), Ex. J (Pearson Responses and Objections), Ex. K (Schiller Responses and Objections). Direct Action Plaintiffs identified numerous deficiencies in the Defendants' responses and objections, and promptly provided Defendants notice of the deficiencies and the opportunity to amend in correspondence dated December 29, 2020. *See* Bonacorsi Decl., Ex. L (Letter Regarding Valeant Deficencies), Ex. M (Letter Regarding Pearson Deficencies), Ex. N (Letter Regarding Schiller Deficencies).

Among other issues, Direct Action Plaintiffs identified three significant deficiencies that pervaded Defendants' responses. *First*, rather than address the specific admissions sought, Defendants repeatedly mischaracterized the Requests and improperly qualified their responses to obfuscate the substance of the admission. *Second*, Defendants used their responses to provide improper, extraneous narrative intended to undercut the force of the admission, even when that narrative was entirely nonresponsive. *Third*, Defendants failed to provide complete answers to certain Requests pertaining to PACs, including on relevance grounds.

In response to the deficiencies that Direct Action Plaintiffs identified, Mr. Schiller stated, on January 14, 2021, that he would provide supplemental responses and objections, Bonacorsi Decl., Ex. O (Schiller Letter Regarding Deficencies), and he served those supplemental responses and objections on January 22, 2021, Bonacorsi Decl., Ex. P (Supplemental Schiller Responses). Counsel for Direct Action Plaintiffs met and conferred with counsel for Mr. Schiller on January 26, 2021, after which Mr. Schiller agreed to further amend one response and objection and provided additional explanation regarding other responses. Counsel for Direct Action Plaintiffs then informed Mr. Schiller that Direct Action Plaintiffs would not seek a judicial determination on the sufficiency of Mr. Schiller's responses at this time.

Neither Valeant nor Mr. Pearson offered to amend or otherwise supplement their responses and objections in the first instance. *See* Bonacorsi Decl., Ex. Q (Valeant Correspondence Regarding Deficencies), Ex. R (Pearson Correspondence Regarding Deficencies). Instead, Valeant stated that it "responded to those … requests that were potentially proper, relevant, or otherwise arguably appropriate," and "rejected [Direct Action Plaintiffs'] assertion that Valeant's Responses and Objections … contain 'numerous deficiencies.'" Bonacorsi Decl., Ex. Q at 1. Direct Action Plaintiffs met and conferred with Valeant on January 19, 2021, during which Valeant reiterated that it would be standing by its objections, including as explained in its correspondence, and that it would not be providing any supplementation. Direct Action Plaintiffs informed Valeant that, as a result, Direct Action Plaintiffs would seek a briefing schedule for a judicial determination of the sufficiency of Valeant's responses and objections.

Mr. Pearson also claimed in his written correspondence that his responses and objections were proper, insisting that he "responded appropriately to those requests that were proper and relevant to the claims in the litigation with an 'admit' or 'deny.'" *See* Bonacorsi Decl., Ex. R.

Direct Action Plaintiffs met and conferred with counsel for Mr. Pearson on January 22, 2021, during which counsel for Mr. Pearson stated for the first time that Mr. Pearson would supplement some of his responses and objections, and indicated that Mr. Pearson would seek to do so before the discovery conference on January 27, 2021.  Instead, Mr. Pearson served four supplemental responses two weeks later, on February 5, 2021.  Bonacorsi Decl., Ex. S (Supplemental Pearson Responses).  As explained below, Mr. Pearson's four supplemental responses did not cure the deficiencies identified by Direct Action Plaintiffs.  *See id.*

While awaiting Mr. Pearson's and Mr. Schiller's supplemental responses, Direct Action Plaintiffs sought and obtained a briefing schedule from the Special Master for a judicial determination of the sufficiency of Defendants' responses and objections to the Requests.  *See* 15-cv-07658, Doc. 653 (Order of the Special Master) (D.N.J. Jan. 28, 2021).  Although Valeant previously refused to amend its responses and objections, on February 10, 2021, two weeks after the Special Master entered an order providing a briefing schedule and over *three months* after the Requests were served, Valeant, without any notice of its intent to do so, supplemented a few of its responses and objections.  Bonacorsi Decl., Ex. T (Supplemental Valeant Responses).  Valeant's supplemental admissions resolved some, but not all, of the deficiencies identified by Direct Action Plaintiffs.  On February 10, 2021, also without prior notice, Mr. Pearson supplemented a single additional response not at issue here.  *See* Bonacorsi Decl., Ex. U (Second Supplemental Pearson Responses).

