**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Master No. 3:15-cv-07658-MAS-LHG |
| THIS DOCUMENT RELATES TO:<br><br>16-cv-07321 (MAS) (LHG)<br>16-cv-07324 (MAS) (LHG)<br>16-cv-07494 (MAS) (LHG)<br>16-cv-07496 (MAS) (LHG)<br>16-cv-07497 (MAS) (LHG)<br>17-cv-06513 (MAS) (LHG)<br>17-cv-07636 (MAS) (LHG)<br>17-cv-12088 (MAS) (LHG)<br>18-cv-00089 (MAS) (LHG)<br>18-cv-00343 (MAS) (LHG)<br>18-cv-00383 (MAS) (LHG)<br>18-cv-00846 (MAS) (LHG)<br>18-cv-00893 (MAS) (LHG)<br>18-cv-01223 (MAS) (LHG)<br>18-cv-08595 (MAS) (LHG)<br>18-cv-08705 (MAS) (LHG)<br>18-cv-15286 (MAS) (LHG)<br>20-cv-07460 (MAS) (LHG)<br>20-cv-07462 (MAS) (LHG) | **MEMORANDUM OF LAW** |

**THE DIRECT ACTION PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' OBJECTION TO THE JANUARY 28, 2021 ORDER OF THE SPECIAL MASTER**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................1

RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........................2

      A.     Investors Bring Cases Beginning in 2015 to Seek Relief for the Tens of
            Billions of Dollars in Damages They Suffered Due to Defendants' Fraud .............2

      B.     The Court Denies Defendants' Motions to Dismiss the Direct Actions .................4

      C.     The Cases Are Coordinated, Discovery Recommences, and the Court
            Appoints the Special Master ...................................................................4

      D.     The Special Master Denies Defendants' Extension Request ...................................6

STANDARD OF REVIEW ............................................................................................6

ARGUMENT ..............................................................................................................7

I.     The Special Master Did Not Abuse His Discretion in Denying Defendants'
      Request for an Extension of the Fact Discovery Deadline ....................................7

II.    Defendants' Arguments for a Discovery Extension Are Meritless ...................................10

CONCLUSION.........................................................................................................14

## TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Hooker v. Novo Nordisk Inc.*,
   No. 16-cv-4562-MAS-TJB, 2019 WL 2521749 (D.N.J. June 19, 2019) ................................... 7

*United States v. Johnson & Johnson*,
   No. 12-cv-7758-MAS-LHG, 2019 WL 1519039 (D.N.J. Apr. 8, 2019) ................................... 7

**STATUTES AND COURT RULES**

15 U.S.C. § 78u-4(b)(3)(B) ................................................................................................. 11

Fed. R. Civ. P. 53 ................................................................................................................ 7, 10

Pursuant to this Court's September 10, 2019 Order (Case No. 15-cv-07658, Dkt. No. 484), the plaintiffs in the above-captioned actions (the "Direct Action Plaintiffs") respectfully submit this Memorandum of Law in opposition to Defendants' Objection to the January 28, 2021 Order of the Special Master (the "Special Master's Order").

## PRELIMINARY STATEMENT

Defendants' objection to the Special Master's Order should be denied because they do not even attempt to argue that the Special Master abused his discretion in denying their request for an extension of the discovery schedule. Nor could they. The Special Master – Judge Cavanaugh – was appointed to manage discovery in these cases against Valeant Pharmaceuticals International, Inc. (n/k/a Bausch Health Companies Inc.) ("Valeant") based on his significant experience as a United States District Judge and Magistrate Judge. Judge Cavanaugh has been efficiently managing pretrial proceedings in these matters for approximately eighteen months, including permitting adjustments to the discovery schedule when necessary. In connection with Defendants' most recent extension request, Judge Cavanaugh carefully considered Defendants' written submissions and heard oral argument from both Valeant's counsel and counsel for PricewaterhouseCoopers LLP ("PwC"). After listening to the parties' respective positions, Judge Cavanaugh found that an extension was not necessary or warranted given that there were still three months of fact discovery remaining. He also correctly recognized that Defendants could hijack these proceedings by seeking "request after request," which Defendants' Objection makes clear is their objective. Judge Cavanaugh's decision to deny Defendants' request was firmly rooted in a sound exercise of discretion.

