# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION** | Civil Action No. 15-7658 |
| | JUDGE MICHAEL A. SHIPP |
| | JUDGE LOIS H. GOODMAN |
| THIS DOCUMENT RELATES TO: | JUDGE DENNIS CAVANAUGH, RET. SPECIAL MASTER |
| 15-cv-07658 (MAS) (LHG) | |
| 16-cv-07321 (MAS) (LHG) | |
| 16-cv-07324 (MAS) (LHG) | |
| 16-cv-07494 (MAS) (LHG) | |
| 16-cv-07497 (MAS) (LHG) | |
| 17-cv-06513 (MAS) (LHG) | |
| 17-cv-07636 (MAS) (LHG) | |
| 17-cv-12088 (MAS) (LHG) | |
| 18-cv-00089 (MAS) (LHG) | |
| 18-cv-00343 (MAS) (LHG) | |
| 18-cv-00383 (MAS) (LHG) | |
| 18-cv-00846 (MAS) (LHG) | |
| 18-cv-00893 (MAS) (LHG) | |
| 18-cv-01223 (MAS) (LHG) | |
| 18-cv-08595 (MAS) (LHG) | |
| 18-cv-08705 (MAS) (LHG) | |
| 18-cv-15286 (MAS) (LHG) | |
| 20-cv-07460 (MAS) (LHG) | |
| 20-cv-07462 (MAS) (LHG) | |

## VALEANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER TO PRECLUDE THE DEPOSITION OF JOSEPH C. PAPA

| | |
|---|---|
| Richard Hernandez | Paul C. Curnin (*pro hac vice* forthcoming) |
| McCARTER & ENGLISH, LLP | Craig S. Waldman (*pro hac vice* forthcoming) |
| Four Gateway Center | SIMPSON THACHER & BARTLETT LLP |
| 100 Mulberry Street | 425 Lexington Avenue |
| Newark, New Jersey 07102 | New York, NY 10017-3954 |
| Telephone: (973) 848-8615 | Telephone: (212) 455-2000 |
| Facsimile: (973) 297-6615 | Facsimile: (212) 455-2502 |

*Attorneys for Valeant Pharmaceuticals International, Inc.*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 1

        A.      Plaintiffs' Allegations ............................................................................ 1

        B.      Mr. Papa Joins Valeant .......................................................................... 2

        C.      Plaintiffs' Request to Depose Mr. Papa ................................................ 3

        D.      Plaintiffs Have Already Taken, or Are Scheduled To Take, Depositions on
                the Issues on Which They Propose to Depose Mr. Papa ........................ 4

III.    ARGUMENT ....................................................................................................... 4

        A.      Mr. Papa's Views on the Company's Past and Its Remediation Efforts Do
                Not Warrant Taking His Deposition ...................................................... 5

                1.      Mr. Papa Has No Personal or Unique Knowledge About the State
                        of Valeant During the Relevant Period ...................................... 5

                2.      Any Relevant Information About the State of Valeant Has Been, or
                        May Be, Obtained Through Other, Less Intrusive Means .......... 7

        B.      Mr. Papa's Purported Conversations With Opt-Out Plaintiffs Are
                Irrelevant ............................................................................................... 8

IV.     CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Affinity Labs of Tx. v. Apple, Inc.*,
2011 WL 1753982 (N.D. Cal. 2011) ........................................................................ 9

*Black Card, LLC v. VISA U.S.A., Inc.*,
2016 WL 7325665 (D. Wyo. Dec. 12, 2016) ......................................................... 6, 8

*Cf. Ford Motor Co. v. Edgewood Props., Inc.*,
2011 WL 677331 (D.N.J. Feb. 15, 2011) ............................................................... 10

*Ciarrocchi v. Unum Grp.*,
2009 WL 10676631 (D.N.J. Aug. 27, 2009) .......................................................... 6, 8

*EchoStar Satellite, LLC v. Splash Media Partners, L.P.*,
2009 WL 1328226 (D. Col. May 11, 2009) ............................................................ 5, 6

