**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Master No. 3:15-cv-07658-MAS-LHG |
| THIS DOCUMENT RELATES TO:<br><br>16-cv-07321 (MAS) (LHG)<br>16-cv-07324 (MAS) (LHG)<br>16-cv-07494 (MAS) (LHG)<br>16-cv-07496 (MAS) (LHG)<br>16-cv-07497 (MAS) (LHG)<br>17-cv-06513 (MAS) (LHG)<br>17-cv-07636 (MAS) (LHG)<br>17-cv-12088 (MAS) (LHG)<br>18-cv-00089 (MAS) (LHG)<br>18-cv-00343 (MAS) (LHG)<br>18-cv-00383 (MAS) (LHG)<br>18-cv-00846 (MAS) (LHG)<br>18-cv-00893 (MAS) (LHG)<br>18-cv-01223 (MAS) (LHG)<br>18-cv-08595 (MAS) (LHG)<br>18-cv-08705 (MAS) (LHG)<br>18-cv-15286 (MAS) (LHG)<br>18-cv-17393 (MAS) (LHG)<br>20-cv-05478 (MAS) (LHG)<br>20-cv-07460 (MAS) (LHG)<br>20-cv-07462 (MAS) (LHG) | **MEMORANDUM OF LAW** |

**DIRECT ACTION PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY OF INFORMATION RELATED TO DEFENDANT VALEANT'S CORPORATE SPIN-OFF**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | PRELIMINARY STATEMENT | | 1 |
| II. | BACKGROUND | | 2 |
| | A. | Defendants' Securities Fraud and the Direct Actions | 2 |
| | B. | Valeant Announces Its Intention to Spin-Off Its Eye Health Business | 3 |
| | C. | Valeant Shocks the Market with the Disclosure of Disproportionate Leverage Ratios and the Departure of Its Chief Executives | 4 |
| | D. | Valeant Refuses to Provide Basic Information about which Entity Will Hold Its Contingent Liabilities | 6 |
| III. | ARGUMENT | | 7 |
| IV. | CONCLUSION | | 11 |

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*3600 Michigan Co. v. Infra-Metals Co.*,
  2009 WL 3111422 (N.D. Ind. Sept. 24, 2009) ....................................................... 8, 9

*Alfone v. Town of Boonton*,
  2017 WL 4366981 (D.N.J. Sept. 29, 2017) ............................................................ 10

*Bing v. Spinelli*,
  2021 WL 2826124 (D.N.J. July 7, 2021) .................................................................. 7

*Blanchard v. Edgemark Fin. Corp.*,
  2000 WL 33223385 (N.D. Ill. May 22, 2000) .......................................................... 9

*City of Syracuse v. Loomis Armored US, LLC*,
  900 F. Supp. 2d 274 (N.D.N.Y. 2012) ..................................................................... 8

*GMO Tr., et al. v. Valeant Pharm. Int'l Inc., et al.*,
  No. 18-cv-00089 (D.N.J. Jan. 3, 2018) ..................................................................... 2

*In re NYSE Specialists Sec. Litig.*,
  405 F. Supp. 2d 281 (S.D.N.Y. 2005) ...................................................................... 8

*McKenzie v. State Farm Fire & Cas. Co.*,
  2008 WL 11353594 (E.D. La. Jan. 11, 2008) ......................................................... 10

*Nasufi v. King Cable, Inc.*,
  2017 WL 3334110 (N.D. Tex. Aug. 4, 2017) ........................................................... 8

*Takacs v. Union County*,
  2009 WL 3048471 (D.N.J. Sept. 23, 2009) .............................................................. 7

*Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*,
  92 F.R.D. 371 (D.N.J. 1981) .................................................................................... 7

*Tighe v. Shandel*,
  46 F.R.D. 622 (W.D. Pa. 1968) ................................................................................ 8

*Tindall v. H & S Homes, LLC*,
  2012 WL 369286 (M.D. Ga. Feb. 3, 2012) .............................................................. 8

*Walgreens Specialty Pharmacy, LLC v. Atrium Admin. Servs., Inc.*,
  2020 WL 6042280 (D.N.J. Oct. 13, 2020) ............................................................. 10

*Wiggins v. City of Trenton*,
  2013 WL 1145483 (D.N.J. Mar. 18, 2013) ................................................................................ 7

