**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Civil Action No. 15-7658 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

      This matter comes before the Court on PricewaterhouseCoopers LLP's ("PwC") Objection to the Special Master's Report and Recommendation[1] on its Motion for Judgment on the Pleadings (the "Objection"). (ECF No. 573.) Plaintiff City of Tucson, together with and on behalf of the Tucson Supplemental Retirement System ("Tucson"), and the Direct Action Plaintiffs opposed (ECF Nos. 588, 589), and PwC replied (ECF No. 591). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court overrules PwC's Objection.

**I.    BACKGROUND**

      The parties are familiar with the factual and procedural history of this matter and therefore the Court recites only those facts relevant to the instant Objection. *See In re Valeant Pharms. Int'l, Sec. Litig. ("In re Valeant")*, No. 15-7658, 2017 WL 1658822 (D.N.J. Apr. 28, 2017).

      After "further analy[zing]" the two pages of securities transactions listed in Tucson's June 2016 Certification (the "Certification"), PwC moves to dismiss Tucson's claim under Section 11 of the Securities Act, 15 U.S.C. § 77k ("Section 11") again—over two years after it unsuccessfully

---

[1] Though styled as an Order and Opinion, there is no dispute that the Special Master's decision is a Report and Recommendation. (*See* Order *4, ECF No. 484.)

moved to dismiss the same claim. (Def.'s Moving Br. 1 n.1, ECF No. 574-1); *In re Valeant*, 2017 WL 1658822, at *13–14. This second attempt fares no better.

### A.   Tucson's Section 11 Claim

Tucson alleges that it purchased stock of Valeant Pharmaceuticals International, Inc. ("Valeant") at the company's March 2015 public offering, that the offering materials contained false and misleading statements made by PwC, and that it "was damaged thereby." (Am. Consolidated Compl. ("AC") ¶¶ 32, 718–19, ECF No. 574-2.) Pointing to the Certification, Tucson asserts that it purchased 300 shares of Valeant stock at the inflated share price of $199 and then—after revelations of the alleged misconduct caused Valeant's stock price to drop—sold its stock at share prices ranging between $35 and $158. (Pls.' Moving Br. 2 (citing Pls.' Cert. *2–3, ECF No. 80-3), ECF No. 574-2.)[2]

### B.   Procedural History

Tucson's Certification is attached to the Consolidated Complaint that was filed in June 2016. (*See* ECF Nos. 80, 80-1.) In that complaint, Tucson brought a claim against PwC under Section 11 of the Securities Act of 1933. (Consolidated Compl., ¶¶ 669–712, ECF No. 80.) PwC moved to dismiss Tucson's Section 11 claim in September 2016 (ECF No. 165), and the Court denied that motion in April 2017 (ECF No. 217).

Tucson's Section 11 claim is currently set forth in Count Nine of the Amended Consolidated Complaint, which was filed in September 2018. (AC ¶¶ 701–44.) This matter was referred to the Special Master in September 2019. (*See generally* Order, ECF No. 484.) PwC filed the underlying Motion for Judgment on the Pleadings in December 2019, and the Motion was fully

---

[2] Tucson held 11,900 shares of Valeant stock at the time of the offering. (Pls.' Cert. *3.) (All numbers preceded by an asterisk refer to the page number in the ECF header.)

briefed in March 2020. (*See* ECF No. 574.) On May 21, 2020, the Special Master issued his report, recommending that the Court deny PwC's Motion. This Objection followed.

## II. LEGAL STANDARDS

The Court reviews objections to the Special Master's findings of fact and conclusions of law *de novo*. (Order *4); Fed. R. Civ. P. 53(f)(3)-(4).

Federal Rule of Civil Procedure 12(c)[3] provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standards governing Rule 12(c) motions are the same ones that govern motions to dismiss under Rule 12(b)(6)." *Allah v. Hayman*, 442 F. App'x 632, 635 (3d Cir. 2011) (citing *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004)). "Like Rule 12(b)(6), Rule 12(c) requires the Court [to] 'accept the allegations in the complaint as true[] and draw all reasonable factual inferences in favor of the plaintiff.'" *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 324 (D.N.J. 1999) (quoting *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)). A court may grant a Rule 12(c) motion only if the movant "clearly establishes that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988)).

