# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO:<br><br>16-cv-07321 (MAS) (LHG)<br>16-cv-07324 (MAS) (LHG)<br>16-cv-07494 (MAS) (LHG)<br>16-cv-07497 (MAS) (LHG)<br>17-cv-06513 (MAS) (LHG)<br>17-cv-07636 (MAS) (LHG)<br>17-cv-12088 (MAS) (LHG)<br>18-cv-00089 (MAS) (LHG)<br>18-cv-00343 (MAS) (LHG)<br>18-cv-00383 (MAS) (LHG)<br>18-cv-00846 (MAS) (LHG)<br>18-cv-00893 (MAS) (LHG)<br>18-cv-01223 (MAS) (LHG)<br>18-cv-08595 (MAS) (LHG)<br>18-cv-08705 (MAS) (LHG)<br>18-cv-15286 (MAS) (LHG)<br>18-cv-17393 (MAS) (LHG)<br>20-cv-05478 (MAS) (LHG)<br>20-cv-07460 (MAS) (LHG)<br>20-cv-07462 (MAS) (LHG) | Civil Action No. 15-7658<br><br>JUDGE MICHAEL A. SHIPP<br>JUDGE LOIS H. GOODMAN<br><br>JUDGE DENNIS CAVANAUGH, RET.<br>SPECIAL MASTER<br><br>**(ORAL ARGUMENT REQUESTED)** |

**VALEANT'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL DISCOVERY OF INFORMATION
RELATED TO ITS POTENTIAL CORPORATE SPIN-OFF**

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 848-8615
Facsimile: (973) 297-6615

Paul C. Curnin (*pro hac vice*)
Craig S. Waldman (*pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Valeant Pharmaceuticals International, Inc.*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND......................................................................................................... 2

    A.    The Proposed Transaction.................................................................................... 2

    B.    Plaintiffs' Demand for Information ..................................................................... 4

ARGUMENT .................................................................................................................................. 6

    I.    PLAINTIFFS ARE NOT ENTITLED TO THE DISCOVERY THAT THEY SEEK............................................................................................................................ 6

    II.    PLAINTIFFS' MOTION TO COMPEL IS PROCEDURALLY IMPROPER.... 11

CONCLUSION............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*3600 Michigan Co. v. Infra-Metals Co.*,
   2009 WL 3111422 (N.D. Ind. Sept. 24, 2009) ....................................................................... 8, 9

*Alston v. Clement Pappas & Co.*,
   2005 WL 8175928 (D.N.J. Mar. 17, 2005) ............................................................................... 13

*Blanchard v. Edgemark Financial Corp.*,
   2000 WL 33223385 (N.D. Ill. May 22, 2000) ............................................................................ 9

*Breslin v. Dickinson Township*,
   2011 WL 3359638 (M.D. Pa. Aug. 3, 2011) .............................................................................. 8

*Bull v. United States*,
   143 F. App'x 468 (3d Cir. 2005) ............................................................................................... 11

*In re Chanbond, LLC*,
   2021 WL 1521759 (D. Del. Apr. 16, 2021) ............................................................................. 12

*In re XPO Logistics, Inc.*,
   2017 WL 2226593 (S.D.N.Y. May 22, 2017) ........................................................................... 7

*James v. Osmose, Inc.*,
   2015 WL 9239789 (D.V.I. Dec. 17, 2015) ............................................................................... 12

*Maslanka v. Johnson & Johnson*,
   305 F. App'x 848 (3d Cir. 2008) ............................................................................................... 11

*McCurdy v. Wedgewood Cap. Mgmt. Co.*,
   1998 WL 964185 (E.D. Pa. Nov. 16, 1998) ............................................................................... 9

*Nasufi v. King Cable, Inc.*,
   2017 WL 3334110 (N.D. Tex. Aug. 4, 2017) ............................................................................ 8

*Oriakhi v. United States*,
   165 F. App'x 991 (3d Cir. 2006) ............................................................................................... 11

*Parallel Iron LLC v. NetApp, Inc.*,
   84 F. Supp. 3d 352 (D. Del. 2015) .............................................................................................. 7

*Petrucelli v. Bohringer & Ratzinger*,
    46 F.3d 1298 (3d Cir. 1995) ........................................................................................... 13

*Schmidt v. Mars, Inc.*,
    2011 WL 2421241 (D.N.J. June 13, 2011) ................................................................... 11

*Shelton v. Cty. of Chester*,
    2015 WL 5460623 (E.D.P.A. Sept. 16, 2015) ................................................................ 7

*Suid v. Cigna Corp.*,
    203 F.R.D. 227 (D.V.I. 2001) ........................................................................................ 13

*Tighe v. Shandel*,
    46 F.R.D. 622 (W.D. Pa. 1968) ....................................................................................... 9

*Walgreens Spec. Pharmacy, LLC v. Atrium Admin. Servs.*,
    2020 WL 6042280 (D.N.J. Oct. 13, 2020) ..................................................................... 7

**Federal Rules**

Fed. R. Civ. P. 37 .................................................................................................................. 14

**Other Authorities**

British Columbia Business Corporations Act,
    S.B.C. 2002, c. 57 (Can.) ................................................................................................. 4

**PRELIMINARY STATEMENT**

Plaintiffs' motion asks the Court to propound an interrogatory to Valeant[1] on Plaintiffs' behalf about how hypothetical liabilities may be allocated after a contemplated spin-off of its eye care business is complete. There is no legal basis for Plaintiffs' request.

The proposed spin-off has not yet taken place. As such, the "successor liability" principles on which Plaintiffs now attempt to ground their motion have no possible relevance. As the Court is aware, this reliance on "successor liability" principles is a new argument – Plaintiffs' previous argument to Your Honor and Judge Shipp was that they needed assurances that the entity ultimately responsible for any liability for these actions would have sufficient assets to pay a judgment. *See, e.g.,* ECF 836 at 2-3. Plaintiffs' pivot to "successor liability" instead reflects a concession that the law squarely forecloses the prejudgment discovery into a defendant's financial condition they originally sought. That undisputed legal principle is sufficient reason to deny Plaintiffs' motion.

No matter how it is classified, Plaintiffs' basis for their request remains essentially the same—that the planned spin-off of the Company's eye health business has purportedly caused Plaintiffs "considerable concerns" about their ability to collect hypothetical future judgments in their various actions. This does not justify the discovery under any precedent and Plaintiffs' attempts to reframe their position in order to avoid settled law should be rejected.

Plaintiffs' request is also procedurally improper. There is no outstanding discovery to which Valeant could be compelled to respond. If Plaintiffs' motion had merit—and for the reasons

---

[1] "Valeant" or the "Company" refers to Defendant Valeant Pharmaceuticals International, Inc., now known as Bausch Health Companies Inc. "Mot." and "Mot. at Ex. _" refer to Plaintiffs' Motion to Compel (ECF 846) and the accompanying exhibits to the Declaration of Michael J. Hampson respectively. References to "Ex. _" mean the exhibits to the declaration of Richard Hernandez accompanying this Opposition.

set forth herein, it does not—the most the Court could do would be to grant Plaintiffs leave to serve their proposed interrogatory out of time. Plaintiffs' motion is also untimely. Plaintiffs are a group predominantly comprised of sophisticated hedge funds and asset managers, some of whom remain invested in Bausch Health securities. The spin-off was announced on August 6, 2020, and Plaintiffs did not make their first, informal request for information regarding the spin-off until July 20, 2021—well after the deadline to serve new discovery requests in these actions passed on March 5, 2021. Plaintiffs claim their delay is justified because they were "shock[ed]" by the "disturbing" development, announced publicly on May 4, 2021, that the remaining company after the spin-off was expected to have a leverage ratio of 6.5x-6.7x, rather than 5.5x. Yet Plaintiffs nonetheless waited another two and a half months to first raise the issue with Valeant, and Plaintiffs' motion offers no evidence beyond their own say-so of any purported cause for "concern" over the collectability of any hypothetical future judgment. Thus, even if such discovery was authorized by applicable law (it is not), Plaintiffs have not shown that good cause exists to allow them to take such discovery after the relevant deadlines have passed.

*     *     *

As this Court correctly recognized at the last status conference, Plaintiffs' purported fears about their ability to collect a judgment are "total speculation" and "to allow this [discovery] would be such a chilling effect on big companies and what they do." Tr. at 23:5-24:2. The Court should reject this motion.

### FACTUAL BACKGROUND

#### A. The Proposed Transaction

Bausch Health Companies (formerly known as Valeant) announced that it intended to spin-off its eye health business, Bausch + Lomb, into an independent publicly traded company more than thirteen months ago on August 6, 2020. *See* Mot. at Ex. A. The proposed spin-off is a high-

profile, widely-publicized public company transaction closely watched by market participants like these Plaintiffs.[2] As described in the press release announcing the Company's plans for the transaction, the intended benefits of separating these businesses include improved strategic focus and enhanced financial transparency to better enable stakeholders to value each business independently. *Id*. Bausch Health's CEO, Joseph Papa, explained on a contemporaneous analyst call that Bausch is pursuing the potential spin-off because it believes the current portfolios of businesses will grow best as separate companies, in line with spin-off transactions pursued by others in the industry such as Alcon AG. *See* Ex. 1 (transcript of Aug. 6, 2020 earnings call announcing spin-off) at 4. The transaction is being guided by major law firms and premier investment banks including Wachtell, Lipton, Rosen & Katz, Morgan Stanley, and Goldman Sachs.

On May 4, 2021, the Company announced that after the spin-off it expected a leverage ratio for Bausch + Lomb of not more than 2.5x and a leverage ratio for the remaining entity currently referred to as Bausch Health Companies of 6.5-6.7x. Mot. at Ex. D. Both entities are expected to have *lower* leverage ratios than the current combined company which began the year 2021 at more than 7x levered and expects to end the year at approx. 6.8x levered. *See* Ex. 2 (transcript of Sept. 13, 2021 Morgan Stanley Annual Global Healthcare Conference) at 40. The Company has stated publicly that the spin-off will only be possible when both entities are less levered than the Company is now. *See, e.g.*, Ex. 3 at 49-50 ("[S]pinning off the eye health business to unlock value will only work, if post spin, the financial markets see attractive opportunities for

---

[2] *See e.g.,* Jared Hopkins and Carla Lombardo, *Bausch Health to Spin Off Eye-Care Business*, Wall St. J., (Aug. 6, 2020), https://www.wsj.com/articles/bausch-health-to-spin-off-eye-care-business-11596709809; John Lauerman & Cristin Flanagan, *Bausch Health Soars on Plans to Spin Off Eye-Care Business*, Bloomberg, (Aug. 6, 2020), https://www.bloomberg.com/news/articles/2020-08-06/bausch-health-soars-after-report-of-eye-care-spinoff-plans.

value growth in both entities. A factor in how the markets will value each entity will be in the pro forma leverage of both of those entities. Both must be properly capitalized, such that they retain the financial flexibility, access to capital and the freedom to operate. ").

The planned transaction remains in progress and subject to regulatory oversight. It will not happen overnight. The Company has filed a draft Form S-1 with the SEC relating to the proposed Bausch + Lomb initial public offering, which will become public after SEC review and will include full financial information relating to Bausch + Lomb on a pro-forma basis. *See* Ex. 4 at 71 (disclosing filing of S-1). There will be an intervening period between the public filing of the Form S-1 and the closing of the ultimate spin-off transaction; the spin-off transaction will not happen immediately or without public disclosure of the final transaction structure. Because Bausch Health Companies is a company incorporated under the laws of a Canadian province (British Columbia), the spin-off transaction must also pass muster under applicable provincial and federal laws, which will require shareholder approval, Canadian court approval, and/or satisfaction of a statutory corporate law solvency test. *See, e.g.*, British Columbia Business Corporations Act, S.B.C. 2002, c. 57, ss. 70(2), 78(1), 79(1), 288-291 (Can.).

### B.     Plaintiffs' Demand for Information

On July 20, 2021, nearly a full year after the transaction was announced, Plaintiffs wrote to the Company stating, "As active litigants with claims for billions of dollars of damages against Bausch Health, we ask that Bausch Health immediately provide us with certain information and assurances concerning the financial implications of the spin-off." Ex. 5 at 1. Plaintiffs alleged, without support, that "it appears that the transaction may be designed, at least in part, to divert valuable assets and cash away from potential judgment creditors." *Id.* at 2. Plaintiffs demanded that Valeant "let us know where the multi-billion-dollar contingent liability will be carried post-transaction: Bausch + Lomb or Bausch Pharma (or some other entity)" and provide "supporting

4

data to confirm that the entity that will carry that contingent liability on its balance sheet will have sufficient assets and liquidity to pay judgments totaling in excess of $3 billion to the Direct Action Plaintiffs." Plaintiffs provided no legal or factual support for their demand, or for their assertions regarding the transaction or the potential value of their claims.

In response, Valeant noted that the transaction had been announced nearly a year prior, that Plaintiffs had not sought this information formally or informally at any point prior to July 20, 2021, and that Plaintiffs provided no legal basis for their entitlement to this information. Ex. 6 at 1. Valeant also noted that the letter was rife with misstatements and misrepresentations, that the leverage ratios cited therein did not support Plaintiffs' assertions, and that the Company would be "publicly disclosing certain further information regarding the carrying of any liabilities" before the transaction closed. *Id.* at 2. Valeant also confirmed the information contained in its public disclosures and affirmed that it was adhering to all laws and regulations in connection with the contemplated spin-off transaction. *Id.*

Plaintiffs did not follow up with legal support for their demands or otherwise respond. Instead, Plaintiffs raised the issue at the August 18, 2021 status conference and separately argued to Judge Shipp, in a series of unsolicited letters, that the spin-off transaction was somehow a basis for setting trial dates in 2022 in each of the twenty-one remaining direct actions. *See* ECF 800, 836 (Plaintiffs' letters); ECF 803, 840 (Valeant's responses).

As they concede, Plaintiffs have never issued any actual discovery for information regarding the spin-off transaction. Plaintiffs have also not provided any substantiation for their assertion that if they prevail at trial, they would collectively expect to achieve damages "in excess of $3 billion plus prejudgment interest." Mot. at 3. They claim, without supporting documentation, that they used the methodology set forth in the Plan of Allocation approved by the

5

Court in connection with Valeant's $1.2 billion settlement of the class action. But even assuming that is true, the Plan of Allocation expressly disclaims the use to which Plaintiffs seek to put it—estimating "the amounts that Class Members might have been able to recover after a trial"—and states that it only serves to provide notional claim values for use in calculating distributions to class members out of the $1.2 billion settlement fund:

> The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Class Members might have been able to recover after a trial. Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. The computations under the Plan of Allocation are only a method to weigh the claims of claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

Case No. 15-cv-7568, ECF 539-5 (Notice of Pendency and Proposed Settlement of Class Action) at 13. Plaintiffs also provide no evidence whatsoever to back up their purported "concerns" over collectability of hypothetical future judgments, the post-transaction companies' leverage ratios, or their contention that the announced change in the remaining company's expected leverage ratio from 5.5x to 6.5x-6.7x "shock[ed] the market," Mot. at 4–5, instead relying entirely on the unsworn, conclusory assertions in their briefing.

## ARGUMENT

### I.  PLAINTIFFS ARE NOT ENTITLED TO THE DISCOVERY THAT THEY SEEK

Plaintiffs offer no on-point legal authority for the idea that Valeant must disclose—while the spin-off transaction is still being developed—which resulting entity will be responsible for potential future liabilities that may arise from these actions. As this Court recognized at the past status conference, discovery into a defendant's financial condition is irrelevant under the Federal Rules of Civil Procedure, and in any event, Plaintiffs' concern is wholly speculative and lacks factual support. Plaintiffs now concede that it is settled law that discovery into a defendant's

6

ability to pay is not permissible pre-judgment. However, the basis for this motion remains the speculative and baseless fear that Plaintiffs will be frustrated in their ability to collect potential future judgments based on Valeant's financial condition after the spin-off. *See, e.g.*, Mot. at 6 ("The recent announcements by Valeant about the Spin-Off caused concerns for the Direct Action Plaintiffs. Specifically, the Spin-Off will change the entity or entities responsible for the contingent liabilities related to the Direct Actions, and the transfer of substantial assets to a new entity could be extremely detrimental to the Direct Action Plaintiffs' ability to collect on the judgments they are pursuing in these litigations."). The relief Plaintiffs seek is therefore unavailable and the motion must be denied.

Under Rule 26, Plaintiffs are not permitted to obtain discovery about a defendant's ability to pay a judgment prior to obtaining a judgment, absent claims for punitive damages not asserted here. *See, e.g.*, *Walgreens Spec. Pharmacy, LLC v. Atrium Admin. Servs.*, 2020 WL 6042280, at *5 (D.N.J. Oct. 13, 2020) ("Federal Rule of Civil Procedure 26 'does not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence.'") (quoting *McCurdy v. Wedgewood Capital Mgmt. Co.*, 1998 WL 964185, at *10 (E.D. Pa. Nov. 16, 1998)); *Parallel Iron LLC v. NetApp, Inc.*, 84 F. Supp. 3d 352, 362 (D. Del. 2015) (denying request for discovery of party's ability to pay legal fees because "ordering discovery before judgment has been entered would render Rule 69(a)(2) superfluous."); *Shelton v. Cty. of Chester*, 2015 WL 5460623, at *1 (E.D.P.A. Sept. 16, 2015) ("Prior to judgment, 'facts about a defendant's financial status are not discoverable as such.'") (quoting Fed. R. Civ. P. 26 Advisory Committee's note to 1970 amendment).

7

This prohibition extends to discovery related to prospective liability arising from proposed corporate transactions contemplated by parties to pending litigation. *See Walgreens Spec. Pharmacy*, 2020 WL 6042280, at *1 (denying discovery that was aimed at establishing future successor liability of entities "created in connection with the potential acquisition of certain assets of Defendant."). Courts recognize—as this Court also recognized at the August 18 conference—that, in addition to the prohibition on discovery into financial condition, such discovery is both improperly speculative and unduly intrusive into the corporate transaction process. *See, e.g.*, *In re XPO Logistics, Inc.*, 2017 WL 2226593, at *11 (S.D.N.Y. May 22, 2017) (denying request for documents concerning "contemplated" transactions because the plaintiff's interests "cannot possibly be harmed by a transaction that has not been carried out, and thus such [sic] the production of such documents would [] not be relevant to their claims and would be unduly intrusive into the corporate decisionmaking of the relevant entities."); *Breslin v. Dickinson Township*, 2011 WL 3359638, at *2 (M.D. Pa. Aug. 3, 2011) (denying a motion to compel deposition testimony about potential future parties to the litigation because "it would be inappropriate to allow parties to engage in discovery on proposed claims, issues and persons which are not currently part of a lawsuit, solely on the basis of a speculative assertion that these claims and parties may someday become part of the pending litigation.").

Plaintiffs cite two cases for the proposition that they are entitled to discovery of "***who is liable for the claims at issue***." Mot. at 8 (emphasis added). Those cases are inapposite. They address discovery into the liabilities of existing entities, not circumstances where, as here, a transaction is in progress and the party seeking discovery speculates that at some point in the future, after the transaction, a new entity ***may become*** liable.

8

In the first case, the plaintiff served subpoenas on a non-party it believed to *have already been a successor* to the defendant because the defendant entity had become defunct and stopped responding to the Court. *Nasufi v. King Cable, Inc.*, 2017 WL 3334110, at *1-2 (N.D. Tex. Aug. 4, 2017). The Court denied in part a motion to quash, finding the information at issue relevant "both to an analysis of whether DComm could face successor liability under the FLSA and, more importantly, to Nasufi's pleaded claim against King Cable, on which a motion for default judgment is pending." *Id.* at *6. In the second case, the plaintiffs served interrogatories about the details of certain past acquisitions to determine "whether another party **has assumed** liability for any obligations that could be incurred by this lawsuit." *3600 Michigan Co. v. Infra-Metals Co.*, 2009 WL 3111422, at *4 (N.D. Ind. Sept. 24, 2009) (emphasis added). Unlike here, the acquisitions at issue had already taken place. And, in allowing the discovery, the court was explicit that "a defendant's financial condition generally is not permissible ground for inquiry during the discovery phase." *Id.* at *3. Thus, setting aside the merits of these two cases, they do not support Plaintiffs' request for discovery into the contemplated spin-off transaction, which serves no purpose but investigating Plaintiffs' "concerns" regarding Valeant's financial condition and is thus impermissible discovery into a defendant's financial condition under another name.

The remaining cases cited by Plaintiffs provide no support. In *Tighe v. Shandel*, 46 F.R.D. 622, 624-25 (W.D. Pa. 1968), the court overruled a defendant's objections to interrogatories seeking information regarding defendant's insurance coverage. However, discovery regarding a defendant's insurance coverage is the one area specifically exempted from the general prohibition against discovery into a defendant's ability to pay.[3] *Tighe* thus has nothing to do with whether

---

[3] *See, e.g.*, *McCurdy v. Wedgewood Cap. Mgmt. Co.*, 1998 WL 964185, at *10 (E.D. Pa. Nov. 16, 1998) ("Although discovery of the existence and contents of liability insurance agreements is

Plaintiffs here are entitled to the discovery they seek. And *Blanchard v. Edgemark Financial Corp.*, 2000 WL 33223385 (N.D. Ill. May 22, 2000), is not about discovery at all, but instead permitted amendment of a complaint to add successor liability claims six years after the alleged successor merged with the defendant. As no alleged successor entity exists here and Plaintiffs are not seeking to amend their complaints, *Blanchard* has no possible bearing on this motion.[4]

Finally, Plaintiffs wrongly assert that if their "concerns were unfounded, the simple solution would have been for Valeant to provide the requested information." Mot. at 6–7. Plaintiffs have also described the information they seek through this motion as "very basic information" that the Company can easily provide. *See* ECF 836 at 2. This characterization of Plaintiffs' demand is a significant oversimplification. The serious issues that attempting to provide this information at this time would present for Valeant are further grounds to deny the motion. Plaintiffs, as well as the rest of the market, will have access to additional information about the carrying of any liabilities in due course as part of the disclosure process, as Valeant has expressly advised. *See* Ex. 6 at 2 ("Bausch anticipates publicly disclosing certain further information regarding the carrying of any liabilities. You should review that information when it is filed, just as any other interested party will be able to do.").

Because the transaction has not yet been finalized, the information sought by Plaintiffs is confidential work product that remains under consideration by the Company and its advisors.

---

permitted, Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment…") (quotations omitted).

[4] Plaintiffs assert in a footnote that the discovery they seek could be used to assist Plaintiffs in "the initiation of an attachment procedure pursuant to Federal Rule of Civil Procedure 64(a) and N.J. Stat. Ann. § 2A:26-2." Mot. at 9. Plaintiffs provide no basis to believe that this extraordinary remedy could even possibly be warranted here. Moreover, this effectively concedes that the discovery at issue is impermissible discovery into a defendant's financial condition, dressed up as something relevant to some hypothetical future successor liability claim.

10

Where liabilities will be placed and how the transaction will be structured is subject to the advice of legal counsel. Plaintiffs provide no legal authority for the proposition that they are entitled to information about a transaction while it is still under consideration and before it occurs. Nor do Plaintiffs provide any authority suggesting that the Company must waive privilege and work-product protections to give Plaintiffs information about current internal deliberations regarding transaction structure issues based on the speculative concerns Plaintiffs identify. The Court recognized the legitimacy of such concerns when it noted that "to allow this [discovery] would be such a chilling effect on big companies and what they do." Tr. at 23:5-24:2. Nothing Plaintiffs articulate in their motion suggests otherwise.

Plaintiffs also ask this Court to overlook the Company's obligations under Regulation FD to refrain from selectively disclosing material non-public information to those who may trade on that information. Many of these sophisticated hedge funds and money managers are current holders of Bausch Health securities who could take the requested information and use it to profit. Contrary to Plaintiffs' arguments, it does not follow that simply because there is a confidentiality order in place in this litigation, the Company may freely disclose information to a small number of current market participants about its future plans. That information has no relevance to litigation over events that occurred from 2013-2016, and is outside the scope of the discovery contemplated when the parties negotiated the confidentiality order. This potential for impact on the financial markets is another reason for the Court to deny Plaintiffs' motion.

## II.   PLAINTIFFS' MOTION TO COMPEL IS PROCEDURALLY IMPROPER

Plaintiffs' motion to compel should also be denied because it is untimely and does not comport with the Federal Rules of Civil Procedure.

11

First, Plaintiffs' motion is fatally flawed because it is untimely. Plaintiffs do not dispute that the deadline for service of all interrogatories, requests for admission, and requests for production was March 5, 2021, seven months after the proposed spin-off was first disclosed. *See* ECF 634. Plaintiffs' first informal information request came more than four months after that March 5 deadline. Where a discovery request is untimely, the court may refuse to compel compliance with that request. *See, e.g., Maslanka v. Johnson & Johnson*, 305 F. App'x 848 (3d Cir. 2008) (affirming denial motion to compel where discovery demands were untimely); *Oriakhi v. United States*, 165 F. App'x 991 (3d Cir. 2006) (same); *Bull v. United States*, 143 F. App'x 468 (3d Cir. 2005) (same). The court may also refuse to entertain a motion to compel filed outside the discovery deadline. *See Schmidt v. Mars, Inc.,* 2011 WL 2421241, at *3 (D.N.J. June 13, 2011) (affirming magistrate judge's denial of motion to compel as untimely where motion was filed one day after the close of fact discovery); *James v. Osmose, Inc.*, 2015 WL 9239789, at *5 (D.V.I. Dec. 17, 2015) (denying "untimely" motion to compel filed thirteen days after the discovery deadline had expired). This alone is sufficient grounds to deny the motion.

No good cause exists that justifies Plaintiffs' noncompliance with the discovery deadline. Plaintiffs do not claim that they were unaware of the spin-off when it was announced in August 2020. Plaintiffs' claim that the expected leverage ratios for the entities resulting from the spin are a "new" concern excusing Plaintiffs' tardiness is meritless, both because Plaintiffs did not raise concerns regarding expected leverage ratios until July 20, 2021, two and a half months after they were publicly disclosed on May 4, 2021, and because Plaintiffs have done nothing to substantiate this as a basis for concern—particularly as both entities are expected to have *lower* leverage ratios than the Company has currently. These supposed concerns, along with vague references to the intended IPO of Solta and the executive teams expected to lead the companies post-spinoff, are

12

simply a smokescreen for Plaintiffs' dilatory conduct. *See, e.g.*, *In re Chanbond, LLC*, 2021 WL 1521759, at *5 (D. Del. Apr. 16, 2021) (refusing to permit additional discovery after discovery period had closed where defendants argued new information, not previously available, necessitated such discovery). Plaintiffs' contention that the Court has allowed certain fact discovery to continue is also meritless. This Court has allowed discovery that was properly sought before the March 5, 2021 deadline to continue, but has not permitted the parties to issue new interrogatories, requests for production, or requests for admission after this deadline. And Plaintiffs have not shown good cause to allow such new discovery here.

Plaintiffs' motion should also be denied because there is no outstanding discovery with which Valeant can be compelled to comply. Motions to compel are governed by Rule 37 of the Federal Rules of Civil Procedure, and that rule requires the moving party to serve proper discovery authorized by Rules 26 through 36; receive assertedly inadequate responses; and then meet and confer with the responding party before filing a motion. Thus, Rule 37(a)(3)(b) provides in relevant part: "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: . . . (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34."

Plaintiffs do not dispute that a formal request for production of documents in accordance with Rule 34, or an interrogatory pursuant to Rule 33, was never propounded on the Company. *See* Mot. at 11 ("Direct Action Plaintiffs have not served a formal written discovery request seeking this information.") As such, "Plaintiff's motion does not comply with the Federal Rules of Civil Procedure." *Alston v. Clement Pappas & Co.*, 2005 WL 8175928, at *2 (D.N.J. Mar. 17,

2005) ("Plaintiff's informal letter request here does not comply with the procedure set forth in Rule 34, and therefore does not satisfy the prerequisite for filing a motion to compel under Rule 37."); *see also, Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1310-11 (3d Cir. 1995) (District Court properly denied motion to compel where movant failed to serve discovery requests as required under Rule 37); *Suid v. Cigna Corp.*, 203 F.R.D. 227, 228 (D.V.I. 2001) (informal requests for discovery are not adequate for a motion to compel). Because of this, Plaintiffs' motion is, at best, a procedurally irregular motion for leave to serve an interrogatory after the discovery deadline. That motion should be denied on the merits for all the reasons set forth above. But even assuming the motion had merit, an order under Rule 37 would be inappropriate because there is no properly served discovery with which to compel compliance.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' motion to compel.

DATED: September 24, 2021

| **McCARTER & ENGLISH, LLP** | **SIMPSON THACHER & BARTLETT LLP** |
|---|---|
| /s/ *Richard Hernandez* | |
| Richard Hernandez | Paul C. Curnin (*pro hac vice*) |
| Four Gateway Center | Craig S. Waldman (*pro hac vice*) |
| 100 Mulberry Street | 425 Lexington Avenue |
| Newark, NJ 07102 | New York, NY 10017-3954 |
| Telephone: (973) 848-8615 | Telephone: (212) 455-2000 |
| Fax: (973) 297-6615 | Fax: (212) 455-2502 |
| | |
| *Local counsel for Valeant Pharmaceuticals International, Inc.* | *Counsel for Valeant Pharmaceuticals International, Inc.* |