**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Case No.: 3:15-CV-07658-MAS-LHG **ORDER & OPINION OF THE SPECIAL MASTER** |

This matter comes before the Special Master by way of correspondence submitted by Class Plaintiff City of Tucson ("Class Plaintiff"); Direct Action Plaintiffs;[1] Defendants Valeant Pharmaceuticals International, Inc. n/k/a Bausch Health Companies Inc. ("Valeant"), Tanya Carro, Howard B. Schiller, Deborah Jorn, J. Michael Pearson, and the Stock Underwriter Defendants (collectively, the "Valeant Defendants"); and Defendant PricewaterhouseCoopers LLP ("PwC") dated July 23, 2021, concerning whether it is appropriate at this stage in discovery to decoordinate the Direct Actions from the Class Action. The issue was raised by the parties during the July 8, 2021, status conference before the Special Master. The Special Master issued an Order, dated July 9, 2021 (the "July 9 Order"), requesting that the parties submit correspondence concerning whether it is the appropriate time to decoordinate the actions. On July 30, 2021, as permitted by the Special Master's July 9 Order, the above-referenced parties each submitted a supplemental correspondence on the issue. Also, on July 30, 2021, Plaintiffs in *Hound Partners Offshore Fund LP v. Valeant Pharmaceuticals, Inc. (Hound Partners)*, No. 18-cv-8705 (MAS) (LHG), Hound Partners Offshore Fund, LP, Hound Partners Long Master, LP, and Hound Partners Concentrated Master, LP (collectively, "Hound Partners Plaintiffs"), submitted correspondence on the issue. After considering the submissions

---

[1] The Direct Action Plaintiffs are parties to the following case nos.: 16-cv-07321; 16-cv-07324; 16-cv-07494; 16-cv-07496; 17-cv-06513; 17-cv-07636;17-cv-12088; 18-cv-00089; 18-cv-00343; 18-cv-00383; 18-cv-17393; 18-cv-00846; 18-cv-00893; 18-cv-01223; 18-cv-08595; 18-cv-08705; 18-cv-15286; 18-cv-17393; 20-cv-02190; 20-cv-05478; 20-cv-07460; and 20-cv-07462.

of the parties, and prevailing case law, and based upon the following, it is the opinion of the Special Master that: (1) the cases shall remain coordinated at this time; (2) the PSLRA stay is hereby lifted and discovery is permitted to proceed against PwC in the Direct Actions; (3) the PSLRA stay shall remain in effect in the Class Action; (4) the Valeant Defendants' request for a "bellwether" approach to summary judgment motions is denied; and (5) discovery deadlines shall be extended as set forth herein.

## **BACKGROUND**

The Court has previously summarized many of the factual allegations at issue in this matter and the Special Master assumes the parties' familiarity with those allegations. *See e.g.*, *In re Valeant Pharm. Int'l, Inc. Sec. Litig. (In re Valeant)*, No. 15-7658, 2017 WL 1658822 (D.N.J. Apr. 28, 2017), *reconsideration denied*, No. 15-7658, 2017 WL 3880657 (D.N.J. Sept. 5, 2017). Thus, the Special Master only recounts the factual background and procedural history necessary to decide the instant matter.

On October 22, 2015, Laura Potter brought a putative class action on "behalf of all persons who purchased or otherwise acquired Valeant stock between February 23, 2015 and October 20, 2015, inclusive …, against Valeant and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 …." (*In re Valeant Pharm. Int'l, Inc. Sec. Litig. (Valeant Class Action)*, No. 15-7658 (D.N.J.) Compl. ¶ 1, ECF No. 1.) On May 31, 2016, the Court consolidated Ms. Potter's action with several other actions, and pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, the Court appointed Lead Counsel and a Lead Plaintiff in the consolidated action. (*Valeant Class Action*, Order 3, ECF No. 67.)

On June 24, 2016, Lead Plaintiff and Named Plaintiff filed a Consolidated Class Complaint (the "Class Complaint"). (*Valeant Class Action*, Class Compl., ECF No. 80.) The Class Complaint

was "brought on behalf of purchasers of Valeant equity securities and senior notes between January 4, 2013 and March 15, 2016, … to pursue remedies" under Sections 10(b) ("Section 10(b)") and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), Securities Exchange Commission Rule 10b-5, and Sections 11 ("Section 11"), 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"). (*Id.* ¶ 1.) The Class Complaint also asserted a Section 11 claim against PwC.

On September 13, 2016, PwC filed a Motion to Dismiss the Class Complaint pursuant to Rule 12(b)(6). (*Class Action*, ECF No. 165.) PwC argued that Plaintiff the City of Tucson failed to sufficiently plead its purported purchase of shares directly in the March 2015 Stock Offering[2] and that Plaintiff the City of Tucson lacked standing to bring a Section 11 claim relating to the March 2015 Stock Offering. (*Id.*) On April 28, 2017, the District Court denied PwC's motion to dismiss, finding that Class Plaintiff sufficiently pled standing and a material omission with regard to the Section 11 claim. *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-7658 (MAS) (LHG), 2017 WL 1658822, at *2, 13-14 (D.N.J. Apr. 28, 2017). (*Class Action*, ECF No. 216.)

On January 4, 2018, Hound Partners Plaintiffs filed a Complaint against various defendants[3] including PwC. (*Hound Partners*, ECF No. 1). Hound Partners Plaintiffs asserted a Section 11 claim against PwC, which is identical to the Section 11 claim asserted against PwC in the Class Complaint. Both complaints allege that PwC is liable under Section 11 for alleged misrepresentations in connection with Valeant's secondary offering of common stock on March

---

[2] "March 2015 Stock Offering" refers to the offering in March 2015 of 7.3 million shares of Valeant common stock at a price of $199 per share. (*Class Action*, Class Compl., ECF No. 80, at ¶ 559.)

[3] The various defendants include Valeant Pharmaceuticals International, Inc., J. Michael Pearson, Howard B. Schiller, Robert L. Rosiello, Deborah Jorn, Ari S. Kellen, Tanya Carro, Robert A. Ingram, Ronald H. Farmer, Colleen Goggins, Theo Melas-Kyriazi, Anders Lonner, Robert N. Power, Norma Provencio, Katharine B. Stevenson, PwC, Deutsche Bank Securities Inc., HSBC Securities (USA) Inc., MUFG Securities Americas Inc. f/k/a Mitsubishi UFJ Securities (USA) Inc., DNB Markets Inc., Barclays Capital, Inc., Morgan Stanley & Co., LLC, RBC Capital Markets, LLC, and Suntrust Robinson Humphrey, Inc. (No. 81-cv-08705, ECF No. 1).

27, 2015. On May 22, 2018, PwC filed a motion to dismiss the Section 11 claim in the complaint. (*Hound Partners*, ECF No. 101.) On September 14, 2018, the District Court denied PwC's motion to dismiss the Section 11 claim. (*Id.* at ECF No. 162.)

On October 12, 2018, Magistrate Judge Goodman entered a Case Management Order ("Coordination Order") that coordinated the Class Action with 30 individual suits involving similar issues of law and alleged facts. (*Class Action*, ECF 369.) The Court found that "coordination for pretrial and discovery purposes would promote efficiency and judicial economy[.]" (*Id.*) The Court further found that any actions later filed in the Court that were identified as related matters would automatically be coordinated with the Class Action without the necessity of future motions or orders. (*Id.*) The Court identified the Class Action as the "Lead Case." (*Id.*) The Class Action and the Direct Actions have remained coordinated since the Coordination Order.

On November 20, 2019, defendants in *Hound Partners* filed a motion for judgment on the pleadings on Hound Partners Plaintiffs' Securities Act claims, including their sole claim against PwC (under Section 11), contending that the claims were time-barred and that *American Pipe*[4] tolling did not apply to Hound Partners Plaintiffs' pre-class-certification action. (*Hound Partners*, ECF No. 191.) On June 26, 2020, the Special Master issued a Report and Recommendation ("R&R") recommending that the Court grant the motion for judgment on the pleadings, concluding that Hound Partners Plaintiffs' Section 11 claim was barred by the statute of limitations. (*Hound Partners*, ECF 202.) On July 17, 2020, the *Hound Partners* defendants filed a motion for the Court to adopt the R&R, while Hound Partners Plaintiffs filed objections to the Special Master's R&R. (*Hound Partners*, ECF Nos. 204 and 205.) While those motions were pending before the District

---

[4] *American Pipe & Construction Co. v. Utah (American Pipe)*, 414 U.S. 538 (1974).

Court, the Third Circuit issued its opinion in *Aly v. Valeant Pharmaceuticals International, Inc.*, No. 19-3326 (3d Cir. June 16, 2021), which held that *American Pipe* tolling applies to putative class members who file a direct action prior to a decision on class certification. On June 17, 2021, Hound Partners Plaintiffs submitted correspondence to the District Court indicating that the Third Circuit's decision resolved the competing motions to adopt/reject the Special Master's R&R on the motion for judgment on the pleadings. (*Hound Partners*, ECF No. 216.) On July 21, 2021, the *Hound Partners* defendants submitted a letter withdrawing their motion to adopt the Special Master's R&R on the motion for judgment on the pleadings. (*Hound Partners*, ECF No. 217.) On July 28, 2017, the District Court granted the *Hound Partners* defendants' request to withdraw their motion to adopt. (*Hound Partners*, ECF No. 218.)

On December 10, 2019, PwC filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) as to the one count in the Class Complaint against PwC under Section 11 of the Securities Act ("PwC Rule 12(c) Motion"). PwC argued that Plaintiff suffered no cognizable damages because it was able to sell its offerings at a higher price than the purchase price. (*Class Action*, ECF No. 563, at pp. 3-4.) PwC further argued that the proper methodology to determine whether Plaintiff suffered any recoverable damages was "Last-In-First-Out" or "LIFO." (*Id.* at p. 4.) PwC contended that the Court should determine that LIFO is the appropriate calculation, as opposed to "First-In-First-Out" or "FIFO," and therefore, find that Plaintiff failed to properly plead damages. (*Id.*) In an R&R dated May 20, 2020, the Special Master recommended that the Court deny PwC's Rule 12(c) Motion, rejecting PwC's request to find that LIFO is the only recognized method of calculating damages at this time and that it should be applied at the pleadings stage as a matter of law ("May 20 R&R"). (*Class Action*, ECF No. 563.) The May 20 R&R notes that this is PwC's second application before the Court seeking a dismissal of the Section 11 claim. (*Id.* at

p. 3.) On June 9, 2020, PwC objected to the May 20 R&R. (*Class Action*, ECF No. 573.) On September 21, 2021, the District Court overruled PwC's objection to the May 20 R&R. (*Class Action*, ECF No. 848.) The District Court ruled that Class Plaintiff is not required to plead damages at the pleading stage, and declined to adopt any specific method of calculating damages as a matter of law at the pleadings stage. (*Id.*)

On December 17, 2019, Class Plaintiff filed a motion for leave to amend its complaint to add a Section 10(b) claim against PwC ("Motion for Leave to Amend"). In an R&R dated July 17, 2020, the Special Master recommended that the Court grant Class Plaintiff's Motion for Leave to Amend ("July 17 R&R"). (*Class Action*, ECF No. 602.) On August 7, 2020, PwC objected to the July 17 R&R, which remains pending before the District Court. (*Class Action*, ECF No. 609.) PwC has expressed its intention to file a motion to dismiss the Section 10(b) claim should the Court grant Class Plaintiff's Motion for Leave to Amend.

Under the PSLRA, 15 U.S.C. § 78u-4(b)(3)(B), "[i]n any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to any party." PwC contends that both its Rule 12(c) Motion against Class Plaintiff and Class Plaintiff's Motion for Leave to Amend each independently triggered a PSLRA stay and barred discovery of, or by, PwC in the Class Action. No party appears to dispute this contention. Although there are no pending motions to dismiss in any of the Direct Action cases, the PSLRA stay has been applied in these cases by virtue of the coordination of these matters and by agreement of the parties. (ECF Nos. 529, 634.)

On July 8, 2021, the Special Master held a status conference in these matters, during which the issue of decoordination was raised. The Special Master issued the July 9 Order

4495036-1

directing the parties to submit correspondence by July 23, 2021, setting forth their positions on decoordination. On July 23, 2021, the Special Master received correspondence from Class Plaintiff, the Direct Action Plaintiffs, PwC, and the Valeant Defendants. The July 9 Order also permitted the parties to submit a reply correspondence. On July 30, 2021, the Special Master received a letter from the Hound Partners Plaintiffs, as well as a reply correspondence from Class Plaintiff, the Direct Action Plaintiffs, PwC, and the Valeant Defendants.

<u>**ARGUMENTS OF THE PARTIES**</u>

*Class Plaintiff*

Class Plaintiff argues that it no longer makes sense for all of the cases to be stayed pending the Court's decision on whether to adopt the Special Master's May 20 and July 17 R&Rs.[5] Class Plaintiff further argues that there are two reasonable paths forward: the first, which Class Plaintiff prefers, is that the cases should remain coordinated and move forward through the completion of fact and expert discovery, which is possible by lifting the PSLRA stay. Alternatively, if the stay is not lifted, the cases should be decoordinated, as the opt-out plaintiffs propose, to allow those cases to proceed while the Class Action awaits resolution of the objections to the Special Master's May 20 and July 17 R&R. Class Plaintiff disagrees with PwC's proposal, that all of the cases should remain coordinated and stayed pending resolution of the objections. Class Plaintiff argues that PwC's claim of prejudice – that its witnesses will have to sit for two days of depositions – is inaccurate because almost all witnesses have sat for two days of deposition pursuant to the Deposition Protocol (ECF No. 638). Class Plaintiff contends that PwC overstates its purported

---

[5] The Special Master notes that the July 23 and July 30, 2021, submissions were received prior to the District Court's September 21, 2021, adopting the May 20 R&R. However, this Order and Opinion will leave references to the May 20 R&R where necessary for the sake of accurately representing the parties' arguments as they pertain to the within dispute.

4495036-1

harm, because its witnesses are not at risk of a second deposition, but rather, are only at risk of appearing for non-consecutive days of deposition. Class Plaintiff contends that it has a lot of fact discovery to complete, which it has been prohibited from engaging in due to the stay, and that it cannot proceed to expert discovery and dispositive motion practice until it completes fact discovery.

Class Plaintiff further contends that the coordination of these cases has now hit a crossroads. The opt-out plaintiffs have focused on their claims against Valeant and intend to only take a few PwC depositions. However, Class Plaintiff has settled with Valeant and its sole remaining claims are against PwC. Class Plaintiff contends that its fact discovery was interrupted by multiple stays[6] and it needs approximately six months (possibly longer) to complete it. Specifically, Class Plaintiff contends that it needs PwC to complete its document production prior to engaging in any PwC depositions. Class Plaintiff also contends that PwC has not responded to eight interrogatories and many more requests for admissions. Class Plaintiff also intends to serve additional interrogatories and requests for admissions when it is permitted to do so. The opt out plaintiffs and the Valeant Defendants have indicated a desire for up to five PwC depositions. However, Class Plaintiff contends that it will need to depose more PwC witnesses, including some witnesses who are outside of the United States and require the time-consuming letter rogatory process. Class Plaintiff also intends to move to overrule the Valeant Defendants' privilege and work product assertions regarding the ad hoc committee investigation. Class Plaintiff argues that the best course of action is to lift the PSLRA stay, extend discovery, and allow the cases to proceed

---

[6] The first stay was a result of the criminal case against a former Valeant (and former PwC) employee. (*Class Action*, ECF No. 291.) That stay was lifted on June 5, 2018. On September 28, 2018, Class Plaintiff amended the complaint to bring insider trading claims against ValueAct, which began another stay. (*Class Action*, ECF No. 610-1 at 5-6, ECF No. 396.) That stay was lifted on June 30, 2019. On December 17, 2019, Class Plaintiff filed a motion to amend to bring a Section 10(b) claim against PwC. (*Class Action*, ECF No. 610-1.) The Special Master granted Class Plaintiff's motion, which PwC appealed, and that appeal is currently pending in the District Court. (*Class Action*, ECF Nos. 602, 609, 614, 615, 618, and 620.)

4495036-1

in a coordinated fashion. However, if the Special Master is inclined to keep the current discovery schedule, Class Plaintiff would then support decoordination because it requires more time to complete fact discovery than the opt out plaintiffs.

Class Plaintiff argues that notwithstanding the Coordination Order (ECF No. 369), the Special Master has the discretion to modify the schedule and pre-trial proceedings. Class Plaintiff contends that courts have lifted the stay prior to a ruling on a motion to dismiss, including when a plaintiff's case is "far from frivolous." *In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-cv-03785, 2021 WL 2414763, at *6 (S.D. Ohio June 14, 2021).  Furthermore, at the time that the Coordination Order was entered nearly three years ago, no one could have foreseen a global pandemic and judicial vacancies that would lead to unavoidable delays in the case. Class Plaintiff argues that the PSLRA discovery stay was enacted to prohibit discovery prior to a decision on a motion to dismiss to spare defendants the burden of discovery from meritless claims. *See*, *e.g.*, *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 335 F.R.D. 54, 75 (M.D. Pa. 2020). Class Plaintiff argues that PwC's motion to dismiss Class Plaintiff's Section 11 claim was already denied. Therefore, regardless of the ruling on Class Plaintiff's motion to amend the complaint to add a Section 10(b) claim, discovery will proceed against PwC. Class Plaintiff contends that the purported prejudice to PwC by lifting the stay is far outweighed by the prejudice to the other parties by allowing the stay to continue, including that the cases have been pending for nearly six years and that the District Court evidenced its desire to keep the cases moving forward and avoid undue delay by appointing a Special Master.

*Direct Action Plaintiffs*

Direct Action Plaintiffs argue that the Special Master should decoordinate the Direct Actions, none of which are subject to the PSLRA stay, from the Class Action. Direct Action Plaintiffs further argue that they are ready to conclude fact discovery, with the exception of discovery of PwC, and move forward to expert discovery and dispositive motions. Direct Action Plaintiffs contend that despite being ready to proceed and that only one of the twenty-four Direct Actions has PwC as a defendant, they are being held up by the PSLRA stay that is in effect in the Class Action because of the Coordination Order. Direct Action Plaintiffs further contend that continued coordination would prevent the speedy and efficient resolution of litigation, thereby undermining the very purpose of coordination in the first place.

Direct Action Plaintiffs acknowledge that under the PSLRA, there is an automatic stay of discovery when a motion to dismiss is pending. *See* 15 U.S.C. § 78u-4(b)(3)(B). However, here, there are no pending motions to dismiss in any of the Direct Actions. Furthermore, the purpose behind the PSLRA stay – to minimize the incentive for plaintiffs to file frivolous securities class actions in hope that corporate defendants will settle or discovery will reveal a basis for the claims – is also inapplicable under these circumstances. The Direct Actions have all survived motions to dismiss, and fact discovery is generally completed. Thus, the PSLRA stay, which applies solely to the Class Action, does not justify further coordination and a de-facto PSLRA stay in the Direct Actions.

Direct Action Plaintiffs argue that efficiency, judicial economy, and justice are no longer served by coordination. They contend that at the time the Coordination Order was entered, the primary claims and parties in the Class Action and the Direct Actions overlapped almost entirely. Thus, it made sense for the Class Action to be designated as the "lead case" for purposes of coordination. However, at this time, the Class Action has settled with Valeant, J. Michael Pearson,

4495036-1

Howard Schiller, and every other former Valeant officer and director named as a defendant in the Class Action. Thus, the sole remaining defendant in the Class Action is PwC. On the other hand, the Direct Actions continue to proceed against Valeant and the corporate officer/director defendants, and none of the cases, except for *Hound Partners*, asserts any claims against PwC.

Direct Action Plaintiffs also note the procedural obstacles present in the Class Action that do not exist in the Direct Actions and further support decoordination. For example, Class Plaintiff sought leave to add a Section 10(b) claim against PwC. The Special Master issued the July 17 R&R recommending that the Motion for Leave to Amend be granted. PwC has filed objections to the July 17 R&R, which remain pending with the District Court. PwC has indicated that if the District Court were to adopt the July 17 R&R, it would then file a motion to dismiss the Section 10(b) claim, which would result in another stay under the PSLRA. Additionally, the Class Action will have to undergo class certification discovery and briefing, which does not apply in the Direct Actions.

Direct Action Plaintiffs contend that PwC will not be unduly prejudiced by decoordination. PwC's purported harm – that its witnesses may have to sit for two days of depositions – is all smoke and mirrors. First, all witnesses are subject to up to two days of depositions pursuant to the Deposition Protocol. Second, Direct Action Plaintiffs have offered to limit their questioning to one full day, thus, leaving the second day of deposition to Class Plaintiff. Thus, the only potential prejudice to PwC is that its witnesses may not be deposed on consecutive days.

***Valeant Defendants***

The Valeant Defendants argue that decoordination is unnecessary and may lead to undesirable, prejudicial consequences. The Valeant Defendants contend that the cases were

coordinated for pre-trial purposes based on Judge Goodman's finding that the cases involved similar issues of law and alleged facts and that coordination would promote efficiency and judicial economy. The Valeant Defendants further contend that since the Coordination Order was entered, the parties have utilized coordination to conduct more than 70 depositions, brief numerous motions, share document productions, and manage scheduling issues through regular joint status conferences. This process has resulted in significant time and cost savings for the Court and the parties and minimized duplication across similar cases.

The Valeant Defendants argue that coordination is necessary through expert discovery and summary judgment stages and that decoordination is not necessary to keep the actions moving forward efficiently. Specifically, the Valeant Defendants argue that continued coordination does not require identical schedules. Thus, there can be different expert discovery and summary judgment motion schedules for the Direct Actions and the Class Action. Additionally, the Valeant Defendants contend that continued coordination does not prevent discovery of PwC in the Direct Actions. The Valeant Defendants contend that the Court can order depositions of PwC witnesses in the Direct Actions while maintaining the PSLRA stay in the Class Action. Alternatively, the Court can modify the PSLRA stay to provide that depositions of PwC witnesses shall proceed in all cases, but that Class Plaintiff shall be precluded from using any evidence developed through such depositions in pleading or arguing in favor of the sufficiency of its Rule 10b-5 claim against PwC.

The Valeant Defendants further argue that decoordination would have undesirable consequences. First, the parties have benefitted from omnibus case management conferences under the Coordination Order. Second, the parties are presently subject to protective orders that limit the use of documents to actions in which they have been produced. If the actions were decoordinated,

absent a clarifying order from the Special Master that the documents produced in any of the related actions may be used in the formerly coordinated actions, it is likely that the parties would lose the ability to use important documents in cases where they previously expected to do so. Third, the Valeant Defendants contend that decoordination would complicate the conduct of the remaining depositions, as all prior depositions were subject to the Deposition Protocol premised on continued coordination. The Valeant Defendants contend that decoordination may prejudice their rights to depose Class Plaintiff or PwC or utilize the transcripts of depositions taken in the Class Action. Finally, the Valeant Defendants contend that several of the outstanding discovery motions impact both the Class Action and the Direct Actions. Should the cases be decoordinated, and additional discovery authorized, it is unclear the extent to which such discovery will have to be repeated in each of the Direct Actions.

### *PwC*

PwC argues that the cases should remain coordinated and the PSLRA stay should remain in effect because otherwise its witnesses will have to be deposed twice, contrary to the Deposition Protocol, which has been followed for the other witnesses in these matters. PwC also contends that there are various non-PwC fact witness depositions to occur in the Direct Actions, and that there are disputes surrounding those depositions that will require resolution by the Special Master and the Magistrate Judge. Thus, there is no urgency to decoordinate the actions at this time and prejudice PwC.

PwC contends that in the event the Special Master is inclined to lift the PSLRA stay, PwC requests additional time (120 days) to complete fact discovery in the *Hound Partners* case and to produce its witnesses for deposition in the Direct Actions, and expert discovery should not begin until after the completion of fact discovery. PwC also requests, if the Special Master were to

4495036-1

decoordinate the actions at this time, that the Deposition Protocol be amended to call for two seven-hour depositions of PwC witnesses (one in the Direct Actions and one in the Class Action) and an order prohibiting Class Plaintiff from participating in the depositions of PwC witnesses in the Direct Actions or receiving transcripts thereof. PwC also contends that any Order of the Special Master does not take effect until PwC has had an opportunity to object, and should PwC object, until the Magistrate Judge rules on the objection.

PwC argues that all parties, including Direct Action Plaintiffs, insisted on one deposition per witness across all of the coordinated actions to avoid the significant additional time, expense, and burden of producing witnesses more than once. PwC contends that all of the other parties have benefitted from this agreement, and it would be unfair to change the rules for PwC and require their witnesses to be deposed twice – once in the Class Action and once in the Direct Actions. PwC also contends that forcing it to produce witnesses for deposition in the Direct Actions while the Class Action is stayed could result in Class Plaintiff obtaining discovery to which it is not entitled at this time. PwC also argues that the stay should remain in effect because there is no need to disrupt it at this time as there is non-PwC discovery yet to be completed.

PwC relies on *In re AOL Time Warner, Inc. Securities & ERISA Litigation ("AOL")*, 2003 WL 22227945 (S.D.N.Y. Sept. 26, 2013), in support of its argument that the cases should remain coordinated and stayed under the PSLRA. PwC argues that in *AOL*, there were two sets of cases involving similar facts that were consolidated for pre-trial purposes, an ERISA case and a securities case. The PSLRA stay applied to the securities cases based on pending dispositive motions, but not in the ERISA cases. The Court exercised its discretion to stay the ERISA cases because allowing discovery to proceed in the ERISA cases would result in unnecessary replication of effort and result in the exact type of inefficiency that pre-trial consolidation sought to avoid.

14

The Court was also concerned that if it did not stay the ERISA action that the securities plaintiffs might obtain discovery to which they were not entitled.

***Class Plaintiff's Reply***

Class Plaintiff notes that all parties, with the exception of PwC, are generally in favor of moving the cases along, either through lifting the PSLRA stay or decoordinating the actions. Class Plaintiff further notes that despite its objection, PwC acknowledges that the stay can be lifted. Class Plaintiff argues that the PSLRA stay is not absolute and was not designed for these circumstances. Class Plaintiff distinguishes *AOL* because that stay applied early in the proceedings, was temporary, and the cases had overlapping counsel. Here, the motions to dismiss have been denied, the parties are deep into fact discovery, and there is no overlapping counsel.

***Direct Action Plaintiffs' Reply***

Direct Action Plaintiffs argue that PwC has failed to provide any cogent explanation for why continued coordination is necessary or appropriate in light of the substantial prejudice to the Direct Action Plaintiffs. Instead, PwC claims that its witnesses may have to sit for two days of depositions under a Deposition Protocol that already requires them to sit for two days of depositions and that Class Plaintiff might somehow come into possession of PwC discovery taken in the Direct Actions after decoordination. Direct Action Plaintiffs argue that PwC ignores the stark differences between Class Action and the Direct Actions and that PwC fails to cite to any case law to support its argument that the Direct Actions should take a backseat to the Class Action. Direct Action Plaintiffs also argue that the 120-day extension of discovery sought by PwC, should the stay be lifted, is unreasonable and another delay tactic. Direct Action Plaintiffs further contend that the concerns raised by the Valeant Defendants, as a basis for maintaining coordination, could be addressed through informal coordination.

***Valeant Defendants' Reply***

The Valeant Defendants argue that: (1) the cases should remain coordinated, (2) PwC discovery should be allowed to proceed in the Direct Actions, but remain stayed in the Class Action until a decision on the dispositive motions, and (3) the schedule in the Class Action may diverge from the Direct Actions as necessary. The Valeant Defendants further argue that the Court may issue an order permitting discovery of PwC in the Direct Actions while ordering that this discovery may not be used in the Class Action for any purpose or to support the sufficiency of the Rule 10b-5 claim that gives rise to the PSLRA-stay at the pleadings stage. The Valeant Defendants maintain that coordination offers several benefits including the omnibus case management conferences, use of documents and deposition testimony across all cases, and coordination of motions.

***PwC's Reply***

PwC maintains that it seeks only to be treated fairly, under the same rules by which it has complied and all other parties have benefitted, namely the avoidance of duplicative depositions. PwC contends that the PSLRA stay should not be lifted in the Class Action because Class Plaintiff has not carried its heavy burden of satisfying the very narrow exceptions where a court may lift a Congressionally-mandated stay. Rather, PwC contends that the Court should stay the course for the time being as there is other discovery that can be completed at this time, and the District Court may rule on the pending motions (which are the basis for the stay) in the imminent future. PwC further contends that the possibility that some coordinated actions may be subject to the PSLRA stay while others are not is inherent in every coordination of securities actions and was known to Magistrate Judge Goodman when she entered the Coordination Order. PwC further contends that the Court should deny Class Plaintiff's request to lift the PSLRA stay in the Class Action because Class Plaintiff is not seeking particularized discovery, but rather seeks to complete all discovery

as to PwC. PwC also contends that Class Plaintiff has not demonstrated undue prejudice. Instead, PwC contends that it will suffer undue prejudice if the PSLRA stay is lifted because the pending decisions before the District Court may extinguish all claims against PwC.

***Hound Partners' Reply***

Hound Partners Plaintiffs dispute PwC's alleged discovery needs in the *Hound Partners* action. Specifically, Hound Partners Plaintiffs argue that PwC has participated in fact discovery over the past twelve months, including questioning *Hound Partners* witnesses at depositions, yet continues to maintain that it requires unspecified discovery of Hound Partners Plaintiffs once discovery of PwC is permitted. Despite multiple requests, Hound Partners Plaintiffs contend that PwC has failed to identify discovery topics with specificity. Hound Partners Plaintiffs further contend that this is another attempt by PwC to obtain further delay. Hound Partners Plaintiffs argue that PwC served requests for production of documents on October 24, 2018, well before the stay was entered in March 2020. Thus, Hound Partners Plaintiffs contend that such requests were already served, or should have been served in the years prior to entry of the stay. Furthermore, Hound Partners Plaintiffs argue that PwC is not permitted to take any additional depositions of Hound Partners Plaintiffs per the Deposition Protocol. Finally, Hound Partners Plaintiffs maintain that they already responded to interrogatories and request for admissions. Thus, Hound Partners Plaintiffs claim that any additional discovery by PwC in *Hound Partners* could be completed before the October 11, 2021, deadline for fact discovery.

## DISCUSSION

Firstly, the Special Master has determined that the cases will benefit from continued coordination at this time. The cases continue to involve similar issues of law and alleged facts and coordination for pre-trial purposes will promote efficiency and judicial economy. The Direct

Action cases assert Section 10(b) and Section 20(a) claims against the Valeant Defendants. One Direct Action, *Hound Partners*, also asserts a Section 11 claim against PwC. The Class Action, although it has settled with the Valeant Defendants, is asserting a Section 11 claim against PwC and its Motion for Leave to Amend to add a Section 10(b) claim against PwC remains pending. The complaints in each of these matters are based upon the same factual allegations. Thus, there exists substantial overlap in the fact discovery that remains outstanding, as well as in the anticipated expert discovery and summary judgment motion practice. Accordingly, the Special Master will maintain coordination of the proceedings at this time.

While the Special Master has found that coordination will promote efficiency and judicial economy, continued enforcement of the PSLRA stay across the Class Action and the Direct Actions will not. The Special Master recognizes that there are twenty-four Direct Actions, which have been prevented from conducting discovery of PwC by virtue of a stay that does not apply in any of those matters but for their coordination with the Class Action. For the most part, these cases have substantially completed fact discovery and are unable to proceed to expert discovery without discovery of PwC. PwC has indicated that if the District Court permits Class Plaintiff to file an amended complaint asserting a Section 10(b) claim against PwC, it will file a motion to dismiss, which will be considered and decided first by the Special Master, and in the event of an adverse ruling, PwC would appeal it to the District Court. PwC further contends that Class Plaintiff's Motion for Leave to Amend independently triggered the PSLRA stay. Thus, despite the District Court twice rejecting PwC's attempts to dismiss the Section 11 claims, it is possible that the PSLRA stay will remain in effect for many more months, if not years. The continued delay of twenty-four opt-out cases, which do not have any pending motions to dismiss, and for the most part, do not assert claims against PwC, would be unjust.

18

Under the PSLRA, 15 U.S.C. § 78u-4(b)(3)(B), "[i]n any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to any party." The PSLRA stay "serves as a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis." *Se. Pa. Transp. Auth.*, 335 F.R.D. at 75 (quoting *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002)); *see also In re Bank of Am. Corp. Sec., Derivative & Emp't Ret. Income Sec. Act (ERISA) Litig.*, No. 09-MDL-2058, 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2019) (holding that the purpose behind the PSLRA stay is to limit abusive discovery and prevent fishing expedition lawsuits). Indeed, Congress enacted the PSLRA stay to minimize the incentives for plaintiffs to file frivolous securities class actions hoping that either the corporate defendants will settle those actions rather than incur the costs of discovery, or that during discovery they will uncover a sustainable claim not alleged in the complaint. *In re WorldCom, Inc. Sec. Litig.*, 234 F.Supp.2d 301, 305 (S.D.N.Y. 2002) (citing H.R. Conf. Rep. No. 104-369, at 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 736; and S. Rep. No. 104-98, at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693). Thus, the PSLRA's stay of discovery was intended "'to protect innocent defendants from having to pay nuisance settlements in securities fraud actions in which a foundation for the suit cannot be pleaded.'" *In re Par Pharm. Sec. Litig.*, No. 06-cv-3226, 2009 WL 3234273, *11 (D.N.J. Sept. 30, 2009) (quoting *In re NAHC, Inc. Sec. Litig.*, 306 F.3d at 1332).

Initially, the Special Master finds that there is no evidence that Class Plaintiff filed a frivolous securities action against PwC in the hope that PwC would settle or that Class Plaintiff would discover a basis for the suit during discovery. Indeed, quite the opposite. The District Court has now twice sustained the legal sufficiency of Class Plaintiff's Section 11 claim against PwC.

First, on September 13, 2016, PwC filed a motion to dismiss the Class Complaint pursuant to Rule 12(b)(6). (*Class Action*, ECF No. 165.) On April 28, 2017, the District Court denied that motion. (*Class Action*, ECF No. 216.) Nearly three years later, PwC again sought to dismiss the Section 11 claim, this time pursuant to Rule 12(c). PwC's second bite at the apple also failed. On September 21, 2021, the District Court again denied PwC's request to dismiss Class Plaintiff's Section 11 claim. (*Class Action*, ECF No. 848.)

PwC relies on *AOL*, to argue that the stay should remain in effect not only in the Class Action, but also in the Direct Actions. In *AOL*, the defendant moved for a limited stay of discovery in the ERISA action pending resolution of the motion to dismiss in the consolidated securities action. *Id.* at *1. There, the court used its broad discretion to stay the ERISA action temporarily because the ERISA plaintiffs were seeking very broad discovery with substantial overlap in the securities action. *Id.* Furthermore, the court found that the ERISA plaintiffs' alternatives – that either discovery proceed in the ERISA case and could then be shared with the securities action or complete discovery for the ERISA case with a protective wall prohibiting the transfer of discovery to the securities action – were insufficient. *Id.* at *2. Namely, allowing the ERISA plaintiffs to share their discovery with the securities plaintiffs would render the PSLRA stay a nullity, as securities plaintiffs would merely add ERISA claims to their complaints to get around the PSLRA stay. *Id.* Additionally, the protective wall was untenable given that some plaintiff's counsel retained in the ERISA case also represented plaintiffs in the securities case. *Id.*

The Special Master finds *AOL* to be distinguishable for a variety of reasons. First, in *AOL* there had been no motions to dismiss considered or decided in the ERISA action pending the request for a limited stay. *See In re AOL Time Warner, Inc. Securities and "ERISA" Litig.*, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005) (deciding the motion to dismiss in the ERISA action).

Alternatively, here, the motions to dismiss the Direct Actions have been both considered and rejected. Second, in *AOL* the discovery sought in the ERISA action was very broad and a significant portion of it concerned issues common to the securities action. *Id.* at *1. Here, the Direct Actions are pursuing claims against the Valeant Defendants, with the exception of *Hound Partners*, which also asserts a Section 11 claim against PwC. Class Plaintiff is pursuing a Section 11 claim, and potentially a Section 10(b) claim, against PwC. Thus, there may be some overlap in the discovery sought in *Hound Partners* and the Class Action, but for the most part, the discovery will differ. Third, in *AOL* the court determined that a protective wall was untenable because of the overlap of counsel in both actions. *Id.* at *2. Here, there is no overlapping counsel in the Class Action and the Direct Actions. Furthermore, counsel in the Direct Actions has agreed not to share discovery of PwC with Class Plaintiff while the stay is in effect. The Special Master has no reason to suspect that the Direct Action Plaintiffs will not abide by such an agreement.

In light of the foregoing, the Special Master considers whether to lift the PSLRA stay and allow discovery of PwC to proceed in all actions. With respect to the Direct Actions, the Special Master finds that there is undue prejudice to the Direct Action Plaintiffs by maintaining the PSLRA stay in the Direct Actions solely by virtue of coordination. Accordingly, the Special Master will allow discovery of and by PwC to proceed in the Direct Actions, including *Hound Partners*. PwC has argued that it will be prejudiced if the Special Master allows discovery of PwC to proceed in the Direct Actions because its witnesses may have to sit for two non-consecutive days of depositions. The Special Master finds that this inconvenience does not amount to sufficient prejudice to further delay discovery in twenty-four actions. Furthermore, under the Deposition Protocol, the deposition of a witness "shall presumptively be two (2) days (defined as fourteen hours of examination, seven (7) hours per day, excluding time taken for breaks, meals, and other

reasons.)" (ECF No. 638, p. 7.) Thus, the Special Master weighs the potential prejudice to PwC – that its witnesses may have to sit for two non-consecutive days of depositions – with the potential prejudice to the Direct Action plaintiffs – that the twenty-four Direct Actions will be subject to a PSLRA stay by virtue of coordination, where the stay would not otherwise apply in their actions, for another few years while PwC continues its efforts to dismiss the Class Action – and finds that the prejudice in holding up the progress of the twenty-four Direct Actions far exceeds the potential prejudice to PwC in allowing discovery to proceed.

However, with respect to the Class Action, the Special Master finds that there has not been a sufficient showing of undue prejudice to allow particularized discovery to proceed against PwC at this time. Class Plaintiff argues that the PSLRA stay should be lifted because it has served its purpose. Specifically, Class Plaintiff contends that the PSLRA stay was meant to prohibit discovery prior to a ruling on a motion to dismiss to spare defendants the cost of engaging in discovery of meritless claims. Thus, since the District Court has denied PwC's motion to dismiss the Section 11 claim, the PSLRA stay has served its purpose. Class Plaintiff further argues that PwC should not be afforded an indefinite stay simply because it has filed duplicative motions and objections with the District Court. Although PwC's Section 12(b)(6) motion followed by its Section 12(c) motion with regard to Class Plaintiff's Section 11 claim could arguably be considered a duplicative motion filed for purposes of delay, the Special Master does not find that PwC's anticipated motion on the Section 10(b) claim would be duplicative, as it pertains to an entirely new cause of action only recently asserted. In view of the PSLRA's expansive language, "the weight of authority holds that discovery must be stayed pending all motions to dismiss, even if an earlier motion to dismiss failed." *Monk v. Johnson & Johnson*, 2013 WL 436514, at * (D.N.J.

Feb. 5, 2013) (citing and following *In re Smith Barney Transfer Agent Litig.*, 2012 WL 1438241 (S.D.N.Y. 2012) (internal quotation marks omitted)).

Moreover, the PSLRA stay is a legislative mandate, which provides limited circumstances under which the stay may be lifted. The stay may be lifted where "particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B). The party seeking to lift the PSLRA stay bears the burden of demonstrating that the mandatory stay should be lifted. *Botton v. Ness Techs. Inc.*, No. 11-cv-3950, 2011 WL 3438705, at *1 (D.N.J. Aug. 4, 2011); *Davis v. Duncan Energy Partners L.P.*, 801 F.Supp. 2d 589, 592 (S.D. Tex. 2011). When a court is determining whether to lift a PSLRA stay, it considers the scope of the discovery sought by the requesting party. *Botton*, 2011 WL 3438705 at *2 (citing *In re Spectranetics Corp. Secs. Litig.*, No. 08-cv-2048, 2009 WL 3346611, at *3 (D. Colo. Oct. 14, 2009)). Any such discovery must be "narrow and particularized[,]" and depends on the specific nature of the underlying litigation. *Id.* "Undue prejudice" under the PSLRA means "improper or unfair treatment amounting to something less than irreparable harm." *In re Smith Barney Transfer Agent Litig.*, No. 05-cv-7583, 2012 WL 1438241 at *2 (internal quotation marks omitted); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F.Supp. 2d 129, 130 (S.D.N.Y. 2003) (internal quotation marks omitted). Undue prejudice does not arise from mere delay in gathering evidence because that type of delay is inherent in every stay of discovery mandated by the PSLRA. *In re Smith Barney Transfer Agent Litig.*, 2012 WL 1438241 at *2;  *Mori v. Saito*, 802 F.Supp. 2d 520, 524 (S.D.N.Y. 2011); *Botton*, 2011 WL 3438705 at *1. Courts have partially lifted the PSLRA stay on the ground of undue prejudice when defendants would be unfairly shielded from liability during pursuit of their pending action or when plaintiffs would be placed at an unfair advantage to make informed decisions about litigation and settlement strategy without access to certain documents.

*Mori*, 802 F.Supp. 2d at 524. Courts may also lift the mandatory PSLRA discovery stay if doing so is required to preserve evidence. *In re Smith Barney Transfer Agent Litig.*, 2012 WL 1438241 at *3. A party making this allegation must make a specific showing that "the loss of evidence is imminent as opposed to merely speculation." *Id.*

Here, Class Plaintiff has not argued that particularized discovery is necessary to preserve evidence. Moreover, in arguing that the Special Master should lift the PSLRA stay in the Class Action, Class Plaintiff does not identify "particularized discovery" that it requires. Rather, Class Plaintiff asks the Special Master to lift the PSLRA stay to allow unrestricted discovery of PwC. Although the Special Master would prefer to move the cases along in unison, delay alone is an insufficient basis to lift the PSLRA stay. *Id.* While the coordinated fact discovery of PwC in all matters would lead to the least amount of prejudice to all parties and make the most sense logistically, PwC maintains its entitlement to the PSLRA stay. The Special Master further finds that PwC's anticipated motion to dismiss a Section 10(b) claim, should the Court permit Class Plaintiff to add that claim, is neither frivolous nor advanced solely to delay the proceedings. *In re Salomon Analyst Litig.*, 373 F.Supp. 2d 252, 256 (S.D.N.Y. 2005). Class Plaintiff sought to amend the complaint to add a Section 10(b) claim against PwC on December 17, 2019. PwC opposed that motion. In the July 17 R&R, the Special Master recommended that the Court grant Class Plaintiff's Motion for Leave to Amend. PwC objected to the July 17 R&R, which remains pending before the District Court. As the amended complaint would assert an entirely new cause of action against PwC, PwC should be afforded an opportunity to have the legal sufficiency of that claim challenged before Class Plaintiff benefits from fact discovery.

Thus, the Special Master finds that (1) the cases will benefit from continued coordination at this time; (2) discovery of and by PwC in the Direct Actions is allowed to proceed at this time;

(3) discovery of and by PwC in the Class Action shall remained stayed under the PSLRA pending resolution of Class Plaintiff's Motion for Leave to Amend to add the Section 10(b) claim against PwC and PwC's anticipated motion to dismiss; and (4) no discovery of PwC in the Direct Actions may be shared with Class Plaintiff at this time, nor may Class Plaintiff participate in any of the PwC depositions permitted hereunder unless and until resolution of the legal sufficiency of Class Plaintiff's proposed Section 10(b) claim, or by agreement of the parties.

**Current Discovery Schedule**

In light of the foregoing rulings, the Special Master will extend discovery by 90 days from the date of this order to complete fact discovery of PwC in the Direct Actions (to January 3, 2022). Written discovery must be served on PwC within one week of the date of this order. PwC has 30 days to respond. The parties are directed to meet and confer should any disputes arise. If the parties are unable to resolve said dispute by way of meet and confer, they should submit a joint correspondence to the Special Master outlining the dispute. PwC has one week from the date of this order to serve its written discovery requests. The parties to whom PwC serves written discovery have 30 days to respond. The parties are directed to follow the same process for any disputes set forth above. No party is permitted to share the PwC discovery exchanged in the Direct Actions with the Class Plaintiff at this time.

With respect to the expert discovery and summary judgment schedule, the Special Master rejects the Valeant Defendants' proposal to use a bellwether approach. The parties are directed to coordinate expert discovery and serve joint reports to the extent possible. The parties are also directed to coordinate and file one joint summary judgment brief on common issues. To the extent unique issues exist in a particular matter, a supplemental brief may be submitted on those issues. The following discovery schedule shall apply to expert discovery and summary judgment motions:

4495036-1

| Action | New Deadline |
|---|---|
| Deadline for service of interrogatories, requests for admissions, and requests for production on and by PwC | 10/11/21 |
| Responses to written discovery served by and on PwC | 11/10/21 |
| Fact Discovery Cutoff | 1/3/22 |
| Deadline to serve affirmative expert reports | 2/2/22 |
| Deadline to serve rebuttal expert reports | 4/4/22 |
| Deadline to serve reply expert reports | 5/2/22 |
| Expert Discovery Cutoff | 6/1/22 |
| Deadline to file Dispositive Motions | 7/1/22 |
| Deadline to file Oppositions to Dispositive Motions | 8/19/22 |
| Deadline to file Reply in support of Dispositive Motions | 9/14/22 |

PwC requested that any decision to decoordinate the actions or lift the PSLRA stay should not take effect until it has had an opportunity to appeal the Special Master's decision and until the District Court rules on the appeal. The Special Master has already addressed this argument in the August 17, 2021, R&R. (*Class Action*, ECF No. 821.) Furthermore, as the Special Master has decided neither to decoordinate the actions nor lift the PSLRA stay in the one case in which it applies, this argument is moot. The rulings contained in this Order and Opinion shall take effect immediately.

## CONCLUSION

For the reasons previously set forth, the Special Master finds that the cases will benefit from continued coordination. The Special Master declines to lift the PSLRA stay in the Class Action at this time. However, discovery of and by PwC in the Direct Actions may proceed. The parties may enter into a confidentiality order to prevent disclosure of PwC discovery in the Direct Actions to Class Plaintiff. The Special Master further extends the discovery deadlines as set forth herein.

Date: 10/4/2021                    *Dennis M. Cavanaugh*

_____
DENNIS M. CAVANAUGH
Special Master