**quinn emanuel** trial lawyers | New York

51 Madison Avenue, 22nd Floor, New York, NY 10010

WRITER'S DIRECT DIAL NO.
**(212) 849-7513**

WRITER'S EMAIL ADDRESS
**RolloBaker@quinnemanuel.com**

October 15, 2021

**VIA CM/ECF**

Hon. Lois H. Goodman, U.S.M.J.
United States District Court, District of New Jersey
Clarkson S. Fisher Federal Building & U.S. Courthouse, Room 7E
402 E. State Street
Trenton, NJ 08608

Re:    **Opposition To PwCs's Request For Temporary Stay**
       *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, **No. 3:15-cv-07658-MAS-LHG**

Dear Judge Goodman:

        We write on behalf of the Direct Action Plaintiffs[1] coordinated before Your Honor under *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (MAS) (LHG).  We write in opposition to the letter request (Dkt. 869) of Defendant PricewaterhouseCoopers LLP ("PwC") to temporarily stay the Special Master's Order (Dkt. 860) authorizing discovery against PwC to proceed in the Direct Actions.  PwC's request lacks merit and should be summarily denied.

        PwC's most recent application to the Court is its latest of several attempts to manufacture unwarranted delay.  For years, PwC has avoided discovery in the Direct Actions, some of which have been pending for over five years, by seizing upon the judicially-imposed coordination between the Direct Actions (in which discovery of PwC would have been permissible) and the Class Action (in which discovery of PwC could not occur absent relief from the PLSRA stay). With fact discovery now substantially complete in the Direct Actions, but for discovery of PwC and limited remaining discovery from Valeant, the Special Master determined that the Direct

_____

[1]  The Direct Action Plaintiffs are the plaintiffs ins are the following case numbers (the "Direct Actions"):  16-cv-07321; 16-cv-07324; 16-cv-07494; 16-cv-07496; 17-cv-06513; 17-cv-07636; 17-cv-12088; 18-cv-00089; 18-cv-00343; 18-cv-00383; 18-cv-17393; 18-cv-00846; 18-cv-00893; 18-cv-01223; 18-cv-08595; 18-cv-08705; 18-cv-15286; 20-cv-02190; 20-cv-05478; 20-cv-07460; and 20-cv-07462.

**quinn emanuel urquhart & sullivan, llp**

ATLANTA | AUSTIN | BOSTON | BRUSSELS | CHICAGO | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

Actions can proceed with PwC discovery.  The Special Master appropriately concluded that the continued stay of PwC discovery in the Direct Actions would unduly hinder the prosecution of those actions by preventing the parties from proceeding beyond fact discovery.

Unwilling to abandon its pursuit of delay, and consistent with Judge Shipp's finding that "Defendants have made exuberant use of the appellate process laid out in the [Special Master Appointment Order] to avoid complying with the Special Master's discovery orders," Dkt. 870 at 2-3, PwC seeks emergency relief from this Court.  PwC insists that the Special Master erred by: (1) ruling that the Special Master's discovery and procedural rulings are immediately enforceable, a ruling Judge Shipp recently confirmed was correct; and (2) concluding that the significant prejudice of further lengthy delays to fact discovery in the Direct Actions outweighed the minor inconvenience of the possibility that a small number of PwC witnesses would be deposed on non-consecutive days.  But PwC neglects entirely the relevant standard of review (*i.e.*, abuse of discretion), failing to even attempt to show that the Special Master abused his discretion in making either determination.  Nor could it.  The Special Master reached a patently reasonable conclusion: that the prejudice caused by a potential years-long delay to over twenty actions outweighs the inconvenience to PwC of having its witnesses potentially deposed on two non-consecutive days, when those witnesses are already obligated under the governing deposition protocol to sit for two days of deposition.  And by rejecting PwC's preemptive request for a stay—a decision Judge Shipp recently confirmed was correct—the Special Master properly aimed to avoid the very "delay tactics" Judge Shipp has since recognized PwC and the other Defendants have caused by making "exuberant use of the appellate process laid out in [the order appointing the Special Master]" by appealing "virtually every non-dipositive ruling from the Special Master."  Dkt. 870 at 2.[2]

Accordingly, this Court should reject PwC's efforts to delay the Direct Actions and deny PwC's request to stay and/or modify the Special Master's Order.

## I. Judge Shipp Has Confirmed Judge Cavanaugh Was Correct To Rule That His Discovery Orders Are Immediately Enforceable

Although PwC argues that "[t]he Special Master committed legal error by holding that his orders are immediately effective and enforceable despite a party's objection," Dkt. 869 at 3, Judge Shipp recently confirmed that the Special Master was correct.  Specifically, Judge Shipp "reject[ed] Defendants' contention that Rule 53's inclusion of motions to adopt, modify, or object morphs the Special Master's orders into recommendation awaiting mandatory sign-off from this Court."  Dkt. 870 at 4.  To avoid any confusion, Judge Shipp explicitly amended the Special Master Appointment Order to state that "[n]otwithstanding any timely objections, motions to adopt, motions to modify, ***motions to stay***, or motions for injunctive relief, the Special Master's orders issues under Paragraph 9 are enforceable upon issuance."  *Id.* at 5 (emphasis added).  This ruling forecloses PwC's argument to the contrary.

---

[2]  Judge Shipp's order confirming that the Special Master's discovery orders are not a mere "dress rehearsal for the Court to consider months later," but are instead "enforceable upon issuance," Dkt. 870 at 4, is attached as Exhibit A.

II.  The Special Master Did Not Come Close To Abusing His Discretion

This Court reviews for abuse of discretion any objection to the Special Master's orders on procedural and non-dispositive issues.  *See Valeant Pharm. Int'l, Inc. v. AIG Ins. Co. of Can.*, 2020 WL 7768405, at *4 (D.N.J. Dec. 30, 2020) ("Appeals of the Special Master's rulings as to procedural matters and nondispositive issues are reviewed for abuse of discretion."); *In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288, at *4 (D.N.J. Jan. 30, 2020) ("The Court finds that the appropriate standard of review to apply to the Special Master's [discovery] Ruling is the abuse of discretion standard.").  There can be no dispute that the abuse of discretion standard applies here, as the Order appealed from is effectively a scheduling order, *see* Order at 26 (providing deadlines), and such orders are procedural.  *Bacsenko v. CFG Health Sys., LLC*, 2018 WL 513206, at *4 n.9 (D.N.J. Jan. 23, 2018) (describing scheduling orders as "procedural events").

There was no abuse of discretion here.  PwC has avoided discovery obligations in the Direct Actions for years as a result of the mandated coordination between the Class Action, which is subject to the PSLRA stay based on PwC's Rule 12 motions, and the Direct Actions, in which no such stay applies.  *See* Order at 18.  Although the numerous Direct Actions have substantially completed fact discovery and are unable to proceed to expert discovery only because of PwC, *id.*, PwC sought to keep the stay in place and thus indefinitely delay the Direct Actions.  The Special Master appropriately recognized that the PSLRA stay could remain in effect for "many more months, if not years" because PwC intends to file a motion to dismiss the Class Action's amended complaint if Judge Shipp affirms the Special Master's determination that Class Plaintiff can assert a Rule 10b-5 claim against PwC, notwithstanding that the Court has already denied two previous motions to dismiss filed by PwC.  Order at 18.

Accordingly, unwilling to sanction further delay, the Special Master ordered discovery of PwC to proceed in the Direct Actions so those cases could proceed to expert discovery.  *See* Order at 21-22 ("[T]he prejudice in holding up the progress of the twenty-four Direct Actions far exceeds the potential prejudice in allowing discovery to proceed.").  For the reasons set forth in Direct Action Plaintiffs' letter briefing below, the Special Master's decision authorizing discovery of PwC to proceed is well supported by the law:  the prejudice of further delay to the prosecution of the Direct Actions dwarfs the minor inconvenience of having a handful of PwC witnesses deposed on non-consecutive days.  *See* Ex. B (Direct Action Plaintiffs' Letter In Support of De-Coordination, July 23, 2021); Ex. C (Direct Action Plaintiffs' Letter In Further Support of De-Coordination, July 30, 2021); Ex. D (Hound Plaintiffs' Letter In Support Of De-Coordination, July 30, 2021).

As the Special Master explained, PwC witnesses presumptively would be deposed across two days; the only change effected by the Special Master's decision is that those days may not be consecutive if those witnesses are eventually deposed in the Class Action after having been deposed in the Direct Actions.  Order at 21-22.  PwC's complaints that its witnesses may be deposed twice thus misstates the record:  its witnesses will be deposed for the same amount of total time as any other party witnesses, and that time will merely be split across two non-consecutive days.  Indeed, at least one other witness in this action was deposed on non-consecutive days with roughly six months between the two dates, *see* Ex. E (Fleming Deposition Cover Pages), and PwC did not object to that arrangement as a violation of any stipulation.

Nor has PwC shown an inability to meet its written discovery obligations under the Special Master's Order. Specifically, the Special Master directed the parties to exchange written discovery of PwC by October 11, 2021, and PwC duly served on that date requests for admission, interrogatories, and requests for production on the plaintiffs (the "Hound Plaintiffs") in *Hound Partners Offshore Fund LP v. Valeant Pharmaceuticals International, Inc.*, No. 18-cv-8705 (MAS) (LHG), the only Direct Action to which PwC is party. The Hound Plaintiffs have served requests for admission and interrogatories on PwC.

## III. PwC's Request For A Stay The Order Is Baseless

PwC's request for emergency relief is entirely unsupportable: it was not an abuse of the Special Master's discretion to require PwC to serve and respond to written discovery given the prejudice caused by further delay to the prosecution of the Direct Actions and the absence of clear hardship suffered by PwC. *See Tyler v. Diamond State Port Corp.*, 816 F. App'x 729, 731 (3d Cir. 2020) ("It is well settled that before a stay may be issued, the petitioner must demonstrate a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party.") (alterations, citations, and quotations omitted). As PwC has already served and received written discovery in the single action in which it is a defendant (*i.e.*, the Hound Action), its obligation to respond to that discovery within the typical thirty-day deadline does not constitute "a clear case of hardship or inequity." *Id.*

Nor does the possibility of depositions on non-consecutive days constitute undue hardship or inequity. Such depositions are routine occurrences, and one has already taken place in these consolidated actions with the express consent of PwC. *Supra* 3. *See also Agniel v. Cent. Park Boathouse LLC*, 2015 WL 463971, at *3 (S.D.N.Y. Jan. 26, 2015) (describing 30(b)(6) deposition "last[ing] for two nonconsecutive days"); *Wingate v. City of New York*, 2018 WL 3863439, at *4 (E.D.N.Y. Aug. 14, 2018) ("[P]laintiff sat for a deposition that took place over six nonconsecutive days.").

PwC cites no law supporting a stay on the basis that complying with a party's discovery obligations in a single action—skirted for years—constitutes such a hardship or inequity as to require delay to myriad other proceedings. Indeed, PwC's request for a stay is just another example of its "delay tactics" that have deprived these cases of the "desired efficiency gains" from the appointment of a Special Master by "appealing virtually every non-dispositive ruling from the Special Master." Dkt. 870 at 2-3. Should PwC continue these delay tactics, Direct Action Plaintiffs will be forced to request an award of attorneys' fees to put an end to this unnecessary and vexatious motion practice. *See Mobil Oil Corp. v. Indep. Oil Workers Union*, 679 F.2d 299, 305 (3d Cir. 1982) (recognizing attorneys' fees may be awarded where "the losing party litigated in bad faith, vexatiously, or for oppressive reasons").

4

Respectfully submitted,

**QUINN EMANUEL URQUHART**
   **& SULLIVAN, LLP**

/s/ *Rollo C. Baker*
Robert S. Loigman
Rollo C. Baker
Kathryn Bonacorsi
Jesse Bernstein
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Counsel for Plaintiffs*
Case No. 18-cv-08705

**CALCAGNI & KANEFSKY LLP**

/s/ *Eric T. Kanefsky*
Eric T. Kanefsky
Samuel S. Cornish
One Newark Center
1085 Raymond Boulevard, 14th Floor
Newark, NJ 07102
Telephone: (862) 772-8149
Facsimile: (862) 902-5458

*Local Counsel for Plaintiffs*
Case No. 18-cv-08705

cc:  Counsel of Record (via CM/ECF)

# EXHIBIT A

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Civil Action No. 15-7658 (MAS) (LHG) |
| | **MEMORANDUM ORDER** |

This matter comes before the Court on review of its docket. On September 29, 2021, the Court provided all parties notice and an opportunity to be heard regarding potential amendment to the Court's September 10, 2019 Order appointing the Honorable Dennis M. Cavanaugh, U.S.D.J. (ret.) (the "Order"). (ECF No. 857.) Four parties responded: the Valeant Defendants (ECF No. 864), Defendant PricewaterhouseCoopers ("PwC") (ECF No. 865), Class Plaintiff City of Tucson (ECF No. 866), and the Direct Action Plaintiffs (ECF No. 867). The Court has carefully reviewed the parties' submissions and determines that amendment to the Order is necessary to expedite these proceedings.

As a threshold matter, the Court has ample authority to amend the Order. Under Federal Rule of Civil Procedure 53, the Court may amend the order appointing a Special Master "at any time after notice to the parties and an opportunity to be heard." Fed. R. Civ. P. 53(b)(4). The Court provided that notice and opportunity through its September 29, 2021 Order. (*See* ECF No. 857; Fed. R. Civ. P. 53(b) advisory committee note (2003) ("The hearing requirement can be satisfied by an opportunity to make written submissions . . . .").) Defendants dispute this, suggesting that the Court cannot amend the Order until every party consents to the amendment. (Valeant Letter 2, ECF No. 864; PwC Letter 2, 6, ECF No. 865.) The Court disagrees. The plain text of Rule 53(b)(4) demands notice and an opportunity to be heard only. Notably, although Rule 53 provides that the

parties can appoint special masters by consent (*see* Fed. R. Civ. P. 53(a)(1)(A)), the drafters of the Federal Rules saw fit to omit any consent requirement for amendments. *Cf. PEG Bandwidth PA, LLC v. Salsgiver, Inc.*, No. 16-178, 2017 WL 2992219, at *3 (W.D. Pa. July 13, 2017) ("If the drafters of the Federal Rules saw fit to include an automatic-waiver provision in Rule 33 and to omit such a provision from Rule 34, that implies that there is no automatic waiver of an untimely objection under Rule 34." (quoting *Ashford v. City of Milwaukee*, 304 F.R.D. 547, 549 (E.D. Wis. 2015))). The Court thus finds that no consent is necessary for amendment so long as the parties have had notice and an opportunity to be heard.[1]

The Court further finds amendment necessary to expedite the course of this litigation. This litigation has been ongoing for six years and concerns events from well before then. (*See generally* Compl., ECF No. 1.) When the Court consolidated these cases before a Special Master, it did so because the Special Master could perform "time consuming or detailed tasks that the district court judge or a magistrate judge would be less efficient in accomplishing" and "oversee and facilitate complex discovery." *Borough of Edgewater v. Waterside Constr., LLC*, 2017 WL 1758062, at *3 (D.N.J. May 3, 2017) (citations omitted). And, consistent with Rule 53 and its constitutional obligations, the Court imposed a two-step appeals process to ensure adequate review of the Special Master's rulings. *See* Fed. R. Civ. P. 53(f); 28 U.S.C. § 636(b). Unfortunately, however, the Court's appointment of the Special Master has not resulted in the desired efficiency gains. That appears to be because Defendants have made exuberant use of the appellate process laid out in the Court's Order to avoid complying with the Special Master's discovery orders. While appealing

---

[1] The parties undoubtedly have had that notice and opportunity. Even before the Court's September 29, 2021 Order, the parties already submitted several briefs and much correspondence regarding the Court's Order and the Special Master's authority. (*See, e.g.*, ECF Nos. 773, 774, 775, 776, 777, 779, 800, 802, 843, 844, 851, 852, 855, 856.)

virtually every non-dispositive ruling from the Special Master (*see* ECF Nos. 609, 666, 756, 792, 801, 817), Defendants assert that the Special Master's discovery orders are unenforceable during the pendency of any appeal. (Valeant Letter 2; PwC Letter 5.) Said another way, according to Defendants, Judge Cavanaugh's rulings are legal nullities until two different judges rule otherwise.

These delay tactics frustrate the purpose of Rule 53 and this Court's Order. The Court thus amends its Order to clarify that the Special Master's orders on non-dispositive matters are enforceable once issued.[2] As is the normal course of appellate procedure, appealing parties may move to stay enforcement of the Special Master's orders before the Special Master. *Cf.* 16A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3954 (5th ed. Supp. 2021) ("The taking of an appeal does not by itself suspend the operation or execution of a district-court judgment or order during the pendency of the appeal. Thus, the appellant who desires a stay of the lower federal court's action while the appeal is pending must seek an independent stay or injunctive order." (footnotes omitted)); 11 *id.* § 2904 (3d ed. Supp. 2021) ("There is no automatic stay in actions for injunctions; in those actions a judgment, whether interlocutory or final, may be stayed only by court order."); *Coleman v. Tollefson*, 575 U.S. 532, 539 (2015) ("Unless a court issues a stay, a trial court's judgment (say, dismissing a case) normally takes effect despite a pending appeal." (citations omitted)). The filing of any of the following does not serve to automatically stay the Special Master's orders on non-dispositive matters: motions to adopt, motions to object, motions to modify, and motions to stay (including motions for injunctive relief). To be clear, that means that all parties must comply with the Special Master's discovery orders once they are filed.

---

[2] The Court also recognizes that the parties have agreed to a single-step appeals procedure for discovery motions under Rule 26 through Rule 37. (*See* Valeant Letter 2.) The Court adopts the parties' consented-to provision into its amended Order.

3

The Court further rejects Defendants' contention that Rule 53's inclusion of motions to adopt, modify, or object morphs the Special Master's orders into recommendations awaiting mandatory sign-off from this Court. To the contrary, Rule 53 provides that a reviewing court "*may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions.*" Fed. R. Civ. P. 53(f)(1) (emphasis added). And, tellingly, Rule 53 is silent regarding the enforceability of a Special Master's orders, and Defendants point to zero authority supporting their interpretation that the Special Master's discovery orders are unenforceable unless adopted. Indeed, the Court doubts the drafters of the Federal Rules intended the Special Master's discovery orders to serve as mere dress rehearsal for the Court to consider months later. *See* Fed. R. Civ. P. 53(c)(1)(A)-(B) (noting that Special Master should "regulate all proceedings" and "take all appropriate measures to perform the assigned duties *fairly and efficiently*" (emphasis added)).

The Court thus amends its Order. For the foregoing reasons, and other good cause shown, **IT IS**, on this 14th day of October 2021, **ORDERED** as follows:

1.  The Court adopts the following paragraphs from its September 10, 2019 Order in full: Paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, and 23.

2.  The Court amends its September 10, 2019 Order (ECF No. 484) by adding Paragraph 24:

    "24. Notwithstanding the appellate procedure described in Paragraph 9, pursuant to 28 U.S.C. § 636(c), the parties consent to have the Honorable Lois H. Goodman, U.S.M.J., rule on all currently pending and future objections to, as well as all motions to adopt or modify, any ruling by the Special Master on motions arising under Federal Rules of Civil Procedure 26 through 37. This includes consent to have Magistrate Judge Goodman rule on motions to reconsider decisions made on such motions or objections and waiver of the right to further review of such decisions by the District Judge pursuant to Local Civil Rule 72.1(c)(1). Rulings of Magistrate Judge Goodman on such motions and objections will be appealable directly and without review by the District Judge to the United States Court of Appeals for the Third Circuit as authorized by 28 U.S.C. §§ 1291 and 1292. For the avoidance of doubt, the partial consent set forth in this paragraph does not extend to dispositive motions or to non-dispositive motions not arising under Federal Rules

of Civil Procedure 26 through 37, including but not limited to motions concerning trial procedures or the admissibility of expert testimony or other evidence."[3]

3.    The Court amends its September 10, 2019 Order by adding Paragraph 25:

"25. Notwithstanding any timely objections, motions to adopt, motions to modify, motions to stay, or motions for injunctive relief, the Special Master's orders issued under Paragraph 9 are enforceable upon issuance. Enforcement of the Special Master's orders under Paragraph 9 are not stayed unless so ordered by the Special Master, Judge Goodman, or the Undersigned."

4.    For the convenience of the parties, the Court issues an amended order (ECF No. 871) concurrent with this Memorandum Order.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[3] For the avoidance of doubt, the Court considers Rule 37 motions for sanctions seeking dismissal dispositive motions that do not fall under Paragraph 24.

5

# EXHIBIT B

July 23, 2021

VIA EMAIL

Hon. Dennis M. Cavanaugh, U.S.D.J. (ret.)
Special Master
McElroy, Deutsch, Mulvaney & Carpenter LLP
1300 Mount Kemble Ave
Morristown, NJ 07962

Re:     *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, Master No. 15-cv-7658-MAS-LHG
Securities Direct Actions

Dear Judge Cavanaugh:

We write on behalf of the Direct Action Plaintiffs[1] pursuant to Your Honor's Order, dated July 9, 2021, which directed the parties to submit correspondence stating their positions on whether the Direct Actions should be de-coordinated from the Class Action, in which PwC is the only remaining defendant.

For the reasons described below, the Direct Action Plaintiffs submit that the time has come to de-coordinate the 22 Direct Actions—***none of which are subject to a PSLRA stay***—from the Class Action. De-coordination will allow the parties in the Direct Actions to proceed with PwC discovery and then to expert discovery and summary judgment. On the other hand, continued coordination will prevent the speedy and efficient resolution of litigation thereby undermining the very purpose of coordination in the first place. Indeed, continued coordination will serve only to further delay the Direct Actions—potentially for years—thereby causing severe prejudice and undue harm to the Direct Action Plaintiffs who collectively seek billions of dollars in damages caused by Defendants' fraud in cases filed years ago.

## I.        There Is No PSLRA Stay In The Direct Actions

Under the PSLRA, there is an automatic stay of discovery *when a motion to dismiss is pending*. 15 U.S.C. § 78u–4(b)(3)(B). Here, there are no pending or even anticipated motions to dismiss in *any* of the 22 Direct Actions. ***Indeed, it is undisputed that the Direct Actions are not subject to a PSLRA stay***.

Not only does the PSLRA stay not apply to any of the Direct Actions, but the purpose of the PSLRA stay is inapplicable to the Direct Actions. As Courts have repeatedly noted, "[t]he legislative history of the PSLRA indicates that Congress enacted the discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that

---

[1]     The Direct Action Plaintiffs are parties to the following case nos.: 16-cv-07321; 16-cv-07324; 16-cv-07494; 16-cv-07496; 17-cv-06513; 17-cv-07636; 17-cv-12088; 18-cv-00089; 18-cv-00343; 18-cv-00383; 18-cv-17393; 18-cv-00846; 18-cv-00893; 18-cv-01223; 18-cv-08595; 18-cv-08705; 18-cv-15286; 18-cv-17393; 20-cv-02190; 20-cv-05478; 20-cv-07460; and 20-cv-07462.

corporate defendants will settle those actions rather than bear the high cost of discovery, or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint." *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (internal citations omitted).

Here, there can be no question that the Direct Actions are meritorious. They have survived motions to dismiss. Fact discovery—which has overwhelmingly corroborated the allegations in the complaints—is nearly over. Accordingly, the PSLRA stay—which applies solely in the Class Action—does not justify continued coordination and a de-facto PSLRA stay of the Direct Actions.

## II.     Efficiency, Judicial Economy, And Justice Are No Longer Served By Coordination

On October 12, 2018, Magistrate Judge Goodman entered the Coordination Order finding that coordination of the Class Action and Direct Actions "for pretrial and discovery purposes would promote efficiency and judicial economy." ECF 369. Magistrate Judge Goodman also designated the Class Action as the "lead case" for purposes of coordination. *Id.* At that time, all parties agreed to coordination and no party objected to the Class Action being designated as the lead case. The reason is simple: *at that time*, it made sense and promoted judicial efficiency.

In October 2018, the primary claims and parties in the Class Action and Direct Actions overlapped almost entirely. For example, in the Class Action, the primary claims were against Valeant, J. Michael Pearson (Valeant's former CEO) and Howard Schiller (Valeant's former CFO) for violations of Section 10(b) of the Exchange Act. Those claims were also the primary claims brought by the Direct Actions.

However, in November 2019, the Class Plaintiff entered into an agreement to settle *all* of its claims against Valeant, Pearson, Schiller, and every other former Valeant officer and director named as defendants in the Class Action. In one sweep, almost all of the "overlap" was eliminated. Currently, the only live claim that remains in the Class Action is for violation of Section 11 of the Securities Act against a single defendant, PwC. In stark contrast to the substantial overlap between the Class Action and the Direct Actions that existed at the time of the Coordination Order when every action had a Section 10(b) claim against Valeant, only *one* of the 22 Direct Actions today has a Section 11 claim or a claim against PwC. To be clear, 21 of the Direct Action cases have *zero overlapping claims or overlapping parties* with the Class Action. Moreover, while the Class Action is subject to a PSLRA stay, *none* of the Direct Actions are subject to a PSLRA stay. Thus, far from being the "dog" to the "wagging tail" as PwC previously described it, (PwC July 2 Letter at 7), the Class Action is the tail.

Moreover, even if there were real overlap between the cases—which there is not—there are procedural obstacles blocking the progress of the Class Action that do not apply to the Direct Actions. The Class Action sought leave to amend to add a Section 10(b) claim solely against PwC. Your Honor issued a Report and Recommendation recommending the motion to amend be granted. PwC has objected to that Report and Recommendation, which has been pending before Judge Shipp for over a year. PwC has expressly stated that if it is unsuccessful in overruling Your Honor's Report and Recommendations, PwC intends to *then* file a motion to dismiss the Class

Plaintiff's amended complaint.  That would result in the imposition of another stay in the Class Action until that motion is resolved.  Further, once the Class Action is finally able to move forward, it must undergo class certification discovery and motion practice, which are unique to the Class Action and have no application to the Direct Actions.  Simply put, the procedural paths forward for the Direct Actions and the Class Action diverge significantly, thus further warranting de-coordination

Given that there are now significant differences—both procedural and substantive—between the Class Action and the Direct Actions, it would be illogical, inequitable, and ultimately prejudicial to continue to prevent discovery from going forward against PwC in the Direct Actions due to the PSLRA stay in the separate Class Action.  In similar circumstances, courts have refused to extend a stay applicable to one party in coordinated actions to another party in the coordinated actions that had already survived a motion to dismiss.

For example, in *In Re SunEdison, Inc. Securities Litigation*, a multi-district litigation involving multiple individual securities actions and securities class actions, Judge Castel refused to extend a PSLRA stay that was applicable in the individual actions to the class action that had already survived a motion to dismiss.  Exhibit 1, April 17, 2018 Hearing Transcript in *In Re SunEdison, Inc. Securities Litigation*, 16-MD-2742, at 16:21-18:18, 29:13-30:10 (S.D.N.Y. Apr. 17, 2018).

Similarly, in *In re Petrobras Sec.*, Judge Rakoff refused to grant a stay in 27 individual securities actions during the pendency of an appeal of class certification in the parallel class action.  193 F. Supp. 3d 313, 318 (S.D.N.Y. 2016).  The Court recognized that, like here, a stay of the individual actions was inappropriate since the "*27 individual plaintiffs [were] large entities . . . with sizable holdings in Petrobras securities*," and it was unreasonable to require the individual plaintiffs "*to wait for an indefinite period of time*" given the "notorious" reality that "*the bane of the American legal process is expensive, dispiriting, and undue delay*." *Id.* at 317 (emphases added).  The Court observed that asking the individual plaintiffs to stay their suits when the class action, like the one here, was in a "relative subordinate position," would only "serve to magnify these difficulties." *Id.*  The same is true here.  PwC is attempting to force 22 individual plaintiffs who are large entities with sizable holdings to wait an indefinite period of time awaiting developments in a class action that has now taken a "relative subordinate position."  Granting such a request would only magnify "the bane of the American legal process[:] expensive, dispiriting, and undue delay."

Indeed, granting PwC's requested delay here would be even more prejudicial than in the ordinary case given Valeant's recent announcement that it intends to spin-off its cash-rich vision health business (Bausch + Lomb) into a new public company, leaving Valeant with a significant debt load and fewer assets to satisfy the Direct Action Plaintiffs' meritorious claims that they have been pursuing for years.  For example, based on public disclosures, it appears that this new entity is expected to have a net ratio of debt to cash flow of 2.5x, whereas for the remaining entity, the net ratio is expected to be 6.5x-6.7x.  Not surprisingly, Valeant's current CEO and CFO have announced they will leave Valeant to lead the asset-rich spin-off.  And while this is happening, PwC seeks to extend a PSLRA stay to parties not subject to that stay, thereby preventing the Direct

Action Plaintiffs from securing the judgments to which they are entitled because of the risk that *five* PwC witnesses will be deposed on non-consecutive days.

Rather than extending a PSLRA stay to parties not subject to the stay, courts frequently lift the stay as to the parties to which it does technically apply in order to place all parties on equal footing. *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16, 2009) (lifting stay where "[d]iscovery is moving apace in parallel litigation" and "consolidated cases include ERISA and derivative actions, as to which the PSLRA stay does not apply"); *In re WorldCom*, 234 F. Supp. at 305 (lifting stay as to securities plaintiffs as to "documents that will in all likelihood soon be in the hands of the ERISA plaintiffs" who are not subject to any stay). Notably, in PwC's July 2 letter it did not cite a single authority that dealt with a situation, like this one, where several years into a litigation a party seeks to stymie litigation in *nearly two dozen* cases because of a discovery stay applicable in *one* other case. Nor do any of PwC's authorities involve a situation, like this one, where the deposition protocol already assumes two days for each deposition, and therefore the purported "duplicative" discovery is simply a temporal gap between the first day of a deposition and a *potential* second day of the deposition.

Instead, PwC primarily relies on *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2003 WL 22227945 (S.D.N.Y. Sept. 26, 2003)—a case pending almost twenty years ago—where the court briefly applied a stay of discovery applicable in a securities class action to a coordinated ERISA action at the very outset of the litigation. *AOL* is easily distinguishable for several reasons. *First*, in *AOL*, unlike here, the stay was sought at the beginning of the litigation, prior to the securities class action or the ERISA class action surviving any motion to dismiss. *In re AOL*, 2003 WL 22227945, at *1; *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2005 WL 563166, at *1 (S.D.N.Y. Mar. 10, 2005) (deciding ERISA class action motion to dismiss). *Second*, in *AOL*, unlike here, there was a legitimate concern that "very broad discovery" sought by the ERISA plaintiffs would "likely have to be repeated" when the PSLRA stay was lifted in the securities case. 2003 WL 22227945 at *1. Here, however, the potentially "duplicative" discovery is narrow (five depositions)—and, as Your Honor previously recognized, those deponents were always going to have to sit for two days of depositions, just as practically every witness in this case was deposed over two days.

*Third*, in *AOL*, the stay was for a "finite" period of time (a few months), while a *pending* motion to dismiss was decided, and prior to the securities class action surviving any motion to dismiss. *Id.* at *2.[2] By contrast, here, PwC is seeking an indefinite stay of the Direct Action that could last for years: as note above, PwC has expressly stated that if it is unsuccessful in overruling Your Honor's report and recommendations in the Class Action, PwC intends to *then* file a motion to dismiss the Class Plaintiff's amended complaint—and PwC would then take the position that the PSLRA stay remains in effect in the Class Action and applies across all of the Direct Actions.

---

[2]   In fact, the motion to dismiss was decided within a matter of months of the stay order, not years into the litigation. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 381 F. Supp. 2d 192 (S.D.N.Y. 2004).

*See* PwC July 2 Letter at 5. Finally, in *AOL*, the court found a wall between the actions was "not tenable" because, unlike here, "some plaintiff's counsel retained on the ERISA action are concurrently representing plaintiffs in the Securities Action." *In re AOL*, 2003 WL 22227945, at *3.[3]

In sum, continued coordination with the Class Action does violence to the just, speedy, and efficient resolution of claims that federal procedure is designed to promote. The Class Action is far narrower in scope than the Direct Actions and is stayed pursuant to the PSLRA. To hold 22 large opt-out claims in abeyance does not promote efficiency, judicial economy, or justice. Instead, it prejudices the Direct Action Plaintiffs by unnecessarily and unduly delaying 22 cases, which have been actively litigating for years, from proceeding to obtain recourse for billions of dollars in damages suffered as a result of Valeant's fraud. In the interests of justice, de-coordination is required at this time.

### III.   PwC Will Not Be Unduly Prejudiced By De-Coordination

Although PwC adamantly seeks continued coordination, it has failed to articulate any cognizable prejudice that would arise from de-coordination, let alone undue harm. The sole putative "prejudice" PwC has articulated to date is the purported "guarantee" of "having its witnesses deposed twice." PwC July 2 Letter at 2. For the outside auditor of an international pharmaceutical company embroiled in a major securities scandal to have a handful of employees sit for two days of deposition is hardly "prejudice," let alone the kind of undue harm that would justify the indefinite delay of the Direct Actions that PwC seeks.

As an initial matter, in an effort to minimize any putative burden to PwC, the Direct Action Plaintiffs have offered to limit their questioning of PwC witnesses to one day, leaving the potential second day of deposition to be conducted in the Class Action—after the pending objections and any subsequent pleading stage briefing has been resolved. Thus, PwC's deponents will not be deposed "twice"; there is simply a *possibility* that PwC's deponents may be deposed for two non-consecutive days, and two days is the default length of depositions under the deposition protocol. As Your Honor noted at the prior hearing, "these witnesses have to be deposed two days anyway[.]" Exhibit 2, July 8, 2021 Hearing Transcript ("Hr'g Tr."), at 36:13-15; ECF 638 at 6. Thus, as the Valeant Defendants and Underwriter Defendants recognized, because PwC's witnesses were always required to sit for two days, "it is perfectly possible for a one day deposition of each PwC witness to move ahead now in the [Direct Actions], with the second day to be

---

[3]   PwC's other authorities cited in its July 2 Letter are equally inapposite. *In re Mut. Funds Inv. Litig.*, 2005 WL 697022 (D. Md. Mar. 11, 2005) addressed a motion to extend a stay at the beginning of a litigation *prior* to the parties surviving any motion to dismiss. Similarly, *In re Galena Biopharma, Inc. Derivative Litig.*, 83 F. Supp. 3d 1033, also addressed applying a stay at the beginning of a litigation *prior* to the parties surviving any motion to dismiss. *Id.* at 1046. Further, *In re Galena* stayed a derivative stockholder action, which are regularly stayed pending the securities class action upon which the derivative stockholder action is premised. The same is not true for individual securities actions, like the Direct Actions, whose claims are not derivative of the conduct in the class action.

scheduled if and when PwC's motion to dismiss the class action is denied."  Valeant July 2, 2021 Letter at 3 n.4.

But even the specter of two non-consecutive days of depositions is hypothetical, because PwC has raised objections to Your Honor's (i) report and recommendation denying their motion for judgment on the pleadings as to the Class Action's Section 11 claim and (ii) report and recommendation permitting the Class Action Plaintiffs to amend their complaint to add a Section 10(b) claim against PwC. If PwC prevails on those objections, then PwC would *never* have to provide discovery in the Class Action. That would result in PwC's witnesses needing to sit for only a single day of deposition in the Direct Actions, rather than the presumptive two days.

In response, PwC asserts that there is a "big difference" between "being deposed for two consecutive days" and where "the second day is separated by six months."  Hr'g Tr. 36:16-25. But, as Your Honor recognized, this is merely a "logistical problem" and while it may be "a little more inconvenient," it is certainly not the sort of undue prejudice that would justify holding up, for years, nearly two dozen cases seeking billions of dollars in damages. Hr'g Tr. 37:2-16. Indeed, PwC and the two law firms representing it cannot seriously contend that they lack the resources to prepare PwC's witnesses for two non-consecutive days of deposition.  And PwC has not cited a single authority that has ever held that the incremental work needed to prepare a deponent for a second non-consecutive day of deposition is either undue harm or justifies staying dozens of separate actions and the material prejudice that would result.

At bottom, PwC seeks to indefinitely stay 22 actions seeking billions of dollars in damages to prevent *five* deponents from sitting for deposition when they *may* later need to sit for a second day of deposition in the event the Class Action proceeds past the pleadings stage. PwC's request undermines judicial efficiency, is contrary to the policies of federal procedure, is unreasonable, and should be summarily denied. De-coordination should be granted to allow the Direct Actions to proceed efficiently.  Further, if Your Honor grants de-coordination, it should go into effect immediately so that discovery of PwC can take place promptly.  Should PwC wish to stay the effect of any de-coordination order pending any objection, they must seek a stay from Your Honor, a standard they cannot meet. *See, e.g.*, *In re Mercedes-Benz Emissions Litig.*, 2019 WL 5800270, at *3 (D.N.J. Nov. 7, 2019) (Cavanaugh, J.).

## IV.    Conclusion

For the foregoing reasons, the Direct Action Plaintiffs respectfully request that the Direct Actions be de-coordinated from the Class Action so that discovery of PwC may be taken in the Direct Actions and the Direct Actions can proceed to expert discovery, summary judgment, and trial.

The Direct Action Plaintiffs appreciate Your Honor's continued attention to these matters.

Respectfully submitted,

**ROLNICK KRAMER SADIGHI LLP**

/s/ *Lawrence M. Rolnick*
Lawrence M. Rolnick
Marc B. Kramer
Sheila A. Sadighi
Michael J. Hampson
1251 Avenue of Americas
New York, NY 10020
Telephone: (212) 597-2800
Facsimile: (212) 597-2801

*Counsel for Plaintiffs*
Case Nos. 16-cv-07321, 16-cv-07324,
16-cv-07494, 16-cv-07496, 18-cv-00089,
18-cv-00893, and 18-cv-01223

**QUINN EMANUEL URQUHART
   & SULLIVAN, LLP**

/s/ *Rollo C. Baker*
Robert S. Loigman
Rollo C. Baker
Kathryn Bonacorsi
Jesse Bernstein
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Counsel for Plaintiffs*
Case No. 18-cv-08705

**CALCAGNI & KANEFSKY, LLP**

/s/ *Eric T. Kanefsy*
Eric T. Kanefsky
Samuel S. Cornish
One Newark Center
1085 Raymond Boulevard, 14th Floor
Newark, NJ 07102
Telephone: (862) 772-8149
Facsimile: (862) 902-5458

*Local Counsel for Plaintiffs*
Case No. 18-cv-08705

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

/s/ Michael J. Miarmi
Steven E. Fineman (admitted *pro hac vice*)
Daniel P. Chiplock (admitted *pro hac vice*)
Michael J. Miarmi (admitted *pro hac vice*)
Sharon M. Lee (admitted *pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel.: (212) 355-9500
Fax: (212) 355-9592
sfineman@lchb.com
dchiplock@lchb.com
mmiarmi@lchb.com
slee@lchb.com

Richard M. Heimann (admitted *pro hac vice*)
Bruce W. Leppla (admitted *pro hac vice*)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel.: (415) 956-1000
Fax: (415) 956-1008
rheimann@lchb.com
bleppla@lchb.com

*Counsel for Plaintiffs*
Case No. 18-cv-00343

**BRESSLER, AMERY & ROSS, P.C.**

/s/ David J. Libowsky
David J. Libowsky
325 Columbia Turnpike, Suite 301
Florham Park, NJ 07932
Tel.: (973) 514-1200
Fax: (973) 514-1660

*Local Counsel for Plaintiffs*
Case No. 18-cv-00343

**DIETRICH SIBEN THORPE LLP**

/s/ David A. Thorpe
David A. Thorpe (*pro hac vice*)
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Telephone: (310) 300-8450
Facsimile:  (310) 300-8041
david@dstlegal.com

Matthew P. Siben (*pro hac vice*)
500 Australian Avenue South, Ste. 637
West Palm Beach, FL 33401
Telephone: (561) 820-4882
Fax: (561) 820-4883
matthew@dstlegal.com

*Counsel for Plaintiff*
Case No. 17-cv-06513

**FLEISCHMAN BONNER & ROCCO LLP**

/s/ Patrick L. Rocco
Patrick L. Rocco
447 Springfield Ave., Second Floor
Summit, NJ 07901
Telephone:  (908) 516-2043
Facsimile:  (908) 516-2049
procco@fbrllp.com

*Local Counsel for Plaintiff*
Case No. 17-cv-06513

**LABATON SUCHAROW LLP**

*/s/ Corban S. Rhodes*
Michael P. Canty
Corban S. Rhodes
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477

*Counsel for Plaintiffs*
Case Nos. 17-cv-07636, 18-cv-08595,
18-cv-15286

**KASOWITZ BENSON TORRES LLP**

*/s/ Stephen W. Tountas*
Stephen W. Tountas
One Gateway Center
Suite 2600
Newark, NJ 07102
Telephone: (973) 645-9462
Fax: (973) 643-2030

*Local Counsel for Plaintiffs*
Case Nos. 17-cv-07636, 18-cv-08595, and
18-cv-15286

**MOTLEY RICE LLC**

*/s/ Serena P. Hallowell*
Serena P. Hallowell
777 Third Ave., 27th Floor
New York, NY 10017
Telephone: (212) 577-0040
Fax: (212) 577-0054

*Counsel for Plaintiffs*
Case Nos. 18-cv-08595 and 18-cv-15286

**GRANT & EISENHOFER, P.A.**

*/s/ Daniel L. Berger*
Daniel L. Berger (admitted *pro hac vice*)
Caitlin M. Moyna (admitted *pro hac vice*)
Jonathan D. Park (admitted *pro hac vice*)
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8500

*Counsel for Plaintiffs*
Case Nos. 17-cv-12088, 20-cv-07460, and
20-cv-04762

**LITE DEPALMA GREENBERG &
AFANDOR, LLC**

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Fax: (973) 623-0858

*Local Counsel for Plaintiffs*
Case Nos. 17-cv-12088, 20-cv-07460, and
20-cv-04762

**HUNG G. TA, ESQ. PLLC**

*/s/ JooYun Kim*
JooYun Kim
Hung G. Ta
250 Park Avenue, Seventh Floor
New York, NY 10177
Tel: (646) 453-7288

*Counsel for Plaintiffs*
Case Nos. 18-cv-00383,  18-cv-00846,
18-cv-17393,  and 20-cv-05478

**KIRBY McINERNEY, LLP**

*/s/ Karen M. Lerner*
Karen M. Lerner
Daniel Hume
Ira M. Press
Meghan J. Summer
New York, NY 10177
Tel: (212) 371-6600

*Counsel for Plaintiffs*
Case No. 20-cv-02190

**SAFIRSTEIN METCALF LLP**

*/s/ Peter Safirstein*
Peter Safirstein
Elizabeth Metcalf (*pro hac vice* forthcoming)
1250 Broadway, 27th Floor
New York, NY 10001
Tel: (212) 201-2845

*Counsel for Plaintiffs*
Case No. 18-cv-00846, 18-cv-17393 and
20-cv-05478

**MARK A. STRAUSS LAW, PLLC**

*/s/ Mark A. Strauss*
Mark A. Strauss
555 Madison Ave., 5th Floor
New York, NY 10022
Tel: (212) 729-9496

*Counsel for Plaintiffs*
Case No. 20-cv-02190

# EXHIBIT C

July 30, 2021

**VIA EMAIL**

Hon. Dennis M. Cavanaugh, U.S.D.J. (ret.)
Special Master
McElroy, Deutsch, Mulvaney & Carpenter LLP
1300 Mount Kemble Ave
Morristown, NJ 07962

Re:     *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, **Master No. 15-cv-7658-MAS-LHG**
**Securities Direct Actions**

Dear Judge Cavanaugh:

  Pursuant to Your Honor's July 9, 2021 Order (ECF 790), the Direct Action Plaintiffs[1] submit this letter in further support of de-coordinating the Direct Actions from the Class Action so that limited discovery of PwC—a professional services firm with more than 250,000 employees and revenues of more than $40 billion—can proceed.  As the Direct Action Plaintiffs demonstrated in their July 23, 2021 letter ("DAP Letter"), continued coordination is materially prejudicing the Direct Action Plaintiffs by unjustifiably delaying the progress of their cases.

  In contrast, in its July 23 letter ("PwC Letter"), PwC provided no cogent explanation for why continued coordination is necessary or appropriate in light of the substantial prejudice to Direct Action Plaintiffs.  Instead, PwC makes unsupported and contradictory arguments which boil down to the following speculative points:  (i) *five* PwC witnesses *may* have to sit for two days of depositions under a deposition protocol that already requires them to sit for two days of depositions; and (ii) the Class Plaintiff—who is represented by entirely different lawyers than the Direct Action Plaintiffs—might somehow come into possession of the PwC discovery taken in the Direct Actions after de-coordination.  As to the former, this half-hearted argument hardly amounts to any real inconvenience—let alone real prejudice—for a sophisticated entity with PwC's vast resources, which *already agreed* that its witnesses would sit for two days of depositions.  As for the latter, PwC provides no basis whatsoever for its speculation that discovery taken by the Direct Action Plaintiffs would somehow come into the Class Plaintiff's possession.

  For the reasons set forth in the Direct Action Plaintiffs' July 23 letter and below, the Direct Action Plaintiffs request immediate de-coordination of the Direct Actions from the Class Action.

---

[1] The Direct Action Plaintiffs are parties to the following case nos.:  16-cv-07321; 16-cv-07324; 16-cv-07494; 16-cv-07496; 17-cv-06513; 17-cv-07636; 17-cv-12088; 18-cv-00089; 18-cv-00343; 18-cv-00383; 18-cv-17393; 18-cv-00846; 18-cv-00893; 18-cv-01223; 18-cv-08595; 18-cv-08705; 18-cv-15286; 20-cv-02190; 20-cv-05478; 20-cv-07460; and 20-cv-07462.

## I.     PwC Does Not Dispute That There Is No PSLRA Stay In The Direct Actions

As the Direct Action Plaintiffs established in their July 23 letter, ***none*** of the Direct Actions is subject to a PSLRA stay.  (DAP Letter at 1-2.)  PwC does not dispute this reality.  (PwC Letter at 3.)  Nonetheless, PwC continues to seek imposition of a de-facto PSLRA stay for each of the more than twenty Direct Actions through continued coordination with the Class Action.  PwC cites no authority in support of this extraordinary request and the Direct Action Plaintiffs are aware of none.

## II.    PwC's Suggestion That Continued Coordination Is Efficient Is Wrong

The Direct Action Plaintiffs' opening letter established that coordination no longer is in the interests of efficiency, judicial economy, or justice—particularly given the substantive and procedural differences following the Class Action settlement against the Valeant and Underwriter defendants.  (DAP Letter 2-5 (citing, *inter alia*, *In re Petrobras Sec.*, 193 F. Supp. 3d 313, 318 (S.D.N.Y. 2016) (refusing to grant stay in 27 individual actions pending appeal of class certification in parallel class action where class action had taken "relative subordinate position" and a stay would only "serve to magnify" "the bane of the American legal process[:] expensive, dispiriting, and undue delay)).)

PwC ignores the stark differences between the Direct Actions and the Class Action and makes a misguided argument that "it would be improper for an individual claim involving a few investors (Hound Partners) to proceed ahead of a claim that asserts the rights of a class of investors[.]"  (PwC Letter at 7.)  This is a red herring.  There is only ***one*** Direct Action that is pursuing claims that overlap with the Class Action.  And the Hound Partners Action—the sole Direct Action that asserts any claim against PwC—is primarily pursuing Section 10(b) claims against Valeant and its former executives, just like the rest of the Direct Actions.  Hound Partners' Section 11 claim against PwC—also brought against Valeant, Valeant's former directors, and Valeant's underwriters—represents a small portion of Hound Partners' overall case.  Thus, the existence of a Section 11 claim in Hound Partners' action provides no basis whatsoever to stay more than twenty actions.  In addition, even if all of the Direct Actions had Section 11 claims against PwC—and they don't—PwC does not even explain why it would be "improper" to allow a Direct Action to proceed ahead of the Class action.  Indeed, PwC cites zero cases for the proposition that it would be improper, particularly here where the Direct Actions are primarily pursuing different claims against different parties and the sole Direct Action Plaintiff that actually has a Section 11 claim against PwC has exponentially more damages than the Class Representative.  (*Compare* Hound Partners Complaint, 18-cv-08705, Dkt. 1, at ¶ 532 (alleging purchase of 268,175 shares in offering) *with* Tucson Stock Certification, 15-cv-07658, Dkt. 80-3, at 2 (alleging purchase of 300 shares in offering).)

Because PwC cannot cite ***any*** authority for the remarkable proposition that ***years*** into litigation more than twenty actions should be stayed pending a motion to dismiss in a significantly narrower class action, PwC reverts back to its reliance on *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2003 WL 22227945 (S.D.N.Y. Sept. 26, 2003), which is entirely inapposite on numerous grounds for the reasons set forth in the Direct Action Plaintiffs' opening letter.  (DAP

Letter 4-5 (noting, *inter alia*, that in *AOL* the stay was of limited duration during a *pending* motion to dismiss at the very outset of the litigation and was necessary to prevent duplication of "very broad discovery").)

Realizing the weakness of its position, PwC asks—yet again—to kick the can down the road and defer a decision on de-coordination until certain clean-up fact discovery is completed. (PwC Letter at 4.)  Specifically, PwC argues that the decision on de-coordination should wait because there is a possibility that PwC's pending objections to your Honor's Reports and Recommendations will be decided "imminent[ly]," which would "avoid the prejudice of PwC producing its witnesses twice."  (PwC Letter at 6.)  But this does not support PwC's request; it supports immediate de-coordination.  If Judge Shipp overrules Your Honor's Reports and Recommendations, then PwC's witnesses would not sit for a second day of depositions in the Class Action (and therefore would not face the putative inconvenience of a second non-consecutive day of deposition).  If Judge Shipp adopts both of Your Honor's Reports and Recommendations and allows for the amended complaint to be filed, then PwC has already promised to move to dismiss and to appeal any negative decision from Your Honor—while taking the position that the PSLRA stay remains in effect.  And if Judge Shipp denies the proposed amendment but sustains Your Honor's denial of the motion for judgment on the pleadings, PwC would then take the position that an additional four months of discovery is required and that the Direct Actions must be put on hold while class certification is resolved in the Class Action.[2]

### III.    PwC Still Has Failed To Articulate Any Undue Harm From De-Coordination

PwC still fails to articulate any undue prejudice that would result from immediate de-coordination.  Instead, PwC advances two contentions:  (i) that *five* witnesses—who were already required to be deposed for two days—*may* need to be deposed on two non-consecutive days, and (ii) there is a theoretical possibility that the Class Plaintiff will obtain discovery taken in the Direct Actions to which it is not entitled during the stay in that action.

For the reasons explained in the Direct Action Plaintiffs' opening letter, the *potential* inconvenience that could be caused by two non-consecutive days of depositions does not justify any further delay of the Direct Actions.  (DAP Letter at 5-6.)  As Your Honor has already recognized, the deposition protocol in this case explicitly provides for **two days of depositions**.  Hr'g Tr. at 36:13-15; ECF 638 at 6.  And many of the witnesses were in fact deposed over **two days**.[3]  Nor, as Your Honor recognized, can the putative "logistical problem" posed by two non-

---

[2]   In this scenario, if PwC is right that decisions on the pending objections in the Class Action are imminent, then there would be a limited time gap between the first and second day of depositions for PwC witnesses whose depositions are commenced prior to the decisions, in which case any potential inconvenience caused by non-consecutive days of deposition would be minimal.

[3]   This renders PwC's authorities regarding the reluctance of courts to grant a second day of depositions inapposite.  Those did not involve a situation—like this one—where a party already agreed to a second day of depositions.  Further, PwC's own authorities recognize that one of the reasons two days of depositions are "disfavored"—though not forbidden, particularly in cases

consecutive days of deposition, which may "be a little more inconvenient," *see* Hr'g Tr. 37:2-16, constitute prejudice justifying the continued delay of the 22 Direct Actions.

As for the second putative concern, PwC provides no basis for the alleged risk that the Class Action Plaintiff may somehow come into possession of the discovery taken of PwC by the Direct Action Plaintiffs. (PwC Letter at 5.) To the extent PwC is suggesting that the Direct Action Plaintiffs would violate confidentiality obligations, PwC is wrong. Moreover, there is no overlap between the parties or attorneys in the Direct Actions and the Class Action, and there is no reason whatsoever to believe that the Class Action would come into possession of discovery to which it is not entitled.

At bottom, despite the absence of any articulated prejudice to PwC, it asks Your Honor to unduly prejudice more than twenty actions seeking billions of dollars by indefinitely staying them. They cite no case that has instituted a stay under similar circumstances, and they are not entitled to one here.[4]

## IV.   The Additional Time Requested By PwC Is Unreasonable

PwC also seeks delay through another means: a *four-month* extension of discovery. (PwC Letter at 7.) But as the schedule currently stands, PwC has nearly three months to produce its *five* witnesses and take any discovery PwC claims to need in the Hound Partners Action. As set forth in Hound Partners' supplemental letter, three months is more than sufficient time for the limited PwC-related discovery to be completed and for PwC to prepare its opening expert report. PwC's arguments to the contrary are not persuasive.

First, relying on a comparison to the amount of time taken for the Hound Partners' depositions, PwC suggests that it cannot possibly complete this discovery in less than 120 days.

---

where the parties have agreed to that procedure—is that a second deposition "provides the deposing party with an unfair strategic advantage, offering it multiple bites at the apple, each time with better information than the last." *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 235 (E.D. Pa. 2008). But that concern is irrelevant here because the Direct Action Plaintiffs will not be taking the second day of PwC's deposition. It will be an entirely different party pursuing that deposition, to the extent it ever occurs.

[4]  PwC suggests that it simply wants to "receive the same courtesy and benefit that all other parties and their witnesses have received." (PwC Letter at 5.) But the Direct Action Plaintiffs offered PwC the option of having the two-day depositions occur now on consecutive days. PwC rejected this offer due to its unwillingness to be flexible with respect to the PSLRA stay in the Class Action. As the Direct Action Plaintiffs noted, however, PwC could have entered into an agreement whereby the Class Action could not use any discovery it obtained from the depositions occurring now in order to cure any deficiencies in its pleading, which is an agreement parties have entered into in other cases, including in this district. *See, e.g.*, *TIAA-CREF Large-Cap Growth Fund v. Allergan PLC*, 17-cv-11089, Dkt. 26 at ¶ 3 (D.N.J. Dec. 15, 2017); *Canyon Capital Advisors LLC v. Terraform Global, Inc.*, 16-cv-9171, Dkt. 111 at 10 (S.D.N.Y. Oct. 2, 2018).

(PwC Letter at 8.)  PwC omits, however, the fact that the Hound Partners' depositions were not all noticed at the same time, whereas the PwC depositions will likely all be noticed as soon as de-coordination is ordered.  Moreover, PwC omits the number of Valeant and non-party depositions that were occurring at the same time as the Hound Partners' depositions.  Once PwC discovery is permitted to proceed, it will represent nearly all of the outstanding discovery.  Therefore, there will be far fewer logistical scheduling issues and the parties will be able to devote their resources to completing the PwC discovery.

Second, PwC claims that it needs a four-month extension in order to make certain privilege challenges that it has preserved.  (PwC Letter at 8.)  But PwC does not explain why it has not already raised those challenges as the Direct Action Plaintiffs and the Class Plaintiff have previously done.  It appears PwC may be strategically waiting to raise its objections with Your Honor in order to cause further delay.

Finally, PwC's claim that it needs an extension because it "had no reason to prepare expert reports on Hound Partners' Section 11 claim" following Your Honor's Report and Recommendation recommending dismissal of that claim is equally without merit.  (PwC Letter at 8.)  Even accepting PwC's assertion, PwC's affirmative expert reports are not due until October 11, 2021, which is *four months* after the Third Circuit's decision in *Aly*.  PwC had more than ample notice that PwC would need to submit expert reports in the Hound Partners' Action.  PwC does not explain why four months to do so is insufficient.

### V.      PwC's Threat To Use The Special Master System To Delay Is Baseless

PwC's final request is that any order by Your Honor not take effect until any objection PwC files—however meritless—has been decided by Judge Goodman.  (PwC Letter at 8.)  PwC fails to cite a single case holding that a Special Master's rulings, particularly rulings regarding discovery matters for which the level of review is abuse of discretion, do not take effect until any objections to the rulings have been decided.  Pursuant to Your Honor's instructions, this issue is being briefed separately by letters to be submitted on Friday, July 30.  Suffice it to say that the Direct Action Plaintiffs disagree with PwC's position, which would allow the defendants (as PwC seek to do here) to grind cases to a halt by virtue of mounting serial (and meritless) objections to virtually every ruling.

### VI.      The Valeant Defendants' Request For Continued Coordination Is Unnecessary

Although the Valeant Defendants now agree that discovery of PwC should proceed promptly, the Valeant Defendants contend that continued coordination is beneficial for "[o]mnibus [c]ase [m]anagement [c]onferences," "[u]se of [d]ocuments [a]cross [c]ases," "[u]se of [d]epositions [a]cross [c]ases," and "[p]ending [d]iscovery [m]otions."  (Valeant Letter at 3-4.)  None of these benefits require formal coordination.  Indeed, they can all be accomplished through informal coordination to the extent actually necessary.

*First*, to the extent there are any "omnibus case management conferences" going forward—which is doubtful given the differing procedural posture of the cases—Your Honor can simply order that all parties attend such a conference. There is no need for continued formal coordination in order to hold a joint case management conference.

*Second*, the Valeant Defendants claim that if de-coordination is granted, they may not be able to obtain "important documents produced by PwC to Class Plaintiff," but the Valeant Defendants do not explain why there would be important documents produced to the Class Plaintiff that PwC did not produce in response to a discovery request or subpoena from Valeant. In any event, Valeant could serve document requests or subpoenas to PwC to ensure that Valeant obtains any documents produced in the Class Action.

*Third*, Valeant claims it could be prejudiced from the inability to depose Class Plaintiff or PwC. Valeant, however, does not explain why it would be deposing Class Plaintiff at all given that it has settled with Class Plaintiff. The idea that Valeant needs discovery from the Class Plaintiff in defense of the Direct Actions is absurd. Moreover, Valeant's suggestion that de-coordination may prejudice Valeant's ability to depose PwC is puzzling. De-coordination would allow discovery of PwC to proceed in the Direct Actions—which are the only actions to which Valeant is a party. Thus, de-coordination would allow Valeant to depose PwC now.

Finally, Valeant claims that if de-coordination is granted it would create "an open question as to the extent to which such discovery has to be taken repeatedly in separate de-coordinated actions." Once again, informal coordination solves this issue. The parties—particularly on the plaintiff side—have proven they can coordinate efficiently with each other. The Direct Action Plaintiffs remain committed to doing so, but do not believe formal coordination is necessary, particularly in light of the substantial prejudice arising from continued coordination with the Class Action.

Moreover, continued coordination would continue to delay the Direct Actions by tying the Direct Actions to a case whose schedule will diverge significantly from the Direct Actions, including due to the PSLRA stay and the unique procedural issues in a class action, such as class certification. The parties—particularly the Defendants—have received significant benefits from coordination on fact discovery. However, as the Direct Action Plaintiffs proceed to expert discovery, it is simply no longer in the interests of efficiency, judicial economy, or justice to have the Direct Actions coordinated with the Class Action, which may not reach expert discovery for years.

## VII.   Conclusion

For the foregoing reasons, the Direct Action Plaintiffs respectfully request that the Direct Actions be de-coordinated from the Class Action. De-coordination will allow a limited amount of discovery from PwC to be taken, which will allow the Direct Actions to proceed to expert discovery, summary judgment, and trial.

The Direct Action Plaintiffs appreciate Your Honor's continued attention to these matters and look forward to answering any questions Your Honor has at the August 18 conference.

Respectfully submitted,

**ROLNICK KRAMER SADIGHI LLP**

/s/ *Lawrence M. Rolnick*
Lawrence M. Rolnick
Marc B. Kramer
Sheila A. Sadighi
Michael J. Hampson
1251 Avenue of Americas
New York, NY 10020
Telephone: (212) 597-2800
Facsimile: (212) 597-2801

*Counsel for Plaintiffs*
Case Nos. 16-cv-07321, 16-cv-07324,
16-cv-07494, 16-cv-07496, 18-cv-00089,
18-cv-00893, and 18-cv-01223

**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**

/s/ *Rollo C. Baker*
Robert S. Loigman
Rollo C. Baker
Kathryn Bonacorsi
Jesse Bernstein
51 Madison Avenue
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Counsel for Plaintiffs*
Case No. 18-cv-08705

**CALCAGNI & KANEFSKY, LLP**

/s/ *Eric T. Kanefsy*
Eric T. Kanefsky
Samuel S. Cornish
One Newark Center
1085 Raymond Boulevard, 14th Floor
Newark, NJ 07102
Telephone: (862) 772-8149
Facsimile: (862) 902-5458

*Local Counsel for Plaintiffs*
Case No. 18-cv-08705

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

/s/ Michael J. Miarmi
Steven E. Fineman (admitted *pro hac vice*)
Daniel P. Chiplock (admitted *pro hac vice*)
Michael J. Miarmi (admitted *pro hac vice*)
Sharon M. Lee (admitted *pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel.: (212) 355-9500
Fax: (212) 355-9592
sfineman@lchb.com
dchiplock@lchb.com
mmiarmi@lchb.com
slee@lchb.com

Richard M. Heimann (admitted *pro hac vice*)
Bruce W. Leppla (admitted *pro hac vice*)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel.: (415) 956-1000
Fax: (415) 956-1008
rheimann@lchb.com
bleppla@lchb.com

*Counsel for Plaintiffs*
Case No. 18-cv-00343

**BRESSLER, AMERY & ROSS, P.C.**

/s/ David J. Libowsky
David J. Libowsky
325 Columbia Turnpike, Suite 301
Florham Park, NJ 07932
Tel.: (973) 514-1200
Fax: (973) 514-1660

*Local Counsel for Plaintiffs*
Case No. 18-cv-00343

**DIETRICH SIBEN THORPE LLP**

/s/ David A. Thorpe
David A. Thorpe *(pro hac vice)*
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Telephone: (310) 300-8450
Facsimile:  (310) 300-8041
david@dstlegal.com

Matthew P. Siben *(pro hac vice)*
500 Australian Avenue South, Ste. 637
West Palm Beach, FL 33401
Telephone: (561) 820-4882
Fax: (561) 820-4883
matthew@dstlegal.com

*Counsel for Plaintiff*
Case No. 17-cv-06513

**FLEISCHMAN BONNER & ROCCO LLP**

/s/ Patrick L. Rocco
Patrick L. Rocco
447 Springfield Ave., Second Floor
Summit, NJ 07901
Telephone:  (908) 516-2043
Facsimile:  (908) 516-2049
procco@fbrllp.com

*Local Counsel for Plaintiff*
Case No. 17-cv-06513

**LABATON SUCHAROW LLP**

*/s/ Corban S. Rhodes*
Michael P. Canty
Corban S. Rhodes
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477

*Counsel for Plaintiffs*
Case Nos. 17-cv-07636, 18-cv-08595,
18-cv-15286

**KASOWITZ BENSON TORRES LLP**

*/s/ Stephen W. Tountas*
Stephen W. Tountas
One Gateway Center
Suite 2600
Newark, NJ 07102
Telephone: (973) 645-9462
Fax: (973) 643-2030

*Local Counsel for Plaintiffs*
Case Nos. 17-cv-07636, 18-cv-08595, and
18-cv-15286

**MOTLEY RICE LLC**

*/s/ Serena P. Hallowell*
Serena P. Hallowell
777 Third Ave., 27th Floor
New York, NY 10017
Telephone: (212) 577-0040
Fax: (212) 577-0054

*Counsel for Plaintiffs*
Case Nos. 18-cv-08595 and 18-cv-15286

**GRANT & EISENHOFER, P.A.**

*/s/ Daniel L. Berger*
Daniel L. Berger (admitted *pro hac vice*)
Caitlin M. Moyna (admitted *pro hac vice*)
Jonathan D. Park (admitted *pro hac vice*)
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8500

*Counsel for Plaintiffs*
Case Nos. 17-cv-12088, 20-cv-07460, and
20-cv-04762

**LITE DEPALMA GREENBERG & AFANDOR, LLC**

*/s/ Bruce D. Greenberg*
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Fax: (973) 623-0858

*Local Counsel for Plaintiffs*
Case Nos. 17-cv-12088, 20-cv-07460, and
20-cv-04762

**HUNG G. TA, ESQ. PLLC**

*/s/ JooYun Kim*
JooYun Kim
Hung G. Ta
250 Park Avenue, Seventh Floor
New York, NY 10177
Tel: (646) 453-7288

*Counsel for Plaintiffs*
Case Nos. 18-cv-00383, 18-cv-00846,
18-cv-17393, and 20-cv-05478

**KIRBY McINERNEY, LLP**

*/s/ Karen M. Lerner*
Karen M. Lerner
Daniel Hume
Ira M. Press
Meghan J. Summer
New York, NY 10177
Tel: (212) 371-6600

*Counsel for Plaintiffs*
Case No. 20-cv-02190

**SAFIRSTEIN METCALF LLP**

*/s/ Peter Safirstein*
Peter Safirstein
Elizabeth Metcalf (*pro hac vice* forthcoming)
1250 Broadway, 27th Floor
New York, NY 10001
Tel: (212) 201-2845

*Counsel for Plaintiffs*
Case No. 18-cv-00846, 18-cv-17393 and
20-cv-05478

**MARK A. STRAUSS LAW, PLLC**

*/s/ Mark A. Strauss*
Mark A. Strauss
555 Madison Ave., 5th Floor
New York, NY 10022
Tel: (212) 729-9496

*Counsel for Plaintiffs*
Case No. 20-cv-02190

# EXHIBIT D



Eric T. Kanefsky, Senior Partner
862.772.8149   eric@ck-litigation.com

July 30, 2021

<u>Via Email</u>

Hon. Dennis M. Cavanaugh, U.S.D.J. (ret.)
Special Master
McElroy, Deutsch, Mulvaney & Carpenter LLP
1300 Mount Kemble Ave
Morristown, NJ 07962

Re:    *In re Valeant Pharmaceuticals International, Inc. Securities Litigation, Master File No. 15-cv-7658 (MAS)(LHG) and Hound Partners Offshore Fund LP, et al. v. Valeant Pharmaceuticals International, Inc., et al., No. 3:18-cv-8705 (MAS)(LHG)*

Dear Judge Cavanaugh:

We represent the Plaintiffs in *Hound Partners Offshore Fund LP v. Valeant Pharmaceuticals International, Inc.*, No. 18-cv-8705 (MAS) (LHG), one of the Direct Actions before Your Honor. As demonstrated in the Direct Action Plaintiffs' joint letter, continued coordination would be unduly prejudicial to the Direct Action Plaintiffs. Hound Partners writes separately to address PwC's purported discovery needs in the Hound Partners Action. Although PwC has participated in fact discovery over the past twelve months, including by questioning Hound witnesses at depositions, PwC has, for months, claimed that it will need some unspecified discovery from Hound Partners once discovery of PwC is permitted. Over those months, Hound Partners repeatedly has requested that PwC identify what discovery of Hound it needs. Despite these requests, PwC has declined to identify discovery topics with any specificity. Consistent with these past refusals to disclose what discovery may be required, PwC's July 23, 2021 letter ("PwC Letter") still provides no specificity, beyond naming the general categories of discovery that are permitted under the federal rules. It has become apparent that PwC is seeking to use its purported discovery needs in the Hound action in order to obtain further delay. Specifically, in an attempt to further delay the Direct Actions even if the Court de-coordinated the Direct Action from the Class Action, PwC requests that fact discovery be extended by at least ***120 days*** with corresponding extensions to expert discovery.

As an initial matter, even if PwC could identify a need for the discovery it has, to date, refused to identify, PwC's discovery needs in this action should be minimal: "It is well known that trials in securities class actions focus almost entirely on the defendants' conduct." *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 396 (S.D.N.Y. 2006) (alterations and citations omitted). This is particularly true here because the sole claim against PwC is for violation of Section 11 of the Securities Act, which requires only that plaintiffs show "they purchased securities pursuant to a materially false or misleading registration statement." *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 273 & n.5 (3d Cir. 2004) (explaining the minimal "requirements under section 11 stand in stark contrast to those of the Securities Exchange Act of 1934 (the '1934 Act'), which include a showing of reasonable reliance and scienter.").

ck-litigation.com   862.397.1796   One Newark Center   85 Broad Street
862.902.5458   1085 Raymond Blvd., 14th Floor   Suite 17031
Newark, NJ 07102   New York, NY 10004
Preferred Mailing Address

July 30, 2021
Page 2 of 3

But even such minimal discovery is unnecessary, as evidenced by PwC's conduct throughout this litigation. For example, after its repeated inquiries regarding PwC's asserted need for additional discovery, on June 17, 2021, Hound informed PwC that, although Hound did not believe PwC was entitled to additional discovery, Hound was willing to meet and confer to reach an agreement with respect to such discovery. *See* Ex. A (Email Correspondence from Mr. Baker to Mr. Turnbull, dated June 17, 2021). PwC ***never responded***, belying its own assertion that the requested discovery is somehow critical to its defense and revealing that its true aim is further delay.

And even in the most recent letter to Your Honor, PwC has refused to identify anything beyond the general categories of discovery allowed under the Federal Rules (interrogatories, requests for production, requests for admission, and depositions). PwC's recitation of the broad categories of discovery permissible under the Federal Rules—and corresponding refusal to identify any *substantive* topics of inquiry—cannot possibly warrant further delay. And much of PwC's identified discovery is inconsistent with the deposition and discovery protocols to which PwC acceded in this matter. *See* Dkt. 638 (Stipulation and Order Governing Protocol for Fact Depositions) at 2.

*First*, PwC indicates that it requires an extension to fact discovery to serve requests for production. But the requests for production in this matter were served on October 24, 2018, well before the stay as to PwC was entered in March 2020. If additional requests for production were critical to its defenses, PwC has no excuse for failing to serve those requests in the *years* prior to entrance of the stay. PwC's failure to serve any such requests demonstrates that additional requests for production would be unnecessary in light of the expansive requests that Defendants have already served. For example, the Valeant Defendants' requested "[a]ll Documents and Communications Relating to [Hound's] decision to invest in the Stock Offering" and "[a]ll Documents Relating to Valeant Securities, or any of the allegations contained in the Complaint."

Moreover, the coordination order explicitly states that if "PwC believes it cannot meaningfully participate in a deposition . . . without obtaining additional documents, they shall meet and confer regarding whether [PwC] may initiate discovery to obtain such documents." Dkt. 634 (Joint Stipulation and Order regarding Discovery and Schedule in Securities Class Action and Opt-Out Litigations) at 5 n.1. Not once has PwC initiated this meet and confer process prior to a deposition of a Hound witness, including a 30(b)(6) deposition, further demonstrating that PwC does not actually require additional documents from Hound.

*Second*, PwC may not justify further delay by seeking to depose more Hound witnesses than PwC is entitled to question under the deposition protocol. Defendants in Direct Actions, including *Hound Partners*, are permitted "collectively to take four depositions, including Rule 30(b)(6) depositions, of each Opt-Out Plaintiff Group." *See* Dkt. 638 (Stipulation and Order Governing Protocol for Fact Depositions) at 8. Defendants already have taken four depositions of Hound Plaintiffs: Hound's 30(b)(6) designee, Hound's Chief Investment Officer, Hound's senior analyst responsible for the Valeant investment, and an additional senior analyst at Hound. Counsel for PwC asked questions at each of these depositions.[1] And neither Valeant, which is the primary

---

[1]   PwC may argue that it has taken only three depositions of Hound witnesses because Hound's Chief Investment Officer testified in his personal capacity and as a 30(b)(6) witness. But "[a] deposition of an individual is designed to

July 30, 2021
Page 3 of 3

defendant in this action, the individual defendants, nor the Underwriter Defendants have indicated that these depositions were inadequate or sought additional fact discovery of Hound.

*Third*, PwC's assertion that additional interrogatories warrant extending fact discovery is another transparent attempt to delay.  Hound has already responded to 28 interrogatories served by Valeant, and then further supplemented those responses.  PwC has made no effort to date to identify specific topics requiring further discovery.  Nor could it, as Valeant's expansive interrogatories requested, amongst other things, that Hound identify "any statement, figure, or calculation set forth in Valeant's financial statements for the Relevant Period that [Hound] contend[s] is materially false or misleading."

*Fourth*, PwC cannot credibly claim that additional requests for admission are necessary or provide reasonable grounds for extending fact discovery.  As with interrogatories, Hound has responded to a numerous requests for admission served by Valeant.  And PwC has again made no attempt to describe additional topics requiring requests for admission.

PwC has not identified a single additional topic that it requires to supplement the already extensive factual record.  And, in any event, even if PwC could identify some additional fact discovery that were necessary, that would not justify further delays to all Direct Actions.  A handful of PwC witnesses, a deposition of Colleen Goggins, a former Valeant director PwC has indicated it will seek to depose, and any minimal discovery needed of Hound Partners can all be conducted well before the deadline for affirmative expert reports, currently set for October 11, 2021.

Respectfully submitted,

**QUINN EMANUEL URQUHART**          **CALCAGNI & KANEFSKY LLP**
  **& SULLIVAN, LLP**

*/s/ Rollo C. Baker*                             */s/ Eric T. Kanefsky*
Robert S. Loigman                              Eric T. Kanefsky
Rollo C. Baker                                    Samuel Scott Cornish
Kathryn Bonacorsi                              One Newark Center
Jesse Bernstein                                  1085 Raymond Blvd., 14th Floor
51 Madison Avenue                            Newark, New Jersey 07102
New York, New York 10010                 T: (862) 772-8149
T: (212) 849-7000                              F: (862) 902-5458

*Counsel for Plaintiffs*                        *Local Counsel for Plaintiffs*
Case No. 18-cv-08705                          Case No. 18-cv-08705

 cc:  All Counsel of Record (via e-mail)

---

elicit personal knowledge whereas a corporate representative must testify about information known or reasonably available to the organization.  An individual-capacity deposition of a Rule 30(b)(6) designee therefore counts as a separate deposition under Rule 30(a)."  *Lawson v. Spirit AeroSystems, Inc.*, 2020 WL 1285359, at *6 (D. Kan. Mar. 18, 2020) (internal quotation marks omitted).  This is also why the deposition protocol explicitly provides that the four deposition limit, "include[es] Rule 30(b)(6) depositions."

# EXHIBIT E

1

2                 UNITED STATES DISTRICT COURT

3                  DISTRICT OF NEW JERSEY

4    ----------------------------------------)

5    In re:  No. 15-cv-07658 (MAS)(LHG)

6    VALEANT PHARMACEUTICALS INTERNATIONAL,

7    INC. SECURITIES LITIGATION, Master File

8    ----------------------------------------)

9    In re:  No. 16-cv-03087

10   VALEANT PHARMACEUTICALS INTERNATIONAL,

11   INC. THIRD-PARTY PAYOR LITIGATION,

12   _____)

13

14

15

16   REMOTE VIDEOTAPED DEPOSITION OF JAMES R. FLEMING

17                Friday, December 11, 2020

18                 Rutledge, Pennsylvania

19                      9:02 a.m.

20

21

22

23   Reported by:  BONNIE PRUSZYNSKI, RMR, RPR, CLR
     JOB NO. 187508
24

25

1

2                UNITED STATES DISTRICT COURT

3                 DISTRICT OF NEW JERSEY

4    ------------------------------------------x

5    In re:              No. 15-cv-07658 (MAS)(LHG)

6    VALEANT PHARMACEUTICALS INTERNATIONAL, INC.

7    SECURITIES LITIGATION, Master File

8    ------------------------------------------x

9    In re:·             No. 16-cv-0308710

10   VALEANT PHARMACEUTICALS INTERNATIONAL, INC.

11   THIRD-PARTY PAYOR LITIGATION

12   ------------------------------------------x

13

14   REMOTE VIDEOTAPED DEPOSITION OF JAMES R. FLEMING

15                     Volume 3

16              Wednesday, June 23, 2021

17

18

19

20

21

22

23   Reported by:

24   Amy A. Rivera, CSR, RPR, CLR

25   JOB NO. 195840