UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Master No. 3:15-cv-07658-MAS-LHG<br><br>JUDGE MICHAEL A. SHIPP<br>JUDGE LOIS H. GOODMAN |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **ORDER & OPINION<br>OF THE SPECIAL MASTER<br>JUDGE DENNIS CAVANAUGH, RET.** |

Before the Special Master is an application filed by Direct Action Plaintiffs ("Plaintiffs") in which they seek a stipulation and order deeming to incorporate into each of the operative complaints what they describe as a "comprehensive list of all the misrepresentations at issue in the numerous Direct Actions updated through discovery." Plaintiffs' request was initially proposed in a letter dated January 10, 2022, to the Special Master in advance of a then pending status conference.

Defendant, Valeant Pharmaceuticals International, Inc. and the individual defendants ("Valeant" or "Defendants") have opposed this request. Although not filed by way of a formal motion but in light of the fact that the parties have fully briefed and argued this application, the Special Master will treat it as such.

In deciding this application, the Special Master has reviewed the following: Plaintiffs' January 10, 2022 correspondence with attachments; Defendants' January 18, 2022 correspondence with attachments; and Plaintiffs' letter of January 18, 2022 opposing Plaintiffs'

request to coordinate and standardize the issues. Additionally, the Special Master heard extensive oral argument on this application at the January 26, 2022 status conference.

After considering the submissions and having heard oral argument, it is the opinion of the Special Master that Plaintiffs' application is **DENIED**.

I.      **Factual and Procedural Background**

Yet again, the Special Master assumes the parties are deeply familiar with the facts that underlie this litigation and which form the basis of the application before the court. Only those facts and procedural events pertinent to this application will be set forth briefly here.

This application arises from the filing of 21 individual complaints on behalf of the Direct Action Plaintiffs, a series of suits sometimes referred to by the parties at the "opt-out actions." Those actions were filed at different points of time by different attorneys representing various Direct Action Plaintiffs who were investors in Valeant securities. Thereafter, discovery in these lawsuits was coordinated in order to expedite movement of these actions through the court system although the cases have not been consolidated. The Special Master was appointed to oversee that process and, if necessary, to resolve disputes such as this one. As part of that process, the Special Master on October 24, 2021, entered an Order addressing how the Direct Action suits should proceed through expert discovery and summary judgment, which included coordinating expert discovery, the service of joint expert reports and the filing of joint summary judgment briefs on common issues among the parties.

It is the Special Master's understanding that the parties have, in fact, engaged in extensive discovery which has involved the exchange of written materials (notices to produce, interrogatories) and the depositions of multiple witnesses. According to Plaintiffs' January 10

submission, they were on track to serve experts' reports by February 2, 2022, in line with the case management schedule previously issued.

Plaintiffs now assert that in order to continue moving these matters forward in an efficient way, they believe it is necessary to promulgate a "comprehensive list of all the misrepresentations at issue in the numerous Direct Actions updated through discovery." Plaintiffs specifically seek a stipulation and order incorporating a series of statements consisting of approximately 300 alleged misrepresentations made by Defendants (Exhibit A to Plaintiffs' application) into each of the operative complaints in the Direct Actions.  Plaintiffs have submitted that exhibit along with a proposed stipulation and order as part of this application. That order further provides that the parties shall be permitted to rely on Exhibit A "as a single source for the statements at issue for the commonly asserted claims in each of the Direct Actions" including in connection with joint expert reports and summary judgment briefs.

Defendants have opposed Plaintiffs' request to coordinate and standardize the issues for expert discovery, summary judgment and trial.  It is Defendants' position that the 21 Direct Action Plaintiffs are legally obligated to amend each of their complaints pursuant to Federal Rule of Civil Procedure 15 and therefore urge the Special Master to preclude incorporating any new misrepresentations in each of these opt-out cases.

**II.    Plaintiffs' Argument**

As set forth above, Plaintiffs maintain that an additional step is necessary to facilitate the service of joint experts' reports and summary judgment briefs on common issues – the utilization of a document that can be employed "as a single reference for all of the misrepresentations" at issue.  Plaintiffs state that the 21 pending actions do not contain an identical set of alleged misrepresentations, although there is much commonality.  During discovery, additional

3

misrepresentations were identified, although those misrepresentations also relate to the "same exact fraudulent conduct" alleged in the complaints. Additionally, say Plaintiffs, more recently contention interrogatories, separately answered by each Plaintiff, identified misrepresentations each contends are at issue. Plaintiffs also state that there are a smaller set of misrepresentations falling into none of the other groups. Consequently, Plaintiffs created a list of misrepresentations and then proposed a joint stipulation incorporating them but Defendants have rejected that effort.

Underpinning this request for a court-sanctioned common list of misrepresentations, Plaintiffs say, this list, while comprehensive, contains misrepresentations that have already been alleged in the Plaintiffs' complaints "or [are] simply another misrepresentation of the same type identified during" discovery. None are new or constitute surprise or prejudice to Defendants. Nevertheless, say Plaintiffs, by refusing to agree to the stipulation, and requiring formal amendments of the complaints, Defendants are engaging in an effort to delay the movement of this case since formal motions by each of the 21 Direct Action Plaintiffs would create a judicial log jam.

Plaintiffs assert, contrary to Defendants' position, that they are not required to formally amend each of the complaints and that any misrepresentations "contained on Exhibit 1 [sic: Exhibit A] that are not already pled in at least one of the Direct Action complaints were either identified in response to Valeant's contention interrogatories or are similar to those pled in the complaints." Relying heavily upon a Second Circuit decision, *In Re: Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011), Plaintiffs say that at this stage, the allegations in the complaints are not controlling under the Private Securities Litigation Reform Act ("PSLRA") and they are not bound to the precise set of alleged misstatements identified in their complaints throughout the entire course of litigation. Having made this request prior to the

4

service of experts' reports, motions and trial, Plaintiffs maintain they have maximized efficiencies. Further, all of the misrepresentations fall under the "same umbrella" as those alleged in the complaints relating to Philidor and price/volume fraud. Hence, none are a surprise or introduce a new theory of liability leading to prejudice. Plaintiffs ask the Special Master to issue a directive (the proposed stipulation and order) that the Plaintiffs may rely on Exhibit A as the "single source" for the misrepresentations at issue.

### III.   Defendants' Argument

Defendants object to Plaintiffs' request to add "large numbers" of new misrepresentations and assert that many of them failed to appear in any complaint and "all of which were made more than six years ago – well after the relevant statutes of repose have expired." Defendants generally argue that there is no authority for this unusual request and more importantly nothing in the Rules which authorizes the court to simply deem some 21 securities fraud complaints to allege unpleaded misrepresentations.

Defendants also argue that Plaintiffs have been dilatory in seeking such relief. That is, the request comes merely a month before expert reports are due and belies previous assertions by Plaintiffs to the court that they would be able to serve coordinated expert reports and dispositive motions without any court action. Given this, Defendants say, Plaintiffs can serve reports and file motions (individually) and to the extent that these submissions involve statements not previously pleaded, consequences can be addressed through motion practice. Alternatively, Plaintiffs can move for leave to amend their complaints.

Contrary to Plaintiffs' statements, Defendants assert that the proposed stipulation (incorporating Exhibit A) makes material changes to the complaints. Defendants have provided an appendix (Appendix 1) which, they say, demonstrate substantial differences between the

5

misrepresentations alleged in Plaintiffs' operative pleadings from those Plaintiffs now request to be incorporated as part of the comprehensive list of misrepresentations. According to Defendants, about a quarter of the quoted statements in Exhibit A cannot be found in the 21 complaints and they point to specific examples of these differences (e.g., May 2, 2013 earnings call; July 23, 2015 8-K; and disclosures relating to Valeant's Q2 top 2015 brands regarding use of special pharmacies).

Additionally, beyond this 25% of statements, Defendants say, many complaints failed to allege entire categories of misrepresentations, undermining Plaintiffs' position that these misrepresentations effectively exist in the pleadings. Defendants cite additional examples of this discrepancy at page 3-4 of their opposition.

Finally, in terms of many of the 21 complaints, only a very small portion of the misstatements appear and that "in total, the twenty-one complaints plead on average less than fifty percent of the alleged misrepresentations set forth in Exhibit A."

Defendants also take issue with the proposed stipulation with regard to the timing of the misrepresentations compared to the timing of the recovery sought. Defendants point specifically to the *Maverick* action in which the plaintiff traded in Valeant securities prior to the relevant period (April 30, 2015 to November 5, 2015) but profited overall when transactions dating back to 2013 are considered as well. Defendants assert that it is inappropriate to incorporate misstatements from earlier time periods than what is currently pled while allowing *Maverick* and other plaintiffs to ignore transactions from earlier periods during which they profited.

Additionally, and most significantly, Defendants take issue to the proposed "informal amendment," both procedurally and substantively.

In this regard, Defendants object to what they describe as an "end-run around Rule 15." That is, in order to amend their pleadings, Plaintiffs were obligated to either obtain Defendants' permission to do so (something which did not and apparently will not happen) or by filing a Rule 15 motion – and, say Defendants, there is no "interrogatory response exception" to this procedural requirement. Nor does Rule 16 provide relief since Plaintiffs have made no showing "let alone a good cause showing," that they could not have met the amendment deadlines here. [See, Defendants' response, footnote 6.]

Moreover, given that each of these matters are securities fraud cases subject to heightened pleading standards, allowing a party "to informally amend" their complaints subverts statutorily-required pleading obligations.

Defendants also maintain that they would be surprised and prejudiced by the incorporation of additional misrepresentations as proposed here. Defendants insist that they pursued fact discovery on the basis of allegations actually contained in the complaints, not those made in response to discovery requests after discovery had closed or those included in Exhibit A for the first time. Equally prejudicial, say Defendants, was the inability to take "reliance discovery," as to claims based on statements (between 2013 and 2016) now barred by the Exchange Act's 5-year statute of repose or the Securities Act's 3-year statute of repose. In short, by deeming these statements incorporated into Plaintiffs' pleadings, Defendants have been deprived of their rights.

Finally, Defendants assert that the New York Federal Court's decision in *Vivendi,* is procedural and factually distinguishable since it arose out of a post-trial verdict form dispute, i.e., the defendants were aware of and had addressed the misrepresentations at trial.

### IV. Plaintiffs' Response

Briefly stated, Plaintiffs maintain that they have put forth a sensible and legally supported proposal which Defendants mistakenly contend results in prejudice and that Defendants have mischaracterized the subject misrepresentations.

Plaintiffs point to several examples where they say Defendants have mischaracterized or outright misstated what is not already included in the complaints or to which Defendants contend that "entire categories of statements" fail to appear in certain pleadings. As to these, Plaintiffs cite examples from eight Direct Actions which demonstrate that the misrepresentations cited to in the pleadings are functionally or substantially similar to those reported in Appendix A. In short, Plaintiffs say, while the precise wording may differ between the pleadings filed and the proposed misrepresentations now contained in the comprehensive list, those set forth in Exhibit A are substantively similar to misrepresentations already alleged. Hence, Defendants cannot claim surprise or prejudice.

Along these lines, Plaintiffs maintain that the assertion of prejudice is further belied by the fact that counsel took comprehensive depositions in which Direct Action Plaintiffs were questioned about claims absent from the complaint, thereby covering all aspects of Plaintiffs' theories. Thus, there is no basis to assume that Defendants would have approached discovery any differently had the additional misrepresentations been identified previously in pleadings.

Plaintiffs refute Defendants' arguments that they must move for leave to amend their complaints and also that the statutes of repose foreclose the inclusion of the additional misrepresentations.

As to the former, Plaintiffs rely again on *Vivendi* which, they say, is the only federal appellate authority on this question. Essentially, Plaintiffs interpret the holdings at the trial level

and on appeal in *Vivendi* to stand for the same propositions they are seeking to advance here – that having been effectively on notice of Plaintiffs' general theories and substantially similar claims of misrepresentations, Defendants have failed to demonstrate undue prejudice, i.e., they were not "ambushed" when presented with the proposed list of misrepresentations. Therefore, like the *Vivendi* defendants, the Valeant Defendants thus "had all the information [they] needed to effectively prepare a defense." *Citing Vivendi*, 765 F. Supp. 2d at 579. Given so, Plaintiffs are not bound to the precise set of misstatements identified in their pleadings throughout the entire course of litigation and that their attempt at this stage to deem the list of misrepresentations incorporated into the Direct Action complaints does not violate PSLRA.

Finally, citing *Southeastern Pennsylvania Transportation Authority v. Orrstown Financial Services Inc.*, 12 F.4th 337 (3d Cir. 2021), Plaintiffs insist that there is no substantive right to repose when, like here, the proposed amendment (in this case, an amended list of misrepresentations) does no more than reassert the same claims against the same parties arising out of a timely filed initial complaint.

**V.   Findings**

This action involves 21 separate complaints, filed by 21 separate Plaintiffs all of which have been coordinated for discovery but not consolidated. As the Special Master views this motion, here is the key issue: In an effort to be efficient, is it appropriate and legally permitted to enter a stipulation and order which would result in the simultaneous amendments (to a lesser or greater degree) of the 21 separate filings? The Special Master concludes that while this request might arguably result in efficiencies useful to this multi-party, coordinated but unconsolidated litigation, Plaintiffs have failed to establish that they are legally entitled to the relief sought. The Special Master concurs with Defendants' argument that by doing so, the order

would effectively amend the pleadings of the 21 Plaintiffs and by doing so would fail to comply with Federal Rule of Civil Procedure 15 and established case law.

Rule 15 addresses amended and supplemental pleadings.  The Rule provides that 21 days after a pleading is served, a party must either obtain an adversary's permission to amend a pleading or file a formal motion with the court to do so.  Specifically, Rule 15(a)(2) states:

> ***Other Amendments.***  In all other cases [after 21 days following service], a party may amend its pleadings only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Hardly a surprise, but Defendants have refused to agree to Plaintiffs' stipulation and proposed order, insisting that each Plaintiff is required to formally amend its complaint to include all relevant misrepresentations.  Plaintiffs counter by arguing this will create a judicial log jam.  They insist that if all of the actions are looked upon collectively, the list of some 300 misrepresentations can be found somewhere in those pleadings and, in many cases, multiple times such that Defendants cannot say they have been uninformed of the potential theories and allegations that Plaintiffs will advance should this matter go to trial.  But this misses the point.  Had each individual Plaintiff brought the same action in the absence of discovery coordination, under our law, it would have been incumbent upon each to file a Rule 15 motion to amend their complaint to include additional misrepresentations gleaned from discovery (assuming that misrepresentations were not otherwise derivable from the allegations contained in the existing pleadings).

While Plaintiffs in their written submissions and at oral argument have contended that this is a legally supported proposal, their assertion is premised almost entirely upon shaky grounds – trial and appellate decisions in a single Second Circuit case, *In Re Vivendi Universal*, *S.A. Sec. Litig.*, 765 F.Supp. 2d 512 (S.D.N.Y. 2011) and *In Re Vivendi Universal S.A. Sec.*

*Litig.*, 838 F. 3d 223 (2d Cir. 2016).  Indeed, when posed with a question at oral argument, Plaintiffs' counsel could point to no other decision which supported this proposition under similar circumstances.

However, a close look at *Vivendi* demonstrates that the decisions in this matter are essentially inapposite and fail to provide support for Plaintiffs' application.

*Vivendi* was a complicated and lengthy securities fraud class action tried before a jury over a period of four months followed by two weeks of jury deliberations.  *Id*. at 520.  At the conclusion of trial, the jury was provided with a 72-page verdict form which identified 57 sets of statements alleged by the plaintiffs said to constitute a violation of Section 10(b) of the Securities and Exchange Act of 1934.  The verdict form asked the jury to determine whether the plaintiffs had proven the elements of their Section 10(b) claim with respect to each of the 57 statements for each defendant against whom a false statement was alleged.  *Id.* at 524.  However, this procedure took place *after both sides* prepared competing verdict forms which were then reviewed by the court, each of which the court felt to be inadequate.  *Id.* at 578.  As a result, the court asked the plaintiffs to propose an alternate verdict form that identified specific misstatements after which various drafts went back and forth between counsel and the court.  The list of misstatements was thereafter finalized and ultimately attached to the verdict form as table A.  *Id*.

In short, at the conclusion of a lengthy trial in which the misrepresentations were fleshed out before the jury, addressed by the defendants and ultimately hashed out resulting in the creation of a jury verdict form, the jury was presented with a list of misstatements (misrepresentations) which they considered in reaching their verdict.  Only after this process (and an unfavorable verdict) did the corporate defendant (Vivendi) contend that it was somehow

11

"ambushed by plaintiffs' true list of misstatements at the end of trial when it was too late to defend against them." *Id*. at 578.

Accordingly, after a multi-month trial followed by substantial deliberations and the rendering of a jury verdict in favor of the plaintiffs, the defendant corporation moved for a new trial based upon a bevy of alleged errors. The alleged failure to identify misstatements until the close of evidence was but one – and a minor one – of the claimed errors by which Vivendi attempted to overturn the verdict. Neither the trial court, nor ultimately the appellate court, under these circumstances considered the issue here – whether Plaintiffs were obligated to amend their various complaints to include additional misstatements beyond those incorporated into their existing pleadings. Indeed, the *Vivendi* courts did not consider this issue because they did not have to.

Plaintiffs also cite the *Vivendi* appellate decision for the proposition that there was "no reversible error stemming from the manner in which plaintiffs presented and identified statements at trial." *In Re Vivendi, S.A. Sec. Litig.*, 838 F. 3d 223, 243 (2d Cir. 2016). But this too is a thin reed on which to support Plaintiffs' proposition. The appellate court's analysis of this issue, contained in this single footnote, is clearly dicta, and while the note backs up the trial court's decision, the court's statements nevertheless arise from, in the Special Master's analysis, a set of procedural circumstances which substantially differ from this action and which did not require any analysis as to Rule 15's amendment requirements. In fact, as the appellate court indicated in that footnote, "many, if not most, of the fifty-seven alleged misstatements *were* identified in plaintiffs' First Amended Consolidated Class Action Complaint…." *Id.* at 242, n 11 (emphasis in original).

12

Plaintiffs also secondarily rely upon a Third Circuit opinion, *Southeastern Pennsylvania Transportation Authority v. Orrstown Financial Services Inc.*, 12 F. 4th 337 (3d Cir. 2021) ("*SEPTA*"). But this decision is equally inapposite and, to the extent that it has any bearing on this lawsuit, it more properly supports Defendants' position.

*SEPTA* implicated Rule 15(c) and its applicability to statutes of repose. The plaintiff (SEPTA), the regional transportation authority, had filed a series of suits claiming that the defendant, a bank, made numerous misrepresentations in its financial disclosures which induced the plaintiff to purchase stock for its pension funds. *Id*. at 342. After dismissing certain claims, at the time of the filing of a third amended complaint, SEPTA argued it should be entitled to reinstitute several of the dismissed claims because it found further evidence to support them through discovery after the partial dismissal of a prior amended complaint. *Id*. at 343.

The trial court concluded that the statute of repose did not bar SEPTA from using the third amended complaint to assert previously dismissed claims and granted leave to file. *Id*. at 344. This decision was upheld on appeal. While the court's decision in this matter may, as Plaintiffs say, undermine Defendants' position that the five-year statute of repose or the three-year analog in the Securities Act, that is a separate question from the issue presented here. Instead, *SEPTA* better supports the proposition that the proper method to assert additional claims is to file a Rule 15 motion to amend, which SEPTA did – not once, not twice but three times even though it had asserted some of those claims previously.

While it may be true, as Plaintiffs say, that a substantial number of the misrepresentations have been either pled or can be derived from (collectively or individually) their initial filings in this matter, this circumstance fails to provide grounds for the Court to approve – indeed order – the parties to stipulate to and incorporate the misrepresentations contained in Appendix A, by

13

essentially ignoring Plaintiffs' obligations to amend their pleadings by motion. And, as Defendants note, when it comes to security fraud cases (indeed all fraud matters), our statutes, rules and case law call for a heightened pleading standard. For example, PSLRA, 15 U.S.C. § 78u-4, requires that a complaint in a securities action "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading…[and] with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with required state of mind." *See*, *In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221 (D.N.J. 2005); *see also* Fed. R. Civ. P. 9(b), i.e., "In alleging fraud…a party must state with particularity the circumstances constituting fraud...." And while it is true, as Plaintiffs say, the principle reason behind this heightened pleading standard is to weed out frivolous securities fraud litigation, its existence supports the proposition that litigants must be diligent in pleading allegations of misrepresentation. At the very least, the heightened pleadings standard undermines Plaintiff's proposition that the Court should, in effect, informally amend their pleadings by simply incorporating into 21 separate complaints – against Defendants' objections – the list of misrepresentations which form the subject matter of this motion.

As Defendants argued orally, there is of course nothing that prevents Plaintiffs from using this list of misrepresentations in prosecuting their respective actions. With or without court approval, Plaintiffs' experts can review and incorporate the 300 some misrepresentations, where applicable, as the basis for their opinions. Furthermore, it may very well be found as this litigation moves forward that many of the new or additional misrepresentations fall within the penumbra of allegations already voiced in Plaintiffs' complaints. While it is enticing to create and rely on a common set of misrepresentations, since such a list may, in fact, promote

efficiency across the coordinated Direct Actions, doing so does not justify stepping upon Defendants' substantive and procedural rights.

In summary, the Special Master finds that Plaintiffs' request that the statements contained in Exhibit A "shall be deemed incorporated into each of the operative complaints in the Direct Actions" is unsupported. Accordingly, Plaintiffs' application is **DENIED**.

## VI.  Conclusion

For the reasons detailed in this Order and Opinion, the application filed by Direct Action Plaintiffs is **DENIED**.

Date: February 11, 2022

*Dennis M. Cavanaugh*
DENNIS M. CAVANAUGH
Special Master