**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Civil Action No. 15-7658 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court upon Lead Plaintiff City of Tucson, together with and on behalf of the Tucson Supplemental Retirement System's ("Lead Plaintiff") Motion to Adopt the Special Master's November 30, 2022, Report & Recommendation Denying PricewaterhouseCoopers LLP's ("PwC") Motion to Dismiss Count III of the Corrected Second Amended Consolidated Complaint (ECF No. 1077). (ECF No. 1080.) PwC opposed Lead Plaintiff's Motion to Adopt and objected to the Special Master's Report and Recommendation. (ECF Nos. 1082, *1084.)[1] Lead Plaintiff opposed PwC's objections and replied to its opposition (ECF No. *1163), and PwC replied to Lead Plaintiff's opposition (ECF No. *1170). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Lead Plaintiff's Motion to Adopt is granted.

**I. BACKGROUND**

  The Court previously summarized many of the factual allegations at issue in this matter, and the Court assumes the parties' familiarity with those allegations. (*See, e.g.*, ECF No. 216.) The facts relevant to resolve the instant Motion, which the parties do not dispute, are thoroughly

---

[1] ECF numbers preceded by an asterisk reflect the redacted version of the cited document.

outlined in the Special Master's November 2022 Report and Recommendation ("November 2022 R&R"), and the Court adopts those facts here. (Nov. 2022 R&R 2-15, ECF No. 1077.)

In pertinent part, in February 2022, Lead Plaintiff[2] filed a Second Amended Consolidated Complaint ("SACC") which added Count III against PwC, asserting violations of Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)") and Securities Exchange Commission Rule 10b-5 ("Rule 10b-5") ("Count III").[3] (*See* SACC ¶¶ 55, 561-648, ECF No. 952.) PwC now moves to dismiss Count III. (*See generally* PwC's Moving Br., ECF No. *969.)

Count III centers around PwC's audit report for Valeant Pharmaceuticals International, Inc.'s ("Valeant") 2014 financial statements (the "2014 Audit Report"). (*See, e.g.*, SACC ¶¶ 569-70.) In the 2014 Audit Report, PwC opined that: (1) Valeant's 2014 financial statements "present[ed] fairly, in all material respects" Valeant's financial position and results of its operations as of and for the year ending December 31, 2014; and (2) Valeant maintained "in all material respects, effective internal control over financial reporting as of December 31, 2014." (SACC ¶ 563; Nov. 2022 R&R 6.)

Lead Plaintiff alleges that PwC's 2014 Audit Report assured investors that Valeant's financial statements complied with generally accepted accounting principles ("GAAP"), that Valeant had effective internal controls, and that PwC conducted its audit in accordance with professional standards. (SACC ¶ 563; Nov. 2022 R&R 25.) Lead Plaintiff contends, however, that

---

[2] On September 15, 2022, Plaintiff City of Tucson, together with and on behalf of the Tucson Supplemental Retirement System, replaced TIAA as Lead Plaintiff. (*See* ECF No. 1029.)

[3] The prior complaint asserted a violation of Section 11 of the Securities Act of 1933 against PwC but raised no fraud-based claims. (*See* ECF No. 80.)

these statements were false and misleading when made to investors because the true facts known by PwC, or that PwC recklessly disregarded, were that:

> (a) Valeant's 2014 financial statements were inaccurate because they overstated revenue by $58 million, net income by $33 million, and earnings per share by $0.09 for the year ended December 31, 2014;
>
> (b) Valeant's 2014 financial statements were not prepared in conformity with GAAP because the financial statements failed to disclose Philidor as a material acquisition/business combination and variable interest entity ("VIE") in violation of GAAP;
>
> (c) Valeant's internal controls were not effective because they suffered from the existence of two material weaknesses – an improper tone at the top of the organization and a failure to adequately design and maintain effective controls over the review, approval, and documentation of the accounting and disclosure for non-standard revenue transactions at quarter ends;
>
> (d) Philidor was an acquired business that had been excluded from Valeant's internal control testing; and
>
> (e) PwC did not conduct its 2014 audit of Valeant's financial statements and internal controls in accordance with the standards of the Public Company Accounting Oversight Board ("PCAOB").

(SACC ¶ 564; Nov. 2022 R&R 48.) Lead Plaintiff includes numerous further allegations that Lead Plaintiff claims sufficiently demonstrate a strong inference of scienter on the part of PwC. (SACC ¶¶ 562, 574-640.) These allegations include, in part: (1) that there were red flags regarding Valeant's improper business practices and the backgrounds of Valeant management and directors (SACC ¶¶ 574-81); (2) that there were red flags suggesting that Valeant was improperly engaged in earnings manipulations at quarter ends (*id.* ¶¶ 582-95); (3) that PwC reviewed a $131 million credit increase granted to Philidor only ten days before the acquisition closed but still documented that there was "no instance in which credit increased unusually high through one single

transaction;" (*id.* ¶ 562); and (4) that PwC knowingly or recklessly disregarded that Philidor sales transactions violated GAAP (*id.* ¶¶ 596-613).

PwC argues that Lead Plaintiff's allegations fall short of the demanding standard for pleading an outside auditor's scienter. (Nov. 2022 R&R 15.) First, PwC looks to concessions in the SACC to demonstrate that Lead Plaintiff's allegations negate rather than support a finding of scienter, including that (1) Valeant provided false information to PwC in connection with the audit, (2) the amount of misstated revenue was relatively small (less than 1% of revenue), and (3) PwC conducted multiple audit procedures related to the Philidor sales. (*Id.* at 15-17.) PwC further contends that Lead Plaintiff does not allege sufficient facts to give rise to a strong inference of scienter because Lead Plaintiff fails to allege facts that show PwC had both motive and opportunity to commit fraud or facts that constitute strong circumstantial evidence of PwC's conscious misbehavior or recklessness. (*Id.* at 18.)

## II.  STANDARD OF REVIEW

The Court reviews objections to the Special Master's findings of fact and conclusions of law *de novo*. (Order 4, ECF No. 484); Fed. R. Civ. P. 53(f)(3)-(4). The Court "may adopt or affirm, modify, wholly or partly reject or otherwise reverse, or resubmit [the matter] to the master with instructions." Fed. R. Civ. P. 53(f)(1); (Order 4.)

## III.  LEGAL STANDARD

When analyzing a Rule 12(b)(6) motion, district courts conduct a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court, however, must

4

disregard any conclusory allegations proffered in the complaint. *Id.* at 210-11. Finally, the court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Where a plaintiff pleads fraud, however, the plaintiff "must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b)." *Zuniga v. Am. Home Mortg.*, No 14-2973, 2016 WL 6647932, at *2 (D.N.J. Nov. 8, 2016). "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). Additionally, the Private Securities Litigation Reform Act ("PSLRA") requires that a securities fraud complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (quoting *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 276 n.8 (3d Cir. 2006)).

## IV.   **DISCUSSION**

To survive a motion to dismiss, a plaintiff bringing an action under Section 10(b) and Rule 10b-5 must plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."

5

*Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011) (quoting *Stoneridge Invest. Partners, LLC v. Sci.-Atl., Inc.*, 552 U.S. 148, 157 (2008)). Here, PwC argues that "[Lead] Plaintiff's factual allegations fall far short of the demanding standard for pleading an outside auditor's scienter." (Nov. 2022 R&R 15; *see generally* PwC's OR&R.)

A complaint "must also 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' . . . specifically 'scienter.'" *Cooper Tire*, 834 F.3d at 490 (quoting 15 U.S.C. § 78u-4(b)(2)(A)). "'[O]missions and ambiguities count against inferring scienter' under the PSLRA's particularity requirements." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 263 (3d Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007)). The scienter required is the "intent to defraud" or a "knowing or reckless state of mind." *Fan v. StoneMor Partners LP*, 927 F.3d 710, 717-18 (3d Cir. 2019) (quotation omitted). To establish a strong inference of scienter, it "is not enough for plaintiffs to merely allege that defendants 'knew' their statements were fraudulent or that defendants 'must have known' their statements were false." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004). Instead, plaintiffs must allege "facts to show that defendants had both motive and opportunity to commit fraud" or "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lord Abbett Inv. Tr. v. Valeant Pharms. Int'l, Inc.*, No. 17-6365, 2018 WL 3637514, at *3 (D.N.J. Jul. 31, 2018) (quotation omitted). "Blanket assertions of motive and opportunity will not suffice, and catch-all allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme are no longer sufficient, because they do not state facts with particularity or give rise to a strong inference of scienter." *GSC Partners*, 368 F.3d at 237 (internal quotation omitted). The receipt of professional fees, without more, is insufficient to establish motive. *Lord Abbett*, 2018 WL 3637514, at *3

6

(citing *Klein v. Autek Corp.*, 147 F. App'x 270, 277 (3d Cir. 2005)). To demonstrate strong circumstantial evidence of conscious misbehavior or recklessness, a plaintiff must allege "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *GSC Partners*, 368 F.3d at 239 (quotation omitted).

"[T]o determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court . . . must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs*, 551 U.S. at 314. "[A]n inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* Additionally, the Court must consider "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322-23.

With respect to an outside auditor, pleading scienter is "particularly demanding." *Lord Abbett*, 2018 WL 3637514, at *3 (quoting *Athale v. SinoTech Energy Ltd.*, No. 11-531, 2014 WL 687218, at *5 (S.D.N.Y. Feb. 21, 2014)). To survive a motion to dismiss, allegations of auditor recklessness must "approximate an actual intent to aid in the fraud being perpetrated by the audited company." *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (quotation omitted). "A showing that an auditor either lacked a genuine belief that its representations were supported by adequate information or engaged in auditing practices so shoddy that they amounted at best to a 'pretended audit' has traditionally supported a finding of liability, even in the face of assertions of good faith." *In re Suprema*, 438 F.3d at 279 (citing *McLean v. Alexander*, 599 F.2d 1190, 1198 (3d Cir. 1979)).

At the pleadings stage, courts have recognized that "allegations of [generally accepted auditing standards] violations, coupled with allegations that significant 'red flags' were ignored, can suffice to withstand a motion to dismiss." *Id.*

The Court agrees with the Special Master that the allegations in the SACC supporting Count III are sufficient to withstand a motion to dismiss. (Nov. 2022 R&R 47.) Accepting all factual allegations in the SACC as true and reviewing the SACC in its entirety compels this result. The SACC is rife with allegations of PwC's scienter. (SACC ¶¶ 564 (listing "true facts, which were then known to or recklessly disregarded by PwC" including violations of GAAP and ineffective internal controls), 570 (alleging that PwC failed to comply with PCAOB standards which require auditors to "exercise skepticism during their audits and issue . . . adverse opinions if the financial statements are not prepared in accordance with GAAP"), 583 (alleging that PwC saw indicators that Valeant was changing credit terms and offering unusual discounts to get its distributors and wholesalers to make purchases outside their normal business needs at quarter ends but still issuing clean audit reports), 596 (alleging that PwC was on notice of Valeant's quarter-end practices and yet "turned a blind eye to the unusual transactions and sales spike to Philidor prior to the closing of the agreement"), 615 (alleging that PwC recklessly disregarded Valeant's implementation of a new acquisition reporting policy just four days prior to the closing of the Philidor purchase option agreement eliminating Valeant's requirement to disclose the acquisition).) These are sufficient to support a strong inference of scienter. *See Cooper Tire*, 834 F.3d at 490 (quoting 15 U.S.C. § 78u-4(b)(2)(A)). In consideration of the SACC in this matter, the allegations of the violations of GAAP coupled with the allegations that red flags were ignored is sufficient to withstand PwC's Motion to Dismiss. *In re Suprema*, 438 F.3d at 279 (citation omitted).

8

For the purpose of evaluating "plausible, nonculpable explanations for [PwC's] conduct," *Tellabs*, 551 U.S. at 324, the Court considers PwC's arguments that Valeant provided false information to PwC in connection with the audit. (*See* SACC ¶¶ 42, 641; Nov. 2022 R&R 51-52.) The Court agrees with the Special Master, however, that there were numerous documents that PwC reviewed during the audit that provided accurate information reflecting some of the red flags that Lead Plaintiff alleges in the SACC. For example, "ten days before the Philidor acquisition, Valeant nearly tripled Philidor's credit limit, from $75 million to $206 million, to facilitate an unusually large and last-minute sale, even though Philidor was already over its limit at $78 million, with $18 million over 60 days past due." (SACC ¶ 604; Nov. 2022 R&R 52.) "PwC reviewed the increase, but concluded that it was 'modest' and there was no 'instance in which credit increased unusually high through one single transaction.'" (SACC ¶ 605; Nov. 2022 R&R 52.) The same terms were later found to "demonstrate that the transactions were outside of the normal course of business" by the Ad Hoc Committee tasked with investigating allegations of wrongdoing against Valeant and Philidor. (Nov. 2022 R&R 52-53, 6.) In response to the allegation that Valeant was required to disclose the Philidor acquisition as entry into a new market, PwC contends that the acquisition of Philidor was not a new market but rather a new means of distributing Valeant's existing product lines. (*Id.* at 53.)

The Court notes that the SACC does not allege that PwC had any particular motive to commit fraud. (*See generally* SACC.) The SACC, however, sufficiently alleges strong circumstantial evidence of "conscious misbehavior or recklessness," which can be shown by "an extreme departure from the standards of ordinary care," as required by the standard. *GSC Partners*, 368 F.3d at 239 (quotation omitted). The Court finds that "[w]hen all the allegations are accepted as true and taken collectively, . . . a reasonable person [would] deem the inference of scienter at

9

least as strong as" PwC's alternative theory. *Tellabs*, 551 U.S. at 326. The Court, therefore, finds that the SACC alleges sufficient facts to survive PwC's Motion to Dismiss.

**V.    CONCLUSION**

For the reasons set forth above, Lead Plaintiff's Motion to Adopt is granted. PwC's objections to the Report and Recommendation are overruled. The Court will enter an Order consistent with this Memorandum Opinion.

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**