NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION | Civil Action No. 15-7658 (MAS)<br><br>MEMORANDUM OPINION |

**SHIPP, District Judge**

This matter comes before the Court on the Direct Action Plaintiffs'[1] ("Plaintiffs") partial motion for reconsideration (ECF No. 1324) of this Court's January 2, 2024 Memorandum Opinion and Order granting in part and denying in part Defendants'[2] omnibus motion for summary judgment and motion to exclude the expert testimony of Chad Coffman ("Coffman") (ECF Nos. 1313, 1314). Defendants opposed the motion (ECF No. 1332), and Plaintiffs did not reply. The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Plaintiffs' partial motion for reconsideration is denied.

---

[1] The Direct Action Plaintiffs are plaintiffs in the following cases: 16-cv-07321; 16-cv-07324; 16-cv-07494; 16-cv-07496; 17-cv-06513; 17-cv-07636; 17-cv-12088; 18-cv-00089; 18-cv-00343; 18-cv-00383; 18-cv-00846; 18-cv-00893; 18-cv-01223; 18-cv-08595; 18-cv-08705; 18-cv-15286; 18-cv-17393; 20-cv-02190; 20-cv-05478; 20-cv-07460; and 20-cv-07462.

[2] Defendants are Valeant Pharmaceuticals International, Inc. (n/k/a Bausch Health Companies Inc.) ("Valeant"), Ari Kellen ("Kellen"), Robert Rosiello ("Rosiello"), J. Michael Pearson ("Pearson"), Howard Schiller ("Schiller"), Tanya Carro ("Carro"), and Deborah Jorn ("Jorn") (the "Individual Defendants," and collectively with Valeant, the "Defendants").

I.  **BACKGROUND**

The factual background of this matter has been covered extensively by way of the Court's prior Memorandum Opinions and Orders.[3] (*See, e.g.*, ECF Nos. 1313-16.) The Court, accordingly, recites only the background necessary to resolve this narrow motion.

As relevant to the instant dispute, in August 2022, Defendants filed an omnibus motion for summary judgment and motion to exclude Coffman's expert opinion and reports (collectively, the "Omnibus Motion"). (ECF Nos. 994, 995.) Coffman's expert report identified a total of sixteen corrective disclosure event windows ("Corrective Disclosure Events") that allegedly contained corrective information and which were accompanied by "a statistically significant decline in the market price of Valeant Common Stock and/or Valeant notes."[4] (*See* Coffman Rep., Ex. 13, ECF No. 994-13.) In moving for summary judgment and to exclude Coffman's reports, Defendants argued, among other things, that 11 of the 16 Corrective Disclosure Events identified by Coffman did not reveal any corrective information to the market. (Defs.' Mot. Summ. J. 31-39, ECF No. 994.) In May 2023, the Special Master issued a Report and Recommendation (the "Omnibus R&R") recommending that the Court deny Defendants' Omnibus Motion as to every alleged disclosure in Coffman's report without making any specific findings as to the 11 challenged Corrective Disclosure Events. (*See* Omnibus R&R, ECF No. 1192; Coffman R&R, ECF No. 1197.)

---

[3] As the parties are aware, in May 2023, the Hon. Dennis M. Cavanaugh, U.S.D.J. (ret.) (the "Special Master") issued twelve Report and Recommendations ("R&Rs") in response to the parties' cross-motions for summary judgment and Defendants' motion to exclude Plaintiffs' experts. (ECF Nos. 1185-1192, 1195-1198.) The parties subsequently filed numerous objections and motions to adopt the Special Master's R&Rs before this Court. On January 2, 2024, and February 22, 2024, respectively, the Court issued a handful of decisions that largely resolved the various objections to and motions to adopt or modify the R&Rs. (ECF Nos. 1313-16, 1341-42.)

[4] Because the Court detailed the nature of each Corrective Disclosure Event in the underlying Opinion, it will not repeat them here. (*See* Op. 14-16, 24-39.) For brevity, the Court only addresses the three Corrective Disclosure Events that are subject to the instant reconsideration motion.

Defendants subsequently objected to portions of the Omnibus R&R and Coffman R&R, in part because the Special Master did not consider whether the Corrective Disclosure Events identified by Coffman were, in fact, corrective. (*See* Defs.' Obj. 23-32, ECF No. 1225.)

On January 2, 2024, this Court issued a 64-page decision granting in part and denying in part Defendants' Omnibus Motion (the "Opinion"). (*See generally* Op., ECF No. 1313.) The Court modified aspects of the Special Master's Omnibus R&R and granted partial summary judgment in favor of Defendants as to four of the alleged Corrective Disclosure Events (October 20, 2015, October 22, 2015, March 15, 2016, and June 7, 2016) identified by Coffman. (*See* Op. 26-27, 29-31, 37-39.) Specifically, in reviewing the evidence submitted by the parties—including the briefing, expert reports, and accompanying exhibits—this Court determined that no reasonable jury could find that these four Corrective Disclosure Events revealed new information to the market with respect to the falsity of Defendants' misstatements. (*Id.*) Summary judgment was denied as to the remaining Corrective Disclosure Events identified in Coffman's reports. (*Id.* at 26-39.) That is, "[a] genuine dispute of material fact exists as to whether these disclosures revealed new information concerning Valeant's misstatements and/or omissions regarding the sustainability of its business model." (*Id.* at 23.)

On January 16, 2024, Plaintiffs filed a narrow reconsideration motion requesting that the Court "reconsider three discrete aspects" of the Opinion—namely, whether Plaintiffs raised genuine disputes of material fact as to three of the four Corrective Disclosure Events[5] that were dismissed by way of the Court's January 2, 2024 Opinion. (Pls.' Mot. Recons. 1, ECF No. 1325.) For these three Corrective Disclosure Events (October 20, 2015, October 22, 2015, and March 15,

---

[5] Plaintiffs do not challenge dismissal of the June 7, 2016 Corrective Disclosure Event. (Pls.' Mot. Recons. 1, ECF No. 1325.0

3

2016), Plaintiffs contend that reconsideration is warranted as this Court "overlooked or misconstrued material facts." (*Id.*) Defendants opposed the motion on February 6, 2014 (Defs.' Opp'n Br., ECF No. 1332), to which Plaintiffs did not reply.

## II. LEGAL STANDARD

Reconsideration under Local Civil Rule 7.1 is an extraordinary remedy that is rarely granted. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 215 F. Supp. 2d 482, 507 (D.N.J. 2002). A motion for reconsideration may be based on one of three separate grounds: (1) an intervening change in controlling law; (2) new evidence not previously available; or (3) to correct a clear error of law or to prevent manifest injustice. *See id.* A motion for reconsideration is not an opportunity to raise new matters or arguments that could have been raised before the original decision was made. *See Bowers v. NCAA*, 130 F. Supp. 2d 610, 612-13 (D.N.J. 2001). A motion for reconsideration does not serve as an opportunity to ask the Court to rethink what it has already thought through. *See Interfaith Cmty. Org.*, 215 F. Supp. 2d at 507. "Rather, the rule permits a reconsideration only when 'dispositive factual matters or controlling decisions of law' were presented to the court but were overlooked." *Id.* (quoting *Resorts Int'l v. Greate Bay Hotel & Casino*, 830 F. Supp. 826, 831 (D.N.J. 1992)).

## III. DISCUSSION

Resolving the instant reconsideration motion turns primarily on what may or may not qualify as a "corrective disclosure" for purposes of establishing loss causation[6] under § 10(b) of

---

[6] The Supreme Court has identified six elements necessary to establish a claim under the Securities Exchange Act § 10(b): (1) "a material misrepresentation (or omission)"; (2) "scienter, i.e., a wrongful state of mind"; (3) "a connection with the purchase or sale of a security"; (4) "reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation'"; (5) "economic loss"; and (6) "'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." *McCabe v. Ernst & Young*, 494 F.3d 418, 424 (3d Cir. 2007).

4

the Securities Act. A corrective disclosure is "a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud." *Connor v. Unisys Corp.*, No. 22-4529, 2024 WL 387633, at *12 (E.D. Pa. Feb. 1, 2024) (quoting *Meyer v. Greene*, 710 F.3d 1189, 1196 (11th Cir. 2013)). It is undisputed, however, that "[i]n general, a 'corrective disclosure' must reveal at least part of the falsity of the alleged misrepresentation, and it *must reveal new information* to the market." *In Re DVI, Inc. Sec. Litig.*, No. 03-5336, 2010 WL 3522090, at *6 (E.D. Pa. Sept. 3, 2010), *aff'd*, 639 F.3d 623 (3d Cir. 2011) (emphasis added) (citation omitted). (*See also* Op. 23 (citing cases).) In short, Defendants previously argued on summary judgment—and this Court agreed—that four of the alleged Corrective Disclosure Events fell short of revealing *new* information to the market and, accordingly, could not qualify as corrective disclosures to support Plaintiffs' securities claims. (*See id.* at 26-27, 29-31, 37-39.)

Plaintiffs now seek reconsideration as to three of the alleged Corrective Disclosure Events identified on October 20, 2015, October 22, 2015, and March 15, 2016. (*See generally* Pls.' Mot. Recons.) For the reasons below, Plaintiffs' partial motion for reconsideration is denied in its entirety.

    A.    **October 20, 2015**

First, Plaintiffs allege that this Court failed to "consider important information" as to the Corrective Disclosure Event identified by Coffman on October 20, 2015. (Pl.'s Mot. Recons. 5-6.) As recounted in the Opinion,[7] this disclosure involves an article released by the *New York Times* which revealed that "Philidor had been denied a license to operate in California because it had concealed its ties to Valeant." (Op. 26 (citing Coffman Rep. ¶ 285).) The *New York Times* article,

---

[7] The Court does not recite the background of each alleged Corrective Disclosure Event at issue here. To the extent that further background is needed, the parties may refer to the Opinion or the relevant portions of Coffman's expert report. (*See* Op. 26-27, 29-31, 37-39.)

however, *primarily* focused on a rival pharmaceutical company, Horizon Pharma. (*Id.*) With respect to Valeant, the article discussed:

> (1) Valeant's prior disclosure of receiving a subpoena from federal prosecutors; (2) the Philidor controversy of having been denied a license in California, which had been covered by the [Southern Investigative Reporting Foundation ("SIRF")] article[8] [released earlier that day at 12:56 AM ET]; (3) Valeant's disclosure that it had acquired an option to purchase Philidor and consolidated its financials; and (4) Pearson's comments that future drug price increases would be "more modest" in light of the current environment.

(*Id.*) Indeed, Defendants argued on summary judgment (and Plaintiffs seemingly do not contest on reconsideration) that "[n]one of [the above] information was new." (*Id.* (citing Defs.' Obj. 25).)

In moving for reconsideration, Plaintiffs hang their hat on the contention that the Court allegedly failed to consider one new piece of information released in the *New York Times* article—that Valeant used Philidor to steer patients toward Valeant-branded products. (Pls.' Mot. Recons. 5-6.) On this issue, Plaintiffs emphasize that the Court overlooked salient facts contained in the *New York Times* article, which reads as follows:

> Horizon is not alone. Use of specialty pharmacies seems to have become a new way of trying to keep the health system paying for high-priced drugs. *Valeant Pharmaceuticals International . . . does much the same thing for its dermatology products with a specialty pharmacy called Philidor Rx Services.*

(*Id.* at 6 (emphasis in original) (citing Coffman Rep. ¶ 285).) Plaintiffs assert that this portion of the *New York Times* article revealed new information concerning Valeant's use of Philidor to "buffer[] physicians from insurers and complaints from their patients about high prices" and that

---

[8] On October 19, 2015, SIRF published a report at 12:56 AM ET disclosing the details of Valeant's relationship to Philidor and connection to a third entity in California called R&O Pharmacy ("R&O"). (Op. 26 (citing Coffman Rep. ¶¶ 270-84).) There is no dispute that the SIRF report constitutes a corrective disclosure. (*Id.* (citing Defs.' Moving Br. 32, n.13).)

Valeant owned a "specialty pharmacy" that could ship drugs to patients prior to adjudication by third-party payors. (*Id.*)

Plaintiffs' argument does not warrant reconsideration. For one, this Court found, and Plaintiffs do not readily dispute, that the portion of the *New York Times* article cited in Coffman's rebuttal report pertains to Horizon Pharma, not Philidor. (*See* Op. 27 n.14.) And, notwithstanding that fact, this Court already determined that the information contained in the *New York Times* article was known to the market. (*Id.* at 27.) The SIRF article, for example, previously revealed that Philidor is a "specialty pharmacy that fills, ships, and obtains insurance approval for prescriptions of the more complex drugs Valeant makes" and that "specialty pharmacies are exempt from reporting the drugs they sell to IMS Health, the tracking service used by companies and analysts to monitor drug sales and inventory channels." (*See* SIRF Article, Ex. 35, ECF No. 994-38.) The SIRF article goes on to state the following:

> Here's a key cog in Valeant's "patient access" program: Patients referred to Philidor often receive coupons for reduced or *waived co-pay requirements* (*given to the prescriber by Valeant's sales representatives*). And, in turn, Philidor would appear to attempt to recoup the cost of the drug from private insurers or Medicare. Theoretically, *this makes price increases less risky for Valeant*, given that a sizable population of a drug's users frequently don't have the capability to observe them. Still, the patient access program is central to the company's distribution program.

(*Id.* (emphases added).)

Plaintiffs have not provided any allegations that would change the fact that the *New York Times* article did not reveal any *new* information that Valeant used specialty pharmacies like Philidor "to keep the health system paying for high priced drugs." (Pls.' Mot. Recons. 6 (quoting Coffman Rep. ¶ 285).) As this Court explained in the Opinion, the information contained in the *New York Times* article reiterates and/or recharacterizes what the SIRF article already revealed to the market. (Op. 6-7.) For that reason, the Court will not change course and once again denies

Plaintiffs' position that the *New York Times* article qualifies as a corrective disclosure.[9] (*See* Op. 6-7 (citing *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010)) (citations omitted) ("[A] recharacterization of previously disclosed facts does not constitute a corrective disclosure.").) Reconsideration is thus denied as to the Court's findings for the alleged October 20, 2015 Corrective Disclosure Event.

### B.     October 22, 2015

Next, Plaintiffs argue that the Court erred in granting summary judgment in favor of Defendants as to the October 22, 2015 Corrective Disclosure Event identified in Coffman's report. (Pl.'s Mot. Recons. 6.) As discussed in this Court's previous Opinion, this alleged Corrective Disclosure Event involves two press releases: (1) "an October 21, 2015, Philidor press release, which Coffman contends contained corrective information regarding Philidor's 'contractual relationships' with 'affiliated pharmacies'" (Op. 29; *see also* Philidor Press Release, Ex. 38, ECF No. 994-41); and (2) "an October 22, 2015, Valeant press release stating that it would be holding an investor conference call on October 26, 2015" (Op. 30; *see also* Valeant Press Release, Ex. 33, ECF No. 994-36; Defs.' Opp'n Br. 6.)

In opposing Defendants' objections to the Omnibus R&R, Plaintiffs errantly submitted in their briefing to this Court that the *Valeant* press release issued on October 22, 2015 "confirmed Philidor's option to buy R&O, which—when coupled with Valeant's option to acquire Philidor—implied that Valeant was booking revenue based on shipments of products to pharmacies that it owned." (Pls.' Opp'n to Defs.' Obj. 29, ECF No. 1248.) This Court, accordingly, found that the

---

[9] Nor have Plaintiffs met their burden in showing reconsideration is warranted. Plaintiffs do not put forth any new evidence that the Court previously failed to consider; rather, Plaintiffs recycle many of the same substantive arguments and point to the same evidence that this Court considered in the first instance. *See Clark v. Prudential Ins. Co. of Am.*, 940 F. Supp. 2d 186, 207 (D.N.J. 2013).

*Valeant* press release "makes no mention of an 'option' to purchase R&O." (Op. 30 n.15.) Plaintiffs now seek to clarify on reconsideration that it was, in fact, the *Philidor* press release that revealed the option to purchase R&O and contend that the Court "inadvertently relied on the wrong press release" in finding that no new information was disclosed to the market on October 22, 2015. (Pls.' Mot. Recons. 6-8.)

Plaintiffs' position that the Court erroneously relied on the Valeant press release for information regarding Philidor's option to acquire R&O—when their opposition brief specifically pointed the Court in that direction—is unavailing. Conceivably, the Court could, if it chose to do so, dive into the record and examine each statement to determine if it says what Plaintiffs claim, whether it supports the statement, and whether the citation is even correct. Through that exercise, the Court might even discover wherein the truth may lie. But it is well settled that this is not the Court's task. Courts "are not like pigs, 'hunting for truffles' that might be buried in the record," *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014), nor are they gold prospectors looking for nuggets supporting a claim. It is the parties who bear responsibility to comb the record and direct the Court to the facts which may support their arguments.[10] *Id.* This principle holds especially true in a complex securities case such as this, with thousands, if not tens of thousands, of pages of briefing and supporting transcripts, documents, and exhibits. Plaintiffs' attempt to shift blame to this Court for relying on an incorrect document, when they themselves cited the wrong document in their briefing, is not a compelling basis for reconsideration.

---

[10] To the extent that Plaintiffs contend that the Court cited an incorrect document, it was Plaintiffs' obligation to provide the Court with the *correct* citation in their opposition brief, which they did not do. *Singh v. Township of Weehawken*, No. 15-3478, 2019 WL 13098595, at *14 (D.N.J. Feb. 7, 2019) ("The burden is on [p]laintiffs to demonstrate the evidence that supports their claims as to each [d]efendant. It is not the obligation of the Court . . . to parse which of [p]laintiffs' factual contentions are actually supported by the evidence in the record.").

9

Setting this procedural misnomer aside, the Court finds that the substance of Plaintiffs' motion does not move the needle in favor of reconsideration. While Plaintiffs argue that the information regarding Philidor's ties to R&O implied "Valeant was booking revenue based on shipments of products to pharmacies that it owned" (Pls.' Opp'n to Defs.' Obj. 29), the fact remains that this information is "not presented on the face" of Coffman's opening report or rebuttal report.[11] (Op. 30.; *see also* Coffman Rep. ¶¶ 310-318, Coffman Reb. Rep. ¶¶ 261-271, ECF No. 994-14.) Coffman's rebuttal report merely states that:

> (1) *on the very previous day there was an investigative report by Citron* asserting an undisclosed ownership relationship between Philidor and R&O Pharmacy; (2) on the previous evening Philidor issued a press release that effectively *confirmed for the first time that Citron was right*—Philidor has an option to purchase R&O Pharmacy—and coupled with Valeant's right to acquire Philidor—implied that Valeant was employing an entire network of captive pharmacies that previously were thought to have been independent.

(Coffman Reb. Rep. ¶ 267 (emphases added).) In essence, Coffman opines that Philidor's press release "confirm[ed]" the information presented in the Citron Report. (*Id.*)

Accordingly, the Court did not err in finding that the press releases, as well as the other articles[12] identified in Coffman's report, "simply speculate the future value of Valeant's securities or *otherwise corroborate the information that was already known based upon the Citron Report* and other sources." (Op. 30 (emphasis added).) *See also Carpenters Pension Fund of Ill. v. MiMedx Grp., Inc. (In re MacPhee)*, 73 F.4th 1220, 1243 (11th Cir. 2023) ("[B]ecause a corrective

---

[11] As Defendants point out, Coffman opines that the market's view that Valeant was improperly booking revenue resulted from the disclosure of Valeant's option to acquire Philidor and allegations in the Citron report concerning Valeant's use of Philidor's use of specialty network pharmacies—not Philidor's "contractual right" to acquire R&O. (Defs.' Opp'n Br. 7 (citing Coffman Rep. ¶¶ 273, 294, 312-13).)

[12] The Court similarly declined to find that the *UBS, Benzinga, or Reuters* articles identified by Coffman, all of which were released on October 22, 2015, revealed any new information into the market. (Op. 30-31.) Plaintiffs do not challenge these findings on reconsideration.

10

disclosure must reveal a previously concealed truth, it obviously must disclose new information, and cannot be merely confirmatory.") (quoting *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1311 n.28 (11th Cir. 2011))); *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 270-71 (3d Cir. 2005) (finding that the *Wall Street Journal*'s repackaging of previously available information is not a corrective disclosure). The Court, therefore, denies reconsideration of its findings regarding the Corrective Disclosure Event identified by Coffman on October 22, 2015.

C.   **March 15, 2016**

Finally, Plaintiffs contend that the Court "overlooked material facts" concerning the March 15, 2016 Corrective Disclosure Event. (Pls.' Mot. Recons. 8-10.) In short, Plaintiffs request reconsideration on certain facts that they believe the Court "appears not to have considered" in the first instance. (*Id.* at 10.)

For background, on March 15, 2016, Valeant released its preliminary unaudited financial results for Q4 2015. (Op. 37.) According to Coffman, this marked the "first time Valeant was reporting financial results that reflected the forced abandonment of the Philidor [s]trategy and unsustainable price increases." (Coffman Rep. ¶ 442.) Valeant further reported "disappointing results for the quarter lowered FY 2016 revenue guidance and reiterated the delay of [Valeant's] Form 10-K filing for the year ended December 31, 2015." (*Id.*) As outlined in the Court's previous Opinion, Rosiello indicated the same day in a conference call with investors and analysts that there was "slower-than-expected rebound in dermatology that include[d] additional product destocking and loss refills from the Philidor transition to Walgreens." (*Id.*) Valeant's press release announcing the results also claimed "softer-than-expected sales" as well as continued difficulties in integrating Walgreens into its business model. (*Id.* ¶ 445; Op. 37.)

Here, Plaintiffs contend that the Court failed to consider: (1) competent evidence supporting that "Valeant's business model relied on its captive pharmacy network far more than Defendants led investors to believe, necessitating the guidance cut announced on March 15, 2016"; (2) Pearson's earlier statement on November 10, 2015, that revenues in dermatology would be "significantly disrupted" as a result of Valeant ending its relationship with Philidor "did not speak to the extent to which Valeant relied on price increases"; and (3) Coffman's observation that news coverage of the preliminary results, particularly that the delayed filing of Valeant's form 10-K could trigger bond default, was significant and new information "further revealing the extent to which Valeant[] rel[ied] on price increases and its relationship with Philidor drove the Company's prior financial results." (Pls.' Mot. Recons. 8-10.) The Court will address each argument in turn.

First, Plaintiffs emphasize that the March 15, 2016 disclosure was the "first time Valeant investors learned the true extent and the dollars-and-cents impact of Defendants' undisclosed practices, including a $700 million reduction in prior 2016 guidance the Company had provided just months earlier." (*Id.* at 9.) This argument disregards, however, the Court's previous findings that a disclosure of less than anticipated revenue does not equate to revealing new corrective information. (Op. 38 (citing *Hull v. Glob. Dig. Sols., Inc.*, No. 16-5153, 2017 WL 6493148, at *13 (D.N.J. Dec. 19, 2017) (rejecting a finding of loss causation where, "[d]istilled to its essence, plaintiff only alleged that the [purported corrective disclosures] revealed less than anticipated" revenue); *In re Retek Inc.*, 621 F. Supp. 2d 690, 702 (D. Minn. Mar. 31, 2009) ("[T]he mere disclosure of disappointing earnings or reduced future guidance is not sufficient to reveal that prior financial statements contained misrepresentations.").) Moreover, Coffman notes that Pearson

disclosed to investors months earlier—as of November 11, 2015—that revenues in neurology and dermatology would be "significantly disrupted."[13] (Coffman Rep. ¶ 395.)

Second, while Plaintiffs allege that Pearson did not speak to the true extent of Valeant's reliance on price increases in November 2015, Defendants correctly note that, during the same conference call, Pearson addressed the impact of price versus volume declines on segment's results. (Defs.' Opp'n Br. 10 (citing Valeant Nov. 10, 2015 Call Tr. *9, Ex. 48[14], ECF No. 994-51).) This foreshadowing was not limited to just Pearson. Valeant management, including Rosiello, also commented that, as of December 16, 2015, the Philidor separation and Walgreens transition would cause a "significant disruption" to Valeant's business. (Def.'s Opp'n n.10 (citing Ex. 50, at *9, ECF No. 994-53 (describing updates to the company's "Q4 guidance to reflect a significant disruption in [Valeant's] business" including from "cancel[ing] virtually all of [the company's] planned price increases")).)

Third, Coffman's observation that the delayed filing of the Company's Form 10-K could trigger a bond default was not significant or new information, but mere speculation. In his report, Coffman alleges that the corrective information released on March 15, 2016 "drove discussion of how [Valeant's] underperformance and untimely filings raised the *potential* for bond default." (Coffman Rep. ¶ 452; *see also id.* ¶ 448 (noting that "[a]nalysts were also concerned with the potential for a bond default if [Valeant] did not get their earning results out soon[.]").) As this Court

---

[13] For these same reasons, the Court found that the June 7, 2016 alleged Corrective Disclosure Event was not corrective because "[t]he termination of Valeant's relationship with Philidor and decline in revenue attributable to this transition was expressed to the market as early as November 11, 2015." (Op. 39.) Notably, Plaintiffs do not challenge the Court's findings as to the June 7, 2016 alleged Corrective Disclosure Event, notwithstanding that much of the same rationale applies to the March 15, 2016 Corrective Disclosure Event.

[14] Page numbers preceded by an asterisk reflect page numbers atop the ECF header.

determined in the Opinion, however, articles such as the ones cited by Coffman that "simply speculate [about] the future value of Valeant's securities" are not corrective. (Op. 30 (citing *Janbay v. Can. Solar, Inc.*, 2012 WL 1080306, at *16 (S.D.N.Y. Mar. 30, 2012); *In re Omnicom Grp.*, 597 F.3d at 512-13).) The Court is hard-pressed to find how mere speculation of a potential bond default is corrective of any alleged misstatements made by Defendants. *See, e.g., Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 322 (5th Cir. 2014) (finding that a Citron Report's statement that "it is not yet concluding that [defendant] is committing Medicare fraud, but there are many indications that this inquiry needs deeper scrutiny," was inconclusive "[s]peculation of wrongdoing [that] cannot by itself arise to a corrective disclosure."); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-6728, 2019 WL 3001084, at *17 (S.D.N.Y. July 10, 2019) (noting that a "report merely raised questions and speculation by analysts and, as such, cannot serve as a corrective disclosure."). The Court accordingly denies reconsideration as to its findings of the alleged March 15, 2016 Corrective Disclosure Event.

IV.     **CONCLUSION**

In short, Plaintiffs fail to proffer any change in law, unconsidered evidence, or persuasive argument that the Court has committed a clear error of law that requires correction. A motion for reconsideration is not "an opportunity to 'ask the court to rethink what it ha[s] already thought through.'" *United States v. Lambert*, No. 18-500, 2023 WL 5050161, at *2 (D.N.J. Aug. 8, 2023) (citation omitted). Simply because the Opinion does not recite all facts that Plaintiffs believe support their position does not mean that the Court overlooked them. *Morton v. Fauver*, No. 97-5127, 2011 WL 2975532, at *3 (D.N.J. July 21, 2011). For these reasons, Plaintiffs' partial motion for reconsideration of the Court's January 2, 2024 Memorandum Opinion and Order is denied in its entirety. An appropriate order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE