**McCarter & English**

**Matthew Sklar**
Partner

T. 973-639-2009
F. 973-297-6602

msklar@mccarter.com

McCarter & English, LLP

Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4056

www.mccarter.com

November 20, 2024

**VIA ECF**

Hon. Michael A. Shipp, U.S.D.J.
Hon. Rukhsanah L. Singh, U.S.M.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

**Re:** *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, Master No. 15-cv-7658-MAS-RLS

Dear Judge Shipp and Judge Singh:

We write in response to Direct Action Plaintiffs' November 13, 2024 letter that, among other things, seeks a conference related to the schedule for the remaining pending opt out actions and also reiterates Plaintiffs' prior request that the pending opt out actions be consolidated for trial. *See* ECF 1585. While the Valeant Defendants believe such a conference may be productive – especially if Plaintiffs will appropriately confer with Defendants in advance as discussed below – Defendants continue to believe that consolidating all of the remaining opt out cases is unworkable.

As the Court knows, the parties presented their respective positions on consolidation earlier this year, with Plaintiffs proposing that all of the 21 cases proceed in a single consolidated trial and Defendants advocating for a bellwether approach. After considering the Parties' arguments, the Court elected to proceed with the bellwether approach and designated one opt-out action, *GMO Trust, et al. v. Valeant Pharmaceuticals International, Inc., et al.*, No. 18-cv-00089 ("*GMO*") as the first case to proceed to trial. *See* ECF 1400. That action resolved shortly before jury selection and is currently stayed until December 12, 2024.

Defendants have been willing to confer with Plaintiffs about a potential efficient path forward for the remaining cases based on the lessons learned from the *GMO* bellwether process. However, rather than apply those lessons from the *GMO* bellwether, Plaintiffs have restarted their long-running campaign for a consolidated trial, implicitly asking the Court to reconsider its prior decision that a single trial of all opt outs is not practical or efficient. Defendants respectfully submit that a single consolidated trial remains unworkable, as it was before, for the reasons addressed in Defendants' prior correspondence. *See* ECF 1384. Plaintiffs' latest letter does not

address in any meaningful way the challenges such a proceeding would present, including those that stem from the sheer number of parties involved and the distinct evidence related to each individual case.

The parties have successfully utilized the single case approach for the *GMO* case and there is no reason to upend that framework now. If anything, the proceedings in *GMO* demonstrated the complex nature of this litigation and showed that Plaintiffs' time estimates for even a single trial were fanciful, as this Court recognized in *sua sponte* extending the time for the GMO trial by a week. Instead, the Court should order the parties to meet and confer about a single case or subset of cases that share a common factual and legal core for presentation to the Court at an upcoming scheduling conference.

### I. A Single Joint Trial Remains Unworkable, and Plaintiffs Have Not Addressed the Significant Issues Inherent in Their Proposal

Defendants remain of the view that a single joint trial of all remaining cases is inappropriate for the reasons Defendants have explained across a number of submissions to the Court. *See* ECF 776, 1216, 1384, 1384-1. Plaintiffs make no real effort in their letter to grapple with the practical realities of a consolidated trial or even attempt to estimate how long such a consolidated trial might take. Instead, Plaintiffs focus on ensuring that each Plaintiffs' law firm is part of the next opt-out trial, whether it be a single consolidated trial or a group of cases with one case from each Plaintiffs' law firm. But ensuring that each Plaintiffs' law firm has at least one case in a consolidated trial is not a principled basis for determining whether a group of cases make sense to be tried together.

As the Court recognized at the final pretrial conference, the proposed schedule for trial involving just one plaintiff was overly condensed (including with some expert witnesses scheduled to take the stand for only 10 minutes due to the time constraints) and the Court *sua sponte* significantly extended the trial schedule given that concern. *See* Ex. A (Aug. 29, 2024 Hearing Tr.) at 6-8 ("I've looked at your proposed schedule, and, quite frankly, ***I think it's unworkable***. I do a lot of trials, and the number of witnesses that are anticipated, the caliber and the substance of the testimony that you're eliciting, I don't think that it's going to be possible to try this case in the number of days that we have allocated . . . I think you folks are

being very, very optimistic to think that we're going to get all this done in the time frame that you've allocated.").[1]

Plaintiffs raise several approaches that they claim would streamline a joint trial without actually proposing a plan for how a consolidated trial would proceed or how many weeks of trial time would be required. Notably, Plaintiffs suggest that their cases should be treated as a class action, the very mechanism Plaintiffs *opted out* of to pursue their own, separate actions. As the Court is aware, the class claims against the Valeant Defendants resolved years ago. These Plaintiffs made a strategic decision to opt out of that resolution, banking on maximizing recovery by litigating their claims on an individualized basis. A predictable consequence of that decision was that it would take longer for their claims to be resolved. Plaintiffs cannot credibly complain that the process they chose is now taking too long and use that as justification for treating their separate cases as though they were part of a class after all.

Plaintiffs also significantly understate the unique issues related to several of the remaining Plaintiffs, including as to each Plaintiff's reliance and ability to prove their trades through competent, admissible evidence.[2] And while Plaintiffs suggest that a consolidated trial would "add at most a couple of weeks to the trial schedule," this again appears to be the same kind of "unworkable" and overly optimistic schedule the Court identified prior to trial in the *GMO* action given the hundreds of Plaintiffs involved in a consolidated action.[3]

Defendants believe that the parties should confer about a single case or small group of cases that could be efficiently tried in a four-week time period. Unfortunately, Plaintiffs' correspondence shows that they have no real plan for a consolidated trial, and their noncommittal representations that they would mostly

---

[1] The Court also clarified that the parties' trial schedule assumed that the Court would sit for 6 hours per day, when the Court in fact only sits for approximately 5 and a half hours or less per day. *See* Ex. A (Aug. 29, 2024 Hearing Tr.) at 9–10.

[2] To cite just one example, the *Hound Partners* case (18-cv-08705), is unique among the opt-out cases in that Hound Partners asserts claims under the Securities Act of 1933 and includes 17 named defendants who have not been sued in any other action, including the eight underwriters of Valeant's March 2015 equity offering.

[3] Plaintiffs suggest that the quantity of named Plaintiffs across the actions is not relevant because Defendants did not depose representatives from each named plaintiff. However, at trial Plaintiffs would have the burden of proving their purchases for each individual Plaintiff and Defendants anticipate that far more witnesses would need to testify at trial than those who were deposed.

use the same exhibits and mostly call the same witnesses as those contemplated for trial in the *GMO* action do not make up for their lack of a workable trial schedule. Indeed, during meet and confers prior to their submission, Plaintiffs repeatedly refused to confirm that they would be aligned as a group as to the evidence that they intended to put forth at trial, and confirmed that they would not be beholden to the approach utilized by Rolnick Kramer Sadighi on behalf of GMO, including on matters such as deposition designations. Plaintiffs' suggestion that Rolnick Kramer Sadighi could serve as coordinating trial counsel has minimal relevance, given Plaintiffs' admission that Plaintiffs will still need to address issues specific to their clients and individualized matters will arise. *See* Letter at 7.

As to settlement, it is entirely possible for the Parties to engage in discussions regarding potential resolution of the actions whether one or multiple actions next proceed to trial. The precedent cited by Plaintiffs in no way stands for the proposition that the Court should make its consolidation decision based on whether it maximizes the chances that different Plaintiffs' law firms achieve a monetary recovery through potential settlement as quickly as possible. It is also not the case that no other case will proceed to trial because the *GMO* case was resolved shortly prior. Defendants remain prepared to proceed to trial and believe a jury verdict could heavily influence any subsequent opt-out case proceedings.

## II. Defendants' Proposals Remain the More Workable Alternatives for Resolving the Remaining Opt-Out Actions

Defendants explained why a single, bellwether trial is the most efficient trial structure for resolving the remaining opt-out cases in their April 2, 2024 Trial Plan. *See* ECF 1384. The efficient pretrial proceedings that were completed in *GMO* demonstrate the merits of the bellwether approach.

Defendants believe that a single case, such as the *Okumus* (17-cv-06513) action, would be the most appropriate next action. As the Court will recall from summary judgment briefing, the *Okumus* case features a single plaintiff with one of the largest claims for alleged damages who only began purchasing Valeant securities after the alleged corrective disclosures were issued. These post-corrective disclosure purchases present a clean and uniquely triable reliance issue. Defendants believe a verdict in the *Okumus* action would be particularly informative as to the resolution of other actions given the number of other cases with post-corrective disclosure purchases. *Okumus* also held Valeant securities after many other Plaintiffs liquidated their positions, making it a worthy bellwether since the action covers all alleged corrective disclosures and others do not. Based on the Court's observations at the final *GMO* pre-trial conference, Defendants believe that a trial of the *Okumus* case would take approximately 15 to 18 trial days.

4

      Should the Court instead be inclined to try a small group of cases in a consolidated trial, Defendants reiterate their previous proposal that the Parties proceed with two to three cases and reiterate their proposal that a group of Plaintiffs with the latest sell/hold dates for Valeant securities would be a sensible selection for a consolidated trial. Namely, Defendants propose a trial of two or three of the following: *GIC* (20-cv-07460); *Colonial First* (18-cv-00383); *Boeing* (17-cv-07636); *Aly*/*Templeton*[4] (20-cv-05478); *Ahuja* (18-cv-00846); *Forsta* (17-cv-12088); or *Okumus* (17-cv-06513).

      *    *    *

      We thank Your Honors for Your attention to these matters and are available to further discuss the above matters at the Court's convenience.

Respectfully submitted,

/s/ *Matthew Sklar*

Matthew A. Sklar

cc:    Counsel of Record (via ECF)

---

[4] These two actions currently have certain overlapping named Plaintiffs.