## ARGUMENT

Federal Rule of Civil Procedure 36(a) permits any party to serve another party a "written request for admission of the truth of any matters within the scope of Federal Rule of Civil Procedure 26(b) that relate to statements or opinions of fact or of the application of law to fact[.]" *United States v. Nicolet, Inc.*, 1989 WL 51734, at *1 (E.D. Pa. May 12, 1989).

Requests for admission under Rule 36 "serve[] two vital purposes, both of which are designed to reduce trial time.  Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."  *Id.* at *1-2 (quoting *United Coal Cos. v. Powell Constr. Co.,* 839 F.2d 958, 967 (3d Cir. 1988) for the proposition that "[t]he purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested"); *see* Bonacorsi Decl., Ex. A at 55 ("I have always looked at admissions … as really … saving time and effort at trial.  And the rule is pretty clear as to … the manner in which admissions are to be responded to.").  And Rule 36 is straightforward: generally speaking, a party must either "admit" or "deny" a request.  Fed. R. Civ. P. 36(a); *see also* Bonacorsi Decl., Ex. A at 55 ("[T]here's a denial, an admission, or saying you don't understand it for some reason, but that should be it.").

"Where a party has answered or objected to a request, the requesting party is allowed to move for a judicial determination of the sufficiency of the answers and whether any objections were justifiable."  *United States v. Lorenzo*, 1990 WL 83388, at *1 (E.D. Pa. June 14, 1990).  "To make this determination, the court must review:  '(1) whether the denial fairly meets the substance of the request; (2) whether good faith requires that the denial be qualified; and (3) whether any 'qualification' which has been supplied is a good faith qualification.'"  *Id.* (quoting *Thalheim v. Eberheim,* 124 F.R.D. 34, 35 (D. Conn. 1988) (emphases omitted)); *see also Williamson v. Corr. Med. Servs.*, 2009 WL 1364350, at *2 (D. Del. May 14, 2009) (same).  "Answers that appear to be non-specific, evasive, ambiguous and appear to go to the accuracy of the requested admissions rather than the 'essential truth' contained therein are impermissible and must be amended."  *Lorenzo*, 1990 WL 83388, at *1.  The responses and objections challenged below are deficient on these grounds, as Valeant and Mr. Pearson: (1) evade the substance of the Requests, adopting hair-

splitting distinctions to dilute improperly the force of the admission; (2) offer extraneous qualification unresponsive to the Requests to bolster their defense; and (3) inappropriately object to the relevance of Requests that are central to the claims in this case.

"On finding that an answer does not comply with [Rule 36], the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6); *see also State Farm Mut. Auto. Ins. Co. v. Cordua*, 2010 WL 1223588, at *2 (E.D. Pa. Mar. 29, 2010); *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 13 (D.D.C. 2007) ("The court may order either that the matter is admitted or that an amended answer be served."). Moreover, where "a party fails to admit what is requested under Rule 36" and "the requesting party later proves a document to be genuine or the matter true," the party that failed to admit may be ordered to pay the requesting party "the reasonable expenses, including attorney's fees, incurred in making that proof." Fed. R. Civ. P. 37(c)(2).

## I.      **Defendants Improperly Evade The Requests**

In response to numerous Requests, Valeant and Mr. Pearson evade the actual terms of the requests so as to avoid responding directly with either "admitted" or "denied." Courts "should not allow the responding party to make 'hair-splitting distinctions' that frustrate the purpose of the Request." *Lorenzo*, 1990 WL 83388, at *1 (quoting *Thalheim*, 124 F.R.D. at 35); *see also Guinan v. A.I. duPont Hosp. for Children*, 2008 WL 938874, at *1 (E.D. Pa. Apr. 7, 2008) (same); Bonacorsi Decl., Ex. A at 55 ("[T]here's a denial, an admission, or saying you don't understand it for some reason, but that should be it."). Such "non-specific, evasive, [and] ambiguous" answers that "appear to go to the accuracy of the requested admissions rather than the 'essential truth' contained therein are impermissible and must be amended." *Anthony v. Cabot Corp.*, 2008 WL 2645152, at *1 (E.D. Pa. July 3, 2008) (citations and quotations omitted); *Paramount Fin. Commc'ns, Inc. v. Broadridge Inv'r Commc'n Sols., Inc.*, 2017 WL 495784, at *3 (E.D. Pa. Feb.

7, 2017) (same); *see also Tequila Centinela*, 242 F.R.D. at 14 ("As a matter of course, answers that are evasive must be amended.").

A.    <u>**Valeant**</u>

Valeant's responses to Requests 2, 11, 18, 29, and 34 are deficient and require amendment because they avoid providing direct answers to straightforward requests.

*First*, in response to Request No. 2 ("Admit that Valeant's internal controls over financial reporting exhibited material weaknesses in 2014 and 2015."), Valeant admits:



Bonacorsi Decl., Ex. T at 10.  Although Valeant itself disclosed that it had concluded that such material weaknesses existed in its SEC filing, *see* Bonacorsi Decl., Ex. V (Valeant Pharmaceuticals International, Inc., Form 10-K for 2015, April 29, 2016) at 80, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See Paramount*, 2017 WL 495784, at *3.  ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ A document that is the basis for a request does not "speak for itself"—"[t]he party responding to such a request must answer the request." *Id.* ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ Valeant improperly undermines the purpose of the Request and the purpose of Rule 36: to "narrow the issues for trial." *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992).

*Second*, in response to Request 11 ("Admit that in 2013 Valeant provided an advance of $2 million to Philidor"), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮: did Valeant provide the

advance or not?  *See* Bonacorsi Decl., Ex. T at 14-15.  Instead, Valeant ███████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████ is the very sort of evasive "hair-splitting" to avoid the truth of the matter that this Court

does not authorize.  *See Tequila Centinela*, 242 F.R.D. at 14 ("[H]air-splitting disingenuous

distinctions are inappropriate"); *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, 2017

WL 11558094, at *7-8 (D. Del. Oct. 3, 2017) ("By evading the actual words used in Defendant's

question, Plaintiffs avoid providing a responsible answer to the question that Defendant actually

asked."); *see also* Bonacorsi Decl., Ex. A (Transcript from January 27, 2021 Conference) at 55

("[T]here's a denial, an admission, or saying you don't understand it for some reason, but that

should be it.").  Request 11 is "straightforward, and [is] deserving of a straightforward answer."

*Guinan*, 2008 WL 938874, at *2.

     *Third*, in response to Request 18 ("Admit that the Philidor Purchase Option Agreement

provided for a joint steering committee, composed of members of Valeant and Philidor, the

purposes of which included exchange, assessment, and discussion of matters relating to

compliance of Philidor with applicable laws, material contractual obligations and Philidor's

internal policies and processes"), Valeant ████████████████████████████████████

████████████████████████████████████████████████████████████████ But, again, Direct

Action Plaintiffs know what the underlying document states as that document formed the basis of

the Request.  Direct Action Plaintiffs are instead seeking to establish the Purchase Option

Agreement does *in fact* so provide.  Valeant is a party to that agreement, and knows exactly what it provides. ███████████████████████████████████████ So too is Valeant's "refer[ral]" to the underlying document.  A document that is the basis for a request does not "speak for itself"—"[t]he party responding to such a request must answer the request." *Paramount*, 2017 WL 495784, at *3.

*Fourth*, in response to Request 29 ("Admit that at the time Valeant approved the $70 million credit referenced in Request No. 27, Philidor's accounts receivable balance was $32 million, with $8.5 million of the balance over 61 days past due."), Valeant admits ████ ████████████████████████████████████████████ ████████████████████████████████████ *See* Bonacorsi Decl., Ex. T at 19.  Valeant's response to Request 34 similarly ███████ ████████████████████████████████████ *Id.* at 20-21. These responses are evasive and deficient:  Direct Action Plaintiffs are obviously aware ███ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████ Valeant prevents the Request from serving its purpose and prevents Direct Action Plaintiffs from narrowing issues for trial.  *See United Coal Cos.*, 839 F.2d at 967.

**B.    Pearson**

Mr. Pearson's responses to Requests 15, 16, and 17 are also deficient for their failure to provide direct answers to straightforward requests.  These evasive answers likewise require amendment.  Each of these Requests is direct:  they ask Mr. Pearson to admit that he did not disclose specified facts concerning Philidor on certain earnings calls.  *See* Bonacorsi Decl., Ex. U at 11 ("Request No. 15:  Admit that in Valeant's earnings calls for Q3 and Q4 2014 highlighting

the performance of Valeant's dermatology unit, You did not disclose that sales to Philidor had been a key strategy for dermatology."); *id.* ("Request No. 16:  Admit that in Valeant's earnings calls for Q3 and Q4 2014 highlighting the performance of Valeant's dermatology unit, You did not disclose that Philidor was one of the growth drivers for Valeant's dermatology unit."); *id.* ("Request No. 17:  Admit that in Valeant's earnings calls for Q3 and Q4 2014 highlighting the performance of Valeant's dermatology unit, You did not disclose that Valeant had increased sales to Philidor.").  Either Mr. Pearson did disclose "that sales to Philidor had been a key strategy," "that Philidor was one of the growth drivers," and "Valeant had increased sales to Philidor" on those earnings calls, or he did not.  Straightforward requests like these "are deserving of a straightforward answer." *Guinan*, 2008 WL 938874, at *2; *see also Caruso v. Coleman Co.*, 1995 WL 347003, at *6 (E.D. Pa. June 7, 1995) ("In these requests, plaintiff has presented a simple and direct statement in which defendant has the ability to admit or deny. Therefore, defendant is ordered to amend its responses.").

Although Mr. Pearson "admits that he discussed" the dermatology unit's performance referenced in the Requests, he refuses to either admit or deny that he made reference to Philidor on those calls, and then "otherwise denies" the request.  "Th[ese] denial[s] [are] evasive, since [Mr. Pearson] does not specifically deny the matter" in question.  *Id.* at *2.  Mr. Pearson should therefore be required to amend his responses to address the substance of these Requests. *Guinan*, 2008 WL 938874, at *3 (requiring amendment where "Plaintiff's response is evasive and does not answer a simple and direct question: did they decline to have Molly participate in medical monitoring at AIDH?").

## II.   **Mr. Pearson Improperly Provided Extraneous Information**

Rather than respond directly to the Requests, Mr. Pearson improperly used his responses to provide irrelevant explanations and extraneous narrative to bolster his theory of the case.

Qualifications like this are improper under Rule 36. *Swarthmore Radiation Oncology, Inc. v. Lapes*, 1993 WL 475507, at *3 (E.D. Pa. Nov. 9, 1993) (qualification that "offer[s] an alternative theory" not responsive to request is improper; qualifications only "permit[] a party to distinguish truthful from untruthful portions of the Request"); *Thalheim*, 124 F.R.D. at 35 ("[A] reviewing court should not permit a responding party to undermine the efficacy of the rule by crediting disingenuous, hair-splitting distinctions whose unarticulated goal is unfairly to burden an opposing party."). Specifically, in response to Requests 5, 6, 20, and 21, Mr. Pearson provides impermissible qualifications that are unrelated to the substance of the requests.

*First*, in response to Request 5 ("Admit that during the time period described in Request No. 4, You approved, signed, and certified Valeant's quarterly and annual SEC filings."), Mr. Pearson provides almost half a page of irrelevant narrative, presumably intended to undermine the force of his admission. *See* Bonacorsi Decl., Ex. U at 7-8. Rather than admit that he approved, signed, and certified those filings – the only proper response under Rule 36 given the substance of his admission – Mr. Pearson: "admits that he signed the Section 302 and Section 906 certifications for Valeant's annual and quarterly filings … as required by the Sarbanes-Oxley Act of 2002" and

> admits that he relied on Valeant's robust internal processes and controls in preparing quarterly and annual SEC filings. The process for public filings involved internal and external accountants, the relevant business people, internal and external legal counsel, and the Audit and Risk Committee ("ARC"). Mr. Pearson admits that his involvement with the 10-Ks and 10-Qs generally happened towards the end of the process when he would review the filings and sign them based on assurances that the sub-certifications from individuals across the organization, including business unit heads, finance, and legal were completed, the ARC had reviewed, and PriceWaterhouseCooper LLP ("PwC") had signed off. Except as otherwise admitted, Mr. Pearson denies Request No. 5.

*Id.* None of this extraneous narrative is responsive to the Request, which should be admitted as Mr. Pearson, as a matter of fact, *did* approve, sign, and certify Valeant's quarterly and annual SEC filings. *See, e.g.*, Bonacorsi Decl., Ex. W (Excerpts from Valeant's 2015 second quarter 10-Q)

("I, J. Michael Pearson, certify that … I have reviewed this quarterly report on Form 10-Q of [Valeant]….Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact.").  No other response is proper.  *See Whole Woman's Health All. v. Hill*, 2020 WL 1028040, at *4 (S.D. Ind. Mar. 2, 2020) (directing defendants to answer because "[t]hese requests are straightforward, such that, Defendants either 'inspected the specified facilities at least once each calendar year or they did not") (alterations omitted).

*Second,* Mr. Pearson's response to Request 6 ("Admit that during the time period described in Request No. 4, You reviewed and approved Valeant's earnings presentations and spoke during earnings calls.") similarly interjects extraneous narrative.  *See Bonacorsi Decl., Ex. U at 8.  Either Mr. Pearson reviewed and approved the presentations and spoke during those calls or he did not. His statements that "the earnings call scripts used during the earnings calls were reviewed and vetted by many individuals internally at Valeant, including individuals in the Investor Relations group, the Office of the General Counsel ("OGC") as well as Finance and Accounting departments" and "that the process of preparing and approving Valeant's earnings presentations also involved individuals, including from the Investor Relations group, the OGC, heads of particular business units as well as the Finance and Accounting departments," *id.*, are nonresponsive.  Whether the presentations in question were also reviewed and approved by other Valeant employees has no bearing on whether Mr. Pearson, as Valeant's CEO at the time, did in fact review and approve those presentations.

*Third*, in response to Request 20 ("Admit that You signed and certified Valeant's 2015 Form 10-K, in which Valeant restated its financial statements for the year ended December 31, 2014 to reduce previously reported fiscal year 2014 revenue from sales to Philidor by approximately $58 million"), Mr. Pearson again adds irrelevant narrative regarding other groups

and employees at Valeant.  *Id.* at 14.  Mr. Pearson admits that he signed and certified the form, but adds "he relied on the involvement of internal and external accountants at PwC, the relevant business people, internal and external counsel, and the ARC.  Further, the process of preparing the 2015 Form 10-K also included the involvement of attorneys for both Valeant and the independent Ad Hoc Committee as well as forensic accountants hired to assist with the restatement process."  *Id.*  This extraneous narrative, presumably meant to bolster Mr. Pearson's defense that others were involved, is improper.  *Swarthmore Radiation*, 1993 WL 475507, at *3; *Whole Woman's Health*, 2020 WL 1028040, at *4.

*Fourth*, Mr. Pearson interjects similarly non-responsive information in his answer to Request 21 ("Admit that You signed and certified Valeant's Forms 10-Q for Q3 2014 and Q1, Q2, and Q3 2015, and Form 10-K for 2014.").  Bonacorsi Decl., Ex. U at 14.  Again, after admitting that "he signed the ... certifications," Mr. Pearson adds:

> that he relied on Valeant's robust internal processes and controls for preparing quarterly and annual SEC filings.  The process for public filings involved internal and external accountants, the relevant business people, internal and external legal counsel, and the ARC.  Mr. Pearson admits that his involvement with the Forms 10-K and Forms 10-Q generally happened towards the end of the process when he would review the filings and sign them based on assurances that the subcertifications from individuals across the organization, including business unit heads, finance, and legal were completed, the ARC had reviewed, and PwC had signed off.

*Id.* at 14-15.  Again, none of this extraneous narrative is responsive to the Request, which should be admitted as Mr. Pearson did in fact sign the certifications in question, as he acknowledges.  *Id.*

### III.   Defendants Improperly Objected To Requests Concerning Valeant's Reliance On Price Appreciation Credits To Report Misleading Growth Figures

Valeant and Mr. Pearson objected to requests pertaining to Valeant's use of price appreciation credits ("PACs") to record increased revenue as irrelevant to the claims at issue

because the complaints' allegations do not specifically identify PACs by name.[2]  This objection is without merit.  The gravamen of Direct Action Plaintiffs' claims, sounding throughout their complaints, is that "Defendants resorted to price gouging to create the appearance of organic growth" while representing "to investors that Valeant was largely relying on organic volume growth and market expansion."  *See, e.g.*, Compl. ¶ 6.

Valeant's reliance on PACs and its treatment of revenue derived from those PACs as organic growth to meet its revenue and organic growth projections is therefore central to and inextricable from Direct Action Plaintiffs' claims that Defendants misrepresented the extent to which Valeant's growth was due to organic volume increases rather than price gouging.

Specifically, Valeant's largest customers are major U.S. drug wholesalers, who enter into distribution service agreements ("DSAs") that, among other things, set the fees Valeant pays wholesalers for their distribution and inventory management services.  Through at least 2015, these DSAs contained price appreciation clauses whereby Valeant was entitled to credits from such wholesalers for price increases on products currently held in stock by the wholesalers at the time of the price increases.  The PAC was calculated based on the wholesaler's inventory of the product subject to a price increase, multiplied by the amount of the price increase.  Pursuant to the terms of the DSAs, PACs offset the DSA fees Valeant owed to wholesalers.  Valeant recorded the net revenue impact of PACs at the time customers were notified of the price increase.  *See* Bonacorsi

---

[2]   Mr. Pearson objected to Requests 7-9 "on the grounds that [each] is overbroad unduly burdensome, and disproportionate to the needs of the case in that it seeks information pertaining to Glumetza PACs, which are irrelevant to any claims or defenses at issue in this litigation," and denied each Request.  *See* Bonacorsi Decl., Ex. U at 8-9.

Valeant objected to Requests 73-95 pertaining to PACs "because [each Request] is not relevant to any party's claims or defenses and not proportional to the needs of the case."  Bonacorsi Decl., Ex. T at 37-47.

Decl., Ex. X (Excerpts from the deposition of Katharine Rutkowksi) at 34:10-37:10 ███████████

████████████████████████████████████████████████████.

        The timing of Valeant's price increases was not coincidental; █████████████████

████████████████████████████████████████████████████████████

███████████████████████████ Bonacorsi Decl., Ex. Y (Excerpts from the deposition

of Craig Olson) at 55:24-56:19; *id.* at 57:12-16 ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Additionally, █████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ Indeed, in June 2015, ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

19

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *See* Bonacorsi

Decl., Ex. Y at 128:4-18.

These PACs—including the Glumetza PAC and many others resulting from price increases of varying sizes on multiple drugs—played a critical role in Valeant achieving certain revenue targets and allowing Valeant to claim continued revenue growth in its public filings and on investor calls. ██████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████ Bonacorsi Decl., Ex. BB (Olson Exhibit 17, VRX-0926733). ████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ *See* Bonacorsi Decl., Ex. X at 291:5-292:5.

The revenue numbers inflated by Valeant's reliance on PACs were of critical importance to Valeant's investors.  For example, analysts for certain Direct Action Plaintiffs invested in reliance on Valeant's representation that it had ███████████████████████████████████

████████████████████ Bonacorsi Decl., Ex. CC (HOUND00142774).  And without the significant Glumetza PAC addressed in the Requests, Valeant's same store organic growth for that quarter would have been just 14%.  *See* Valeant Consent Order at 8.  Valeant's Glumetza price increases therefore illustrate how Valeant used PACs to manipulate its reported growth.

Because Valeant used PACs resulting from strategically timed price increases to jack up reported revenues, PACs are clearly within the scope of discovery in these actions.  "[C]ourts have construed [Rule 26] liberally, creating a broad range for discovery which would encompass any

matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Munich Reinsurance Am., Inc. v. Am. Nat'l Ins. Co.*, 2011 WL 1466369, at \*10 (D.N.J. Apr. 18, 2011) (citing *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006)); *see also IBEW v. Star-Lo Elec.*, 2010 WL 11530624, at \*10 (D.N.J. Mar. 1, 2010) (Shipp, Magistrate Judge) ("Plaintiffs failed to convince the Court that the Requests for Admission were irrelevant and immaterial under the broad vista for discovery provided for under the federal rules.").

Defendants cannot seriously dispute that Valeant's reliance on PACs to meet revenue targets does not "bear[] on … or reasonably could lead to other matter that could bear on," *Munich Reinsurance*, 2011 WL 1466369, at \*10, the central allegations in Direct Action Plaintiffs' actions. And any such matter within the scope of permissible discovery is an appropriate subject of requests for admission. *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 1992 WL 394425, at \*3 (E.D. Pa. Dec. 28, 1992) ("It is clear however from the 1970 Advisory Committee notes that an equally important purpose of serving requests for admissions is to facilitate proof as to issues which cannot be eliminated from the case and any matter within the scope of rule 26(b) that relates to statements or opinions of fact or of the application of the law to facts.").

Even Valeant appears to concede the relevance of its use of PACs involving one product, Glumetza, in its February 10, 2021 supplemental responses, but continues to contest the relevance of PACs generally. *See* Bonacorsi Decl., Ex. DD (February 10, 2021 letter from Craig Waldman) at 2. This distinction is nonsensical: although Direct Action Plaintiffs provided specific examples of particularly egregious price increases, *see* Compl. ¶ 6 (describing price increases taken on Nitropress and Isuprel), Direct Action Plaintiffs allege throughout their complaints that Valeant's strategy of unsustainable price gouging implicated Valeant's entire product portfolio. Valeant does not (and cannot) legitimately contend that the only relevant price increases are those

involving products identified by name in the Complaint.  Just as Valeant's reliance on unsustainable price increases taken on unnamed products is unquestionably relevant to Direct Action Plaintiffs' claims regarding undisclosed "price gouging to create the appearance of organic growth" (Compl. ¶ 6), so, too, are PACs as one of the mechanisms by which Valeant recorded the benefits of those price increases.

Defendants' primary argument seems to be that Plaintiffs do not specifically say the words "price appreciation credits" in their complaints.  But the Federal Rules impose no such requirement.  *Rhone-Poulenc*, 1992 WL 394425, at *3 ("Relevancy is to be broadly construed for Rule 26(b) purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case.  Rather, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action.") (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978)).  Nor do the Federal Rules governing the scope of discovery prohibit parties from developing facts learned through discovery that are relevant to their claims.  *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) ("Like before, relevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense.") (citations and quotations omitted); *City of Rialto v. U.S. Dep't of Def.*, 492 F. Supp. 2d 1193, 1202 (C.D. Cal. 2007) (similar).

Valeant has previously attempted to block Direct Action Plaintiffs' attempts to take discovery related to Valeant's use of PACs, including by instructing Direct Action Plaintiffs not to question Valeant witnesses about the topic during deposition.  *See* Bonacorsi Decl., Ex. EE (November 11, 2020 Letter from Craig S. Waldman).  Direct Action Plaintiffs therefore seek an order authorizing discovery pertaining to Valeant's reliance on PACs—which are directly tied to,

and result directly from, price increases at the heart of the complaints—to report misleading revenue figures and directing Defendants Valeant and Mr. Pearson to respond fully to the Requests (73-95 for Valeant; 7-9 for Mr. Pearson) concerning PACs to the extent they refused to respond on relevance grounds. This topic is plainly relevant.[3]

In addition, Valeant should be compelled to amend its responses to Requests 74-77, each of which concerns the mechanism by which Valeant used and accounted for PACs under its DSA agreements. *See* Bonacorsi Decl., Ex. T at 38 (Request 74: "Admit that through at least 2015, Valeant's DSAs with drug wholesalers contained price appreciation clauses whereby Valeant was entitled to credits from such wholesalers for price increases on products held by the wholesalers."); *id.* at 38-39 (Request 75: "Admit that the PACs were calculated based on the wholesaler's inventory of the product subject to a price increase, multiplied by the amount of the price increase."); *id.* at 39 (Request 76: "Admit that PACs were used to offset fees Valeant would have otherwise owed to drug wholesalers under the DSAs."); *id.* at 39 (Request 77: "Admit that the use of PACs enabled Valeant to account for additional net revenue from previously sold products that were still held by wholesalers."). ███████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████ These responses are improper and must be amended; ███████████████████

---

[3]   In its letter to counsel for Direct Action Plaintiffs, Valeant argues that even if PACs fall within the scope of relevant discovery, they are not a proper subject of Requests for Admission because Requests for Admission should concern only those issues that would be raised at trial. Bonacorsi Decl., Ex. DD at 2. But Valeant's use of PACs will likely be a central issue at trial for the same reason PACs are relevant to Plaintiffs' claims: PACs are one of the primary mechanisms used by Valeant to hide from investors its reliance on price gouging rather than volume to sustain revenue growth. Indeed, these Requests seek to establish precisely how Valeant planned, took, and subsequently accounted for PACs, thus "narrow[ing] the issues for trial." *Langer*, 966 F.2d at 803 (explaining the purpose of Requests for Admission).

███████████████████████████████████████████████████

██████████ which amounts to "an evasion of the responsibility to either admit or deny a request

for admission." *Miller v. Holzmann*, 240 F.R.D. 1, 4 (D.D.C. 2006) ("The tautological 'objection'

that the finder of fact can read the document for itself to see if the quote is accurate is not a

legitimate objection."). *See also Whole Woman's Health*, 2020 WL 1028040, at *7 n.4 (claim that

the "document speaks for itself … is without merit"); *Diederich v. Dep't of the Army*, 132 F.R.D.

614, 617 (S.D.N.Y. 1990) (explaining a response that merely states that documents speak for

themselves is not acceptable).

Similarly, Mr. Pearson should be compelled to amend his response to Request 8 ("Admit

that You were aware that $110 million in Glumetza PACs were attributed by Valeant to products

other than Glumetza."). Bonacorsi Decl., Ex. U at 9. After objecting to the relevance of the

Glumetza PACs and asserting that the Request is "vague, ambiguous, and not reasonably

particular", Mr. Pearson claims he "lacks knowledge or information sufficient to admit or deny

Request No. 8." *Id.* This evasive answer is not a proper response to a question about Mr. Pearson's

awareness of a particular fact; either he was aware that the Glumetza PACs were allocated to other

products, or he was not. If Mr. Pearson's claim to lack knowledge about the PAC allocation were

defensible, he would have simply denied the Request. But Mr. Pearson cannot credibly claim

ignorance regarding the Glumetza PAC allocation. Nor can he credibly assert the Request is in

any way "vague" or "ambiguous." Just the opposite is true. █████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████ Accordingly, Mr. Pearson should be deemed to

have admitted Request 8.  *Kendrick v. Sullivan*, 1992 WL 119125, at *6 (D.D.C. May 15, 1992)

(ruling that a "particular request should be deemed admitted because the plaintiffs' answer is

inaccurate" where request accurately represented facts and there was no documentary support for

answer provided in response).[4]

## CONCLUSION

For the reasons stated above, Direct Action Plaintiffs respectfully request the Special

Master order the above-referenced Requests admitted or, in the alternative, compel Defendants

Valeant and Mr. Pearson to amend their responses to resolve the deficiencies described herein.

---

[4]   Even assuming Mr. Pearson's response is credible (it is not), Mr. Pearson fails to satisfy Rule
36 which requires that a party asserting lack of knowledge as a reason for failing to admit or deny
a request to "state" that they have made a "reasonable inquiry."  *See* Fed. R. Civ. P. 36(a).  Mr.
Pearson, who claimed to lack knowledge to answer this Request, should be ordered to amend his
response to this Request for this separate reason.

DATED:     Newark, New Jersey               CALCAGNI & KANEFSKY, LLP
           February 16, 2020

                                   By:     */s/ Eric T. Kanefsy*

                                           Eric T. Kanefsy
                                           Samuel Cornish
                                           One Newark Center
                                           1085 Raymond Blvd., 14th Floor
                                           Newark, New Jersey 07102
                                           Tel: (862) 397-1796
                                           Fax: (862) 902-5458
                                           Eric@ck-litigation.com
                                           samuel@ck-litigation.com

                                           QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP

                                           Robert Loigman (*pro hac vice*)
                                           Rollo Baker (*pro hac vice*)
                                           Kathryn Bonacorsi (*pro hac vice*)
                                           Jesse Bernstein (*pro hac vice*)
                                           Alexander Resar (*pro hac vice*)

                                           51 Madison Avenue, 22nd Floor
                                           New York, New York 10038
                                           Tel: (212) 849-7000
                                           Fax: (212) 849-7100
                                           robertloigman@quinnemanuel.com
                                           rollobaker@quinnemanuel.com
                                           kathrynbonacorsi@quinnemanuel.com
                                           jessebernstein@quinnemanuel.com
                                           alexanderresar@quinnemanuel.com