Defendants' attempt to circumvent the Special Master's pretrial management of these cases should be rejected. Even if the standard of review were *de novo* rather than abuse of discretion, there is no basis for extending discovery. PwC's assertion that there is a stay of discovery in the

class action that prevents it from being subject to discovery in the Direct Actions is legally incorrect and, in any event, would be rendered moot by a decision from this Court denying PwC's objections to the Special Master's rulings with respect to class plaintiff's claims, which could happen any day. Moreover, Judge Cavanaugh has scheduled a status a conference for March 31, 2021, during which he can continue to manage the discovery process in these cases and reassess the need for any further extensions. The other "issues" raised by Defendants are purely of their own making – the fact that they have not more actively pursued plaintiff-side discovery in the Direct Actions until recently does not justify extending existing deadlines that have already been in place for months and that the Direct Action Plaintiffs have diligently endeavored to meet.

Defendants' proposed new case management schedule – which is not properly before this Court because it was never presented to the Special Master, who is vested with the authority to set discovery deadlines – reveals their true motivation for seeking an extension. Under Defendants' new proposal, fact discovery could go on *for years* because the parties would not be permitted to proceed to expert discovery until after fact discovery has been completed in all coordinated actions and this Court has denied every appeal that Defendants file from the Special Master's orders. Given that it is already more than five years since investors suffered tens of billions of dollars in losses as a result of Defendants' securities fraud, such delay tactics should not be countenanced.

## **RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

### A.   **Investors Bring Cases Beginning in 2015 to Seek Relief for the Tens of Billions of Dollars in Damages They Suffered Due to Defendants' Fraud**

Between 2013 and 2016, Valeant and its executives engaged in a massive securities fraud. (*See, e.g.*, *GMO Tr., et al. v. Valeant Pharm. Int'l Inc., et al.*, No. 18-cv-00089, Dkt. 1, ¶ 1 (D.N.J. Jan. 3, 2018).) Unbeknownst to investors, Defendants made material misrepresentations and failed to disclose material facts in order to: (a) conceal its reliance on Philidor Rx Services, LLC

("Philidor") and keep secret the existence of a network of specialty pharmacies whose sole purpose was to steer patients toward Valeant products; (b) artificially inflate Valeant's earnings by booking fictitious sales; and (c) mislead investors that Valeant's growth derived from organic volume increases rather than Valeant's unsustainable practice of drastically increasing drug prices. (*Id.* ¶¶ 1-10.) As the truth was gradually revealed to the market, the price of Valeant securities plummeted from over $250 per share in mid-2015 to under $25 per share by mid-2016, resulting in a market capitalization loss of almost $100 billion. (*Id.* ¶ 1.)

In the wake of the partial revelation of the fraud, several putative securities class actions were filed beginning in October 2015 against Valeant, its former and present directors and officers, its auditor (PwC), and the investment banks that marketed Valeant's securities to investors. These putative class actions were consolidated under the caption and docket number *In re Valeant Pharmaceuticals International, Inc. Securities Litigation*, No. 15-cv-07658 (the "Class Action").

In addition to the Class Action, scores of institutional and professional investors filed their own securities fraud actions (the "Direct Actions"), exercising their constitutional rights to exclude themselves from the class and to pursue their own remedies against Defendants. The majority of these investors sued only Valeant and its former officers. With respect to the Direct Action Plaintiffs that also sued PwC and the underwriters, the Special Master has since recommended the dismissal of those defendants.[1]

---

[1] On June 26, 2020, the Special Master recommended in *Hound Partners Offshore Fund, LP, et al. v. Valeant Pharms. Int'l Inc., et al.*, that this Court grant Defendants' motion to dismiss certain claims, including the only claims that plaintiffs in that action brought against PwC and the underwriters. (*See* No. 18-cv-08705, Dkt. 202.) Plaintiffs' objections to that recommendation (Dkt. 207) and defendants' motion to adopt the report and recommendation (Dkt. 205) are currently pending before the Court.

**B.**     **The Court Denies Defendants' Motions to Dismiss the Direct Actions**

This Court granted in part and denied in part Defendants' motions to dismiss the Class

Action on April 28, 2017.  (Case No. 15-cv-07658, Dkt. No. 217.)  Thereafter, Defendants moved

to partially dismiss the then-pending Direct Actions.  That motion was granted in part and denied

in part on January 12, 2018.  (*See, e.g.*, *Discovery Global Citizens Master Fund, Ltd., et al. v.*

*Valeant Pharmaceuticals International, Inc., et al.*, No. 16-cv-07321, Dkt. 72.)  Other motions to

dismiss later-filed Direct Actions were resolved over the course of 2018 and 2019.  (*See, e.g.*, *The*

*Boeing Company Employee Retirement Plans Master Trust and the Boeing Company Employee*

*Savings Plans Master Trust v. Valeant Pharmaceuticals International Inc., et al.*, No. 17-cv-

07636, Dkt. 103 (July 31, 2018); *BlackRock Global Allocation Fund, Inc., et al. v. Valeant*

*Pharmaceuticals International, Inc., et al.*, No. 18-cv-00343, Dkt. 48 (Sept. 14, 2018);

*Northwestern Mutual Life Insurance Co., et al. v. Valeant Pharmaceuticals International Inc., et*

*al.*, No. 18-cv-15286, Dkt. 52 (Sept. 10, 2019).)

The resolution of these motions lifted the automatic stay of discovery imposed on the

Direct Actions by virtue of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

**C.**     **The Cases Are Coordinated, Discovery Recommences, and the Court**
           **Appoints the Special Master**

On October 12, 2018, this Court entered a Case Management Order coordinating the Class

Action and the Direct Actions for pretrial purposes.  (Case No. 15-cv-07658, Dkt. No. 369.)  The

purpose of the Case Management Order was to "promote efficiency and judicial economy" by

coordinating discovery between the Class Action and the Direct Actions.  (*Id.*)  The Court

designated the Class Action as the "Lead Action" at that time so that there would be a "Lead

Docket" on which documents intended to apply to all actions could be filed.  (*Id.*)

-4-

Following extensive stays of discovery in these proceedings due to, among other things, the pendency of criminal proceedings involving a former Valeant employee and a former executive of Philidor, discovery began in earnest in mid-2019. Additionally, in September 2019, the parties to the Class Action and the Direct Actions agreed to the appointment of the Honorable Dennis M. Cavanaugh, U.S.D.J. (ret.) as Special Master to oversee discovery and to decide pretrial matters. (Case No. 15-cv-07658, Dkt. No. 484.) All parties agreed that Judge Cavanaugh was eminently qualified to manage discovery in these matters. (*Id.*) Accordingly, on September 10, 2019, this Court entered an Order appointing Judge Cavanaugh as Special Master. (*Id.*)

On September 30, 2019, the parties to the Class Action and the Direct Actions submitted a Joint Discovery Plan to the Special Master, which was entered by the Special Master on October 16 and entered by the Clerk on October 22, 2019. (Case No. 15-cv-07658, Dkt. No. 492.) In that Joint Discovery Plan, the parties proposed a fact discovery cutoff deadline of February 18, 2021.

In November 2019, the parties to the Class Action agreed to settle the Class Action with respect to all Defendants except for PwC. This settlement left the Direct Actions Plaintiffs as the only investors with securities fraud claims against Valeant and its former executives. The settlement of the Class Action was preliminarily approved by the Special Master on January 23, 2020. (Case No. 15-cv-07658, Dkt. No. 510.) The Special Master issued a Report and Recommendation finally approving the settlement of the Class Action on June 15, 2020. (Case No. 15-cv-07658, Dkt. No. 575.) In the wake of the Class Action settlement, parties to the Direct Actions pressed forward with discovery, notwithstanding the challenges presented by the onset of a global pandemic.

On March 18, 2020, the parties stipulated to a revised discovery schedule that pushed out some interim deadlines but retained the fact discovery cutoff deadline of February 18, 2021. (Case

No. 15-cv-07658, Dkt. No. 529.)   The parties substantially completed document production by June 5, 2020, in accordance with that schedule (as extended by the Court's Standing Order 2020-09).   On October 13, 2020, the parties again stipulated to a revised discovery schedule that extended the fact discovery cutoff to May 4, 2021.   (Case No. 15-cv-07658, Dkt. No. 634.)   That is the operative scheduling order governing the Direct Actions and the Class Action's residual claims against PwC.

The parties to the Direct Actions have exchanged millions of pages of documents, served interrogatories and requests for admission, and taken depositions of numerous fact witnesses.   The parties have scheduled the depositions of additional fact witnesses in March and April, before the deadline for completion of fact discovery.   The parties are therefore on track to complete fact discovery on schedule, and the Direct Action Plaintiffs are prepared to meet all existing deadlines.

### D.    The Special Master Denies Defendants' Extension Request

In January 2021, Defendants proposed a 60-day extension of the discovery schedule.   In light of the fact that the parties are on track to complete discovery under the existing schedule, all of the plaintiffs to every Direct Action opposed the request.   The parties submitted letters to the Special Master on the issue, and the Special Master held a Zoom conference to hear the parties' respective positions.   At the conclusion of that hearing, Judge Cavanaugh exercised his sound discretion to deny Defendants' request.

### STANDARD OF REVIEW

Pursuant to this Court's September 10, 2019 Order appointing Judge Cavanaugh as Special Master to manage pretrial matters, the Special Master has the authority to decide all discovery disputes.   (Case No. 15-cv-07658, Dkt. No. 484, ¶ 9.)   Judge Cavanaugh's rulings on procedural matters are subject to an abuse-of-discretion standard of review.   (*Id.* ¶ 11 ("Appeals of an order by the Special Master . . . shall be reviewed according to the following standards of review: . . .

rulings on procedural and non-dispositive matters shall be reviewed for abuse of discretion.").) Indeed, under Rule 53 of the Federal Rules of Civil Procedure, "[u]nless the appointing order establishes a different standard of review, ***the court may set aside a master's ruling on a procedural matter only for an abuse of discretion***." Fed. R. Civ. P. 53(f)(5) (emphasis added).

Discovery rulings are rarely overturned on appeal because they are entitled to "great deference." *United States v. Johnson & Johnson*, No. 12-cv-7758-MAS-LHG, 2019 WL 1519039, at *2-3 (D.N.J. Apr. 8, 2019) (Shipp, J.). This "deferential standard is particularly appropriate" in a case where the arbiter of discovery has "managed the case from the outset, and thus has a thorough knowledge of the proceedings." *Id.* at *3. Accordingly, to establish an abuse of discretion, the objectors must establish that the discovery master's or magistrate judge's discovery ruling was "arbitrary, fanciful[,] or unreasonable." *Id.* (alteration in original); *see also Hooker v. Novo Nordisk Inc.*, No. 16-cv-4562-MAS-TJB, 2019 WL 2521749, at *2 (D.N.J. June 19, 2019) (Shipp, J.) (same). "[D]iscretion is abused only where no reasonable [person] would take the view adopted." *Johnson & Johnson*, 2019 WL 1519039, at *3 (citation omitted).

## ARGUMENT

### I.      The Special Master Did Not Abuse His Discretion in Denying Defendants' Request for an Extension of the Fact Discovery Deadline

Defendants have failed to establish that Judge Cavanaugh abused his discretion in denying their extension request. In fact, Defendants conspicuously fail to even cite or reference either Federal Rule of Civil Procedure 53 or this Court's September 10, 2019 Order, both of which clearly state that the Special Master's Order is subject to review only for an abuse of discretion.

That standard of review presents an insurmountable hurdle here. Judge Cavanaugh is intimately familiar with the issues being litigated in the Valeant securities litigation, having served as Special Master for almost eighteen months, during which time he approved the settlement of

the Class Action, granted several modifications to the case management schedule, issued Reports and Recommendations on a host of dispositive motions, and held numerous case management conferences.

Judge Cavanaugh properly exercised his discretion in denying Defendants' request for a 60-day extension of fact discovery. He correctly found that an extension is not required at this time given that there is sufficient time left in the existing schedule to complete discovery. (Defendants' Objection to the January 28, 2021 Order of the Special Master ("Defs. Br."), Ex. C at 39:20-21.). He also rightly pointed out that if he continued to grant extension requests such as these, Defendants would continue to seek to delay resolution of these cases. (*Id.* at 39:23-24 ("There [are] going to be requests after requests.").) And Judge Cavanaugh properly observed that with the quality and quantity of attorneys involved in these cases, discovery can be completed without further extensions of the schedule. (*Id.* at 39:24-40:5 ("I think I have been very liberal with respect to discovery. We have lots of good lawyers here. You are just going to have to make do and get done what you are supposed to be done with.").) As noted above, the parties are already on track to do so.

Moreover, to address any issues concerning the parties' obtaining additional discovery from PwC, Judge Cavanaugh scheduled another case management conference for March 31, 2021, which is more than a month prior to the close of fact discovery. (*Id.* at 58:21-61:15.) Judge Cavanaugh further stated that he was open to holding another status conference sooner should rulings be issued with respect to PwC's pending objections to his Reports and Recommendations issued in the Class Action. (*Id.*) Simply put, Judge Cavanaugh is carefully managing these cases to ensure that discovery is timely completed without any party being deprived of the opportunity to take discovery that it has timely requested.

Defendants cannot claim that they were denied an adequate opportunity to comprehensively present their extension request to Judge Cavanaugh. Nor can they contend that Judge Cavanaugh resolved the parties' dispute over the proposed extension without fully considering all of the parties' positions. On December 1, 2020, Judge Cavanaugh set a case management conference for January 27, 2021, and directed the parties to file letter submissions by January 25, 2021, to address any issues that they wished to raise. (*See* Exhibit A hereto.) Consistent with the Special Master's instructions, all of the parties submitted comprehensive letters on January 25, 2021. Counsel for Valeant, its former executives, and the underwriters submitted a nine-page letter setting forth all of the reasons why they were requesting a 60-day extension of existing deadlines. Counsel for PwC submitted its own six-page letter requesting the extension. On January 27, 2021, the parties appeared before Judge Cavanaugh for a Zoom conference that lasted almost an hour. During that conference, Judge Cavanaugh afforded counsel for Valeant and counsel for PwC the opportunity to speak extensively about their asserted bases for the extension. After hearing from all of the parties, Judge Cavanaugh orally issued his ruling denying the extension request, which was followed by a written order filed with the Court the next day. This process was fair, deliberate, and certainly does not constitute an abuse of discretion.

Defendants' request that the Court issue an Order reflecting a new case management schedule constitutes an improper end-run around the Special Master's authority and is a violation of this Court's September 10, 2019 Order. (*See* Defs. Br. at 4-5.) The September 10, 2019 Order vests Judge Cavanaugh with the authority to "decide all discovery disputes and non-dispositive issues and issue appropriate written orders regarding the same." (Case No. 15-cv-07658, Dkt. No. 484, ¶ 9.) Although the parties have the right to object to Judge Cavanaugh's rulings, they cannot do what Defendants are attempting to do here, which is to ask the District Court to issue a new

scheduling order that was never proposed to Judge Cavanaugh.   Defendants asked Judge Cavanaugh for a 60-day extension of existing deadlines, which he appropriately denied.  (Defs. Br. Ex. C at 12:16-13:11, 16:4-12, 39:20-40:5.)   At best, Defendants may object to the Special Master's ruling on the basis that he abused his discretion in denying their 60-day extension request. *See* Fed. R. Civ. P. 53(f)(5).  However, Defendants have gone one step further, requesting that this Court completely reform the discovery schedule based on a proposed schedule that they never shared with plaintiffs and did not present to Judge Cavanaugh.  That improper request should not be entertained.

## II.   **Defendants' Arguments for a Discovery Extension Are Meritless**

The issue before the Court is not whether Defendants are entitled to a 60-day extension of the discovery schedule, but rather whether Judge Cavanaugh abused his discretion in denying their request.  As set forth above, he did not.  However, even viewing Defendants' arguments *de novo* – which would be improper – their arguments fail.

*First*, Defendants claim that fact discovery cannot close in the Direct Actions without the parties having been provided the opportunity to obtain discovery from PwC or the class action plaintiff.  (Defs. Br. at 7-8, 12-13.)  This is incorrect.  Discovery of the class action plaintiff is irrelevant to the Direct Actions, and there is still plenty of time to complete discovery of PwC.

Further, any discovery stay imposed by the PLSRA by virtue of PwC's motions in the Class Action does not apply to the Direct Actions.  Although the Special Master's Order states that no discovery shall be taken of the class action plaintiff and PwC while PwC's objections to the denial of its motion for judgment on the pleadings and the granting of the class action plaintiff's motion for leave to amend the Class Action complaint remain pending with the Court, PwC's objections could be resolved by the Court any day.  To the extent that PwC's objections to the Special Master's decisions issued in the Class Action have not been resolved by this Court by the end of

March, the Direct Action Plaintiffs will request that the Special Master allow them to take discovery of PwC prior to the May 4, 2021 fact discovery cutoff. The Special Master may allow them to do so either by ruling that any PSLRA stay applicable to the Class Action does not apply to the Direct Actions, by lifting the PSLRA stay pursuant to 15 U.S.C. § 78u-4(b)(3)(B), or by decoupling the coordination of the class action plaintiff's residual claim against PwC from the Direct Actions Plaintiffs' claims against Valeant and the individual defendants.

PwC, for its part, is improperly attempting to use the PSLRA as both a sword and a shield. It has participated fully in discovery to date, attending every deposition that has taken place, frequently asking questions of the witnesses. But at the same time, PwC argues that it should not *itself* be subject to the burden and expense of discovery while its objection to the denial of its motion for judgment on the pleadings in the Class Action remains undecided by this Court. PwC cannot have it both ways. The purpose of the PSLRA stay is to prevent the parties from having to engage in costly discovery until a securities fraud complaint has survived a motion to dismiss. The Direct Actions have survived motions to dismiss, and the Direct Action Plaintiffs thus have the right to obtain discovery from PwC no matter how PwC's objections in the Class Action are resolved.[2] PwC should not be permitted to use its baseless objections to the Special Master's rulings in the Class Action to cause an indefinite delay of the Direct Actions.

Additionally, Defendants' contention that they require discovery from the class action plaintiff in order to defend the Direct Actions is pure sophistry. While naturally there are

---

[2] Even assuming this Court adopts the Special Master's report and recommendation dismissing the claims against PwC in *Hound Partners Offshore Fund, LP, et al. v. Valeant Pharms. Int'l Inc., et al.*, plaintiffs in that case will continue to pursue discovery against PwC as a third party, putting them in the same position as plaintiffs in the other Direct Actions, who are already seeking discovery from PwC as a third party. The pendency of *Hound* plaintiffs' objections therefore provides no grounds for yet another extension.

similarities between the Class Action complaint and the Direct Action complaints because they are based on the same securities fraud, the complaints in the Direct Actions are not based on the witness interviews or the forensic accounting investigation conducted by class counsel, of which Defendants now claim they need discovery.  Discovery of the work conducted to draft the Class Action complaint has no relevance to any of the Direct Actions.  The defendants in the Direct Actions have settled the Class Action, and that settlement has been approved by the Court.  Defendants cannot hold up discovery regarding a settled action as a basis to delay the progress of other actions prosecuted by different counsel on behalf of different clients.

*Second*, Defendants improperly claim that the pendency of discovery disputes means that fact discovery will not be completed on time.  (Defs. Br. at 8-9.)  As Defendants correctly point out, however, briefing on those disputes is scheduled to be completed by March 19.  That leaves six weeks of fact discovery for the Special Master to rule on those motions and for any discovery to be produced in response to those rulings.  In any event, it is ultimately the prerogative of the parties bringing a discovery motion – thus far, only the Direct Action Plaintiffs have done so – to determine whether the resolution of that motion is necessary to complete discovery.  Plaintiffs do not believe discovery should be extended indefinitely to account for rulings on discovery motions (as well as any objections to those rulings).[3]  If necessary, the Special Master could allow a discrete amount of fact discovery resulting from those motions to proceed during the expert discovery phase.

---

[3] Defendants point out that the non-prevailing parties may object to the Special Master's rulings on those issues.  However, nothing in this Court's September 10, 2019 Order allows a party to refuse to comply with the Special Master's discovery rulings during the pendency of an objection, which in any event are subject to an abuse-of-discretion standard on review.

Defendants' position interferes with the Special Master's authority to manage discovery. The Special Master denied Defendants' request for an extension in the same order where he set the parties' briefing schedule on the discovery motions. This implicitly suggests that the Special Master contemplated that resolution of the motions and any attendant additional discovery can be completed by the May 4, 2021 deadline. As noted, Judge Cavanaugh scheduled a status conference for March 31, 2021, during which he may reassess whether that remains the case. There is simply no reason to take that decision out of the Special Master's hands.

*Third*, Defendants claim that they cannot complete discovery of third-party investment advisers by May 4, 2021. (Defs. Br. at 9.) But this is a problem of Defendants' own making. They have known about the existence of these third-party investment advisors since initial disclosures were served in the Direct Actions in 2018, yet they elected not to actively pursue discovery from these third parties. Defendants should not now be rewarded for their procrastination.

*Fourth*, Defendants assert that the Direct Action Plaintiffs noticed additional depositions between February 5 and February 7, 2021. (Defs. Br. at 9-10.) There was nothing improper about these deposition requests. Under the governing Deposition Protocol, parties are required to provide twenty days' notice of a deposition. (Case No. 15-cv-07658, Dkt. No. 510, § II.E.) The requests with which Defendants take issue were made almost three months prior to the close of fact discovery. Moreover, Defendants' assertion that these depositions cannot be accommodated by the current schedule is belied by the fact that most of them have already been scheduled.

*Finally*, Defendants claim that plaintiff-side discovery has not commenced in three Direct Actions where motions to dismiss are still pending. (Defs. Br. at 10, 14.) Once again, that is a situation of Defendants' own making. Counsel in two of these three actions have been actively

participating in coordinated discovery.  If Defendants wanted these three Direct Actions to remain

coordinated with the other Direct Actions, they could have agreed to proceed with plaintiff-side

discovery notwithstanding the pending motions to dismiss.  That Defendants have chosen not to

do so does not give them license to seek an extension of discovery in dozens of other cases where

motions to dismiss were resolved, in some cases more than three years ago.

In any event, discrete discovery in a few cases should not dictate the schedule governing

claims filed years ago by scores of other plaintiffs.  And if necessary, the Special Master could

allow depositions of those few additional plaintiffs to occur during the expert discovery period.

## **CONCLUSION**

For the reasons stated above, the Direct Action Plaintiffs respectfully request that the Court

deny Defendants' Objection to the Special Master's January 28, 2021 Order.

Dated:  February 24, 2021

**ROLNICK KRAMER SADIGHI LLP**

/s/ Lawrence M. Rolnick
Lawrence M. Rolnick
Marc B. Kramer
Sheila A. Sadighi
Michael J. Hampson
1251 Avenue of Americas
New York, NY 10020
Telephone: 212.597.2800
lrolnick@rksllp.com
mkramer@rksllp.com
ssadighi@rksllp.com
mhampson@rksllp.com

*Counsel for Plaintiffs*
Case Nos. 16-cv-07321, 16-cv-07324,
16-cv-07494, 16-cv-07496, 16-cv-07497,
18-cv-00089, 18-cv-00893, and
18-cv-01223

**LABATON SUCHAROW LLP**

/s/ Serena P. Hallowell
Serena P. Hallowell
Jonathan Gardner
Eric J. Belfi
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477

*Counsel for Plaintiffs*
Case Nos. 17-cv-07636, 18-cv-08595, 18-cv-15286

**KASOWITZ BENSON TORRES LLP**

/s/ Stephen W. Tountas
Stephen W. Tountas
One Gateway Center
Suite 2600
Newark, NJ 07102
Telephone: (973) 645-9462
Fax: (973) 643-2030

*Local Counsel for Plaintiffs*
Case Nos. 17-cv-07636, 18-cv-08595, and 18-cv-15286

**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**

/s/ *Rollo C. Baker*
Robert S. Loigman
Rollo C. Baker
Kathryn Bonacorsi
Jesse Bernstein
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Counsel for Plaintiffs*
Case No. 18-cv-08705

**CALCAGNI & KANEFSKY, LLP**

/s/ *Eric T. Kanefsy*
Eric T. Kanefsky
Samuel S. Cornish
One Newark Center
1085 Raymond Boulevard, 14th Floor
Newark, NJ 07102
Telephone: (862) 772-8149
Facsimile: (862) 902-5458

*Local Counsel for Plaintiffs*
Case No. 18-cv-08705

**DIETRICH SIBEN THORPE LLP**

/s/ *David A. Thorpe*
David A. Thorpe *(pro hac vice)*
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Telephone: (310) 300-8450
Facsimile:  (310) 300-8041
david@dstlegal.com

Matthew P. Siben *(pro hac vice)*
500 Australian Avenue South, Ste. 637
West Palm Beach, FL 33401
Telephone: (561) 820-4882
Fax: (561) 820-4883
matthew@dstlegal.com

*Counsel for Plaintiff*
Case No. 17-cv-06513

**FLEISCHMAN BONNER & ROCCO LLP**

/s/ *Patrick L. Rocco*
Patrick L. Rocco
447 Springfield Ave., Second Floor
Summit, NJ 07901
Telephone:  (908) 516-2043
Facsimile:  (908) 516-2049
procco@fbrllp.com

*Local Counsel for Plaintiff*
Case No. 17-cv-06513

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

/s/ Michael J. Miarmi
Steven E. Fineman (admitted *pro hac vice*)
Daniel P. Chiplock (admitted *pro hac vice*)
Michael J. Miarmi (admitted *pro hac vice*)
Sharon M. Lee (admitted *pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel.: (212) 355-9500
Fax: (212) 355-9592
sfineman@lchb.com
dchiplock@lchb.com
mmiarmi@lchb.com
slee@lchb.com

Richard M. Heimann (admitted *pro hac vice*)
Bruce W. Leppla (admitted *pro hac vice*)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel.: (415) 956-1000
Fax: (415) 956-1008
rheimann@lchb.com
bleppla@lchb.com

*Counsel for Plaintiffs*
Case No. 18-cv-00343

**BRESSLER, AMERY & ROSS, P.C.**

/s/ David J. Libowsky
David J. Libowsky
325 Columbia Turnpike, Suite 301
Florham Park, NJ 07932
Tel.: (973) 514-1200
Fax: (973) 514-1660

*Local Counsel for Plaintiffs*
Case No. 18-cv-00343

**HUNG G. TA, ESQ. PLLC**

/s/ JooYun Kim
JooYun Kim
Hung G. Ta (admitted *pro hac vice)*
250 Park Avenue, Seventh Floor
New York, NY 10177
Tel: (646) 453-7288
jooyun@hgtlaw.com
hta@hgtlaw.com
natalia@hgtlaw.com

*Counsel for Plaintiffs*
Case Nos. 18-cv-00383 and 18-cv-00846

**SAFIRSTEIN METCALF LLP**

Peter Safirstein
Elizabeth Metcalf (*pro hac vice* forthcoming)
1250 Broadway, 27th Floor
New York, NY 10001
Tel: (212) 201-2845

*Counsel for Plaintiffs*
Case No. 18-cv-00846

**GRANT & EISENHOFER, P.A.**

*/s/ Daniel L. Berger*
Daniel L. Berger (admitted *pro hac vice*)
Caitlin M. Moyna (admitted *pro hac vice*)
Jonathan D. Park (admitted *pro hac vice*)
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8500
dberger@gelaw.com
cmoyna@gelaw.com
jpark@gelaw.com

*Counsel for Plaintiffs*
Case Nos. 17-cv-12088, 20-cv-07460, and 20-cv-04762

**LITE DEPALMA GREENBERG, LLC**

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Fax: (973) 623-0858

*Local Counsel for Plaintiffs*
Case Nos. 17-cv-12088, 20-cv-07460, and 20-cv-04762