*Harris v. Comp. Assoc. Intern., Inc.*,
204 F.R.D. 44 (E.D.N.Y. 2001) .................................................................................. 8

*Koken v. Lexington Ins. Co.*,
2005 WL 6051364 (E.D. Pa. July 18, 2005) ............................................................. 7

*Nucap Inds. Inc. v. Robert Bosch LLC*,
2017 WL 6059770 (N.D. Ill. 2017) ............................................................................ 7

*Reif v. CNA*,
248 F.R.D. 448 (E.D. Pa. 2008) ................................................................................. 6

*Roman v. Cumberland Ins. Group*,
2007 WL 4893479 (E.D. Pa. Oct. 26, 2007) ............................................................. 7

*United States ex rel. Galmines v. Novartis Pharm. Corp.*,
2015 WL 4973626 (E.D. Pa. Aug. 20, 2015) ............................................................ 5

*Younes v. 7-Eleven, Inc.*,
2015 WL 12844446 (D.N.J. Aug. 19, 2015) .......................................................... 4, 6

## I.      INTRODUCTION

Defendant Valeant Pharmaceuticals International, Inc., n/k/a Bausch Health Companies, Inc. ("Valeant" or the "Company"), respectfully moves for a protective order precluding plaintiffs in the above-captioned opt-out actions ("Plaintiffs") from deposing the Company's current Chief Executive Officer Joseph C. Papa.  The law imposes a heavy burden to justify "apex depositions" of high ranking executives, which Plaintiffs cannot carry here.  Mr. Papa, who joined the Company after the relevant events in these actions, has no unique, personal knowledge about matters relevant to these actions.  Plaintiffs are in the midst of deposing over a dozen current and former Valeant executives and employees who were present for the events at issue in these cases and possess firsthand knowledge of the issues.  These deponents include the CEO, CFO, and Controller from the relevant time.  Defendants have also produced a vast number of documents, all of which provide better—and less intrusive—sources for the information sought.  Plaintiffs have not articulated, and cannot articulate, a basis for their request to depose Mr. Papa that satisfies the high standard for authorizing depositions of apex witnesses. The Court should therefore grant a protective order precluding Plaintiffs from taking Mr. Papa's deposition.

## II.     FACTUAL BACKGROUND

Valeant assumes the Court's familiarity with the factual background of the case and limits its discussion to facts directly relevant to its current motion.

### A.      Plaintiffs' Allegations

Plaintiffs in these coordinated cases are sophisticated investment funds that purchased Valeant securities no later than April 15, 2016.  Plaintiffs allege that Defendants artificially inflated the price of those securities by misrepresenting (1) the extent to which volume contributed to Valeant's revenue growth; (2) Valeant's relationship with the specialty pharmacy

Philidor Rx Services, LLC; (3) Valeant's financials and compliance with Generally Accepted Accounting Principles ("GAAP"); and (4) the adequacy of Valeant's controls. Complaint ¶¶ 287-305.[1] The last misstatement alleged in the Complaint was made on October 30, 2015.

Plaintiffs' cases thus involve events that occurred before Mr. Papa joined Valeant in May 2016:

- Plaintiffs' "volume" allegations revolve around Valeant's purported misrepresentation of the extent to which Valeant's revenue growth from January 1, 2012 through September 30, 2015, was reliant on price increases. *Id.* ¶¶ 101-04.

- Valeant severed its relationship with Philidor on October 30, 2015 and Philidor announced it was shutting down the same day. *Id.* ¶ 198. Valeant restated $58 million of revenues related to Philidor on February 22, 2016. *Id.* ¶¶ 167-68. Thus, events involving Philidor plainly predate May 2016.

- Plaintiffs claim Valeant's Forms 10-Q relating to Q3 2013, Q1 2015, and Q2 2015 and the Form 10-K for year-end 2014 failed to comply with GAAP. *Id.* ¶¶ 204-05. The latest of these filings was made in July 2015, and any restatement of these financial statements was complete no later than the issuance of Valeant's 2015 10-K on April 29, 2016.

- Finally, Plaintiffs allege that Valeant misstated the effectiveness of its internal controls. These alleged overstatements began with the 2014 10-K, *id.* ¶ 208, and continued through Q3 2015 10-Q, *id.* ¶ 214. Valeant addressed these material weaknesses in an 8-K filed on March 21, 2016. *Id.* ¶ 217.

No operative complaint alleges a misstatement by Valeant after Mr. Papa joined the Company on May 3, 2016. In fact, 10 of the complaints, including all filed by clients of Rolnick Kramer Sadighi LLP, do not mention Mr. Papa's name. Additionally, every pending claim relates to securities purchases from April 15, 2016 and before.

## B.   Mr. Papa Joins Valeant

On March 21, 2016, Valeant announced that its CEO J. Michael Pearson would be departing the Company. Exhibit D. Valeant announced the appointment of Mr. Papa as CEO

---

[1] All cites to "Complaint" are to the Complaint filed January 22, 2018 in *Brahman v. Valeant Pharmaceuticals International, Inc.*, Case No. 3:18-0893 (Dkt. No. 1).

and Chairman of the Board on April 25, 2016, Exhibit E, and he assumed those roles on May 3, 2016, Exhibit F.  Mr. Papa spoke at the May 23, 2016 UBS Global Healthcare Conference.  His comments included calling Valeant a "great turnaround opportunity" in spite of some "question marks" and the need for "additional . . . controls."[2]  He also offered public commentary on Valeant's earnings reports, as had its prior CEO, Mr. Pearson.

      **C.**      **Plaintiffs' Request to Depose Mr. Papa**

Plaintiffs requested to depose Mr. Papa on February 7, 2021.  Exhibit A.  In response, counsel for Valeant wrote to counsel for Plaintiffs requesting that Plaintiffs withdraw their request to depose Mr. Papa and explaining that a deposition of Mr. Papa was not warranted due his lack of unique, relevant knowledge of the subject matter of the case.  Exhibit B.  Plaintiffs responded with a letter rejecting Valeant's request.  Unable to clearly articulate the topics on which Mr. Papa allegedly has personal and unique knowledge, Plaintiffs presented a hodge-podge of potential topics that can be grouped into two categories: (1) Mr. Papa's analysis of Valeant, specifically his "diligence" before taking the CEO job and his "efforts to remediate" alleged pre-existing issues at the Company; and (2) Mr. Papa's purported meetings "with numerous investors, including certain of the Direct Action Plaintiffs" on May 23, 2016.  Exhibit C.

Counsel for the parties held a telephonic meet and confer about Plaintiffs' request on February 18, 2021.  The parties were unable to reach an agreement and Valeant subsequently wrote to the Special Master on February 26, 2021 for permission to move for a protective order. The Special Master approved that request on March 1, 2021.

---

[2] The full transcript of Mr. Papa's remarks is attached as Exhibit G.

**D.   Plaintiffs Have Already Taken, or Are Scheduled To Take, Depositions on the Issues on Which They Propose to Depose Mr. Papa**

Plaintiffs have taken, or are scheduled to take, the depositions of over a dozen current and former high-ranking Valeant executives.  Over the next several weeks, Plaintiffs will take depositions including: former Valeant Executive Vice President and member of the Office of the CEO Robert L. Rosiello (March 11); former Valeant Executive Vice President, Company Group Chairman, and member of the Office of the CEO Ari S. Kellen (April 6); Valeant's former CFO Howard Schiller (April 14); Valeant's former Controller Tanya Carro (April 19); the former Chairman of Valeant's Board of Directors Robert Ingram (April 20); and Valeant's former CEO J. Michael Pearson (April 28).  These witnesses were all at the Company during the relevant period and are the individuals alleged to have made the misstatements, prepared the SEC filings, and participated in the investor presentations at issue.  Mr. Papa, on the other hand, joined the Company after all the relevant events concluded, and no pending complaint alleges any improper conduct by the Company after Mr. Papa joined it.  He simply has no unique, personal knowledge about matters relevant to these actions.

## III.   ARGUMENT

Courts in the Third Circuit consider two factors when assessing whether the deposition of a high-ranking corporate officer, executive, or manager is appropriate: "(1) whether the executive or top-level employee has personal or unique knowledge on relevant subject matters; and (2) whether the information sought can be obtained from lower-level employees or through less burdensome means, such as interrogatories."  *Younes v. 7-Eleven, Inc.*, 2015 WL 12844446, at *2 (D.N.J. Aug. 19, 2015).  "[T]he apex doctrine . . . appl[ies] a rebuttable presumption that a high-level official's deposition represents a significant burden upon the deponent and that this burden is undue absent the two factors set forth in the apex doctrine, which go to the lack of a

more convenient, less burdensome, and less expensive alternative." *United States ex rel.*

*Galmines v. Novartis Pharm. Corp.*, 2015 WL 4973626, at *2 (E.D. Pa. Aug. 20, 2015).

Plaintiffs cannot demonstrate a need to depose Mr. Papa under either of these criteria.

     **A.**     **Mr. Papa's Views on the Company's Past and Its Remediation Efforts Do Not Warrant Taking His Deposition**

          **1.**     **Mr. Papa Has No Personal or Unique Knowledge About the State of Valeant During the Relevant Period**

Mr. Papa possesses no personal or unique knowledge about the issues relevant to this

litigation. These cases concern alleged conduct by the Company on or before April 15, 2016,

and Mr. Papa did not join the Company until the next month. Everything Mr. Papa learned about

the Company's operations before he joined is information that can be readily obtained from other

deponents who were actually employed by the Company during the relevant time period.

When a party "seeks to depose a high level executive removed from the daily subjects of

the matter in litigation, the party seeking discovery must first demonstrate that the proposed

deponent has 'unique personal knowledge' of the matters in issue." *EchoStar Satellite, LLC v.*

*Splash Media Partners, L.P.*, 2009 WL 1328226, at *2 (D. Col. May 11, 2009). Plaintiffs

propose to depose Mr. Papa about several topics related to the state of Valeant at the time he

joined the Company, including: his diligence of the Company before taking the job; his

"question marks" around Philidor and drug pricing; and organizational controls, including

Valeant's acknowledgement of an "improper tone at the top" during Mr. Pearson's tenure.

Exhibit C. But Plaintiffs misstate the standard in asserting that "[i]t would have been impossible

for Mr. Papa to discuss those issues without personally becoming aware of their causes." *Id.*

Any knowledge that Mr. Papa had on these topics was not personal knowledge garnered from

firsthand experience during the relevant period; Mr. Papa necessarily would have learned such

information from others present at the relevant events. As Plaintiffs admit, it was learned

through "'diligence' and 'off the record'" conversations after the fact. *Id.* Courts routinely grant

protective orders under similar situations. *See, e.g.*, *7-Eleven*, 2015 WL 12844446, at *1-2

(granting protective order where executives had "high-level summary information" and "may

have signed off on some paperwork" because plaintiffs had a "more than a fair opportunity to

obtain in discovery" the information they needed without apex depositions); *Black Card, LLC v.

VISA U.S.A., Inc.*, 2016 WL 7325665, at *1, 3 (D. Wyo. Dec. 12, 2016) (executives' receipt of

"email correspondence" on relevant issues "only show[ed that the executives] received updates"

on relevant issues and were "insufficient to demonstrate any personalized unique knowledge").

　　　Plaintiffs also seek to depose Mr. Papa because he instituted a "turnaround plan" between

May and August 2016.  Any changes made at the Company during this time period, however,

postdate Plaintiffs' transactions in Valeant securities and all alleged misstatements.  Recognizing

that the "turnaround plan" is not relevant in and of itself, Plaintiffs claim that it demonstrates a

need for Mr. Papa's deposition because the plan arose from "representations . . . made during the

first and second quarter 2016 earnings calls" related to the accuracy of the Company's prior

statements.  Exhibit C.  To demonstrate unique knowledge, however, Plaintiffs must "show[] a

nexus" between public statements by the executive and relevant issues in the case, including why

the knowledge is unique to the executive.  *Ciarrocchi v. Unum Grp.*, 2009 WL 10676631, at *3

(D.N.J. Aug. 27, 2009).  It is not enough that a "statement while remote may be relevant to

[Plaintiffs'] case." *Reif v. CNA*, 248 F.R.D. 448, 453 (E.D. Pa. 2008).  Plaintiffs must show that

the information "cannot be gathered from other [Valeant] personnel," *i.e.* must be knowledge

that is unique to Mr. Papa.  *Id*.

　　　Plaintiffs do not show any connection between Mr. Papa's public statements and the

allegations made in the complaints. While Mr. Papa participated in these calls, the first quarter

call related to matters that took place before he joined the Company, and thus he learned any information presented on the call secondhand, and the second quarter earnings call took place after the relevant time period for all complaints ended.

      2.      **Any Relevant Information About the State of Valeant Has Been, or May Be, Obtained Through Other, Less Intrusive Means**

Even if Mr. Papa possessed personal knowledge about matters at issue in this litigation, Plaintiffs have not demonstrated that they cannot obtain the information through less intrusive means. *See*, *e.g.*, *Roman v. Cumberland Ins. Group*, 2007 WL 4893479 (E.D. Pa. Oct. 26, 2007) (granting protective order barring deposition of corporate executives without direct knowledge where knowledgeable lower level employee was available to testify); *Koken v. Lexington Ins. Co.*, 2005 WL 6051364, at *1 (E.D. Pa. July 18, 2005) (granting protective order because it "appears that plaintiff can obtain the requisite information through the process of deposing lower-ranking officials, such as defendant's personnel who handled plaintiff's claim on a day-to-day basis").

Alternate sources for information relevant to this litigation abound. Plaintiffs have deposed or will depose more than a dozen high-ranking Valeant employees, *supra* § II.D. Anything relevant that a CEO who began *after* the relevant period knows is equally known by the myriad of executives who handled the issues while they happened. *See Nucap Inds. Inc. v. Robert Bosch LLC*, 2017 WL 6059770, at *3 (N.D. Ill. 2017) (granting protective order where party seeking deposition had "not adequately explained why board-level testimony is relevant" because "completing depositions of lower-ranking . . . employees first" could provide the information). Plaintiffs have identified nothing that Mr. Papa learned during his diligence about these issues to which other deponents cannot speak. This is not surprising: it defies commonsense to suggest a non-contemporaneous witness will have more knowledge than

-7-

contemporaneous ones.  Further, Plaintiffs can obtain this discovery through less burdensome means.  *See, e.g.*, *Ciarrocchi*, 2009 WL 10676631, at *3 (granting protective order even where proposed deposition would be less than two hours because it was burdensome to the CEO and plaintiffs had not deposed any witnesses about the proposed topics); *Black Card*, 2016 WL 7325665, at *3 ("The amount of time needed to prepare and sit for even a shortened three hour deposition would pose an undue burden given . . . the underlying issues of this case [can] be obtained from another less burdensome source.").

### B.    Mr. Papa's Purported Conversations With Opt-Out Plaintiffs Are Irrelevant

Plaintiffs likewise cannot demonstrate that a deposition of Mr. Papa is warranted in light of his purported conversations with investors.  Plaintiffs claim Mr. Papa participated in meetings with investors as part of the May 23, 2016 UBS Healthcare conference, but fail to explain how these investor meetings—which occurred *after* the end of the relevant period, and *after* Plaintiffs had purchased the Valeant securities upon which they base their claims—are relevant.  Instead, they state in conclusory fashion that those meetings are "relevant . . . and it is therefore necessary to depose [Mr. Papa] to gain a full understanding of what occurred during these meetings, and what information Mr. Papa learned about these issues in advance of these meetings."  Exhibit C. But the mere fact that an executive spoke to investors as part of an industry conference cannot, without more, justify taking a deposition under the apex doctrine.  *See Harris v. Comp. Assoc. Intern., Inc.*, 204 F.R.D. 44 (E.D.N.Y. 2001) ("The conversation that plaintiff seeks to ask [apex deponent] about is only remotely relevant to the issues in the case since the conversation occurred after [plaintiff] had been relieved of this job duty.").

Plaintiffs' own testimony regarding these meetings refutes their contention that Mr. Papa's deposition is necessary.  In his March 2-3, 2021 deposition, Ari Herman, Brahman Capital Corp.'s corporate designee in *Brahman v. Valeant Pharmaceuticals International, Inc.*,

Case No. 3:18-cv-0893, ██████████████████████████████████ In

this testimony, ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ ▊ ████████████████████████████████████

████████████████████████████

Plaintiffs also offer nothing to suggest that Mr. Papa has unique knowledge about the

alleged meetings with investors.  Other than claiming that these meetings occurred at the May

23, 2016 UBS Global Healthcare Conference, Plaintiffs do not state with whom the meetings

occurred or what topics were discussed.  Their sole justification for seeking a deposition

regarding these meetings is that Mr. Papa is the "only witness with first-hand knowledge about

the content of his own meetings with investors."  Exhibit C.  Of course, these meetings involved

other participants, namely the investors.  That Mr. Papa made statements at these meetings, after

the events at issue in the case had concluded, does not satisfy Plaintiffs' burden to demonstrate

that his deposition is necessary.  Mere speculation that unspecified statements made at this

conference, which Plaintiffs themselves appear not to recall, are somehow uniquely probative,

cannot suffice. *See Affinity Labs of Tx. v. Apple, Inc.*, 2011 WL 1753982, at *16 (N.D. Cal.

2011). ("The mere fact that [defendant's CEO] made public statements, even on issues that

[plaintiff] considers relevant to its claims, [is] insufficient to justify his deposition.  Courts have

---

[3] ████████████████████████████████████████
████████████████████████████████

repeatedly denied apex depositions even on a showing that the executive made public statements on relevant issues.").

Finally, it is incontrovertible that Plaintiffs' counsel can acquire information regarding any meetings between Mr. Papa and the opt-out Plaintiffs themselves from their own clients at far less burden to all parties.  To the extent Plaintiffs themselves have no recollection of those meetings, or ascribe to them no significance, that is hardly a reason to compel Mr. Papa to sit for a deposition.  And, as to any meetings with non-plaintiff investors, Plaintiffs have not described any efforts to learn about those meetings through less burdensome discovery methods.  *See supra*, III.A.2.  Plaintiffs therefore fail to carry their burden of demonstrating that the discovery sought from the Company's CEO cannot be acquired through other means.  *Cf. Ford Motor Co. v. Edgewood Props., Inc.*, 2011 WL 677331, at *3-4 (D.N.J. Feb. 15, 2011) (granting protective order against two executives with no "personal, unique or superior knowledge" but denying as to former Vice President because he was involved in relevant decision making and other party "already conducted the depositions of various Ford employees who testified they either could not remember the circumstances surrounding the sale . . . or were not involved in the decision-making process").

## IV.   CONCLUSION

Mr. Papa has no unique knowledge about any of the topics on which Plaintiffs seek to question him and Plaintiffs have available to them multiple better sources of information about each topic.  The deposition of Mr. Papa would serve no legitimate purpose and would impose an undue burden on the Company and Mr. Papa.  Valeant respectfully requests the Court grant its motion and issue a protective order barring Plaintiffs from deposing Mr. Papa.

Dated:  March 5, 2021

**McCARTER & ENGLISH, LLP**

/s/ *Richard Hernandez*
Richard Hernandez
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 848-8615
Fax: (973) 297-6615

*Local counsel for Valeant Pharmaceuticals
International, Inc.*

**SIMPSON THACHER & BARTLETT
LLP**

Paul C. Curnin (*pro hac vice forthcoming*)
Craig S. Waldman (*pro hac vice forthcoming*)
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Fax: (212) 455-2502

*Counsel for Valeant Pharmaceuticals
International, Inc.*