**Statutes**

N.J. Stat. Ann. § 2A:26-2 ............................................................................................................. 9

**Rules**

Fed. R. Civ. P. 26 ......................................................................................................................... 1

Fed. R. Civ. P. 26(b)(1) ............................................................................................................ 7, 8

Fed. R. Civ. P. 26(e) .................................................................................................................. 11

Fed. R. Civ. P. 64(a) .................................................................................................................... 9

Fed. R. Civ. P. 69(a) ................................................................................................................ 1, 9

Pursuant to Your Honor's instructions issued during the August 18, 2021 status conference held in the above-captioned matters, the Direct Action Plaintiffs[1] respectfully submit this memorandum of law in support of their motion to compel Defendant Valeant to produce limited discovery concerning the corporate spin-off of its eye health business (the "Spin-Off").

## I.  PRELIMINARY STATEMENT

Valeant's recent announcements concerning the Spin-Off have caused considerable concerns for the Direct Action Plaintiffs, foremost of which is that Valeant's more-than-$3-billion contingent liabilities to the Direct Actions may be held by a company that has divested some of its most valuable assets and is over-levered. As such, the Direct Action Plaintiffs now seek information about the relationship between the post-Spin-Off entities; specifically, which company will be the successor to the litigation liabilities associated with the Direct Actions or whether the liabilities will be shared. That inquiry into "who" is liable for the Direct Action Plaintiffs' claims is (as multiple courts have held) permissible pursuant to Federal Rule of Civil Procedure 26. The Direct Action Plaintiffs are not simply seeking the discovery of facts related to a defendant's financial status or ability to satisfy judgment that is ordinarily reserved for a post-judgment inquiry pursuant to Federal Rule of Civil Procedure 69(a). To the extent that another party has assumed all or a portion of the obligations that could result from the Direct Action Plaintiffs' lawsuits, that information is relevant to the Direct Action Plaintiffs' claims and course of action in the instant litigation and, as such, the Direct Action Plaintiffs' motion to compel limited discovery of such information should be granted.

---

[1] The Direct Action Plaintiffs are the plaintiffs in the twenty-one above-captioned direct securities actions against Valeant Pharmaceuticals International, Inc. (n/k/a Bausch Health Companies Inc.) ("Valeant") and certain of Valeant's former executives.

## II.     BACKGROUND

### A.     Defendants' Securities Fraud and the Direct Actions

The Direct Actions arise from a serious securities fraud carried out by Valeant and its senior executives between 2013 and 2016. (*See, e.g.*, *GMO Tr., et al. v. Valeant Pharm. Int'l Inc., et al.*, No. 18-cv-00089, Dkt. 1, ¶ 1 (D.N.J. Jan. 3, 2018).) Defendants made material misrepresentations and failed to disclose material facts in order to: (a) conceal Valeant's relationship with Philidor Rx Services, LLC and a network of specialty pharmacies whose sole purpose was to steer patients toward Valeant products; (b) artificially inflate Valeant's earnings by booking fictitious sales; and (c) mislead investors, including through accounting manipulations, that Valeant's organic growth derived from volume increases (*i.e.*, increased demand and prescription sales) rather than unsustainable price increases. (*Id.* ¶¶ 1-10.) As the truth was gradually revealed to the market, the price of Valeant securities plummeted from over $250 per share in mid-2015 to under $25 per share by August 2016, resulting in a market capitalization loss of almost $100 billion, (*id.* ¶ 1), and billions of dollars in damages to the Direct Action Plaintiffs.

In the wake of the partial revelation of the fraud, several putative securities class actions were filed beginning in October 2015 against Valeant, its former and present directors and officers, its auditor (PricewaterhouseCoopers ("PwC")), and the investment banks that marketed Valeant's securities to investors. These putative class actions were consolidated under the caption and docket number *In re Valeant Pharmaceuticals International, Inc. Securities Litigation*, No. 15-cv-07658 (the "Class Action"). In late 2019, the parties to the Class Action announced that they had reached an agreement in principle to settle that case with respect to all defendants except for PwC.

In addition to the Class Action, scores of professional investment managers filed their own securities fraud actions (the "Direct Actions"). The Direct Action Plaintiffs manage money for charities, endowments, family trusts, and other public and private institutions and individuals. All

2

of the Direct Action Plaintiffs have exercised their constitutional rights to exclude themselves from the class and to pursue their own remedies against Defendants.

The Direct Action Plaintiffs have significant claims against Valeant that they have been litigating, in some instances, for almost five years. Over the past year-and-a-half, the Direct Action Plaintiffs have conducted extensive fact discovery of Valeant and its agents. If they prevail at trial, the Direct Action Plaintiffs expect to achieve substantial damages awards. Indeed, using the court-approved method for determining claim size in the Class Action settlement, the claims advanced by the Direct Action Plaintiffs are in excess of $3 billion plus prejudgment interest.

### B.   Valeant Announces Its Intention to Spin-Off Its Eye Health Business

On August 6, 2020, Valeant announced its intention to spin off its eye health business ("Bausch + Lomb") into a separate public company. (Declaration of Michael J. Hampson in Support of Direct Action Plaintiffs' Motion to Compel ("Hampson Decl.") Ex. A.) Bausch + Lomb sells high-end consumer products and is a significant cash-flow producer for Valeant, accounting for about 45% of Valeant's most recent quarterly revenues. (*Id.* Ex. B at 5.) Spinning off that business segment will mean that both the cash and the assets of Bausch + Lomb will become part of a company that is legally separate from Valeant.

After the Spin-Off, the residual business units of Valeant will be left with the remaining company. Thus, Valeant will continue to be a public company – ultimately to be renamed, but currently referred to by Valeant as "Bausch Pharma" – with gastroenterology, dermatology, neurology, and international pharmaceuticals business units. (*Id.* Ex. C.) Both Bausch + Lomb and Bausch Pharma will be public companies with corporate offices in New Jersey, with their stock listed on the New York Stock Exchange and the Toronto Stock Exchange. (*Id.* Ex. D at 29.)

Although Valeant did not place a specific timeline on the transaction when it first announced its intent to affect the Spin-Off, it did outline for investors that one of the steps needed to take place to complete the transaction would include an allocation of assets and liabilities:

> [Valeant] will need to take several steps to facilitate the completion of the spinoff.  As a first step to preparing stand-alone carve-out financial statements, [Valeant] expects to report Bausch + Lomb as a separate segment beginning in the first quarter of 2021.  Furthermore, there are several important internal and external considerations, approvals and conditions that will drive the ultimate timing and structure of any transaction, including, but not limited to, consideration of one-time costs; capital market conditions; ***determination of the pro forma capitalizations of Bausch + Lomb - NewCo and [Valeant]***; final approval by [Valeant]'s Board of Directors; receipt of applicable regulatory approvals; tax considerations, including receipt of any applicable opinions and/or rulings with respect to the Canadian and U.S. federal income tax treatment of the transaction; and compliance with U.S. and Canadian securities laws and stock exchange rules and any shareholder vote requirements that may be applicable.  Many of these considerations, approvals and conditions will be influenced by and/or be dependent on the specific structure that is ultimately selected.

(*Id.* Ex. A at 1 (emphasis added).)

However, at no time when it initially announced the transaction did Valeant disclose to the market that the remaining company would be much more heavily levered than Bausch + Lomb, or that Valeant's two most-senior executives would be leaving the company to join the spun-off entity.  In fact, soon after announcing the spin-off, Valeant told the market that the anticipated leverage ratios for the two companies would be essentially the same (4x for Bausch + Lomb, 5.5x for Bausch Pharma).  (*Id.* Ex. E at 8.)

      **C.**    **Valeant Shocks the Market with the Disclosure of Disproportionate Leverage Ratios and the Departure of Its Chief Executives**

The deadline for serving written discovery in the Direct Actions was March 5, 2021.  (*See* No. 15-cv-07658, ECF No. 634 at 3.)  However, after that deadline passed, Valeant disclosed new

4

and disturbing developments about the Spin-Off. Specifically, on May 4, 2021, Valeant announced that, contrary to its earlier statement, the two companies would have materially different leverage profiles and creditworthiness. Specifically, Bausch Pharma will hold significantly more debt and liability than Bausch + Lomb. For Bausch + Lomb, the net ratio of debt to cash flow is expected to be 2.5x, whereas for Bausch Pharma, the net ratio is expected to be 6.5x-6.7x. Thus, the new spin-off company will be an asset-rich company and the remaining company will be almost *three times as leveraged*. (Hampson Decl. Ex. D at 28.)

Valeant also told its investors that its current CEO and CFO, Joseph Papa and Sam Eldessouky, are now proposing to leave Valeant to lead Bausch + Lomb. (*Id.* Ex. F at 2; *see also id.* Ex. D at 30.) Bausch Pharma, on the other hand, will be led by current Valeant non-chief executives: Thomas Appio and Robert Spurr. (*Id.* Ex. B at 25.) While these new leaders are current heads of two of Valeant's business units, they are not responsible for certifying the accuracy of Valeant's company-wide financial reporting and public disclosures. The current CEO and CFO – who have intimate knowledge of the impending leverage inequality and which entity or entities will be responsible for the Direct Action Plaintiffs' claims – are apparently "jumping ship" to run the asset-rich spin-off. This further suggests that the Spin-Off may impede the Direct Action Plaintiffs' ability to recover on their eventual judgments.

Valeant also disclosed for the first time on August 3, 2021, that it intends to pursue an initial public offering ("IPO") of another of its business units, Solta, which sells medical devices for aesthetic applications. (Hampson Decl. Ex. B at 21-23.). Solta has contributed tremendous growth for Valeant over the past three years. (*Id.* at 23.) Thus, the IPO of Solta may result in another major asset being placed beyond the grasp of creditors of Bausch Pharma, and combined with the Spin-Off, will leave Valeant without two of its most profitable business units.

5

In sum, Valeant has stated that it intends to effectuate a corporate Spin-Off of its most valuable assets to be managed by current senior executives after they depart Valeant, while leaving behind a company burdened with a heavy debt load.  Valeant has already achieved (or is just days away from achieving) all internal objectives to execute the Spin-Off, (*id.* at 26), and it has already filed a non-public registration statement for the Spin-Off with the United States Securities and Exchange Commission (*id*. Ex. G at 16:21-23.)  Meanwhile, Your Honor has continued to permit limited fact discovery in the Direct Actions during the current period prior to the service of opening expert reports – and therefore the limited discovery requested herein would do no prejudice to the case schedule.  (*See* No. 15-cv-07658, ECF No. 790 at 2.)

### D.  Valeant Refuses to Provide Basic Information about which Entity Will Hold Its Contingent Liabilities

The recent announcements by Valeant about the Spin-Off caused concerns for the Direct Action Plaintiffs.  Specifically, the Spin-Off will change the entity or entities responsible for the contingent liabilities related to the Direct Actions, and the transfer of substantial assets to a new entity could be extremely detrimental to the Direct Action Plaintiffs' ability to collect on the judgments they are pursuing in these litigations.  If Valeant's more-than-$3-billion contingent liabilities to the Direct Actions are left with Bausch Pharma, the Direct Action Plaintiffs will be faced with claims against a company that has divested some of its most valuable assets and is over-levered.

Given these serious concerns, the Direct Action Plaintiffs requested information from Valeant regarding the Spin-Off, including which entity or entities will be responsible for the contingent liabilities related to the Direct Actions.  However, Valeant has refused to disclose where the multi-billion-dollar contingent liabilities relating to the Direct Actions will be carried post-transaction.  If the Direct Action Plaintiffs' concerns were unfounded, the simple solution would

have been for Valeant to provide the requested information. Valeant's refusal to do so only heightens the Direct Action Plaintiffs' concerns.

Accordingly, the Direct Action Plaintiffs now move to compel Valeant to provide this relevant and significant information to them in the form of limited discovery in these ongoing cases.

### III.   ARGUMENT

The Federal Rules of Civil Procedure allow discovery of "any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevance is a broader inquiry at the discovery stage than at the trial stage," *Bing v. Spinelli*, 2021 WL 2826124, at *1 (D.N.J. July 7, 2021), and information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Importantly, "[c]ourts have construed this rule liberally, creating a broad vista for discovery." *Takacs v. Union County*, 2009 WL 3048471, at *1 (D.N.J. Sept. 23, 2009) (citing *Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)). "Thus, the relevancy standard is satisfied, and discovery requests should be granted, if there is any possibility that the information sought may be relevant to the general subject matter of the action." *Wiggins v. City of Trenton*, 2013 WL 1145483, at *2 (D.N.J. Mar. 18, 2013).

Here, the information sought by the Direct Action Plaintiffs related to Valeant's corporate Spin-Off is relevant and discoverable under Rule 26. Specifically, the Direct Action Plaintiffs seek information about whether Bausch + Lomb or Bausch Pharma (or both) will be the successor to the contingent litigation liabilities associated with the Direct Actions following the Spin-Off.[2]

---

[2] In accordance with Your Honor's direction at the August 18, 2021 conference, the Direct Action Plaintiffs have narrowed their request to information concerning whether Bausch + Lomb or Bausch Pharma (or both) will assume the liabilities associated with the Direct Actions after the Spin-Off. (Hampson Decl. Ex. G at 26:6-8.) The Direct Action Plaintiffs reserve all rights with respect to their request for discovery related to the financial condition of these entities.

7

Courts routinely find this type of inquiry – on the question of "who" is liable for the claims at issue – permissible under Rule 26.  *See, e.g.*, *Nasufi v. King Cable, Inc.*, 2017 WL 3334110, at *7 (N.D. Tex. Aug. 4, 2017) ("[D]iscovery . . . as to possible successor liability for alleged FLSA violations pleaded against a named defendant is a 'matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .'" (quoting Fed. R. Civ. P. 26(b)(1)); *3600 Michigan Co. v. Infra-Metals Co.*, 2009 WL 3111422, at *4 (N.D. Ind. Sept. 24, 2009) ("An attempt to discover *who* is liable is relevant . . . ."); *see also Tighe v. Shandel*, 46 F.R.D. 622, 624-25 (W.D. Pa. 1968) ("The liability of any person, named or unnamed, is a matter 'involved' in all actions, especially those where such person assumes control of the proceedings in behalf of a party, and falls within the intent of the discovery rules.").

This makes sense.  Following a corporate spin-off, a company can explicitly or impliedly contract liability to the successor corporations; they may also agree that the new corporation will share responsibility for the liability in some way.  *See In re NYSE Specialists Sec. Litig.*, 405 F. Supp. 2d 281, 316-17 (S.D.N.Y. 2005), *aff'd in part, vacated in part, remanded*, 503 F.3d 89 (2d Cir. 2007).  Where that spin-off takes place while litigation is pending, the result is that an entity other than the named defendant in that litigation may be liable for the outstanding claims.  *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 290 (N.D.N.Y. 2012) ("[T]he doctrine of successor liability . . . does not create a new cause of action against the successor so much as it transfers the liability of the predecessor to the successor."); *Tindall v. H & S Homes, LLC*, 2012 WL 369286, *2 (M.D. Ga. Feb. 3, 2012) ("Successor liability . . . is an equitable tool used to transfer liability from a predecessor to a successor.").  If another party has assumed the obligations that could be incurred by the Direct Action Plaintiffs' lawsuits – which, based on a calculation performed pursuant to the Class Action settlement model approved by this Court, could exceed $3

8

billion – that information is unquestionably relevant to the Direct Action Plaintiffs' claims and course of action in the instant litigation.³  As such, that discovery is permissible under Rule 26.

Indeed, it is precisely these considerations that underpinned the court's decision in *3600 Michigan Co. v. Infra-Metals Co.*.  There, the plaintiff had served interrogatories aimed at discovering the defendant's "relationship to . . . other acquiring corporations" and whether it "contracted its liability to another party through any of its subsequent acquisitions."  2009 WL 3111422, at *1, *3.  The court permitted that discovery, over the defendant's objection, noting that "[i]nformation that is not an element of a claim or defense may be relevant to the broader subject matter at hand" and, specifically, "[i]nformation about successor liability reasonably bears on the issue of whether another party has assumed liability for any obligations that could be incurred by this lawsuit."  *Id.* at *4.  The same is true here.  Information about whether Bausch + Lomb or Bausch Pharma (or both) will be the successor to the contingent litigation liabilities associated with the Direct Actions following Defendant Valeant's corporate Spin-Off is relevant and discoverable in the instant litigation.

Thus, despite Defendants' contentions to the contrary, the information sought by the Direct Action Plaintiffs is not the "discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment" that is ordinarily reserved for a post-judgment inquiry pursuant to Federal Rule of Civil Procedure 69(a).  *Walgreens Specialty Pharmacy, LLC v. Atrium Admin. Servs., Inc.*, 2020 WL 6042280, at *5 (D.N.J. Oct. 13, 2020); *see also* Hampson Decl. Ex. G at 18:7-8 (citing

---

³ These include, but are not limited to, amendment of the Direct Action Complaints to include the successor entity (or entities) as a named defendant, *see, e.g.*, *Blanchard v. Edgemark Fin. Corp.*, 2000 WL 33223385, at *8-9 (N.D. Ill. May 22, 2000) (permitting amendment of complaint to name as a new defendant the successor corporation where "when Plaintiff filed the original complaint, [defendant] had not yet merged with [the successor]"), and the initiation of an attachment procedure pursuant to Federal Rule of Civil Procedure 64(a) and N.J. Stat. Ann. § 2A:26-2.

9

*Walgreens*). Rather, the information sought here – who will be liable for the Direct Action Plaintiffs' claims – is both relevant and necessary to inform the Direct Action Plaintiffs' strategy in the instant litigation.

Defendants' separate argument that the Court should not permit the limited discovery requested because it would mean providing "material nonpublic information about a potential transaction" to market participants is similarly unavailing. (Hampson Decl. Ex. G at 17:13-14.) The Stipulation and Confidentiality Order in place in each of the Direct Actions expressly provides that non-public information produced in each Action "shall be used solely for purposes of the Actions and may not be used for any other purpose whatsoever, including, but not limited to, any business or commercial purpose," (*see, e.g.*, No. 16-cv-07321, Dkt. 74 ¶ 1), and allows the parties to designate material containing "confidential or sensitive personal or business information that requires heightened protections" as "Highly Confidential," *see id.* ¶ 4 – a designation that prohibits the disclosure of such information to anyone outside of those enumerated in the Confidentiality Order, *id.* These are precisely the protections that allow Courts to compel production of relevant, confidential information. *See, e.g.*, *Alfone v. Town of Boonton*, 2017 WL 4366981, at *6 (D.N.J. Sept. 29, 2017) ("The Court is aware that [the] documents [defendants are compelled to produce] may be confidential. To the extent that they are, the parties may redact these documents as they deem appropriate under the Discovery Confidentiality Order previously entered in this case."); *McKenzie v. State Farm Fire & Cas. Co.*, 2008 WL 11353594, at *2 (E.D. La. Jan. 11, 2008) (noting that procedure available in operative protective order to "safeguard . . . material non-public information" "did not relieve [plaintiff] of the necessity of producing information that is relevant to her claim"). As such, this Court should grant the Direct Action Plaintiffs' motion to compel.

Defendants unfairly argue that the Direct Action Plaintiffs have not served a formal written discovery request seeking this information. However, Valeant did not announce the material developments precipitating the Direct Action Plaintiffs' concerns about the Spin-Off until after the March 5, 2021 deadline for serving additional written discovery in the Direct Actions had passed. Defendants should not be permitted to escape producing relevant information, the need for which arose based on eleventh-hour disclosures made by Valeant, especially when other discovery deadlines have since been extended. Indeed, the Court has continued to permit limited fact discovery in the Direct Actions during the current period prior to the service of opening expert reports. (*See* No. 15-cv-07658, Dkt. 790 at 2.) Accordingly, there is no reasonable basis for Defendants not to produce this limited discovery at this time.

### IV.   CONCLUSION

For the reasons stated above, the Direct Action Plaintiffs respectfully request that the Court grant their motion to compel.

Dated:  September 10, 2021                           Respectfully submitted,

**ROLNICK KRAMER SADIGHI LLP**

/s/ *Lawrence M. Rolnick*
Lawrence M. Rolnick
Marc B. Kramer
Sheila A. Sadighi
Michael J. Hampson
Jennifer A. Randolph
1251 Avenue of Americas
New York, NY 10020
Telephone: (212) 597-2800
Facsimile: (212) 597-2801

*Counsel for Plaintiffs*
Case Nos. 16-cv-07321, 16-cv-07324,
16-cv-07494, 16-cv-07496, 18-cv-00089,
18-cv-00893, and 18-cv-01223

11