## III. DISCUSSION

### A. Parties' Positions

PwC argues that Tucson "has no damages[,] and thus no viable Section 11 claim," because Tucson sold its Valeant stock for a profit. (Def.'s Moving Br. 1.) Tucson reaches that conclusion by purportedly using the matching methodology "endorsed by the overwhelming weight of

---

[3] All references to a "Rule" hereinafter refer to the Federal Rules of Civil Procedure.

authority"—the last-in, first-out method ("LIFO"). (*Id.* at 1, 8.)[4] Under LIFO, "stocks acquired most recently are assumed to have been the first sold." *Bo Young Cha v. Kinross Gold Corp.*, No. 12-1203, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012). Applying LIFO, PwC asserts that shortly after purchasing the 300 shares of Valeant stock, Tucson sold those shares at prices above the $199 share price and profited over $12,000. (Def.'s Moving Br. 8–9.) Thus, PwC argues, Tucson "did not suffer *damages*, a required element of its claim." (*Id.* at 1.)

In opposition, Tucson asserts that damages are an affirmative defense to—not an essential element of—a Section 11 claim. (Pls.' Opp'n Br. 2.) Tucson also asserts that, regardless, it adequately pled damages and that it would be improper to apply any specific matching methodology at this stage of litigation. (*Id.* at 3–4.) If a method is used, however, Tucson suggests that it should be FIFO. (*Id.* at 19.) Under FIFO, "stocks acquired first are assumed to have been sold first in the calculation of losses." *Bo Young Cha*, 2012 WL 2025850, at *3. PwC does not dispute that Tucson has recoverable damages under FIFO; likewise, Tucson does not dispute that it has no recoverable damages under LIFO. (Def.'s Moving Br. 4; Pls.' Opp'n Br. 2.)

**B.    The Special Master's Report and Recommendation**

In recommending denial of PwC's Motion, the Special Master (1) rejected PwC's argument that damages are an element of a Section 11 claim and (2) found it premature to employ any specific matching methodology at this procedural stage. (R&R *5, *10, ECF No. 563.) Regarding the matching methodologies, the Special Master noted that "[n]either party at this point has provided testimony, expert or otherwise, to address the manner in which [Tucson] incurred stock

---

[4] Methods like LIFO and first-in, first-out ("FIFO") are used to match securities transactions in order to measure damages. "Using LIFO or FIFO, each purchase of securities is matched or assigned to a specific sale of securities to calculate the trading loss or gain on each transaction during the class period." *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 849 n.7 (E.D. Pa. 2018).

losses or the methodology under these particular circumstances best used to calculate those damages." (*Id.* at *10.) PwC objects to these aspects of the Special Master's Report and Recommendation. (PwC's Obj. Br. 1, ECF No. 573.) In support, PwC raises the same arguments that it presented in its underlying Motion. None of those arguments have merit.

### C. PwC's Objection Is Overruled.

As noted above, this is PwC's second attempt to dismiss Tucson's Section 11 claim on the pleadings. In its initial motion to dismiss, PwC failed to raise any argument regarding damages, even though it had the opportunity to do so. PwC raises those arguments now—over two years later—after having "further analy[zed]" Tucson's Certification. (Def.'s Moving Br. 1 n.1.) PwC's argument, however, is based on a flawed premise: that Section 11 plaintiffs are required to plead and show, at this procedural stage, that they suffered recoverable losses under LIFO. As the Special Master correctly found, no legal authority imposes any such requirement. Nevertheless, consistent with the losing party's routine practice in this case, PwC objects.[5]

PwC's Objection will be addressed in two subsections that discuss (1) whether damages is an element of a Section 11 claim and (2) whether any specific matching methodology must be applied at this stage of litigation.

#### 1. PwC Fails to Show that Damages Are an Element of a Section 11 Claim.

In *Herman & MacLean v. Huddleston*, the Supreme Court concluded that a Section 11 plaintiff "need only show a material misstatement or omission to establish his *prima facie* case." 459 U.S. 375, 382 (1983). Citing *Herman & MacLean*, the Third Circuit has held that, "[t]o state a claim under [S]ection 11, plaintiffs must allege that they purchased securities pursuant to a

---

[5] In a footnote that cites no legal authority, PwC asserts that Tucson lacks standing because it lacks damages and that the Special Master erred in finding otherwise. (Def.'s Obj. Br. 7 n.4.) The Special Master found that PwC's standing argument was duplicative of its overall lack of damages argument and thus fails for the same reasons. (R&R *10.) This Court reaches the same conclusion.

materially false or misleading registration statement." *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 273 (3d Cir. 2004) (citing *Herman & MacLean*, 459 U.S. at 382); *see In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 782 (3d Cir. 2009) ("A prima facie case under [Section] 11 is straightforward, requiring only a showing of a material misrepresentation or omission from a defendant's registration statement." (citing *Herman & MacLean*, 459 U.S. at 382))). Nowhere did the Third Circuit require that damages be pled—let alone damages under LIFO.[6]

In arguing that damages are an element, PwC never addresses *Herman & MacLean* nor the Third Circuit's pleading standard for Section 11 claims. Nor does PwC cite any circuit court decision expressly holding that damages are an element of a Section 11 claim. Consequently, a detailed discussion is not warranted for the two district court cases that PwC relies on—*Mutual Funds* and *Metz*. (Def.'s Moving Br. 3–4 (citing *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845 (D. Md. 2005); *Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364, (D.N.J. 1999)); Def.'s Obj. Br. 1, 5–6, 12 (same).) The Special Master found that both *Mutual Funds* and *Metz* are factually distinguishable, and PwC does not contest that finding. (R&R 7–8 (citing *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1168–69 (C.D. Cal. 2008) (discussing *Mutual Funds* and *Metz*)).) Instead, PwC takes issue with the Special Master's approval of another district court case—*Countrywide*—that disagreed with *Mutual Funds* and *Metz* and insists that the latter two cases are controlling. (Def.'s Obj. Br. 5–6.)

---

[6] The Third Circuit has expressly listed economic loss as an element when addressing other securities claims. *See, e.g., McCabe v. Ernst v. Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (noting that economic loss is one of the elements of a Section 10(b) claim (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005))). Not so with Section 11. And relatedly, "Section 11 . . . claims are generally not subject to heightened pleading standards required under the PSLRA and [Rule] 9(b); rather the liberal notice pleading requirements of Rule 8 generally apply." *In re Valeant*, 2017 WL 1658822, at *13 (citation omitted).

In *Countrywide*, the district court cited *Herman & MacLean* to note that "*Metz* (and, later, *Mutual Funds*, by adopting *Metz's* language) may have erred by stating that 'damages' are an element" of a Section 11 claim. *In re Countrywide*, 588 F. Supp. 2d at 1168 n.40 (citing in part *Herman & MacLean*, 459 U.S. at 382). In PwC's view, the Special Master erred by "reject[ing] *Metz* in favor of" *Countrywide* because the *Countrywide* Court's statement "was clearly dicta." (Def.'s Obj. Br. 5.) That argument is unavailing. Other courts have cited *Countrywide* for the principle that "'[d]amages are not an element' of a Section 11 claim." *E.g., Piriani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367 (N.D. Cal. 2020) (quoting *In re Countrywide*, 588 F. Supp. 2d at 1168 n.40); *Campton v. Ignite Rest. Grp., Inc.*, No. 12-2196, 2014 WL 61199, at *5 (S.D. Tex. Jan. 7, 2014) (same). PwC cites no case that has followed *Mutual Funds* or *Metz* for the proposition that damages are an element of a Section 11 claim. Nor is the Court aware of any.

More importantly, the *Countrywide* Court cited *Herman & MacLean* in noting that damages are not an element of a Section 11 claim. *Countrywide*, 588 F. Supp. 2d at 1168 n.40 (citing *Herman & MacLean*, 459 U.S. at 382). As discussed above, *Herman & MacLean* is the same case that the Third Circuit previously cited when addressing the pleading standard for Section 11 claims; none of those cases require that damages be pled; and in any event, PwC never addresses those cases. What's more, the very cases that PwC tacks on in string cites pointed to *Herman & MacLean* for the principle that Section 11 plaintiffs are not required to plead damages. For example, in *Initial Public Offering Securities Litigation*, the district court noted that "a plaintiff has no duty to plead damages in order to state a valid Section 11 claim." 241 F. Supp. 2d 281, 347 n.76 (S.D.N.Y. 2003) (citing *Herman & MacLean*, 459 U.S. at 382). PwC fails to acknowledge that portion of the opinion and instead cites the case for the proposition that a Section 11 plaintiff who sells a security above its offering price has no cognizable damages. (Def.'s Moving Br. 4

(citing *Initial Pub. Sec. Litig.*, 241 F. Supp. 2d at 351; Def.'s Obj. Br. 6 (same)).) And that proposition is the basis for PwC's overall argument: that a Section 11 claim fails "where, as here, [Tucson's] Certification shows that it sold the securities at issue at a profit." (Def.'s Obj. Br. 6) That argument, however, rests on the flawed assumption that Tucson is required to show, at this procedural stage, that it suffered losses under LIFO. As discussed below, there is no such requirement.

On these facts, the Court finds that PwC failed to demonstrate that damages are an element of a Section 11 claim. The Court, accordingly, overrules PwC's objection on this issue.

### 2. PwC Fails to Demonstrate that the LIFO Method Should be Used at this Stage.

Section 11(e) sets forth three methods of calculating damages. *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995) ("The plain language of [S]ection 11(e) prescribes the method of calculating damages, *see* 15 U.S.C. § 77k(e), and the court must apply that method in every case.").[7] Those methods are not at issue here. Rather, the parties disagree as to the appropriate method for matching securities transactions; that matching

---

[7] Section 11(e) allows for

> such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought.

15 U.S.C. § 77k(e)(1)–(3).

methodology would be used to measure damages under one of the methods provided by Section 11(e).

PwC asserts that LIFO and FIFO are the "two principal methodologies" for matching securities transactions and that the "vast majority of courts have adopted LIFO." (Def.'s Moving Br. 5 (citing *Bo Young Cha*, 2012 WL 2025850, at *3).) PwC explains that courts have done so because "'unlike FIFO, [LIFO] takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price.' By contrast, FIFO 'has the potential to exaggerate losses, by failing to take into account gains' as a result of artificial inflation." (*Id.* (first quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005); second quoting *Bo Young Cha*, 2012 WL 2025850, at *3).) Thus, PwC argues, LIFO should be applied here and now. (*Id.* at 7–8.) PwC's reliance on those cases is misplaced.

None of the cases cited by PwC applied LIFO at the pleading stage. Rather, most of those cases involved motions to appoint lead counsel where the issue was which moving party had the "largest financial interest in the relief sought by the class." *Bo Young Cha*, 2012 WL 2025850, at *2 (citation omitted). As the Eastern District of Pennsylvania noted in denying summary judgment, "some authority suggests that 'financial interest' in that context is not synonymous with damages." *In re Cigna Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 352 (E.D. Pa. 2006) (citation omitted). *Cigna* is instructive. There, the defendants argued that the lead plaintiff profited from its securities transactions and thus lacked damages. *Id.* at 339. Unlike in this case, the parties in *Cigna* supported their respective arguments with expert reports on LIFO and FIFO. *Id.* at 342–47. Even so, the district court denied summary judgment, expressing "fundamental concerns . . . about adopting any specific theory as a matter of law" at that stage. *Id.* at 352. In doing so, the district court noted there was no appellate ruling that required the use of a specific matching methodology. *Id.* at 355

("Although the experts disagree on whether it is appropriate to use FIFO or LIFO, there is no appellate ruling that a judge must charge a jury that one of these is proper to the exclusion of the other."). PwC points to no circuit court decision that found otherwise since *Cigna* was decided.

Similarly, a court in this District declined to adopt a specific matching methodology in a procedurally similar case. In *Royal Dutch*, the district court denied a Rule 12(b)(6) motion where the plaintiff alleged that it had a "legally cognizable economic loss based on the [FIFO] method," finding that "[w]hether this method is sound and whether it will be adopted . . . is not a matter for discussion at this procedural stage." *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 557 (D.N.J. 2005). That conclusion applies with equal force here.

PwC attempts to distinguish *Cigna* and *Royal Dutch* by arguing that those cases involved complex factual issues. (Def.'s Obj. Br. 11 n.7, 12.)[8] But that argument misses the mark. At bottom, PwC invites the Court to adopt LIFO as a matter of law at this stage without pointing to a single case that has done so. That is not all. In response to the Direct Action Plaintiffs' argument that they may be prejudiced by the adoption of a specific matching methodology, PwC appears to suggest that the Direct Action Plaintiffs may merely move for an exemption. (Def.'s Reply Br. 10 ("[I]f a particular Direct Action Plaintiff has a principled basis to assert that the Court should not decide the matching method as a matter of law at the pleading stage, based on unusual facts not raised here, it can present those considerations in its separate case."), ECF No. 591.)[9] So, without

---

[8] PwC also argues that, in reaching its decision, the *Royal Dutch* Court "mistakenly conflated the quantification of damages (a fact issue) with the choice of matching method (a legal issue) based on inapposite authority involving approval of a class settlement." (Def.'s Obj. Br. 11 n.7.) Of course, in arguing that LIFO should be applied, PwC cited a case that involved the approval of a class settlement. (Def.'s Moving Br. 5–6 (citing *In re Clearly Canadian Sec. Litig.*, 1999 WL 707737, at *4 (N.D. Cal. Sept. 3, 1999) (approving proposed settlement).)

[9] There are twenty-one cases involving the Direct Action Plaintiffs. (*See* Correspondence 1 n.1, ECF No. 800.)

any legal authority, PwC asks the Court to adopt a new matching rule as a matter of law—and then soon after grant and enforce a dizzying amount of potential individualized exceptions. The Court declines PwC's request.

Based on the foregoing, the Court finds that PwC fails to demonstrate that LIFO should be applied as a matter of law at this stage and, accordingly, overrules PwC's objection on this issue.

### IV. CONCLUSION

For the reasons set forth above, PwC's Objection is overruled. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE